LUIS LI (State Bar No. 156081)
Luis.Li@mto.com
CRAIG JENNINGS LAVOIE (State Bar No. 293079)
Craig.Lavoie@mto.com
MARI T. SAIGAL (State Bar No. 318556)
Mari.Saigal@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue
Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:   (213) 683-9100
Facsimile:    (213) 687-3702

Attorneys for Plaintiff Vanessa Bryant

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| VANESSA BRYANT, a California Resident,<br><br>            Plaintiff,<br><br>      vs.<br><br>COUNTY OF LOS ANGELES, a public entity, et al.,<br><br>            Defendants. | Case No. 2:20-cv-09582-JFW-E<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT**<br><br>[*Filed Concurrently with Request for Judicial Notice; Declaration of Craig Jennings Lavoie; and [Proposed] Order*]<br><br>Judge:   Hon. John F. Walter<br>Date:     December 28, 2020<br>Time:    1:30 p.m.<br>Crtrm:   7A<br><br>Pre-Trial Conference: October 29, 2021<br>Trial Date: November 16, 2021<br><br>Assigned to Hon. John F. Walter and Magistrate Judge Charles F. Eick |

# **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ..................................................................................8

II.    BACKGROUND ................................................................................10

III.   LEGAL STANDARD.........................................................................12

IV.    DISCUSSION......................................................................................12

    A.     LASD Is a Proper Defendant ..................................................12

        1.     LASD Is a Separately Suable Entity .........................13

        2.     LASD Is a "Person" Within the Meaning of § 1983.................16

        3.     There Is No Legal Basis to Dismiss LASD as a "Redundant" Defendant ............................................18

    B.     Mrs. Bryant Has Properly Pled Her Negligence Claim Against Sheriff Alex Villanueva .......................................................20

        1.     Sheriff Villanueva Owed a Duty of Care to Mrs. Bryant..........20

        2.     Mrs. Bryant Has Stated a Proper Negligence Claim Based on Sheriff Villanueva's Failure to Supervise His Deputies' Conduct at the Crash Site.................................24

        3.     Sheriff Villanueva's Instructions to Spoliate Evidence Is Not a Discretionary Act Entitled to Immunity..........................26

    C.     Leave to Amend Would Not Be Futile. ................................30

V.     CONCLUSION ..........................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*AE ex rel. Hernandez v. Cnty. of Tulare*,
  666 F.3d 631 (9th Cir. 2012).........................................................................26, 27

*Estate of Alejandro Sanchez v. Cnty. of Stanislaus*,
  2019 WL 1745868 (E.D. Cal. Apr. 18, 2019)..............................................14, 18

*Avila v. Los Angeles Police Dep't*,
  2012 WL 12886838 (C.D. Cal. Feb. 27, 2012)............................................26, 28

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).............................................................................................12

*Cordova v. City of Los Angeles*,
  2016 WL 586702 (C.D. Cal. Jan. 20, 2016) ........................................................18

*Doe v. San Joaquin Cnty.*,
  2019 WL 2106228 (E.D. Cal. May 14, 2019) .....................................................25

*Erickson v. Pardus*,
  551 U.S. 89 (2007)...............................................................................................28

*Garcia v. City of Los Angeles*,
  2020 WL 2129830 (C.D. Cal. Feb. 15, 2020)......................................................27

*Garcia v. City of Merced*,
  637 F. Supp. 2d 731 (E.D. Cal. 2008) ...........................................................17, 18

*Garcia v. Cnty. of Riverside*,
  817 F.3d 635 (9th Cir. 2016)...............................................................................16

*Garcia v. San Bernardino Cnty.*,
  2020 WL 2502429 (C.D. Cal. Jan. 29, 2020) ......................................................17

*H.B. v. City of Torrance*,
  2017 WL 10518108 (C.D. Cal. Aug. 16, 2017)...................................................25

*Hurth v. Cnty. of Los Angeles*,
  2009 WL 10696491 (C.D. Cal. Oct. 28, 2009)................................16, 17, 18, 19

*Karim-Panahi v. Los Angeles Police Dep't*,
  839 F.2d 621 (9th Cir. 1988)..........................................................................14, 16

Case No. 2:20-cv-09582-JFW-E
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Lee v. City of Los Angeles*,
  250 F.3d 668 (9th Cir. 2001).................................................................26, 27

*Martinez v. City of Los Angeles*,
  141 F.3d 1373 (9th Cir. 1998).................................................................29

*Estate of Mendez v. City of Ceres*,
  390 F. Supp. 3d 1189 (E.D. Cal. 2019) ...............................................18, 19

*Monell v. Dep't of Social Services*,
  436 U.S. 658 (1978)...............................................................................16

*Morongo Band of Mission Indians v. Rose*,
  893 F.2d 1074 (9th Cir. 1990).................................................................29

*Nelson v. Cnty. of Sacramento*,
  926 F. Supp. 2d 1159 (E.D. Cal. 2013) ...................................................18

*Estate of Osuna v. Cnty. of Stanislaus*,
  392 F. Supp. 3d 1162 (E.D. Cal. 2019) ...............................................14, 18

*Pallas v. Accornero*,
  2019 WL 3975137 (N.D. Cal. Aug. 22, 2019) .........................................29

*Payne v. Cnty. of Calaveras*,
  2018 WL 6593347 (E.D. Cal. Dec. 14, 2018) ...................................14, 17, 18

*Ricky R. v. City of Alhambra*,
  2008 WL 11429771 (C.D. Cal. Feb. 7, 2008).......................................13, 16, 17

*Rodgers v. City of Pasadena*,
  2016 WL 7240135 (C.D. Cal. Dec. 12, 2016) .......................................18, 19

*Rodriguez v. City of Palm Springs*,
  2015 WL 3766642 (C.D. Cal. June 15, 2015) .......................................13, 17

*Sedgwick v. Unknown K-9 Handler*,
  2012 WL 2326065 (S.D. Cal. June 19, 2012).............................................17

*Shaw v. Cal. Dep't of Alcoholic Beverage Control*,
  788 F.2d 600 (9th Cir. 1986).........................................13, 14, 15, 17

# TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*So v. Bay Area Rapid Transit*,
2013 WL 5663207 (N.D. Cal. Oct. 17, 2013)...................................................29

*Steinle v. City & Cnty. of San Francisco*,
919 F.3d 1154 (9th Cir. 2019)..................................................................27, 28

*Streit v. Cnty. of Los Angeles*,
236 F.3d 552 (9th Cir. 2001).................................................................passim

*Stump v. Gates*,
777 F. Supp. 808 (D. Colo. 1991) ..............................................................17, 18

*Tennyson v. Cnty. of Sacramento*,
2020 WL 4059568 (E.D. Cal. July 20, 2020)....................................................14

*Trujillo v. City of Ontario*,
428 F. Supp. 2d 1094 (C.D. Cal. 2006) ............................................................29

*United States v. Kama*,
394 F.3d 1236 (9th Cir. 2005)........................................................................18

*Valenzuela v. San Diego Police Dep't*,
2020 WL 804923 (S.D. Cal. Feb. 18, 2020)......................................................19

*Vance v. Cnty. of Santa Clara*,
928 F. Supp. 993 (N.D. Cal. 1996)............................................................17, 18

*Walsh v. Tehachapi Unified Sch. Dist.*,
827 F. Supp. 2d 1107 (E.D. Cal. 2011) ............................................................27

*Weaver v. City of Stockton*,
2020 WL 5763763 (E.D. Cal. Sept. 28, 2020)...................................................19

*Williams v. City of Fresno*,
2007 WL 2902973 (E.D. Cal. Oct. 2, 2007).......................................................17

*Zaiderman v. Los Angeles Cnty. Metro. Transp. Auth.*,
2020 WL 6048304 (C.D. Cal. July 20, 2020).....................................................25

1

2

## **TABLE OF AUTHORITIES**
### (Continued)

**Page(s)**

3

**STATE CASES**

4

5

*Arista v. Cnty. of Riverside*,
   29 Cal. App. 5th 1051, 1061 (2018) ..................................................... 10, 23, 24

6

7

*Barner v. Leeds*,
   24 Cal. 4th 676 (2000) ...................................................................................29

8

9

*Brumer v. City of Los Angeles*,
   24 Cal. App. 4th 983 (1994) .........................................................................14

10

*C.A. v. William S. Hart Union High Sch. Dist.*,
   53 Cal. 4th 861 (2012) ........................................................................ 12, 24, 25

11

12

*Catsouras v. Dep't of Cal. Highway Patrol*,
   181 Cal. App. 4th 856 (2010) ............................................................. 9, 20, 21, 22

13

14

*Colvin v. City of Gardena*,
   11 Cal. App. 4th 1270 (1992) .........................................................................14

15

16

*Johnson v. State*,
   69 Cal. 2d 782 (1968) ....................................................................................26

17

18

*Lopez v. S. Cal. Rapid Transit Dist.*,
   40 Cal. 3d 780 (1985) ...............................................................................26, 27

19

20

*Mann v. California*,
   70 Cal. App. 3d 773 (1977) .......................................................................23, 24, 29

21

22

*Peterson v. City of Long Beach*,
   24 Cal. 3d 238 (1979) ...................................................................................14

23

*Pierce v. San Mateo County Sheriff's Dep't*,
   232 Cal. App. 4th 995 (2014) ........................................................................15

24

25

*Pina v. Cnty. of Los Angeles*,
   28 Cal. App. 5th 531, 534 (2019) ...................................................................16

26

27

*Rowland v. Christian*,
   69 Cal. 2d 108 (1968) ........................................................................ 9, 20, 21, 22

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1

## TABLE OF AUTHORITIES
### (Continued)

2

**Page(s)**

3

*Taylor v. Cnty. of Los Angeles*,
4
    50 Cal. App. 5th 205, 207 (2020).........................................................16

5

*Thompson v. City of Petaluma*,
    231 Cal. App. 4th 101 (2014).............................................................15
6

7

*Thompson v. Cnty. of Alameda*,
    27 Cal. 3d 741 (1980) .......................................................................21
8

9

STATE STATUTES

10

Cal. Gov't Code § 811.2 ....................................................... 13, 14, 15

11

Cal. Gov't Code § 820.2 ..............................................................passim

12

Cal. Gov't Code § 945 .......................................................... 13, 14, 15

13

RULES - OTHER

14

Fed. R. Civ. P. 8(a)(2) ..............................................................12

15

Fed. R. Civ. P. 12(b)(6)............................................................ 12, 26
16

17

Fed. R. Civ. P. 15(a)(2)..................................................................29

18

Fed. R. Civ. P. 17(b) ....................................................................13

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

I.   **INTRODUCTION**

By his own admission, Sheriff Alex Villanueva has long known that—since the invention of the Polaroid decades ago—deputies have sometimes taken pictures of the deceased for their own gratification.  (Compl. ¶ 32.)  He has known that these photos are sometimes collected in "death books" kept by deputies that serve no legitimate law enforcement purpose.  (*Id.*)  And he has known that this behavior compounds the suffering of grieving families.  (*Id.* ¶ 31(a).)

The death of Gianna and Kobe Bryant created a predictable media circus. And the Sheriff knew—both through common sense and because he was informed by Mrs. Bryant—that the Bryant family wanted Gianna and Kobe's remains to be spared the indignity of being photographed by the media flocking to the crash scene. (*Id.* ¶¶ 22–23.)  Sheriff Villanueva responded by promising Mrs. Bryant that his deputies would secure the accident scene to protect their privacy.  (*Id.* ¶ 23.)

That promise was hollow.  But the people responsible for desecrating Gianna and Kobe's privacy turned out not to be news crews or the paparazzi.  Instead, in keeping with the decades-long practice Sheriff Villanueva has acknowledged, at least eight deputies at the crash site pulled out their personal cell phones and took pictures of the victims' remains for their own benefit.  (*Id.* ¶ 3.)  One deputy even used the pictures as a conversation piece with a woman at a bar.  (*Id.* ¶ 4.)  The Sheriff learned of this because a bartender who witnessed the deputy's actions had the decency to make a complaint to the Sheriff's Department ("LASD").  (*Id.*)  But notwithstanding the Sheriff's later acknowledgement that the photos "harm[ed] people [who] have suffered a tragedy already" by creating the possibility of "a public display of their loved ones' remains," he instructed his deputies to delete the photos and destroy the evidence of their misconduct before any forensic effort had been made to determine whether and to what extent the photos had been electronically transmitted or posted online.  (*Id.* ¶¶ 28, 31, 44.)  To this day, no forensics have been conducted on the still-unidentified deputies' cell phones.

1    By Defendants' motion, the Sheriff and LASD seek to evade responsibility
2  and accountability for their actions, arguing that they bear no liability for the
3  conduct described above because LASD is a "redundant" defendant with the County
4  of Los Angeles ("County") and Sheriff Villanueva's behavior is not legally
5  actionable.  They are mistaken on both points.

6    **First**, Defendants' argument that LASD is an improper defendant is directly
7  contrary to Ninth Circuit precedents, most notably *Streit v. County of Los Angeles*,
8  236 F.3d 552 (9th Cir. 2001), a case involving a § 1983 claim against both the
9  County and LASD in which the Ninth Circuit held that LASD is a "separately
10  suable entity" and that "both the LASD and the County are subject to liability under
11  section 1983."  *Id.* at 555–56, 566 (emphasis added).

12    **Second**, Sheriff Villanueva is a proper defendant because, under the test
13  established by the California Supreme Court in *Rowland v. Christian*, 69 Cal. 2d
14  108 (1968), he owed Mrs. Bryant a duty to act with ordinary care.  Upon learning
15  that deputies under his command possessed improper photos of the victims' remains
16  and had shared them with third parties, Sheriff Villanueva was required to act in a
17  reasonable manner and refrain from making the situation worse, such as by
18  instructing his deputies to destroy evidence and thereby eliminate the potential to
19  trace the spread of the photos and secure every copy.  Similar to *Catsouras v.*
20  *Department of California Highway Patrol*, 181 Cal. App. 4th 856 (2010), in which
21  the California Court of Appeal held that California Highway Patrol officers owed a
22  duty to refrain from sharing photos of an accident victim's remains with third
23  parties, Sheriff Villanueva's conduct supports a finding of duty based the
24  foreseeable harm it inflicted, the ease with which it could have been avoided, and
25  the moral blame associated with directing spoliation.

26    In addition, by virtue of his personal assurances to Mrs. Bryant on the day of
27  the accident, Sheriff Villanueva owed a duty of care to Mrs. Bryant under the
28  special relationship doctrine embraced by California courts.  As explained in dozens

of cases, "when the state, through its agents, voluntarily assumes a protective duty toward a certain member of the public and undertakes action on behalf of that member, thereby inducing reliance, it is held to the same standard of care as a private person or organization." *See Arista v. Cnty. of Riverside*, 29 Cal. App. 5th 1051, 1061 (2018), *as modified on denial of reh'g* (Dec. 13, 2018) (citation omitted).  Sheriff Villanueva assumed such a duty to act with ordinary care when he assured Mrs. Bryant that LASD would secure the crash site to ensure privacy and Mrs. Bryant relied on his word.  (*See* Compl. ¶ 68.)  Sheriff Villanueva breached this duty to act with reasonable care by, *inter alia*, failing to prevent his own deputies from desecrating the victims' remains and later exacerbating the harm by directing them to destroy the evidence of their wrongdoing.  Sheriff Villanueva is a proper defendant in this case.

Plaintiff respectfully submits that Defendants' Motion should be denied.

## II.   BACKGROUND

On January 26, 2020, a helicopter carrying three teenage basketball players, along with parents and coaches, crashed in Calabasas, California.  All aboard perished.  Plaintiff Vanesa Bryant's husband of nearly twenty years, Kobe, and their thirteen-year-old daughter, Gianna, were among those lost.  (Compl. ¶ 1.)

Mrs. Bryant rushed to the L.A. County Sheriff's station in Lost Hills, where she met with Sheriff Alex Villanueva.  (*Id*. ¶¶ 23, 67.)  News was quickly spreading that Kobe Bryant had died, and paparazzi, members of the public, and unmanned drones were flocking to the scene.  (*Id*. ¶ 22.)  In response to her requests, Sheriff Villanueva personally assured Mrs. Bryant that his deputies were securing the accident scene to protect privacy.  (*Id*. ¶¶ 23, 67.)

As Sheriff Villanueva would later admit, he knew at the time that it is a problem "across the nation" that law enforcement officers take unnecessary photos of human remains at crime and accident scenes, with some officers even keeping "death books" of such photos from throughout their careers.  (*Id*. ¶ 32.)  The Sheriff

1  further knew that law enforcement in Los Angeles has a long history of abusing
2  access to celebrity-related information.  (*Id.* ¶ 33.)  But notwithstanding this
3  knowledge and his personal assurances to Mrs. Bryant that he would protect the
4  dignity of her loved ones' remains, Sheriff Villanueva took no steps to deliver on his
5  promise with respect to the conduct of his own deputies.  (*Id.* ¶ 24.)

6        Left to their own devices, at least eight deputies at the accident scene used
7  their personal cell phones to snap gratuitous photos of the victims' remains for their
8  own personal gratification.  (*Id.* ¶ 3.)  In the days after, deputies displayed the
9  photos in settings that had nothing to do with investigating the accident, including
10  one deputy who used them to try to impress a woman a bar.  (*Id.* ¶ 4.)  A bartender
11  observed this behavior and filed a written complaint with LASD.  (*Id.*)

12        Sheriff Villanueva responded by making the situation worse.  (*Id.* ¶ 5.)  At a
13  time when no effort had been made to trace the deputies' electronic dissemination of
14  the photos to third parties, the Sheriff summoned the deputies to the Lost Hills
15  station and told them that, if they deleted the photos, they would face no discipline.
16  (*Id.*)  The deputies purported to oblige, accepting the incentive offered by Sheriff
17  Villanueva to destroy evidence of their misconduct.  (*Id.*)  As an experienced law
18  enforcement officer, Sheriff Villanueva knew that his order to delete the photos
19  would cripple the ability to track down and sequester every copy that had been
20  transmitted to third parties.  (*Id.* ¶ 44.)

21        On February 27 and 28, 2020, the *Los Angeles Times* reported on the photos
22  and Sheriff Villanueva's instructions to destroy the evidence.  (*Id.* ¶ 6.)  In response,
23  Mrs. Bryant privately sought basic information from LASD, including the extent to
24  which photos had been shared and the names of the deputies involved.  (*Id.* ¶ 7.)  An
25  attorney for LASD responded that it had no legal obligation to respond to her
26  questions and would not do so.  (*Id*. ¶ 41.)  On September 17, 2020, after exhausting
27  the administrative claim process, Mrs. Bryant filed this action against the County,

28

LASD, Sheriff Villanueva, and Doe defendants who took or shared photos of her loved ones' remains.  (*Id.* ¶¶ 8–9, 13–18.)

On November 18, 2020, the Court dismissed the Doe defendants from the case.  (Dkt. No. 28.)  Working cooperatively, the parties have since agreed on a process whereby Plaintiff should obtain the Doe individuals' names by mid-January, at which point she intends to join them as defendants.  (Dkt. No. 35.)[1]

## III.   **LEGAL STANDARD**

A motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A complaint does not require detailed factual allegations; it simply must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## IV.   **DISCUSSION**

### A.   **LASD Is a Proper Defendant**

Defendants' attempt to dismiss LASD from this action ignores *Streit v. County of Los Angeles*, 236 F.3d 552 (9th Cir. 2001), an on-point Ninth Circuit case that directly contradicts their position.  Defendants contend that LASD should be dismissed because it is not a legal entity distinct from the County, is not a "person" within the meaning of Section 1983, and is a "redundant defendant."  (Mot. at 10–

---

[1] In a footnote, Defendants appear to suggest that dismissal of the Doe defendants impacts Plaintiff's claims against the County and LASD.  (*See* Mot. at 8 n.2.)  As Defendants acknowledge, this is not at issue in the Motion because it was not addressed in the parties' meet and confer.  (*Id.*)  But in any event, Plaintiff's vicarious liability theories against the County and LASD are unaffected by whether the individual deputies are also sued.  *See C.A. v. William S. Hart Union High Sch. Dist.*, 53 Cal. 4th 861, 872 & n.5 (2012) (holding that, at the pleadings stage, a plaintiff need not identify or join the employee who performed the negligent act on which vicarious liability against the entity is based).

12.)  However, in *Streit*, the Ninth Circuit allowed a § 1983 claim to be asserted against both Los Angeles County and LASD, holding that LASD is a "separately suable entity" under California law and that "<u>both</u> the LASD and the County [of Los Angeles] are subject to liability under section 1983."  236 F. 3d at 555–56, 566 (emphasis added).

Plaintiff informed Defendants of *Streit* and related Ninth Circuit authorities during meet and confer (Dkt. No. 30 (Joint Rule 7-3 Report) at 5–6), but Defendants fail to cite or discuss them.  Defendants instead rely on this Court's decision in *Ricky R. v. City of Alhambra*, 2008 WL 11429771 (C.D. Cal. Feb. 7, 2008) (Walter, J.), but they fail to note a more recent decision of this Court that rejected their position based on *Streit*'s holding that "sheriff's departments . . . can be sued in federal court for alleged civil-rights violations."  *Rodriguez v. City of Palm Springs*, 2015 WL 3766642, at *3 (C.D. Cal. June 15, 2015) (Walter, J.) (citing *Streit*, 236 F.3d at 565), *report and recommendation adopted* (March 3, 2015).

### 1.   LASD Is a Separately Suable Entity

As this Court explained in *Rodriguez*, "[f]ederal rule of civil procedure 17(b) provides that 'capacity to sue and be sued shall be determined by the law of the state in which the district court is held.'"  2015 WL 3766642, at *3 (quoting Fed. R. Civ. P. 17(b)).  As relevant here, Section 945 of the California Government Code provides that "[a] public entity may sue and be sued," and section 811.2 of the Government Code defines public entities to include "a county, city, district, public authority, public agency, and any other political subdivision or public corporation in the State."  Cal. Gov't Code §§ 945, 811.2.  As this Court observed in *Rodriguez*, the Ninth Circuit held in *Streit* that "sheriff's departments are defined as public entities by Cal. Gov. Code § 811.2 and therefore under Cal. Gov. Code § 945 they can be sued in federal court for alleged civil-rights violations."  2015 WL 3766642, at *3 (citing *Streit*, 236 F.3d at 565); *see also id.* ("[T]he Ninth Circuit has held that California law permits county and municipal police departments to be sued.").

*Streit* itself built upon an earlier decision, *Shaw v. California Department of Alcoholic Beverage Control*, 788 F.2d 600, 604–05 (9th Cir. 1986), in which the Ninth Circuit performed a detailed analysis of California case law and sections 811.2 and 945 of the Government Code in holding that the San Jose Police Department was a "public entity under section 811.2." 788 F.2d at 604–05 (relying on *Peterson v. City of Long Beach*, 24 Cal. 3d 238 (1979), for the proposition that "[t]he police department traditionally has been regarded as an 'agency' of the city and is obviously 'public'" (citation and alterations omitted)). The Ninth Circuit later reiterated *Shaw*'s holding in *Karim-Panahi v. Los Angeles Police Department*, where it stated: "Municipal police departments are 'public entities' under California law and, hence, can be sued in federal court for alleged civil rights violations." 839 F.2d 621, 624 n.2 (9th Cir. 1988).

In the decades since *Streit*, *Shaw*, and *Karim-Panahi* were decided, no California court has disagreed with their holdings that police and sheriff's departments are public entities amenable to suit. Rather, California courts have ruled similarly. *See Brumer v. City of Los Angeles*, 24 Cal. App. 4th 983, 987 (1994) (citing Cal. Gov't Code § 811.2 for the proposition that "a police department is a public agency and a public entity"); *Colvin v. City of Gardena*, 11 Cal. App. 4th 1270, 1279–80 (1992) (noting that Cal. Gov't Code § 811.2 "define[s] public entity as including [a] public authority and public agency" and holding that police chief's role as head of a public authority meant that his directive constituted a policy adopted "by a public agency or public entity"). Accordingly, numerous district courts have continued to rely on the Ninth Circuit's holdings that police and sheriff's departments are public entities and separately suable in federal court.[2]

_____

[2] *See, e.g.*, *Tennyson v. Cnty. of Sacramento*, 2020 WL 4059568, at *6 (E.D. Cal. July 20, 2020) (relying on *Streit* to hold that sheriff's department was subject to suit in federal court); *Estate of Osuna v. Cnty. of Stanislaus*, 392 F. Supp. 3d 1162, 1170 (E.D. Cal. 2019) (same); *Estate of Alejandro Sanchez v. Cnty. of Stanislaus*, 2019

Without mentioning *Streit*, *Shaw*, *Karim-Panahi*, or the California Government Code, Defendants support their position by citing single-sentence footnotes in cases that did not analyze or decide the relevant question—i.e., whether sheriff's departments are "public entities" subject to suit under sections 811.2 and 945 of the California Government Code. Defendants first cite *Pierce v. San Mateo County Sheriff's Department*, a case in which San Mateo County appeared on behalf of the San Mateo Sheriff's Department. 232 Cal. App. 4th 995, 1000 (2014). In a footnote, the court shared its understanding as to why a county appeared in the proceedings on behalf of the sheriff's department: "The Sheriff's Department is not a separate governmental entity, but is a department of San Mateo County." *Id.* at 1000 n.1. Read in context, the footnote is not a holding. It contains no reasoning, no citations, and no analysis regarding whether a sheriff's department qualifies as a public entity under the California Government Code.

Defendants next cite *Thompson v. City of Petaluma*, 231 Cal. App. 4th 101 (2014), a case that involved a challenge to the City of Petaluma's enforcement of a Vehicle Code provision. The opinion notes that the plaintiff sued the City of Petaluma and the Petaluma Sheriff's Department, then states in a footnote: "The Petaluma Police Department was erroneously named as a defendant; the City of Petaluma is the proper defendant." *Id.* at 104 n.1. As in *Pierce*, the footnote does not purport to hold that municipal departments are incapable of being sued, and contains no reasoning or citations. Considered in context, the court appears to have been saying that the police department was not a proper defendant because the City, not the police department, set the policy at issue. *See id.* at 108 ("[Plaintiff's] allegation that the City uses taxpayer funds to pay its police officers to implement [the Vehicle Code provision] does not establish waste." (emphasis added)).

_____

WL 1745868, at *3 (E.D. Cal. Apr. 18, 2019) (same); *Payne v. Cnty. of Calaveras*, 2018 WL 6593347, at *4 (E.D. Cal. Dec. 14, 2018) (same).

In the six years since *Pierce* and *Thompson* were decided, not a single court has cited them for the proposition that a municipal department is an improper defendant. Rather, the rule remains that sheriff's departments are public entities under California Government Code, and California courts routinely entertain suits in which LASD is sued alongside the County.[3]

### 2.  LASD Is a "Person" Within the Meaning of § 1983

Defendants' argument that LASD is not a "person" under § 1983 is contrary to *Monell v. Department of Social Services*, in which the Supreme Court held that Congress intended "municipalities <u>and other local government units</u> to be included among those persons to whom § 1983 applies." 436 U.S. 658, 690 (1978) (emphasis added). *Monell* itself involved a claim against a municipal department, and "it follows from the Court's allowance of the suit in *Monell* . . . that a plaintiff in a § 1983 suit may name a municipal department as a defendant." *Hurth v. Cnty. of Los Angeles*, 2009 WL 10696491, at *2 (C.D. Cal. Oct. 28, 2009). As in *Monell*, the Ninth Circuit has allowed numerous § 1983 suits to proceed against municipal departments—including law enforcement departments—even where a city or county was also named.[4]

---

[3] *See, e.g.*, *Taylor v. Cnty. of Los Angeles*, 50 Cal. App. 5th 205, 207–08 (2020) (plaintiff sued "Los Angeles County and the sheriff's department for wrongful death and civil rights violations"); *Pina v. Cnty. of Los Angeles*, 28 Cal. App. 5th 531, 534 (2019) (plaintiff sued "[the] County of Los Angeles and [the] Los Angeles County Sheriff's Department" for negligently causing traffic accident); *A.G. v. Cnty. of Los Angeles*, 28 Cal. App. 5th 373, 375 (2018) (plaintiff sued "the County of Los Angeles and the Los Angeles County Sheriff's Department" for civil rights violations).

[4] *See, e.g.*, *Streit*, 236 F.3d at 555–56 ("[W]e hold that both the LASD and the County are subject to liability under section 1983."); *Karim-Panahi*, 839 F.2d at 624 (affirming denial of motion to dismiss § 1983 claim brought against both the City of Los Angeles and the Los Angeles Police Department); *Garcia v. Cnty. of Riverside*, 817 F.3d 635, 638 (9th Cir. 2016) (reversing dismissal and allowing § 1983 claim to proceed against both the City of San Jose and San Jose Police Department).

1    Defendants rely on *Ricky R.*, in which this Court, without the benefit of

2  briefing, *sua sponte* dismissed a police department on the rationale that it was not a

3  "person" within the meaning of § 1983.  2008 WL 11429771, at *1 n.1.  Defendants

4  also cite a collection of other district court cases that embrace the same position.

5  These decisions are mistaken for two reasons.

6    **First**, neither *Ricky R.* nor any of the cases cited by Defendants discuss *Streit*

7  or *Shaw*.  By contrast, to Plaintiff's knowledge, every district court to have

8  considered the question having been briefed about *Streit* or *Shaw* has held that

9  police and sheriff's departments are amenable to § 1983 claims.  This Court itself is

10  an example.  *See Rodriguez*, 2015 WL 3766642, at *3.  Another is *Payne v. County*

11  *of Calaveras*, 2018 WL 6593347 (E.D. Cal. Dec. 14, 2018), in which the court

12  reconsidered a prior order dismissing a sheriff's department on the theory that it was

13  not a "person."  The court explained that, at the time of its prior order, "neither party

14  brought to [the] court's attention any authority that expressly held to the contrary."

15  *Id.* at *4.  But upon becoming aware of *Streit* and *Shaw*, the court vacated its prior

16  order and reinstated the sheriff's department as a defendant.  *Id.* at *4–5.

17    **Second**, the cases on which *Ricky R.* relied—*Stump v. Gates*, 777 F. Supp.

18  808 (D. Colo. 1991) and *Vance v. County of Santa Clara*, 928 F. Supp. 993 (N.D.

19  Cal. 1996)—were later analyzed and rejected in a thorough decision by Judge

20  Stephen Wilson.  *See Hurth*, 2009 WL 10696491, *1–2.[5]  Regarding *Stump*, Judge

21  Wilson noted that the court based its decision on <u>Colorado</u> law that a municipal

22  department does not have a legal identity.  *Id.* at *2.  Regarding *Vance*, Judge

23  Wilson noted that it was decided prior to *Streit*, "without significant elaboration or

24  analysis" or "the benefit of briefing from the parties," and relied on *Stump* and

25

26

27  ─────────────
[5] *Ricky R.* also cited a third case, *Williams v. City of Fresno*, 2007 WL 2902973, at

28  *4 (E.D. Cal. Oct. 2, 2007), but *Williams* itself relied solely on *Vance* and *Stump*.

another case premised on non-California law.  *Id.*  Critically, Defendants' Motion relies almost exclusively on cases that rely on *Vance* and *Stump*.[6]

Finally, Defendants cite a concurring opinion in *United States v. Kama*, 394 F.3d 1236 (9th Cir. 2005), which stated that municipal departments are not "persons."  (Mot. at 10.)  However, as explained by the court in *Payne*, the *Kama* concurrence relied on a Ninth Circuit case that considered whether an <u>intergovernmental task force</u> composed of several local, county, and state governmental entities was a "person" under § 1983, and an Eleventh Circuit opinion that considered whether sheriff's departments were subject to suit under <u>Alabama</u> law.  2018 WL 6593347, at *4.  In light of this, courts that have considered both the *Kama* concurrence and *Streit* have consistently followed the latter.[7]

### 3. There Is No Legal Basis to Dismiss LASD as a "Redundant" Defendant

Defendants' assertion that LASD should be dismissed as a "redundant" defendant fails for two reasons.  (Mot. at 10–12.)

***First***, as Judge Wilson explained in *Hurth*, "there simply is no rule of law requiring a court to dismiss a municipal entity as a duplicative, redundant, or

---

[6] *See Garcia v. San Bernardino Cnty.*, 2020 WL 2502429, at *3 (C.D. Cal. Jan. 29, 2020) (relying on *Vance* and *Garcia v. City of Merced*, 637 F. Supp. 2d 731 (E.D. Cal. 2008), which itself relied on *Vance* and *Stump*); *Sedgwick v. Unknown K-9 Handler*, 2012 WL 2326065, at *2 (S.D. Cal. June 19, 2012) (relying solely on *Vance*); *Nelson v. Cnty. of Sacramento*, 926 F. Supp. 2d 1159, 1170 (E.D. Cal. 2013) (relying on *Vance* and *City of Merced*, which itself relied on *Vance* and *Stump*); *Cordova v. City of Los Angeles*, 2016 WL 586702, at *1 n.1 (C.D. Cal. Jan. 20, 2016), *report and recommendation adopted*, 2016 WL 578406 (C.D. Cal. Feb. 12, 2016) (relying on *Vance* and *Nelson*).

[7] *See Estate of Osuna*, 392 F. Supp. 3d at 1171 (declining to follow *Kama* concurrence in favor of *Streit*); *Estate of Alejandro Sanchez*, 2019 WL 1745868, at *2–3 (same); *Estate of Mendez v. City of Ceres*, 390 F. Supp. 3d 1189, 1204 (E.D. Cal. 2019) (same); *Payne*, 2018 WL 6593347, at *5 (same); *Rodgers v. City of Pasadena*, 2016 WL 7240135, at *2–3 (C.D. Cal. Dec. 12, 2016) (same).

unnecessary defendant in cases where the municipality itself is named." 2009 WL 10696491, at *5. *Streit* itself involved both the County and LASD as defendants, which "implicitly supports the proposition that both a county and its sheriff's department may be sued simultaneously in the same suit." *Id.* Although a plaintiff will be able to collect from only one of the two defendants, she is "master of [her] claim[s]" and is "free to sue both of them." *Id.* As noted, numerous courts have declined to dismiss municipal departments where the municipality was also sued.[8]

**Second**, as a practical matter, LASD is not "redundant" with the County. While the County may be liable for LASD's wrongdoing, it has been unable to control Sheriff Villanueva and LASD in ways that are material to this litigation. Most notably, the County and LASD have been publicly feuding regarding a subpoena served on LASD by the County Inspector General for documents related to the accident-scene photos at issue in this case. In a public resolution, the L.A. County Sheriff Civilian Oversight Commission alleged that Sheriff Villanueva has "repeatedly failed to comply with a subpoena compelling the production of evidence related to the Bryant [accident-scene photos] investigation" and "blocked the [Inspector General's] efforts to examine his handling of the matter." (Request for Judicial Notice ("RJN") Ex. A at 9.) Sheriff Villanueva fired back in a letter to the Commission's Executive Director, accusing the Commission of making inaccurate statements and asserting that he had properly objected to the subpoena. (RJN Ex. B at 12–13.) Separately, on November 20, 2020, the Los Angeles County Superior Court granted a petition by the County to issue an order to show cause to initiate a

---

[8] All of the cases cited in note 2, *supra*, are examples, and there are numerous others. *See, e.g.*, *Weaver v. City of Stockton*, 2020 WL 5763763, at *6–7 (E.D. Cal. Sept. 28, 2020) (refusing to dismiss police department, where city also sued); *Valenzuela v. San Diego Police Dep't*, 2020 WL 804923, at *1, *3 (S.D. Cal. Feb. 18, 2020) (same); *Estate of Mendez v. City of Ceres*, 390 F. Supp. 3d 1189, 1204–05 (E.D. Cal. June 28, 2019) (same); *Rodgers v. City of Pasadena*, 2016 WL 7240135, at *2–3 (C.D. Cal. Dec. 12, 2016) (same).

contempt proceeding against Sheriff Villanueva for his refusal to obey a subpoena to testify before the Commission regarding COVID-19 in the County jail system. (RJN Ex. C at 16.)

LASD is not "redundant" with the County. Given the intense discord between the two, it is questionable whether the County could secure LASD's cooperation in discovery in this action if LASD were dismissed as party. It is important that LASD remain squarely subject to this Court's authority with an independent obligation to abide by federal rules and court orders as a party.

### B.   Mrs. Bryant Has Properly Pled Her Negligence Claim Against Sheriff Alex Villanueva

#### 1.   Sheriff Villanueva Owed a Duty of Care to Mrs. Bryant

Defendants' argument that Sheriff Villanueva did not owe a duty of care to Mrs. Bryant (Mot. at 17–20) suffers from two critical defects.

*First*, Defendants misstate California law in asserting that "a duty against a public supervisor only 'arises from the special relationship' supervisors 'had with the plaintiff.'" (Mot. at 17 (emphasis added).) As demonstrated in *Catsouras*, 181 Cal. App. 4th 856, a plaintiff can plead a duty of care by alleging facts that either support a special relationship or satisfy the multi-factor duty analysis set forth in *Rowland*, 69 Cal. 2d 108. *See Catsouras*, 181 Cal. App. 4th at 876. Specifically, the *Catsouras* court observed that California courts have employed a "variety of standards" in assessing "the question of duty in cases challenging the conduct of law enforcement personnel," including the "special relationship doctrine" and *Rowland*'s "multifactor duty analysis," with the latter being the "more common approach." *Id.* (citation omitted).

*Catsouras* involved allegations that members of the California Highway Patrol ("CHP") shared photos of a crash victim's remains by emailing them to friends and family members. *Id.* at 863. The trial court dismissed a negligence claim against the CHP officers on the theory that they owed no duty to the victim's

family, but the Court of Appeal reversed based on an application of the multi-factor *Rowland* analysis.  *Id.* at 863–64.  As the court explained:

> [I]n considering the existence of 'duty' in a given case several factors require consideration including [i] the foreseeability of harm to the plaintiff, [ii] the degree of certainty that the plaintiff suffered injury, [iii] the closeness of the connection between the defendant's conduct and the injury suffered, [iv] the moral blame attached to the defendant's conduct, [v] the policy of preventing future harm, [vi] the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and [vii] the availability, cost, and prevalence of insurance for the risk involved.  When public agencies are involved, additional elements include the extent of [the agency's] powers, the role imposed upon it by law and the limitations imposed upon it by budget[.]

*Id.* at 881 (citing *Rowland*, 69 Cal. 2d at 113 and *Thompson v. Cnty. of Alameda*, 27 Cal. 3d 741, 750 (1980)) (internal citations and quotation marks omitted).  Applying these factors, the Court of Appeal held that "the CHP and its officers owed [the victim's family] a duty of care not to place decedent's death images on the Internet for the purposes of vulgar spectacle."  *Id.* at 864.  The court emphasized that "it is not the role of the CHP or its officers to put the parents and siblings of the decedent at risk of harm of seeing the grotesque death images of their deceased loved one made the subject of Internet spectacle," and "[i]t is important to prevent future harm to other families by encouraging the CHP to establish and enforce adequate and effective policies to preclude its officers from engaging in such acts ever again."  *Id.* at 864, 886.

Similar reasoning applies to Sheriff Villanueva's conduct.  Upon learning within days of the accident that deputies under his command possessed improper photos of the victims' remains and had shared them with third parties, Sheriff Villanueva owed a duty to the victims' families to act in a reasonable manner and refrain from making the situation worse, such by as compromising the potential to trace the spread of the photos and sequester every copy.  Instead, Sheriff Villanueva

responded by instructing the deputies to destroy the photos before any effort was made to track their dissemination.  (Compl. ¶¶ 28, 44.)

Applying the *Rowland* criteria, Sheriff Villanueva's conduct supports the existence of a duty.  Regarding the first three factors, it was foreseeable that wiping the photos from the deputies' devices at a time when nothing had been done to trace their dissemination would undermine the potential to track down and secure every copy, meaning the victims' families will never be able to extinguish their fear that photos of their loved ones' remains will one day surface and go viral online.  These harms became certain the moment the photos were deleted, and it is uncontested that the deletion is directly attributable to Sheriff Villanueva.

Regarding the fourth and fifth factors, it is morally blameworthy for the head of a public agency to offer an incentive to government employees to destroy evidence of their misconduct, and it violates the public trust to cover up wrongdoing in a manner that prevents remediation of the harm caused by that very wrongdoing. Sheriff Villanueva's conduct is no less wrongful than if he were to grant leniency in exchange for a deputy deleting bodycam footage after using excessive force, making it harder for the victim to prove a civil-rights violation.  Acknowledging a duty of care would prevent future harm by encouraging law enforcement officers to refrain from spoliating evidence of misconduct and, as relevant here, exacerbating the harm caused by improper photos of deceased individuals.

The sixth, seventh, and public-agency factors also support a duty, as avoiding spoliation can easily be accomplished without burden or expense, and insurance for violations could be covered by existing policies held by law enforcement agencies. There is no reason to believe Sheriff Villanueva or LASD lack the money or capacity to constrain themselves from destroying evidence.

In summary, the holding of *Catsouras* and a straightforward application of the *Rowland* factors—including the foreseeability of the harm, the immorality of the conduct, the clear damage it caused, and the ease with which it could have been

1   avoided—dictates that Sheriff Villanueva owed a duty to Mrs. Bryant to act with

2   ordinary care upon learning of the photos and, at a minimum, refrain from

3   exacerbating the harm by destroying the audit trail for the improper photos.

4         ***Second***, in addition to disregarding the *Rowland* factors, the Motion does not

5   engage with Plaintiff's specific allegations supporting a special relationship between

6   Sheriff Villanueva and Mrs. Bryant.  Under the special relationship doctrine, "when

7   the state, through its agents, voluntarily assumes a protective duty toward a certain

8   member of the public and undertakes action on behalf of that member, thereby

9   inducing reliance, it is held to the same standard of care as a private person or

10  organization."  *See Arista*, 29 Cal. App. 5th at 1062 (citation omitted).

11        This is precisely what Plaintiff alleged in her complaint.  In the hours after the

12  accident, Mrs. Bryant met with Sheriff Villanueva at the Lost Hills station and

13  "expressed concern that the crash site was unprotected from photographers."

14  (Compl. ¶ 23.)  Notwithstanding his knowledge that his own deputies were prone to

15  abuse access to celebrity-related information and take unnecessary photos of human

16  remains, Sheriff Villanueva "assured [Mrs. Bryant] that the Sheriff's Department

17  was securing the crash site to ensure privacy."  (*Id.* ¶¶ 32–33, 67.)  "Based on her

18  conversation with Sheriff Villanueva, [Mrs. Bryant] believed the Sheriff's

19  Department would secure the crash site, and she did not take steps, either personally

20  or through a representative, to observe or monitor conduct at the crash site."  (*Id.*

21  ¶ 68.)  Sheriff Villanueva then did nothing, either directly or through instructions to

22  on-site supervisors, to monitor his deputies' conduct at the crash site.  (*Id.* ¶ 70.)

23        Defendants' only response to these allegations is to assert, without elaboration

24  or citation to authority, that Sheriff Villanueva's assurances did not create a special

25  relationship because they were "standard law enforcement action." (Mot. at 19.)  As

26  an initial matter, Defendants provide no support for the notion that it is "standard"

27  for a law enforcement officer to personally assure a victim's family that his

28  employees would ensure privacy at an accident scene where a major international

1  celebrity had perished and paparazzi, unmanned drones, and members of the public
2  were flocking to catch a glimpse.

3       But more importantly, the existence of a special relationship does not turn on
4  whether law enforcement activity is "standard."  For example, in *Mann v. State of*
5  *California*, 70 Cal. App. 3d 773 (1977), the California Court of Appeal held that a
6  California Highway Patrol Officer formed a special relationship with stranded
7  motorists when he "chose[] to investigate" stalled cars on the freeway and
8  "informed himself of the foreseeable danger to [the stranded motorists] from passing
9  traffic"—tasks that most would consider "standard" for a highway patrol officer.
10 *See id.* at 779–80; *see also Arista*, 29 Cal. App. 5th at 1061–62 (special relationship
11 sufficiently pled where plaintiff alleged sheriff's department personnel "undertook
12 rescue efforts" for a missing biker and induced reliance on those efforts).

13      By creating a special relationship with Mrs. Bryant through his personal
14 assurances to protect the victims' privacy, Sheriff Villanueva had a duty to proceed
15 with reasonable care, which at a minimum included (1) supervising his deputies to
16 ensure they did not violate the victims' remains by taking graphic photos for their
17 own personal gratification; and (2) refraining from behavior that exacerbated the
18 trauma caused by the photos, such as ordering their deletion before an audit trail
19 could be established.  (Compl. ¶ 37.)

20
21              **2.    Mrs. Bryant Has Stated a Proper Negligence Claim Based on
                        Sheriff Villanueva's Failure to Supervise His Deputies'
                        Conduct at the Crash Site**

22      Defendants' negligent supervision arguments fail because the California
23 Supreme Court has approved negligent supervision claims against public employees
24 and entities where there is a special relationship.  (See Mot. 16–17.)

25      Defendants appear to contend that (1) direct liability claims against public
26 entities for negligent supervision are invalid; and (2) courts have dismissed
27 negligent supervision claims against heads of law enforcement when the claims
28 appeared to be direct liability claims against public entities in disguise.  However,

neither of those situations applies here. Mrs. Bryant has alleged that the County and LASD are vicariously (not directly) liable for Sheriff Villanueva's breach of his special-relationship duty to supervise his deputies' conduct at the crash site (Compl. ¶ 75), and this type of theory against public employees and entities is supported by *C.A. v. William S. Hart Union High School District*, 53 Cal. 4th 861, 865 (2012), a case Defendants discuss extensively in a different section of their brief. In *C.A.*, the California Supreme Court considered whether a school district could be liable for sexual misconduct by a guidance counselor who was "inadequately supervised" by district employees. *Id.* at 865. Based on the special relationship that existed between school personnel and students, the Court held that the plaintiff's "theory of vicarious liability for negligent . . . supervision is a legally viable one." *Id*. at 865, 869–70.

Defendants' cited cases mostly pre-date *C.A.* and therefore offer little guidance, with the one exception being *H.B. v. City of Torrance*, 2017 WL 10518108, at *3 (C.D. Cal. Aug. 16, 2017), in which the court considered a negligent supervision claim against a police chief. Citing *C.A.*, the court confirmed that "in special circumstances a public entity can be held vicariously liable for negligent hiring and supervision by its employees," including when there is "a special relationship" between the supervisor and the victim. *Id.* (citation omitted). Stated differently, a plaintiff may successfully plead a negligent supervision claim against a public *employee* (directly) and his *employer* (vicariously) if she alleges a special relationship. *See Doe v. San Joaquin Cnty.*, 2019 WL 2106228, at *7 (E.D. Cal. May 14, 2019) (denying motion to dismiss negligent supervision claim against sheriff and county where plaintiff plead that the sheriff had a duty to protect the plaintiff prisoner due to a special relationship); *Zaiderman v. Los Angeles Cnty. Metro. Transp. Auth.*, 2020 WL 6048304, at *2 (C.D. Cal. July 20, 2020) (denying motion to dismiss negligent supervision claim against MTA employees based on special relationship with passengers).

Because Mrs. Bryant has sufficiently plead a special relationship, her negligent supervision claim against Sheriff Villanueva is valid.

### 3.  Sheriff Villanueva's Instructions to Spoliate Evidence Is Not a Discretionary Act Entitled to Immunity

Defendants' argument that Sheriff Villanueva's conduct is immune under Government Code section 820.2 suffers from four major defects.

***First***, Defendants have not carried their burden of establishing immunity.  *See AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 639 (9th Cir. 2012) (government bears the burden of establishing immunity under § 820.2). Discretionary acts immunity is narrow and reserved for "those areas of quasi-legislative policy-making which are sufficiently sensitive to justify a blanket rule that courts will not entertain a tort action alleging that careless conduct contributed to the governmental decision."  *Johnson v. State*, 69 Cal. 2d 782, 794 (1968); *see Avila v. Los Angeles Police Dep't*, 2012 WL 12886838, at *15 (C.D. Cal. Feb. 27, 2012) ("[I]n cases of negligence, immunity is the exception, not the rule.").  When asserted on a motion to dismiss, defendants can establish immunity based on <u>only</u> the allegations in the pleadings.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) ("As a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." (quotation marks omitted)).  This means Sheriff Villanueva must show—based only on the allegations in Mrs. Bryant's complaint—that he "<u>consciously exercised discretion</u> in the sense of assuming certain risks in order to gain other policy objectives" when he offered immunity to his deputies in exchange for their destruction of evidence.  *Lopez v. S. Cal. Rapid Transit Dist.*, 40 Cal. 3d 780, 794 (1985) (emphasis in original).

Defendants have not made this showing.  Rather, their argument is based on unsubstantiated facts and self-serving characterizations of Sheriff Villanueva's mindset and motivations that are not in Mrs. Bryant's complaint.  For example, Defendants assert that Sheriff Villanueva: (1) acted with a "goal" of "promptly

ensur[ing] that no photographs would be disseminated beyond their official Department use"; (2) "sought to prevent photographs from being disseminated for non-departmental use by motivating prompt and decisive action by his deputies"; and (3) "exercised his judgment and responded to 'changing circumstances' in an extremely time sensitive manner." (Mot. at 7, 15–16.) None of these purported facts come from the complaint, nor do they qualify under the narrow exceptions for extrinsic evidence on a motion to dismiss (documents attached to a complaint or information subject to judicial notice). *See Lee*, 250 F.3d at 688–89.

Defendants' attempts to reach beyond the complaint demonstrate why parties are rarely able to establish discretionary act immunity at the pleadings stage. As the Ninth Circuit has noted, "[i]t would be odd indeed if a plaintiff included in a Complaint allegations that would establish a basis for finding discretionary act immunity on the part of government defendants." *Cnty. of Tulare*, 666 F.3d at 640. Not surprisingly, case law is packed with examples of unsuccessful attempts to establish discretionary immunity at the pleadings stage.[9]

Defendants rely on *Steinle v. City & Cnty. of San Francisco*, 919 F.3d 1154 (9th Cir. 2019), but *Steinle* is the exception that proves the rule. *Steinle* concerned a sheriff's department's issuance of a detailed memo that "changed the longstanding policy and procedure" of the department regarding what information the department would freely provide to ICE. *Id.* at 1159 (quotation marks omitted). The *Steinle*

---

[9] *Garcia v. City of Los Angeles*, 2020 WL 2129830, at *11 (C.D. Cal. Feb. 15, 2020) (denying motion to dismiss based on § 820.2 immunity where court could not conclude "[o]n the face of the [complaint] . . . that the LAPD officer at issue was engaged in a policy decision"); *Walsh v. Tehachapi Unified Sch. Dist.*, 827 F. Supp. 2d 1107, 1122 (E.D. Cal. 2011) (declining to dismiss defendants because "the facts alleged in the pleadings do not establish that [defendants] consciously and deliberately weighed various policy objectives in deciding not to investigate or discipline the alleged harassment"); *Lopez*, 40 Cal. 3d at 794 (noting the required showing to establish discretionary act immunity "could not have been made by [the defendant] at the demurrer stage").

court held that it could decide discretionary immunity at the pleadings stage because the analysis was "not dependent on disputed facts" and the memo "on its face . . . reflect[ed] a basic policy decision." *Id.* at 1161–62.  The memo itself showed that the sheriff "considered applicable laws and regulations, determined what information should and should not be provided to ICE, and established a process for providing information to ICE when required by law." *Id.* at 1161.  Needless to say, Sheriff Villanueva's hasty instruction to spoliate evidence bears no resemblance.

What's more, the stark differences between Mrs. Bryant's allegations and the characterizations in Defendants' Motion demonstrate that there are disputed fact issues.  Mrs. Bryant contends that the Sheriff's order to destroy the photos was a self-serving attempt to avoid embarrassment and legal headaches, while Defendants say it was a cool-headed decision designed to control the spread of the photos.  It is a jury's role to assess which is true, but Defendants urge the Court to accept their version of events at the pleadings stage—the opposite of what is required.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[W]hen ruling on a motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.").

**Second**, Mrs. Bryant has alleged that Sheriff Villanueva's informal order to delete the photos deviated from LASD's formal policies and procedures, which undermines Defendants' contention that he is immune because his conduct set or constituted department policy.  (Compl. ¶¶ 6, 27.)  In *Avila v. Los Angeles Police Department*, a terminated police officer sued the department based on an allegedly mishandled internal affairs investigation, and the police department argued immunity under section 820.2.  2012 WL 12886838, at *2, *12.  Finding that the department deviated from "established guidelines and procedures" in the investigation, the court held that the department's decisions were not policy decisions immune from judicial scrutiny, but instead "individual decisions specific to Plaintiff about how to implement department policy." *Id.* at *15.  Given the

parties' dispute regarding whether Sheriff Villanueva deviated from LASD policies, it is too early to determine whether discretionary act immunity applies.

*Third*, accepting as true Mrs. Bryant's allegations that the Sheriff was attempting to avoid embarrassment and legal issues by instructing his deputies to spoliate evidence, Sheriff Villanueva is clearly ineligible for immunity. A public official's decision to cover up misconduct is not the type of discretionary policy decision deserving of immunity from suit. *See Barner v. Leeds*, 24 Cal. 4th 676, 689 (2000) (explaining that immunity is reserved for "sensitive decision[s] implicating fundamental policy concerns warranting judicial abstention"); *So v. Bay Area Rapid Transit*, 2013 WL 5663207, at *8 (N.D. Cal. Oct. 17, 2013) (declining to apply immunity to BART employees alleged to have concealed a crime and destroyed evidence in retaliation against victims of the crime).

*Fourth*, Defendants mischaracterize the law by asserting that "courts have held that decisions regarding whether <u>and how</u> to conduct an investigation fall squarely within the statutory immunity of Section 820.2." (Mot. at 13 (emphasis added).) Defendants cite *Pallas v. Accornero*, 2019 WL 3975137 (N.D. Cal. Aug. 22, 2019), for this proposition, but *Pallas* cautioned that, while "a police officer's initial decision to investigate" may be eligible for discretionary act immunity, "the officer is <u>not</u> immunized from any negligence in <u>conducting the investigation</u>." *Id.* at *6 (emphasis added). Indeed, it is well established that <u>how</u> an investigation is conducted is not necessarily immune.[10] *See Trujillo v. City of Ontario*, 428 F. Supp. 2d 1094, 1123 (C.D. Cal. 2006) (observing that "[d]ecisions on how to proceed with an investigation are routine ones," as opposed to policy decisions).

---

[10] *See, e.g.*, *Martinez v. City of Los Angeles*, 141 F.3d 1373, 1379 (9th Cir. 1998) (holding that Cal. Gov't Code § 820.2 does not immunize officers for negligently conducting investigations); *Mann*, 70 Cal. App. 3d at 778 (same).

1    In summary, Defendants have failed to show based on the allegations in the

2    complaint that Sheriff is entitled to immunity for his orders to spoliate evidence.

3    **C.    Leave to Amend Would Not Be Futile**

4    Federal Rule of Civil Procedure 15(a)(2) provides that courts "should freely

5    give leave when justice so requires," and the Ninth Circuit requires that this policy

6    be applied with "extreme liberality." *Morongo Band of Mission Indians v. Rose*,

7    893 F.2d 1074, 1079 (9th Cir. 1990).  Defendants provide no specific explanation

8    for why the purported deficiencies in Plaintiff's complaint cannot be cured by

9    amendment, and Plaintiff urges the Court to permit amendment should it grant any

10   portion of the Motion.

11   **V.    CONCLUSION**

12   For the foregoing reasons, Plaintiff respectfully requests that the Court deny

13   Defendants' Motion in its entirety.

14

15

16   DATED:  December 7, 2020          MUNGER, TOLLES & OLSON LLP

17

18                                    By:  _____
                                                 */s/ Luis Li*
19                                               LUIS LI

20                                    Attorneys for Plaintiff Vanessa Bryant

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS