UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.    **CV 20-9582-JFW(Ex)**                                           Date:  December 28, 2020

Title:     Vanessa Bryant -v- County of Los Angeles, et al.

**PRESENT:**

**HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| Shannon Reilly | None Present |
| Courtroom Deputy | Court Reporter |

**ATTORNEYS PRESENT FOR PLAINTIFFS:**        **ATTORNEYS PRESENT FOR DEFENDANTS:**
None                                                                                        None

**PROCEEDINGS (IN CHAMBERS):**    ORDER GRANTING IN PART, DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT [filed 11/23/2020; Docket No. 31]

On November 23, 2020, Defendants the County of Los Angeles (the "County"), Los Angeles County Sheriff's Department ("LASD"), and Los Angeles County Sheriff Alex Villanueva ("Sheriff Villanueva") (collectively, "Defendants") filed a Motion to Dismiss Plaintiff's Complaint.  On December 7, 2020, Plaintiff Vanessa Bryant ("Plaintiff" or "Mrs. Bryant") filed her Opposition.  On December 14, 2020, Defendants filed a Reply.  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found the matter appropriate for submission on the papers without oral argument.  The matter was, therefore, removed from the Court's December 28, 2020 hearing calendar and the parties were given advance notice.  After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

This case arises from activities surrounding a tragic helicopter crash on January 26, 2020, that killed Plaintiff's husband, Kobe Bryant, and thirteen-year old daughter, Gianna Bryant, along with seven others.  Compl. ¶ 1.

According to the Complaint, in the hours after the accident, Mrs. Bryant met with Sheriff Villanueva at the Lost Hills sheriff's station and "expressed concern that the crash site was unprotected from photographers."  *Id.* ¶¶ 23, 67.  In response, Sheriff Villanueva assured her that "his deputies were securing the scene" to ensure privacy.  *Id*.

Relying on public statements made by Sheriff Villanueva, Plaintiff alleges that, at the time of the crash, Sheriff Villanueva knew that taking unnecessary photos of human remains at crime and

accident scenes has long been "a problem in law enforcement across the nation," with some officers even keeping "death books" of such photos from throughout their careers. *Id.* ¶ 32. According to the Complaint, however, "Sheriff Villanueva took no steps to deliver on his assurances with respect to the conduct of his own deputies at the crash site." *Id.* ¶ 24.

Plaintiff alleges that at least eight sheriff's deputies at the crash site used their personal cell phones to take photos of the victims'' remains for their own personal gratification, then shared those photos with others over the following days "in settings that had nothing to do with investigating the crash," including one instance in which a deputy "showed off" photos of the victims' remains at a bar in Norwalk, California. *Id.* ¶¶ 24-26. According to Plaintiff, Sheriff Villanueva learned in the days after the accident that photos of the victims' remains had been improperly taken and shared, but did not follow protocol in investigating the misconduct and did not alert the victims' families to the existence of the photos. *Id.* ¶¶ 27, 29-31. Plaintiff alleges that, instead, Sheriff Villanueva "summoned his deputies to the Lost Hills station and told them that if they came clean and deleted the photos, they would not face any discipline." *Id.* ¶ 28. The deputies allegedly responded by claiming that they had deleted the photos and, to the extent they had transmitted the photos to others, those persons had also deleted them. *Id.*

In September 2020, Plaintiff filed the present action against the County, LASD, Sheriff Villanueva, and Doe defendants for violation of her civil rights, negligence, invasion of privacy, and intentional infliction of emotional distress. On November 18, 2020, this Court dismissed all unserved Doe defendants from the case. Dkt. No. 28. Therefore, the only remaining defendants are the County, LASD, and Sheriff Villanueva.[1] On November 23, 2020, the County, LASD, and Sheriff Villanueva filed the present motion to dismiss LASD and Sheriff Villanueva as defendants. Dkt. No. 31.

## II. LEGAL STANDARD

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. "A Rule 12(b)(6) dismissal is proper only where there is either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Summit Technology, Inc. v. High-Line Medical Instruments Co., Inc.*, 922 F. Supp. 299, 304 (C.D. Cal. 1996) (quoting *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988)). However, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted). "[F]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

In deciding a motion to dismiss, a court must accept as true the allegations of the complaint and must construe those allegations in the light most favorable to the nonmoving party. *See, e.g.,*

---

[1]According to Plaintiff's Opposition, the parties have agreed "on a process whereby Plaintiff should obtain the Doe individuals' names by mid-January, at which point she intends to join them as defendants." Opposition (Docket No. 36) at 12.

*Wyler Summit Partnership v. Turner Broadcasting System, Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). "However, a court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations." *Summit Technology*, 922 F. Supp. at 304 (citing *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981) *cert. denied*, 454 U.S. 1031 (1981)).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990) (citations omitted). However, a court may consider material which is properly submitted as part of the complaint and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201 without converting the motion to dismiss into a motion for summary judgment. *See, e.g., id.*; *Branch v. Tunnel*, 14 F.3d 449, 454 (9th Cir. 1994).

Where a motion to dismiss is granted, a district court must decide whether to grant leave to amend. Generally, the Ninth Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted. *See, e.g., DeSoto v. Yellow Freight System, Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). However, a Court does not need to grant leave to amend in cases where the Court determines that permitting a plaintiff to amend would be an exercise in futility. *See, e.g., Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").

### III. DISCUSSION

#### A. LASD Is A Proper Defendant.

Defendants argue that LASD should be dismissed as a defendant because: (1) it is a department of the County, not a separate legal entity that can be sued; (2) LASD is not a "person" within the meaning of 42 U.S.C. § 1983; and (3) it is a "redundant" defendant given that the County is a defendant in this case. The Court rejects these arguments and concludes that LASD is a proper defendant..

Pursuant to Federal Rule of Civil Procedure 17(b), whether a party has the capacity to be sued in federal court is determined "by the law of the state where the court is located." Fed. R. Civ. P. 17(b)(3). California's Government Code provides that "[a] public entity may sue and be sued," and that public entities include "a county, city, district, public authority, public agency, and any other political subdivision or public corporation in the State." Cal. Gov't Code §§ 945, 811.2. Based on an analysis of these provisions of the California Government Code, the Ninth Circuit has held that LASD is a "separately suable entity" in federal court. *Streit v. Cnty. of Los Angeles*, 236 F.3d 552, 555-56, 566 (9th Cir. 2001); *see also Shaw v. Cal. Dep't of Alcoholic Beverage Control*, 788 F.2d 600, 604-05 (9th Cir. 1986) (holding the San Jose Police Department was "a public entity under section 811.2"); *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 624 n.2 (9th Cir. 1988) ("Municipal police departments are 'public entities' under California law and, hence, can be sued in federal court for alleged civil rights violations."). Accordingly, the Court concludes that LASD is a separately suable entity in federal court.

The Court also concludes that LASD is a "person" within the meaning of 42 U.S.C. § 1983,

and thus is subject to suit under that statute.  In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court held that Congress intended "municipalities and other local government units to be included among those persons to whom § 1983 applies." *Id.* at 690 (emphasis added).  *Monell* itself involved a claim against a municipal department (the Department of Social Services of the City of New York), and "it follows from the Court's allowance of the suit in *Monell* . . . that a plaintiff in a § 1983 suit may name a municipal department as defendant." *Hurth v. Cnty. of Los Angeles*, 2009 WL 10696491, at *2 (C.D. Cal. Oct. 28, 2009) (alteration in original).  In the years since *Monell*, the Ninth Circuit has allowed numerous § 1983 suits to proceed against municipal departments -- including law enforcement departments -- even where a city or county was also named as a defendant.  *See, e.g., Streit*, 236 F.3d at 555-56 ("[W]e hold that both the LASD and the County are subject to liability under section 1983."); *Karim-Panahi*, 839 F.2d at 624 (affirming denial of motion to dismiss § 1983 claim brought against both the City of Los Angeles and the Los Angeles Police Department).  Accordingly, the Court concludes that LASD may be subject to suit under 42 U.S.C. § 1983.

Finally, the Court concludes that Plaintiff is the master of her Complaint, and that she may sue both LASD and the County.  "[T]here simply is no rule of law requiring a court to dismiss a municipal entity as a duplicative, redundant, or unnecessary defendant in cases where the municipality itself is named."  *Hurth*, 2009 WL 10696491, at * 5.

For the foregoing reasons, Defendants' motion to dismiss LASD as a defendant in this action is **DENIED**.

### B.  Plaintiff Has Failed to State a Negligence Claim Against Sheriff Villanueva.

Defendants argue that Plaintiff's negligence claim against Sheriff Villanueva should be dismissed for three reasons: (1) Sheriff Villanueva did not owe a duty of care to Plaintiff; (2) Sheriff Villanueva cannot be liable for negligent supervision; and (3) Sheriff Villanueva has discretionary act immunity under California Government Code § 820.2 for his conduct related to LASD's investigation of the improper photos.  Because the Court concludes that Sheriff Villanueva did not owe a duty of care to Plaintiff, the Court need not address Defendants' remaining arguments.

In order to state a claim for negligence under California law, Plaintiff must plead facts that show that the "defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause" of her resulting injuries.  *Nally v. Grace Community Church*, 47 Cal.3d 278, 292-93 (1988).  "The existence of a duty of care is a question of law to the determined by the court alone. . . . Duty is simply a shorthand expression for the sum total of policy considerations favoring a conclusion that the plaintiff is entitled to legal protection." *Adams v. City of Fremont*, 68 Cal. App. 4th 243, 274–75 (1998), as modified on denial of reh'g (Jan. 4, 1999) (citations omitted).

California courts have held that a duty of care may be established either through the existence of a special relationship or through the multi-factor duty analysis set forth in *Rowland v. Christian*, 69 Cal. 2d 108 (1968).  *See Catsouras v. Dep't of Cal. Highway Patrol*, 181 Cal. App. 4th 856, 876 (2010) (observing that California courts have employed a "variety of standards" in assessing "the question of duty in cases challenging the conduct of law enforcement personnel" including the "special relationship doctrine" and *Rowland*'s "multifactor duty analysis," with the

latter being the "more common approach" (citation omitted)).  Plaintiff contends she has plead facts establishing a duty of care under both the special relationship doctrine and the *Rowland* factors, and the Court will consider both.

        1.        <u>Sheriff Villanueva Did Not Have a Special Relationship with Plaintiff</u>.

The Court concludes that Sheriff Villanueva's conversation with Plaintiff did not create a special relationship with Plaintiff.

As an initial matter, "a public employee is liable for injury caused by his act or omission to the same extent as a private person."  Cal. Gov't Code § 820(a).  And, "[a]s a general rule, a person who has not created a peril has no duty to come to the aid of another no matter how great the danger in which the other is placed, or how easily he could be rescued, unless there is some relationship between them which gives rise to a duty to act."  *Benavidez v. San Jose Police Dept.*, 71 Cal. App. 4th 853, 859-60 (1999) (quotations and citations omitted).

Importantly, law enforcement officers do not assume any greater obligations to individual members of the public than private persons, simply because they are law enforcement officers.  As the California Court of Appeal stated in *Adams v. City of Fremont* (and quoted extensively by the California Court of Appeal in *Catsouras v. Department of California Highway Patrol)*:

> [The California] Supreme Court has acted to dispel widely held misconceptions that law enforcement's public safety function imposes a duty on police officers to protect individual constituents as opposed to the general public. Although police officers regularly respond to third parties' requests for assistance, they are not professional Good Samaritans subject to a novel claim of malpractice whenever their response falls short of what reasonably prudent police employees would have done in similar circumstances. A person does not, by becoming a police officer, insulate himself from any of the basic duties which everyone owes to other people, *but neither does he assume any greater obligation to others individually*. The only additional duty undertaken by accepting employment as a police officer is the duty owed to the public at large.

*Adams v. City of Fremont*, 68 Cal. App. 4th 243, 274–75 (1998), as modified on denial of reh'g (Jan. 4, 1999) (quotations and citations omitted) (emphasis added); *see also Catsouras*,181 Cal.App.4th at 877 (quoting same).

There is a narrow exception for this so-called "public duty" rule "for *unusual* police conduct that creates a 'special relationship' between the police officer and an individual member of the public."  *Adams*, 68 Cal. App. 4th at 276 (emphasis added).  "In the case of law enforcement officers, a special relationship only has been found in a *few narrow circumstances*" and "precious few courts have actually imposed a duty of care on law enforcement officers under this doctrine."  *Id.* at 277 (quotations and citations omitted) (emphasis in original).  These cases "involved police officers who made misrepresentations that induced a citizen's detrimental reliance, placed a citizen in harm's way, or lulled a citizen into a false sense of security and then withdrew essential safety precautions."  *Id.* at 280.  As one California Court of Appeal stated the rule, "[a] special relationship can be found when the state, through its agents, voluntarily assumes a protective duty toward a

certain member of the public and undertakes action on behalf of that member, thereby inducing reliance . . . ." . *Arista v. Cnty. of Riverside*, 29 Cal. App. 5th 1051, 1061 (2018), as modified on denial of reh'g (Dec. 13, 2018) (quotations and citation omitted).

Plaintiff argues that Sheriff Villanueva voluntarily assumed a protective duty toward her when, in response to her expression of concern that the crash site was unprotected from "photographers," Sheriff Villanueva "assured her that his deputies were securing the scene" to ensure privacy. Compl. ¶¶ 23, 67. Based on his assurance, Plaintiff alleges that she "believed the Sheriff's Department would secure the crash site, and she did not take steps, either personally or through a representative, to observe or monitor conduct at the crash site." *Id.* ¶ 68.

The Court concludes that Sheriff Villanueva's general assurance that his deputies would "secure the scene" is insufficient to create a special relationship. "Securing a scene" is common law enforcement parlance and standard procedure, and Sheriff Villanueva's assurance that his deputies would do so was not specific enough to induce detrimental reliance (at least with respect to the specific harm at issue in this case). The conduct that Plaintiff complains of is not Sheriff Villanueva's failure to ensure that his deputies "secured the scene" from third parties (including photographers) but rather his failure to ensure that his deputies themselves did not take photos for their own personal gratification rather than for law enforcement purposes. The connection between his assurance and the deputies' conduct is simply too tenuous to imply a duty. If the Court were to imply a special relationship under these circumstances, the narrow exception would swallow the general rule and stifle communication between law enforcement officers and victims.[2]

### 2. Sheriff Villanueva Did Not Owe a Duty Under the *Rowland* Factors.

The Court next analyzes whether a duty exists under the *Rowland* factors. The following factors control whether a duty exists in a given case:

> [i] the foreseeability of harm to the plaintiff, [ii] the degree of certainty that the plaintiff suffered injury, [iii] the closeness of the connection between the defendant's conduct and the injury suffered, [iv] the moral blame attached to the defendant's conduct, [v] the policy of preventing future harm, [vi] the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and [vii] the availability, cost, and prevalence of insurance for the risk involved. When public agencies are involved, additional elements include the extent of [the agency's] powers, the role imposed upon it by law and the limitations imposed upon it by budget[.]

*Catsouras*, 181 Cal. App. 4th at 881 (citing *Rowland*, 69 Cal. 2d at 113 and *Thompson v. Cnty. of Alameda*, 27 Cal. 3d 741, 750 (1980)) (internal citations and quotation marks omitted).

---

[2]Plaintiff concedes that her claim against Sheriff Villanueva for negligent supervision requires a special relationship between her and Sheriff Villanueva. *See* Opposition (Docket No. 36) at 24-26. Because the Court concludes that Sheriff Villanueva did not have a special relationship with her, her claim based on negligent supervision fails.

Plaintiff argues that Sheriff Villanueva's conduct after the incident, i.e. instructing his deputies to delete the photos on their cell phones before any effort was made to track the dissemination of those photos, supports the existence of a duty under the *Rowland* factors. In asking the Court to find that Sheriff Villanueva owed her a duty based on this conduct, Plaintiff heavily relies on the California Court of Appeal's decision in *Catsouras v. Department of California Highway Patrol*, 181 Cal. App. 4th 856 (2010). In *Catsouras*, two California Highway Patrol officers e-mailed horrific photographs of the decedent's mutilated corpse to their friends and family members on Halloween for pure shock value. 181 Cal. App. 4th at 863. Once received, the photographs were forwarded to others and were spread across the Internet. *Id.* The California Court of Appeal applied the *Rowland* factors in holding that the California Highway Patrol and the two officers "owed [a decedent's family] a duty of care not to place decedent's death images on the Internet for the purposes of vulgar spectacle." *Id.* at 864. In other words, they "owed plaintiffs a duty not to exploit CHP-acquired evidence in such a manner as to place them at foreseeable risk of grave emotional distress." *Id.* In reaching that conclusion, the court found three of the *Rowland* factors to be particularly important: foreseeability, moral blame, and the prevention of future harm. *Id*. The court stated:

> It was perfectly foreseeable that the public dissemination, via the Internet, of photographs of the decapitated remains of a teenage girl would cause devastating trauma to the parents and siblings of that girl. Moreover, the alleged acts were morally deficient. We rely upon the CHP to protect and serve the public. It is antithetical to that expectation for CHP officers to inflict harm upon us by making the ravaged remains of our loved ones the subjects of Internet sensationalism. it is important to prevent future harm to other families by encouraging the CHP to establish and enforce adequate and effective policies to preclude its officers from engaging in such acts ever again.

*Id.*

While *Catsouras* strongly supports the existence of a duty in this case with respect to the LASD deputies who took the photos of the victims and shared them with others, it does not support imposing a duty on Sheriff Villanueva. Plaintiff attempts to equate Sheriff Villanueva's conduct (i.e., instructing his deputies to delete the photos on their cell phones before any effort was made to track the dissemination of those photos) with the CHP officers' conduct in *Catsouras* (i.e., sharing the photos of the decapitated victim with friends and family). The Court does not find their conduct remotely similar. Indeed, Sheriff Villanueva instructed the deputies to *delete* the photos. He did not *share* the photos. The moral blameworthiness of Sheriff Villanueva's conduct is low in comparison to the CHP officers' conduct in *Catsouras*. Although Plaintiff claims that Sheriff Villanueva's conduct was a "self-serving attempt to avoid embarrassment and legal headaches," Sheriff Villanueva's conduct may have benefitted Plaintiff by making it less likely that those photos would be disseminated. For the same reason, the foreseeability of Plaintiff's harm and the closeness of the connection between Sheriff Villanueva's conduct and the injury suffered also do not support finding a duty. It defies common sense that Sheriff Villanueva's instruction to delete the photos would somehow increase the risk of public dissemination of those very same photos or that Sheriff Villanueva's conduct would cause Plaintiff additional emotional distress.

The Court is not minimizing the reprehensibility of the conduct at issue in this case. The question, however, is *who* is the appropriate defendant. After analyzing the *Rowland* factors, the Court concludes that Sheriff Villanueva is not a proper defendant because he did not have a legal duty under the circumstances alleged in the Complaint. Accordingly, Defendants' Motion to Dismiss the negligence claim against Sheriff Villanueva is **GRANTED**.

Plaintiff requests leave to amend her Complaint in the event the Court grants any portion of Defendants' Motion to Dismiss Plaintiff's Complaint. In light of the liberal policy favoring amendments, the Court grants Plaintiff leave to amend her negligence claim against Sheriff Villanueva.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's Complaint is **GRANTED in part, DENIED in part.** Specifically, Defendants' Motion to Dismiss LASD from Plaintiff's Complaint is **DENIED**. Defendants' Motion to Dismiss Plaintiff's third claim for relief for negligence against Sheriff Villanueva is **GRANTED**. Plaintiff's negligence claim against Sheriff Villanueva is **DISMISSED with leave to amend**.

IT IS SO ORDERED.