JONATHAN C. McCAVERTY (State Bar No. 210922)
Principal Deputy County Counsel
jmccaverty@counsel.lacounty.gov
OFFICE OF THE COUNTY COUNSEL
General Litigation Division
500 West Temple Street, Suite 468
Los Angeles, California 90012
Tel.: (213) 974-1828 | Fax: (213) 626-7446

Attorneys for Defendant
LOS ANGELES COUNTY SHERIFF'S DEPARTMENT

LOUIS R. MILLER (State Bar No. 54141)
smiller@millerbarondess.com
MIRA HASHMALL (State Bar No. 216842)
EMILY A. RODRIGUEZ-SANCHIRICO (State Bar No. 311294)
MILLER BARONDESS, LLP
1999 Avenue of the Stars, Suite 1000
Los Angeles, California 90067
Tel.: (310) 552-4400 | Fax: (310) 552-8400

Attorneys for Defendants
COUNTY OF LOS ANGELES,
LOS ANGELES COUNTY FIRE DEPARTMENT, JOEY CRUZ, RAFAEL MEJIA, MICHAEL RUSSELL, and RAUL VERSALES

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| VANESSA BRYANT, a California resident,<br><br>      Plaintiff,<br><br>    v.<br><br>COUNTY OF LOS ANGELES, a public entity, *et al.*,<br><br>      Defendants. | **CASE NO. 2:20-cv-09582-JFW-E**<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO MODIFY THE COURT'S SCHEDULING ORDER**<br><br>Judge: Hon. John F. Walter<br>Date: June 7, 2021<br>Time: 1:30 PM<br>Crtrm.: 7A (First Street Courthouse)<br><br>Assigned to Hon. John F. Walter and Magistrate Judge Charles F. Eick |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................5

II. LEGAL STANDARD ...........................................................................................7

III. BACKGROUND ...................................................................................................7

    A. The January 26, 2020 Accident ..................................................................7

    B. Procedural History ......................................................................................8

    C. Overview Of Discovery ..............................................................................8

        1. The Forensic Protocol .......................................................................8

        2. The IAB Report ................................................................................9

        3. Written Discovery .............................................................................9

        4. Depositions .......................................................................................9

        5. Plaintiff's Meet And Confer Efforts ...............................................10

        6. Scheduling Order Deadlines ..........................................................10

        7. Plaintiff's Discovery Responses .....................................................10

IV. ARGUMENT .......................................................................................................11

    A. This Lawsuit Does Not Warrant Scorched Earth Discovery ....................11

    B. Plaintiff Has Not Been Diligent ................................................................12

    C. Plaintiff Is Not Entitled To Fifty Depositions ..........................................14

    D. Discovery From The Deputy Defendants And LACFD Does Not Justify Granting This Motion ..............................................................16

    E. Plaintiff Delayed Filing This Motion ........................................................17

    F. Defendants Would Be Prejudiced If The Motion Is Granted ...............18

V. CONCLUSION ...................................................................................................18

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Acosta v. Sw. Fuel Mgmt., Inc.*,
  No. 2:16 CV 4547-FMO (AGRx), 2017 WL 8941165 (C.D. Cal. Sept. 19, 2017) .................................................................................. 14, 15

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
  No. C 11-cv-1846 LHK (PSG), 2012 WL 762240, (N.D. Cal. Mar. 8, 2012) ................................................................................................ 15

*Espinoza v. Ashe*,
  No. 1:16-cv-00193-JLT, 2017 WL 1549948 (E.D. Cal. May 1, 2017) .......... 12

*Fernandes v. TW Telecom Holdings, Inc.*,
  No. 2:13-cv-2221-GEB-CKD, 2015 WL 1874872 (E.D. Cal. Apr. 23, 2015) ............................................................................................ 12, 17

*Genentech, Inc. v. Trs. of Univ. of Pa.*,
  No. 10-CV-02037-LHK, 2011 WL 4965638 (N.D. Cal. Sept. 16, 2011) ....... 17

*Johnson v. Mammoth Recreations, Inc.*,
  975 F.2d 604 (9th Cir. 1992) ........................................................................ 7

*Marsh v. County of San Diego*,
  680 F.3d 1148 (9th Cir. 2012) ................................................................ 5, 11

*MHF Zweite Acad. Film GmbH & Co. KG v. Warner Bros Entm't Inc.*,
  No. CV 12-2381-JFW (JCx), 2012 WL 13012677 (C.D. Cal. Aug. 13, 2012) (Walter, J.) ......................................................................................... 7

*Muhammad v. California*,
  No. CV 18-4017 JAK (SS), 2019 WL 6315536 (C.D. Cal. Sept. 19, 2019) ............................................................................................ 17, 18

*MultiCraft Imps., Inc. v. Mariposa USA, Inc.*,
  No. CV 16-3975 DMG (AJWx), 2017 WL 5665214 (C.D. Cal. June 8, 2017) ........................................................................................................ 18

*Ortega v. County of Los Angeles*,
  No. CV 05-2246-JFW (RZx), 2006 WL 8434703 (C.D. Cal. Jan. 31, 2006) (Walter, J.),
  *on reconsideration*, No. CV 05-2246-JFW (RZx), 2006 WL 8434713 (C.D. Cal. Feb. 24, 2006) ...................................................................................... 16

**STATE CASES**

*Castouras v. Dep't of Cal. Highway Patrol*,
  181 Cal. App. 4th 856 (2010),
  *as modified on denial of reh'g* (Mar. 1, 2010) ............................................. 5, 11

*Cedars-Sinai Med. Ctr. v. Superior Court*,
  18 Cal. 4th 1 (1998) ..................................................................................... 11

**FEDERAL STATUTES**

42 U.S.C. § 1983 .................................................................................... 5, 8, 11

**FEDERAL RULES**

Fed. R. Civ. P. 16 ...................................................................................... 17, 18

Fed. R. Civ. P. 16(b)(4) ..................................................................................... 7

Fed. R. Civ. P. 30(a)(2)(A)(i) ......................................................................... 14

## I. INTRODUCTION

Plaintiff Vanessa Bryant ("Plaintiff") does not need a six-month push of all deadlines to litigate this straightforward case. The material facts are not in dispute. Plaintiff is unnecessarily seeking to protract and multiply the proceedings.

The First Amended Complaint ("FAC") asserts claims for violation of the Fourteenth Amendment (42 U.S.C. § 1983), negligence, and invasion of privacy. The basis for these claims is that the Defendants showed accident site photographs to other government personnel and to a friend who is a bartender in Norwalk. The County has given Plaintiff documents explaining exactly what happened, when, and why. It is undisputed that only government personnel and one friend saw the photographs in question. There has been no public dissemination—nothing in the media, nothing on the Internet.

Plaintiff alleges that this: (i) deprived Plaintiff of substantive due process rights; (ii) constituted a breach of a duty owed Plaintiff; and (iii) violated Plaintiff's right to privacy. On the undisputed facts, there are no viable claims.

The cases Plaintiff relies on involve *public dissemination* of pictures of human remains, and that did not occur here. In <u>Marsh v. County of San Diego, 680 F.3d 1148 (9th Cir. 2012)</u>, the court held that public distribution of post-mortem pictures of a child victim to a newspaper could give rise to a cognizable injury. <u>Id.</u> at 1158-60 (affirming summary judgment for defendants because there was no viable <u>Monell</u> claim and because qualified immunity protected the retired prosecutor who gave the photographs to the media). In <u>Catsouras v. Department of California Highway Patrol, 181 Cal. App. 4th 856 (2010), *as modified on denial of reh'g*</u> (Mar. 1, 2010), the court held that highway patrol officers have a duty "not to place decedent's death images on the Internet for . . . lurid titillation." <u>Id</u>. at 886 (officers who distributed the photographs had qualified immunity).

There is no public dissemination and no "lurid titillation" here. For Plaintiff to prevail in this case, the Court would have to extend the law to encompass first

responders sharing accident site photographs with each other, and one instance where a deputy showed photographs on his device to a friend. This would be new law and would trigger qualified immunity.

Against this backdrop, Plaintiff's motion to amend the scheduling order is not well taken. Plaintiff does not need, nor is she entitled to, over 50 depositions. The parties know who took accident site photographs, who they were shared with, and when they were deleted. That is what this case is about. It is not about what Plaintiff perceives to be inadequacies in the County's internal investigations and personnel decisions regarding the photographs.

The County has been transparent and forthcoming with Plaintiff. In November 2020, the County sent Plaintiff a draft forensic protocol so the parties could conduct a forensic examination of phones and confirm that all photographs had been deleted. In December 2020, the County worked with Plaintiff to produce a key Internal Affairs Bureau Report ("IAB Report"), in a way that did not violate the privacy rights of the individuals identified, as quickly as it could. In March 2021, when Plaintiff in a related case asked for documents from the Los Angeles County Fire Department ("LACFD"), the County produced LACFD's investigation reports to Plaintiff—even though she had not served discovery requests to LACFD.

The County has now produced over 20,000 pages of documents to Plaintiff. Plaintiff, meanwhile, has still not agreed to a forensic protocol, has produced zero documents, has objected to the County's written discovery, and has served only a handful of deposition notices. Plaintiff has had the IAB Report since January 6, 2021. She has had the LACFD investigation reports since March 22, 2021. In other words, Plaintiff has known the key, undisputed facts in this case for months.

It is now May 17, 2021, and she has yet to conduct the depositions of any of the involved personnel. Instead, Plaintiff has dedicated countless hours to meaningless discovery disputes and posting recklessly about the Defendants on social media—all while taking the position that her 50 depositions cannot begin

until she has every single document in the County's possession. That is not diligence. There is no basis for modifying the scheduling order.

The parties have four months to complete discovery. That is enough. Defendants want their day in court.

## II. LEGAL STANDARD

Pretrial scheduling orders may be modified for "good cause." Fed. R. Civ. P. 16(b)(4). This "'good cause' standard primarily considers the diligence of the party seeking the amendment" and the "moving party's reasons for seeking modification." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) (holding that plaintiff had not established good cause).

"[T]o demonstrate diligence, the moving party is required to show: (1) that it was diligent in assisting the Court in creating a workable Rule 16 scheduling order; (2) that its noncompliance with the scheduling order's deadline occurred or will occur notwithstanding diligent efforts to comply because of 'the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference;' and (3) that it was diligent in seeking amendment of the scheduling order once it became apparent it could not comply with the order." *MHF Zweite Acad. Film GmbH & Co. KG v. Warner Bros Entm't Inc.*, No. CV 12-2381-JFW (JCx), 2012 WL 13012677, at *1 (C.D. Cal. Aug. 13, 2012) (Walter, J.) (citation omitted).

## III. BACKGROUND

### A. The January 26, 2020 Accident

On the morning of Sunday, January 26, 2020, a helicopter crashed with Kobe and Gianna Bryant (among others) onboard. In the aftermath of the crash, Sheriff Villanueva met with the victims' families (including Plaintiff) and told them his deputies were securing the crash site. NTSB, FBI, Medical Examiner-Coroner, LACFD, and LASD were all on site. Media outlets reported that Kobe Bryant had died, and onlookers were rushing to the crash site.

Upon learning that accident site photographs might have been shared internally, the County and its departments made decisions about how to (i) prevent dissemination of the photographs beyond their official use; and (ii) handle the related personnel management issues. The Sheriff, in particular, told his deputies to delete all photographs. To date, no accident site photographs depicting human remains have been publicly disseminated.

### B. Procedural History

On September 17, 2020, Plaintiff filed a complaint in Los Angeles Superior Court. On October 19, 2020, the County removed the case to this Court. [Dkt. 1.] On November 18, 2020, the Court dismissed the Doe Defendants. [Dkt. 28.] On December 14, 2020, the Court granted the parties' stipulation to continue Plaintiff's deadlines to join parties and amend her Complaint. [Dkt. 37.]

On December 28, 2020, the Court granted the County's motion to dismiss Sheriff Villanueva from the case, holding: "It defies common sense that Sheriff Villanueva's instruction to delete the photos would somehow increase the risk of public dissemination of those very same photos or that Sheriff Villanueva's conduct would cause Plaintiff additional emotional distress. [Dkt. 46.]

On March 17, 2021, Plaintiff filed the FAC. [Dkt. 54.] The FAC asserts claims for violation of the Fourteenth Amendment (42 U.S.C. § 1983), negligence and invasion of privacy. The FAC also added LACFD and four deputies ("Deputy Defendants") as defendants. [*Id.*] The Court denied the County's motion to keep the Deputy Defendants' names sealed. [Dkt. 53.] Plaintiff posted the Deputy Defendants' names online, and they were subjected to harassment and threats. (Declaration of Mira Hashmall ("Hashmall Decl.") ¶ 4, Ex. A.)

### C. Overview Of Discovery

#### 1. The Forensic Protocol

Sheriff's Villanueva's instruction to delete accident site photographs was public knowledge before Plaintiff's lawsuit was filed (and was part of Plaintiff's

initial complaint). (Hashmall Decl. ¶ 5.) Nonetheless, the County understood that Plaintiff wanted to confirm that all accident site photographs depicting human remains had been deleted. (*Id*.) To facilitate that process, the County sent Plaintiff a draft forensic examination protocol, to facilitate examination of phones and protect the privacy rights of the involved personnel, on November 16, 2020. (*Id*. Ex. B.) Plaintiff never provided comments, despite the County raising the issue at least once a month since sending the protocol. (*Id*. ¶ 6 Ex. C.)

### 2. The IAB Report

Labor unions raised privacy and confidentiality objections about the potential production of the IAB Report. (Hashmall Decl. ¶ 7.) The County recognized the importance of the report and worked with Plaintiff to get a motion to compel ruled on promptly. [*See* Dkt. 34 ("In the unique context of this litigation, Defendants believe that disclosure of the IA Report will help assuage Plaintiff's concerns. Defendants are also bound, however, by their obligations to sworn personnel.").] Plaintiff has had the IAB Report since January 6, 2021. (Hashmall Decl. ¶ 7.)

### 3. Written Discovery

Plaintiff has served 126 RFPs. Defendants have completed seven document productions containing 29,941 pages of documents. (Hashmall Decl. ¶ 9.)

Defendants have also responded to every interrogatory served by Plaintiff. (*Id*. ¶ 10.) Based on Defendants' interrogatory responses, Plaintiff knows that only one non-governmental individual saw accident site photographs depicting human remains. (*Id*.) Because of how Plaintiff phrased her interrogatories, responses include names of first responders who took accident site photographs *not* depicting human remains and those who shared accident site photographs with other personnel and agencies (like NTSB) for official purposes. (*Id*.) Plaintiff knows there has been no public dissemination.

### 4. Depositions

Plaintiff has had the IAB Report since January 6, 2021, and the LACFD

investigation reports since March 22, 2021. (Hashmall Decl. ¶¶ 7-8.) Plaintiff has noticed five depositions. (*Id.* ¶ 11.) The parties have completed two and have two more scheduled for May 20 and June 3, 2021. (*Id.*) Plaintiff has not noticed others.

### 5. **Plaintiff's Meet And Confer Efforts**

Plaintiff's meet and confer efforts in this case have bordered on the absurd. Topics include: (i) arguing over the County's general objections and preliminary statement; (ii) questioning each of the County's specific objections, even when the County was providing substantive responses and not withholding information; (iii) asking the County to add information Plaintiff already knew about to interrogatory responses; (iv) insisting the parties put together a "document production protocol" even after Defendants had completed seven document productions; and (v) stalling on said "document production protocol" for weeks. (Hashmall Decl. ¶ 12.)

### 6. **Scheduling Order Deadlines**

Defendants have been leading the charge to complete discovery and comply with this Court's scheduling order. (Hashmall Decl. ¶ 13.) For example, Plaintiff gave Defendants the runaround for months on scheduling a mediation in advance of the June 7, 2021 deadline. (*Id.*) Defendants ended up having to reserve and then cancel mediations due to Plaintiff's refusal to respond to email requests. (*Id.*)

### 7. **Plaintiff's Discovery Responses**

In Plaintiff's own discovery responses, she has taken strikingly hypocritical positions, such as (i) Plaintiff does not need to produce documents until Defendants have completed all their document productions; (ii) contention interrogatories are premature and inappropriate; (iii) separate defendants cannot serve their own discovery (even though Plaintiff served each defendant with discovery); and (iv) Defendants are not entitled to any of Plaintiff's communications relating to her very public comments on this litigation. (Hashmall Decl. ¶ 14.)

## IV. ARGUMENT

### A. This Lawsuit Does Not Warrant Scorched Earth Discovery

The FAC asserts claims for violation of the Fourteenth Amendment (42 U.S.C. § 1983), negligence and invasion of privacy. The claims are based on two cases: In *Marsh v. County of San Diego*, 680 F.3d 1148 (9th Cir. 2012), the court held that widespread public distribution of post-mortem pictures of a child victim could give rise to a cognizable injury. *Id.* at 1158-60 (affirming partial summary judgment for defendants because there was no viable *Monell* claim and because qualified immunity protected the retired prosecutor who gave the photographs to the media). In *Catsouras v. Department of California Highway Patrol*, 181 Cal. App. 4th 856 (2010), *as modified on denial of reh'g* (Mar. 1, 2010), the court held that highway patrol officers have a duty "not to place decedent's death images on the Internet for . . . lurid titillation." *Id.* at 886 (officers who distributed the photographs had qualified immunity).

This case is nothing like *Marsh* and *Catsouras*. It is undisputed that the photographs at issue here were not given to the media and were not posted on the Internet. There is no evidence they were publicly disseminated. It would require the making of new law—beyond the holdings in *Marsh* and *Catsouras*—to find the Defendants liable here (and if this were to occur, they would still be entitled to immunity).

Plaintiff's myopic focus on the County's investigations, decision making, and resulting personnel decisions, loses sight of what this lawsuit is about. Plaintiff's repeated spoliation refrains also miss the mark. Under California law, there is no tort for spoliation. *See Cedars-Sinai Med. Ctr. v. Superior Court*, 18 Cal. 4th 1, 17-18 (1998) ("[T]here is no tort remedy for the intentional spoliation of evidence . . . ."). And Plaintiff knew the Deputy Defendants were told to delete the photographs *before* she filed this lawsuit.

Moreover, the idea that deleting the photographs, preventing the harm

Plaintiff complains of, is spoliation makes no sense. [*See* Dkt. 46 at 7 ("Sheriff Villanueva's conduct may have benefitted Plaintiff by making it less likely that those photos would be disseminated. . . . It defies common sense that Sheriff Villanueva's instruction to delete the photos would somehow increase the risk of public dissemination of those very same photos or that Sheriff Villanueva's conduct would cause Plaintiff additional emotional distress.").]

The accident was now close to 1.5 years ago, and there has been no public dissemination. Hypothetical harm is not a basis for a lawsuit. Nor is it a basis for "no stone left unturned" discovery against public entities and first responders.

### B.  Plaintiff Has Not Been Diligent

To establish good cause to modify a scheduling order, Plaintiff must demonstrate that she has been diligent in conducting discovery. *See Espinoza v. Ashe*, No. 1:16-cv-00193-JLT, 2017 WL 1549948, at *5 n.1 (E.D. Cal. May 1, 2017) (denying motion to amend scheduling order because plaintiff delayed more than six weeks from production of video footage which revealed officers' involvement in underlying incident to seek leave to amend scheduling order, and such delay "fails to support a determination that he has acted diligently"); *Fernandes v. TW Telecom Holdings, Inc.*, No. 2:13-cv-2221-GEB-CKD, 2015 WL 1874872, at *3 (E.D. Cal. Apr. 23, 2015) (denying motion to modify scheduling order because of the "several months 'gap [between Plaintiff's receipt of the new information and his filing of the motion to amended [sic] the scheduling order] shows a lack of diligence on his part'" and "[p]ermitting Plaintiff to now upend the scheduling order several months after Plaintiff clearly became aware of the facts that he could have used as a basis for [modifying the scheduling order] much earlier in the proceeding, would permit 'the sort of disruption that Rule 16(b) was designed to prevent'" (first alteration in original) (citations omitted)).

Plaintiff has not been diligent. Instead, Plaintiff has stalled the forensic examination for seven months, sought irrelevant and unnecessary discovery,

expanded the scope of discovery beyond what this case requires, engaged in nonsensical meet and confer efforts, and needlessly delayed setting depositions, conducting discovery, and even filing this Motion.

A brief timeline underscores Defendants' cooperation and Plaintiff's lack of diligence:

- <u>November 16, 2020</u>: the County sends Plaintiff a draft forensic protocol to protect privacy rights and facilitate examination of phones to confirm the photographs were deleted.
- <u>December 7, 2020</u>: the County works with Plaintiff to promptly file a motion to compel, based on an RFP it had received the day before, so the IAB Report could be produced promptly.
- <u>January 6, 2021</u>: the County produces the IAB Report and follows up about the draft forensic protocol.
- <u>March 17, 2021</u>: Plaintiff files the FAC, adding LACFD and the Deputy Defendants.
- <u>March 22, 2021</u>: the County produces the LACFD investigation reports.
- <u>April 6, 2021</u>: the County emails Plaintiff—"We are now in receipt of multiple sets of inspection demands (all attached here), but have not heard anything about the protocol we sent in November. We cannot move forward with a forensic examination without a protocol in place. Please let us know your thoughts on our draft (reattached here), and feel free to send the protocol you mentioned in your March 10 email if you'd like us to consider your version. Let's get this moving forward."
- <u>May 3, 2021</u>: the County's last email to Plaintiff regarding the forensic protocol, asking for comments on the draft protocol sent in November 2020 and suggesting the parties tee the issue up for the

Magistrate Judge "ASAP."

- November 2020-Present: the County sends approximately 10 emails asking for comments on the forensic protocol.

- January 2021-Present: Defendants complete seven document productions containing 29,941 pages of documents.

(Hashmall Decl. ¶ 16.)

### C. Plaintiff Is Not Entitled To Fifty Depositions

Plaintiff contends she needs six more months to complete discovery. Plaintiff's Motion rests on the presumption that she will be permitted to take over *50* depositions. (*See* Mot. at 1:26-2:1 (Plaintiff "cannot effectively depose the relevant LASD and LAFD personnel" under the current schedule); *id*. at 18:12-15 ("Completing discovery by mid-August is also impractical because more than sixty-six witnesses have relevant knowledge. Although Plaintiff does not intend to depose all individuals with relevant knowledge, a substantial number of depositions will be necessary to investigate her claims . . . ."); *id*. at 20:8-11 ("[U]nder the current schedule [Plaintiff] would have a mere eight weeks to conduct upwards of 45–50 important depositions while simultaneously conducting expert discovery and pushing forward the forensic examinations of numerous electronic devices."). This argument fails for several reasons.

*First*, Plaintiff is not entitled to 50 depositions. Under Federal Rule of Civil Procedure 30(a)(2)(A)(i), Plaintiff must obtain leave of court to take more than 10 depositions, and must make a "'particularized showing' of the need for additional depositions." <u>Acosta v. Sw. Fuel Mgmt., Inc.</u>, No. 2:16 CV 4547-FMO (AGRx), <u>2017 WL 8941165, at *7 (C.D. Cal. Sept. 19, 2017)</u> (citation omitted). While that issue is not currently before this Court (or the Magistrate Judge), Defendants dispute that Plaintiff can make the "particularized showing" justifying the deposition of over 50 witnesses. Regardless, Plaintiff has not sought Court approval for taking 50 depositions, despite the fact that "[c]onsideration should be given at the planning

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO MODIFY THE COURT'S SCHEDULING ORDER

meeting of the parties under Rule 16(f) and at the time of a scheduling conference under Rule 16(b) as to enlargements or reductions in the number of depositions, eliminating the need for special motions." Id. at *6 (citation omitted).

*Second*, Plaintiff does not explain why she cannot complete all depositions in the four months between now and the discovery cutoff. According to the Motion, the overwhelming majority of the individuals Plaintiff plans to depose were identified in the IAB Report, which was produced on January 6, 2021. Plaintiff's only explanation for why she has not taken the deposition of a *single* County employee identified in the IAB Report is to pass the buck to Defendants, arguing that their production has frustrated her efforts. (Mot. at 19:15-20:4.) But Plaintiff admits in her Motion that Defendants have produced "8,000 new records" since March, and plan to complete their production by the end of May. (*Id*. at 10:12-23.) That would leave Plaintiff nearly three months to conduct depositions with thousands of responsive documents, including the most relevant documents: the IAB Report and the LACFD internal investigations.

Plaintiff's argument that depositions cannot begin until document production is *complete* is wrong. Plaintiff cites only one case in support of this argument, Apple Inc. v. Samsung Elecs. Co., Ltd., No. C 11-cv-1846 LHK (PSG), 2012 WL 762240, (N.D. Cal. Mar. 8, 2012). The court there held that a repeated pattern where the defendant would produce thousands of documents, including in Korean, "two days" before a deposition warranted relief: the re-deposition of several witnesses "for whom a substantial portion of custodial documents were produced with insufficient time to process and translate in advance of the deposition" Id. at *1, *3. That case does *not* support the proposition that no County employee depositions can go forward until *all* documents have been produced.

An incomplete document production is not a basis to delay noticing depositions. See Ortega v. County of Los Angeles, No. CV 05-2246-JFW (RZx), 2006 WL 8434703, at *3 (C.D. Cal. Jan. 31, 2006) (Walter, J.) ("Although Plaintiffs

1  attempt to place the blame for the delay in discovery on Defendants' alleged failure
2  to appropriately respond to Plaintiffs' [written discovery] . . . any failure of
3  Defendants to provide Plaintiffs with certain requested documents would not have
4  prevented Plaintiffs from noticing the relevant depositions . . . ."), <u>on
5  reconsideration</u>, No. CV 05-2246-JFW (RZx), 2006 WL 8434713 (C.D. Cal. Feb.
6  24, 2006).

7      Plaintiff has the documents she needs and plenty of time to complete
8  depositions by August. Indeed, the County suggested coming up with a deposition
9  schedule for the summer, but Plaintiff did not respond. (Hashmall Decl. ¶ 12.)

10      **D.**     **Discovery From The Deputy Defendants And LACFD Does Not**
11              **Justify Granting This Motion**

12      According to Plaintiff, discovery aimed at the Deputy Defendants and
13  LACFD is "in its infancy for reasons outside of [Plaintiff]'s control." (Mot. at
14  15:10-16:19.) That is incorrect.

15      Plaintiff has known about the Deputy Defendants' relevant actions in this case
16  since January 6, 2021, when she received the IAB Report. The IAB Report
17  contained the Deputy Defendants' interview transcripts, and all information the
18  County gathered in investigating this matter.

19      With respect to LACFD, Plaintiff's statement that she did not learn of
20  LACFD employees' potential involvement in this matter until the internal
21  investigation reports were produced is false. Plaintiff served a deposition notice on
22  an LACFD employee because of his potential involvement in this case in
23  *February 2021*. For unknown reasons, Plaintiff has not pursued that deposition. As
24  for the investigation reports, the County produced them on March 22, 2021—just
25  one week after Plaintiff added LACFD to the FAC. (Hashmall Decl. ¶ 8.) The
26  County did that in the interest of transparency; Plaintiff did not serve any actual
27  discovery on LACFD until April 5, 2021. (*Id.*)

28      Plaintiff does not explain why she cannot complete discovery with respect to

the Deputy Defendants and LACFD in four months.  If there is a time crunch, it is of Plaintiff's own making.

### E. Plaintiff Delayed Filing This Motion

Plaintiff's delay in this case extends this Motion.  An unnecessary delay between learning new information justifying a motion to amend a scheduling order and the filing of said motion demonstrates a lack of diligence under Rule 16.  *See, e.g.*, *Fernandes*, 2015 WL 1874872, at *3 ("The several months 'gap [between Plaintiff's receipt of the new information and his filing of the motion to amended [sic] the scheduling order] shows a lack of diligence on his part, which cunctation is the antithesis of the finding of good cause contemplated under Rule 16.'" (alteration in original) (citation omitted)); *Genentech, Inc. v. Trs. of Univ. of Pa.*, No. 10-CV-02037-LHK, 2011 WL 4965638, at *2 (N.D. Cal. Sept. 16, 2011) (four-month delay between discovering information and filing motion did not demonstrate diligence).

Plaintiff contends the January 6, 2021 production of the IAB Report was one of the two "events necessitating modification." (Mot. at 16:28-17:1.)  The other event was the March 22, 2021 production of LACFD internal investigation reports. (*Id.* at 17:2.)  The IAB Report is the main driver of the Motion.  According to Plaintiff, the IAB Report included "the names of dozens of LASD personnel and other witnesses with knowledge of both the underlying misconduct and the department's departure from normal internal investigation protocols in responding to it." (*Id.* at 8:24-9:2.)

The Motion was not filed until *four months* after the IAB Report was produced (on January 6, 2021).  Plaintiff does not explain why she needed more than four months to determine that the scope of discovery was "more expansive than was anticipated at the initial scheduling conference." (*Id.* at 2:5-6.)

Plaintiff was not diligent.  She cannot demonstrate good cause under Rule 16. Plaintiff's cases only serve to underscore why modifying the scheduling order is not warranted here.  In *Muhammad v. California*, the court granted plaintiff's motion to

reopen discovery because (i) "no trial date ha[d] been set," (ii) defendants failed to "provide *any* substantive responses to Plaintiff's discovery requests," and (iii) defendants did not produce "even the most basic discovery requested." No. CV 18-4017 JAK (SS), 2019 WL 6315536, at *7 (C.D. Cal. Sept. 19, 2019) (emphasis added). *Muhammad* has no application here, where a trial date has been set (November 16, 2021) and Defendants have produced over 20,000 pages of documents in response to Plaintiff's 126 RFPs.

In *MultiCraft Imports Inc. v. Mariposa USA, Inc.*, meanwhile, the court faulted defendant for waiting "four months" to provide *any* information sought in the first discovery request, meaning plaintiff could not amend its pleading "before the expiration of the amendment deadline." No. CV 16-3975 DMG (AJWx), 2017 WL 5665214, at *2 (C.D. Cal. June 8, 2017). Unlike in *MultiCraft*, Plaintiff had virtually all of the relevant information she needed within two months of removal to this Court. The County even stipulated to give Plaintiff more time to amend her complaint so she could have the benefit of the information in the IAB Report. She used that information to add new defendants. *MultiCraft* has no application here.

### F. Defendants Would Be Prejudiced If The Motion Is Granted

While the Court's inquiry under Rule 16 ends with a determination that Plaintiff was not diligent (she was not), the potential prejudice to Defendants also counsels in favor of denying the Motion. This straightforward case, with undisputed facts, has turned into a fishing expedition that is taking first responders away from their jobs—and subjecting them to public harassment and threats. Defendants are eager to have their day in Court and put an end to this.

### V. CONCLUSION

Defendants respectfully request that the Court deny the Motion in its entirety.

DATED: May 17, 2021        MILLER BARONDESS, LLP

By: /s/ Mira Hashmall
    MIRA HASHMALL
    Attorneys for Defendants
    COUNTY OF LOS ANGELES, LOS ANGELES COUNTY FIRE DEPARTMENT, JOEY CRUZ, RAFAEL MEJIA, MICHAEL RUSSELL, and RAUL VERSALES

DATED: May 17, 2021        OFFICE OF THE COUNTY COUNSEL

By: /s/ Jonathan C. McCaverty
    JONATHAN C. McCAVERTY
    Attorneys for Defendant
    LOS ANGELES COUNTY SHERIFF'S DEPARTMENT