LUIS LI (State Bar No. 156081)
Luis.Li@mto.com
CRAIG JENNINGS LAVOIE (State Bar No. 293079)
Craig.Lavoie@mto.com
JENNIFER L. BRYANT (State Bar No. 293371)
Jennifer.Bryant@mto.com
MARI T. SAIGAL (State Bar No. 318556)
Mari.Saigal@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue
Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:  (213) 683-9100
Facsimile:   (213) 687-3702

Attorneys for Plaintiff Vanessa Bryant

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| VANESSA BRYANT,<br><br>             Plaintiff,<br><br>      vs.<br><br>COUNTY OF LOS ANGELES, et al.,<br><br>             Defendants. | Case No. 2:20-cv-09582-JFW-E<br><br>**DECLARATION OF JENNIFER L. BRYANT IN SUPPORT OF PLAINTIFF'S MOTION TO MODIFY THE COURT'S SCHEDULING ORDER**<br><br>[Reply in Support of Motion filed concurrently herewith]<br><br>Date:            June 7, 2021<br>Time:           1:30 p.m.<br>Courtroom:   7A<br>Judge:          Hon. John F. Walter<br><br>Pre-Trial Conf.: October 29, 2021<br>Trial Date:  November 16, 2021 |

**DECLARATION OF JENNIFER L. BRYANT**

I, Jennifer L. Bryant, hereby declare:

1. I am admitted to practice before all of the courts of the State of California and this Court. I am an attorney at the law firm of Munger, Tolles & Olson LLP and counsel of record for Plaintiff Vanessa Bryant in the above-captioned matter. I have personal knowledge of the facts set forth in this declaration, and, if called as a witness, I could and would testify competently to the matters set forth herein.[1]

**LASD's Prevarications to the *Los Angeles Times* Regarding the Deletion Order**

2. On February 26, 2020, Alene Tchekmedyian, a reporter for the *Los Angeles Times*, wrote an email to Captain Jorge Valdez, copying Sheriff Alex Villanueva, with the subject line "LA Times follow up re Lost Hills." In the email, she wrote: "I'm checking back regarding your statement that you are unaware of any complaint and that there was no order given to delete any photographs. Can you confirm that this is the department's official response?" Later that same day, Captain Valdez wrote back to Ms. Tchekmedyian and told her that the newspaper's intention to publish a story about the "alleged information" was "insensitive." A true and correct copy of the full email exchange, which was recently produced by the County in discovery, is attached hereto as **Exhibit A**.

**Defendants' Unexplained Change in Position on the Requested Continuance**

3. On March 4, 2021, Defendants' counsel sent correspondence to the counsel for the Plaintiffs in all of the Related Cases regarding various issues, including Defendants' desire to consolidate and streamline discovery. In connection with the parties' discussions regarding coordinated discovery, Plaintiff's counsel proposed an extension of the discovery cutoff to February 11, 2022, and an

---

[1] Defined terms used herein have the same meaning set forth in Plaintiff's opening Motion.

adjustment of the other remaining pre-trial and trial dates in the scheduling order, as follows:

| **Matter** | **Current Dates** | **Proposed Dates** |
|---|---|---|
| Last Day to Conduct Settlement Conference / Mediation | June 7, 2021 | November 12, 2021 |
| Last Day to File Joint Report re: Settlement Conference / Mediation | June 11, 2021 | November 17, 2021 |
| Discovery Cutoff | August 16, 2021 | February 11, 2022 |
| Last Day for Hearing Motions | September 6, 2021 | February 25, 2022 |
| Pretrial Submissions | October 14, 2021 | March 25, 2022 |
| Pretrial Conference | October 29, 2021 | April 8, 2022 |
| Hearing on Motions *in Limine* / Disputed Jury Instructions | November 5, 2021 | April 15, 2022 |
| Trial (Jury) | November 16, 2021 | April 27, 2022 |

4. On April 7, 2021, Defendants informed Plaintiff's counsel that they agreed that Plaintiff's proposed schedule was reasonable and that the proposed extension of the discovery cutoff was supported by good cause. A few days later, on April 12, 2021, Defendants' lead counsel signed and filed a stipulation to that effect. (ECF No. 71.) The stipulation asked the Court to consolidate the Related Cases for all purposes.

5. After the Court declined to approve the parties' stipulation to consolidate the Related Cases for all purposes, I wrote to Defendants' counsel on April 19, 2021, noting that the Court's ruling on consolidation had not addressed the

parties' proposed case schedule for this individual action. I asked Defendants' counsel to confirm they would stipulate to a modification of the scheduling order consistent with the schedule the parties had agreed to in the prior stipulation. Defendants' counsel wrote back just a few minutes later, saying only: "No. We're not going to stipulate." I wrote back that same day to schedule a Local Rule 7-3 conference for April 21, 2021. A true and correct copy of this email exchange is attached hereto as **Exhibit B**.

6. Following the Local Rule 7-3 conference, on April 28, 2021, I emailed Defendants' counsel pursuant to Paragraph 9 of the Court's Standing Order and Local Rule 79-5.2.2(b) to notify them that Plaintiff intended to use certain information that Defendants had designated as confidential under the Protective Order in connection with this Motion. In my email, I outlined the specific content from the specific documents that we intended to rely upon and explained that we would not mention any names in connection with our use of the information. I asked Defendants' counsel to confirm that we could use the specified information on a no-name basis in a public filing. For several days, Defendants' counsel refused to advise whether or not they believed any of the information designated as confidential had to be filed under seal, insisting instead that Plaintiff send them her "proposed" motion for their review. Only after I told Defendants' counsel that Plaintiff was left with no choice but to file a sealing application herself did Defendants' counsel finally confirm, on May 6, that they did not object to Plaintiff filing the information in the public record.

### Defendants' Further and Ongoing Delays

7. On May 10, 2021, at 3:39 pm, twelve minutes after Plaintiff filed her Motion, Defendants' counsel asked for more time to serve responses to Plaintiff's RFPs to the Deputy Defendants, which were due that day. Given the late hour, I granted the extension as a professional courtesy.

8. On May 14, 2021, Defendants' counsel served the Deputy Defendants' objections and responses to the RFPs. In the responses, the Deputy Defendants refused to produce documents for the vast majority of the RFPs. As of today, the Deputy Defendants have not produced a single document.

9. On April 22, 2021, Plaintiff served subpoenas on the seven additional LASD personnel known to have possessed copies of the photos. The subpoenas requested documents and to inspect the devices that had contained the photos. Pursuant to Rule 45, any objections to those subpoenas were due within fourteen days. Eighteen days later, on May 10, Plaintiff had not received any objections, so I asked Defendants' counsel, who are also representing the subpoenaed LASD personnel, about the status. I followed up again on May 14, noting that the responses were due a week earlier. Only then, on May 14, did the subpoenaed LASD personnel serve their objections and responses. In those responses, the LASD personnel refused to produce a single document. They also refused to make their devices available for inspection.

10. Because Defendants failed to produce any insurance agreements with their initial disclosures, or even their supplemental disclosures, Plaintiff served an RFP requesting those agreements. As of May 10, 2021—more than six months into litigating this case—Defendants had still yet to produce any insurance agreements, so Plaintiff's counsel sent correspondence threatening a motion to compel if Defendants did not produce them by May 17, 2021. Defendants finally produced the agreements required by Rule 26(a)(1)(A)(iv) on May 18, 2021.

11. On May 14, 2021, Plaintiff's counsel sent correspondence to Defendants' counsel expressing concerns that Defendants' document production to date has not contained any text messages. The letter asked Defendants to (i) confirm they are searching for, and intend to produce, all responsive text messages, and (ii) provide a date certain by which they will complete their

production of text messages.  Defendants' counsel have not yet responded to the letter.

12. The next day, Plaintiff's counsel wrote to Defendants' counsel regarding the Deputy Defendants' and LASD personnel's refusal to produce their cell phone records, documents that Plaintiff requested in her RFPs to the Deputy Defendants and her subpoenas to the other LASD personnel.  Plaintiff's counsel emphasized that the records need to be obtained and preserved immediately because they may be the best available evidence of the photos' dissemination.  Defendants' counsel have not yet responded to this correspondence either.

13. Plaintiff noticed 30(b)(6) depositions of the Fire Department and Coroner's Office on February 18, 2021 and March 5, 2021, respectively.  The first part of the Fire Department 30(b)(6) deposition took place on May 20, 2021, and it is scheduled to conclude on June 3, 2021.  The County did not provide potential dates for scheduling the Coroner's Office 30(b)(6) deposition until May 18, 2021, approximately two and a half months after Plaintiff served the notice.

**Plaintiff's Proposed Forensic Examination Protocol**

14. At the time Defendants' counsel sent a proposed forensic examination protocol on November 16, 2020, they had already told Plaintiff's counsel that the County did not have possession, custody, or control of the relevant devices.  The County's attorneys have repeated this on several occasions.  As one example, on March 5, 2021, Defendants' lead counsel wrote, "We don't have the devices in our possession.  They are personal cell phones, not County property; and their production needs to be compelled by subpena [*sic*]."  A true and correct copy of this correspondence is attached hereto as **Exhibit C**.

15. Given Defendants' position, the only way Plaintiff could obtain the devices for inspection was to either (1) name the County personnel who took, shared, or received the photos as individual Defendants, or (2) subpoena them.  After Plaintiff amended her complaint to add the Deputy Defendants, she promptly

served inspection demands on them on March 23, 2021.  For the remaining LASD personnel who were in possession of the devices, Plaintiff subpoenaed their devices for inspection, consistent with the instruction Defendants' lead counsel had given on March 5.  (*See supra* ¶ 14.)  In response to those subpoenas, the LASD personnel have refused to make their devices available for inspection.  Among other objections, the subpoenaed LASD personnel asserted they had no responsive devices in their possession, custody, or control.

16. On May 21, I participated in a meet and confer with Defendants' counsel regarding the forensic examinations.  During that videoconference, Defendants' counsel explained that they had intended for their proposed November 16, 2020 forensic examination protocol to apply only to the cellphones used by the Deputy Defendants, not to any other LASD personnel who took or were otherwise in possession of the photos.  They further explained that if Plaintiff wishes to obtain the devices used by the non-named LASD personnel for examination by a neutral third-party forensic examiner, she must file a motion to compel.

### Plaintiff's Meet and Confer Efforts in Discovery

17. Defendants' Opposition details a litany of grievances with Plaintiff's efforts to meet and confer regarding Defendants' discovery responses.  (Opp. at 10; Hashmall Decl. ¶ 12.)  Because Defendants' characterizations of those efforts were incomplete, I briefly respond item-by-item to provide context:  (i) Plaintiff has merely objected to the County's "practice of making boilerplate general objections couched in terms of 'to the extent' and then incorporating those general objections into each [discovery] response," *Meggitt (Orange Cnty.), Inc. v. Nie*, 2015 WL 12743695, at *1 (C.D. Cal. Feb. 17, 2015); (ii) Plaintiff had to seek clarification when Defendants' RFP responses ambiguously committed to producing only "relevant" documents immediately following objections that the RFPs at issue sought irrelevant information; (iii) after Defendants served objections-only responses to her interrogatories (*see* Mot. at 7), Plaintiff had to repeatedly follow-up

over the next few months to obtain a complete identification of individuals with relevant knowledge of the photos; (iv) after Defendants responded to Plaintiffs' first set of RFPs with more than fifty pages of boilerplate objections, Plaintiff engaged in meet and confer efforts to narrow the parties' disputes in a document that memorialized their "agreed-upon parameters" for Defendants' search and production; and (iv) over the course of several weeks, Plaintiff's efforts to meet and confer regarding Defendants' responses to Plaintiff's first set of RFPs ultimately narrowed the parties' disputes from dozens of disagreements at the outset of the meet and confer process to roughly eight issues remaining for resolution by the magistrate judge in Plaintiff's forthcoming motion to compel.

      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

      Executed on this 24th day of May, 2021, at Los Angeles, California.

_____
Jennifer L. Bryant