LUIS LI (State Bar No. 156081)
Luis.Li@mto.com
CRAIG JENNINGS LAVOIE (State Bar No. 293079)
Craig.Lavoie@mto.com
JENNIFER L. BRYANT (State Bar No. 293371)
Jennifer.Bryant@mto.com
MARI T. SAIGAL (State Bar No. 318556)
Mari.Saigal@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue
Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:   (213) 683-9100
Facsimile:   (213) 687-3702

Attorneys for Plaintiff Vanessa Bryant

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| VANESSA BRYANT,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF LOS ANGELES, et al.,<br><br>Defendants. | Case No. 2:20-cv-09582-JFW-E<br><br>**DECLARATION OF CRAIG JENNINGS LAVOIE IN SUPPORT OF PLAINTIFF'S MOTION TO MODIFY THE COURT'S SCHEDULING ORDER**<br><br>[Notice of Motion and Motion to Modify the Court's Scheduling Order; Memorandum of Points and Authorities; and [Proposed] Order filed concurrently herewith]<br><br>Date:           June 7, 2021<br>Time:           1:30 p.m.<br>Courtroom:   7A<br>Judge:          Hon. John F. Walter<br><br>Pre-Trial Conf.: October 29, 2021<br>Trial Date:  November 16. 2021 |

**DECLARATION OF CRAIG JENNINGS LAVOIE**

I, Craig Jennings Lavoie, hereby declare:

1.      I am admitted to practice before all of the courts of the State of California and this Court.  I am an attorney at the law firm of Munger, Tolles & Olson LLP and counsel of record for Plaintiff Vanessa Bryant in the above-captioned matter.  I have personal knowledge of the facts set forth in this declaration, and, if called as a witness, I could and would testify competently to the matters set forth herein.[1]

**Plaintiff's Diligent Pursuit of Discovery in This Action**

2.      Promptly upon the opening of discovery in this action, on November 2, 2020, Plaintiff served two interrogatories seeking the names of (1) all LASD and LAFD personnel whom the County had reason to believe may have taken and/or shared photos of the accident scene, and (2) all LASD and LAFD personnel who were involved in investigating or responding to reports that LASD and LAFD personnel had taken and/or shared such photos.  On December 7, 2020, the County served an objections-only response to Plaintiff's interrogatories, refusing to provide the names of any LASD and LAFD personnel or any other substantive information.  A true and correct copy of the County's objections-only response to Plaintiff's first set of interrogatories is attached as **Exhibit 1**.

3.      Plaintiff also promptly propounded requests for production ("RFPs") on the County and LASD on November 16 and November 17, 2020.  Among other things, the RFPs sought "all documents and communications relating to any taking or sharing of photos of the accident scene or victims' remains by any person who is not an employee of the Coroner's Office or NTSB."  The County and LASD each served written responses and objections on December 21, 2020.  Where Defendants

---

[1] Defined terms used herein have the same meaning set forth in Plaintiff's motion filed herewith.

1  did not object entirely to an RFP, they agreed to produce responsive documents

2  within forty-five days.

3       4.     On November 18, 2020, the parties exchanged initial disclosures.

4  Plaintiff served eight pages of disclosures that identified fourteen potential witnesses

5  and listed categories of relevant documents in her possession.  By contrast,

6  Defendants' disclosures did not name a single individual who might be used to

7  support their defenses and did not list a single category of relevant documents.  A

8  true and correct copy of Defendants' November 18, 2020 initial disclosures is

9  attached as **Exhibit 2**.

10      5.     The next day, I sent correspondence to Defendants explaining that they

11  had violated their obligations under Rule 26 and that their refusal to provide relevant

12  information was prejudicing Plaintiff's ability to conduct discovery and obtain the

13  names of the wrongdoers in advance of the Court's deadline to amend the complaint

14  and join additional defendants.  A true and correct copy of this correspondence,

15  dated November 19, 2020, is attached as **Exhibit 3**.

16      6.     In response, rather than supplement the initial disclosures as requested,

17  Defendants' counsel stated that they would produce LASD's Internal Affairs Bureau

18  Investigative Report (the "IA Report"), which contained the names of witnesses

19  with discoverable information, only if Plaintiff filed a motion to compel.  Faced

20  with an imminent deadline to amend the complaint and join parties, Plaintiff

21  acquiesced and filed a motion to compel.

22      7.     After Magistrate Judge Eick granted Plaintiff's motion to compel

23  production of the IA Report, Defendants produced the IA Report on January 6,

24  2021.  It contained over 1,100 pages of summaries, interview transcripts, and other

25  materials related to LASD's internal investigation of the illicit photos.  And it

26  revealed—for the first time—the names of dozens of LASD personnel and other

27  witnesses with knowledge of both the underlying misconduct and the department's

28  departure from normal internal affairs' protocols in responding to it.

8.    However, the County initially designated every single word in the IA Report "Attorneys' Eyes Only," meaning that Mrs. Bryant was blocked from viewing even a single page of the report.  On January 8, 2021, I called counsel for the County and requested that Defendants downgrade the IA Report from "Attorneys' Eyes Only" to "Confidential" in order to enable Mrs. Bryant to view the report herself, but Defendants refused.  In an email later that day, counsel for the County stated that Plaintiff's counsel could "discuss" the report with Mrs. Bryant, "[b]ut . . . you must not show or give the IAB Report to your client."  A true and correct copy of this correspondence, dated January 8, 2021, is attached hereto as **Exhibit 4**.  One month after this exchange, counsel for Mrs. Bryant formally wrote to Defendants threatening motion practice if the County did not downgrade the IA Report to "Confidential," such that Mrs. Bryant would be allowed to view it.  A true and correct copy of this letter is attached hereto as **Exhibit 5**.  Only then, on February 5, 2021, did Defendants downgrade the report.

9.    As of February 4, 2021—forty-five days after Defendants served their written responses and objections to Plaintiff's RFPs—the County and LASD had not produced a single document other than the IA Report.

10.    Aside from the IA Report, Defendants produced a total of sixty documents between November 16, 2020, and March 21, 2021.

11.    Defendants did not produce the complete set of exhibits to the IA Report—approximately 2,200 records—until March 26, 2021.  Among the exhibits produced for the first time on March 26 was surveillance footage from a bar in Norwalk on the night that, according to the IA Report, Defendant Joey Cruz was displaying photos of the crash scene.  The surveillance footage shows Cruz smiling as he displayed his phone not only to a bartender, but also to a patron seated next to him at the bar.  The patron seated next to Cruz and other witnesses shown in the surveillance footage have not yet been identified.  At a later point in the video, Cruz can be seen a second time displaying his phone to the bartender, who peered down

LAVOIE DECLARATION ISO PLAINTIFF'S MOTION TO MODIFY SCHEDULING ORDER

to study the phone for over a minute.  As the bartender walked away after viewing Cruz's phone, Cruz can be seen smiling and saying something to the bartender.  Cruz and the bartender then burst into laughter.

12.    Since March 30, 2021, the County has produced approximately 5,870 documents.  A substantial proportion of these documents have been public press articles.  More than 1,500 records are Google Alerts.

13.    During meet and confer, Defendants' counsel have estimated that the County's production in response to the November 2020 RFPs will be substantially complete by mid-May.  However, the County's mid-May estimate for substantially completing its production does not account for several RFPs that have been the subject of ongoing meet and confer between the parties.  As of today, certain RFPs remain in dispute.  For example, the County has equivocated regarding its commitment to produce documents the Sheriff's Department produced in response to a subpoena issued by the County of Los Angeles Inspector General related to the improper photos.  The County is also objecting to producing documents related to LASD's awareness of the constitutional right to control the death images of loved ones and documents related to the training of the Deputy Defendants on avoiding violations of that right.  As a result, Plaintiff has initiated the required process to move to compel.  Such motion practice will further delay the completion of Defendants' document production in response to the RFPs that have been pending since November 16, 2020.

14.    After diligently analyzing the IA Report's 1,100+ pages of materials, on February 1, 2021, Plaintiff's counsel sent Defendants the amended complaint that Plaintiff intended to file based on previously undisclosed information revealed in the IA Report.  The County's lawyers responded with a letter refusing to consent to the filing of the First Amended Complaint unless Plaintiff "agree[d] to take out the confidential material" from the IA Report.  As a result of the County's position, Plaintiff's counsel engaged in extended meet and confer regarding a potential

1  motion for leave to file an amended complaint.  After the County finally agreed to

2  not force Mrs. Bryant to file such a motion, Plaintiff's counsel had to engage in

3  further meet and confer about whether the amended complaint could be filed in the

4  public record.  Because the parties were unable to reach an agreement on that issue,

5  a sealing application was filed on February 24, 2021, which was ultimately denied

6  on March 8, 2021.

7        15.    Promptly upon naming the Deputy Defendants and Fire Department as

8  defendants in her First Amended Complaint, on March 23, 2021 and April 5, 2021,

9  Mrs. Bryant served demands to inspect any electronic devices, cell phones, and

10  cloud-based accounts that the new defendants had used to open, view, store, or share

11  photos of the accident scene or victims' remains.

12        16.    These inspection demands followed similar demands Plaintiff had

13  previously served on LASD on March 10, 2021.  In response to those prior

14  demands, LASD asserted it did not have possession, custody, or control of any

15  relevant devices and committed only to making the Deputy Defendants' devices

16  available for inspection.  In subsequent meet and confer, however, Defendants'

17  counsel have refused to provide any information about whether they have

18  interviewed the LASD personnel involved to determine if any department-issued

19  devices may contain relevant evidence.  As a consequence of LASD's position that

20  it lacks possession, custody, or control of its employees' personal devices, in

21  addition to seeking inspections from the four Deputy Defendants, Plaintiff has had

22  to serve subpoenas on seven LASD personnel known to have possessed photos of

23  the accident scene on their personal cell phones.  While the parties have not yet

24  agreed on all the devices that will be examined, they have agreed in principle to an

25  inspection protocol under which a neutral third-party firm will forensically examine

26  the relevant devices and accounts.

27        17.    On April 8, 2021, Plaintiff served RFPs on the Fire Department and

28  Deputy Defendants.  Both have yet to produce documents in response to those

LAVOIE DECLARATION ISO PLAINTIFF'S MOTION TO MODIFY SCHEDULING ORDER

1    RFPs.  The non-party LASD deputies who possessed the photos have also yet to

2    produce any documents in response to Plaintiff's third-party subpoenas.  Among

3    other things, Plaintiff seeks the cell phone records of the Deputy Defendants and the

4    subpoenaed individuals to determine who those with possession of the photos texted

5    immediately following the accident—a necessary, but also time-intensive, inquiry.

6         18.    On April 27, 2021, the Fire Department and Deputy Defendants served

7    their initial disclosures.  Collectively, the two sets of disclosures identified forty-

8    seven witnesses with discoverable information—forty-six of whom have yet to be

9    deposed—and several categories of documents that have yet to be fully produced,

10   including "[c]itizens' complaint(s) regarding potential sharing of incident site

11   photographs" and "[i]ncident site photographs."

## Developments Following the Initial Scheduling Conference

13        19.    After Plaintiff's counsel sent several emails demanding that the County

14   supplement its prior objections-only interrogatory responses, the County served

15   supplemental responses on March 12, 2021 and March 31, 2021.  The County's

16   supplemental responses identified sixty-six LASD and LAFD witnesses with

17   relevant knowledge.  Documents obtained in discovery reveal that eighteen of these

18   witnesses took, shared, or possessed photos of the accident scene.

19        20.    Although Plaintiff does not intend to depose all individuals with

20   relevant knowledge, a substantial number of depositions will be necessary to

21   investigate Mrs. Bryant's claims, including but not limited to:  Sheriff Villanueva;

22   the four Deputy Defendants; at least seven additional LASD personnel who took,

23   shared, or possessed photos; at least three additional LASD personnel with

24   knowledge of the photos and LASD operations at the crash site; the Lost Hills

25   Captain who attempted to launch an inquiry into the citizen complaint and expressed

26   concerns about the Sheriff's deletion order (*see infra* ¶ 25); the Lost Hills officer

27   who was directed to conduct the inquiry that was cut short by Sheriff Villanueva's

28   intervention; five LASD personnel involved in carrying out Sheriff Villanueva's

1   deletion order; three LASD personnel involved in a formal internal investigation

2   launched following the *Los Angeles Times* reports; six LAFD personnel who took or

3   shared photos, or who have relevant knowledge of the photos and LAFD operations

4   at the crash site; the group of ten firefighters and significant others who were present

5   when an LAFD employee displayed photos of the victims' remains at an awards

6   show (*see infra* ¶ 22); three 30(b)(6) depositions (of the Fire Department, Coroner's

7   Office, and Sheriff's Department); and a yet-to-be-determined number of civilians

8   with knowledge of the photos' dissemination or display amongst members of the

9   public, including the individual who was seated next to Cruz at the bar in Norwalk

10  (if he can be found).  To date, only two witnesses—both civilians—have been

11  deposed.

12          21.     On March 22, 2021, the County produced approximately eighty pages

13  of internal investigation reports detailing conduct by Fire Department personnel who

14  took and shared photos of victims at the crash site.  The production was the first

15  time the County had provided any documents to Mrs. Bryant about LAFD personnel

16  taking or sharing photos of the victims' remains.  Every single page of the reports

17  was designated as Confidential under the Protective Order.

18          22.     To respect confidentiality and privacy concerns expressed by

19  Defendants and to obviate the need for a sealing application in connection with this

20  motion, Plaintiff's counsel has agreed to summarize content from the reports herein,

21  rather than attach the full documents as exhibits.  Following meet and confer

22  regarding Defendants' confidentiality designation and Plaintiff's intent to use

23  certain information from the reports in connection with this motion, Defendants'

24  counsel have agreed that the following summary and excerpts may be filed publicly:

25          a.      The LAFD's investigation reports, dated August 31, 2020, are

26  attached to three letters dated December 2, 2020, that are addressed to three LAFD

27  personnel.  The letters announce an "intention to discharge" two of the recipients

28  and an "intention to suspend" the third.

b.      According to the reports and letters, two Fire Department employees took photos of victims' remains at the crash site that "served no business necessity" and instead "only served to appeal to baser instincts and desires for what amounted to visual gossip."  One of the employees, a safety officer who was at the site solely to monitor safety procedures, was observed taking graphic photos focused on the victims' remains.  Both of the employees who took photos of remains sent them to a third Fire Department employee who was on site to assist with press briefings and to respond to inquiries from the media.

c.      Then, according to a civilian witness who submitted a complaint to the Fire Department, the employee who received the photos shared them with off-duty firefighters and their wives and girlfriends while socializing amongst a group of ten people at an awards ceremony at a Hilton hotel in February 2020.

d.      The citizen complainant was interviewed by LAFD investigators on March 9, 2020.

23.    As of today's date, the County has produced just thirty-one records from the two LAFD personnel known to have taken photos of victims' remains at the crash site.

24.    On June 30, 2020, a former Captain of the Lost Hills Sheriff's station was interviewed by LASD investigators.  The transcript of the interview was included in the IA Report produced to Plaintiff on January 6, 2021.  Every single page of the report was designated as Confidential under the Protective Order.

25.    To respect confidentiality and privacy concerns expressed by Defendants and to obviate the need for a sealing application in connection with this motion, Plaintiff's counsel has agreed to summarize and excerpt content from the Captain's interview transcript herein, rather than attach the full transcript as an exhibit.  Following meet and confer regarding Defendants' confidentiality designation and Plaintiff's intent to use certain information from the transcript in

1    connection with this motion, Defendants' counsel have agreed that the following

2    summary and excerpts may be filed publicly:

3              a.      After a private citizen emailed a complaint to the Sheriff's

4    Department that a deputy was showing photographs of the crash site at a bar, the

5    Lost Hills station Captain informed his supervisors of the complaint on Wednesday,

6    January 29, 2020, and assigned a member of his staff to conduct an inquiry.  The

7    following day, the Captain directed his staff to take a statement from the informant,

8    identify the bartender, look for video footage, and request an administrative

9    investigation.

10             b.      After having been awake for thirty-two hours straight, the

11   Captain left work and was sleeping between the hours of 2:00pm and 6:00pm on

12   Thursday, January 30, 2020.  When he woke up at 6:00pm, he had a text message

13   from a member of his staff that said: "Please call me."  When they spoke, the staff

14   member told the Captain that he had been instructed to call in all Lost Hills

15   personnel who had been at the crash site, find out if they had photos of the accident

16   scene and, if so, to delete them.  If the deputies complied, "there would be no

17   discipline."  However, "if the pictures got out into the media or the public, all bets

18   were off and they would be fired."  The Captain immediately told his staff member

19   to stop but learned they had "already done about over half the people."

20             c.      The Captain called his chief and "bombard[ed] him with

21   questions" because the Captain had "a lot of concerns over this direction" and was

22   "worried about the exposure of [his] staff."  One of the Captain's big concerns was

23   that his staff "were receiving instructions from the Sheriff outside of the chain of

24   command."  He told his chief:  "[H]ow do we know that we're not breaking some

25   obscure federal law that we're not aware of?  And if so, then are we telling them by

26   deleting these photographs that we're destroying evidence?"  He also "reminded the

27   chief that the last time our deputies got instructions from our executives in a federal

28   case that they were arrested and tried for crimes, just to get to those executives."  In

1  his interview, the Captain further explained that the instructions were "very out of
2  the ordinary and [he] had concerns for his people."

3      d.  After the Captain expressed his concerns to his chief, the chief
4  told him that he would talk to the Sheriff's office.  The chief called the Captain back
5  shortly thereafter.  In a "very short" call, the chief said that he had discussed the
6  matter with the Sheriff, who had assured him that "this is the proper way that we're
7  gonna go."  When the Captain pointed out that it was unusual to not conduct an
8  internal affairs investigation, the supervisor responded "that's fine but this is the
9  direction we're gonna go."  The Captain "felt like that was probably going to be the
10 end of the discussion."  He said: "[O]kay sir.  Well, I'm only telling you because
11 you're my immediate supervisor and I have my concerns."  The Captain then called
12 his staff member back and told him what the chief had said:  "[T]his is what the
13 Sheriff wants and so we're gonna go ahead and we're gonna continue what you're
14 doing."

15      **Mrs. Bryant's Efforts to Obtain Information Prior to This Action**

16    26.  Attached as **Exhibit 6** is a true and correct copy of a March 2, 2020
17 letter sent by Mrs. Bryant's counsel to Sheriff Villanueva.  Attached as **Exhibit 7** is
18 a follow-up letter Mrs. Bryant's counsel sent on March 8, 2020.

19    27.  Attached as **Exhibit 8** is a true and correct copy of a March 2, 2020
20 letter sent by Mrs. Bryant's counsel to Fire Chief Daryl L. Osby.

21    28.  After a series of letters acknowledging receipt of Mrs. Bryant's
22 correspondence, on March 26, 2020, outside counsel for LASD and LAFD
23 substantively responded to Mrs. Bryant's letters.  True and correct copies of these
24 responses are attached as **Exhibits 9** and **10**.

25    29.  On May 8, 2020, pursuant to California Government Code section 900
26 et seq., Mrs. Bryant filed a written notice of claims against the Sheriff's Department,
27 Sheriff Villanueva, and then-unknown deputies who took and shared photos of her

28

LAVOIE DECLARATION ISO PLAINTIFF'S MOTION TO MODIFY SCHEDULING ORDER

1   loved ones' remains.  The County has not substantively responded to Mrs. Bryant's

2   notice.

3          30.     On July 20, 2020, pursuant to California Government Code section 900

4   et seq., Mrs. Bryant filed a written notice of claims against the Fire Department and

5   then-unknown members of the Fire Department who took and shared photos of her

6   loved ones' remains.  The County has not substantively responded to Mrs. Bryant's

7   notice.

8          31.     After receiving no response to her notice of claims, Mrs. Bryant filed

9   suit in state court against the County, the Sheriff's Department, Sheriff Alex

10  Villanueva, and Doe defendants who took or shared photos of the accident scene or

11  one of the Bryants' remains.  Mrs. Bryant then promptly served interrogatories,

12  several of which sought the names of the LASD and LAFD personnel who took or

13  shared photos of the victims' remains.  However, before Defendants' responses

14  became due, Defendants removed the action to federal court on October 19, 2020.

15                        **Meet and Confer Regarding This Motion**

16         32.     Prior to this motion, the parties had jointly requested a new case

17  schedule in connection with potential consolidation of this action with the Related

18  Cases.[2]  (ECF No. 71.)  Because the Court denied the parties' stipulation to

19  consolidate for all purposes, it did not address the other portions of the stipulation

20  related to the potential consolidated action, such as the case schedule.  (*See* ECF No.

21  72.)

22         33.     On April 19, 2021, counsel for Plaintiff emailed counsel for Defendants

23  to ask if they would stipulate to a modified scheduling order consistent with the

24  schedule the parties had previously proposed for the potential consolidated action.

25

26  ―――――――――――

[2] The Related Cases were brought by the *Chester* plaintiffs (Case No. 2:20-cv-
27  10844-JFW-E) ("*Chester*"), the *Mauser* plaintiffs (Case No. 2:21-cv-00497-JFW-E)
    ("*Mauser*"), and, it is anticipated, the *Altobelli* plaintiffs ("*Altobelli*").
28

1  (ECF No. 71 ¶¶ 6–10.)  Plaintiff's counsel explained that the good cause outlined in

2  the parties' stipulation for setting a February 11, 2022 discovery cutoff in the

3  proposed consolidated action applies equally to extending the discovery cutoff in

4  this matter, even absent consolidation.  Defendants were unwilling to stipulate to a

5  modification of the scheduling order.

6       34.    The next day, however, Defendants emailed Plaintiff's counsel as well

7  as plaintiffs in the Related Cases and asked if they would stipulate before Judge

8  Eick to consolidating for purposes of discovery.  Defendants later followed up with

9  a proposed stipulation to consolidate discovery.  Defendants' proposal did not

10 address how such consolidation could be achieved given that the forthcoming

11 *Altobelli* lawsuit (*see* ECF No. 71 ¶ 4), which has not yet been filed, will inevitably

12 be on an entirely different discovery schedule than this case.

13      35.    Pursuant to Local Rule 7-3 and this Court's Standing Order, on April

14 21, 2021, the parties met and conferred via videoconference to discuss this motion.

15 At no time did Defendants' counsel suggest they would be prejudiced by the

16 requested modification of the scheduling order.  The parties were nonetheless unable

17 to reach an agreement.

18                    **The Court's Scheduling Order**

19      36.    On November 18, 2020, the Court set the following dates in this case:

| | |
|---|---|
| Last Day to Conduct Settlement Conference/Mediation | 6/7/2021 |
| Last day to File Joint Report re Settlement Conference/Mediation | 6/11/2021 |
| Discovery Cutoff | 8/16/2021 |
| Last Day for Hearing Motions | 9/6/2021 |
| Pre-Trial Submissions | 10/14/2021 |
| Pre-Trial Conference | 10/29/2021 |
| Hearing on Motions in Limine / Disputed Jury Instructions | 11/5/2021 |
| Trial | 11/16/2021 |

1    37.    These dates set by the Court were consistent with the case schedule the

2  parties had proposed in their joint Rule 26(f) report.  (*See* ECF No. 27 at 9–10.)  At

3  the time of the parties' submission on November 16, 2020, however, the information

4  available to Mrs. Bryant suggested that only eight Sheriff's deputies were involved

5  in the misconduct.  (*See* Compl. ¶ 31.)  Mrs. Bryant had not yet received any

6  witness disclosures or other information from Defendants and thus did not yet

7  apprehend the breadth of the misconduct or the scope of discovery that would be

8  necessary to prosecute her claims.

9    38.    The parties previously stipulated to continue the deadline to join parties

10  and amend the complaint.  (ECF No. 35.)  The Court continued that deadline from

11  February 11, 2021, to March 24, 2021.  (ECF No. 37.)  The Court's Scheduling

12  Order has not been otherwise modified since it was issued in November 2020.

13    I declare under penalty of perjury under the laws of the United States of

14  America that the foregoing is true and correct.

15    Executed on this 10th day of May, 2021, at Los Angeles, California.

16

17

18    *Craig Lavoie*

    _____

19    Craig Jennings Lavoie

20

21

22

23

24

25

26

27

28

LAVOIE DECLARATION ISO PLAINTIFF'S MOTION TO MODIFY SCHEDULING ORDER