LUIS LI (State Bar No. 156081)
Luis.Li@mto.com
CRAIG JENNINGS LAVOIE (State Bar No. 293079)
Craig.Lavoie@mto.com
JENNIFER L. BRYANT (State Bar No. 293371)
Jennifer.Bryant@mto.com
MARI T. SAIGAL (State Bar No. 318556)
Mari.Saigal@mto.com
BRANDON E. MARTINEZ (State Bar No. 318749)
Brandon.Martinez@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue
Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:  (213) 683-9100
Facsimile:  (213) 687-3702

Attorneys for Plaintiff Vanessa Bryant

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| VANESSA BRYANT, a California Resident,<br><br>    Plaintiff,<br><br>    vs.<br><br>COUNTY OF LOS ANGELES, a public entity, et al.,<br><br>    Defendants. | Case No. 2:20-cv-09582-JFW-E<br><br>**DISCOVERY MATTER**<br><br>**NOTICE OF MOTION AND JOINT STIPULATION RE: PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND CUSTODIAL METADATA FROM DEFENDANTS COUNTY OF LOS ANGELES & LOS ANGELES COUNTY SHERIFF'S DEPARTMENT**<br><br>Judge:  Hon. John F. Walter<br><br>Magistrate Judge:  Hon. Charles F. Eick<br><br>Hearing:  August 13, 2021<br>Time:  9:30 a.m.<br>Place:  Courtroom 750<br><br>Discovery Cutoff:  November 29, 2021<br>Pretrial Conference:  February 4, 2022<br>Trial:  February 22, 2022 |

TO ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 13, 2021, at 9:30 a.m., or as soon thereafter as this matter may be heard in Courtroom 750, 7th Floor, of the above-captioned Court, located at 255 E. Temple St., Los Angeles, California 90012, Plaintiff Vanessa Bryant will and hereby does move for an order compelling Defendants County of Los Angeles (the "County") and Los Angeles County Sheriff's Department (the "Sheriff's Department" and, collectively with the County, "Defendants") to produce (1) documents responsive to certain of Plaintiff's Requests for Production ("RFPs") and relevant to Plaintiff's claims in this case and (2) metadata indicating the individual custodian of each document all defendants have and will produce in this case.

Pursuant to Federal Rule of Civil Procedure 37(a) and Local Rule 37-2, the parties respectfully submit this joint stipulation setting forth their contentions.

This Motion is based on upon this Notice of Motion, the Joint Stipulation, the Declaration of Brandon E. Martinez and exhibits thereto, and any other papers or argument of counsel that may be filed or submitted in connection with this Motion.

In accordance with Local Rule 37-1, counsel for Plaintiff and Defendants, met and conferred regarding these discovery disputes by videoconference on March 18, 2021 regarding the RFPs and on May 11, 2021 regarding the custodial metadata, and by correspondence prior to and following those conferences, but were unable to reach agreement regarding the subject matter of this Motion.

1  DATED:  July 20, 2021                MUNGER, TOLLES & OLSON LLP

2

3

4                                        By:  _____
                                                  */s/ Luis Li*
5                                                   LUIS LI

6                                        Attorneys for Plaintiff Vanessa Bryant

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **<u>TABLE OF CONTENTS</u>**

I.   INTRODUCTORY STATEMENTS ................................................................. 1

   A.   Plaintiff's Statement ................................................................................ 1

   B.   Defendants' Statement ............................................................................ 2

II.   ISSUES IN DISPUTE ................................................................................. 3

   A.   Documents Relating to "Death Books" (RFP 28) ................................. 3

      1.   Plaintiff's Contentions ................................................................ 3

      2.   Defendants' Contentions ............................................................. 9

   B.   Documents Relating to the Federal Constitutional Right to Control Death Images of Loved Ones (RFPs 31-33)........................... 14

      1.   Plaintiff's Contentions .............................................................. 14

      2.   Defendants' Contentions ........................................................... 16

   C.   Policies Regarding Handling of Information or Materials Involving Celebrities (RFP 38)............................................................ 18

      1.   Plaintiff's Contentions .............................................................. 18

      2.   Defendants' Contentions ........................................................... 20

   D.   Training of Deputy Defendants (RFPs 30, 34, and 38) ...................... 21

      1.   Plaintiff's Contentions .............................................................. 21

      2.   Defendants' Contentions ........................................................... 23

   E.   OIG Materials (RFP 48)........................................................................ 24

      1.   Plaintiff's Contentions .............................................................. 24

      2.   Defendants' Contentions ........................................................... 27

   F.   Custodial Metadata (All of Plaintiff's RFPs) ..................................... 27

      1.   Plaintiff's Contentions .............................................................. 27

      2.   Defendants' Contentions ........................................................... 32

**JOINT STIPULATION**

**I.     INTRODUCTORY STATEMENTS**

    **A.     Plaintiff's Statement**

        Plaintiff Vanessa Bryant lost her husband and daughter, Kobe and Gianna Bryant, in a January 26, 2020 helicopter crash near Calabasas, California. (Declaration of Brandon E. Martinez ("Martinez Decl."), Ex. A (First Amended Complaint ("FAC")) ¶ 1.)  Despite the personal assurances of Los Angeles County Sheriff Alex Villanueva to secure the crash scene against unauthorized photography, a host of personnel employed by the County of Los Angeles and the Los Angeles County Sheriff's and Fire Departments took gratuitous photographs of Mrs. Bryant's deceased loved ones and then shared those photos with others for prurient purposes.  (*Id.* ¶¶ 2-4, 23-42.)  Mrs. Bryant alleges that these lurid acts were negligent; invaded her right to privacy under California law; and violated her substantive due process right under the U.S. Constitution to control the physical remains, memory, and images of her deceased husband and daughter, *see Marsh v. Cnty. of San Diego*, 680 F.3d 1148 (9th Cir. 2012).

        The County and the Sheriff's Department have publicly admitted that these events occurred and that they were wrong.  Yet Defendants have stonewalled Mrs. Bryant's requests for documents and refused to produce clearly relevant information that would expose the full extent of their wrongdoing.  To take just one example, Sheriff Villanueva has acknowledged the "problem in law enforcement across the nation" of police officers compiling "death books" containing "photos from crime scenes throughout their careers."[1]  Despite this admission that "death books" are a perennial problem in law enforcement, Defendants have refused to produce all documents relating to this practice amongst County and Sheriff's Department

---

[1] Comments of Sheriff Alex Villanueva, March 2, 2020, https://www.facebook.com/watch/live/?v=875675446231021&ref=watch_permalink.

1  personnel, or documents regarding what steps (if any) Defendants took to prevent

2  their personnel from taking and distributing photos of victims' remains for their

3  personal use.  Even where Defendants *have* produced records in response to

4  Plaintiff's requests, they have failed to provide the most basic kind of custodial

5  metadata necessary to make heads or tails of the documents.

6      Defendants have attempted to justify their refusal to produce clearly relevant

7  records by recycling the general, inapposite, and factually unsupported objections

8  that this Court rejected only a few months ago when it ordered Defendants to

9  produce a Sheriff's Department Internal Affairs report into Defendants'

10  wrongdoing.  (*See* Martinez Decl., Ex. D (Court's Dec. 30, 2020 discovery order) at

11  95-96.)  This Court should reject Defendants' baseless objections once again and

12  grant Mrs. Bryant's motion to compel.

13      **B.**   **Defendants' Statement**

14      Throughout this case, the County of Los Angeles (the "County") and the Los

15  Angeles County Sheriff's Department ("LASD") (together "Defendants") have been

16  transparent and forthcoming with Plaintiff in discovery.  (Declaration of Jason

17  Tokoro ("Tokoro Declaration") ¶ 2.)  In November 2020, the County sent Plaintiff a

18  draft forensic protocol so the parties could conduct a forensic examination of phones

19  and confirm that all photographs had been deleted.  (*Id*. ¶ 3.)  In December 2020, the

20  County worked with Plaintiff to produce a key Internal Affairs Bureau Report ("IAB

21  Report"), in a way that did not violate the privacy rights of the individuals

22  identified, as quickly as it could.  (*Id*.)  In March 2021, when Plaintiff in a related

23  case asked for documents from the Los Angeles County Fire Department

24  ("LACFD"), the County produced LACFD's investigation reports to Plaintiff—even

25  though she had not served discovery requests to LACFD.  (*Id*.)  The County has

26  now produced over 30,000 pages of documents to Plaintiff.  (*Id*. ¶ 4.)  Many of these

27  documents are responsive to the requests which are the subject of this Motion.  (*Id*.)

28

In contrast, Plaintiff has taken the position that she does not have to meaningfully participate in discovery.  (*Id*. ¶ 5.)  To date, Plaintiff has failed to produce a *single* document or respond substantively to a *single* interrogatory, despite being served with requests and interrogatories months ago.  (*Id*.)  While Plaintiff's failure to remotely participate in discovery will be more thoroughly documented in Defendants' forthcoming motion to compel, Plaintiff's positions herein are all the more untenable considering Plaintiff's obfuscation.

Despite the County's repeated efforts to compromise to avoid motion practice, and production of over 30,000 pages before Plaintiff has produced a single document, Plaintiff nonetheless brings this Motion to ask for discovery which (i) is irrelevant to her claims; (ii) goes back nearly ten years in time; (iii) would include gathering the personal devices of nearly 100,000 current and former LASD personnel; and (iv) would implicate the privacy rights of third parties.  Plaintiff's Motion should be denied.

## II.   ISSUES IN DISPUTE

For the Court's convenience, in Appendix A to this joint stipulation, the parties have prepared a table reproducing the text of each of Plaintiff's disputed requests for production ("RFPs"), as modified during the course of the parties' meet-and-confer efforts.  The table also includes the text of the Instructions accompanying Plaintiff's RFPs relevant to the parties' dispute over custodial metadata.

### A.   Documents Relating to "Death Books" (RFP 28)

#### 1.   Plaintiff's Contentions

In the days following news reports that Sheriff's Department personnel had taken and shared gratuitous photos of Mrs. Bryant's loved ones, Sheriff Alex Villanueva admitted to the press that "there's, uh, cops—they keep death books, for example, where they—they have, uh, photos from crime scenes throughout their careers.  That's a macabre idea, but some do that."  He further explained that "this

-3-

1   has been a problem in law enforcement across the nation," "[e]ver since they
2   invented the Polaroid camera," "because it just makes it so much easier." [2]   The
3   Sheriff acknowledged that the Department's policies before January 2020 were
4   inadequate to prevent personnel from maintaining so-called "death books" and that
5   the Department needed to implement more specific policies in this area.  (Martinez
6   Decl., Ex. A (FAC) ¶ 55.)  Mrs. Bryant has requested that the County and the
7   Sheriff's Department produce all documents and communications from January 1,
8   2016 to the present relating to Department employees personally keeping photos of
9   human remains they encounter while on duty.  Defendants, however, have agreed to
10  search only for *complaints* of Department personnel keeping remains photos for a
11  non-law-enforcement or non-investigatory purpose from 2015 to 2019.  (*Id.*, Ex. K,
12  at 400.)  Defendants' justification for this limitation have no merit.

13          **Relevance.**  Documents and communications relating to Department
14  personnel keeping contraband photos of human remains are squarely relevant to
15  Mrs. Bryant's *Monell* claim against the County and the Department, as well as to her
16  negligence claims.

17          Mrs. Bryant alleges that the County and the Department acted with deliberate
18  indifference to her constitutional rights—and the constitutional rights of victims'
19  family members everywhere—by, among other things, failing to establish policies
20  or procedures to prevent the taking or sharing of photographs of human remains
21  without any legitimate governmental purpose, and by failing to adequately train and
22  supervise Department personnel to ensure they do not engage in that unlawful
23  conduct.  (Martinez Decl., Ex. A (FAC) ¶¶ 82.)  Documents showing that the
24  County and the Department knew that employees were scrapbooking photos of
25  human remains but chose not to promulgate any policies or training to stop that

26  _____

27  [2] *See* Comments of Sheriff Alex Villanueva, March 2, 2020, https://www.facebook.
    com/watch/live/?v=875675446231021&ref=watch_permalink.

28

practice are squarely relevant to prove these allegations.[3]  So are records documenting what policy alternatives (if any) the County and the Department considered to address the taking and keeping of gratuitous remains photos, what policy options they did or did not select, and why they did so.[4]  Courts thus routinely grant motions to compel documents showing that a municipality sued under *Monell* was on notice of actual or potential unlawful conduct.[5]  Defendants cannot assert that they properly trained, supervised, and adopted policies to govern their officers' conduct while refusing to search for documents undermining that assertion.

Documents showing that the County and the Sheriff's Department knew of or discussed the risk of personnel keeping death books also are relevant to Mrs.

---

[3] *See, e.g.*, *Waggy v. Spokane Cnty.*, 594 F.3d 707, 713 (9th Cir. 2010) (a "municipality's failure to train its employees is one such claim of omission or inaction by the municipality"); *Henry v. Cnty. of Shasta*, 132 F.3d 512, 519-20 (9th Cir. 1997) ("[A] municipal defendant's failure to fire or reprimand officers evidences a policy of deliberate indifference to their misconduct.").

[4] *Waggy*, 594 F.3d at 713 ("A policy has been defined as a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.").

[5] *See, e.g.*, *Soto v. City of Concord*, 162 F.R.D. 603, 615 (N.D. Cal. 1995) (compelling production of officer employment records in excessive-force action "because such documents may reveal the defendant officers' patterns of behavior, as well as the City's response to such behavior" for purposes of plaintiff's *Monell* claim); *Soler v. Cnty. of San Diego*, 2016 WL 11621299, at *4-7 (S.D. Cal. July 18, 2016) (compelling production not only of complaints against law-enforcement officers but also records relating to internal investigations of such complaints and officers' performance reviews because such records could be relevant to prove plaintiff's *Monell* claim); *Medina v. Cnty. of San Diego*, 2014 WL 4793026, at *3 (S.D. Cal. Sept. 25, 2014) ("[P]erformance evaluation records proving the police department had notice or ratified the officers' actions may be relevant to show unlawful policies, customs, or habits as part of Plaintiffs' *Monell* claim.").

Bryant's claim that the County, the Sheriff's Department, and their personnel negligently injured her by taking gratuitous photos of her loved ones' physical remains and, once those photos were taken, failing to prevent their distribution. (Martinez Decl., Ex. A (FAC) ¶¶ 88-99.)  For example, under California law, a "jury may consider the likelihood or foreseeability of injury in determining whether, in fact, the particular defendant's conduct was negligent in the first place" and "whether the defendant's negligence was a proximate or legal cause of the plaintiff's injury." *Ballard v. Uribe*, 715 P.2d 624, 628 n.6 (Cal. 1986); *see also, e.g.*, *Rojas v. Home Depot U.S.A., Inc.*, 2020 WL 1625590, at *3 (C.D. Cal. Feb. 6, 2020) (same).

**Scope.**  Neither the timeframe nor the scope of Mrs. Bryant's request is unduly burdensome or disproportionate to the needs of the case.  Mrs. Bryant has agreed to narrow her request to documents regarding death books created since January 1, 2016.  That time period is well-tailored to documents that would show the County's deliberate indifference to Department personnel keeping death images in the years immediately before and after the January 2020 helicopter crash.  *See, e.g.*, *Dominguez v. City of Los Angeles*, 2017 WL 10605960, at *7 (C.D. Cal. Nov. 18, 2017) (compelling production of officer's employment records dating back to his hiring six years earlier because they "could show that the officer's alleged violent propensity was known to the entity, and that the entity condoned the behavior, which could trigger municipal liability" under *Monell*).

As for the *scope* of Plaintiff's request, the County and Sheriff's Department assert that they have "no feasible way of searching" for all documents concerning Department personnel keeping death photos for personal use.  (Martinez Decl., Ex. K, at 400.)  But Defendants have never offered any specific information to carry their "burden of clarifying, explaining, and supporting" their objection.  *O.L. v. City of El Monte*, 2021 WL 926392, at *2 (C.D. Cal. Feb. 1, 2021)  Sheriff Villanueva's admissions that the keeping death books is a widespread—and thus presumably well-documented—practice belie Defendants' unsubstantiated assertion that they

Case No. 2:20-cv-09582-JFW-E

cannot feasibly locate documents about their personnel's private collections of death photos.  Indeed, it is hard to understand how a law-enforcement agency in the profession of investigation cannot investigate the existence of documents relating to a practice that the Sheriff himself has admitted exists.  Defendants' suggestion that Mrs. Bryant, a private citizen who has no access to their files, should develop a protocol for carrying out their discovery obligations (*see* Martinez Decl., Ex. K, at 400) flips the framework imposed by the Federal Rules on their head.  *See, e.g.*, *United States v. McGraw-Hill Cos.*, 2014 WL 1647385, at *8 (C.D. Cal. Apr. 15, 2014) ("[T]he movant has the initial burden of demonstrating relevance.  In turn, the party opposing discovery has the burden of showing that discovery should not be allowed, and also has the burden of clarifying, explaining and supporting its objections with competent evidence." (citations omitted)).

**Privacy / Privilege.**  Copying language from objections this Court has already overruled (*see* Martinez Decl., Ex. D (Court's Dec. 30, 2020 discovery order), at 95-96), Defendants have objected to producing documents regarding death books on unavailing privacy and privilege grounds.  Defendants assert that these documents contain "information that is protected from disclosure by the right to privacy under the U.S. Constitution and the California Constitution" and include "confidential personnel records that are protected from disclosure under California Penal Code section 832.7(a)."  They also assert that they "have received third party objections from counsel for individuals represented by the Association for Los Angeles Deputy Sheriffs regarding the disclosure of any information contained in the subject Internal Affairs Bureau Investigative Report" and object to the disclosure of information "to the extent" it is "protected by the attorney-client privilege, work product," "the deliberative process privilege," or "any other applicable privilege." (Martinez Decl., Ex. G (County Responses & Objections ("COLA R&Os")), at 268-69; *id.*, Ex. H (Department's Responses & Objections ("LASD R&Os"), at 329-30.) For reasons this Court has already explained, these objections are meritless.

To begin with, Defendants' blanket objections lack the required specificity. *See* Fed. R. Civ. P. 34(b)(2)(B) ("For each item or category, the response must . . . state *with specificity* the grounds for objecting to the request, including the reasons." (emphasis added)); *see also, e.g.*, *Dominguez*, 2017 WL 10605960, at *7 ("[T]he party who withholds discovery materials based on a privilege must provide sufficient information (i.e., a privilege log) to enable the other party to evaluate the applicability of the privilege or other protection. . . . Failure to provide sufficient information may constitute a waiver of the privilege.  Asserting a blanket objection to plaintiffs' requests will be found to be insufficient and improper." (citations and internal quotation marks omitted)).

Further, as this Court has already held in this case, California's protections for peace-officer personnel records, and privacy privileges under the California Constitution, do not apply in federal civil-rights cases.  (*See* Martinez Decl., Ex. D (Court's Dec. 30, 2020 discovery order), at 95-96 ("Where, as here, an action involves both federal question claims and state law claims, the federal law of privilege, not the state law of privilege, applies.")).[6]  And Defendants' allegation that responsive materials are "protected from disclosure by the right to privacy under the U.S. Constitution" or other federal privileges are unsupported by evidence, just like the objections this Court evaluated and rejected in December 2020.  *See* (*id.* ("Defendant has failed to submit sufficient evidentiary support for

---

[6] *See also, e.g.*, *Agster v. Maricopa Cnty.*, 422 F.3d 836, 839-40 (9th Cir. 2005) (same); *Miller v. Pancucci*, 141 F.R.D. 292, 299 (C.D. Cal. 1992) (analyzing Cal. Evid. Code § 1043, which governs the disclosure of documents subject to Cal. Penal Code § 832.7, and determining that the California rules are "fundamentally inconsistent" with analogous federal rules and thus do not apply in federal civil rights cases); *Kerr v. U.S. Dist. Ct.*, 511 F.2d 192, 197 (9th Cir. 1975) (rejecting claim of state-based privilege for personnel records); *Bryant v. Armstrong*, 285 F.R.D. 596, 604 (S.D. Cal. 2012) (protections for personnel files under Cal. Penal Code § 832.7 and Cal. Evid. Code § 1043 are inapplicable in federal court because "[s]tate privilege law does not govern discovery issues in federal § 1983 cases").

1    any of the federal law privileges asserted.")); *see also Rubin v. Regents of Univ. of*

2    *Cal.*, 114 F.R.D. 1, 4 (N.D. Cal. 1986) ("[T]he burden of establishing justification

3    for a privilege is on the party who attempts to create or invoke it.").

4         Moreover, even if materials regarding death books somehow implicated any

5    abstract privacy interest of the County, the Sheriff's Department, or their personnel,

6    Mrs. Bryant's need to obtain these materials far outweighs that interest because they

7    are important to test Defendants' denials that they were deliberately indifferent to

8    constitutional rights; failed to implement policies, procedures, and training that

9    would have prevented violations of those rights; or were negligent in taking or

10   distributing photos of Mrs. Bryant's loved ones' remains.  (*See* Martinez Decl., Ex.

11   B (Answer to FAC) ¶¶ 79-86.)  Plaintiff cannot "obtain information of comparable

12   quality from any other source," and the Court's protective order would govern any

13   responsive documents.  *Soto*, 162 F.R.D. at 617; *see also* (Martinez Decl., Ex. C

14   (stipulated protective order).)

15        Finally, third-party objections by "individuals represented by the Association

16   for Los Angeles Deputy Sheriffs" are not a legitimate basis for Defendants to

17   withhold relevant, non-privileged documents that are otherwise discoverable under

18   federal law, particularly when those documents would be subject to the Court's

19   protective order.  If third parties wish to object, they must intervene and assert those

20   objections themselves.  *Soto*, 162 F.R.D. at 616 ("The party or person whose privacy

21   is affected may either object to the discovery request or seek a protective order.").

22               **2.    Defendants' Contentions**

23        Plaintiff's arguments with respect to RFP 28 rely on her mischaracterization

24   of the Request.  Specifically, Plaintiff states that RFP 28 is a simple and

25   straightforward request for "Documents Relating to 'Death Books.'"  RFP 28 is in

26   fact far more expansive than that, calling for the production of "ALL

27   DOCUMENTS and COMMUNICATIONS RELATING TO SHERIFF'S

28   DEPARTMENT PERSONNEL personally possessing PHOTOS of human remains

encountered by SHERIFF'S DEPARTMENT PERSONNEL while on duty."
Examining the actual text of RFP 28 makes clear that it seeks irrelevant documents, is overbroad in scope and time, and would implicate privacy concerns:

**Relevance**: Plaintiff's primary argument in support of RFP 28 is that prior instances of LASD personnel keeping "contraband photos of human remains" is relevant to Plaintiff's *Monell* claims. But that is not what Plaintiff asked for in this RFP. The County offered to search for and produce any complaints regarding LASD personnel improperly taking and/or sharing photos of human remains. (Tokoro Declaration, Ex. C at 45.) That would have allowed Plaintiff to adequately investigate and assess her *Monell* claims. Plaintiff refused, necessitating this Motion.

Defendants' proposed limitation is necessary. As written, RFP 28 goes far beyond "contraband photos of human remains." It seeks information regarding *every* photo of human remains ever possessed by *any* LASD employee over the past five years.[7] Plaintiff offers no justification for why documents discussing or containing photos used in connection with legitimate law enforcement activities would be relevant to this action.

None of the cases cited by Plaintiff supports her position. In fact, the cases Plaintiff relies on involved motions to compel production of records that were *specific to the individual defendants in the case. See Soto v. City of Concord*, 162 F.R.D. 603, 615 (N.D. Cal. 1995) (holding that "[t]he personnel files of the

---

[7] Plaintiff tries to save this Request by defining "personally possessing" as possessing "a PHOTO on a personally-owned electronic device, such as a cell phone" or possessing "a hardcopy PHOTO for a non-investigatory purpose." This definition would not limit the request to relevant documents. First, there is no way to determine whether a photo is possessed for a "non-investigatory purpose" except on a case by case basis. Additionally, many LASD personnel use their personal devices for work. (Tokoro Declaration ¶ 12.) Accordingly, there would be nothing improper (and therefore relevant) about these photos existing.

*defendant-officers* in the instant case are relevant to Plaintiff's excessive force claim."); *Soler v. Cnty. of San Diego*, 2016 WL 11621299, at *4-7 (S.D. Cal. July 18, 2016) (compelling production of complaints, discipline records, and performance evaluations of the individual sheriff's deputy defendants); *Medina v. Cnty. of San Diego*, 2014 WL 4793026, at *2-3 (evaluating six categories of documents "relating to each of the individual Defendants."). The foregoing cases, which dealt only with discovery targeted at the individual defendants, are not analogous to Plaintiff's request here, which calls for records from approximately 100,000 current and former LASD employees over the past five years.

By offering to search for and produce any complaints relating to improper photographs of human remains—and not just complaints relating to individual defendants—Defendants are actually offering to search for a broader set of materials than were at issue in *Soto*, *Soler*, or *Medina*. Meaning, Defendants are being more than reasonable in offering to search for and produce these complaints.

Plaintiff is also incorrect that the documents called for by this request are relevant to Plaintiff's negligence claim. Fundamentally, Plaintiff does not (and cannot) assert a direct theory of negligence against the County. The County has immunity from common law torts. *Miklosy v. Regents of Univ. of Cal.*, 44 Cal. 4th 876, 899 (2008). Nor can Plaintiff assert a claim for negligent supervision against the County or LASD. *de Villers v. County of San Diego*, 156 Cal. App. 4th 238, 253 (2007) ("[T]here is no statutory basis for declaring a governmental entity liable for negligence in its hiring and supervision practices and, accordingly, plaintiffs' claim against County based on that theory is barred . . . ."); *Vargas v. County of San Bernardino*, No. EDCV 18-946-MWF (KKx), 2018 WL 6177243, at *5 (C.D. Cal. Jul. 30, 2018) ("Plaintiff thus may not pursue his negligent hiring/training/retention claim against either the County or the Sheriff's Department."). Instead, Plaintiff's negligence claim against the County must be premised on vicarious liability based on the actions of the individual defendants. Accordingly, Plaintiff's argument that

-11-

this Request seeks relevant documents because they could show foreseeability or causation with respect to the County fails.  Only foreseeability and causation with respect to the *individual defendants* are relevant inquiries in this action.

**Scope/Burden**: RFP 28 is also overbroad and not proportional to the needs of this case.  As Defendants have already explained to Plaintiff, Defendants have no feasible way of searching for every single instance of LASD personnel possessing photos of human remains while on duty over the past five years.  (Tokoro Declaration, Ex. C at 45.)  RFP 28 calls for Defendants to search the personal devices of nearly 100,000 current and former LASD employees.  Plaintiff offered no suggestion as to how the County would accomplish this.  *See Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1034 (9th Cir. 1990) (holding that city police department personnel files were not subject to discovery in Hispanic police officers' civil rights action, although officers claimed that access was necessary to compile statistics concerning officer employment, termination, discipline, and compensation information); *In re: Xarelto (Rivaroxban) Products Liability Litigation*, 313 F.R.D. 32, 36 (E.D. La. Jan 26, 2016) (holding that plaintiff could not discover a non-party employee's personnel file without an individualized showing of relevancy, proportionality, and particularity pursuant to Fed. R. Civ. P. 26(b)).

Plaintiff's purported justification for this request is an offhand comment made by Sheriff Villanueva regarding death books and law enforcement *generally*. Contrary to Plaintiff's assumptions, Sheriff Villanueva was not implying that there was a widespread practice of taking or maintaining improper photographs within *LASD*, as opposed to nationwide.  He also did not state that any LASD policies were insufficient.  Plaintiff cannot rely on speculation to justify forcing Defendants to

JOINT STIPULATION RE: PLAINTIFF'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS & CUSTODIAL METADATA

undertake an untenable and disproportionate search that is fundamentally unrelated to the claims in this case.[8]

**Privacy:** Plaintiff's argument dismisses the privacy rights of thousands of deputy sheriffs under California law regarding the disclosure of their personnel records (and rights under the California and U.S. Constitutions regarding their general privacy rights).  The existence of these protections makes it more challenging for Defendants to produce records for individuals who are not involved in this litigation and whose actions have no relevance to the facts at issue.

Plaintiff also completely ignores that RFP 28 would implicate the privacy rights of unrelated third parties.  Specifically, RFP 28, by its terms, calls for the production of death images and photographs containing human remains of individuals who have not chosen to be a part of this case.  The alleged inappropriate handling of similar photos of Plaintiff's family members gave rise to this action. Plaintiff now seeks a court order forcing Defendants to produce similar photos of other individuals, who presumably have family members who would not want the death images of their relatives shared with strangers or used in a court action.

For the foregoing reasons, Plaintiff's motion should be denied with respect to RFP 28.  Defendants remain willing to search for and produce any complaints regarding photos of human remains that were allegedly taken for non-law enforcement or non-investigatory purposes, from 2015 to present.  This compromise would allow Plaintiff to pursue her *Monell* claim without causing significant burden to the County or potentially implicating third parties' privacy rights.

---

[8] For instance, Plaintiff claims that "Sheriff Villanueva's admissions that the keeping [of] death books" is "widespread" thus means that the practice is "presumably well-documented."  Setting aside, again, that this was not a statement about LASD, there is nothing to support Plaintiff's "presumption."

B.   **Documents Relating to the Federal Constitutional Right to Control Death Images of Loved Ones (RFPs 31-33)**

1.      **Plaintiff's Contentions**

Plaintiff has also requested documents and communications from May 29, 2012 to present relating to the federal constitutional right of individuals to control the physical remains, memory, and death images of their deceased loved ones, as well as to documents relating to the Ninth Circuit's 2012 decision recognizing that right in *Marsh*, 680 F.3d 1148.  These requests expressly call for the production of documents and communications relating to the County, the Sheriff's Department, and the Sheriff's knowledge of the constitutional right and *Marsh*; any policies, procedures, or training materials regarding the federal constitutional right or *Marsh*; and the Department's drafting and enactment of a new policy governing the photography of human remains in the spring and summer of 2020, after the January 2020 helicopter crash.  Defendants have refused to produce any such documents other than formal Department policies.  They have failed to articulate any compelling justification for that limitation.

**Relevance.**  Defendants have asserted that "[t]here is no relevant basis for a document that mentions '*Marsh*' in this case."  (*See* Martinez Decl., Ex. J (Defs.' Mar. 8, 2021 Ltr.), at 388; *see also id.*, Ex. G (COLA R&Os), at 272-75; *id.*, Ex. H (LASD R&Os), at 333-36.)  That is wrong.  Documents showing whether Defendants or Sheriff Villanueva knew of the *Marsh* decision or the federal constitutional right, whether they took action such as training or supervision to prevent violations of that right, and if not, why not, are plainly relevant to prove Mrs. Bryant's *Monell* claim that the County and Sheriff's Department were deliberately indifferent to that right.  *See, e.g.*, *Waggy*, 594 F.3d at 713 ("A policy has been defined as a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.").  Defendants cannot

deny that they failed to protect survivors' constitutional right while refusing to search for documents regarding what efforts, if any, they took to protect that right. If Defendants have no documents regarding their obligations to prevent violations of the right, that fact also would be relevant.

Documents showing that the County and the Sheriff's Department knew of or discussed the possibility of their personnel taking gratuitous remains photos in violation of survivors' privacy rights are also relevant to Mrs. Bryant's California tort claims. *Ballard*, 715 P.2d at 628 n.6 (holding that "the jury may consider the likelihood or foreseeability of injury in determining whether, in fact, the particular defendant's conduct was negligent in the first place" and "whether the defendant's negligence was a proximate or legal cause of the plaintiff's injury").

**Timeframe / Overbreadth.**  Defendants are wrong that RFPs 31 through 33 are "overbroad as to time" because they request documents since May 29, 2012— the date of the Ninth Circuit's decision in *Marsh*.  (*See* Martinez Decl., Ex. G (COLA R&Os), at 272-75; *id.*, Ex. H (LASD R&Os), at 333-36.)  It is reasonable to expect that, if the County and the Sheriff's Department ever created documents related to Mrs. Bryant's constitutional right or contemplated policies and procedures to protect it, they would have done so in the months or years following *Marsh*, when the Ninth Circuit clarified the existence and scope of that right.  For this reason, Mrs. Bryant is entitled to responsive documents dating back to May 29, 2012.  *See, e.g.*, *Bernat v. City of Cal. City*, 2010 WL 4008361, at *8 (E.D. Cal. Oct. 12, 2010) (compelling production of "all records documenting claims, complaints or investigations and any subsequent discipline imposed" regarding officers' use of excessive force during the ten years "before the event involving Plaintiff," because "past incidents of excessive force may bear on City's *Monell* liability"); *Miniter v. City of Los Angeles*, 2011 WL 13134766, at *2 (C.D. Cal. Apr. 19, 2011) (same); *Estate of Sanchez v. Cnty. of Stanislaus*, 2020 WL 1952667, at *3 (E.D. Cal. Apr. 23, 2020) (rejecting county's proposal that plaintiff's request for documents relating

-15-

1   to excessive-force incidents be limited to documents dating back five years, rather

2   than fourteen, as "too narrow").

3      For their part, Defendants have failed to articulate any concrete reasons why

4   this request is overbroad or offered any evidence showing that searching for

5   responsive documents is unduly burdensome or disproportionate to Mrs. Bryant's

6   need to obtain evidence corroborating her *Monell* and negligence allegations. *See*,

7   *e.g.*, *O.L.*, 2021 WL 926392, at *2. Defendants should be able to interview

8   personnel in relevant positions—such as the Department's leadership and the

9   "constitutional policing advisors" that its own Manual of Policies and Procedures

10  tasks with reviewing incidents involving potential civil-rights violations—to identify

11  custodians and repositories with potentially responsive documents. (*See* Martinez

12  Decl., Ex. R (LASD Manual of Policies & Procedures § 3-04/020.06), at 433.)

13     **Privilege / Privacy.** Defendants' boilerplate assertions of unspecified federal

14  and California privileges and privacy interests lack merit for the reasons described

15  in Part II.A above and in this Court's December 30, 2020 order. (*See* Martinez

16  Decl., Ex. D, at 95-96; *see also id.*, Ex. G (COLA R&Os), at 272-75; *id.*, Ex. H

17  (LASD R&Os), at 333-36.)

18      **2. Defendants' Contentions**

19     Defendants have agreed to produce the final policies which are responsive to

20  RFPS No. 31- 33. (Tokoro Declaration, Ex. C at 46.) Plaintiff is still demanding

21  that Defendants search for and produce all documents and communications relating

22  to (i) any federal constitutional right of individuals to control the death images and

23  or/physical remains of deceased family members," (ii) "the preparation, drafting

24  consideration, enactment implementation, and enforcement of Sheriff's Department

25  Policy 5-09/475.00," and (iii) the decision of the United States Court of Appeals for

26  the Ninth Circuit in *Marsh v. County of San Diego*," from May 29, 2012 to the

27  present. These requests call for irrelevant and potentially privileged documents.

28

Defendants have produced the relevant Department policies that are responsive to these requests, which is more than sufficient for Plaintiff to evaluate her claims.

**Relevance:**  Plaintiff is entitled to obtain the relevant policies and procedures that were in place at the time the events at issue in this litigation occurred.  Plaintiff, however, is going far beyond this in requesting *every* document *and* communication related to these policies over a period of nine years.  Plaintiff fails to cite a single case that supports her position, including her demand for draft policies.[9]

Plaintiff is likewise not entitled to every single document and communication mentioning the term *Marsh*.  Setting aside the fact that the any documents discussing *Marsh* would almost certainly be privileged, Plaintiff cites no authority calling for the production of documents discussing legal precedent.

Finally, as detailed above, Plaintiff cannot assert a direct theory of negligence against the County.  *See Miklosy*, 44 Cal. 4th at 899.  Plaintiff's negligence claim must be premised on vicarious liability based on the individual liability of the individual defendants.  Plaintiff is incorrect that any draft policies  and documents discussing the *Marsh* case are relevant to her negligence claim against Defendants.

**Scope/Burden:**  Beyond calling for irrelevant material, these requests would also force Defendants to undertake an untenable search for documents and communications dating back nearly a decade and potentially involving thousands of

---

[9] Indeed, draft policies and internal deliberations are precisely the types of materials that courts protect from disclosure.  *See e.g.*, *Ames Construction, Inc. v. Clark County*, No. 2:18-cv-00299-JCM-EJY, 2020 WL 1674327, at *3 (D. Nev. Apr. 6, 2020) ("The deliberative process privilege permits the government to withhold documents that reflect advisory opinions, recommendations and deliberations comprising part of a process by which government decisions and policies are formulated.") (citation omitted).  LASD's draft policies would also be protected by the attorney-client privilege. *Cause of Action Inst. v. United States Dep't of Just.*, 330 F. Supp. 3d 336, 350 (D.D.C. Sept. 13, 2018) ("Where a draft document relates to facts of which the client was informing the attorney for the purpose of securing an opinion of law, the document need not be disclosed.").

1  LASD personnel.  It is unclear how Defendants would search for "any federal
2  constitutional right of individuals to control the death images and or/physical
3  remains of deceased family members."  As for *Marsh*, "Marsh" is a common word
4  and last name; a Countywide search would result in numerous false hits.  (Tokoro
5  Declaration ¶ 13.)

6      **Privilege:**  These RFPs are also improper because they seek documents and
7  communications that would be privileged.  Documents and communications relating
8  to the drafting or revising of Department policies implicate the deliberative process
9  privilege, as well as the attorney-client privilege.  Likewise, communications
10  discussing *Marsh*—a legal court opinion—would most likely involve County
11  counsel and outside counsel.  There is no basis or reason to force Defendants to
12  search for these materials.

13  **C.   Policies Regarding Handling of Information or Materials Involving
Celebrities (RFP 38)**

14      **1.      Plaintiff's Contentions**

15      In RFP 38, Plaintiff requests all written policies from January 1, 2016 to
16  present regarding the handling or confidentiality of information or materials
17  involving celebrities, such as Mrs. Bryant's late husband, Kobe Bryant.[10]
18  Defendants have flatly declined to produce or even search for any such policies.
19  (*See* Martinez Decl., Ex. G (COLA R&Os), at 280-81; *id.*, Ex. H (LASD R&Os), at
20  390-91.)  Defendants' objections lack merit.

21      **Relevance.**  Any County or Sheriff's Department policies regarding
22  employees' handling of materials involving celebrities are relevant.  For example, in
23  connection with Plaintiff's *Monell* claim, any policies governing the handling of
24  materials relating to celebrities—including, for example, photographs of high-

---

26  [10] This request also seeks documents and communications relating to any training of
27  the Deputy Defendants on this topic; Plaintiff addresses that part of this request in
Part II.D below.

28

profile individuals, living or deceased—in the years preceding January 2020 are relevant to prove that the County and Department were aware of the acute public interest in such materials and were therefore on notice that adequate supervision and training were necessary to prevent their unauthorized handling or distribution. Those facts would tend to show that the County and Department were deliberately indifferent to survivors' constitutional right to control the physical remains, memory, and death images of their loved ones.  *See Waggy*, 594 F.3d at 713.

Policies regarding celebrity materials also are relevant to Mrs. Bryant's negligence claims.  Under California law, a defendant's own policies or procedures are relevant both to prove "the standard of due care applicable to" the defendant's employees and to show that a particular employee's "failure to follow the . . . rules promulgated by his employer constituted . . . negligence." *Dillenbeck v. City of Los Angeles*, 446 P.2d 129, 132 (Cal. 1968).[11]  If the County and the Sheriff's Department maintained policies dictating how their personnel were to handle and control the distribution of documents, photographs, or other material involving celebrities—whether living or deceased—they would be relevant to show the standard of care that governed Defendants' conduct toward victims' physical remains and whether the County's employees lived up to that standard when they shared gratuitous photos of Kobe and Gianna Bryant's remains with no legitimate law-enforcement purpose.

**Timeframe.**  Plaintiff's request for policies related to celebrity materials from January 1, 2016 to present is well-tailored to embrace policies that were in place

---

[11] *See also, e.g.*, *Koussaya v. City of Stockton*, 268 Cal. Rptr. 3d 741, 767 (Cal. App. 2020) (same); *Grudt v. City of Los Angeles*, 468 P.2d 825, 588 (Cal. 1970) (same); *Powell v. Pac. Elec. Ry. Co.*, 216 P.2d 448, 452-53 (Cal. 1950) (defendant railway's rules for operating trains were relevant and admissible in personal-injury litigation to show "the standard of care [the railway] thought appropriate to insure the safety of others at its track crossings" and "would be a circumstance for the jury to consider on the issue of [the railway's] negligence").

close in time to the January 2020 helicopter crash. *See Soto*, 162 F.R.D. at 622 (compelling discovery of "police guidelines, directives, policy statements, procedures, and training materials" dating back ten years). Searching for and producing such policies within this timeframe should not be unduly burdensome: the Sheriff's Department maintains and routinely updates its own Manual of Policies and Procedures, and to the extent the Department codifies or maintains any responsive policies elsewhere, it should be able to identify and search the repositories in which those policies are kept. Defendants have failed to offer any evidence to the contrary, as is their burden. *See, e.g., O.L.*, 2021 WL 926392, at *2.

**Privilege / Privacy.** For the same reasons described in Part II.A above, in this Court's prior discovery order (*see* Martinez Decl., Ex. D, at 95-96), and with respect to RFPs 28, 31, 32, and 33 above (*see supra* Pt. II.B), Defendants' unsubstantiated objections on federal and California privilege and privacy grounds lack merit. Indeed, Defendants have never explained how the written policies of a public agency could be privileged or implicate any employee's privacy. (Martinez Decl., Ex. G (COLA R&Os), at 280-81; *id.*, Ex. H (LASD R&Os), at 390-91.)

## 2.    Defendants' Contentions

Plaintiff requests all written policies from January 1, 2016 to present regarding the handling or confidentiality of information or materials involving celebrities. No such policies exist.[12] Plaintiff is again fighting over nothing.

Even if LASD had specific policies regarding celebrities, they would not be relevant to this action. Specifically, RFP 38 is not limited to *photographs* of human remains, or even photographs of celebrities generally, but instead seeks all policies regarding *any* confidential celebrity information, presumably including arrest

---

[12] There are only two LASD policies relating to celebrities: 2-05/090.10 (regarding stalking cases involving celebrities); 2-08/040.00 (regarding the transportation of celebrity detainees). Although these policies are irrelevant to any of the facts and issues in this case, Defendants will produce both policies to Plaintiff.

information and personal information obtained from celebrities during investigations (like home addresses or phone numbers).  RFP 38 is therefore not relevant to Plaintiff's claims nor proportional to the needs of this case.

### D. Training of Deputy Defendants (RFPs 30, 34, and 38)

#### 1. Plaintiff's Contentions

Plaintiff's RFPs 30, 34, and 38 seek documents and communications relating to any training of Deputies Joey Cruz, Rafael Mejia, Michael Russell, and Raul Versales (the "Deputy Defendants") regarding three topics: (a) the treatment or handling of human remains, including the sharing of photos of such remains (RFP 30); (b) any Sheriff's Department policy governing the use of personal cellular phones while on duty (RFP 34); and (c) the handling or confidentiality of information or materials relating to celebrities (RFP 38).  Defendants have refused to produce documents and communications responsive to these requests except for "documents sufficient to show the trainings attended by the deputy defendants" on these topics.  (Martinez Decl., Ex. K, at 401-02.)  Defendants' position lacks merit.

**Relevance.**  Defendants have agreed to produce records showing what training the Deputy Defendants attended regarding the treatment or handling of human remains, any Sheriff's Department policy governing the use of personal cellular phones while on duty, and the handling or confidentiality of information or materials relating to celebrities.  (Martinez Decl., Ex. K, at 401-02.)  Accordingly, there seems to be no dispute that records relating to such trainings are relevant.  Indeed, evidence that this training was insufficient or non-existent would tend to prove Mrs. Bryant's *Monell* claim that the County and Sheriff's Department were deliberately indifferent to Mrs. Bryant's constitutional rights and failed to properly train personnel to protect those rights, as well as to her negligence claim that the Deputy Defendants breached their duty of care.

Thus, Defendants' position appears to be that the titles of the particular training sessions that the Deputy Defendants attended is the only information

relating to their training that is relevant.  (*See* Martinez Decl., Ex. K at 401-02.)
That is wrong.  Records showing what information was or was not presented at the
Department's trainings; the Department's reasons for designing and delivering these
trainings as they did; and why any of the Deputy Defendants were *not* given these
trainings also are relevant.  To take just one example, if the Deputy Defendants
attended a training regarding the treatment of human remains but received utterly
inadequate instructions during that training, that information would be relevant.
Mrs. Bryant is entitled to know the particulars of the training Defendants provided
so that she can test its adequacy.

**Timeframe.**  Plaintiff's requests for records relating to the Deputy
Defendants' training are not overbroad as to time.  (*See* Martinez Decl., Ex. G
(COLA R&Os), at 271-72, 275-76, 280-81; *id.*, Ex. H (LASD R&Os), at 332-33;
336-38; 341-42.)  Plaintiff is entitled to discover documents relating to any training
of the Deputy Defendants on the treatment of human remains (RFP 30) and the use
of personal cell phones while on duty (RFP 34) from May 2012 to present because
that is when the Ninth Circuit clearly established Mrs. Bryant's federal
constitutional right in *Marsh*.  It is reasonable to expect that Defendants would have
provided or considered providing training on these topics in the wake of *Marsh* (if
they ever did).

Similarly, Mrs. Bryant's request for documents relating to any training of the
Deputy Defendants on the handling of materials involving celebrities—including
how they were trained and what training they were given—from January 1, 2016 to
present (RFP 38) is properly calibrated to records from the years immediately before
January 2020 that are most likely to yield probative materials.  *See Soto*, 162 F.R.D.
at 622 (compelling discovery of "police guidelines, directives, policy statements,
procedures, and training materials" dating back 10 years).  Defendants have not
articulated reasons or evidence to the contrary.  *O.L.*, 2021 WL 926392, at *2.

1    **Privilege / Privacy.**  For the same reasons described in Part II.A above and in

2    this Court's prior discovery order (*see* Martinez Decl., Ex. D, at 95-96), Defendants'

3    assertions of federal and California privileges and privacy objections in response to

4    RFPs 30, 34, and 38 lack merit.  (*See* Martinez Decl., Ex. G (COLA R&Os), at 271-

5    72, 275-76, 280-81; *id.*, Ex. H (LASD R&Os), at 332-33; 336-38; 341-42.)

6              **2.    Defendants' Contentions**

7    Plaintiff misrepresents the breadth and the scope of RFPs 30, 34, and 38,

8    claiming that these Requests merely seek "documents and communications relating

9    to any training of Deputies Joey Cruz, Rafael Mejia, Michael Russell, and Raul

10   Versales."  RFPs 30, 34, and 38 call for *all* documents regarding policies and

11   trainings at LASD in connection with the handling of human remains, the use of

12   personal cellphones by LASD deputies while on duty, and the handling of materials

13   involving celebrities—not tied to Deputies Cruz, Mejia, Russell, or Versales.  The

14   Requests span a nine-year period, from 2012 to the present.

15   **Relevance:**   Defendants agreed to produce LASD policies (including those

16   which relate to trainings), as well as information regarding what trainings the

17   Deputy Defendants had attended prior to the events at issue in this case.  (Tokoro

18   Declaration Ex. C at 45-47.)  But Plaintiff is not entitled to every single document

19   that relates to LASD policies and trainings over a nine year period.  Specifically,

20   Plaintiff is seeking materials related to the "preparation, drafting, consideration,

21   enactment, implementation, and enforcement" of specific LASD policies and

22   trainings.  These materials are not relevant to whether the Deputy Defendants

23   received adequate training.  If Plaintiff wants to evaluate the training that the Deputy

24   Defendants received, she will have the opportunity to do so by obtaining deposition

25   testimony from the Deputy Defendants regarding their individual trainings (in

26   addition to Defendants providing her with information relating to the trainings the

27   Deputy Defendants attended).

28

**Burden:** RFPs 30, 34, and 38 not only call for irrelevant documents, but are also overbroad in scope and time.  It is unrealistic to expect Defendants to search for every document relating to a Department policy or training program over a period of nearly a decade, yet that is precisely what these requests call for.

Plaintiff again fails to cite a single case where a law enforcement agency was compelled to produce all policies or training records spanning such a broad timeframe.  Instead, Plaintiff's cited cases dealt with targeted discovery aimed just at the individual defendants and the relevant training they received.  *See Soto* , 162 F.R.D. at 615 (holding that "[t]he personnel files of the *defendant-officers* in the instant case are relevant to Plaintiff's excessive force claim."); *Soler*, 2016 WL 11621299 at *4-7 (compelling production of complaints, discipline records, and performance evaluations of the individual sheriff's deputy defendants); *Medina*, 2014 WL 4793026, at *2-3 (evaluating six categories of documents "relating to each of the individual Defendants.").

**Privilege/Privacy:**  RFPs 30, 34, and 38 call for the production of materials that are specific and/or unique to individual deputies who are not defendants in this litigation.  As discussed above, deputies have rights under California law regarding the disclosure of their personnel records.  As the training records of individual (non-defendant) deputies are irrelevant to Plaintiff's claims in this case, Defendants should not be required to ignore the privacy concerns of hundreds of thousands of deputies.  Defendants agree that Plaintiff is entitled to information regarding the training that the Deputy Defendants received, and have already provided that information to Plaintiff.  What Plaintiff is not entitled to, however, is nearly ten years' worth of discovery going far beyond the relevance of this case.

**E.    OIG Materials (RFP 48)**

**1.    Plaintiff's Contentions**

In May 2020, the County of Los Angeles Office of Inspector General ("OIG") subpoenaed the Sheriff's Department for "all Documents and Information relating to

-24-

the fatal helicopter crash which occurred on or about January 26, 2020 and allegations of a subsequent destruction of photographs and suppression of investigation." (Martinez Decl., Ex. E, at 158-62.) Among other information, the OIG sought documents and information "showing the identify of all . . . persons":

- "who were, at any time in any manner, provided or in possession of photographs of the crash scene, including members of the National Transportation Safety Board and the Homicide Bureau";
- "who reportedly displayed the photographs to others";
- "to whom the photographs were displayed"; and
- "present when any persons were ordered to delete related photographs."

(*Id.* at 161) The OIG also subpoenaed documents and information relating to:

- "Cell phones or other devices with which the photographs were taken" or "on which [they] were stored or displayed";
- "Call history" and "[t]ext history and transcripts for cell phones possessed by" "Department personnel who were on scene";
- "Results of forensic examinations performed on any of the above devices";
- the training of "each Department employee identified as taking, possessing, displaying or deleting photographs"; and
- "Investigators' logs" and "[p]erformance log entries" relating to LASD's investigation into the unauthorized taking and distribution of crash scene or remains photos.

(*Id.* at 3-4.) The County and the Department have refused to produce to Plaintiff the materials they produced to the OIG in response to this subpoena. (*Id.*, Ex. I, at 357.) Their objections lack merit.

**Relevance.** Documents that Defendants produced to the OIG in its investigation of the very events giving rise to this lawsuit clearly are relevant to Plaintiff's claims. Documents regarding the identities of individuals who possessed, shared, or displayed photos of the crash scene, or were present when these photos were ordered to be deleted, obviously are relevant to uncovering the full scope of Defendants' unlawful conduct and identifying all participants in it. So too are cell-phone records and the results of any forensic examinations performed on devices

containing the photos.  If Defendants produced such materials to the OIG, then there is no reason they cannot easily produce the same materials to Mrs. Bryant.  Even the *absence* of certain categories of requested materials from the Sheriff's Department's productions to the OIG would be probative in Plaintiff's lawsuit.  If, for example, the Department did not produce any documents to the OIG identifying all "persons present" for Sheriff Villanueva's order to delete the illicit photographs, that would cast doubt on the County and the Department's position that any direction to delete records was made for innocent purposes rather than as part of a cover up.

**Privilege / Privacy.**  Defendants are wrong that Los Angeles County Ordinance § 6.44.190(J) confers any privilege on materials produced to the OIG.[13] As this Court has already held, any privilege provided by a local Ordinance would be inapplicable in this federal civil-rights lawsuit.  *See* (Martinez Decl., Ex D (Court's Dec. 30, 2020 discovery order), at 95); *see also, e.g.*, *Agster*, 422 F.3d at 839-40.  In any event, the Ordinance's plain text demonstrates that it applies only to disclosure of documents *by the OIG*.  The Ordinance provides that materials "received by the OIG in connection with the discharge of the OIG's duties shall be safeguarded and maintained *by the OIG* as required by law and as necessary to maintain any applicable privileges or the confidentiality of the information" and that "*the OIG* shall not disclose any confidential records . . . unless the disclosure is permitted by law."  (Emphases added.)  Mrs. Bryant is not asking the OIG to produce the documents Defendants produced to the OIG.  She is asking *the County and the Sheriff's Department* for those documents.  Nothing in the Ordinance

---

[13] During their meet-and-confer discussions on this topic, the parties referred to Section 6.44.190(J) as "Section 6.44.190(K)."  (Martinez Decl., Ex. I, at 356-59.) Section 6.44.190 was amended in 2020 by Los Angeles County Ordinance 2020-0007, which—in addition to other changes not relevant here—renumbered what was formerly Section 6.44.190(K) to what is now Section 6.44.190(J).  Plaintiff refers to this provision as Section 6.44.190(J) for purposes of this motion.

purports to establish a "one and done" rule whereby producing documents to the OIG privileges them from production in response to any other valid request.

Finally, and for the same reasons described in Part II.A above and in this Court's prior ruling (*see* Martinez Decl., Ex. D, at 95-96), Defendants' recycled California and federal privilege and privacy objections to producing the OIG materials are meritless.

### 2.   Defendants' Contentions

Plaintiff has failed to explain how this information is relevant to any of her claims.  Plaintiff cites no authority for the proposition that she is entitled to know what specific documents and materials were produced to the OIG, and which were not, and how that matters here.  This request is also a moot point: Plaintiff already has, or will have by the time this hearing has held, everything LASD provided to OIG.  This RFP has nothing to do with this litigation.  Plaintiff's belief that LASD was not forthcoming with OIG, a statement her team has made to the press, is just smoke.

**Relevance:**  The identification of the materials that Defendants provided to the OIG has no bearing on Plaintiff's claims.  Defendants explained this to Plaintiff on April 29, 2021.  (Tokoro Declaration, Ex. A at 8.)  This case is not about communications between LASD and OIG.

**Privilege/Privacy:**  When LASD shares documents with OIG, the documents remain confidential/privileged, where applicable.  Los Angeles County Ordinance § 6.44.190(J).  This means that an individual litigant is not necessarily entitled to the production of every document LASD shares with OIG.

### F.   Custodial Metadata (All of Plaintiff's RFPs)

### 1.   Plaintiff's Contentions

Courts have long acknowledged that metadata accompanying electronic records—including metadata identifying the individual custodians who authored, possessed, or altered those records—can shed light on the parties' claims and

defenses, just like the content of the records themselves.  *See, e.g.*, *Romero v. Allstate Ins. Co.*, 271 F.R.D. 96, 108 (E.D. Pa. 2010) (noting that "metadata," including metadata indicating "what custodians possessed what documents," "will provide Plaintiffs with crucial information and permit them to engage in a more effective and meaningful search and use of Defendants' extensive documentation"). For that reason, consistent with Fed. R. Civ. P. 34(b)(1)(C), Plaintiffs' RFPs instructed the County and Sheriff's Department to produce "all DOCUMENTS and COMMUNICATIONS" with "searchable metadata or information" indicating each record's custodian.  (Martinez Decl., Ex. E, at 102-03; *id.*, Ex. F, at 169-70.) Defendants' written responses did not object to this instruction.  As the following chart reflects, however, the metadata accompanying every single Sheriff's Department document produced so far identifies only "Lasd," not any individual, as the custodian:



(*See also* Martinez Decl. ¶ 15 & n.1, Ex. O.)  This Court should compel the Sheriff's Department to produce individual custodial metadata for documents it has produced and order all defendants to produce such data for all documents they produce going forward.

**Relevance.**  For several reasons, the Sheriff's Department's failure to produce metadata recording the individual custodian of each of its documents inhibits Mrs. Bryant's ability to prosecute this case and investigate the full scope of the Department's misconduct.

-28-

*First*, a number of documents in the Department's productions appear to have been sent under pseudonyms, which creates significant obstacles to inquiring about the documents and using them to trace the flow of information relating to photos of Mrs. Bryant's loved ones' remains throughout the Department.  For example, in one e-mail dated the day after the *Los Angeles Times* exposed the distribution of crash-scene photos by Sheriff's Department personnel, a member of the Sheriff's Information Bureau told a reporter soliciting comment from the Department that "[t]his matter is being looked into."  (Martinez Decl., Ex. P, at 428.)  The e-mail's header identifies the sender only as "SIB Media24," however, and nothing within the email indicates the author's identity.  Similarly, the header of another email bearing the same date reflects that a person named "Catron, William" sent an excerpt from the *Los Angeles Times* story to a recipient identified only as "Airbear77."  (*Id.*, Ex. Q, at 430.)  Without individualized custodial metadata, Mrs. Bryant cannot efficiently identify the individuals involved in these and other communications, inhibiting her ability to reconstruct who at the Department knew what and when and to identify additional persons with knowledge of the Sheriff's Department's handling of the sharing of gratuitous remains photos.  *See, e.g.*, *John B. v. Goetz*, 879 F. Supp. 2d 787, 881 (M.D. Tenn. 2010) ("Metadata may . . . assist in tying related documents with their respective custodians."); *Romero*, 271 F.R.D. at 108 (agreeing with plaintiffs that custodial metadata was necessary to permit them "to understand when documents were actually created or modified by Defendants (or their agents)" and "to understand what custodians possessed what documents, thereby allowing Plaintiffs to use those documents during particular depositions").

*Second*, the absence of individualized custodial information undermines Mrs. Bryant's ability to assess whether the Department made a reasonably diligent search for potentially responsive records.  "A party must make a reasonable inquiry to determine whether responsive documents exist[]."  *Strategic Partners, Inc. v. FIGS, Inc.*, 2020 WL 2527056, at *6 (C.D. Cal. Feb. 6, 2020) (citation omitted).  "A

reasonable inquiry has been described as at a minimum, a reasonable procedure to distribute discovery requests to *all* employees and agents of the party *potentially possessing* responsive information." *Id.* (citation omitted; Court's alterations adopted). The Department has refused even to provide Mrs. Bryant with a list of the custodians whose records it searched. (Martinez Decl. ¶ 14.) Without metadata indicating which documents the Department collected from whom, Plaintiff has no insight into the personnel whose document repositories the Department searched. She thus cannot verify whether the Department "conducted a thorough search—not just a convenient one—with due diligence." *Id.* at *7.

*Third*, without individualized custodial metadata, Mrs. Bryant cannot fully verify whether the Department and its agents have taken adequate steps to preserve records and information potentially relevant to this litigation. *See, e.g.*, *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432 (S.D.N.Y. 2004) (holding that a party that reasonably anticipates litigation "must make certain that all sources of potentially relevant information are identified and placed 'on hold'"). Individualized custodial metadata often reveals whether a party or its agents complied with their preservation obligations. For example, depending on the context, information that the Department has failed to produce an email from a particular individual's files that it produced from another individual's files could raise concerns about whether the first individual's files are complete.[14]

---

[14] *See, e.g.*, *Nursing Home Pension Fund v. Oracle Corp.*, 254 F.R.D. 559, 565 (N.D. Cal. 2008) (imposing sanctions because "defendants produced only 15 emails sent or received by [one custodian] from [that custodian's] own email files" but produced "over 1,650 of [the custodian's] emails . . . from the files of other . . . employees," which indicated spoliation impeding plaintiffs' ability to undermine custodian's argument "that he never actually read or received an email that was sent to him, and thus had no knowledge of its contents," and making it "impossible to know whether additional unproduced emails were also deleted or not turned over").

*Finally*, the lack of specific custodial metadata generates undue burdens for Mrs. Bryant. Plaintiff is entitled to a production with readily sortable custodial metadata so that she (and all parties, for that matter) can straightforwardly sort and review documents collected from or relevant to particular custodians or deponents. For example, when preparing for Sheriff Villanueva's deposition, Mrs. Bryant's counsel should be able to sort and review documents that were collected from Sheriff Villanueva's email. That will make all counsel's preparation for depositions—and the depositions themselves—more efficient. A dump of documents marked only "Lasd" unjustifiably hamstrings counsel's preparation and efficient examination during depositions. *See, e.g.*, *Romero*, 271 F.R.D. at 108; *City of Colton v. Am. Promotional Events, Inc.*, 277 F.R.D. 578, 585 (C.D. Cal. 2011) ("[I]t is clear that parties are entitled under the Federal Rules to rationally organized productions so that they may readily identify documents, including ESI, that are responsive to their production requests.").

**Lack of Justification.** The Sheriff's Department has never articulated any cogent justification for its failure to produce this most basic form of custodial metadata, as Mrs. Bryant explicitly requested. It has never taken the position that such metadata does not exist or is technically infeasible to collect and produce. (Martinez Decl. ¶ 14.) Rather, it has only vaguely insisted that re-producing documents with proper custodial metadata attached would require it to re-evaluate the record repositories of the custodians it has already searched. (*Id.*) But that objection does not explain why the Department failed to collect and provide individualized custodial metadata—a basic form of information that customarily accompanies modern document productions—in the first place.[15]

---

[15] *See, e.g.*, *Venture Corp. v. Barrett*, 2014 WL 5305575, at *3 (N.D. Cal. Oct. 16, 2014) ("[T]he disclosing party should provide information about each document which ideally would include, in some fashion, the identity of the custodian or person from whom the documents were obtained . . . ." (citation omitted)); *Silicon Storage*

1    For these reasons, the Court should order the Sheriff's Department to provide

2    metadata indicating the individual custodian from whom it retrieved each document

3    it has produced to Plaintiff, and order all defendants to produce such metadata going

4    forward.  *See, e.g.*, *Washington v. GEO Grp., Inc.*, 2018 WL 9457998, at *4 (W.D.

5    Wash. Oct. 2, 2018) (ordering production of individualized custodial metadata for

6    "all discovery produced, both past and prospective"); *Eli Lilly & Co. v. Wockhardt*

7    *Ltd.*, 2010 WL 2605855 at *5 (S.D. Ind. June 22, 2010) (ordering party to "provide

8    custodian information to [the opposing party] for the approximately 49,800

9    documents that [the opposing party] believes lack custodian information").

10                       **2.    Defendants' Contentions**

11    Plaintiff's contentions fail for several reasons.  First, the County and LASD

12    have produced the metadata and Electronically Stored Information ("ESI")

13    specifically asked for in Plaintiff's Requests for Production, which is their sole

14    obligation.  Counts have consistently held that a party is only obligated to produce

15    metadata (or ESI) as is requested in the requests for production.  *See Bagdasaryan v.*

16    *City of Los Angeles*, No. 2:15-CV-01008 JLS (KESx), 2017 WL 10560536, at *10

17    (C.D. Cal. Nov. 1, 2017) ("[C]ourts have generally only ordered the production of

18    metadata when it is sought in the initial document request and the producing party

19    has not yet produced the documents in any form.").  "If the requesting party does

20    not specify a form for producing ESI, the responding party must produce it in a form

21

22    *Tech., Inc. v. Nat'l Union Fire Ins. Co.*, 2015 WL 4347711, at *5 (July 15, 2015)
     (same), *overruled on other grounds by* 2015 WL 5168696 (Sept. 3, 2015); *Hullinger*

23    *v. Anand*, 2016 WL 7444620, at *10 (C.D. Cal. Aug. 19, 2016) ("Custodian

24    information should always be available, because presumably the party producing the
     document knows from where it was obtained."); *see also* State Bar of California,

25    Standing Committee on Professional Responsibility and Conduct, Formal Op. 2015-

26    193, at 3-4 (providing that reasonably competent "[a]ttorneys handling e-discovery
     should be able to" "identify custodians of potentially relevant ESI" and "produce

27    responsive non-privileged ESI in a recognized and appropriate manner").

28

or forms in which it is ordinarily maintained or in a reasonably usable form or forms." *Aguilar v. Immigr. & Customs Enf't Div. of U.S. Dep't of Homeland Sec.*, 255 F.R.D. 350, 355 (S.D.N.Y. 2008).

In this case, LASD followed the instructions set forth in Plaintiff's Requests for Production regarding the metadata and ESI which should be provided for emails. The instructions stated that the production of emails must include "from, to, cc, bcc, sent date, sent time, subject, and text," and that all documents or communications must include "custodian, Bates number beginning, Bates number ending, family range beginning, family range ending, and confidentiality designation, if any." All of that information has been provided to Plaintiff and was produced as the emails are ordinarily maintained. Tellingly, Plaintiff cannot point to any metadata which is *missing* from the County's document production.

Plaintiff relies on *John B. v. Goetz*, 879 F. Supp. 2d 787 (M.D. Tenn. 2010) for the proposition that she is somehow prejudiced or disadvantaged by the lack of individualized custodial metadata in LASD's document production. However, *John B.* merely stands for the proposition that the production of emails "must include metadata." *Id.* at 881. Specifically, metadata was particularly important in *John B.* "to understand what remedial measures the Defendant took after this Court's repeated findings of the Defendants' non-compliance with the Consent Decree." *Id.* In the present case, there is no consent decree, nor any evidence of noncompliance with the same. Moreover, unlike *John B.*, LASD *did* include metadata with its production, and custodian information is not lacking.

None of the additional cases cited by Plaintiff support her argument that LASD's production lacks sufficient metadata. Specifically, in all of the cases that Plaintiff cites, the producing party either: failed to produce *any* metadata, it was not possible to determine who the recipients of emails were, or the documents were not produced in native format. *See, e.g.*, *Romero v. Allstate Ins. Co.*, 271 F.R.D. 96, 108 (E.D. Pa. 2010) (no metadata was provided and documents were not produced in

native format); *City of Colton v. Am. Promotional Events, Inc.*, 277 F.R.D. 578, 585 (C.D. Cal. 2011) (documents not produced in native format nor in the format used in normal course of business); *Eli Lilly & Co. v. Wockhardt Ltd.*, 2010 WL 2605855 at *5 (S.D. Ind. June 22, 2010) (production lacked creation date and any custodian information); *Washington v. GEO Grp., Inc.*, 2018 WL 9457998, at *4 (W.D. Wash. Oct. 2, 2018) (production did not contain any custodian metadata so that receiving party could not determine who had received documents at issue).

Furthermore, Plaintiff has not established that her request would "yield useful information beyond that" which she already has.  *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. CV-14MD-2542 VSB SLC, 2020 WL 1940557, at *2 (S.D.N.Y. Apr. 22, 2020) (declining to order production of metadata where requesting party failed to show metadata would "yield useful information beyond that which Plaintiffs already have").  The custodian for the emails at issue is the Los Angeles County Sheriff's Department.  Plaintiff has the identity of everyone who sent or received the emails.  "[I]f a party wants metadata, it should [a]sk for it. Up front.  Otherwise, if [the party] ask[s] too late or ha[s] already received the document in another form, [it] may be out of luck." *Aguilar*, 255 F.R.D. at 357.

If Plaintiff has any specific questions about the author or recipient of specific emails, she is more than welcome to ask.  Requesting LASD re-produce tens of thousands of pages of documents it has already produced is not an appropriate remedy

LASD complied with the instructions in Plaintiff's Requests for Production. Plaintiff has all of the information  she needs to meaningfully identify and review the emails contained in LASD's production.  Therefore, there is no basis to force LASD to re-produce any documents.

Case No. 2:20-cv-09582-JFW-E

1   DATED: July 20, 2021                    Respectfully submitted,

2          _____/s/ Luis Li_____                   _____/s/ Louis R. Miller_____

3   Luis Li                                 Louis R. Miller

4

5

6

7

8

9

10                                          _____/s/ Jonathan C. McCaverty_____

11                                          Jonathan C. McCaverty

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## APPENDIX A

| | | |
|---|---|---|
| **Documents Relating to "Death Books"** | **RFP No. 28** | All DOCUMENTS and COMMUNICATIONS RELATING TO SHERIFF'S DEPARTMENT PERSONNEL personally possessing PHOTOS of human remains encountered by SHERIFF'S DEPARTMENT PERSONNEL while on duty.  For purposes of this request, "personally possessing" shall mean to possess a PHOTO on a personally-owned electronic device, such as a cell phone, or to possess a hardcopy PHOTO for a non-investigatory purpose.  *See* Comments of Sheriff Alex Villanueva, March 2, 2020, https://www.facebook.com/watch/live/?v=875675446 231021&ref=watch_permalink ("And then there's—there's, uh, cops—they keep death books, for example, where they—they have, uh, photos from crime scenes throughout their careers.  That's a macabre idea, but some do that."); L.A. Times, *Deputies Were Ordered to Delete Kobe Bryant Crash Photos to Avoid Discipline, Sources Say*, Feb. 28, 2020, https://www.latimes.com/california/story/ 2020-02-28/kobe-bryant-crash-photos-sheriffs-deputies (quoting Sheriff Alex Villanueva: "Every police department struggles with the same thing, where people take photos and they're not evidence.  So that's a practice we have to make sure that everyone walks away, and there is no evidence other than the official photos that are taken for criminal purposes.").  This request requires the production of DOCUMENTS and COMMUNICATIONS from January 1, 2016 to the present. |
| **Documents Relating to the Federal Constitutional Right to Control Death Images of Loved Ones** | **RFP No. 31** | All DOCUMENTS and COMMUNICATIONS RELATING TO any federal constitutional right of individuals to control the death images and/or physical remains of deceased family members, including but not limited to all DOCUMENTS and COMMUNICATIONS RELATING TO the SHERIFF'S DEPARTMENT'S and Sheriff Alex Villanueva's awareness of any such constitutional right and any written training materials generated by SHERIFF'S DEPARTMENT PERSONNEL RELATING TO or motivated by such a constitutional right.  This request calls for the production of DOCUMENTS and COMMUNICATIONS from May 29, 2012 to the present. |
| | **RFP No. 32** | All DOCUMENTS and COMMUNICATIONS RELATING TO the decision of the United States Court of Appeals for the Ninth Circuit in *Marsh v. County of San Diego*, 680 F.3d 1148 (9th Cir. 2012), including but not limited to all DOCUMENTS and COMMUNICATIONS RELATING TO the SHERIFF'S DEPARTMENT'S and Sheriff Alex Villanueva's awareness of the Ninth Circuit's decision in *Marsh* and any written training materials generated by SHERIFF'S DEPARTMENT PERSONNEL RELATING TO or motivated by the decision in *Marsh*.  This request calls for the production of DOCUMENTS and COMMUNICATIONS from May 29, 2012 to the present. |
| | **RFP No. 33** | All DOCUMENTS and COMMUNICATIONS RELATING TO the preparation, drafting, consideration, and enactment of the SHERIFF'S DEPARTMENT policy titled *5-09/475.00 Photographs/Recordings at Scenes Where Human Remains are Present*. |

Case No. 2:20-cv-09582-JFW-E

APPENDIX A TO JOINT STIPULATION RE: PLAINTIFF'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS & CUSTODIAL METADATA

| | | |
|---|---|---|
| **Policies Regarding Handling of Information or Materials Involving Celebrities** | **RFP No. 38[16]** | All written policies regarding the handling or confidentiality of information or materials involving celebrities and all DOCUMENTS and COMMUNICATIONS RELATING TO any training of Rafael Mejia, Raul Versales, Joey Cruz, and Michael Russell regarding the handling or confidentiality of information or materials involving to celebrities.  This request calls for the production of DOCUMENTS and COMMUNICATIONS from January 1, 2016 to the present. |
| **Documents Relating to Training of Deputy Defendants** | **RFP No. 30** | All DOCUMENTS and COMMUNICATIONS RELATING TO any training of Rafael Mejia, Raul Versales, Joey Cruz, and Michael Russell regarding the treatment or handling of human remains, including but not limited to any training related to the taking or SHARING of PHOTOS of human remains.  This request calls for the production of DOCUMENTS and COMMUNICATIONS from May 29, 2012 to the present. |
| | **RFP No. 34** | All DOCUMENTS and COMMUNICATIONS RELATING TO any training of Rafael Mejia, Joey Cruz, Raul Versales, and Michael Russell related to any Department policy regarding use of personal cellular phones while on duty.  This request calls for the production of DOCUMENTS and COMMUNICATIONS from May 29, 2012 to the present. |
| | **RFP No. 38** | All written policies regarding the handling or confidentiality of information or materials involving celebrities and all DOCUMENTS and COMMUNICATIONS RELATING TO any training of Rafael Mejia, Raul Versales, Joey Cruz, and Michael Russell regarding the handling or confidentiality of information or materials involving to celebrities.  This request calls for the production of DOCUMENTS and COMMUNICATIONS from January 1, 2016 to the present. |
| **OIG Materials** | **RFP No. 48** | All DOCUMENTS and COMMUNICATIONS produced by the SHERIFF'S DEPARTMENT in response to a subpoena issued by the Los Angeles County Office of Inspector General on or around May 26, 2020 (attached to Plaintiff's First Set of RFPs as Exhibit H). |
| **Custodial Metadata** | | Email and e-files should be produced . . . with at least the following items of searchable metadata or information about such DOCUMENTS and COMMUNICATIONS, as required to make these DOCUMENTS and COMMUNICATIONS reasonably usable: . . . for all DOCUMENTS and COMMUNICATIONS (including paper DOCUMENTS and COMMUNICATIONS), custodian, Bates number beginning, Bates number ending, family range beginning, family range ending, and confidentiality designation, if any. |

---

[16] Because it relates to both categories, this request is also grouped with the "Documents Relating to Training of Deputy Defendants" category immediately below.

APPENDIX A TO JOINT STIPULATION RE: PLAINTIFF'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS & CUSTODIAL METADATA

**ATTESTATION CLAUSE**

I, Luis Li, am the ECF User whose ID and password are being used to file this NOTICE OF MOTION AND JOINT STIPULATION RE: PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND CUSTODIAL METADATA FROM DEFENDANTS COUNTY OF LOS ANGELES & LOS ANGELES COUNTY SHERIFF'S DEPARTMENT.  In compliance with L.R. 5-4.3.4, I hereby attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated:  July 20, 2021

_____
*/s/ Luis Li*
Luis Li