# EXHIBIT E

LUIS LI (State Bar No. 156081)
luis.li@mto.com
CRAIG JENNINGS LAVOIE (State Bar No. 293079)
Craig.Lavoie@mto.com
MARI T. SAIGAL (State Bar No. 318556)
Mari.Saigal@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue
Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:   (213) 683-9100
Facsimile:   (213) 687-3702

Attorneys for Plaintiff Vanessa Bryant

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| VANESSA BRYANT, a California Resident,<br><br>          Plaintiff,<br><br>     vs.<br><br>COUNTY OF LOS ANGELES, a public entity, et al.,<br><br>          Defendants. | Case No.  2:20-cv-09582-JFW-E<br><br>**PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION TO DEFENDANT COUNTY OF LOS ANGELES**<br><br>Judge:  Hon. John F. Walter<br><br>Trial Date:     None Set |

PROPOUNDING PARTY:     VANESSA BRYANT

RESPONDING PARTY:     COUNTY OF LOS ANGELES

SET NO.:                    ONE

Case No. 2:20-cv-09582-JFW-E
PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION TO DEFENDANT COUNTY OF LOS ANGELES

Pursuant to Federal Rules of Civil Procedure 26 and 34, Plaintiff Vanessa Bryant requests that Defendant County of Los Angeles produce, not later than thirty (30) days from the date of service hereof, the documents and things described in the following Rule 34 requests at the offices of Munger, Tolles & Olson LLP, 350 South Grand Avenue, 50th Floor, Los Angeles, California, 90071 (attn.: Craig Lavoie), or at such other place and time as may be agreed by counsel for the parties:

## DEFINITIONS

1.      "ACCIDENT SCENE" shall mean and refer to the scene of the helicopter crash in Calabasas, California on January 26, 2020, that killed Kobe and Gianna Bryant, along with seven others.

2.      "COMMUNICATION(S)" shall mean and refer to any DOCUMENT, conversation, email communication, fax, text message, instant message, chat message, Skype message, voicemail, telephone conversation, recorded conversation, or exchange or transmission of information by written or oral means, including through intermediate parties. **This includes, without limitation, text messages sent or received on any and all mobile phones used by YOU and all messages sent or received via Facebook, WhatsApp, Signal, Instagram, Telegram, Parler, TikTok, Reddit, Snapchat, and similar applications and websites.**

3.      "CORONER'S OFFICE" shall mean and refer to the L.A. County Coroner's Office and its employees.

4.      "DOCUMENT(S)" shall have the broadest possible meaning that Rule 34 of the Federal Rules of Civil Procedure allows and shall include all written, recorded, graphic, or photographic matter, however produced or reproduced, pertaining in any manner to the subject matter indicated and includes, without limiting the generality of the foregoing, all originals, copies, and drafts of all papers, writings, email, letters, drawings, graphs, charts, photographs, audio recordings, video recordings, electronic recordings, notes, diaries, memoranda, minutes, spreadsheets, presentations, calendars, books, papers, accounts, time sheets,

1  affidavits, declarations, and any computer-generated, computer-stored, or
2  electronically-stored matter, and other data compilations from which information
3  can be obtained and translated, if necessary, into reasonably usable form, including
4  documents stored on laptop computers, Blackberrys, iPhones, smartphones, and any
5  other similar device.  "DOCUMENT(S)" shall also include each copy that is not
6  identical to the original or to any other identified copy, including all drafts and notes
7  (whether typed, handwritten, or otherwise) made or prepared in connection with
8  such DOCUMENTS, whether used or not.  **"DOCUMENT(S)" shall also include,**
9  **without limitation, text messages sent or received on any and all mobile phones**
10 **used by YOU and all content within YOUR control or possession on Facebook,**
11 **WhatsApp, Signal, Instagram, Telegram, Parler, TikTok, Twitter, Reddit,**
12 **Snapchat, and similar applications and websites.**
13      5.      "NTSB" shall mean and refer to the National Transportation Safety
14 Board and its employees.
15      6.      "PHOTO(S)" shall mean and refer to any photographic or audio-visual
16 content, including still images, videos, recordings, and screenshots.
17      7.      "RELATE TO" and "RELATING TO" shall mean, without limitation,
18 to refer, relate, evidence, regard, concern, discuss, reflect, summarize, constitute,
19 contain, study, assess, analyze, explain, mention, show, embody, discuss, describe,
20 or comment upon—directly or indirectly—the subject matter identified.
21      8.      "SHARED" and "SHARING" shall mean and refer to sending content
22 by email, text message, social media application, or other electronic transmission,
23 and/or physically showing a hardcopy PHOTO or a PHOTO on a screen to another
24 person.
25      9.      "SHERIFF'S DEPARTMENT" shall mean and refer to the Los
26 Angeles County Sheriff's Department.
27      10.     "SHERIFF DEPARTMENT PERSONNEL" shall mean and refer to
28 any natural person employed by or working on behalf of the Los Angeles County

1  Sheriff's Department, including but not limited to all officers, deputies, employees,

2  supervisors, contractors, agents, volunteers.  For the avoidance of doubt,

3  "SHERIFF'S DEPARTMENT PERSONNEL" includes Sheriff Alex Villanueva,

4  Captain Jorge Valdez, and Commander Diana Gealta.

5       11.    "VICTIMS' REMAINS" shall mean and refer to the physical remains

6  of individuals who perished in the helicopter crash near Calabasas, California on

7  January 26, 2020.

8       12.    "YOU" and "YOUR" shall mean and refer to the County of Los

9  Angeles and any of its current or former agents, representatives, employees,

10  officers, directors, members, alter egos, controlled entities, predecessors, successors,

11  assigns, attorneys, affiliates, and/or any person acting on its behalf.

12  <u>**INSTRUCTIONS**</u>

13       13.    Unless otherwise specifically noted, these requests call for the

14  production of DOCUMENTS and COMMUNICATIONS from January 25, 2020 to

15  the present.

16       14.    The following rules of construction apply to each document request

17  herein:

18            a.    The singular form of the word shall be interpreted as plural,

19  wherever necessary, to bring within the scope of the request any information that

20  might otherwise be construed to be outside its scope.

21            b.    The words "and" and "or" should be construed either

22  disjunctively or conjunctively, wherever necessary, to bring within the scope of the

23  request any material that might otherwise by construed to be outside its scope.

24            c.    The word "any" shall be construed to include the word "all," and

25  the word "all" shall be construed to include the word "any."

26            d.    The word "each" shall be construed to include the word "every,"

27  and "every" shall be construed to include the word "each."

28            e.    The word "including" is not limiting.

15.     Pursuant to Federal Rule of Civil Procedure 34(b), YOU shall produce responsive DOCUMENTS and COMMUNICATIONS as they have been kept in the usual course of business or shall organize and label them to correspond to these enumerated requests.  In either case, DOCUMENTS and COMMUNICATIONS contained in file-folders, loose-leaf binders, and notebooks with tabs or labels identifying such DOCUMENTS and COMMUNICATIONS are to be produced intact with such file-folders, loose-leaf binders, or notebooks.  In producing DOCUMENTS and COMMUNICATIONS, all DOCUMENTS and COMMUNICATIONS that are physically attached to each other shall be left so attached.  DOCUMENTS and COMMUNICATIONS that are segregated or separated from other DOCUMENTS and COMMUNICATIONS shall be left so segregated or separated.

16.     These Requests for Production are continuing in nature so as to require YOU to produce for inspection and copying any DOCUMENTS and COMMUNICATIONS not previously produced that YOU may from time-to-time acquire, obtain, locate, or identify, in accordance with the duty to supplement and correct under Federal Rule of Civil Procedure 26(e).

17.     If no DOCUMENTS or COMMUNICATIONS are responsive to a particular request, YOU should state that no responsive DOCUMENTS and COMMUNICATIONS exist.

18.     Every DOCUMENT and COMMUNICATION shall be produced with a Bates-number prefix.

19.     Electronic DOCUMENTS and COMMUNICATIONS shall be produced in the following format:

a.     Email and e-files should be produced as TIFF (Tagged Image File Format) images, along with at least the following items of searchable metadata or information about such DOCUMENTS and COMMUNICATIONS, as required to make these DOCUMENTS and COMMUNICATIONS reasonably usable: (1) for

1   emails, from, to, cc, bcc, sent date, sent time, subject, and text; (2) for other

2   electronic files (including email attachments), file name, file type or extension,

3   author, created date, created time, modified date, modified time and text; and (3) for

4   all DOCUMENTS and COMMUNICATIONS (including paper DOCUMENTS and

5   COMMUNICATIONS), custodian, Bates number beginning, Bates number ending,

6   family range beginning, family range ending, and confidentiality designation, if any.

7         b.     TIFF Images should be produced in monochrome single-page

8   format at 300 dpi resolution with Group IV compression and named by the Bates

9   number each image represents. Images should be labeled with unique filenames,

10  zero-padded and with no spaces, which are unique and match the Bates number

11  stamped on the image. In addition to any other reasonable formatting, images should

12  contain "speaker's notes" for MS PowerPoint files, hidden pages/columns/rows/text

13  with any substantive content for MS Excel files, and "tracked changes" for any MS

14  Word DOCUMENTS.

15        c.     Data deliveries should be on as few CDs, DVDs, external Hard

16  Disk Drives, thumb drives or secure file transfers as appropriate and reasonable for

17  the volume of material produced.

18        d.     To the extent specific DOCUMENTS or DOCUMENT family

19  groups require redaction, Optical Character Recognition ("OCR") may be provided

20  as "text" for such DOCUMENTS.

21        e.     All DOCUMENT productions shall be produced with industry

22  standard data load files (e.g., Concordance) and image load files (e.g. Opticon).

23  Extracted text and OCR text shall be produced in multiple page text files and named

24  by the Bates number each text file represents.

25        f.     To the extent necessary in order to produce DOCUMENTS and

26  COMMUNICATIONS in a reasonably usable format, YOU shall also produce

27  native files in connection with the production specifications referenced above.  This

28  format of production shall be used for files such as spreadsheets, databases and

PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION TO DEFENDANT COUNTY OF LOS ANGELES

Exhibit E
103

1  multimedia files where the TIFF images do not adequately communicate the
2  substantive content or context of the file.  In the case of any databases and/or files
3  created in proprietary applications, the parties should discuss whether a standard
4  export of structured data into a commonly used application (i.e., MS Access or
5  SQL) would be appropriate or whether there is some other form of production or
6  reporting that would be more appropriate.  When productions are made natively,
7  YOU should name the file consistent with the first Bates number represented by the
8  DOCUMENT or COMMUNICATION in the production, followed by any
9  applicable confidentiality legend (or abbreviation if the legend makes the file name
10 too long) and produce a slipsheet stating that the DOCUMENT or
11 COMMUNICATION has been produced in native form.

12         g.     Notwithstanding the foregoing, if any electronically stored
13 information is produced in a form that is not reasonably reviewable or useable by
14 Plaintiff's counsel, Plaintiff reserves the right for their counsel to request specific
15 and individual records to be delivered in a different form, including, but not limited
16 to, native form.

17     20.    Any DOCUMENT or COMMUNICATION responsive to a Request
18 that YOU do not produce by reason of a claim of privilege or otherwise, shall be
19 identified in writing as follows:

20         a.     State the general subject matter;

21         b.     State the date the DOCUMENT or COMMUNICATION was
22 prepared and the date it bears;

23         c.     Identify each person who wrote, signed, initialed, dictated, or
24 otherwise participated in the preparation of the DOCUMENT or
25 COMMUNICATION;

26         d.     Identify each person to whom the DOCUMENT or
27 COMMUNICATION was addressed and each person to whom the original or a
28 copy of the DOCUMENT or COMMUNICATION was sent;

1          e.     Identify each person who has custody of the original or a copy of

2    the DOCUMENT or COMMUNICATION;

3          f.     Identify each person referred to in the immediate preceding

4    subparagraphs c, d, and e by stating his or her full name, job title, and business

5    address, both currently and at the time he or she first had any involvement with the

6    DOCUMENT or COMMUNICATION; and

7          g.     State the privilege or immunity asserted.

8    **REQUESTS FOR PRODUCTION**

9    **REQUEST FOR PRODUCTION NO. 1:**

10   All PHOTOS of the ACCIDENT SCENE or VICTIMS' REMAINS taken or

11   SHARED by any person who is not an employee of the CORONER'S OFFICE or

12   NTSB.

13   **REQUEST FOR PRODUCTION NO. 2:**

14   All DOCUMENTS and COMMUNICATIONS RELATING TO PHOTOS of

15   the ACCIDENT SCENE or VICTIMS' REMAINS taken by any person who is not

16   an employee of the CORONER'S OFFICE or NTSB.

17   **REQUEST FOR PRODUCTION NO. 3:**

18   All DOCUMENTS and COMMUNICATIONS RELATING TO any taking or

19   SHARING of PHOTOS of the ACCIDENT SCENE or VICTIMS' REMAINS by

20   any person who is not an employee of the CORONER'S OFFICE or NTSB.

21   **REQUEST FOR PRODUCTION NO. 4:**

22   All DOCUMENTS and COMMUNICATIONS RELATING TO any gossip,

23   commentary, speculation, remarks, comments, descriptions, or discussions by or

24   among SHERIFF'S DEPARTMENT PERSONNEL regarding PHOTOS of the

25   ACCIDENT SCENE or VICTIMS' REMAINS.

26

27

28

**REQUEST FOR PRODUCTION NO. 5:**

All DOCUMENTS and COMMUNICATIONS RELATING TO PHOTOS of the ACCIDENT SCENE or VICTIMS' REMAINS being SHARED or displayed among individuals physically present at the Lost Hills Sheriff's station.

**REQUEST FOR PRODUCTION NO. 6:**

All DOCUMENTS and COMMUNICATIONS RELATING TO any deletion or destruction of PHOTOS of the ACCIDENT SCENE or VICTIMS' REMAINS. For the avoidance of doubt, this includes, but is not limited to, all DOCUMENTS and COMMUNICATIONS RELATING TO any order, instruction, or request that SHERIFF'S DEPARTMENT PERSONNEL delete or dispose of PHOTOS of the ACCIDENT SCENE or VICTIMS' REMAINS.

**REQUEST FOR PRODUCTION NO. 7:**

All DOCUMENTS and COMMUNICATIONS RELATING TO the possibility or reality that PHOTOS of the ACCIDENT SCENE or VICTIMS' REMAINS have entered or will enter the possession or view of anyone who is not an employee of the SHERIFF'S DEPARTMENT, CORONER'S OFFICE, or NTSB, including but not limited to the possibility or reality that PHOTOS of the ACCIDENT SCENE or VICTIMS' REMAINS have been or will be posted, uploaded, or shared on the internet or social media applications.

**REQUEST FOR PRODUCTION NO. 8:**

All DOCUMENTS and COMMUNICATIONS RELATING TO the possibility or reality that PHOTOS of the ACCIDENT SCENE or VICTIMS' REMAINS have been or will be sold.

**REQUEST FOR PRODUCTION NO. 9:**

All DOCUMENTS and COMMUNICATIONS RELATING TO statements or indications from members of the public that they have seen PHOTOS of the ACCIDENT SCENE or VICTIMS' REMAINS.

**REQUEST FOR PRODUCTION NO. 10:**

All DOCUMENTS and COMMUNICATIONS RELATING TO any formal or informal investigation of whether and/or to what extent SHERIFF'S DEPARTMENT PERSONNEL took and/or SHARED PHOTOS of the ACCIDENT SCENE or VICTIMS' REMAINS.

**REQUEST FOR PRODUCTION NO. 11:**

All DOCUMENTS and COMMUNICATIONS RELATING TO any formal or informal attempts to confine, control, or prevent the SHARING, dissemination, transmission, or spread of PHOTOS of the ACCIDENT SCENE or VICTIMS' REMAINS.

**REQUEST FOR PRODUCTION NO. 12:**

All DOCUMENTS and COMMUNICATIONS RELATING TO any discipline or contemplated discipline of SHERIFF'S DEPARTMENT PERSONNEL related to taking or SHARING PHOTOS of the ACCIDENT SCENE or VICTIMS' REMAINS.

**REQUEST FOR PRODUCTION NO. 13:**

All DOCUMENTS and COMMUNICATIONS RELATING TO any written or oral statements, comments, or remarks by Sheriff Alex Villanueva related to PHOTOS of the ACCIDENT SCENE or VICTIMS' REMAINS.

**REQUEST FOR PRODUCTION NO. 14:**

All DOCUMENTS and COMMUNICATIONS RELATING TO the presence and/or activities of SHERIFF'S DEPARTMENT PERSONNEL at the ACCIDENT SCENE on January 26, 27, and 28, 2020.

**REQUEST FOR PRODUCTION NO. 15:**

All DOCUMENTS and COMMUNICATIONS RELATING TO actual or potential attempts to access or view the ACCIDENT SCENE by members of the media, members of the public, pedestrians, onlookers, paparazzi, or unmanned drones, including but not limited to DOCUMENTS and COMMUNICATIONS

RELATING TO efforts by the SHERIFF'S DEPARTMENT and/or SHERIFF'S
DEPARTMENT PERSONNEL to control or restrict access to the ACCIDENT
SCENE.

**REQUEST FOR PRODUCTION NO. 16:**

DOCUMENTS sufficient to show that a no-fly zone was established over the
ACCIDENT SCENE and all reasons or justifications for the no-fly zone of which
YOU are aware.

**REQUEST FOR PRODUCTION NO. 17:**

DOCUMENTS sufficient to show that an ordinance and/or local law
prohibited unauthorized access to the ACCIDENT SCENE and all reasons or
justifications for the ordinance and/or local law of which YOU are aware.

**REQUEST FOR PRODUCTION NO. 18:**

DOCUMENTS sufficient to show all comments or statements by Sheriff Alex
Villanueva that individuals who trespassed at the ACCIDENT SCENE would be
charged with a misdemeanor.

**REQUEST FOR PRODUCTION NO. 19:**

All DOCUMENTS and COMMUNICATIONS RELATING TO complaints
regarding SHERIFF'S DEPARTMENT PERSONNEL taking or SHARING
PHOTOS of an accident scene, crime scene, or human remains.

**REQUEST FOR PRODUCTION NO. 20:**

All complaints submitted to the SHERIFF'S DEPARTMENT regarding any
agents or employees of the SHERIFF'S DEPARTMENT displaying PHOTOS of the
ACCIDENT SCENE or VICTIMS' REMAINS, including but not limited to the
complaint referenced in the *Los Angeles Times* article attached hereto as Exhibit A.

**REQUEST FOR PRODUCTION NO. 21:**

All DOCUMENTS and COMMUNICATIONS RELATING TO any
interaction or COMMUNICATION, or attempted interaction or
COMMUNICATION, between Sheriff Alex Villanueva, on the one hand, and

1  SHERIFF'S DEPARTMENT PERSONNEL whom the SHERIFF'S

2  DEPARTMENT and/or Sheriff Alex Villanueva has or had reason to believe may

3  have taken or SHARED PHOTOS of the ACCIDENT SCENE or VICTIMS'

4  REMAINS, on the other hand.

5  **REQUEST FOR PRODUCTION NO. 22:**

6  All DOCUMENTS and COMMUNICATIONS RELATING TO any

7  statement or COMMUNICATION by Sheriff Alex Villanueva to SHERIFF'S

8  DEPARTMENT PERSONNEL regarding whether and/or to what extent they would

9  face discipline if they deleted PHOTOS of the ACCIDENT SCENE or VICTIMS'

10  REMAINS.

11  **REQUEST FOR PRODUCTION NO. 23:**

12  All DOCUMENTS and COMMUNICATIONS RELATING TO media

13  reports, articles, or public commentary regarding PHOTOS of the ACCIDENT

14  SCENE or VICTIMS' REMAINS, including, but not limited to, all DOCUMENTS

15  and COMMUNICATIONS RELATING TO a report by TMZ titled *Kobe Bryant*

16  *Helicopter Crash – Irate Bartender Busts Sheriff's Deputies . . . Who Shared*

17  *Gruesome Crash Photos* (February 28, 2020), attached hereto as Exhibit C.

18  **REQUEST FOR PRODUCTION NO. 24:**

19  All DOCUMENTS and COMMUNICATIONS RELATING TO reports by

20  the *Los Angeles Times* that agents or employees of the SHERIFF'S DEPARTMENT

21  took and/or SHARED PHOTOS of the ACCIDENT SCENE or VICTIMS'

22  REMAINS.  For the avoidance of doubt, this request includes, but is not limited to,

23  all DOCUMENTS and COMMUNICATIONS RELATING TO the *Los Angeles*

24  *Times* articles titled: *L.A. County Deputies Shared Graphic Photos of Kobe Bryant*

25  *Scene, Sources Say* (February 28, 2020), *Deputies Were Ordered to Delete Kobe*

26  *Bryant Crash Photos to Avoid Discipline, Sources Say* (February 28, 2020), and

27  *Sheriff Admits He Ordered Destruction of Graphic Kobe Bryant Crash Photos*

28  (March 2, 2020).  These articles are attached hereto as Exhibit B.

**REQUEST FOR PRODUCTION NO. 25:**

All DOCUMENTS and COMMUNICATIONS RELATING TO COMMUNICATIONS or interactions between SHERIFF'S DEPARTMENT PERSONNEL, on the one hand, and agents or employees of the *Los Angeles Times*, on the other hand, regarding the taking and/or SHARING of PHOTOS of the ACCIDENT SCENE or VICTIMS' REMAINS and/or any attempt to investigate or control the spread of such PHOTOS.

**REQUEST FOR PRODUCTION NO. 26:**

All DOCUMENTS and COMMUNICATIONS RELATING TO a statement issued by the SHERIFF'S DEPARTMENT on February 28, 2020 related to media reports indicating that SHERIFF'S DEPARTMENT PERSONNEL shared images of the ACCIDENT SCENE or VICTIMS' REMAINS, including but not limited to all drafts and iterations of the statement.  (A copy of the statement is attached hereto as Exhibit D.)

**REQUEST FOR PRODUCTION NO. 27:**

All DOCUMENTS and COMMUNICATIONS RELATING TO whether SHERIFF'S DEPARTMENT PERSONNEL were or were not authorized by the SHERIFF'S DEPARTMENT, the NTSB, and/or the CORONER'S OFFICE to take PHOTOS of the ACCIDENT SCENE.

**REQUEST FOR PRODUCTION NO. 28:**

All DOCUMENTS and COMMUNICATIONS RELATING TO SHERIFF'S DEPARTMENT PERSONNEL keeping, maintaining, or possessing PHOTOS of crime scenes, accident scenes, or human remains encountered while on duty.  *See* Comments of Sheriff Alex Villanueva, March 2, 2020, https://www.facebook.com/watch/live/?v=875675446231021&ref=watch_permalink ("And then there's—there's, uh, cops—they keep death books, for example, where they—they have, uh, photos from crime scenes throughout their careers.  That's a macabre idea, but some do that.").  This request calls for the production of DOCUMENTS and

1  COMMUNICATIONS from May 29, 2012 to the present.[1]

2  **REQUEST FOR PRODUCTION NO. 29:**

3       All DOCUMENTS and COMMUNICATIONS RELATING TO SHERIFF'S

4  DEPARTMENT PERSONNEL taking, SHARING, possessing, or retaining

5  PHOTOS of human remains, accident scenes, or crime scenes for a personal, non-

6  law-enforcement, or non-investigatory purpose.  *See* L.A. Times, *Deputies Were*

7  *Ordered to Delete Kobe Bryant Crash Photos to Avoid Discipline, Sources Say*, Feb.

8  28, 2020, https://www.latimes.com/california/story/2020-02-28/kobe-bryant-crash-

9  photos-sheriffs-deputies (quoting Sheriff Alex Villanueva: "Every police

10  department struggles with the same thing, where people take photos and they're not

11  evidence.  So that's a practice we have to make sure that everyone walks away, and

12  there is no evidence other than the official photos that are taken for criminal

13  purposes.").  This request calls for the production of DOCUMENTS and

14  COMMUNICATIONS from May 29, 2012 to the present.

15  **REQUEST FOR PRODUCTION NO. 30:**

16       All DOCUMENTS and COMMUNICATIONS RELATING TO any training

17  of SHERIFF'S DEPARTMENT PERSONNEL regarding the treatment or handling

18  of human remains, including but not limited to any training related to the taking or

19  SHARING of PHOTOS of human remains.  This request calls for the production of

20  DOCUMENTS and COMMUNICATIONS from May 29, 2012 to the present.

21  **REQUEST FOR PRODUCTION NO. 31:**

22       All DOCUMENTS and COMMUNICATIONS RELATING TO any federal

23  constitutional right of individuals to control the death images and/or physical

24  remains of deceased family members, including but not limited to all

25  DOCUMENTS and COMMUNICATIONS RELATING TO the SHERIFF'S

26

27  [1] May 29, 2012 is the date on which the Ninth Circuit published its decision in

28  *Marsh v. County of San Diego*, 680 F.3d 1148 (9th Cir. 2012).

1  DEPARTMENT'S and Sheriff Alex Villanueva's awareness of any such
2  constitutional right and any training of SHERIFF'S DEPARTMENT PERSONNEL
3  RELATING TO or motivated by such a constitutional right.  This request calls for
4  the production of DOCUMENTS and COMMUNICATIONS from May 29, 2012 to
5  the present.
6  **REQUEST FOR PRODUCTION NO. 32:**
7       All DOCUMENTS and COMMUNICATIONS RELATING TO the decision
8  of the United States Court of Appeals for the Ninth Circuit in *Marsh v. County of*
9  *San Diego*, 680 F.3d 1148 (9th Cir. 2012), including but not limited to all
10  DOCUMENTS and COMMUNICATIONS RELATING TO the SHERIFF'S
11  DEPARTMENT'S and Sheriff Alex Villanueva's awareness of the Ninth Circuit's
12  decision in *Marsh* and any training of SHERIFF'S DEPARTMENT PERSONNEL
13  RELATING TO or motivated by the decision in *Marsh*.  This request calls for the
14  production of DOCUMENTS and COMMUNICATIONS from May 29, 2012 to the
15  present.
16  **REQUEST FOR PRODUCTION NO. 33:**
17       All DOCUMENTS and COMMUNICATIONS RELATING TO the
18  preparation, drafting, consideration, enactment implementation, and enforcement of
19  the SHERIFF'S DEPARTMENT policy titled *5-09/475.00 Photographs/Recordings*
20  *at Scenes Where Human Remains are Present* (attached hereto as Exhibit E),
21  including but not limited to any training of SHERIFF'S DEPARTMENT
22  PERSONNEL regarding the policy.
23  **REQUEST FOR PRODUCTION NO. 34:**
24       All DOCUMENTS and COMMUNICATIONS RELATING TO the
25  preparation, drafting, consideration, enactment, implementation, and enforcement of
26  any policy regarding the use of personal cellular phones by SHERIFF'S
27  DEPARTMENT PERSONNEL while on duty, including but not limited to
28  DOCUMENTS and COMMUNICATIONS RELATING TO any training of

-15-                          Case No. 2:20-cv-09582-JFW-E
PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION TO DEFENDANT COUNTY OF LOS ANGELES

1  SHERIFF'S DEPARTMENT PERSONNEL related to any Department policy

2  regarding use of personal cellular phones while on duty.  This request calls for the

3  production of DOCUMENTS and COMMUNICATIONS from May 29, 2012 to the

4  present.

5  **REQUEST FOR PRODUCTION NO. 35:**

6       All DOCUMENTS and COMMUNICATIONS RELATING TO the

7  preparation, drafting, consideration, enactment, implementation, and enforcement of

8  the SHERIFF'S DEPARTMENT policy titled *3-01/100.46 Use of Personal*

9  *Communication Devices* (attached hereto as Exhibit F).  For the avoidance of doubt,

10  this request includes, but is not limited to, all DOCUMENTS and

11  COMMUNICATIONS relating to (i) any training of SHERIFF'S DEPARTMENT

12  PERSONNEL regarding the policy; (ii) all iterations and versions of the policy that

13  have been in effect at any time since May 29, 2012; and (iii) investigations of actual

14  and potential violations of the policy.  This request calls for the production of

15  DOCUMENTS and COMMUNICATIONS from May 29, 2012 to the present.

16  **REQUEST FOR PRODUCTION NO. 36:**

17       All DOCUMENTS and COMMUNICATIONS RELATING TO the view or

18  opinion of any SHERIFF'S DEPARTMENT PERSONNEL, including but not

19  limited to Sheriff Villanueva, regarding whether the SHERIFF'S DEPARTMENT's

20  photograph policy was or is deficient, inadequate, or in need of revision.  *See* L.A.

21  Times, *Sheriff's Department Seeks Oversight of Kobe Bryant Crash Photo Scandal*,

22  March 3, 2020, https://www.latimes.com/california/ story/2020-03-07/sheriffs-

23  department-invites-oversight-panel-review-policies-kobe-bryant-crash-photo

24  (quoting Sheriff Villanueva: "It is evident our photograph policy is deficient and this

25  incident has identified the need for me to direct the creation of a new policy.").

26  **REQUEST FOR PRODUCTION NO. 37:**

27       All DOCUMENTS and COMMUNICATIONS relating to

28  COMMUNICATIONS between the SHERIFF'S DEPARTMENT, on the one hand,

Case No. 2:20-cv-09582-JFW-E

PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION TO DEFENDANT COUNTY OF LOS ANGELES

Exhibit E
113

1  and the L.A. County Sheriff's Civilian Oversight Commission and/or the L.A.

2  County Office of Inspector General, on the other hand, related to PHOTOS of the

3  ACCIDENT SCENE or VICTIMS' REMAINS, the SHERIFF'S DEPARTMENT'S

4  policies regarding the taking and distribution of photographs and recordings by on-

5  duty personnel, and/or the SHERIFF'S DEPARTMENT'S policies regarding the

6  treatment and handling of human remains.

7  **REQUEST FOR PRODUCTION NO. 38:**

8  　　　All DOCUMENTS and COMMUNICATIONS RELATING TO the

9  preparation, drafting, consideration, enactment, implementation, and enforcement of

10  any policy regarding the handling or confidentiality of information or materials

11  involving celebrities, including but not limited to DOCUMENTS and

12  COMMUNICATIONS RELATING TO any training of SHERIFF'S

13  DEPARTMENT PERSONNEL regarding the handling or confidentiality of

14  information or materials involving to celebrities.  This request calls for the

15  production of DOCUMENTS and COMMUNICATIONS from January 1, 2016 to

16  the present.

17  **REQUEST FOR PRODUCTION NO. 39:**

18  　　　All DOCUMENTS and COMMUNICATIONS RELATING TO potential,

19  proposed, or enacted legislation in California that prohibits first responders from

20  taking unauthorized photos of human remains at crime or accident scenes.  For the

21  avoidance of doubt, this request includes, but is not limited to, all DOCUMENTS

22  and COMMUNICATIONS RELATING TO A.B. 2655, a bill enacted by the

23  California state government in 2020.

24  **REQUEST FOR PRODUCTION NO. 40:**

25  　　　Documents sufficient to show all SHERIFF'S DEPARTMENT policies,

26  procedures, and rules in effect at any time since January 1, 2020 that address

27  whether and under what circumstances the SHERIFF'S DEPARTMENT may seize

28  and/or search personal cell phones of SHERIFF'S DEPARTMENT PERSONNEL.

**REQUEST FOR PRODUCTION NO. 41:**

Documents sufficient to show all SHERIFF'S DEPARTMENT policies, procedures, and rules in effect at any time since January 1, 2020 that address or set forth standards for opening or undertaking an internal affairs investigation.

**REQUEST FOR PRODUCTION NO. 42:**

Documents sufficient to show all SHERIFF'S DEPARTMENT policies, procedures, and rules in effect at any time since January 1, 2020 that address the preservation of evidence of potential violations of law or constitutional rights by SHERIFF'S DEPARTMENT PERSONNEL.

**REQUEST FOR PRODUCTION NO. 43:**

DOCUMENTS sufficient to show the SHERIFF'S DEPARTMENT'S and Sheriff Alex Villanueva's awareness that an agent or employee of the SHERIFF'S DEPARTMENT shared actor Mel Gibson's arrest report with a member of the press without authorization.  This request calls for the production of DOCUMENTS and COMMUNICATIONS from July 1, 2006 to the present.

**REQUEST FOR PRODUCTION NO. 44:**

DOCUMENTS sufficient to show the SHERIFF'S DEPARTMENT'S and Sheriff Alex Villanueva's awareness that a member of the Los Angeles law enforcement community shared one or more photos of domestic-assault injuries suffered by the singer Rihanna with a member of the press.  This request calls for the production of DOCUMENTS and COMMUNICATIONS from January 1, 2009 to the present.

**REQUEST FOR PRODUCTION NO. 45:**

All DOCUMENTS and COMMUNICATIONS RELATING TO any COMMUNICATION or interaction, or contemplated, considered, or attempted COMMUNICATION or interaction, between SHERIFF'S DEPARTMENT PERSONNEL, on the one hand, and Vanessa Bryant, the family of Kobe Bryant, or the Los Angeles Lakers, on the other hand.

1 | **REQUEST FOR PRODUCTION NO. 46:**

2 |    All DOCUMENTS and COMMUNICATIONS RELATING TO any

3 | COMMUNICATION or interaction, or contemplated, considered, or attempted

4 | COMMUNICATION or interaction, between SHERIFF'S DEPARTMENT

5 | PERSONNEL, on the one hand, and family members of the victims of the helicopter

6 | crash near Calabasas, California on January 26, 2020, on the other hand, related to

7 | PHOTOS of the ACCIDENT SCENE or VICTIMS' REMAINS.

8 | **REQUEST FOR PRODUCTION NO. 47:**

9 |    All DOCUMENTS and COMMUNICATIONS RELATING TO letters sent

10 | by Munger, Tolles & Olson LLP to Sheriff Alex Villanueva on March 2, 2020 and

11 | March 8, 2020 (attached hereto as Exhibit G).

12 | **REQUEST FOR PRODUCTION NO. 48:**

13 |    All DOCUMENTS and COMMUNICATIONS produced by the SHERIFF'S

14 | DEPARTMENT in response to a subpoena issued by the Los Angeles County

15 | Office of Inspector General on or around May 26, 2020 (attached hereto as Exhibit

16 | H).

19 | DATED:  November 16, 2020          MUNGER, TOLLES & OLSON LLP

22 |                            By:  _____*/s/ Craig Jennings Lavoie*_____
                                          CRAIG JENNINGS LAVOIE

24 |                            Attorneys for Plaintiff Vanessa Bryant

1

## PROOF OF SERVICE

2

**Bryant v. County of Los Angeles et al.**
**Case No. 2:20-cv-09582-JFW-E**

3

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

4

5          At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Los Angeles, State of California.  My business address is 350 South Grand Avenue, Fiftieth Floor, Los Angeles, CA 90071-3426.

6

7          On November 16, 2020, I served true copies of the following DOCUMENT(s) described as **PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION TO DEFENDANT COUNTY OF LOS ANGELES** on the interested parties in this action as follows:

8

9

### SEE ATTACHED SERVICE LIST

10

11          **BY MAIL:**  I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices.  I am readily familiar with the firm's practice for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

12

13

14          I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

15

16          Executed on November 16, 2020, at Los Angeles, California.

17

18

19                                                    Charbel Rizk

20

21

22

23

24

25

26

27

28

46026240.1                                              Case No. 2:20-cv-09582-JFW-E

PROOF OF SERVICE

**Exhibit E**
**117**

**SERVICE LIST**
**Bryant v. County of Los Angeles et al.**
**Case No. 2:20-cv-09582-JFW-E**

| | |
|---|---|
| Louis R. Miller | *Attorneys for County of Los Angeles* |
| smiller@millerbarondess.com | |
| Mira Hashmall | |
| mhashmall@millerbarondess.com | |
| Emily A. Rodriguez | |
| esanchirico@millerbarondess.com | |
| MILLER BARONDESS, LLP | |
| 1999 Avenue of the Stars, Suite 1000 | |
| Los Angeles, CA 90067 | |
| (310) 552-4400 | |
| | |
| Jonathan C. McCaverty | *Attorneys for Los Angeles County* |
| jmccaverty@counsel.lacounty.gov | *Sheriff's Department and Alex* |
| LOS ANGELES COUNTY COUNSEL | *Villanueva* |
| 500 West Temple Street, Suite 468 | |
| Los Angeles, CA 90012 | |
| (310) 552-4400 | |

46026240.1

Case No. 2:20-cv-09582-JFW-E

PROOF OF SERVICE

**Exhibit E**
**118**

# EXHIBIT A

# Los Angeles Times

CALIFORNIA

# Deputies were ordered to delete Kobe Bryant crash photos to avoid discipline, sources say



This image taken from video provided by the National Transportation Safety Board shows part of the wreckage of the helicopter that crashed near Calabasas, Calif., killing Kobe Bryant and eight others. (National Transportation Safety Board)

By ALENE TCHEKMEDYIAN, PAUL PRINGLE

FEB. 28, 2020 | 10:05 PM



In an attempt to keep the matter under wraps, the Los Angeles County Sheriff's Department quietly ordered deputies to delete any photos of the [Kobe Bryant helicopter crash scene after a citizen complained that a deputy was showing the gruesome images at a Norwalk bar,](https://www.latimes.com/california/story/2020-02-28/kobe-bryant-crash-photos-sheriffs-deputies) two public safety sources with knowledge of the events said.

Exhibit E
120

Normally, such a complaint would trigger a formal inquiry and possibly an internal affairs investigation, strictly following the chain of command, the sources said.

---

CALIFORNIA

### The last flight of Kobe Bryant

Jan. 28, 2020

---

Instead, in the days after the Jan. 26 crash, deputies were ordered to report to the sheriff's Lost Hills station and told that if they came clean and deleted the photos, they would not face any discipline, said the sources, who spoke on condition of anonymity because of the sensitive nature of the events.

The sources said they were concerned the directive to delete the photos could amount to the destruction of evidence.

After The Times reported that deputies shared the photos, the Sheriff's Department launched an investigation.
Brian Williams, executive director of the Civilian Oversight Commission, said his office planned to question officials during a meeting with the Sheriff's Department next week that had already been scheduled.

In an interview Wednesday, Villanueva did not respond directly to queries of whether he ordered the deletion of the photos.





He did say: "Every police department struggles with the same thing, where people take photos and they're not evidence. So that's a practice we have to make sure that everyone walks away, and there is no evidence other than the official photos of evidence that are taken for criminal purposes."

The citizen's complaint was sent to the sheriff's information bureau. In an interview Wednesday, Capt. Jorge Valdez, the head of the bureau, said he was "unaware of any complaint" and "there was no order given to delete any photographs."

The sources said Friday, however, that Valdez was among those who handled the complaint.

Neither Villanueva nor Valdez responded to follow-up questions on Thursday and Friday.

The department issued a statement Friday saying that Villanueva is "deeply disturbed at the thought deputies could allegedly engage in such an insensitive act."

"A thorough investigation will be conducted by the department, with the No. 1 priority of protecting the dignity and privacy of the victims and their families," the department said.

LAKERS

Exhibit E
122

**Inside the ultra-competitive world of Kobe Bryant merchandise after his death**

Feb. 28, 2020

Joseph Giacalone, who teaches police procedures at the John Jay College of Criminal Justice in New York, said the L.A. County Office of the Inspector General should launch an inquiry into how the Sheriff's Department handled the complaint.

"Now the whole investigation is tainted," he said of the Sheriff's Department's new inquiry. "No matter what they find, the public is going to have a raised eyebrow."

The Times first reported on Thursday that deputies had shared photos of the crash, including in an incident separate from what happened at the Norwalk bar.

A third public safety source had told The Times that the sharing of photos of the crash scene and the victims' remains was the topic of a discussion among first responders two days after the crash.

The source, who spoke on the condition of anonymity, said he saw one of the photos on the phone of another official at that discussion, which was not a part of the investigation of the crash.

In a statement Friday, the Assn. for Los Angeles Deputy Sheriffs, the union that represents deputies, said: "As with all investigations, we will aggressively represent our members and preserve their rights."

CALIFORNIA    LAKERS

**Exhibit E**
**123**



## The stories shaping California

Get up to speed with our Essential California newsletter, sent six days a week.

Enter Email Address

SIGN ME UP

You may occasionally receive promotional content from the Los Angeles Times.



Alene Tchekmedyian

🐦 Twitter     📷 Instagram     ✉ Email     f Facebook

Alene Tchekmedyian covers the Los Angeles County Sheriff's Department. She previously wrote about the county's criminal courts and breaking news throughout California. Before joining The Times in 2016, she reported on crime and policing for the Glendale News-Press and Burbank Leader. She grew up in Huntington Beach and graduated from UCLA.



Paul Pringle

🐦 Twitter     📷 Instagram     ✉ Email     f Facebook

Paul Pringle is a Los Angeles Times reporter who specializes in investigating corruption.

SUBSCRIBERS ARE READING

POLITICS

**Your guide to the 2020 election in California**

Exhibit E
124

# EXHIBIT B

☰                    *Los Angeles Times*                    🔍

CALIFORNIA

# L.A. County deputies shared graphic photos of Kobe Bryant crash scene, sources say



Fans gather in Calabasas the day Kobe Bryant and eight others died in a helicopter crash on a nearby hillside. (Christina House/Los Angeles Times)

By ALENE TCHEKMEDYIAN, PAUL PRINGLE

FEB. 28, 2020 | 11:55 AM



Members of an oversight group expressed concern Friday after The Times reported that Los Angeles County sheriff's deputies shared graphic photos of the helicopter crash that killed Kobe Bryant and eight others.

Exhibit E
126

The Times spoke with two public safety sources with knowledge of the events. One of the sources said that the sharing of photos of the crash scene and the victims' remains was the topic of a discussion among first responders two days after the crash. The source said he saw one of the photos on the phone of another official, in a setting that had nothing to do with the investigation of the crash. The source spoke on condition of anonymity because of the sensitive nature of the matter.

Patti Giggans, chair of the Sheriff Civilian Oversight Commission, told The Times on Friday that the alleged behavior is "completely unprofessional" and "very regrettable."

"Hopefully we'll hear more, what was going on and how they found out," she said. "At this point, we have to trust that the sheriff is going to get to the bottom of it."

Brian Williams, the commission's executive director, said his office planned to make an inquiry as to what happened during a meeting with the Sheriff's Department next week that had already been scheduled.

"I'm sure it's something that the department is going to take very seriously," he said.

After multiple inquiries by The Times, the Sheriff's Department said Thursday that the "matter is being looked into."

It's unclear how widely the photos might have been disseminated and who exactly was involved. It's also unclear whether the deputies had actually taken the photos at the scene or had received them from someone else.

Capt. Jorge Valdez, the head of the sheriff's information bureau, said Wednesday that his office had been obligated to contact the family members of crash victims not because of allegations against the deputies but because The Times inquired about them.

Exhibit E
127

Joseph Giacalone, who teaches police procedures at the John Jay College of Criminal Justice in New York, said that generally, sharing photos with anyone not authorized to see them "is a cardinal sin in law enforcement."

Law enforcement agencies, particularly in Los Angeles, have struggled over the years with the unauthorized use of evidence involving celebrities.

The Sheriff's Department launched a lengthy investigation into the leaking of documents after Mel Gibson's infamous anti-Semitic rant during a drunk driving arrest. The issue was also highlighted when it was revealed that celebrity private investigator Anthony Pellicano paid members of law enforcement agencies for confidential information.

A Los Angeles police officer was fired in connection with a leaked photo of Rihanna after she was beaten by Chris Brown in 2009.

In a brief interview Wednesday at the Hall of Justice downtown, Sheriff Alex Villanueva would not discuss the allegations in the Bryant case in any detail, including whether the department had received a complaint that the photos were shared inappropriately.

Valdez said he was "unaware of any complaint."

Bryant's helicopter crashed into a Calabasas hillside last month in dense fog, killing the retired NBA star, his daughter Gianna, 13, and seven others on their way to a youth basketball game in Thousand Oaks. The other victims were Christina Mauser; Payton and Sarah Chester; John, Keri and Alyssa Altobelli; and pilot Ara Zobayan.

Attorneys for Vanessa Bryant filed a wrongful death lawsuit against the company that operated the helicopter.

Exhibit E
128

11/3/2020                    L.A. County deputies shared graphic photos of Kobe Bryant crash scene, sources say - Los Angeles Times

CALIFORNIA    CALIFORNIA LAW & POLITICS



### The stories shaping California

Get up to speed with our Essential California newsletter, sent six days a week.

Enter Email Address

SIGN ME UP

You may occasionally receive promotional content from the Los Angeles Times.



Alene Tchekmedyian

🐦 Twitter    📷 Instagram    ✉ Email    f Facebook

Alene Tchekmedyian covers the Los Angeles County Sheriff's Department. She previously wrote about the county's criminal courts and breaking news throughout California. Before joining The Times in 2016, she reported on crime and policing for the Glendale News-Press and Burbank Leader. She grew up in Huntington Beach and graduated from UCLA.



Paul Pringle

🐦 Twitter    📷 Instagram    ✉ Email    f Facebook

Paul Pringle is a Los Angeles Times reporter who specializes in investigating corruption.

**SUBSCRIBERS ARE READING**

POLITICS

**Your guide to the 2020 election in California**

**Exhibit E**
**129**

# Los Angeles Times

CALIFORNIA

# Deputies were ordered to delete Kobe Bryant crash photos to avoid discipline, sources say



This image taken from video provided by the National Transportation Safety Board shows part of the wreckage of the helicopter that crashed near Calabasas, Calif., killing Kobe Bryant and eight others. (National Transportation Safety Board)

By ALENE TCHEKMEDYIAN, PAUL PRINGLE

FEB. 28, 2020 | 10:05 PM



In an attempt to keep the matter under wraps, the Los Angeles County Sheriff's Department quietly ordered deputies to delete any photos of the Kobe Bryant helicopter crash scene after a citizen complained that a deputy was showing the gruesome images at a Norwalk bar, two public safety sources with knowledge of the events said.

Normally, such a complaint would trigger a formal inquiry and possibly an internal affairs investigation, strictly following the chain of command, the sources said.

CALIFORNIA

## The last flight of Kobe Bryant

Jan. 28, 2020

Instead, in the days after the Jan. 26 crash, deputies were ordered to report to the sheriff's Lost Hills station and told that if they came clean and deleted the photos, they would not face any discipline, said the sources, who spoke on condition of anonymity because of the sensitive nature of the events.

The sources said they were concerned the directive to delete the photos could amount to the destruction of evidence.

After The Times reported that deputies shared the photos, the Sheriff's Department launched an investigation.
Brian Williams, executive director of the Civilian Oversight Commission, said his office planned to question officials during a meeting with the Sheriff's Department next week that had already been scheduled.

In an interview Wednesday, Villanueva did not respond directly to queries of whether he ordered the deletion of the photos.



Exhibit E
131



He did say: "Every police department struggles with the same thing, where people take photos and they're not evidence. So that's a practice we have to make sure that everyone walks away, and there is no evidence other than the official photos of evidence that are taken for criminal purposes."

The citizen's complaint was sent to the sheriff's information bureau. In an interview Wednesday, Capt. Jorge Valdez, the head of the bureau, said he was "unaware of any complaint" and "there was no order given to delete any photographs."

The sources said Friday, however, that Valdez was among those who handled the complaint.

Neither Villanueva nor Valdez responded to follow-up questions on Thursday and Friday.

The department issued a statement Friday saying that Villanueva is "deeply disturbed at the thought deputies could allegedly engage in such an insensitive act."

"A thorough investigation will be conducted by the department, with the No. 1 priority of protecting the dignity and privacy of the victims and their families," the department said.

LAKERS

Exhibit E
132

**Inside the ultra-competitive world of Kobe Bryant merchandise after his death**

Feb. 28, 2020

Joseph Giacalone, who teaches police procedures at the John Jay College of Criminal Justice in New York, said the L.A. County Office of the Inspector General should launch an inquiry into how the Sheriff's Department handled the complaint.

"Now the whole investigation is tainted," he said of the Sheriff's Department's new inquiry. "No matter what they find, the public is going to have a raised eyebrow."

The Times first reported on Thursday that deputies had shared photos of the crash, including in an incident separate from what happened at the Norwalk bar.

A third public safety source had told The Times that the sharing of photos of the crash scene and the victims' remains was the topic of a discussion among first responders two days after the crash.

The source, who spoke on the condition of anonymity, said he saw one of the photos on the phone of another official at that discussion, which was not a part of the investigation of the crash.

In a statement Friday, the Assn. for Los Angeles Deputy Sheriffs, the union that represents deputies, said: "As with all investigations, we will aggressively represent our members and preserve their rights."

CALIFORNIA    LAKERS

Exhibit E
133

11/3/2020                    Deputies were ordered to delete Kobe Bryant crash photos to avoid discipline, sources say - Los Angeles Times



## The stories shaping California

Get up to speed with our Essential California newsletter, sent six days a week.

Enter Email Address

**SIGN ME UP**

You may occasionally receive promotional content from the Los Angeles Times.



Alene Tchekmedyian

🐦 Twitter      📷 Instagram      ✉ Email      f Facebook

Alene Tchekmedyian covers the Los Angeles County Sheriff's Department. She previously wrote about the county's criminal courts and breaking news throughout California. Before joining The Times in 2016, she reported on crime and policing for the Glendale News-Press and Burbank Leader. She grew up in Huntington Beach and graduated from UCLA.



Paul Pringle

🐦 Twitter      📷 Instagram      ✉ Email      f Facebook

Paul Pringle is a Los Angeles Times reporter who specializes in investigating corruption.

**SUBSCRIBERS ARE READING**

POLITICS

**Your guide to the 2020 election in California**

Exhibit E
134

☰                              *Los Angeles Times*                              🔍

CALIFORNIA

# Sheriff admits he ordered destruction of graphic Kobe Bryant crash photos



The scene of a helicopter crash that killed Kobe Bryant, his daughter and seven others.  (Christina House / Los Angeles Times )

By ALENE TCHEKMEDYIAN, PAUL PRINGLE

MARCH 2, 2020 | 5:11 PM



[The scandal over](#) Los Angeles County sheriff's deputies sharing photos of the Kobe Bryant helicopter crash widened Monday when Sheriff Alex Villanueva acknowledged to NBC4 that he ordered the destruction of the images.

The Times reported last week that in an attempt to keep the matter under wraps, the department quietly ordered deputies to delete any photos of the helicopter crash scene after a citizen complained that a deputy was showing the gruesome images at a Norwalk bar.

The decision sparked outrage from some inside the department who said the decision could amount to the destruction of evidence.

Normally, such a complaint would trigger a formal inquiry and possibly an internal affairs investigation, strictly following the chain of command, two public safety sources told The Times.

Instead, in the days after the crash, deputies were ordered to report to the department's Lost Hills station and told that if they came clean and deleted the photos, they would not face any discipline, said the sources, who spoke on condition of anonymity because of the sensitive nature of the events.

Vanessa Bryant was "absolutely devastated" by the deputies actions, according to her attorney. The lawyer, Gary C. Robb, requested an internal affairs investigation into the allegations and the "harshest possible discipline" for those responsible. He called the alleged behavior "inexcusable and deplorable."

"This is an unspeakable violation of human decency, respect, and of the privacy rights of the victims and their families," he said.

Villanueva has not responded to repeated inquiries by The Times about who ordered the deputies to erase the photos without a full internal investigation.

But NBC4 reported that he admitted he made the decision to order eight deputies to delete the images.

"We identified the deputies involved, they came to the station on their own and had admitted they had taken them and they had deleted them. And, we're content that those involved did that," he told the station.

"We've communicated in no uncertain terms that the behavior is inexcusable," Villanueva said. "I mean, people are grieving for the loss of their loved ones. To have that on top of what they've already gone through is unconscionable. And to think any member of our department would be involved in that."

It was only after The Times' report Thursday that the Sheriff's Department launched an investigation.

"Had we done the original, usual routine, which was relieve everybody of duty and everybody lawyers up and all that, that would increase the odds 10-fold that those photos would have some how made their way into the public domain. And that's definitely what we do not want," Villanueva said, according to NBC4.

Joseph Giacalone, who teaches police procedures at the John Jay College of Criminal Justice in New York, said the L.A. County Office of the Inspector General should open an inquiry into how the Sheriff's Department handled the complaint.

"Now the whole investigation is tainted," he said of the Sheriff's Department's new probe. "No matter what they find, the public is going to have a raised eyebrow."

CALIFORNIA



### The stories shaping California

Get up to speed with our Essential California newsletter, sent six days a week.

11/3/2020                              Sheriff Villanueva admits he ordered destruction of Kobe Bryant crash photos - Los Angeles Times

| Enter Email Address |
| --- |

| SIGN ME UP |
| --- |

You may occasionally receive promotional content from the Los Angeles Times.



Alene Tchekmedyian

🐦 Twitter      📷 Instagram      ✉ Email      f Facebook

Alene Tchekmedyian covers the Los Angeles County Sheriff's Department. She
previously wrote about the county's criminal courts and breaking news throughout
California. Before joining The Times in 2016, she reported on crime and policing for
the Glendale News-Press and Burbank Leader. She grew up in Huntington Beach and
graduated from UCLA.



Paul Pringle

🐦 Twitter      📷 Instagram      ✉ Email      f Facebook

Paul Pringle is a Los Angeles Times reporter who specializes in investigating
corruption.

SUBSCRIBERS ARE READING

POLITICS

**Your guide to the 2020 election in California**

CALIFORNIA

**A look at California's November ballot propositions**

Exhibit E
138

# EXHIBIT C

11/3/2020                                        Irate Bartender Busted Sheriff's Deputies Who Shared Gruesome Kobe Crash Scene Photos


**Beverly Hills Police Show of Force Alarms Neighboring Police Depts.**


**Hollywood Mailing It In For The 2020 Election ... Or So It Seems!!!**


**Lil Pump Stumps at Trump Rally, John Legend & Lady Gaga for Biden**


**Presidential Pooches -- Through the Years**


**Russell Wilson Drops $1 Mil Every Year on Body, Full-Time Trainers & 2 Chefs!**

Irate Bartender Busted Sheriff's Deputies Who Shared Gruesome Kobe Crash Scene Photos

## KOBE BRYANT HELICOPTER CRASH

# IRATE BARTENDER BUSTS SHERIFF'S DEPUTIES ...
## Who Shared Gruesome Crash Photos

9K          *2/28/2020 9:12 AM PT*





Exhibit E
140



**KOBE BRYANT'S CRASH SITE**                              NTSB PHOTOS

---

*UPDATE* ━━━━

**9:11 AM PT** -- We're told the Sheriff's Dept. has known about this for 3 weeks. The trainee who showed the photos to a woman in a bar did so a few days after the crash.

**8:01 AM PT** -- We're told the gruesome photos were also passed around by members of the L.A. County Fire Dept. and we're told that Dept. is now investigating.

**7:21 AM PT** -- Law enforcement sources tell TMZ, multiple L.A. County Sheriff's deputies who responded to the crash scene took photos that included remains. We're told one of the deputies -- a trainee -- took photos and at some point went to a bar and, as one source put it, "He tried to impress a girl by showing her the photos." We're told the bartender overheard the conversation and filed an online complaint with the Sheriff's Dept.

We're also told the cell phone photos were passed around at the Lost Hills Sheriff's substation -- the first responders to the crash. Sources say deputies from other substations around L.A. County also took cell phone photos.

---

Some L.A. County Sheriff's Deputies shared photos of the scene where **Kobe Bryant**, his daughter, **Gigi**, and 7 others lost their lives ... and the photos included remains from the gruesome aftermath ... TMZ has confirmed.

It's not clear who took the photos, but it was being talked about by first responders just 2 days after the crash, this according to the L.A. Times.

And, according to the report, at least one L.A. County Sheriff's official had the photos on his cell phone "in a setting that had nothing to do with the investigation."

The report does not say who took the photos and how many deputies and officials at the Sheriff's Dept. saw or shared the photos.

The Sheriff's Dept. contacted **families of all of the victims** Wednesday ... an official told The Times the reason for contacting them was not because of the allegation but rather because there was a media inquiry over the allegation.

The Sheriff's Department would only say, "The matter is being looked into."

*REMEMBERING KOBE BRYANT*                                   LAUNCH GALLERY

Getty

*Originally Published -- 5:07 AM PT*

SHARE                                    TWEET

**RELATED ARTICLES**

**Kobe Bryant's Big**                              **Kobe Bryant**
**Sister Gets Tribute**                            **Memorial Items**
**Tattoo for Kobe and**                            **Pulled From eBay,**
**Gianna**                                         **Against Policy**



Exhibit E
141

# EXHIBIT D



**BY SIB STAFF / FEBRUARY 28, 2020**

The Sheriff's Department is aware of recent media reports alleging deputies shared images from the January 26th, 2020 helicopter crash, which tragically claimed the lives of nine people. The facts surrounding these allegations are currently under investigation, as are the effectiveness of existing policies and procedures. The Sheriff is deeply disturbed at the thought deputies could allegedly engage in such an insensitive act. A thorough investigation will be conducted by the Department, with the number one priority of protecting the dignity and privacy of the victims and their families.

-Los Angeles County Sheriff's Department

LASD Chat

Exhibit E
143

LASD Department Statement | Los Angeles County Sheriff's Department

# SIB Staff

ALL STORIES BY:SIB STAFF

LASD Chat

Privacy • Terms

Exhibit E
144

# EXHIBIT E

# 5-09/475.00 Photographs/Recordings at Scenes Where Human Remains are Present

In the performance of their daily duties, Department members are entrusted to respond to scenes that are not accessible to the general public, often times where human remains are present, such as:

- Mass casualty incidents;
- Natural disasters;
- Homicides;
- Deputy/officer-involved shootings;
- Suicides;
- Traffic collisions;
- Train deaths; and
- Other non-criminal deaths.

The response by Department members is a valued and vital component of public safety in ongoing investigations.  Information learned at these scenes, including any photographs/recordings taken, shall only be shared with or disclosed to the lead investigators or the investigator's supervisors, unless otherwise required by law.

In order to preserve the dignity and privacy of the deceased and their families, scenes where human remains are present shall only be photographed/recorded by Scientific Services Bureau or the Department of Medical Examiner (DME) personnel.  Only when extenuating circumstances exist may Department members take photographs/recordings at the direction of the lead investigators or the investigator's supervisors.  All photographs/recordings shall be taken on a Department-issued device, unless a personal device is used exclusively to photograph or record legitimate Department business (see MPP section 3-01/100.46, Use of Communication Devices).

Fatal traffic collisions investigated by Traffic Services Detail and/or station traffic investigators assigned to investigate fatal traffic collisions are allowed to photograph collisions scenes during the course of the investigation; however, the photographs shall be safeguarded in compliance with this policy, and/or any policies mentioned herein.

Any photograph, recording, or record produced by a Department member, whether captured on a Department issued device or personal device, shall be considered the sole property of the Department.  Any unauthorized release or sharing is strictly prohibited.

Any digitally captured photographs/recordings, shall be disclosed to the assigned investigator or the investigator's supervisors.  The Department member shall preserved the photographs/recordings pending the transfer of all related images for evidence storage by a trained Department member from the Fraud and Cyber Crimes Bureau, Technical Operations Crew, or Homicide Bureau, Body Worn Camera Unit.

Scene photographs/recordings taken or captured by Department members shall not, under any circumstances, be disclosed to anyone other than the lead investigators or the investigator's supervisors, unless otherwise required by law.  If the investigation is being handled by an outside authority such as a

Exhibit E
146

federal or state agency, photographs/recordings should be given to that agency only with the concurrence of the Department's lead investigator.  The unauthorized sharing of photographs/recordings and/or scene information not only violates public trust but it also may subject the individual and the Department to civil liability.  Scene information, especially photographs/recordings shall be guarded with the utmost respect to protect the integrity of the investigation.

Nothing in this policy precludes a Department member's obligation to activate their Department issued body worn camera pursuant to MPP section 3-06/200.08, Body Worn Cameras – Activation.

**Exhibit E**
147

# EXHIBIT F

the General Public and the Media" and "Dissemination of Criminal Record Information" as detailed in the Miscellaneous Administrative Procedures chapter.

## 3-01/100.46   USE OF PERSONAL COMMUNICATION DEVICES

Absent extenuating circumstances, members shall not use a personal cellular telephone or other similar personal communication/recording device for a Department-related business purpose (i.e., coordinating field units to a radio call, contacting a victim or witness) when an established, Department-authorized communication device/system is available and/or a Department-authorized regulation/protocol has been established (e.g., Department radio/communications systems, field supervisor's cellular telephone, Station telephone, etc.).

NOTE:       This prohibition shall apply to the use of the cellular telephone for both voice communications as well as data (text) communications.

Members shall not use a personal cellular telephone or any other similar personal communication or recording device to record, store, document, catalog, transmit, and/or forward any image, document, scene, or environment captured as a result of their employment and/or while performing official Department business that is not available or accessible to the general public.   Official Department business shall include, but is not limited to, confidential, sensitive, or copyrighted information that is printed, audio recorded, photographed, or video recorded; information related to any past, present, or anticipated criminal, civil, or administrative investigation, including reports, declarations, evidence, photographs, videos, or audio recordings; and/or, photographs of suspects, arrestees, defendants, evidence, or crime scenes.

NOTE:       A personal cellular telephone or any other similar personal communication or recording device used exclusively to record contacts with members of the public during legitimate Department business (e.g., traffic stops, etc.) are exempt from the provisions of this section.

## 3-01/100.50   DIVISION OR UNIT MANUAL

Unit Commanders shall establish procedural manuals for their respective commands. These manuals shall not be in conflict with the Department manual and the subject matter shall be limited to procedures involving only the specific command or Division.

## 3-01/100.55   UNIT COMMANDERS' CHANGE OF COMMAND RESPONSIBILITIES

Unit Commanders shall complete the Department Change of Command (SH-AD-601) when assuming a new or transfer of command situation.   During a transfer of command, it shall be the responsibility of both the outgoing and incoming Unit Commander to be

# EXHIBIT G

# MUNGER, TOLLES & OLSON LLP

350 SOUTH GRAND AVENUE

FIFTIETH FLOOR

LOS ANGELES, CALIFORNIA 90071-3426

TELEPHONE (213) 683-9100

FACSIMILE (213) 687-3702

560 MISSION STREET

TWENTY-SEVENTH FLOOR

SAN FRANCISCO, CALIFORNIA 94105-3089

TELEPHONE (415) 512-4000

FACSIMILE (415) 512-4077

1155 F STREET N.W.

SEVENTH FLOOR

WASHINGTON, D.C. 20004-1361

TELEPHONE (202) 220-1100

FACSIMILE (202) 220-2300

March 2, 2020

Writer's Direct Contact
(213) 683-9205
(213) 683-4005 FAX
luis.li@mto.com

**Via FedEx and Electronic Mail**

Sheriff Alex Villanueva
c/o Elizabeth D. Miller, Assistant County Counsel
Office of the County Counsel
County of Los Angeles
Kenneth Hahn Hall of Administration
500 West Temple Street #648
Los Angeles, CA 90012
emiller@counsel.lacounty.gov

Re:     Dissemination of Photos of January 26, 2020 Helicopter Crash Scene

Dear Sheriff Villanueva:

We, along with Robb & Robb LLC, represent Vanessa Bryant in all of her legal claims arising out of the helicopter crash that killed her husband, Kobe, and her daughter, Gianna.  We write in regards to disturbing and distressing reports that Los Angeles County sheriff deputies have shared graphic photos of the January 26, 2020 helicopter crash that killed nine victims, including Kobe and Gianna Bryant.  These reports indicate that photos of the crash scene and the victims' remains have been shared by sheriff deputies in settings "that had nothing to do with the investigation of the crash," and that the sharing of these photos was "a topic of discussion" among first responders in the days following the crash.  (*See* Alene Tchekmedyian & Paul Pringle, *L.A. County deputies shared graphic photos of Kobe Bryant crash scene, sources say*, L.A. Times (Feb. 28, 2020), *available at* https://www.latimes. com/california/story/2020-02-27/kobe-bryant-photos-lost-hills-sheriff-deputies.)

**Exhibit E**
**151**

MUNGER, TOLLES & OLSON LLP

Los Angeles County Sheriff's Department
March 2, 2020
Page 2

Additional reporting has indicated that, upon becoming aware that unauthorized crash-scene photographs had been taken and shared for no official purpose, the Sheriff's Office offered informal immunity to the transgressors, potentially tainting a proper review of this matter.  (*See* TMZ.com, *Kobe Bryant Crash Site Pics; Sheriff's Dept. Attempted Cover-Up; Come Clean & You're Safe* (Feb. 29, 2020), *available at* https://www.tmz.com/2020/02/29/kobe-bryant-crash-pictures-remains-deputies-delete-cover-up-sheriffs-department/.)

These reports are deeply distressing to Mrs. Bryant and her family, who have already endured the unimaginable loss of their loved ones.  The public dissemination of photos of the victims' remains would only worsen the family's pain and suffering.

We formally request that the Sheriff's Department take immediate action to secure all photos and videos of the January 26, 2020 crash scene in the Sheriff's Department's possession, whether taken in official capacity or not, including any photos or videos in the possession of or disseminated by Sheriff's Department personnel.  We further request that the Sheriff's Department conduct an Internal Affairs investigation to determine the extent of the unauthorized taking and dissemination of photos and the identities of the deputies or other personnel involved.

In addition, please promptly provide us a copy of any and all complaints received by your Office regarding the unauthorized taking or sharing of crash-scene photos[1] and provide answers in writing regarding (i) all steps the Sheriff's Department has taken to ensure all photos of the crash scene have been secured; (ii) whether the Department has initiated an investigation into this matter and when the investigation is expected to conclude; (iii) the names of all Sheriff's Department personnel who shared photos of the crash scene; and (iv) whether the Sheriff's Department has terminated, suspended, or otherwise disciplined said personnel for their actions.  We expect that such egregious violations of policy and decency will result in the most severe discipline.

The Sheriff's Department and its personnel owe a duty of care to victims' families to refrain from publicly disseminating photos of victims' remains, given the potential for exploitation, Internet sensationalism, and the foreseeable agony such dissemination would inflict.  *Catsouras v. Dept. of Cal. Highway Patrol*, 181 Cal. App. 4th 856, 886, 888 (2010).  The unauthorized dissemination of photos of victims' remains could give rise to liability for, among other things, invasion of privacy, negligence, negligent or intentional infliction of emotional distress, and negligent supervision or retention.  We fully intend to hold the Sheriff's Department and its personnel accountable for any harm caused by the unauthorized taking or dissemination of photos.

---

[1] *See* TMZ.com, *Kobe Bryant Helicopter Crash; Irate Bartender Busts Sheriff's Deputies… Who Shared Gruesome Crash Photos* (Feb. 28, 2020), *available at* https://www.tmz.com/2020/02/28/la-county-sheriff-kobe-bryant-crash-site-photos/.

**Exhibit E**
**152**

MUNGER, TOLLES & OLSON LLP

Los Angeles County Sheriff's Department
March 2, 2020
Page 3

     Our client and we are presently evaluating all of her legal options relative to this matter.
She reserves all rights.

              Sincerely,

              Luis Li

cc:   Brad D. Brian
      Gary Robb
      Anita Robb

**Exhibit E**
**153**

MUNGER, TOLLES & OLSON LLP

350 SOUTH GRAND AVENUE
FIFTIETH FLOOR
LOS ANGELES, CALIFORNIA 90071-3426
TELEPHONE (213) 683-9100
FACSIMILE (213) 687-3702

———

560 MISSION STREET
TWENTY-SEVENTH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-3089
TELEPHONE (415) 512-4000
FACSIMILE (415) 512-4077

———

1155 F STREET N.W.
SEVENTH FLOOR
WASHINGTON, D.C. 20004-1361
TELEPHONE (202) 220-1100
FACSIMILE (202) 220-2300

March 8, 2020

Writer's Direct Contact
(213) 683-9205
(213) 683-4005 FAX
luis.li@mto.com

**Via FedEx and Electronic Mail**

Sheriff Alex Villanueva
c/o Elizabeth D. Miller, Assistant County Counsel
Office of the County Counsel
County of Los Angeles
Kenneth Hahn Hall of Administration
500 West Temple Street #648
Los Angeles, CA 90012
emiller@counsel.lacounty.gov

Re:   Dissemination of Photos of January 26, 2020 Helicopter Crash Scene

Dear Sheriff Villanueva:

We write to follow up on our March 2 letter, to which we have not yet received a response.

Since we last wrote, additional disturbing reports have emerged regarding sheriff's deputies sharing unauthorized photographs of the crash scene and the victims' remains. You have publicly stated that at least *eight* deputies took illicit photos, and news outlets have reported that the photos have been sent to people outside the Sheriff's Department. Reports also indicate that the Department knew of its deputies' misconduct as early as January 29, when a citizen filed a complaint notifying the Department. Yet the Department did not inform the victims' families until the L.A. Times was poised to report on the misconduct nearly five weeks later.

MUNGER, TOLLES & OLSON LLP

Los Angeles County Sheriff's Department
March 8, 2020
Page 2

The Department's response to the misconduct also has been deeply troubling.  According to reports by the L.A. Times, Department leadership "tried to keep a lid" on the potential scandal by deviating from "normal investigative protocols."[1]  Reports further indicate that, rather than formally investigate, Department leadership told the deputies that if they "came clean and deleted the photos, they would not face any discipline."[2]  Indeed, the Department appears to have initiated a formal investigation only *after* news of the deputies' misconduct became public. Once news of the misconduct broke, you told news outlets that the Department does not have a policy addressing deputies using their personal cellphones to take photos of accident scenes, even though the Department's policy on use of communication devices prohibits precisely that. (Policy 3-01/100.46, Los Angeles County Sheriff's Department Manual of Policy and Procedures, *available at* http://pars.lasd.org/Viewer/Manuals/10008/Content/10426 ("Members shall not use a personal cellular telephone . . . to record, store, document, catalog, transmit, and/or forward any image . . .  captured as a result of their employment and/or while performing official Department business that is not available or accessible to the general public.").)

All of this leaves Mrs. Bryant with substantial uncertainty as to whether the misconduct was truly limited to eight deputies and whether the photographs of her husband's and daughter's remains (or copies of them that may have been shared with others or stored online) will become public.  Mrs. Bryant deserves to know whatever the Department knows regarding these questions.  To that end, we ask on Mrs. Bryant's behalf that you respond to the below requests no later than close of business on <u>Tuesday, March 10</u>.

- Describe what steps, if any, the Sheriff's Department has taken to identify all personnel who had or have photographs or recordings of the crash scene or victims' remains on their electronic devices (including cellphones) or cloud accounts.

- Describe what steps, if any, the Sheriff's Department has taken to determine whether and to what extent personnel who had such photographs or recordings shared them with other members of the Department or third parties.

- Describe what steps, if any, the Sheriff's Department has taken to secure all unauthorized photographs or recordings in the possession of its personnel such that they are not subject to further sharing.

---

[1] Alene Tchekmedyian & Paul Pringle, *A deputy allegedly showed off gruesome Kobe Bryant crash photos at bar. A cover-up scandal ensued*, L.A. Times (Mar. 3, 2020), *available at* https://www.latimes.com/california/story/2020-03-03/kobe-bryant-crash-photos-sheriffs-department-tried-to-keep-quiet.

[2] *Id.*

**Exhibit E**
**155**

MUNGER, TOLLES & OLSON LLP

Los Angeles County Sheriff's Department
March 8, 2020
Page 3

- Identify by name all personnel who had or have photographs or recordings of the crash scene or victims' remains on their electronic devices.

- State whether the Sheriff's Department confiscated and/or inspected the electronic devices of the personnel who had or have photographs or recordings of the crash scene or victims' remains.

- Describe what steps, if any, the Sheriff's Department has taken to secure all photographs of the crash scene or victims' remains that its personnel sent to people outside of the crash investigation.

- Describe what steps, if any, the Sheriff's Department has taken to review photographs of the crash scene or victims' remains on its personnel's electronic devices to determine their investigative value, and whether the Sheriff's Department has turned images with investigative value over to the National Transportation Safety Board.

    As we noted in our March 2 letter, our client is evaluating all of her legal options and reserves all rights.

                                        Sincerely,

                                        */s/ Luis Li*

                                        Luis Li

CC:    Brad D. Brian
       Gary Robb
       Anita Robb

**Exhibit E**
**156**

# EXHIBIT H



**COUNTY OF LOS ANGELES**
**OFFICE OF INSPECTOR GENERAL**

312 SOUTH HILL STREET, THIRD FLOOR
LOS ANGELES, CALIFORNIA 90013
(213) 974-6100
http://oig.lacounty.gov

MEMBERS OF THE BOARD

HILDA L. SOLIS
MARK RIDLEY-THOMAS
SHEILA KUEHL
JANICE HAHN
KATHRYN BARGER

**MAX HUNTSMAN**
**INSPECTOR GENERAL**

May 26, 2020

County of Los Angeles
Sheriff's Department
Los Angeles Civil Process Branch
110 North Grand Avenue, Room 525
Los Angeles, California 90012

Dear Los Angeles Sheriff's Department Custodian of Records:

The Los Angeles County Sheriff Civilian Oversight Commission has directed that I issue you a Subpoena for Personal Appearance and/or Production of Documents pursuant to Los Angeles County Code of Ordinances sections 3.79.032, 3.79.070 and 6.44.190(F)(5). Please find that subpoena enclosed.

As described within the subpoena you are ordered to bring and produce books, papers, records, and documents or other things in your possession, custody, or control as described in Exhibit A attached to the subpoena. Those items are to be produced to the Los Angeles County Inspector General at the location listed on the subpoena on or before June 16, 2020. A completed declaration by the custodian of records is to be provided as required by law.

Arrangements to bring and produce the requested items appear may be made by contacting Dara Williams at 213-379-1492 or at dwilliams@oig.lacounty.gov.

LASD Custodian of Records
Page 2
May 26, 2020

Do not hesitate to contact me with any questions or if you experience any difficulties arranging your appearance.

Sincerely,

MAX HUNTSMAN
INSPECTOR GENERAL

By

Daniel W. Baker
Chief Deputy, Inspector General

Enclosures

c:     Mary Wickham, County Counsel
       Sachi Hamai, Chief Executive Officer
       Celia Zavala, Executive Officer
       Brian Williams, Executive Director, Sheriff Civilian Oversight Commission

<table>
<tr><td>

**OFFICE OF INSPECTOR GENERAL**
Address: 500 West Temple Street
Los Angeles, CA 90012
Phone: (213) 974-6100

</td><td>

**SUBPOENA FOR PERSONAL APPEARANCE
AND/OR PRODUCTION OF DOCUMENTS**

</td></tr>
</table>

## BEFORE THE LOS ANGELES COUNTY
## SHERIFF CIVILIAN OVERSIGHT COMMISSION

To: Custodian of Records, Los Angeles Sheriff's Department



**YOU ARE HEREBY ORDERED PURSUANT TO LOS ANGELES COUNTY CODE SECTIONS 3.79.032, 3.79.070, and 6.44.190.F(5) TO:**

☐   ATTEND AND TESTIFY AS A WITNESS before the Los Angeles County Sheriff Civilian Oversight Commission ("Commission") at a session of the Commission, to be held virtually, on _____ [date of appearance], at 8:00 a.m., regarding _____.

☐   ATTEND AND TESTIFY AS A WITNESS before the Los Angeles County Inspector General at _____ [location of appearance] on _____ [date of appearance] at _____ [time of appearance].

☑   BRING AND PRODUCE the books, papers, records, and documents or other things in your possession, custody, or control, described in the attached **Exhibit A**, to the Los Angeles County Inspector General at 500 West Temple Street, L.A.,CA, on or before **June 16, 2020**, with a completed declaration of custodian of records in compliance with Evidence Code sections 1560, 1561, 1562, and 1271.

☐   OTHER INSTRUCTIONS:

Witness the hand of the Los Angeles County Inspector General at the direction of the Los Angeles County Sheriff's Civilian Oversight Commission this 26th day of May, 2020.

Max Huntsman, Inspector General
County of Los Angeles
State of California

If you have any questions about the production, contact Assistant Inspector General Don Pedersen at (213) 974-6100 or dpedersen@oig lacounty.gov before the date on which you are to appear.

## FAILURE TO OBEY THIS SUBPOENA MAY BE PUNISHABLE BY CONTEMPT
### (Government Code Section 25173)

I declare that at _____ (am/pm) on _____, _____ I served the within subpoena by
Delivering a copy to _____ personally at _____.
I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed
On _____, _____ at _____, California
By: (Signature) _____
(Print Name) _____ (Occupation) _____

**Exhibit E**
**160**

<u>**Exhibit A**</u>

<u>Instructions and Definitions</u>

1. Each request below seeks all "Documents and Information," which is defined to include all documents, records, books, papers, writings (as defined in Evidence Code § 250) and communications (to include, without limitation, any type of communication using any form or media, including but not limited to e-mail, instant messenger service, text message, voicemail message, or any other computerized and/or electronic transmission, as well as any written, typed, taped, or recorded communication of any kind).

2. "Relating to" means, in whole or in part, stating, mentioning, dealing with, constituting, defining, containing, describing, concerning, discussing, embodying, reflecting, analyzing, referring to, summarizing, supporting, regarding, indicating, or in any way pertaining to.

<u>Requests</u>

Please produce all Documents and Information relating to the fatal helicopter crash which occurred on or about January 26, 2020 and allegations of a subsequent destruction of photographs and suppression of investigation, in the following categories:

- Documents and Information showing the identity of all:
  - county employees or civilians at the crash scene and command post
  - persons who were, at any time in any manner, provided or in possession of photographs of the crash scene, including members of the National Transportation Safety Board and the Homicide Bureau
  - persons who reportedly displayed the photographs to others
  - known persons to whom the photographs were displayed
  - persons whose complaints about the incident are known
  - persons who were members of the Department:
    - notified about the photographs
    - questioned about the photographs
  - county employees involved in deciding how the matter involving the photographs would be handled
  - persons present when any persons were ordered to delete related photographs
  - persons present when photographs were purportedly deleted or demonstrated to have been deleted
  - persons notified by the Department of the existence of and/or disposition of the photographs

- Documents and Information related to:
  - Cell phones or other devices with which the photographs were taken
  - Cell phones or other devices on which the photographs were stored or displayed
  - Cell phones or other devices from which the photographs were deleted
  - Cell phones and other recording devices in the possession of Department personnel who were on scene
    - Call history for all cell phones possessed by all such employees
    - Text history and transcripts for all cell phones possessed by such employees
  - Results of forensic examinations performed on any of the above devices
  - MDC activity of all Department units on scene or involved in the incident in any manner

- Documents and Information (including but not limited to all recordings in any form (audio, video, notes)) of:
  - LTAC and ATAC radio traffic
  - Radio traffic from Malibu/Lost Hills dispatch recordings
  - Interviews of all persons interviewed, including statements of all persons

- Documents and Information of the following shall be produced, without limitation:
  - Major Incident Log for incident
  - Audio/video recordings viewed by investigators in this matter
  - Learning transcripts from Learning Net for all Department employees identified as taking, possessing, displaying or deleting photographs
  - C.T.S. Employee Training Data Inquiry results for each Department employee identified as taking, possessing, displaying or deleting photographs
  - Shift In-service logs for all Malibu-Lost Hills shifts on date of incident
  - Incident Reports and Supplemental Reports
  - Department emails, texts or other memoranda relevant to the incident and disposition
  - Written statements of all persons from whom the Department received such statements
  - Instructions, advisements and admonishments provided to or signed by all persons interviewed
  - Investigators' logs related to or pertaining to this investigation
  - Performance log entries related to or pertaining to the facts underlying this investigation

## PROOF OF SERVICE

STATE OF CALIFORNIA, County of Los Angeles:

Esther Campos states:  I am employed in the County of Los Angeles, State of California, over the age of eighteen years and not a party to the within action. My business address is 312 South Hill Street, Third Floor, Los Angeles, California 90013.

That on May 26, 2020, I served the attached **Subpoena for Personal Appearance and/or Production of Documents before the Los Angeles County Sheriff Civilian Oversight Commission** to:

County of Los Angeles
Sheriff's Department
Los Angeles Civil Process Branch
110 North Grand Avenue, Room 525
Los Angeles, California 90012

☒ **BY MAIL.**  By sealing and placing the envelope for collection and mailing on the date and at the place shown above following our ordinary business practices. I am readily familiar with this office's practice of collection and processing correspondence for mailing.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on May 26, 2020, at Los Angeles, California.

_____          _____
         **Esther Campos**                              (SIGNATURE OF DECLARANT)