LUIS LI (State Bar No. 156081)
Luis.Li@mto.com
CRAIG JENNINGS LAVOIE (State Bar No. 293079)
Craig.Lavoie@mto.com
JENNIFER L. BRYANT (State Bar No. 293371)
Jennifer.Bryant@mto.com
MARI T. SAIGAL (State Bar No. 318556)
Mari.Saigal@mto.com
BRANDON E. MARTINEZ (State Bar No. 318749)
Brandon.Martinez@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue
Fiftieth Floor
Los Angeles, California 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

Attorneys for Plaintiff Vanessa Bryant

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| VANESSA BRYANT, a California Resident,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF LOS ANGELES, a public entity, et al.,<br><br>Defendants. | Case No. 2:20-cv-09582-JFW-E<br><br>**DISCOVERY MATTER**<br><br>**PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND CUSTODIAL METADATA FROM DEFENDANTS COUNTY OF LOS ANGELES & LOS ANGELES COUNTY SHERIFF'S DEPARTMENT**<br><br>Judge: Hon. John F. Walter<br><br>Magistrate Judge: Hon. Charles F. Eick<br><br>Hearing: August 13, 2021<br>Time: 9:30 a.m.<br>Place: Courtroom 750<br><br>Discovery Cutoff: November 29, 2021<br>Pretrial Conf.: February 4, 2021<br>Trial: February 22, 2021<br><br>[*Filed Concurrently with Supplemental Declaration of Brandon E. Martinez*] |

## I.  INTRODUCTION

Plaintiff submits this supplemental brief to clarify several issues for the Court. Without any meritorious grounds for resisting the production of the documents sought by Plaintiff's motion to compel, Defendants resort to misdirection by mischaracterizing Mrs. Bryant's participation in discovery. In reality, Plaintiff has begun document production and responded to written discovery, but Defendants' misleading criticisms of Plaintiff's participation in discovery are beside the point. The only issues before the Court are Defendants' improper objections to producing clearly relevant documents.

## II.  ARGUMENT

### A.  Documents Relating to "Death Books" (RFP 28)

Defendants do not dispute that documents relating to Sheriff's Department personnel scrapbooking contraband photos of human remains are squarely relevant to Plaintiff's *Monell* claim. They instead miscast RFP 28 as seeking "information regarding *every* photo of human remains ever possessed by *any* LASD employee over the past five years," including "photos used in connection with legitimate law enforcement activities," and requiring them "to search the personal devices of nearly 100,000 current and former LASD employees." (Jt. Stip. at 9-10, 12.) Obviously, Plaintiff is not asking for copies of every photo of any deceased person in the County's files or even every "death book" that any Sheriff's Department employee has ever maintained. Plaintiff seeks documents reflecting that County personnel knew of a practice among some employees of maintaining personal collections or examples of death photos. Those documents could include, for example, internal reports, analyses, or investigations related to this practice, on top of any complaints about such conduct that Defendants have agreed to provide. Defendants should be able to design a reasonable search of County files for such documents.

Sherriff Villanueva himself has indicated that this phenomenon is a common problem among law enforcement (*see* Jt. Stip. at 3-4), and Plaintiff is entitled to

discovery on what he and other County officials knew or should have known about this practice within the Department. Defendants cannot resist discovery based on their own self-serving characterization of the Sherriff's remarks as related to "law enforcement *generally*." (*Id.* at 12.)

The County insinuates that Mrs. Bryant's discovery request calls for the very misconduct for which she sues. (*See* Jt. Stip. at 13.) But there is no comparison between producing documents in discovery and sharing photos of deceased persons for lurid gratification, and Defendants do not cite any authority that responding to this request would violate anyone's privacy rights. Regardless, Defendants cannot refuse on privacy grounds to produce documents relating to the keeping of death books that do not include images of the deceased. Nor can they use the specter that a search for documents responsive to this request may return contraband photos to avoid undertaking a search at all. If Defendants' diligent search for responsive documents uncovers illicit photos of the deceased, Plaintiff would be pleased to work with Defendants to protect the dignity of those persons, the integrity of their memories, and their loved ones' privacy.

### B. Documents Relating to the Federal Constitutional Right to Control Death Images of Loved Ones (RFPs 31-33)

Defendants cannot seriously contest that documents relating to the County's and Sheriff's Department's awareness and treatment of survivors' constitutional right to control death images of their loved ones are relevant to Plaintiff's *Monell* claim that those entities were deliberately indifferent to that right. *See, e.g.*, *Waggy v. Spokane Cnty.*, 594 F.3d 707, 713 (9th Cir. 2010). Nor do Defendants explain why formal policies (if any) are the only documents relevant to these issues. Documents showing what County personnel knew about this constitutional right, whether and how they adopted and implemented any policies to safeguard that right, any other actions they took to protect that right, and any instructions they gave to personnel regarding that right are squarely relevant.

1     Defendants argue that documents related to this federal constitutional right are privileged, but clearly not every responsive document would be privileged. For example, any documents in which non-lawyers warned subordinates against violating this right would be relevant and not privileged. And even if documents responsive to this request *are* privileged, the proper course is for Defendants to serve a log "to enable [Plaintiff] to evaluate the applicability of the privilege" to each document withheld. *Dominguez v. City of Los Angeles*, 2017 WL 10605960, at *4, 7 (C.D. Cal. Nov. 18, 2017). The fact that Defendants received legal advice on a particular issue is not privileged—it must be included on a log—and that fact could be relevant, as would the *absence* of any legal advice on this issue. Moreover, a privilege log will enable Plaintiff to evaluate and test Defendants' blanket reliance on the deliberative-process privilege.

    Defendants also repeat their malingering refrain (asserted in response to other requests) that these RFPs would require a search "potentially involving thousands of LASD personnel." (Jt. Stip. at 17-18.) Defendants cannot duck their obligation to conduct a reasonable search by contriving an example of a search that might be unreasonable. Moreover, if Defendants' position is that *thousands* of their personnel are likely to possess documents responsive to Plaintiff's requests, that belies their contention that the bulk of those documents are privileged.

    Defendants' suggestion that they could not identify search terms to conduct a reasonable search because "*Marsh*" is a common word (*see id.*) is nonsense. Just by way of example, Defendants can begin by searching for documents containing the term "Marsh" and a term such as "Ninth Circuit," "due process," "privacy," "photo(s)," "image(s)," "photograph(s)," "constitution," or "death."

### C. Policies Regarding Handling of Information or Materials Involving Celebrities (RFP 38)

    During meet-and-confers regarding RFP 38, Defendants refused to search for "policies regarding the handling or confidentiality of information or materials

involving celebrities." Defendants now say that "[n]o such policies exist." (Jt. Stip. at 20.) If Defendants have conducted a search for such policies and found none, then they should serve amended responses saying so. Otherwise, Defendants must conduct a reasonable search for documents responsive to this RFP.

### D. Training of Deputy Defendants (RFPs 30, 34, and 38)

Defendants characterize RFPs 30, 34, and 38 as seeking "every single document that relates to LASD policies and trainings." (Jt. Stip. at 23.) That is a distortion. These RFPs seek documents showing how, if at all, the *Deputy Defendants* were trained on key issues related to the events in this case; how and why the Department designed any such training; and, if the Deputy Defendants received no such training, why not. (*Id.* at 21-22.) The mere titles of any training sessions the Deputy Defendants attended—the only information Defendants have agreed to provide—will not shed light on whether that training was adequate. Defendants' only meaningful response is that Plaintiff can explore these topics at the Deputy Defendants' depositions. (*See id.* at 23.) That does nothing more than concede that Plaintiff seeks responsive documents. Mrs. Bryant is entitled to documents that will assist her examination of Defendants and their witnesses.

### E. OIG Materials (RFP 48)

This RFP calls for materials that LASD produced to the Office of Inspector General ("OIG") related to the events at issue in this case. Defendants represent that "Plaintiff already has, or will have by the time this hearing has held [*sic*], everything LASD provided to OIG." (Jt. Stip. at 27.) It thus appears that Defendants are now agreeing to produce all documents responsive to this RFP. And for good reason: Defendants do not meaningfully contest that such documents are relevant, that Los Angeles County Ordinance § 6.44.190(J) is no bar to producing documents in federal civil litigation, and that documents and communications do not become privileged under that provision merely by virtue of having been produced to the OIG, as Plaintiff has explained. (*See* Jt. Stip. at 26-27.)

### F. Custodial Metadata (All of Plaintiff's RFPs)

Defendants do not deny that they possess individualized custodial metadata. Nor could they. "Custodian information should always be available" because "the party producing the document knows from where it was obtained." *Hullinger v. Anand*, 2016 WL 7444620, at *10 (C.D. Cal. Aug. 19, 2016).

Defendants argue that they "followed the instructions set forth in Plaintiff's Requests for Production regarding the metadata and ESI which should be provided for emails" because those Instructions required them to identify a "custodian," and they listed "LASD" as the custodian. (Jt. Stip. at 33.) But Defendants were obligated to construe Plaintiff's Instructions in a reasonable manner such as to provide useful information. *See, e.g.*, *Venture Corp. v. Barrett*, 2014 WL 5305575, at *3 (N.D. Cal. Oct. 16, 2014) ("[T]he disclosing party should provide information about each document which ideally would include, in some fashion, the identity of the custodian or person from whom the documents were obtained . . . ." (citation omitted)). The fact that Defendants produced individualized custodial information for documents produced from the files of the Los Angeles County Fire Department shows that they understood that Plaintiff's Instructions requested such information and were able to provide it. (*See* Martinez Decl. ¶ 15 & n.1, Ex. O.)

Defendants are just wrong that "Plaintiff has the identity of everyone who sent or received the emails." (Jt. Stip. at 34.) Plaintiff has provided examples of emails from the Department's files for which authors or recipients cannot be determined. (*See id.* at 29.) Defendants' suggestion that Plaintiff simply should ask Defendants for more information about particular records is no answer. Requiring Mrs. Bryant to ask for basic information about documents of interest to her would be inefficient and require her to reveal her litigation strategy.

### III. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant her motion to compel.

| | | |
|---|---|---|
| 1 | DATED: July 30, 2021 | MUNGER, TOLLES & OLSON LLP |

By: */s/ Luis Li*
LUIS LI

Attorneys for Plaintiff Vanessa Bryant