LOUIS R. MILLER (State Bar No. 54141)
smiller@millerbarondess.com
MIRA HASHMALL (State Bar No. 216842)
mhashmall@millerbarondess.com
EMILY A. RODRIGUEZ-SANCHIRICO (State Bar No. 311294)
esanchirico@@millerbarondess.com
MILLER BARONDESS, LLP
1999 Avenue of the Stars, Suite 1000
Los Angeles, California 90067
Telephone:   (310) 552-4400
Facsimile:   (310) 552-8400

Attorneys for Defendants
COUNTY OF LOS ANGELES, LOS ANGELES COUNTY FIRE DEPARTMENT,
JOEY CRUZ, RAFAEL MEJIA, MICHAEL RUSSELL, and RAUL VERSALES

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| VANESSA BRYANT, a California resident,<br><br>                Plaintiff,<br><br>        v.<br><br>COUNTY OF LOS ANGELES, a public entity, *et al*.,<br><br>                Defendants. | **CASE NO. 2:20-cv-09582-JFW(Ex)**<br><br>**<u>DISCOVERY MATTER</u>**<br><br>**NOTICE OF MOTION AND JOINT STIPULATION REGARDING DEFENDANT COUNTY OF LOS ANGELES' MOTION TO COMPEL PRODUCTION OF DOCUMENTS**<br><br>Hearing Date:  October 15, 2021<br>Time:              9:30 a.m.<br>Place:            Courtroom 750<br><br>Discovery Cutoff: November 29, 2021<br>Pretrial Conference: February 4, 2022<br>Trial:    February 22, 2022<br><br>Assigned to the Hon. John F. Walter and Magistrate Judge Charles F. Eick |

**TO ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 15, 2021 at 9:30 a.m., or as soon thereafter as this matter may be heard in Courtroom 750 of the above-captioned Court, located at 255 East Temple Street, Los Angeles, California 90012, Defendant County of Los Angeles (the "County") will and hereby does move for an order compelling Plaintiffs Vanessa Bryant; Christopher L. Chester; R.C., a minor by and through his Guardian Ad Litem, Christopher L Chester; and H.C., a minor, by and through his Guardian Ad Litem, Christopher L. Chester (collectively, "Plaintiffs") to produce documents responsive to the County's Requests for Production that are relevant to Plaintiffs' claims and the County's defenses in this action.

Pursuant to Federal Rule of Civil Procedure 37(a) and Local Rule 37-2, the County respectfully submits the following Joint Stipulation Regarding Motion to Compel Production of Documents.

This Motion is based upon this Notice of Motion, the Joint Stipulation, the Declaration of Emily A. Rodriguez-Sanchirico and exhibits thereto, the Request for Judicial Notice and exhibits thereto, and any other papers or argument of counsel that may be filed or submitted in connection with this Motion.

In accordance with Local Rule 37-1, the County met and conferred in good faith before filing this Motion.  (*See* Declaration of Emily A. Rodriguez-Sanchirico ¶¶ 15-16, Ex. K.)

1   DATED: September 23, 2021     MILLER BARONDESS, LLP

2

3                             By:      */s/ Louis R. Miller*

4                                  LOUIS R. MILLER
                                    Attorneys for Defendant

5                                  COUNTY OF LOS ANGELES, LOS
                                  ANGELES COUNTY FIRE

6                                  DEPARTMENT, JOEY CRUZ, RAFAEL
                                  MEJIA, MICHAEL RUSSELL, and

7                                  RAUL VERSALES

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# **TABLE OF CONTENTS**

2

**Page**

3 I.   INTRODUCTION ..................................................................................... 6

4     A.   The County's Position ................................................................ 6

5     B.   Plaintiffs' Position ...................................................................... 7

6 II.  ISSUES IN DISPUTE ............................................................................. 9

7     A.   Settlement Documents (RFP No. 18 [Bryant]/No. 15 [Chester]) ........... 9

8          1.   The County's Position ................................................... 11

9          2.   Plaintiffs' Position ......................................................... 17

10    B.   Discovery Responses In *Island Express* (RFP No. 19 [Bryant]).......... 25

11         1.   The County's Position ................................................... 26

12         2.   Plaintiff Bryant's Position ............................................. 27

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STIPULATION REGARDING DEFENDANT'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Atmel Corp. v. Authentec Inc.*,
No. C-06-02138 CW (EDL), 2008 WL 276393 (N.D. Cal. Jan. 31, 2008) ................................................................................................ 11

*Bd. of Trs. of Leland Stanford Junior Univ. v. Tyco Int'l Ltd.*,
253 F.R.D. 521 (C.D. Cal. 2008) ..................................................... 13

*Beckman Indus., Inc. v. Int'l Ins. Co.*,
966 F.2d 470 (9th Cir 1992) ............................................................ 17

*Benchmark Design, Inc. v. BDC, Inc.*,
125 F.R.D. 511 (D. Or. 1989) ......................................................... 18

*Cipollone v. Liggett Grp., Inc.*,
113 F.R.D. 86 (D.N.J. 1986) ........................................................... 17

*Dominguez v. City of Los Angeles*,
No. CV 17-4557-DMG (PLAx), 2017 WL 10605960 (C.D. Cal. Nov. 18, 2017) ........................................................................................ 14

*In re Banc of Cal. Sec. Litig.*,
No. SA CV 17-00118-AG (DFMx), 2018 WL 1726237 (C.D. Cal. Apr. 6, 2018) .......................................................................................... 15

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
No. 3:07-cv-05944-SC, 2015 WL 13756260 (N.D. Cal. July 31, 2015) ........ 12

*In re Outlaw Labs., LP Litig.*,
No. 18CV840 GPC (BGS), 2021 WL 1102421 (S.D. Cal. Mar. 23, 2021) .............................................................................................. 13

*Lytel v. Simpson*,
No. C 05-1937 JF (PVT), 2006 WL 8459764 (N.D. Cal. June 23, 2006) ...... 11

*O. L. v. City of El Monte*,
No. 2:20-cv-00797-RGK (JDE), 2021 WL 926392 (C.D. Cal. Feb. 1, 2021) .............................................................................................. 15

*O'Brien v. Johnson & Johnson Med. Devices Co.*,
No. ED CV 19-619-CJC (SPx), 2020 WL 5215384 (C.D. Cal. June 24, 2020) ..................................................................................... 11, 12, 13

*Olympic Refining Co. v. Carter*,
    332 F.2d 260 (9th Cir. 1964) ................................................................17

*Perryman v. Litton Loan Servicing, LP*,
    81 F. Supp. 3d 893 (N.D. Cal. 2015) ...................................................17

*United States v. McGraw-Hill Cos., Inc.*,
    No. CV 13-779-DOC (JCGx), 2014 WL 1647385 (C.D. Cal. Apr. 15,
    2014)......................................................................................................15

**STATE CASES**

*Helling v. Lew*,
    28 Cal. App. 3d 434 (1972) ...................................................................10

**FEDERAL RULES**

Fed. R. Civ. P. 34(b)(2)(B) ..........................................................................14, 18

**JOINT STIPULATION**

**I.     INTRODUCTION**

    **A.     The County's Position**

Defendant County of Los Angeles (the "County") brings this motion to compel Plaintiffs Bryant's and Chester's compliance with basic discovery obligations.[1]

This case centers on the investigation of a tragic helicopter crash that killed nine individuals, including Plaintiffs' family members.  Plaintiffs assert claims for violation of the Fourteenth Amendment, negligence and invasion of privacy.  The basis for these claims is that Defendants showed accident site photographs to other government personnel and to a bartender in Norwalk.  None of the accident site photographs were sent to anyone outside the County.  Plaintiffs allege that, as a result of this conduct by Defendants, they have suffered severe emotional distress; and they are seeking significant damages.

Separately, Plaintiffs brought a lawsuit for wrongful death and negligence against the owners of the helicopter company and the successor-in-interest to the deceased pilot, styled *Bryant v. Island Express Helicopters, Inc.*, No. 2:20-CV-08953 ("*Island Express*").  (Request for Judicial Notice ("RJN") Ex. A [Consolidated Complaint].)  The Plaintiffs in this case and *Island Express* are identical, and the two cases arise from the same accident.  In addition to pecuniary and economic harm, Plaintiffs alleged in *Island Express* that the defendants therein caused them grief and sorrow.  (*Id.* Ex. A at ¶¶ 78, 85, 94, 102, 111.)  In June 2021, the parties reached a settlement.  (*Id.* Ex. B [June 22, 2021 Notice of Settlement].)

There is no doubt Plaintiffs suffered emotional distress following the tragic

---

[1] For purposes of this motion, "Plaintiffs" refers to Plaintiffs Vanessa Bryant ("Bryant"); Christopher L. Chester; R.C., a minor by and through his Guardian Ad Litem, Christopher L Chester; and H.C., a minor, by and through his Guardian Ad Litem, Christopher L. Chester (collectively, "Chester").

loss of their loved ones, and the County extends its sincere condolences, but Plaintiffs' claims are misdirected.  Plaintiffs' emotional distress was not caused by Defendants, who have neither published nor publicly disseminated any accident site photographs.  Rather, Plaintiffs' harm was caused by the unimaginable loss of their family members, which was the subject of the *Island Express* litigation.

Accordingly, on July 2, 2021, the County served its second sets of requests for production ("RFPs") seeking documents from the *Island Express* case that are relevant to the issues of causation and damages in this case.  The RFPs included requests for: (1) documents and communications relating to settlement of the *Island Express* litigation (RFP No. 18 in *Bryant* and RFP No. 15 in *Chester*); and (2) all discovery responses in the *Island Express* case (RFP No. 19 in *Bryant* and RFP No. 16 in *Chester*).  (Declaration of Emily A. Rodriguez-Sanchirico ("Rodriguez-Sanchirico Decl.") Exs. H & G.)  These documents are central to the claims, issues and defenses in this case—particularly, whether and to what extent Plaintiffs' harm was caused by Defendants; and whether and to what extent Plaintiffs have already been compensated for such harm.

Plaintiffs refused to produce any responsive documents and raised a host of unfounded boilerplate objections—relevance, privilege, confidentiality, and undue burden.  (Rodriguez-Sanchirico Decl. Exs. I & J.)  The County met and conferred with Plaintiffs, but to no avail.  (*Id*. Ex. K.)  Plaintiffs' continued refusal to comply with their basic discovery obligations is improper.  The Court should reject Plaintiffs' baseless objections and grant the County's motion to compel.

**B.    Plaintiffs' Position**

Unable to deny that County personnel betrayed their solemn duty as public servants to protect the dignity of the deceased by taking and sharing graphic photos of Plaintiffs' loved ones, the County now appears to be pursuing the theory that this appalling intrusion on Plaintiffs' privacy did not cause Plaintiffs any harm.  *See supra* at 7.  The County could not be more wrong.

1    Plaintiffs suffered emotional distress when they learned that government
2 personnel had turned the intensely private deaths of their loved ones into macabre
3 gossip and cocktail conversation.  Defendants' misconduct intruded upon Plaintiffs'
4 private grief, depriving them of their right to control dissemination of the graphic
5 details of their loved ones' final moments and manner of death, and degrading the
6 respect they sought to accord to their deceased relatives.  Making matters worse,
7 rather than make any serious effort to get to the bottom of what happened and track
8 down all copies of the photos, Defendants hastily destroyed evidence of their
9 misconduct in an attempted cover-up.  Defendants' destruction of evidence has
10 compounded the emotional harm Defendants inflicted by subjecting Plaintiffs to
11 constant fear and anxiety that they may one day confront the appalling photos on the
12 internet.  Defendants' actions have made it impossible for Plaintiffs to have any
13 peace of mind ever again.

14    Rather than take accountability for this harm, the County seeks to intrude
15 further into Plaintiffs' private affairs by gaining access to a confidential settlement
16 of a wrongful death action that remains pending before Judge Olguin and has no
17 relevance to this case.  The settlement resolved Plaintiffs' claims regarding conduct
18 *before* the crash that killed Plaintiffs' loved ones.  This case is about County
19 officials' conduct *after* the crash—taking and sharing photos of Plaintiffs' loved
20 ones' bodies.  Whereas the claims in the *Island Express* action were for damages
21 flowing from the deaths of Plaintiffs' loved ones, the claims against the County in
22 this case are for the County's disrespect for the dead.

23    The County's true purpose for seeking this discovery is to suggest that,
24 because Plaintiffs have obtained some relief for the deaths of their loved ones,
25 Plaintiffs are entitled to nothing from the County for disrespecting their loved ones'
26 remains.  The County's counsel admitted during meet and confer that Defendants
27 "just think it would be helpful to know . . . the dollar amount" of the *Island Express*
28 settlement—*not* because Defendants contend they are legally entitled to any offset,

1  but based on their speculation that this action is trying to "fill a void" in the

2  wrongful death case. (Bryant Decl. ¶ 4.) The County cannot properly use a

3  settlement paid by other parties in a separate action to avoid their own responsibility

4  for the unique damage that their own misconduct caused Plaintiffs. Defendants'

5  curiosity about the *Island Express* settlement falls far short of the heightened

6  showing required to overcome the protection afforded to confidential settlement

7  agreements.

8       The Court should deny the County's motion in its entirety.

9  **II.    ISSUES IN DISPUTE**

10      **A.    Settlement Documents (RFP No. 18 [Bryant]/No. 15 [Chester])**

11  **REQUEST NO. 18/15**

12      All COMMUNICATIONS and DOCUMENTS RELATING TO the

13  settlement and/or resolution of the ACTION, as referenced in the NOTICE OF

14  SETTLEMENT.[2]

15  **RESPONSE TO REQUEST NO. 18 (Bryant Response)**

16      Plaintiff incorporates her Preliminary Statement and General Objections into

17  this response as though fully set forth herein. Plaintiff objects to this Request as

18  calling for the disclosure of information or documents protected by the attorney-

19  client privilege, the work-product doctrine, the common-interest doctrine, and/or

20  any other applicable privilege, protection, or restriction upon discovery. Plaintiff

21  further objects to this request because it calls for material that is not relevant to any

22  claim or defense in this action. *Bryant v. Island Express Helicopters, Inc.*, No. 2:20-

23  CV-08953, involved different claims alleging different wrongdoing by different

24  defendants. Documents and communications relating to the settlement of such an

25  action are not probative of any claims or defenses asserted in this case. Plaintiff

---

26  [2] The defined terms in RFP No. 18 (propounded to Bryant) and RFP No. 15
27  (propounded to Chester) are set forth in the County's Second Sets of Requests for
28  Production, attached as Exhibits G and H to the Rodriguez-Sanchirico Declaration.

1    further objects to this request because it calls for the production of materials relating

2    to a settlement agreement that is by its terms confidential, and no defendant can

3    "make a particularized and/or heightened showing that the settlement information

4    sought is relevant and likely to lead to admissible evidence." *Peters v. Equifax Info.*

5    *Servs. LLC*, 2013 WL 12169355, at *2 (C.D. Cal. Dec. 13, 2013); *id.* ("A strong

6    public policy favoring settlement of disputed claims dictates that confidentiality be

7    lightly abrogated." (internal quotation marks omitted)); *see also. e.g.*, *Contreras v.*

8    *Kohl's Dep't Stores, Inc.*, 2017 WL 6372646, at *3 (C.D. Cal. Dec. 12, 2017)

9    (same).  Plaintiff further objects to this request as unduly burdensome and

10   disproportionate to the needs of this case because most if not all

11   "COMMUNICATIONS and DOCUMENTS RELATING TO the settlement and/or

12   resolution" of a litigation are likely to be communications with or among outside

13   litigation counsel or documents created by outside counsel that are likely protected

14   by the attorney-client privilege, the work-product doctrine, the common-interest

15   doctrine, and other applicable privileges and protections.

16          Plaintiff will not be producing documents in response to this request.

17   Discovery is still ongoing, and Plaintiff reserves the right to supplement and/or

18   amend this response

19   **RESPONSE TO REQUEST NO. 15 (Chester Response)**

20          Plaintiff objects to this request on each of the following grounds: the request

21   seeks production of documents and communications that do not have any tendency

22   to make a fact more or less probable than it would be without the documents and

23   communications; the requested documents and communications are of no

24   consequence in determining this action; any documents responsive to this request

25   are precluded from discovery by Plaintiff's right to privacy; any documents or

26   communications that might conceivably be responsive to this request are protected

27   from discovery by the attorney-client privilege; and any documents or

28   communications that might conceivably be responsive to this request are protected

1  by binding confidentiality provisions.

2  **1.      The County's Position**

3  Plaintiffs' refusal to produce the *Island Express* settlement agreement and

4  other non-privileged documents relating to the resolution of that case is improper.

5  The County is entitled to basic discovery about whether Plaintiffs are attempting to

6  recover in this case for the same harm they have already been compensated for in

7  the *Island Express* case.

8  **The *Island Express* Settlement Is Relevant**

9  Documents and communications relating to Plaintiffs' settlement in the *Island*

10  *Express* litigation are highly relevant to damages and causation in this case.

11  ***First***, the *Island Express* settlement is relevant to Plaintiffs' alleged harm.

12  This case and the *Island Express* case were brought by the same plaintiffs and arose

13  out of the same tragic accident.  In *Island Express*, Plaintiffs brought wrongful death

14  and negligence claims against the helicopter company and successor-in-interest to

15  the deceased pilot and sought damages for the loss of their loved ones.  Here,

16  Plaintiffs are asserting claims for violation of the Fourteenth Amendment,

17  negligence and invasion of privacy against Defendants in connection with the same

18  accident; and they are seeking damages for harm they allegedly suffered as a result

19  of County personnel taking photographs of the accident site.

20  There is significant overlap between the alleged harms in these two cases.  In

21  *Island Express*, Plaintiffs claimed they were entitled to damages based in part on

22  grief and sorrow.  (RJN Ex. A [Consolidated Complaint ¶¶ 78, 85, 94, 102, 111].).

23  Emotional harm (i.e., grief and sorrow) is the essence of Plaintiffs' alleged harm in

24  this case.  (Rodriguez-Sanchirico Decl. Exs. A and B [Bryant/Chester complaints at

25  Ex. A at 40:10-16, 42:9-12, 43:14-16, 44:25-27, 45:27-46:2; Ex. B at 121:6:-9,

26  123:8-14, 125:7-10, 126:24-28].)

27  Indeed, Bryant has acknowledged the connection between the alleged harms

28  in both cases.  In her First Amended Complaint in this case, she alleges that

Defendants' "outrageous actions have caused Mrs. Bryant severe emotional distress *and compounded the trauma of losing Kobe and Gianna*." (Rodriguez-Sanchirico Decl. Ex. A [FAC ¶ 9 (emphasis added)].)  Documents and communications regarding the settlement in the *Island Express* case will shed light on whether and to what extent Plaintiffs have already recovered for the harms they allege Defendants caused them.

The County is entitled to determine the extent to which the damages alleged against Defendants relate to and/or overlap with the harm Plaintiffs suffered as a result of the tragic loss of their loved ones; and whether Plaintiffs are attempting to recover for the same harm in two separate actions.  *See Helling v. Lew*, 28 Cal. App. 3d 434, 439-40 (1972) (in wrongful death action against car owner and estate of deceased driver, allowing introduction of plaintiff's settlement from separate malpractice case against hospital and doctor for treatment after the car accident).

Courts regularly order plaintiffs to produce settlement documents that are relevant to damages and harm.  *O'Brien v. Johnson & Johnson Med. Devices Co.*, No. ED CV 19-619-CJC (SPx), 2020 WL 5215384, at *4 (C.D. Cal. June 24, 2020) (ordering production of confidential settlement agreement from separate lawsuit because it "may well" have information relevant to plaintiff's damages); *Lytel v. Simpson*, No. C 05-1937 JF (PVT), 2006 WL 8459764, at *2 (N.D. Cal. June 23, 2006) (denying motion for protective order and allowing production of settlement agreement because "courts have found that settlement agreements are discoverable, particularly with respect to ascertaining any remaining liability"); *Atmel Corp. v. Authentec Inc.*, No. C-06-02138 CW (EDL), 2008 WL 276393, at *1-2 (N.D. Cal. Jan. 31, 2008) (ordering production of settlement agreements that were relevant to damages).

*O'Brien* is directly on point.  There, the court held that a defendant in a products liability action involving a defective medical device was entitled to the plaintiff's confidential settlement from a separate personal injury case relating to the

underlying injury that necessitated installation of the device.  The court rejected the plaintiff's argument that the prior settlement involved separate claims and injuries and was therefore not relevant: "It may be the case, as defendant contends, that the settlement agreement contains provisions that are relevant to plaintiff's damages here." *O'Brien*, 2020 WL 5215384, at *4.  The court ordered production of the settlement agreement, explaining that "while it is not certain the requested settlement agreement will have relevant information, it may well." *Id*.

*O'Brien* is just like this case.  Here, the only way for the County to determine whether Plaintiffs have already been compensated for their alleged harms is to review the settlement documents from *Island Express*.  *O'Brien*, 2020 WL 5215384, at *4 ("[W]ithout the benefit of having the settlement agreement for its review, the court cannot determine at this juncture if plaintiff has already been compensated for these injuries.").

**Second**, documents relating to the *Island Express* settlement are relevant to causation, which is an element of each of Plaintiffs' claims.  It is Plaintiffs' burden to prove that Defendants' alleged conduct of taking accident site photographs actually and proximately caused their emotional harm.  Defendants deny that Plaintiffs' harm was caused by their conduct, and they have asserted affirmative defenses to that effect—Superseding and Intervening Acts (Seventeenth Affirmative Defense [to Bryant's FAC] and Eighteenth Affirmative Defense [to Chester's SAC]); and No Causation (Twentieth Affirmative Defense [to Bryant's FAC] and Twenty-First Affirmative Defense [to Chester's SAC]).  (Rodriguez-Sanchirico Decl. Exs. B & D [Answers]].)

Defendants will prove that Plaintiffs' emotional harm was not caused by Defendants.  Rather, Plaintiffs' harm was caused by the unimaginable loss of their loved ones and by persons and entities for whose conduct Defendants are not responsible (and from whom Plaintiffs have already recovered via the *Island Express* settlement).

1    The *Island Express* settlement materials are likely to contain recitals about the

2    cause of Plaintiffs' emotional harm, which will go to lack of causation and will

3    support the County's affirmative defenses. The only way for the County to know

4    whether such recitals exist is for Plaintiffs to produce the *Island Express* settlement

5    and related documents.

6    **Plaintiffs' Confidentiality and Privacy Objections Are Unfounded**

7    Documents related to the *Island Express* settlement are not protected from

8    disclosure simply because the settlement agreement has been designated

9    "confidential" by the parties. Courts regularly find that there "is no broad federal

10   privilege that applies to settlement agreements." *O'Brien*, 2020 WL 5215384, at *4;

11   *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 3:07-cv-05944-SC, 2015 WL

12   13756260, at *3 (N.D. Cal. July 31, 2015) ("Courts in the Ninth Circuit have not

13   recognized a federal settlement privilege."). Accordingly, "[f]ederal courts have

14   typically found that a settlement agreement 'is *discoverable* despite a confidential

15   designation, especially when there is a protective order in place to prevent

16   unauthorized disclosure.'" *In re Outlaw Labs., LP Litig.*, No. 18CV840 GPC

17   (BGS), 2021 WL 1102421, at *6 (S.D. Cal. Mar. 23, 2021) (citation omitted); *Bd. of

18   Trs. of Leland Stanford Junior Univ. v. Tyco Int'l Ltd.*, 253 F.R.D. 521, 523 (C.D.

19   Cal. 2008) ("[W]here 'there is a Confidentiality Order in place . . . that is more than

20   adequate to protect [plaintiffs'] proprietary information from misuse.'" (alteration in

21   original) (citation omitted)).

22   Here, there is a Protective Order with protocols governing the production of

23   confidential material from both parties and non-parties. (Rodriguez-Sanchirico

24   Decl. Exs. E & F.) Thus, any concerns Plaintiffs or third parties may have regarding

25   the confidentiality of the *Island Express* materials are alleviated by the existence of

26   the Protective Order. *See e.g.*, *O'Brien*, 2020 WL 5215384, at *5 ("The settlement

27   agreement here implicates the privacy interests of not only plaintiff, but also a non-

28   party entity. The court does not take these privacy concerns lightly. Yet, the fact

that a protective order has already been entered in this action substantially mitigates these concerns.").

Plaintiffs can produce the *Island Express* materials pursuant to the Protective Order, ensuring that they remain confidential and the parties' privacy rights are protected.  The purported confidentiality of the settlement agreement does not justify withholding information that is central to the claims and defenses in this case.

Indeed, the court in *Island Express* found that other interests override confidentiality and privacy with respect to the parties' settlement agreement and related materials.  There, the court denied Plaintiffs' application for leave to file the minor plaintiffs' settlement agreement and related documents under seal.  (RJN Ex. D [Order Re: Application to Seal].)  In denying the request, the court was not persuaded by Plaintiffs' argument that the settling parties agreed to keep the agreement and its terms confidential.  (*Id.* Ex. C [Application at pp. 89-90.].)  Nor did the minor plaintiffs' privacy rights override the strong presumption in favor of access to court records.  (*Id.* Ex. C at pp. 90-91, Ex. D at p. 153.)  Similarly here, the broad nature of discovery and high probative value of these documents override any confidentiality or privacy concerns, even more so because there is a fulsome protective order in place.

**Plaintiffs' Remaining Objections Are Baseless**

Plaintiffs' privilege and work-product objections are unfounded.  During the parties' meet-and-confer, the County clarified that it is not seeking Plaintiffs' communications with their attorneys or any other privileged documents reflecting advice of Plaintiffs' counsel.  (Rodriguez-Sanchirico Decl. ¶ 16.)  To the contrary, the County is seeking the final settlement agreement among the parties in the *Island Express* litigation, along with any non-privileged communications relating to resolution of the case.  Plaintiffs' refusal to produce these documents is improper.

Moreover, Plaintiffs' blanket privilege objections lack the required specificity.  *See* Fed. R. Civ. P. 34(b)(2)(B) ("For each item or category, the

1  response must . . . state with specificity the grounds for objecting to the request,

2  including the reasons."); *see also Dominguez v. City of Los Angeles*, No. CV 17-

3  4557-DMG (PLAx), 2017 WL 10605960, at *4 (C.D. Cal. Nov. 18, 2017) ("[T]he

4  party who withholds discovery materials based on a privilege must provide

5  sufficient information (*i.e.*, a privilege log) to enable the other party to evaluate the

6  applicability of the privilege or other protection. . . . Asserting a 'blanket

7  objection' . . . will be found to be insufficient and improper." (citations omitted)).

8  To the extent Plaintiffs contend communications about the *Island Express* litigation

9  are protected by the attorney-client privilege or any other privilege, they should

10  provide a privilege log.

11        Plaintiff Bryant's undue burden objection is also unfounded.  As an initial

12  matter, Bryant has not offered any specific information to carry her "burden of

13  clarifying, explaining, and supporting" her objection.  *See O. L. v. City of El Monte*,

14  No. 2:20-cv-00797-RGK (JDE), 2021 WL 926392, at *2 (C.D. Cal. Feb. 1, 2021)

15  (citation omitted); *United States v. McGraw-Hill Cos., Inc.*, No. CV 13-779-DOC

16  (JCGx), 2014 WL 1647385, at *8 (C.D. Cal. Apr. 15, 2014) ("[T]he movant has the

17  initial burden of demonstrating relevance.  'In turn, the party opposing discovery has

18  the burden of showing that discovery should not be allowed, and also has the burden

19  of clarifying, explaining and supporting its objections with competent evidence.'"

20  (citations omitted)).

21        In any event, the County seeks a limited set of documents: the settlement

22  agreement and any non-privileged corresponding documents and communications.

23  There is no undue burden in searching for and producing these documents,

24  particularly in light of their high probative value.  *See In re Banc of Cal. Sec. Litig.*,

25  No. SA CV 17-00118-AG (DFMx), 2018 WL 1726237, at *1 (C.D. Cal. Apr. 6,

26  2018) (finding it hard to take seriously that the production of a single settlement

27  agreement document would present an undue burden).

28

### 2.     Plaintiffs' Position

What the County has characterized as "basic discovery," *supra* at 11, is anything but.  It is an improper attempt to pry into confidential settlement materials that are not relevant to this case and could only be used for improper purposes.

A "strong public policy favoring settlement of disputed claims dictates that confidentiality agreements regarding such settlements not be lightly abrogated." *Contreras v. Kohl's Dep't Stores, Inc.*, 2017 WL 6372646, at *3 (C.D. Cal. Dec. 12, 2017) (citation omitted) (denying motion to compel production of settlement agreements).  As a result, parties seeking discovery into confidential settlements bear the burden "to make a particularized and/or heightened showing that the settlement information sought is relevant and likely to lead to admissible evidence." *Peters v. Equifax Info. Servs. LLC*, 2013 WL 12169355, at *2 (C.D. Cal. Dec. 13, 2013) (denying motion to compel production of settlement agreements).  In evaluating the discoverability of confidential settlement agreements, courts "must balance [the requesting party's] interest in the discovery against [the responding party's] interest in protecting a settlement negotiated with the expectation of confidentiality."  *Big Baboon Corp. v. Dell, Inc.*, 2010 WL 3955831, at *4 (C.D. Cal. Oct. 8, 2010) (citation omitted) (granting motion to quash subpoena requesting settlement agreement).

The County has failed to sustain its basic burden to show that the *Island Express* settlement is relevant, much less satisfy its heightened burden to justify overriding the settling parties' expectation of confidentiality.

**The *Island Express* Settlement Has No Relevance to This Case**

The County's motion rests on the premise that "Plaintiffs are attempting to recover in this case for the same harm they have already been compensated for in the *Island Express* case." *See supra* at 11.  This is demonstrably untrue.

The *Island Express* action arose from the crash itself.  Plaintiffs sought recompense from the owners and operators of the helicopter for the "loss of love,

affection, care, society, service, comfort, support, right to support, companionship, solace or moral support, expectations of future support and counseling, [and] other benefits and assistance of Plaintiffs' deceased"; the "loss of earnings and loss of financial support from Plaintiffs' deceased"; and "damage to clothing and personal property and burial and funeral expenses."  (*See* RJN Ex. A at p. 65 (prayer for relief).)

This case, by contrast, is about what happened *after* Plaintiffs lost their loved ones—when Defendants intruded on Plaintiffs' private grief by snapping graphic photos of their family members' remains and proceeding to share them indiscriminately.  Plaintiffs in this case do not seek wrongful-death damages for loss of care, companionship, or financial support, but instead seek damages for the emotional harm caused by Defendants' misconduct:  Plaintiffs seek damages for their disgust at the intrusion upon their grief, distress at the mistreatment of their loved ones' remains, and persistent fear that Plaintiffs could confront the disturbing images online at any time.  (*See* Rodriguez-Sanchirico Decl. Ex. A [FAC ¶¶ 71–75].)

In short, the two cases involve distinct sets of defendants who engaged in distinct misconduct that caused distinct damages.  The *Island Express* case is a wrongful death action based on conduct by the helicopter owner and operator *before* the crash that caused Plaintiffs' loved ones' deaths.  This case involves claims for invasion of privacy based on conduct by the County *after* the crash that disrespected the bodies of Plaintiffs' loved ones after they died.

The County's argument that there is "significant overlap" between the damages in the two actions, *supra* at 11, fundamentally misapprehends the nature of Plaintiffs' claims and the law.  As noted, there is no "overlap" between the loss of life caused by a helicopter crash, on the one hand, and the subsequent invasion of privacy and emotional distress caused by Defendants' taking and sharing of gruesome photos of the victims' remains, on the other.

Moreover, even setting aside that the two cases involve completely different forms of misconduct, the *Island Express* action does not overlap with this case as a matter of law.  As "California cases have uniformly held," "damages for mental and emotional distress, including grief and sorrow, are not recoverable in a wrongful death action." *Canavin v. Pac. Sw. Airlines*, 148 Cal. App. 3d 512, 519 (1983) (citations omitted); *see also, e.g.*, *Hammonds v. Yeager*, 2017 WL 10560471, at *2 (C.D. Cal. Aug. 9, 2017) (collecting cases); Judicial Council of Cal. Civil Jury Instruction ("CACI") Nos. 3921, 3922 Wrongful Death (outlining damages for wrongful death and instructing jury to not consider the plaintiff's "grief, sorrow, or mental anguish"); RJN Ex. A at p. 65 (Plaintiffs' prayer for relief in *Island Express*, tracking CACI Nos. 3921/3922 and making no mention of emotional distress damages).  "Rather, the measure of damages" in wrongful death actions like *Island Express* "is the value of the benefits the heirs could reasonably expect to receive from the deceased if [they] had lived." *Canavin*, 148 Cal. App. 3d at 520.  Since "emotional injuries to the heirs are not relevant to a cause of action for wrongful death," *id.*, Plaintiffs' emotional distress at issue in this case could not "overlap" with any damages recovered in the *Island Express* action.

The County notably does not assert it would be legally entitled to any offset for Plaintiffs' recovery in the *Island Express* settlement; in fact, in meet and confer, the County admitted it is not entitled to an offset.  (*See* Bryant Decl. ¶ 4.)  That reflects well-settled law.  *See, e.g.*, *Uthe Tech. Corp. v. Aetrium Inc.*, 808 F.3d 755, 761 (9th Cir. 2015) (an offset is available only where a settlement and judgment "represent common damages arising from a single, indivisible harm" (citation omitted)); *C.B. v. City of Sonora*, 769 F.3d 1005, 1031–32 (9th Cir. 2014) ("[T]here can be no offset for noneconomic damages.").

The County's concession that it is not entitled to an offset is fatal to its motion because courts routinely reject efforts to obtain discovery into settlements where there is no potential offset available.  *See, e.g.*, *Zook v. Equifax Info. Servs., LLC*,

2018 WL 10604347, at *3 (D. Or. July 2, 2018) (denying motion to compel where offset was unavailable as a matter of law, and further noting it was "premature to order sensitive and confidential information to be disclosed before a trier of fact has determined whether any damages should be awarded"); *Contreras*, 2017 WL 6372646, at *3 (same); *Chaker v. Nathan Enters. Corp.*, 2006 WL 8434046, at *2 (C.D. Cal. Jan. 6, 2006) (refusing to "order that confidential [settlement] information be produced on . . . weak showing of relevance" where defendant could not indicate how offset was available given the nature of the action); *Close v. Account Resolution Servs.*, __ F. Supp. 3d __, 2021 WL 3674066, at *3–4 (D. Mass. Aug. 19, 2021) (denying motion to compel settlement agreements on relevance grounds where movants were not entitled to an offset for any amount paid by other defendants in settlement).

The cases relied upon by the County do not support its argument.  The County's cases involved situations where a defendant sought discovery of a plaintiff's settlements with the defendant's *co-defendants* or *joint tortfeasors* who were liable for *common damages*, which were relevant to avoiding a double recovery.  *See Helling v. Lew*, 28 Cal. App. 3d 434 (1972) (involving successive wrongful death actions subject to one satisfaction rule because they arose from same loss of life); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2015 WL 13756260, at *3 (N.D. Cal. July 31, 2015) (plaintiffs did not contest that settlement agreements would be relevant to non-settling defendant's offset defense); *Lytel v. Simpson*, 2006 WL 8459764, at *2 (N.D. Cal. June 23, 2006) (involving settlement of co-defendant that was sued for same claims as remaining defendant).  No such issues are implicated here.[3]

---

[3] Even more strangely, the County relies upon patent cases in which courts concluded that licensing agreements and settlement agreements involving the patent-in-suit and related patents were discoverable.  *See Amtel Corp. v. Authentec Inc.*, 2008 WL 276393, at *1–2 (N.D. Cal. Jan. 31, 2008); *Bd. of Trs. of Leland*

The County is wrong that *O'Brien v. Johnson & Johnson Medical Devices Co.*, 2020 WL 5215384, at *4 (C.D. Cal. June 24, 2020), is "directly on point" and "just like this case," *supra* at 12–13. In *O'Brien*, the plaintiff fell off a platform at a go-karting track, causing an injury that required the installation of a prosthesis. Plaintiff sued the owner and operator of the go-karting track and sought to recover damages for future medical expenses related to her prosthesis. After the plaintiff needed to have the prosthesis removed, the plaintiff brought a product-liability action against the prosthesis manufacturers, alleging that they had designed, created, manufactured, and marketed a defective device. When the plaintiff reached a settlement with the go-karting track owner, the defendants in the product-liability case moved to compel the settlement agreement. The court granted the motion. The court found the settlement potentially relevant because the plaintiff could not recover damages from medical expenses related to the prosthesis from both the go-karting track owner and the manufacturers of the prosthesis, and the plaintiff failed to explain whether the settlement compensated her for those expenses, which would have entitled the manufacturers to an offset. *See O'Brien*, 2020 WL 5215384, at *4.

*O'Brien* is nothing like this case. The settlement in *O'Brien* with the track owner could have involved *the very same injury* for which the plaintiffs sought damages against the manufacturers of the prosthesis who sought discovery of the settlement. But here, there is no risk of double recovery because *Island Express* and this action involve two completely different injuries: (1) the harm from the wrongful death of Plaintiffs' loved ones in the helicopter crash, and (2) the emotional distress from Defendants' illicit taking and sharing of graphic photos of the victims' remains *after* the helicopter crash, respectively. The County has

*Stanford Junior Univ. v. Tyco Int'l Ltd.*, 253 F.R.D. 521, 523 (C.D. Cal. 2008). In such cases, the agreements at issue were relevant because they quantified the value of the patents at issue or related patents, which was relevant to the appropriate reasonable royalty to be awarded as damages. These cases are far afield.

admitted as much, acknowledging during meet and confer that it is not entitled to an offset.  (*See* Bryant Decl. ¶ 4.)

The County's remaining arguments lack merit.  The County speculates that the "*Island Express* settlement materials are likely to contain recitals about the cause of Plaintiffs' emotional harm."  *See supra* at 13–14.  But because emotional-distress damages were not at issue in *Island Express*, it is not clear why the County thinks this would be true.

The County points to references to Plaintiffs' grief in the *Island Express* complaint.  *See supra* at 6, 11 (citing ¶¶ 78, 85, 94, 102, 111).  But these noneconomic damages arising from the death of Plaintiffs' loved ones are distinct from the emotional distress Plaintiffs have suffered at Defendants' hands.  In a wrongful death case, noneconomic damages are available only for "the loss of decedent's love, companionship, comfort, care, assistance, protection, affection, society, moral support, and decedent's training and guidance."  *See Hammonds*, 2017 WL 10560471, at *2 (citing CACI No. 3921).  Those are not the damages at issue in this case.

Finally, the County contends that Mrs. Bryant has conceded there is some overlap between the two distinct harms merely because she alleged in her First Amendment Complaint that Defendants' actions "compounded the trauma of losing Kobe and Gianna."  *See supra* at 11–12 (citing FAC ¶ 9).  But that allegation makes clear that Defendants caused *additional harm* that made the trauma worse, which is entirely consistent with Plaintiffs' position that Defendants caused a distinct category of damages.

**The County Does Not Make the Particularized Showing of Relevance Required to Overcome Settlement Confidentiality**

The *Island Express* parties expressly agreed that the terms and conditions of their settlement would remain confidential in all respects.  (*See* RJN Ex. C at 97 ¶ 4.)

1    Discovery of confidential settlement agreements is subject to "heightened

2 scrutiny" due to "the public policy favoring efficient settlements." *Big Baboon*,

3 2010 WL 3955831, at *4.  The County's own authorities emphasize that settlement

4 confidentiality may "not be lightly abrogated."  *See, e.g.*, *O'Brien*, 2020 WL

5 5215384, at *4.  "[T]he courts in the Central District of California have generally

6 employed an elevated standard in the settlement context, by placing the burden on

7 the requesting party . . . to make a particularized or heightened showing that the

8 settlement information is relevant and likely to lead to admissible evidence."

9 *Zucchella v. Olympusat, Inc.*, 2020 WL 8483772, at *8 (C.D. Cal. Nov. 2, 2020).

10 The County cannot show even minimal relevance (*see* pp. 17–22, *supra*), much less

11 make the heightened showing that is required.

12    The *Island Express* parties' interest in protecting their confidential settlement

13 far outweighs the County's interest in the discovery it seeks.  The risk that this

14 discovery would have a chilling effect on the settlement process is particularly acute

15 here because the *Island Express* action remains ongoing.  None of Plaintiffs' claims

16 have been dismissed, and a motion to intervene is currently pending before Judge

17 Olguin.  *See generally Bryant v. Island Express Helicopters, Inc.*, No. 2:20-CV-

18 08953 (C.D. Cal.).

19    The County casually brushes aside the privacy and public-policy interests at

20 stake and relies upon Judge Olguin's recent order in *Island Express* denying

21 Plaintiffs' application to seal all filings relating to the petitions to approve the

22 compromise of the minors' claims in that action.  *See supra* at 15.  That order has no

23 relevance to the question presented here.  Judge Olguin has not ordered disclosure of

24 the parties' settlement agreement in *Island Express*.  He denied the sealing

25 application *without prejudice* on the ground that the application was not "narrowly

26 tailored to seal only the sealable material"—i.e., the settlement agreement itself—

27 but also sought to seal "all filings, hearings, and orders relating to the petitions to

28 approve the compromise of the minors' claims."  (*See* RJN Ex. D. at 153 (citation

1   omitted).)  Moreover, a sealing application is subject to a different standard than

2   discovery.  On an application to seal, the court "starts with a strong presumption in

3   favor of access to *court* records."  (RJN Ex. D at 153 (emphasis added) (alteration

4   omitted) (quoting *Foltz v. State Farm Mut. Auto. Ins.*, 331 F.3d 1122, 1135 (9th Cir.

5   2003)).  There is no such "strong presumption in favor" of discovery of confidential

6   settlement agreements.  Instead, the opposite is true:  the moving party bears the

7   burden of overcoming the presumption of confidentiality by making a heightened

8   showing of relevance.

9        The County has not satisfied its burden to "make a particularized and/or

10  heightened showing that the settlement information sought is relevant and likely to

11  lead to admissible evidence."  *Peters*, 2013 WL 12169355, at *2.  The Court

12  therefore should deny the County's motion to compel discovery of the *Island*

13  *Express* settlement.

14  **The County's RFP Is Unduly Burdensome and Disproportionate to the Needs**

15  **of This Case**

16       The County's RFP seeks not just a single settlement agreement but also "all

17  communications and documents relating to the settlement and/or resolution of the

18  action."  An even "higher expectation of confidentiality" surrounds settlement

19  negotiations than settlement agreements themselves.  *See, e.g.*, *Hem & Thread, Inc.*

20  *v. Wholesalefashionsquare.com, Inc.*, 2020 WL 5044610, at *3 (C.D. Cal. June 16,

21  2020) (concluding "interest in preserving the privacy of the negotiations

22  outweigh[ed]" any relevancy).  Neither in meet and confer nor in the instant motion

23  has the County articulated the relevance of such communications.

24       Moreover, by its plain terms, the RFP sweeps broadly and calls for the

25  production of a substantial number of privileged documents.  The County now

26  purports to clarify that it is willing to carve out privileged communications.  In its

27  next breath, however, the County claims Plaintiffs should be required to undertake

28  the burdensome task of logging privileged communications about a settlement that

1  has no relevance to the issues in this case.  *See supra* at 16.

2      **B.      Discovery Responses In _Island Express_ (RFP No. 19 [Bryant])**

3  REQUEST NO. 19

4      ALL COMMUNICATIONS and DOCUMENTS RELATING TO responses

5  or objections to discovery in the ACTION.[4]

6  RESPONSE TO REQUEST NO. 19

7      Plaintiff incorporates her Preliminary Statement and General Objections into

8  this response as though fully set forth herein.  Plaintiff objects to this Request as

9  calling for the disclosure of information or documents protected by the attorney-

10  client privilege, the work-product doctrine, the common-interest doctrine, and/or

11  any other applicable privilege, protection, or restriction upon discovery.  Plaintiff

12  further objects to this request because it calls for material that is not relevant to any

13  claim or defense in this action.  *Bryant v. Island Express Helicopters, Inc.*, No. 2:20-

14  CV-08953, involved different claims alleging different wrongdoing by different

15  defendants.  Documents and communications relating to responses or objections to

16  discovery in such an action are not probative of any claims or defenses asserted in

17  this case.  Plaintiff further objects to this request as unduly burdensome and

18  disproportionate to the needs of this case because most if not all

19  "COMMUNICATIONS and DOCUMENTS RELATING TO responses or

20  objections to discovery" in a litigation are likely to be communications with or

21  among outside litigation counsel litigation or documents created by outside counsel

22  that are likely protected by the attorney-client privilege, the work-product doctrine,

23  the common-interest doctrine, and other applicable privileges and protections.

24  _____

25  [4] The County served an identical request to Chester (RFP No. 16), who responded
that he has no responsive documents within his care, custody or control.

26  (Rodriguez-Sanchirico Decl. Ex. J.)  Accordingly, the County is only moving to

27  compel the production of Plaintiff Bryant's objections and responses to discovery in
the *Island Express* litigation.

28

1   Plaintiff will not be producing documents in response to this request.

2   Discovery is still ongoing, and Plaintiff reserves the right to supplement and/or

3   amend this response.

4          **1.      The County's Position**

5   **Bryant's Discovery Responses from *Island Express* Are Relevant**

6          As discussed above (*supra* IA), the claims in this case are brought by the

7   same plaintiffs and arise out of the same tragic accident as the *Island Express* case;

8   and there is significant overlap between the alleged harms and damages in the two

9   lawsuits.  Indeed, Bryant acknowledges the connection between her alleged harm in

10  both lawsuits and claims that Defendants in this case compounded the harm she was

11  already suffering.  (Rodriguez-Sanchirico Decl. Ex. A [FAC ¶ 9].)

12         Bryant's discovery responses in the *Island Express* litigation are likely to

13  contain sworn admissions that are relevant to rebut her claims and damages in this

14  case.  For example, any responses in which Bryant describes the emotional harm she

15  suffered, how defendants in the *Island Express* litigation caused that harm, or the

16  bases for her damages would be highly probative to causation and damages in the

17  instant case.  The County is entitled to review and use these documents in building

18  its defense.

19         Courts regularly allow discovery to be used in lawsuits other than the one in

20  which it was obtained.  *See Perryman v. Litton Loan Servicing, LP*, 81 F. Supp. 3d

21  893, 901 (N.D. Cal. 2015) (citing *Cipollone v. Liggett Grp., Inc.*, 113 F.R.D. 86, 91

22  (D.N.J. 1986) ("[A] number of courts have rejected requests to limit the use of

23  discovery to the litigation in which it is initially obtained.").  Even where discovery

24  is conducted under a protective order, "precedent strongly favors disclosure to meet

25  the needs of parties in pending litigation."  *Beckman Indus., Inc. v. Int'l Ins. Co.*,

26  966 F.2d 470, 475 (9th Cir 1992); *Olympic Refining Co. v. Carter*, 332 F.2d 260,

27  265-66 (9th Cir. 1964) (litigant in a separate antitrust action based on the same

28  alleged violations was entitled to access documents maintained under a protective

1  order from a prior antitrust suit).  Here, Defendants' need to evaluate the bases of

2  the claims against them justifies disclosure of Bryant's discovery responses from the

3  *Island Express* litigation.

4  **Bryant's Objections Are Unfounded**

5         Bryant's objections based on the attorney-client privilege, the work-product

6  doctrine, and the common-interest doctrine are irrelevant.  The County clarified

7  during the parties' meet-and-confer that it is not seeking Bryant's attorneys' internal

8  communications relating to drafting her discovery responses; nor is it seeking

9  Bryant's communications with her attorneys.  (Rodriguez-Sanchirico Decl. ¶ 16.)

10  Rather, the County is seeking discovery responses and objections that were

11  exchanged among the parties during the course of the litigation.  It goes without

12  saying that discovery responses exchanged between parties on opposite sides of a

13  lawsuit are not protected by the attorney-client privilege.

14         Moreover, Bryant's blanket privilege objections lack the required specificity

15  under Rule 34(b)(2)(B).  (*See supra* IIA, 1.)  To the extent Bryant contends her

16  discovery responses in the *Island Express* litigation are protected by the attorney-

17  client privilege or any other privilege, she should provide a privilege log.

18         Bryant's undue burden objection is also baseless.  The County seeks a limited

19  universe of documents: discovery responses.  There is no undue burden in searching

20  for and producing these documents.  *See Benchmark Design, Inc. v. BDC, Inc.*, 125

21  F.R.D. 511, 512 (D. Or. 1989) ("Rule 26(c) authorizes a protective order when

22  discovery would be unduly burdensome.  This requires more than some expense or

23  difficulty, especially in the case of a party to the action.").

24              **2.    Plaintiff Bryant's Position**

25         RFP No. 19 sought all communications and documents relating to *any*

26  discovery in *Island Express*.  (*See* Rodriguez-Sanchirico Declaration Ex. G at 186)

27  (seeking documents and communications "RELATING TO responses or objections

28  to discovery in the ACTION," rather than such documents "relating to *your*

1  responses or objections").  The County's motion clarifies that it seeks to compel

2  only "production of Plaintiff Bryant's objections and responses to discovery in the

3  *Island Express* litigation."  *See supra* n. 4.  However, Mrs. Bryant never served

4  objections or responses to any discovery in *Island Express* (Bryant Decl. ¶ 2)—

5  much less any discovery that could possibly shed light on the emotional distress

6  inflicted by Defendants' misconduct.

7       Plaintiffs' counsel informed Defendants of this fact during a meet and confer

8  by videoconference on August 19, 2021.  (*See* Bryant Decl. ¶ 5.)  The County

9  inexplicably decided to pursue this motion seeking discovery responses that do not

10  exist.  The motion should be summarily denied.

11

12  DATED:  September 23, 2021       MILLER BARONDESS, LLP

13

14                                  By:   */s/ Louis R. Miller*

15                                        LOUIS R. MILLER

16                                        Attorneys for Defendants
                                          COUNTY OF LOS ANGELES, LOS
17                                        ANGELES COUNTY FIRE
                                          DEPARTMENT, JOEY CRUZ, RAFAEL
18                                        MEJIA, MICHAEL RUSSELL, and
                                          RAUL VERSALES
19

20  DATED:  September 23, 2021       MUNGER, TOLLES & OLSON LLP

21

22

23                                  By:   */s/ Luis Li*

24                                        LUIS LI

25                                        Attorneys for Plaintiff
                                          VANESSA BRYANT
26

27

28

1    DATED:  September 23, 2021          JEROME M JACKSON LAW OFFICES

2

3

4                                       By:    /s/ Jerome M. Jackson

5                                              JEROME M. JACKSON
                                               Attorneys for Plaintiffs
6                                              CHRISTOPHER L. CHESTER; R.C., a
                                               minor, by and through his Guardian Ad
7                                              Litem, CHRISTOPHER L. CHESTER;
                                               and H.C., a minor, by and through his
8                                              Guardian Ad Litem, CHRISTOPHER L.
9                                              CHESTER

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STIPULATION REGARDING DEFENDANT'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>ATTESTATION CLAUSE</u>**

I, Louis R. Miller, am the ECF User whose ID and password are being used to file this STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS.  In compliance with L.R. 5-4.3.4, I hereby attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated:  September 23, 2021          */s/ Louis R. Miller*
                                              Louis R. Miller

STIPULATION REGARDING DEFENDANT'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS