LUIS LI (State Bar No. 156081)
luis.li@mto.com
CRAIG JENNINGS LAVOIE (State Bar No. 293079)
craig.lavoie@mto.com
JENNIFER L. BRYANT (State Bar No. 293371)
jennifer.bryant@mto.com
MARI T. SAIGAL (State Bar No. 318556)
mari.saigal@mto.com
BRANDON E. MARTINEZ (State Bar No. 318749)
brandon.martinez@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue
Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:  (213) 683-9100
Facsimile:   (213) 687-3702

Attorneys for Plaintiff Vanessa Bryant

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| VANESSA BRYANT, a California Resident,<br><br>        Plaintiff,<br><br>    vs.<br><br>COUNTY OF LOS ANGELES, a public entity, et al.,<br><br>        Defendants. | Case No. 2:20-cv-09582-JFW-E<br><br>**<u>DISCOVERY MATTER</u>**<br><br>**NOTICE OF MOTION AND JOINT STIPULATION RE: PLAINTIFF'S MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS FOR CELL PHONE RECORDS**<br><br>*Filed Concurrently with Declaration of Jennifer L. Bryant; Declaration of Steven H. Haney; Plaintiff's [Proposed] Order*<br><br>Judge:   Hon. John F. Walter<br>Magistrate Judge:  Hon. Charles F. Eick<br><br>Hearing:   November 5, 2021<br>Time:   9:30 a.m.<br>Place:   Courtroom 750<br><br>Discovery Cutoff:  November 29, 2021<br>Pretrial Conference:  February 4, 2022<br>Trial:  February 22, 2022 |

1   TO ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF

2   RECORD:

3   PLEASE TAKE NOTICE that on November 5, 2021, at 9:30 a.m., or as soon

4   thereafter as this matter may be heard in Courtroom 750, 7th Floor, of the above-

5   captioned Court, located at 255 E. Temple St., Los Angeles, California 90012,

6   Plaintiff Vanessa Bryant will and hereby does move for an order compelling former

7   Los Angeles County Fire Department employee Brian Jordan to produce all records

8   generated and maintained by his wireless carrier for his mobile devices that show

9   his text-messaging activity between January 26 and March 3, 2020.

10   Pursuant to Federal Rule of Civil Procedure 37(a) and Local Rule 37-2, the

11   parties respectfully submit this joint stipulation setting forth their contentions.

12   This Motion is based on upon this Notice of Motion, the attached Joint

13   Stipulation, the Declaration of Jennifer L. Bryant and exhibits thereto, and any other

14   papers or argument of counsel that may be filed or submitted in connection with this

15   Motion.

16   In accordance with Local Rule 37-1, counsel for Plaintiff and Mr. Jordan met

17   and conferred regarding this dispute by videoconference on August 26, 2021, and by

18   correspondence prior to and following that conference, but were unable to reach

19   agreement regarding the subject matter of this Motion.

20   DATED:  October 14, 2021          MUNGER, TOLLES & OLSON LLP

21

22

23   By: _____/s/ Luis Li_____

24                                       LUIS LI

25   Attorneys for Plaintiff Vanessa Bryant

26

27

28

1

## **TABLE OF CONTENTS**

2

3

**Page**

4  I.   INTRODUCTORY STATEMENTS ................................................................ 1

5       A.   Plaintiff's Statement................................................................................ 1

6       B.   Brian Jordan's Statement ........................................................................ 3

7  II.  ISSUES IN DISPUTE ................................................................................... 6

8       A.   Plaintiff's Contentions ............................................................................ 7

9       B.   Brian Jordan's Contentions................................................................... 10

10            1.   Stored Communications Act....................................................... 13

11            2.   Captain Jordan Has Standing...................................................... 15

12            3.   The Court Should Not Allow The Invasion ................................ 15

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**JOINT STIPULATION**</u>

**I.     <u>INTRODUCTORY STATEMENTS</u>**

    **A.     <u>Plaintiff's Statement</u>**

As the Court knows, this case is about graphic photographs taken by employees of the County of Los Angeles (the "County") at the crash site where Plaintiff Vanessa Bryant tragically lost her husband and daughter, Kobe and Gianna Bryant, on January 26, 2020.  (Declaration of Jennifer L. Bryant ("Bryant Decl."), Ex. A (First Amended Complaint ("FAC")) ¶ 1.)

Brian Jordan was one of those County employees who improperly took photographs of the deceased.  He was posted at the scene of the crash for several hours on January 26, 2020 as an incident safety officer on behalf of the Los Angeles County Fire Department ("Fire Department" or the "Department").  While there, he took multiple photographs directly focused on human remains and then sent the photos to at least one other Department employee, who proceeded to share them over cocktails at a public awards show function.  (Bryant Decl. ¶ 18, Ex. N at 186, Ex. O at 194.)  Following an internal inquiry, the Fire Department concluded that the photos taken and shared by Mr. Jordan served no legitimate business purpose and instead "served to appeal to baser instincts and desires for what amounted to visual gossip" and "could only be categorized as taken for personal gain or purpose."  (*Id.* Ex. N at 187, 188.)

During the Fire Department's inquiry, Mr. Jordan tried to cover up his misconduct.  Rather than report the photos he had in his possession to his chain of command, Mr. Jordan deleted the evidence of his wrongdoing and then made false statements to Department investigators about the role he played in taking and sharing the improper photos.  (*Id.* Ex. N at 186, 188, Ex. O at 195.)  Now, Mr. Jordan is continuing his pattern of evasion by refusing to participate in discovery. Just days ago, he refused to sit for deposition and likewise refused to produce any documents in his possession.  (Bryant Decl. ¶ 17.)  That discovery misconduct will

1  be the subject of a future motion after completion of the Rule 37 meet-and-confer

2  process.

3      By this motion, Mrs. Bryant seeks an order requiring Mr. Jordan to produce

4  cell phone records, including records of his text-messaging activity, for a narrow

5  five-week timeframe—from January 26, 2020 through March 3, 2020.  Mr. Jordan's

6  wireless carrier, AT&T, maintains records of picture and video messaging activity.

7  (Bryant Decl. ¶ 24.)  The requested records will therefore shed light on (1) whether

8  Mr. Jordan was texting pictures or videos while he was snapping graphic photos of

9  body parts at the crash site, (2) whether he texted images in the immediate aftermath

10  of the events of January 26, and (3) to whom he was sending such photo messages.

11  This discovery is squarely relevant to Plaintiff's claims that the County violated her

12  constitutional right to control images of her dead husband and daughter.

13      On August 16 and 17, 2020, Mrs. Bryant served subpoenas on AT&T and T-

14  Mobile requesting Mr. Jordan's text-messaging and data-transfer activity records for

15  an eight-month span.  (*Id.* ¶¶ 4–5.)  Mr. Jordan served objections to both subpoenas

16  and announced his intent to file a motion to quash, asserting that the requested

17  records were protected by his constitutional right to privacy.  (*Id.* ¶¶ 9–10, Exs. I–

18  M.)  To support his position, Mr. Jordan's counsel cited *Carpenter v. United States*,

19  138 S. Ct. 2206 (2018), an inapposite Fourth Amendment case arising from a federal

20  criminal prosecution.  (*Id.* ¶ 11.)  Counsel for Plaintiff, Mr. Jordan, and Defendants

21  met and conferred by videoconference on August 26.  (*Id.* ¶ 12.)  In an effort at

22  compromise, following the meet and confer, Mrs. Bryant served amended

23  subpoenas on the carriers that narrowed the timeframe and clarified that she sought

24  only text-messaging *records*, not the underlying content of the communications.

25  (*Id.* ¶ 13.)  Mr. Jordan nonetheless continued to stand on his objections.  (*Id.* ¶ 14.)

26  Accordingly, Plaintiff asked the carriers to hold responsive records to allow time for

27  the Court to resolve Mr. Jordan's objections.  (*Id.* ¶ 16.)

28

1    As a protective measure, on August 26, 2021, Mrs. Bryant also served a

2  document subpoena directly on Mr. Jordan that requested the same text-messaging

3  records.  (*Id.* ¶ 8.)  Mr. Jordan has not served any objections to that subpoena or

4  produced any responsive records.  (*Id.* ¶ 8.)

5    Ten current County employees who took, received, or shared photos from the

6  crash site have consented to the production of their personal cell phone records,

7  conceding the relevance of such records.  (*Id.* ¶ 15.)  Mr. Jordan is the only known

8  individual who took photos of human remains at the crash site who refuses to

9  produce his personal cell phone records.  (*Id.*)

10    Mrs. Bryant respectfully requests that the Court compel the production of Mr.

11  Jordan's cell phone records showing his call and text-messaging activity between

12  January 26 and March 3, 2020.

13    **B.    Brian Jordan's Statement**

14    Plaintiff VANESSA BRYANT ("Plaintiff") has caused a subpoena to be

15  issued for both the county and personal cell phone records of various individual who

16  were first responder county employees who appeared at the accident scene at the

17  tragic Kobe Bryant helicopter crash. While third-party witness Captain Brian

18  Jordan, the Chief Safety Officer for the Los Angeles County Fire Department, has

19  no objection to his county cell phone records being inspected, he does object and

20  hereby moves to quash this subpoena to the extent that it lists his personal cell

21  phone number amongst the cell phone numbers on which Plaintiff seeks to discover

22  records from two phone carriers, T-Mobile and AT&T.

23    On August 31, 2021 Mrs. Bryant sought yet another subpoena, this time

24  referring to it as an Amended Subpoena requiring Mr. Jordan to produce cell phone

25  records, including records of his text-messaging activity, from January 26, 2020

26  through March 3, 2020. Accordingly, Captain Jordan objected to this amended

27  subpoena.

28

1    Under the plain language of the landmark holding in *Carpenter v. United*
2    *States*, (*138 S. Ct. 2206,(2018)*), and as expressed wholly and concisely by Chief
3    Justice John Roberts, personal cell phone records do carry with them an expectation
4    of privacy and should not be produced absent an appropriate showing of good cause,
5    and preferably in response to a search warrant. In the instant case there has been no
6    search warrant, and Captain Jordan received no notice or opportunity to be heard or
7    due process with regards to the issuance of this subpoena. Because this subpoena
8    infringes on his right of privacy as found in the Fourth Amendment to the United
9    States Constitution, Captain Jordan seeks to quash this subpoena to the extent it
10   seeks his personal cell phone records or, in the alternative, respectfully requests this
11   court issue a Protective Order as the phone number listed in the subpoena that
12   matches his personal cell phone records.

13   Plaintiff contends that Brian Jordan was a County employee who improperly
14   took photographs of the deceased.  To clarify, Captain Jordan was at the scene of the
15   accident, serving as the Safety Officer tasked with surveying the scene to ensure the
16   safety of the first responders present.  The erroneous narrative that Plaintiff has
17   curated about Captain Jordan taking pictures for the sole purpose of circulating these
18   pictures is egregious.  In Plaintiff's own Exhibits herein referenced as Exhibit O, it
19   is clear Captain Jordan wanted nothing to do with the pictures and the that he was
20   advised by a superior up in the chain of command to take pictures for intel purposes.
21   In Exhibit O he relays just that.

22   Remarkably, Plaintiff accurately cites that Captain Jordan was posted at the
23   scene of the crash for several hours on January 26, 2020 as an incident safety officer
24   on behalf of the Los Angeles County Fire Department ("Fire Department" or the
25   "Department").  Conversely Plaintiff twists the facts to once again fit their narrative
26   citing that Captain Jordan took multiple photographs directly focused on human
27   remains and then sent the photos to at least one other Department employee, who
28   proceeded to share them over cocktails at a public awards show function.  (Bryant

Decl. ¶ 18, Ex. N at 186, Ex. O at 194.)  Simply put this is an inaccurate depiction of the report.  The report corroborates the fact that Captain Jordan took photographs of the crash and the nature of the crash but does not recall what exactly what images were captured; however, he did state to the best of his recollection that graphic images as well as Kobe Bryant's remains, were probably in the photographs that he took. He did not at any point provide false information.  Likewise, it is vital to note that this report was merely an investigation.  There is no concrete manner to determine the accuracy of the statements made in this report, as they are all hearsay.

Yet again, Plaintiff emits unsubstantiated allegations that Mr. Jordan tried to cover up his misconduct.  Mr. Jordan deleted pictures he had taken after he had heard someone command to delete all pictures.  In Plaintiff's own Complaint it is stated that County Employees were told to delete pictures of the crash site.  Captain Jordan never made false statements and in fact never partook in any wrongdoing. Captain Jordan was following orders and could not even recall who commanded him to take pictures of the scene after the horrific things he had to observe that day while he was on the job.

With reference to Exhibit N, Plaintiff declares that following an internal inquiry, the Fire Department concluded that the photos taken and shared by Mr. Jordan served no legitimate business purpose and instead "served to appeal to baser instincts and desires for what amounted to visual gossip." However, a closer look at the letter will reveal that the Department took this opportunity to berate Captain Jordan and pin the blame on him after he was following instructions, which they do not deny. Exhibit N is overflowing with inconsistencies, the letter accuses Captain Jordan of not honoring the Department's Code of Ethics, which expects that you will "never let ... personal feelings deter [you] in the performance of [your] duties." This language suggests that Captain Jordan should not have allowed his personal feelings to deter his performance, but that is the ideology which caused his discipline to

1  begin with.  If he allowed his personal interests to interfere with his job then he
2  would not have taken pictures as he was instructed to do.

3       Plaintiff oddly brings to light that ten current County employees who took,
4  received, or shared photos from the crash site have consented to the production of
5  their personal cell phone records, conceding the relevance of such records.  (*Id.*
6  ¶ 15.)  Mr. Jordan should not be subject to intrusion of his personal cell phone
7  records purely because everyone else involved in the lawsuit blindly agreed to
8  provide such records.  Should the law point fingers and make presumptions upon
9  those individuals who proclaim they will not quietly recant?  It appears Plaintiff is
10  yet again trying to utilize Mr. Jordan as a scapegoat and direct their shortcomings on
11  the fact that Mr. Jordan will not provide the information requested.  Lastly, Plaintiff
12  is no longer a current County employee, rather, due to this incident his mental health
13  caused him to retire early therefore he has no knowledge of what other county
14  employees are conceding to.

15  **II.**    <u>**ISSUES IN DISPUTE**</u>

16       Mrs. Bryant seeks compliance with requests for cell phone records served on
17  Mr. Jordan and his wireless carriers.  The specific language of the requests at issue
18  are as follows:

19       <u>**Subpoena to Brian Jordan**</u>**:**  All DOCUMENTS, including but not
20       limited to records, invoices, and bills generated or maintained by the
21       wireless carrier for YOUR MOBILE DEVICE(S), showing phone call
22       and text-messaging activity for YOUR MOBILE DEVICE(S) between
23       January 26 and March 3, 2020.[1]

24       <u>**Subpoenas to AT&T and T-Mobile**</u>**:**  All records and data, in
25       whatever form, indicating, showing, or reflecting text-messaging or

---

[1] *See* Bryant Decl. Ex. G at 141.

data-transfer activity by, on, or via any MOBILE DEVICE(S) or
COMPUTING DEVICE(S) associated with [Brian Jordan's personal]
cellular/wireless telephone numbers listed in Figure One below,[2]
between January 26, 2020 and March 3, 2020, excluding the content of
any calls or messages.  For the avoidance of doubt, this request
includes, but is not limited to, all logs, cellular detail records, call or
activity histories, records, statements, invoices, and bills indicating,
showing, or reflecting any transmission or SHARING, whether by text
messages, electronic mail, Air Drop, or any other means, of PHOTO(S)
to or from any MOBILE DEVICE(S) or COMPUTING DEVICE(S)
associated with [Brian Jordan's] cellular/wireless telephone numbers
listed in Figure One below, and the cellular/wireless telephone
number(s) to or from which PHOTO(S) were transmitted or SHARED,
between January 26, 2020 and March 3, 2020.  For further avoidance of
doubt, this request does not include the content of any calls, messages,
or PHOTO(S).[3]

## A.    Plaintiff's Contentions

As the party resisting discovery, Mr. Jordan bears the burden to show the
requested discovery is not warranted, and he also has the burden of "clarifying,
explaining, and supporting [his] objections."  *Cable & Comput. Tech., Inc. v.
Lockheed Saunders, Inc.*, 175 F.R.D. 646, 650 (C.D. Cal. 1997).  He has not come
close to carrying his burden.

To begin with, Mr. Jordan has waived any objections to his subpoena.
Because he has the right to obtain the requested records from his cell phone carrier,

---

[2] While Mr. Jordan's personal cell phone number is specified in the subpoenas, we
omit it here to preserve his privacy.

[3] *See* Bryant Decl. Ex. E at 108–09, Ex. F at 125–26.

Mr. Jordan has an obligation to produce such records in response to a subpoena served on him.  *See, e.g.*, *Crowther v. City of Fontana*, 2018 WL 6016289, at \*2 (C.D. Cal. Sept. 10, 2018) ("Because defendants, as the subscribers, may still have the legal right to obtain . . . non-content information from their cell phone providers, they must first make a reasonable attempt to request it."); *Tater-Alexander v. Amerjan*, 2010 WL 4687735, at \*3 (E.D. Cal. Nov. 10, 2010) (compelling production of cell phone records).  However, Mr. Jordan did not serve any written objections, thereby waiving any objections he could have asserted.  *See, e.g.*, *McCoy v. Sw. Airlines Co.*, 211 F.R.D. 381, 385 (C.D. Cal. Nov. 7, 2002) ("[A] nonparty's failure to timely make objections to a Rule 45 subpoena duces tecum generally requires the court to find that any objection, including attorney-client privilege, has been waived.").

Even if Mr. Jordan had preserved his objections, they would lack merit.  Mr. Jordan has not disputed that his text-messaging activity on January 26, 2020 and in the following days and weeks is relevant and reasonably calculated to lead to the discovery of admissible evidence.  Nor could he.  Such text-messaging activity is reasonably likely to show the extent to which Mr. Jordan transferred the photos at issue in this case—photos that were indisputably in his possession.  Because the records will tend to show Mr. Jordan's dissemination of the graphic photos of human remains he took on January 26, and no alternative source of such information exists in the wake of his attempt to cover his tracks, the cell phone records are critical evidence in this case.

Unable to dispute the relevance, Mr. Jordan has objected to the production of his cell phone records solely on privacy grounds.  His conclusory privacy objection is meritless.  The requests at issue do not seek sensitive personal information.  The requested records will show account numbers, dates, times, and telephone numbers.  Mr. Jordan's privacy interest in a mere log of call and text-messaging activity is marginal, at best.  He has yet to articulate any serious privacy interest in such

records.  There is none.  *See, e.g.*, *Kamalu v. Walmart Stores, Inc.*, 2013 WL

4403903, at *4 (E.D. Cal. Aug. 15, 2013) (finding plaintiff did not have a protected

privacy interest or reasonable expectation of privacy in records of incoming and

outgoing calls, as such information would not "cause unjustified embarrassment and

indignity," and the records are "derived from information voluntarily conveyed to

the cellular phone provider"); *Mintz v. Mark Bartelstein & Assoc., Inc.*, 885 F. Supp.

2d 987, 999–1001 (C.D. Cal. 2012) (concluding that disclosure of telephone

numbers, "as well as the date, time, and duration of calls does not represent a

significant intrusion of Plaintiff's privacy"); *Shaw v.Experian Info. Sols., Inc.*, 306

F.R.D. 293, 301 (S.D. Cal. 2015) ("[T]he disclosure of names, addresses, and

telephone numbers is commonly allowed, because such disclosure 'does not involve

revelation of personal secrets, intimate activities, or similar private information,

which have been found to be serious invasions of privacy.'" (citation omitted)).

Even assuming Mr. Jordan has any legitimate privacy interest in his cell

phone records, the right of privacy is not absolute.  *See Shaw*, 306 F.R.D. at 301.

Where a party has a need for information in litigation, the privacy right yields to the

competing right to discovery.  *See id.* (compelling production of "highly relevant"

information over customers' privacy objections).  Because here the "request is

narrowly tailored and there is no other means for the Plaintiff to obtain the

information," Mrs. Bryant's "need for the cell phone records outweighs [Mr.

Jordan's] privacy objections."  *Murray v. Carlsbad*, 2010 WL 2612698, at *2 (S.D.

Cal. June 25, 2010) (compelling production of police officer's cell phone records).

Moreover, as courts have recognized in routinely compelling the production

of cell phone records, any conceivable privacy interest is adequately protected by

the stipulated protective order that is in place (*see* Bryant Decl. Ex. B).  *See, e.g.*,

*Quintana v. Claire's Boutiques, Inc.*, 2014 WL 3371847, at *3 (N.D. Cal. July 9,

2014) (compelling production of cell phone records because "[plaintiff's] privacy

objections to the production of the discovery [were] addressed by the protective

order in place in th[e] case"); *Mintz*, 885 F. Supp. 2d at 999–1001 (C.D. Cal. 2012) (same); *Crews v. Domino's Pizza Corp.*, 2009 WL 10672572, at *4 (C.D. Cal. July 31, 2009) (same).  Mr. Jordan is free to designate his records as confidential pursuant to the protective order.  That protection is more than sufficient to protect his privacy.

Mr. Jordan may assert that he told Department investigators he used a work phone to take the graphic photos, but Mr. Jordan has shown that he cannot be taken at his word.  He told those very same investigators that he did not send the graphic photos to anyone, which has proven to be false.  (*See* Bryant Decl. Ex. O at 195.) Moreover, discovery in this case has shown that County employees routinely use personal devices to take photos at work, and that countless County employees were using personal devices at the crash site.  (*Id.* ¶¶ 22–23.)  Mrs. Bryant therefore has good reason to seek records of Mr. Jordan's personal phone activity during the relevant timeframe.

After grievously intruding on Mrs. Bryant's privacy by taking graphic photos of her deceased loved ones, Mr. Jordan cannot now use a putative privacy interest in text-activity logs to deprive Mrs. Bryant of information that is highly relevant to her claims and reasonably likely to show the extent of Mr. Jordan's wrongdoing.  Mrs. Bryant respectfully requests that the Court overrule Mr. Jordan's privacy objection and compel the production of his cell phone records for the narrow requested time period.

## B.   Brian Jordan's Contentions

Federal Rule of Civil Procedure 45(d)(3) governs the quashing or modifying of subpoenas. The Court must quash or modify a subpoena that "(i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(i)-(iv).

Captain Jordan assets that the Plaintiff's requested discovery is not warranted. Under the California Constitution, all people have a constitutionally protected right to privacy. See <u>Cal. Const. Art. I, § 1</u> ("All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."). To prevent a constitutionally protected invasion of privacy, a witness must establish: "(1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy." (*TBG Ins. Servs. Corp. v. Superior Court 96 Cal.App.4th 443, 449 (2002)*).

Furthermore, under California law, a "reasonable expectation of privacy" is an objective entitlement founded on broadly based and widely accepted community norms, and the presence or absence of opportunities to consent voluntarily to activities impacting privacy interests obviously affects the expectations of the participant. <u>Cal. Const. Art. 1, § 1</u>. Here, Captain Jordan's cell phone records are of issue, and he claims a privacy interest in this device that he stores his most personal information. Particularly, the recent decisions in Mintz, Carpenter, and Riley are outlined herein to highlight the Court's policy rationale in previous cases concerning the privacy interest in one's cell phone records.

California courts have treated the right to privacy as a privilege in the discovery context, and have determined it is a right only subject to invasion under prescribed circumstances. (See, e.g., <u>*Hill v. National Collegiate Athletic Assn., 7 Cal.4th 1, 37, (1994)*</u>). Thus, the privilege is subject to balancing the needs of the litigation with the sensitivity of the information or documents sought. (<u>*Pioneer Electronics (USA), Inc. v. Superior Court, 40 Cal.4th 360, 370-75 (2007)*</u>.

Here, after balancing the needs of the litigation with the sensitivity of the information sought, and in light of the entry of the stipulated protective order in this action the Court should find that disclosure of the requested information is

1   inappropriate. Although, the Supreme Court's decision in *Riley v. California, (573*
2   *U.S. 373 (2014))* has no bearing on this matter, it is employed to outline the Court's
3   policy rationale with regards to privacy and modern day cell phones. Riley
4   established that personal electronic devises, due partially to their ability to maintain
5   voluminous amounts of personal data, deserve greater Fourth Amendment
6   protection than other personal possessions. In making its findings the Court noted
7   that electronic devises carry immense storage capacity. The capability to maintain
8   such vast information allows cell phones to store and transport "millions of pages of
9   text, thousands of pictures, or hundreds of videos." *(Id.* 374). The Court also
10  identified several qualitative differences between the digital information stored on
11  personal electronic devices and other physical objects people might carry. Wherein
12  they found, "A phone not only contains in digital form many sensitive records
13  previously found in the home, it also contains a broad array of private information
14  never found in a home in any form," such as Internet search and browsing history
15  and location information. (*Id*. at 397).  Significantly the Court found that
16  "Modern cell phones are not just another technological convenience," but "hold for
17  many Americans 'the privacies of life.' " (*Id*. at 374.) Further, The Court held that
18  these privacies demand special Fourth Amendment protection, even in the context of
19  a search incident to arrest, and the fact that technology now permits us the privilege
20  of carrying around such information storage centers does not make the "information
21  any less worthy of the protection for which the Founders fought." (*Id*. at 374.)

22      Thus, in the present case Jordan claims (1) a legally protected privacy interest
23  in his cell phone records; (2) one that has a reasonable expectation of privacy; and
24  (3) conduct by Plaintiff constituting a serious invasion of this privacy
25  interest. Applying the balancing test the court should determine the needs of the
26  litigation do not outweigh the sensitivity of the information sought. The information
27  contained in Jordan's cell phone deserves the utmost protection due to its ability to
28  hold for Jordan, like many Americans, "the privacies of [his] life." Were the court to

1   turn a blind eye and allow Plaintiff to gain access to this information, this would
2   have long term effects on Americans across the nation, particularly given the
3   publicity surrounding this case, irrespective of whether the records are released to
4   the public. Mrs. Bryant seeks an order requiring Mr. Jordan to produce cell phone
5   records, including records of his text-messaging activity, for a five-week
6   timeframe—from January 26, 2020 through March 3, 2020.  Mr. Jordan's wireless
7   carrier, AT&T, maintains records of picture and video messaging activity. (Bryant
8   Decl. ¶ 24.)  The mere notion that an individual can subpoena the private cell phone
9   records of another non-party individual to a lawsuit, would have perilous effects on
10   Americans' right to privacy. Plaintiff's objective in obtaining information from
11   these third parties can be sought through other less invasive means.

### 1.    Stored Communications Act

13      The Stored Communications Act ("SCA") generally prohibits "providers'
14   communication services from divulging private communications to certain entities
15   and/or individuals."  (*Quon v. Arch Wireless Operating Co., Inc.*, 529 F.3d 892, 900
16   (9th Cir.2008).) The SCA provides different prohibitions depending on whether the
17   communications provider is classified as an "electronic communication service" or a
18   "remote computing service." (18 U.S.C. § 2702(a)). The Ninth Circuit has held that
19   wireless communications providers such as AT & T are properly classified as an
20   "electronic communication service." Quon, 529 F.3d at 901 (holding that text
21   messaging pager services provided by Arch Wireless constitute an "electronic
22   communication service" and not a "remote computing service"); ("Existing
23   telephone companies and electronic mail companies are providers of electronic
24   communications services.")).

25      Nevertheless, an electronic communication service provider may release
26   subscriber information that is not considered "content" under 18 U.S.C. §
27   2702(c)(6). The "contents" of a communication are defined as "information
28   concerning the substance, purport, or meaning of that communication."

§§2711(1) and 2510(8). A provider may also release communications if the
subscriber gives consent to the release of such communications.

In *Mintz*, Plaintiff moved for an order to quash the subpoena served on AT&T
Mobility LLC by the Defendant seeking the Plaintiff's cell phone records. Plaintiff
primarily argued that the records are irrelevant to the case and seek information that
would intrude on the Plaintiff's privacy rights. In turn, the Defendant argued that the
Plaintiff lacks standing to challenge the subpoena and the information sought was
relevant to the Defendant's defense. First, the Court held that the Plaintiff had
standing to challenge the subpoena even though Plaintiff was not the person to
whom the subpoena was served nor was he in possession or control of the requested
information, Plaintiff ultimately had a sufficient personal interest in the information
to have standing to challenge the subpoena.

In *Mintz* the Court established that the Court must consider all the
circumstances to determine the extent of Plaintiff's expectation of privacy in the AT
& T account. They went on to state that, ("[O]ur decision about the reasonableness
of [the employee's] claimed expectation of privacy must take into account any
accepted community norms, advance notice to [the employee] about [the
employer's] policy statement, and whether [the employee] had the opportunity to
consent to or reject the very thing that constitutes the invasion." Considering these
facts the Court had only a limited expectation of privacy in the AT&T account,
given the advanced policy notice.

Our case is distinguishable from *Mintz* because in *Mintz* the employer was
paying for the telephone bill in question, and the employer had previously provided
a clear statement of this policy to its employee. Therefore, the employer was allotted
a "legally protected privacy interest in the AT&T account" that was limited under
the circumstances where the plaintiff's employer had been paying for the phone.
(*Mintz v. Mark Bartelstein & Assocs., Inc.* 885 F. Supp. 2d 987, 999 (2012)). In the
present case that is, T-Mobile and AT&T have been subpoenaed for various phone

numbers which include the county cell phone records of third-party witness Brian Jordan. Moreover, Vanessa Bryant is a private individual, she has no rights in the AT&T and T-Mobile records as she is in no way interlinked to the individuals involved in the subpoena. Also, taking into consideration the language in *Mintz,* the Court will look to  account any accepted community norms, advance notice, and whether [the individual] had the opportunity to consent to or reject the very thing that constitutes the invasion.  Case law has demonstrated that the community standards pertaining to the privacy of cell phone records should be highly private Captain Jordan does not object to his county cell phone records but rather seeks to object to the subpoena that targets his personal records as Plaintiff has no right to obtain these records under the current case law.

## 2.    Captain Jordan Has Standing

Even though the subpoena is directed to disclosure of Jordan's personal records, At&T cannot consent for Jordan, therefore we conclude that Jordan has standing on the facts presented to challenge the subpoena. Such standing exists to the extent that Jordan asserts his personal right or privilege concerning any information contained in the text messages, cellular detail records, call or activity histories, records, statements, invoices, and bills indicating showing or reflecting any transmission or sharing between Jordan and the cell phone numbers listed in the subpoena.

## 3.    The Court Should Not Allow The Invasion

Thus, AT & T must comply with the rules applicable to electronic communication services and "shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service," (18 U.S.C. § 2702(a)(1)), unless one of the specifically enumerated exceptions in 18 U.S.C. § 2702(b) apply. 18 U.S.C. § 2702(b) contains a number of exceptions which do not apply here, such as the exceptions for law enforcement purposes. 18 U.S.C. § 2702(b)(6)-(8). The only relevant exceptions include 18 U.S.C. § 2702(b)(1), which

permits the disclosure of the contents of a communication "to an addressee or intended recipient of such communication or an agent of such addressee or intended recipient." Additionally, 18 U.S.C. § 2702(b)(3) permits the disclosure of the contents of a communication "with the lawful consent of the originator or an addressee or intended recipient of such communication." Mr. Jordan has not given his consent for this information for the reasons explained below, the personal telephone records should not be provided.

In *Carpenter,* the United States Supreme Court reversed a Court of Appeals decision granting access to the personal cell phone records in question. The *Carpenter* case involved Timothy Carpenter, an accused leader of an armed robbery gang in the Detroit area who was convicted after the jury was told that his movements were tracked for 127 days using data from cell towers. The tracking data showed that he was near the scene of several of the robberies.

Under federal law known as the Stored Communications Act, investigators were able to obtain Carpenters personal cell phone records by going before a Judge and showing they had facts demonstrating the cell phone records were "relevant and material to the ongoing criminal investigation." They were not required to obtain a search warrant based on "probable cause" to believe that a particular individual was involved in a particular crime-- a tougher standard to meet.

In a landmark holding, The Supreme Court disagreed and reversed the decision holding that Carpenter had a reasonable expectation that his movements around Los Angeles County were private such that the tracking data was a search and was unreasonable without a warrant. Chief Justice Roberts, who wrote the opinion, noted that without such a rule, the government could easily amass too much information. Roberts continued by holding that most people "compulsively carry cell phones with them all the time. A cell phone faithfully follows it's owner beyond public thoroughfare and into private residences, doctor offices, political headquarters, and other potentially revealing locales." If the government were

allowed to feely obtain the data without a warrant "Only a few without cell phones could escape this tireless and absolute surveillance."

Applied to our case counsel for Plaintiff Vanessa Bryant, a private individual, without a search warrant, now attempts to subpoena the personal cell phone records of third-party witness Captain Brian Jordan, who at the time of the Kobe Bryant helicopter crash was the Chief Safety Officer for the Los Angeles County Fire Department. While Jordan does not in this motion challenge the right of Ms. Bryant to access his county cell phone records which are also requested in this subpoena, he does through this motion challenge the discovery of his personal cell phone records without a warrant or other order of the Court.

Captain Jordan's personal cell phone records, in addition to including all the phone numbers of all persons he called and all persons who called him for a period of time, it would also potentially reveal other personal information which is protected by the Fourth Amendment to the United States Constitution. In accordance with the US Supreme Court holding in *Carpenter*, third-party witness Brian Jordan respectfully requests this Court quash this Subpoena as to his personal cell phone number and/or issue a Protective Order that the Subpoena may be complied with as to the other numbers requested by the Subpoena, but that a Protective Order shall issue as to the personal cell phone records of Captain Brian Jordan.

The Supreme Court's rationale for refusing to apply the search incident to arrest exception to data stored on cell phones in *Riley*, strongly suggests that the Court should quash this Subpoena and protect Captain Jordan's privacy interests. Although *Riley* is a criminal matter the Court's commitment to prohibit the intrusive invasion of searching an item that keeps a digital record of nearly every aspect of our lives displays the policy rationale the Court will adhere to. Cell phones are used by society as a whole daily to store private information, which is why Courts have urged the need to obtain a warrant before searching them. Although the facts from *Riley* are distinguishable from the case at bar these cases ultimately require the

1  application of similar laws.  Absent special circumstances and pursuant to the

2  Fourth Amendment, the government may not intrude on an individual's privacy

3  interests in seeking cell phone records without the issuance of a warrant. Therefore,

4  as clearly indicated in *Riley*, the Court should quash the request for Captain Brian

5  Jordan's cell phone records due to the device's vast storage capacity and ability to

6  digitally withhold many sensitive records previously found in the home.

7      Plaintiff continues to assert that Mr. Jordan has shown that he cannot be taken

8  at his word with reference to the fact that he took photographs based on the orders

9  he was provided by his superiors.  Plaintiff says with certainty and cites to the report

10  in Exhibit O that Captain Jordan's remarks regarding the sending of graphic photos

11  have proven to be false.  (*See* Bryant Decl. Ex. O at 195.)  Yet again, Plaintiff

12  distorts the truth.  Nothing has been "proven" by this internal investigation.  The

13  allegations made in the report contain a myriad of hearsay statements.  The

14  investigator conducting the report purely stated that he did not find some of Captain

15  Jordan's denials to be credible, due to the slew of other investigations he had

16  conducted.  It might be relevant to consider the fact that this investigation was

17  highly controversial and contained many moving parts with individuals whom were

18  fearful of the outcome of the investigation and more notably the impact the

19  investigation would have on their careers.  To suggest that merely because someone

20  does not find your depiction of the events to be credible automatically implies you

21  have lied or your story has been proven false, is absolute blasphemy.

22      Moreover, Plaintiff claims discovery in this case has shown that County

23  employees routinely use personal devices to take photos at work, and that countless

24  County employees were using personal devices at the crash site.  Should this

25  without qualification implicate the Public Officer at the site?  Mrs. Bryant does not

26  have good reason to seek Mr. Jordan's personal phone activity during the relevant

27  timeframe irrespective of the conduct of other county employees.

28

It is with great impertinence that Plaintiff suggests that Mr. Jordan grievously intruded on Mrs. Bryant's privacy by taking graphic photos of her deceased loved ones.  When Mr. Jordan was simply obeying orders.  Captain Jordan, nor any man, could not have wished to see the carnage that he saw on January 26, 2020.  A sight which he will remember and carry with him for the rest of his life.  Time and time again Captain Jordan has sought to put these events past him but instead Plaintiff has pursued vengeance against this third party witness, while the County has used Mr. Jordan, a retired Captain, as a scape goal for their shortcomings.  Captain Jordan feels empathy for the pain Mrs. Bryant and her family were subjected to and the notion that one day photographs will come to light that might affect her family, but Captain Jordan should not have to suffer an invasion of privacy to rectify a potentially theoretical wrong that he was not the cause of.

Thereby, Mr. Jordan is not using a putative privacy interest in text-activity logs to deprive Mrs. Bryant of information that is highly relevant to her claims. Rather Mr. Jordan is attempting to safeguard one of the many protections that should be afforded to him as a citizen.  Mr. Jordan respectfully requests that the Court overrule Mrs. Bryant's requests to compel the production of his cell phone records regardless of how narrow the scope, due to his lack of wrongdoing.

1

2 DATED:  October 14, 2021          MUNGER, TOLLES & OLSON LLP

3

4

5                                  By: _____*/s/ Luis Li*_____
                                        LUIS LI
6                                  Attorneys for Plaintiff Vanessa Bryant

7

8 DATED:  October 15, 2021          HANEY LAW GROUP

9

10

11                                 By: _____*/s/ Steven H. Haney*_____
                                        STEVEN H. HANEY
12                                 Attorneys for Brian Jordan

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **ATTESTATION CLAUSE**

2          I, Luis Li, am the ECF User whose ID and password are being used to file this

3    NOTICE OF MOTION AND JOINT STIPULATION RE: PLAINTIFF'S MOTION

4    TO COMPEL COMPLIANCE WITH SUBPOENA FOR CELL PHONE

5    RECORDS.  In compliance with L.R. 5-4.3.4, I hereby attest that all other

6    signatories listed, and on whose behalf the filing is submitted, concur in the filing's

7    content and have authorized the filing.

8

9    Dated:  October 15, 2021                                   */s/ Luis Li*

10                                                                          Luis Li

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28