JONATHAN C. McCAVERTY (State Bar No. 210922)
Principal Deputy County Counsel
jmccaverty@counsel.lacounty.gov
OFFICE OF COUNTY COUNSEL
General Litigation Division
500 West Temple Street, Suite 468
Los Angeles, California 90012
Telephone:  (213) 974-1828
Facsimile:   (213) 626-7446

Attorneys for Defendant
LOS ANGELES COUNTY SHERIFF'S DEPARTMENT

[*Additional counsel continued on next page*]

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| VANESSA BRYANT, et al., <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF LOS ANGELES, et al., <br><br> Defendants. | **CASE NO. 2:20-cv-09582-JFW-E** <br><br> **DISCOVERY MATTER** <br><br> **JOINT STIPULATION REGARDING DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND PLAINTIFFS' MOTION TO COMPEL THE DEPOSITIONS OF LOS ANGELES COUNTY SHERIFF ALEX VILLANUEVA AND LOS ANGELES COUNTY FIRE CHIEF DARYL OSBY** <br><br> Date:    October 29, 2021 <br> Time:    9:30 a.m. <br> Crtrm.:  750 |

537199.5

Case No. 2:20-cv-09582-JFW-E

STIPULATION REGARDING DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND PLAINTIFFS'
MOTION TO COMPEL DEPOSITIONS OF SHERIFF VILLANUEVA AND CHIEF OSBY

[*Additional counsel, continued from previous page*]

LOUIS R. MILLER (State Bar No. 54141)
smiller@millerbarondess.com
MIRA HASHMALL (State Bar No. 216842)
mhashmall@millerbarondess.com
JASON H. TOKORO (State Bar No. 252345)
jtokoro@millerbarondess.com
CASEY B. SYPEK (State Bar No. 291214)
csypek@millerbarondess.com
EMILY A. RODRIGUEZ-SANCHIRICO (State Bar No. 311294)
esanchirico@millerbarondess.com
MILLER BARONDESS, LLP
1999 Avenue of the Stars, Suite 1000
Los Angeles, California 90067
Telephone:   (310) 552-4400
Facsimile:    (310) 552-8400

Attorneys for Defendants
COUNTY OF LOS ANGELES, LOS ANGELES COUNTY FIRE DEPARTMENT,
JOEY CRUZ, RAFAEL MEJIA, MICHAEL RUSSELL, RAUL VERSALES,
ARLIN KAHAN, and TONY IMBRENDA

LUIS LI (State Bar No. 156081)
luis.li@mto.com
CRAIG JENNINGS LAVOIE (State Bar No. 293079)
craig.lavoie@mto.com
JENNIFER L. BRYANT (State Bar No. 293371)
jennifer.bryant@mto.com
MARI T. SAIGAL (State Bar No. 318556)
mari.saigal@mto.com
BRANDON E. MARTINEZ (State Bar No. 318749)
brandon.martinez@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:   (213) 683-9100
Facsimile:    (213) 687-3702

Attorneys for Plaintiff
VANESSA BRYANT

STIPULATION REGARDING DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND PLAINTIFFS'
MOTION TO COMPEL DEPOSITIONS OF SHERIFF VILLANUEVA AND CHIEF OSBY

1  JEROME M. JACKSON (State Bar No. 64238)
   jmjlaw@aol.com
2  JEROME M. JACKSON LAW OFFICES
   880 Apollo Street, Suite 238
3  El Segundo, California 90245
   Telephone:   (310) 726-4199
4  Facsimile:    (310) 414-0486

5
   Attorneys for Plaintiffs
6  CHRISTOPHER L. CHESTER; R.C.; and H.C.

7

8  BRIAN J. PANISH (State Bar No. 116060)
   panish@psblaw.com
9  KEVIN R. BOYLE (State Bar No. 192718)
   boyle@psblaw.com
10 SPENCER R. LUCAS (State Bar No. 232498)
   lucas@psblaw.com
11 MARGUERITE S. SANVICTORES (State Bar No. 299452)
   sanvictores@psblaw.com
12 PANISH SHEA & BOYLE LLP
   11111 Santa Monica Boulevard, Suite 700
13 Los Angeles, California 90025
   Telephone:   (310) 477-1700
14 Facsimile:    (310) 477-1699

15

16 Attorneys for Plaintiffs
   MATTHEW MAUSER; T.M.; P.M.; I.M.; ALEXIS ALTOBELLI and
17 JOHN JAMES ALTOBELLI

18

19

20

21

22

23

24

25

26

27

28

STIPULATION REGARDING DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND PLAINTIFFS'
MOTION TO COMPEL DEPOSITIONS OF SHERIFF VILLANUEVA AND CHIEF OSBY

**TO ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 29, 2021, at 9:30 a.m., or as soon thereafter as this matter may be heard in Courtroom 750 of the above-captioned Court, located at 255 East Temple Street, Los Angeles, California 90012, Defendants will and hereby do move for a protective order barring Plaintiffs from taking the depositions of Sheriff Alex Villanueva, the head of the Los Angeles County Sheriff's Department, and Fire Chief Daryl Osby, the head of the Los Angeles County Fire Department. Plaintiffs concurrently move for an order compelling Defendants to produce the same two witnesses for deposition.

In accordance with Local Rule 37-1, the parties met and conferred in good faith before filing this motion. (Declaration of Emily Rodriguez-Sanchirico ¶¶ 17-24 & Ex. E.) The parties respectfully submit this joint stipulation setting forth their contentions, along with the supporting declarations of Emily Rodriguez-Sanchirico and Craig Jennings Lavoie. The parties have agreed to waive their right to submit supplemental briefs in the interest of having the motions resolved expeditiously.

DATED: October 15, 2021          OFFICE OF COUNTY COUNSEL


By: _____/s/ Jonathan C. McCaverty_____
JONATHAN C. McCAVERTY
Attorneys for Defendant
LOS ANGELES COUNTY SHERIFF'S
DEPARTMENT

1   DATED:  October 15, 2021          MILLER BARONDESS, LLP

2

3

4                                     By:    /s/ Jason H. Tokoro
                                            JASON H. TOKORO
5                                           Attorneys for Defendants
                                            COUNTY OF LOS ANGELES, LOS
6                                           ANGELES COUNTY FIRE
                                            DEPARTMENT, JOEY CRUZ, RAFAEL
7                                           MEJIA, MICHAEL RUSSELL, RAUL
                                            VERSALES, ARLIN KAHAN, and
8                                           TONY IMBRENDA
9

10

11  DATED:  October 15, 2021          MUNGER, TOLLES & OLSON LLP

12

13

14                                    By:    /s/ Luis Li
                                            LUIS LI
15                                          Attorneys for Plaintiff
                                            VANESSA BRYANT
16

17

18  DATED:  October 15, 2021          JEROME M. JACKSON LAW OFFICES

19

20

21                                    By:    /s/ Jerome M. Jackson
                                            JEROME M. JACKSON
22                                          Attorneys for Plaintiffs
                                            CHRISTOPHER L. CHESTER; R.C.; and
23                                          H.C.

24

25

26

27

28

1   DATED:  October 15, 2021          PANISH SHEA & BOYLE LLP

2

3

4                                     By: _____/s/ Kevin R. Boyle_____
                                          KEVIN R. BOYLE
5                                         Attorneys for Plaintiffs
6                                         MATTHEW MAUSER; T.M.; P.M.;
                                          I.M.; ALEXIS ALTOBELLI and JOHN
7                                         JAMES ALTOBELLI

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

Page

I.      INTRODUCTION ................................................................................. 1

    A.      Defendants' Statement .............................................................. 1

    B.      Plaintiffs' Statement ................................................................ 3

II.     BACKGROUND .................................................................................. 6

    A.      Defendants' Statement .............................................................. 6

        1.      Overview of the Cases ................................................... 6

        2.      Overview of Discovery ................................................. 7

    B.      Plaintiff's Statement ............................................................... 10

        1.      Overview of the Cases ................................................. 10

        2.      Overview of Discovery ............................................... 11

III.    MEET AND CONFER EFFORTS ....................................................... 12

    A.      Defendants' Statement ............................................................ 12

    B.      Plaintiffs' Statement .............................................................. 13

IV.     ARGUMENT ..................................................................................... 14

    A.      Defendants' Statement ............................................................ 14

        1.      Legal Standard ............................................................ 14

        2.      Sheriff Villanueva and Fire Chief Osby Are "Apex" Officials ...................................................................... 15

        3.      "Extraordinary Circumstances" Are Not Present Here ............. 16

            (a)      Sheriff Villanueva ............................................ 16

                (i)      The Sheriff's Directives ......................... 17

                (ii)     The Sheriff's Public Comments .............. 18

                (iii)    Communications between the Sheriff and Plaintiffs ......................................... 18

                (iv)     Communications between the Sheriff and Fire Chief Osby ................................ 18

                (v)      LASD Policies and Practices ................. 19

537199.5

7

Case No. 2:20-cv-09582-JFW-E

STIPULATION REGARDING DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND PLAINTIFFS'
MOTION TO COMPEL DEPOSITIONS OF SHERIFF VILLANUEVA AND CHIEF OSBY

1              (b)    Fire Chief Osby ................................................................. 20

2      4.    Interference with Performance of Government Duties ............. 22

3      5.    Alternatives or Limitations Must Be Considered ...................... 22

4    B.    Plaintiffs' Statement .................................................................... 24

5      1.    Legal Standard. ...................................................................... 24

6      2.    Plaintiffs Are Entitled to Depose Sheriff Villanueva and
Chief Osby Because They Were Named in Defendants'
7           Rule 26 Disclosures. ................................................................ 26

8      3.    Plaintiffs Are Entitled to Depose Sheriff Villanueva and
Chief Osby Because They Have Not Disclaimed Personal
9           Knowledge Via Declarations. .................................................. 27

10     4.    Sheriff Villanueva Possesses a Wealth of Unique Personal
Knowledge That Cannot Be Obtained from Other Sources. ...... 28

11

12           (a)    Sheriff Villanueva Discussed the Photos in
Conversations that Other Participants Do Not Fully
Remember. ........................................................................... 28

13

14           (b)    Sheriff Villanueva Must Clarify the Record
Regarding His Orders to Delete Evidence. ....................... 29

15           (c)    Sheriff Villanueva Described His Deputies'
Conduct as "Wildly Inappropriate" and
16                  "Disgusting." ...................................................................... 33

17           (d)    Sheriff Villanueva Has Personally Stated that Prior
Policies Were "Deficient." ................................................ 33
18

19           (e)    Sheriff Villanueva Personally Decided Not to
Discipline Any of the Offending Deputies. ...................... 35

20           (f)    Sheriff Villanueva Stated that His Deputies'
Conduct "Harm[ed] People Who Suffered a
21                  Tragedy Already." ............................................................. 35

22           (g)    Sheriff Villanueva Has Personally Expressed
Confidence that All Photos Have Been Contained. ......... 36
23

24           (h)    Sheriff Villanueva Has Made Public Statements
About His Experience With Improper Handling of
Photos of Human Remains. ............................................... 36

25

26           (i)    Sheriff Villanueva Made Personal Promises to
Plaintiff Vanessa Bryant on the Day of the
Accident. ............................................................................. 37

27

28           (j)    Sheriff Villanueva Appears to Have Personal
Knowledge About Why an Investigation Through

STIPULATION REGARDING DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND PLAINTIFFS'
MOTION TO COMPEL DEPOSITIONS OF SHERIFF VILLANUEVA AND CHIEF OSBY

Standard Processes Was Halted ...................................... 38

5.  Chief Osby Has Extensive Personal Knowledge that
    Cannot Be Obtained from Other Sources. ................................. 38

    (a)  Osby Spoke Directly With Villanueva on January
         31, 2020. ................................................................ 39

    (b)  Osby Spoke Directly with Chief William McCloud
         about the Misconduct by Fire Department
         Personnel. ............................................................. 40

    (c)  Osby Spoke Directly With Battalion Chief Roland
         Sprewell Regarding the LA Times Report on
         February 28, 2020. .............................................. 40

    (d)  Osby's Testimony is Relevant to Numerous Other
         Issues as Well. ..................................................... 41

6.  There Is No Basis to Limit the Depositions or for Use of
    Interrogatories as an Alternative ...................................... 42

7.  Defendants' Position with Respect to Sheriff Villanueva Is
    Frivolous and Continues a Pattern of Discovery Abuse ............. 43

V.  CONCLUSION ............................................................. 45

    A.  Defendants' Statement ............................................. 45

    B.  Plaintiffs' Statement ............................................... 45

537199.5

9

Case No. 2:20-cv-09582-JFW-E

STIPULATION REGARDING DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND PLAINTIFFS'
MOTION TO COMPEL DEPOSITIONS OF SHERIFF VILLANUEVA AND CHIEF OSBY

1

## <u>TABLE OF AUTHORITIES</u>

2
<u>Page</u>

3

### <u>FEDERAL CASES</u>

4

5
*Ahlman v. Barnes*,
    No. 8:20-cv-00835-JGB-SHK, 2021 WL 1570838 (C.D. Cal. Mar. 9,
    2021) ............................................................................................................ passim

6

7
*Alexander v. 1328 Uptown, Inc.*,
    2019 WL 4929931 (D. Minn. Oct. 7, 2019) ..................................................... 27

8
*Alves v. Riverside County*,
    2021 WL 3598728 (C.D. Cal. Apr. 9, 2021) ..................................................... 25

9

10
*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
    282 F.R.D. 259 (N.D. Cal. 2012) .................................................. 14, 24, 25, 32

11
*Bagley v. Blagojevich*,
    486 F. Supp. 2d 786 (C.D. Ill. 2007) ...................................................... 4, 16, 27

12

13
*Blankenship v. Hearst Corp.*,
    519 F.2d 418 (9th Cir. 1975) ............................................................................ 24

14
*Bogan v. City of Boston*,
    489 F.3d 417 (1st Cir. 2007) ............................................................................. 14

15

16
*Clinton v. Jones*,
    520 U.S. 681, 704-05 .......................................................................................... 3

17
*Coleman v. Schwarzenegger*,
    No. CIV S-90-0520 LKK JFM P, 2008 WL 4300437 (E.D. Cal. Sept.
    15, 2008) ............................................................................................. 14, 22, 24

18

19
*Ed Tobergte Assocs. Co. v. Russell Brands, LLC*,
    259 F.R.D. 550 (D. Kan. 2009) ......................................................................... 27

20

21
*Estate of Levingston v. County of Kern*,
    320 F.R.D. 520 (E.D. Cal. 2017)................................................................. passim

22
*Estate of Silva by & through Allen v. City of San Diego*,
    No. 18cv2282-L (MSB), 2021 WL 211613 (S.D. Cal. Jan. 21, 2021) ........... 23

23

24
*Freedom from Religion Found., Inc. v. Abbott*,
    2017 WL 4582804 (W.D. Tex. Oct. 13, 2017) ................................................. 32

25
*Fugett v. Sec. Transp. Servs., Inc.*,
    2015 WL 419716 (D. Kan. Feb. 2, 2015) ......................................................... 27

26

27
*Gantt v. City of Los Angeles*,
    717 F.3d 702 (9th Cir. 2013) ............................................................................ 33

28

STIPULATION REGARDING DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND PLAINTIFFS'
MOTION TO COMPEL DEPOSITIONS OF SHERIFF VILLANUEVA AND CHIEF OSBY

*Gibson v. Cnty. of Washoe*,
    290 F.3d 1175 (9th Cir. 2002) ................................................................. 33

*Givens v. Newsom*,
    No. 2:20-cv-0852-JAM-CKD, 2021 WL 65878 (E.D. Cal. Jan. 7, 2021) .. 2, 15

*Green v. Baca*,
    226 F.R.D. 624 (C.D. Cal. 2005) ....................................................... 3, 27, 34

*Henry v. Cnty. of Shasta*,
    132 F.3d 512 (9th Cir. 1997) ................................................................... 35

*Jarbo v. County of Orange*,
    No. SACV 05-00202-JVS, 2010 WL 3584440 (C.D. Cal. Aug. 30,
    2010) ...................................................................................................... 15

*K.C.R. v. County of Los Angeles*,
    No. CV 13-3806 PSG (SSx), 2014 WL 3434257 (C.D. Cal. July 11,
    2014) ...................................................................................................... 15

*Khan v. Boohoo.com USA, Inc.*,
    2021 WL 3882969 (C.D. Cal. July 28, 2021) ........................................ 25

*Kyle Eng'g Co. v. Kleppe*,
    600 F.2d 226 (9th Cir. 1979) ............................................................ 14, 23

*Lull v. Cnty. of Sacramento*, 2020 WL 4547166 (E.D. Cal. Aug. 6, 2020) ............. 34

*Luxottica Group S.p.A. v. Liquidity Services, Inc.*,
    2019 WL 2620727 (C.D. Cal. May 24, 2019) ....................................... 26

*Mansourian v. Bd. of Regents*,
    2007 WL 4557104 (E.D. Cal. Dec. 21, 2007) ....................................... 43

*Marsh v. Cnty. of San Diego*,
    680 F.3d 1148 (9th Cir. 2012) ................................................................. 10

*Monell v. Dep't of Social Services*,
    436 U.S. 658 (1978) ............................................................................... 33

*Monster Energy Co. v. Vital Pharm., Inc.*, 2021 WL 3524128 (C.D. Cal. May
    26, 2021) ................................................................................................ 25

*Myles v. County of San Diego*,
    No. 15cv1985-BEN (BLM), 2016 WL 4366543 (S.D. Cal. Aug. 15,
    2016) ................................................................................................passim

*Novoa v. Geo Grp., Inc.*,
    2020 WL 2501382 (C.D. Cal. Jan. 2, 2020) ......................................... 25

*Oakley, Inc. v. Neff, LLC*,
    2015 WL 4479424 (S.D. Cal. July 21, 2015) ........................................ 26

*Reinsdorf v. Skechers U.S.A., Inc.*,
    296 F.R.D. 604 (C.D. Cal. 2013) .................................................... 32, 41

*Sawla v. B.E. Aerospace Inc.*,
   2017 WL 11635761 (C.D. Cal. May 3, 2017) ................................................26

*Smith v. City of Stockton*,2017 WL 11435161 (E.D. Cal. Mar. 27, 2017) .........passim

*Soto v. County of Sacramento*,
   No. 2:19-cv-0910 TLN DB, 2020 WL 5110372 (E.D. Cal. Aug. 31,
   2020)..................................................................................................... 15, 23

*Thomas v. Cate*,
   No. 1:05-cv-01198-LJO-JMD-HC, 2010 WL 1343789 (E.D. Cal. Apr.
   5, 2010)........................................................................................................ 15

*Trump v. Vance*,
   140 S. Ct. 2412 (2020) ..................................................................................3

*United States v. Morgan*,
   313 US. 409 (1941) .....................................................................................14

*United States v. Nixon*,
   18 U.S. 683 (1974) .........................................................................................3

*WIII Uptown, LLC v. B&P Restaurant Grp., LLC*,
   2016 WL 4620200 (M.D. La. Sept. 6, 2016) ................................................27


**FEDERAL STATUTES**

42 U.S.C. § 1983................................................................................... 1, 7, 16


**FEDERAL RULES**

Fed. R. Civ. P. 26...................................................................................14, 16

Fed. R. Civ. P. 26(a)(1)(A)(i) ...............................................................44

Fed. R. Civ. P. 26(c)(1).........................................................................14

Fed. R. Civ. P. 30(b)(6) ..................................................................passim

STIPULATION REGARDING DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND PLAINTIFFS'
MOTION TO COMPEL DEPOSITIONS OF SHERIFF VILLANUEVA AND CHIEF OSBY

# JOINT STIPULATION

## I. INTRODUCTION

### A. Defendants' Statement

Plaintiffs[1] bring federal claims under 42 U.S.C. § 1983 and state claims for negligence, invasion of privacy, and intentional infliction of emotional distress. The only *direct* claim against the County and its departments is a *Monell* claim.

Although Plaintiff Bryant initially had claims against Sheriff Villanueva, the elected official who runs the Los Angeles County Sheriff's Department ("LASD"), the Court granted Defendants' motion to dismiss him from the case almost a year ago. [Dkt. 46.] The Could held that Plaintiff's theory of liability "defie[d] common sense." [*Id.*] After that ruling, the other Plaintiffs voluntarily dismissed Sheriff Villanueva from their operative complaints. As a result, Sheriff Villanueva is not a defendant in any of the four related cases. Fire Chief Osby, the head of the Los Angeles County Fire Department ("LACFD"), was *never* a defendant in any of the cases, nor is he even mentioned in the complaints.

Nonetheless, Plaintiffs now contend that they are entitled to the depositions of Sheriff Villanueva and Fire Chief Osby. These are classic apex depositions. The general rule is that heads of government agencies, like Sheriff Villanueva and Fire Chief Osby, are not normally subject to deposition, absent extraordinary circumstances. A plaintiff may be entitled to an apex deposition only if the witness has unique personal knowledge about issues material to the case and the information sought cannot be obtained from any other source. This rule protects officials "from discovery that will burden the performance of their duties, particularly given the frequency with which such officials are likely to be named in lawsuits."

---

[1] "Plaintiffs" refers to Plaintiffs in the four related cases: Vanessa Bryant ("Bryant") (Case No. 20-09582), Christopher Chester, et al. ("Chester") (Case No. 20-10844), Matthew Mauser, et al. ("Mauser") (Case No. 21-00497), and John James Altobelli, et al. ("Altobelli") (Case No. 21-04663).

1    Plaintiffs cannot meet their burden here.  They have taken 13 depositions and

2    have approximately 20 more scheduled for October and November.  Deponents

3    include (i) two high-level 30(b)(6) witnesses for LACFD; (ii) Sheriff Villanueva's

4    Chief of Staff, a Commander; (iii) the head of LASD's Sheriff's Information

5    Bureau, a Captain; and (iv) the Lieutenant and Sergeant charged with carrying out

6    Sheriff Villanueva's instruction to prevent dissemination of any photos from the

7    January 26, 2020 helicopter crash.  All of these witnesses have direct personal

8    knowledge of the issues at the heart of Plaintiffs' claims in these four related cases.

9    Any information they seek from Sheriff Villanueva or Fire Chief Osby can be

10   (and has been) obtained from other witnesses.  Plaintiffs ignore this dispositive fact,

11   even though they finally started asking for the discovery they should have pursued

12   months ago two days *after* receiving Defendants' portion of this joint statement.  For

13   example, Plaintiffs just served an LASD 30(b)(6) notice—for the first time.  They

14   also just asked for the depositions of the individuals who verified the County's

15   discovery responses.  These are the sources Plaintiffs should turn to for any

16   evidence relevant and material to their *Monell* claim that they have not already

17   obtained (notwithstanding sworn discovery responses and repetitive testimony).

18   Neither Sheriff Villanueva nor Fire Chief Osby possess any unique personal

19   information, *relevant to the actual claims in this case*, that cannot be obtained via

20   other sources.  Plaintiffs' conclusory statements that these individuals are

21   "policymakers," along with references to Sheriff Villanueva's public comments to

22   the press, fail to establish that these individuals "possess personal knowledge of

23   facts critical to the outcome of the proceedings" that "cannot be obtained by other

24   means."  *Givens v. Newsom*, No. 2:20-cv-0852-JAM-CKD, 2021 WL 65878, at *4

25   (E.D. Cal. Jan. 7, 2021) (citation omitted).  Plaintiffs' discontent with these high-

26   level officials is not a basis to make them sit for depositions that will not change the

27   undisputed facts of this case.

28

STIPULATION REGARDING DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND PLAINTIFFS'
MOTION TO COMPEL DEPOSITIONS OF SHERIFF VILLANUEVA AND CHIEF OSBY

### B.   Plaintiffs' Statement

"In our judicial system, the public has a right to every man's evidence.  Since the earliest days of the Republic, 'every man' has included even the President of the United States." *Trump v. Vance*, 140 S. Ct. 2412, 2420 (2020); *see also Clinton v. Jones*, 520 U.S. 681, 704-05 (detailing history of presidents "respond[ing] to court orders to provide testimony").  The County of Los Angeles, however, appears to believe that this "ancient proposition of law," *United States v. Nixon*, 418 U.S. 683, 709 (1974), does not apply to the Sheriff of Los Angeles County or the Chief of the Los Angeles County Fire Department—even when they have been personally involved and made statements to the press about the events at issue in a case alleging that their departments violated the constitutional rights of the citizens they protect and serve.  These officials take the position that they simply cannot sit for a deposition even as they press the Court for an order asking Plaintiffs—the victims— to do far more.  With this motion, the County asks the Court to absolve them from having to provide *any testimony at all*, while with another motion they ask the Court to order the victims in this case (including children ages five, ten, and thirteen) to undergo involuntary psychiatric examinations on top of the depositions they have provided or will provide—implying that Plaintiffs' distress at having images of their loved ones' bodies shared in text messages and at bars and cocktail parties is feigned.

Fortunately, this "good for thee but not for me" approach to discovery is not the law.  Numerous courts have required sheriffs, including the Sheriff of Los Angeles County, to provide testimony like the ordinary citizens they serve.  *See Green v. Baca*, 226 F.R.D. 624, 649 (C.D. Cal. 2005) (holding that Sheriff Lee Baca could be compelled to testify in *Monell* action because, "as Los Angeles County Sheriff, [he] is the final policymaker for the County in setting and implementing jail release policies"); *Ahlman v. Barnes*, 2021 WL 1570838, at * 5 (C.D. Cal. Mar. 9, 2021) (sheriff subject to deposition in suit regarding COVID-19 policies in county

1  jail because "the best person to provide such information is the final policymaker,

2  Sheriff Barnes").

3      This Court should do the same because Sheriff Villanueva and Chief Osby

4  were personally involved in the events at issue in this case.  After all, in their Rule

5  26 disclosures, Defendants listed both Sheriff Villanueva and Chief Osby as persons

6  likely to have discoverable information.  That assertion alone should defeat their

7  motion to prevent Plaintiffs from taking discovery via deposition.  *See, e.g.*, *Bagley*

8  *v. Blagojevich*, 486 F. Supp. 2d 786, 789-90 (C.D. Ill. 2007) (allowing deposition of

9  Illinois Governor where defendants had listed him their Rule 26 disclosures).  So,

10  too, should the fact that neither the Sheriff nor the Chief has submitted a declaration

11  denying first-hand knowledge of the events at issue.  Plaintiffs should not be

12  required to take defense counsel's word for what these key witnesses know.

13      And there is reason to believe that they know a great deal.  Sheriff Villanueva

14  personally promised Mrs. Bryant that he would protect the remains of her husband

15  and daughter from desecration by unauthorized photographers.  He personally

16  described the sharing of photos of human remains by law enforcement officers as a

17  problem as old as the Polaroid camera, and he noted that police officers keep so-

18  called "death books" of such photos.  He personally stated that sharing photos of

19  human remains "harm[s] people [who] suffered a tragedy already."  He personally

20  described sharing photos of Plaintiffs' loved ones' remains as "wildly inappropriate"

21  and "disgusting."  And, as the policymaker for the Sheriff's Department, Sheriff

22  Villanueva personally and publicly admitted that the Department's policies

23  regarding sharing photos of human remains were insufficient and personally

24  directed the adoption of new policies.  The Sheriff found time to make these

25  statements in front of the cameras or a reporter's tape recorder.  He cannot hide now

26  from addressing these issues at deposition.

27      Nor can he avoid answering questions about his personal involvement in

28  directing subordinates to delete evidence of misconduct alleged in a citizen

1    complaint related to the sharing of the photos.  Other witnesses claim to not

2    remember details of certain conversations with the Sheriff regarding this directive,

3    so Plaintiffs need to clarify the record to test Defendants' assertion that the Sheriff

4    ordered the destruction of evidence to protect Plaintiffs rather than try to cover up

5    misconduct.  The reasons why the Sheriff ordered the destruction of evidence are

6    relevant to his awareness of wrongdoing and whether spoliation occurred.

7         Chief Osby, too, was personally involved in the events at issue.  Discovery

8    indicates that he spoke with Sheriff Villanueva about the improper sharing of photos

9    just days after the crash.  Only they can testify about those communications.

10   Discovery also has revealed that Chief Osby was informed on January 31, 2020, that

11   two members of his Department had improper photos of the victims' remains in

12   their possession.  But Osby waited to conduct any meaningful investigation of those

13   reports until *March*.  Within that time, the photos were turned into cocktail-hour

14   entertainment at a public awards show.  Plaintiffs are entitled to ask Chief Osby

15   himself about this delay, as it pertains to the likelihood the photos will someday

16   surface and whether spoliation occurred.

17        If all of that were not enough (and it is), both Villanueva and Osby are

18   policymakers for their departments, which makes their testimony important for

19   Plaintiffs' claim that the departments' lack of policies and training resulted in

20   violations of their constitutional rights.

21        Defendants' counter-arguments are meritless.  *First*, Defendants imply that

22   Sheriff Villanueva's dismissal *in his personal capacity* means that he has nothing to

23   do with this case.  That is incorrect, as the Court's ruling did nothing to suggest that

24   Sheriff Villanueva lacks knowledge of his employees' conduct and violations of

25   constitutional rights.  Nor did the ruling imply that Sheriff Villanueva's motivation

26   for deleting evidence is irrelevant to a spoliation charge against Defendants, or that

27   the Sheriff lacks knowledge relevant to whether his department bears liability for

28   failing to train its employees and establish policies and procedures to protect

citizens' constitutional privacy interest in the death images of family members.

*Second*, Defendants criticize Plaintiffs both for taking too much discovery and not enough. While it is true that there are many people to depose, that is because at least *fourteen* County employees took, shared, or possessed improper photos of the Plaintiffs' deceased family members, and numerous others witnessed their conduct or worked to cover it up. In an order signed by this court, Defendants acknowledged the large number of relevant witnesses by stipulating to forty depositions per side. But none of these witnesses can climb into Sheriff Villanueva's mind and explain what he meant when saying that "death books" have been a problem in law enforcement since the invention of the Polaroid camera, nor can they explain Chief Osby's mindset in failing to stop evidence from being deleted as he waited more than a month to investigate a claim that his firefighters had taken and obtained improper photos of the victims' remains.

In short, the "apex" doctrine cannot protect Sheriff Villanueva and Chief Osby from depositions in this case because discovery shows that their departments' involvement in the issues in this case went straight to the top. Defendants' refusal to permit these depositions without a ruling from the Court, despite having listed the witnesses in their initial disclosures, is simply the latest example of forcing Plaintiffs to file motions to obtain obvious and important discovery—including the names of the wrongdoers, the Internal Affairs Bureau report, and documents related to the departments' experience with improper photo sharing. Defendants' motion for a protective order reflects an improper attempt to get a preview of deposition topics. It should be denied.

## II.   BACKGROUND

### A.   Defendants' Statement

#### 1.   Overview of the Cases

On September 17, 2020, Bryant filed a complaint in state court. On October 19, 2020, the County removed the case to this Court. [Bryant Dkt. 1.] On

1   November 18, 2020, the Court dismissed the Doe Defendants.  [Dkt. 28.]

2        On December 28, 2020, the Court granted the County's motion to dismiss

3   Sheriff Villanueva from the case, holding: "It defies common sense that Sheriff

4   Villanueva's instruction to delete the photos would somehow increase the risk of

5   public dissemination of those very same photos or that Sheriff Villanueva's conduct

6   would cause Plaintiff additional emotional distress."  [Dkt. 46.]

7        Bryant's operative complaint includes claims for *Monell* liability, negligence,

8   and invasion of privacy arising out of County employees allegedly showing photos

9   from the January 26, 2020 helicopter crash to other government personnel and to

10  one friend.  [Dkt. 54.]

11       Chester filed the operative complaint on May 3, 2021.  [Chester Dkt. 45.]  It

12  included the same claims as Bryant's complaint, plus a standalone claim under 42

13  U.S.C. § 1983.  [*Id.*]  Mauser and Altobelli, who initially filed their complaints in

14  state court, allege the same claims as Chester, with the addition of a claim for

15  intentional infliction of emotional distress.

16       Chester, Mauser, and Altobelli all voluntarily dismissed Sheriff Villanueva.

17  (Declaration of Emily A. Rodriguez-Sanchirico ("Rodriguez-Sanchirico Decl.")

18  ¶ 5.)  Because he was dismissed from Bryant, he is not a defendant in any of the

19  related cases.  (*Id.*)  Fire Chief Osby was never named as a defendant in any of the

20  four related cases.  (*Id.*)

21         **2.**    **Overview of Discovery**

22       Defendants have worked diligently to provide Plaintiffs with all the

23  information they believe they need to support their claims.  Discovery in this case

24  has been extensive.  (Rodriguez-Sanchirico Decl. ¶ 6.)  Defendants have produced

25  over 30,000 pages of documents.  (*Id.*)  Defendants also consented to a neutral

26  forensic examination of over 20 devices.  [Dkt. 96.]  That process is underway.

27  (Rodriguez-Sanchirico Decl. ¶ 7.)

28       Plaintiffs intend to take 40 depositions.  (*Id.* ¶ 8; *see* Dkt. 91.)  To date, they

have taken 13.  (Rodriguez-Sanchirico Decl. ¶ 8.)  There are approximately 20 more set for October and November.  (*Id*.)  The 10 depositions include two LACFD 30(b)(6) witnesses: Chief Anthony Marrone and Chief William McCloud.  (*Id*. ¶ 9.) Chief Marrone was at the crash site and involved in the early stages of learning about potential improper sharing of scene photos.  (*Id*.)  Chief McCloud, who was the head of the Leadership and Professional Standards Bureau, was the lead for the internal investigation that followed.  (*Id*.)  These two witnesses covered 23 topics. (*Id*. & Ex. A.)  Plaintiffs also deposed an LACFD Captain and a Chief who was the incident commander on the day of the helicopter crash.  (*Id*.)

With respect to LASD witnesses, Plaintiffs have already deposed Sergeant Marcus Phillips and Lieutenant Hector Mancinas.  (*Id*. ¶ 10.)  Sergeant Phillips and Lieutenant Mancinas were charged with interviewing 28 deputies, reserve deputies, sergeants, and Malibu Search and Rescue civilian volunteers to carry out Sheriff Villanueva's directive to ascertain the existence of any crash site photos that contained the victims' remains, halt any improper dissemination, and identify any additional personnel who could have shared photos.  (*Id*.)  Plaintiffs have also deposed the Captain of the Sheriff's Information Bureau, the division that received the citizen's complaint, and Sheriff Villanueva's Chief of Staff.  (*Id*.)  Those two individuals received orders directly from Sheriff Villanueva and conveyed those orders to Lieutenant Mancinas.  (*Id*.)  Plaintiffs have not pursued an LASD 30(b)(6) deposition.[2]  (*Id*. ¶ 11.)

---

[2] Defendants sent Plaintiffs their portion of the joint stipulation regarding this motion on October 6, 2021.  On October 8, 2021, Plaintiffs served an LASD 30(b)(6) notice and asked for six other high level LASD depositions, including the Undersheriff, an Assistant Sheriff, a Chief, and the Commander and Captain who had verified prior discovery responses.  The 30(b)(6) notice contains 18 multipart topics.  Plaintiffs did not meet and confer with anyone before serving it, nor did they explain why they waited until the month before the discovery cutoff to pursue those 18 topics (or any of the other depositions).  (Rodriguez-Sanchirico Decl. ¶ 11 n.2 &

1    On August 10, 2021, Defendants served deposition notices for all Plaintiffs.

2  (*Id.* ¶ 12.)  Defendants have also noticed the depositions of seven third-party

3  witnesses who Plaintiff Bryant identified as having knowledge relevant to her

4  claims.  (*Id.*)  Plaintiff Bryant has yet to provide available dates for any of the third-

5  party witnesses.  (*Id.*)

6    Plaintiffs took the LACFD 30(b)(6) depositions on May 20, 2021 and June 3,

7  2021.  (*Id.* ¶ 13.)  Plaintiffs did not serve another deposition notice until August 17,

8  2021, when they noticed eight LASD/LACFD depositions.  (*Id.*)

9    On August 30, 2021, Defendants emailed Plaintiffs to coordinate scheduling.

10  (*Id.* ¶ 14.)  The parties were able to set five depositions for September.  (*Id.*)  Those

11  depositions included a very time-consuming 30(b)(6) for the Department of

12  Medical-Examiner Coroner.  (*Id.* & Ex. C.)

13    On September 14, 2021, Plaintiffs asked for availability for four other

14  deponents, including one LASD witness, one LACFD witness, Sheriff Villanueva,

15  and Fire Chief Osby.  (*Id.* ¶ 15.)  On September 27, 2021, Plaintiffs asked us to

16  provide dates for 11 additional LASD/LACFD witnesses.  (*Id.*)  Defendants

17  provided availability on an almost daily basis between September 27, 2021 and

18  present.  (*Id.*)  The parties were able to set over 20 depositions for October and

19  November.  (*Id.* & Ex. D.)

20    Defendants have also responded to Plaintiffs' interrogatories with substantive,

21  verified responses.  (*Id.* ¶ 16.)  The most recent set asked for information about

22  LASD training and policies, which Defendants provided.  (*Id.* & Ex. E.)

23

24

25  Ex. B.)  Many of the topics seek the exact information Plaintiffs now contend they
    can only get from Sheriff Villanueva.  (*Id.* Ex. B.)  For example, Plaintiffs are
26  asking for all "facts and circumstances related to the deletion or destruction of any
    PHOTOS" and "training and instruction" and "polices, practices, and procedures"
27  relating to six different topics.  (*Id.*)

28

B.     **Plaintiff's Statement**

1.     **Overview of the Cases**

Plaintiffs—the surviving family members of Kobe and Gianna Bryant; Sarah and Payton Chester; John, Keri, and Alyssa Altobelli; and Christina Mauser—have brought this action because County employees took gratuitous photographs of their loved ones' remains and then improperly shared those photos with others.

Plaintiffs allege that the Sheriff's Department's and Fire Department's acts were negligent, invaded their right to privacy under California law, and violated their substantive due process rights under the U.S. Constitution to control the physical remains, memory, and images of their deceased loved ones.  *See Marsh v. Cnty. of San Diego*, 680 F.3d 1148 (9th Cir. 2012).  Contrary to Defendants' characterization, Plaintiffs have never stated that the extent of public dissemination of the photos was limited to "one friend."  Indeed, Deputy Cruz *alone* has admitted that he showed crash-scene photos to both his niece and a bartender, and video evidence also shows him displaying his phone to an apparent stranger who was seated next to him at a bar.  (Lavoie Decl. ¶ 19.)  In addition, Defendants' destruction of evidence has prevented Plaintiffs from fully reconstructing the scope of the improper sharing of the photos.  Rather, as Plaintiffs have alleged, the most reasonable inference based on the evidence is that Defendants' personnel "shared photos of [the victims'] remains with multiple people, including members of the public, without any legitimate governmental purpose."  (Lavoie Decl. Ex. A (Bryant FAC) ¶ 69.)

Late last year, Judge Walter dismissed a single negligence claim against Sheriff Villanueva in the Bryant case, analyzing California case law to hold that Sheriff Villanueva did not owe Mrs. Bryant a legal duty to protect the crash scene from improper photography or to refrain from ordering deletion of the photos at a time when no effort had been made to track their dissemination.  (Dkt. 46 at 4-8.)  The Court noted that it was "not minimizing the reprehensibility of the conduct at

10

issue in this case," and it did not opine on whether Sheriff Villanueva's deletion order might constitute spoliation attributable to his employers.  (*Id.* at 8.)

### 2. Overview of Discovery

The County and Sheriff's Department served their operative Rule 26 disclosures in this case on December 4, 2020.  (Lavoie Decl. Ex. B (COLA/LASD's Suppl. Disclosures).)  Beneath the heading "Individuals Likely to Have Discoverable Information," the disclosures identified Sheriff Villanueva as a person who "may have discoverable information regarding their defenses."  (*Id* at 2-3.) Similarly, the Deputy Defendants' disclosures, served on April 27, 2021, listed Sheriff Villanueva.  (Lavoie Decl. Ex. C (Deputy Defendants' Disclosures) at 4.) And when the Fire Department provided its disclosures on the same date, they included Chief Daryl Osby.  (Lavoie Decl. Ex. D (LAFD Disclosures) at 4.)

In the spring of 2021, Plaintiffs and Defendants began discussing the consolidation of discovery across the four separate related lawsuits.  In an email to Defendants on March 30, 2021, Plaintiffs wrote: "[A]ttached is a list of people we intend to depose."  (Lavoie Decl. Ex. E (Email re Consolidation) at 4.)  "If Defendants object to any of these individuals being deposed, please let us know." (*Id.*)  Sheriff Villanueva and Chief Osby were on Plaintiffs' list.  (Lavoie Decl. ¶ 7.) When Defendants finally responded on April 20, they wrote: "It's hard to say in the abstract whether we object to any of these depositions, particularly when some of the deponents are third parties.  Nothing strikes us as objectionable right now, other than the number (I count 57 here)."  (Lavoie Decl. Ex. E (Email re Consolidation) at 1 (emphasis added).)

Without any indication from Defendants that they intended to block depositions of Villanueva or Osby, the parties subsequently reached a stipulated agreement regarding the number of depositions that was ordered by this Court: "Plaintiffs collectively shall have the right to take 40 total depositions, and Defendants collectively shall have the right to take 40 total depositions."  (Lavoie

Decl. Ex. G (Consolidation Order) at 2.)  Plaintiffs have not exceeded this stipulated limit.  To the extent that Plaintiffs have taken numerous depositions, that simply reflects the number of people involved in the improper conduct.  No fewer than *fourteen* members of the Sheriff's Department and Fire Department are known to have taken, shared, or possessed improper photos of the victims' remains.  (Lavoie Decl. ¶ 19.)  In addition, numerous witnesses have direct personal knowledge of their behavior, such as the citizen complainants, the bartender, and individuals to whom the graphic photos were displayed.  (*Id.*)  Finally, Plaintiffs have needed to depose individuals who were involved in the Sheriff's Department's destruction of evidence.  (*Id.*)

Defendants' implication that Plaintiffs have procrastinated in taking depositions is false.  Rather, depositions are occurring now because Defendants were slow to produce documents and still have not completed their document production.  Mrs. Bryant propounded document requests in mid-November 2020, but Defendants did not produce a single record until this Court granted Mrs. Bryant's motion to compel the IA Report in January 2021.  (Lavoie Decl. ¶ 21.)  Then, notwithstanding the Court's order, Defendants failed to produce the *exhibits* to the IA Report—approximately 2,200 records—until March 26, 2021.  (*Id.*)  Roughly 6,900 records then trickled out across April, May, and July, but Defendants are still not done.  (*Id.*)  They have made three document productions in September and another three (so far) in October.  (*Id.*)  Defendants bear responsibility for the compressed deposition schedule.

## III.  MEET AND CONFER EFFORTS

### A.  Defendants' Statement

On September 29, 2021, Defendants asked Plaintiffs to identify the unique personal knowledge they thought Fire Chief Osby had that had not been covered by the two LACFD 30(b)(6) witnesses.  (Rodriguez-Sanchirico Decl. ¶ 17 & Ex. F.) The parties set a Zoom conference for October 1, 2021.  (*Id.*)  On October 1, 2021,

1   Defendants emailed Plaintiffs to let them know that they had the same questions for

2   Sheriff Villanueva.  (*Id.* ¶ 18.)

3      Later that day, Plaintiffs responded and called Defendants' position on the

4   apex deposition of Sheriff Villanueva "absurd."  (*Id.* ¶ 19.)  Bryant's attorney

5   informed Defendants that they would "not allow a situation where Sheriff

6   Villanueva fails to sit for a full day of deposition."  (*Id.*)

7      Bryant's attorney also stated: "Plaintiffs collectively want you to know that

8   none of our clients will be sitting for deposition unless we have a locked-in date for

9   a full day of testimony with Sheriff Villanueva."  (*Id.* ¶ 20.)  As set forth above,

10   Defendants had noticed Plaintiffs' depositions on August 10, 2021.  (*Id.*)  The

11   depositions were set for October 8, 12, 19, and 20.  (*Id.*)  The discovery cutoff in

12   this case is November 29, 2021, which is also the last day to hear discovery motions.

13   [Dkt. 86.]  The last day to hear any motions is December 20, 2021.  [*Id.*]

14      The parties met and conferred via Zoom at 4:00 p.m. on October 1, 2021.

15   (Rodriguez-Sanchirico Decl. ¶ 21.)  The parties were unable to resolve their

16   differences.  (*Id.*)  Email correspondence continued between October 3, 2021 and

17   October 4, 2021.  (*Id.* ¶ 22 & Ex. F)  No resolution was possible.  (*Id.*)

18      **B.   Plaintiffs' Statement**

19      Although Plaintiffs were concerned about being subjected to hours upon

20   hours of emotionally wrenching depositions while Sheriff Villanueva avoided

21   questioning altogether, Plaintiffs take their discovery obligations seriously and

22   informed defense counsel that their depositions would remain on calendar.  (Lavoie

23   Decl. ¶ 3.)  On October 12, 2021, Plaintiff Vanessa Bryant was deposed, and

24   depositions of the other adult plaintiffs are set to be completed by the end of

25   October.  (*Id.*)

26

27

28

## IV.   **ARGUMENT**

### A.   **Defendants' Statement**

#### 1.   **Legal Standard**

Under Federal Rule of Civil Procedure 26, the court may issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Courts routinely recognize that depositions of high-level executives, in particular, create "a tremendous potential for abuse or harassment." *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012) (citation omitted) (granting motion for protective order for one high-level executive and limiting the duration of others to two or three hours).

As for heads of government agencies, they "are not normally subject to deposition," absent extraordinary circumstances. *Kyle Eng'g Co. v. Kleppe*, 600 F.2d 226, 231 (9th Cir. 1979) (affirming order directing agency head to answer interrogatories in lieu of sitting for a deposition). This rule protects officials "from discovery that will burden the performance of their duties, particularly given the frequency with which such officials are likely to be named in lawsuits." *Coleman v. Schwarzenegger*, No. CIV S-90-0520 LKK JFM P, 2008 WL 4300437, at *2 (E.D. Cal. Sept. 15, 2008) (granting in part motion for reconsideration of order requiring high-level officials to submit to depositions). It also protects the officials "from unwarranted inquiries into their decision-making process." *Id.* (citing *United States v. Morgan*, 313 US. 409, 422 (1941)).

To establish the "extraordinary circumstances" necessary to justify the deposition of a head of a government agency, the party seeking the deposition must show that the individual has (i) direct personal factual information pertaining to material issues in an action, and (ii) the information to be gained is not available through any other sources. 2008 WL 4300437, at *2 (citing *Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007)). Despite Plaintiffs' claims to the contrary, courts routinely apply *Coleman's* "extraordinary circumstances"

1  framework in determining whether depositions of high-ranking government officials

2  are justified.[3]

3         District courts in the Ninth Circuit have articulated additional factors the party

4  seeking the deposition must establish: "(1) the official's testimony is necessary to

5  obtain relevant information that is not available from another source; (2) the official

6  has first-hand information that cannot reasonably be obtained from other sources;

7  (3) the testimony is essential to the case at hand; (4) the deposition would not

8  significantly interfere with the ability of the official to perform his government

9  duties; and (5) the evidence sought is not available through less burdensome means

10 or alternative sources." *Myles v. County of San Diego*, No. 15cv1985-BEN (BLM),

11 2016 WL 4366543, at *3 (S.D. Cal. Aug. 15, 2016) (quoting *Thomas v. Cate*, No.

12 1:05-cv-01198-LJO-JMD-HC, 2010 WL 1343789, at *1 (E.D. Cal. Apr. 5, 2010)).

13            **2.    <u>Sheriff Villanueva and Fire Chief Osby Are "Apex" Officials</u>**

14         The first step of the apex inquiry is to determine whether the witnesses

15 qualify as high-ranking officials.  Both Sheriff Villanueva (the head of LASD) and

16 Fire Chief Osby (the head of LACFD) are.  *See K.C.R.*, 2014 WL 3434257, at *6

17 (holding that both sheriffs and undersheriffs are "high-ranking officials" deserving

18 of the apex doctrine's protection (citation omitted)); *Estate of Levingston v. County*

19 _____

20 [3] *See*, *e.g.*, *Givens*, 2021 WL 65878, at *6 (holding no "extraordinary

21 circumstances" present where moving party failed to show that no other person from
   the Governor's administration possessed the information sought from Governor's

22 deposition); *Soto v. County of Sacramento*, No. 2:19-cv-0910 TLN DB, 2020 WL
   5110372, at *1 (E.D. Cal. Aug. 31, 2020) (no "extraordinary circumstances" where

23 moving party could only point to "vague and conclusory concepts" regarding
   Sheriff's personal knowledge of incident); *K.C.R. v. County of Los Angeles*, No. CV

24 13-3806 PSG (SSx), 2014 WL 3434257, at *7 (C.D. Cal. July 11, 2014) (no

25 "extraordinary circumstances" justified deposition of Undersheriff who did not have
   first-hand knowledge of specific incident at issue); *Jarbo v. County of Orange*, No.

26 SACV 05-00202-JVS, 2010 WL 3584440, at *2 (C.D. Cal. Aug. 30, 2010) (no

27 "extraordinary circumstances" where it was "not obvious" that Sheriff had personal
   factual information that was not available through other sources).

28

*of Kern*, 320 F.R.D. 520, 526 (E.D. Cal. 2017) ("[C]ourts throughout the Ninth Circuit have determined that the position of sheriff is a high-ranking official to whom the apex doctrine may apply.") (granting motion for protective order).  It does not appear that Plaintiffs contest that Sheriff Villanueva and Fire Chief Osby qualify as apex officials.

Rather than contest that Sheriff Villanueva and Fire Chief Osby are apex officials, Plaintiffs instead argue that because these individuals appear on Defendants' initial disclosures, they are not entitled to the protection of the apex doctrine.  Plaintiffs have no basis for this contention.  Only one of the cases cited by Plaintiffs, *Bagley v. Blagojevich*, involved a government official apex witness.  486 F. Supp. 2d 786 (C.D. Ill. 2007).  In *Bagley*, the court did not permit an apex deposition solely because the official appeared on the initial disclosures list; the court granted the request for the deposition *after* conducting the relevant apex doctrine analysis.  *See id.* at 789-90.  None of the other cases cited by Plaintiffs involve apex governmental officials.  In fact, none of the cases cited by Plaintiffs in footnote 9 involve apex witnesses at all.  The fact that Sheriff Villanueva and Fire Chief Osby are identified in Defendants' Rule 26 disclosures is immaterial to the issue of whether they should be subjected to depositions in this case.

### 3.    **"Extraordinary Circumstances" Are Not Present Here**

Plaintiffs' claims include a 42 U.S.C. § 1983 violation, *Monell*, negligence, invasion of privacy, and intentional infliction of emotional distress.  The County and its departments are only directly named on the *Monell* claim.  The inquiry is thus whether Sheriff Villanueva and Fire Chief Osby have any relevant, first-hand information essential to the *Monell* claim that cannot be obtained through less burdensome means or alternative sources.  *Myles*, 2016 WL 4366543, at *3.

### (a)    **Sheriff Villanueva**

Plaintiffs cannot get past step one, because they can obtain all relevant information from other sources.  In meet and confer correspondence, they raised a

list of 14 things they need to ask the Sheriff about.  (Rodriguez-Sanchirico Decl. Ex. E.)  In general, those topics fall within five categories: (i) the Sheriff's directives regarding how he wanted his subordinates to handle the allegations that a deputy might have improperly shared accident site photos; (ii) the Sheriff's public comments; (iii) the Sheriff's communications (or the perceived lack thereof) with the Plaintiffs; (iv) communications with Fire Chief Osby; and (v) LASD policies and practices regarding photos, including changes thereto.

### (i)  The Sheriff's Directives

Plaintiffs want to know more about Sheriff Villanueva's instruction to his subordinates.  (Rodriguez-Sanchirico Decl. Ex. E.)  That instruction was the focus of Plaintiffs' claims against Sheriff Villanueva.  On December 28, 2020, the Court granted the County's motion to dismiss Sheriff Villanueva from the case, holding: "It defies common sense that Sheriff Villanueva's instruction to delete the photos would somehow increase the risk of public dissemination of those very same photos or that Sheriff Villanueva's conduct would cause Plaintiff additional emotional distress."  [Dkt. 46.]  Sheriff Villanueva is not a defendant, and the idea that his instruction to make sure no photos were disseminated *caused* Plaintiffs harm—as required to establish a *Monell* violation—"defies common sense."  [*Id.*]

In any event, Plaintiffs already deposed Sergeant Marcus Phillips and Lieutenant Hector Mancinas.  (Rodriguez-Sanchirico Decl. ¶ 10.)  Sergeant Phillips and Lieutenant Mancinas were charged with interviewing 28 deputies, reserve deputies, sergeants, and Malibu Search and Rescue civilian volunteers to carry out Sheriff Villanueva's directive to ascertain the existence of any crash site photos that contained the victims' remains, halt any improper dissemination, and identify any additional personnel who could have shared photos.  (*Id.*)

Plaintiffs also deposed the Captain of the Sheriff's Information Bureau, the division that received the citizen's complaint, and Sheriff Villanueva's Chief of Staff.  (*Id.*)  Those two individuals received orders directly from Sheriff Villanueva

1  and communicated them down the chain to Sergeant Phillips/Lieutenant Mancinas

2  (who Plaintiffs already deposed) and Captain Matthew Vander Horck (who

3  Plaintiffs are also deposing).  (*Id*.)  Plaintiffs are also deposing any individuals who

4  stated that they had photos and deleted them.  (*Id*. ¶ 11.)

5  **(ii)      The Sheriff's Public Comments**

6  Plaintiffs allege that they can establish *Monell* liability because Sheriff

7  Villanueva said something publicly about "death books."  (First Amended

8  Complaint ("FAC") ¶ 51.)  That quote is clearly, on its face, not talking about

9  LASD.  (*Id*.)  Regardless, multiple witnesses (including the Sheriff's Chief of Staff)

10 have already testified that LASD had never dealt with this issue (sharing photos that

11 contained death images), and Defendants served verified discovery responses saying

12 the same.  (Rodriguez-Sanchirico Decl. Ex. D.)  If Plaintiffs contend they need

13 more, they can pursue that topic at a 30(b)(6) deposition (which they finally asked

14 for on October 8, 2021) or ask a subject matter expert (like one of the individuals

15 who verified the County's discovery responses).  (*Id*. ¶ 11 n. 2.)

16 **(iii)     Communications between the Sheriff and**

17 **Plaintiffs**

18 It strains credulity to suggest that Plaintiffs need to depose Sheriff Villanueva

19 to ask him about his communications with them.  First, this testimony is not

20 "essential" to the case at hand, nor does it pertain to "material issues."  *Myles*, 2016

21 WL 4366543, at *3 (citation omitted); *Levingston*, 320 F.R.D. at 525 (citation

22 omitted).  Second, this information can "reasonably be obtained from other

23 sources"—Plaintiffs themselves.  *Myles*, 2016 WL 4366543, at *3 (citation omitted).

24 **(iv)     Communications between the Sheriff and Fire**

25 **Chief Osby**

26 As with the communications between Sheriff Villanueva and Plaintiffs, this

27 testimony is not "essential" and does not pertain to "material issues" in the case.

28 *Myles*, 2016 WL 4366543, at *3 (citation omitted); *Levingston*, 320 F.R.D. at 525

1  (citation omitted).  What Sheriff Villanueva may or may not have said to Chief

2  Osby does not relate to Plaintiffs' claims and is not the conduct that is alleged to

3  have caused any harm to Plaintiffs.  (*See generally* FAC.)

4  **(v)**   **LASD Policies and Practices**

5         Plaintiffs are entitled to information about LASD's policies and practices

6  regarding scene photography and related issues.  The question is whether Sheriff

7  Villanueva has "direct personal factual information" about LASD policies and

8  practices that "is not available from another source."  *Levingston*, 320 F.R.D. at 525

9  (citation omitted); *Myles*, 2016 WL 4366543, at *3 (citation omitted).  Plaintiffs

10  cannot satisfy their burden on either front.  They can obtain, and have obtained, this

11  information from other sources—including other witnesses, interrogatories, and

12  document requests.  (*See, e.g.,* Rodriguez-Sanchirico Decl. Ex. E.)

13         If Plaintiffs contend they need more, they can pursue an LASD 30(b)(6)

14  deposition.  (*Id.* ¶ 11 n.2.)  In fact, Plaintiffs finally asked for a 30(b)(6) deposition

15  on October 8, 2021, two days after receiving Defendants' portion of this joint

16  statement.  (*Id.*)  In that same email, Plaintiffs also asked to depose the individuals

17  who verified the County's discovery responses, including the Captain of LASD's

18  Training Bureau.  (*Id.*)

19         The fact that Sheriff Villanueva *ultimately* approves the final policies does not

20  justify subjecting him to deposition.  *Levingston*, 320 F.R.D. at 528.  There is no

21  evidence that he was personally involved in the process.  Plaintiffs can obtain

22  whatever information they need about policies, practices, procedures, and training

23  from the employees who "develop, administer and train on these policies."  *Id.*

24  Indeed, they are concurrently pursuing the depositions of those individuals.

25  (Rodriguez-Sanchirico Decl. ¶ 11 n.2 & Ex. B.)

26         At bottom, there is no reason why an elected official at the helm of the largest

27  sheriff's department in the world should be subjected to a deposition that could be

28  handled by any number of his subordinate officers.

### (b)   <u>Fire Chief Osby</u>

With respect to Fire Chief Osby, Plaintiffs have said only that he is the top "decision maker" for LACFD and that he spoke to Sheriff Villanueva about alleged sharing of accident site photos.  (Rodriguez-Sanchirico Decl. ¶ 21.)

The "decision maker" rationale does not justify the need to deviate from the general rule regarding depositions of agency heads.  Plaintiffs already deposed two LACFD 30(b)(6) witnesses: Chief Anthony Marrone and Chief William McCloud. (*Id*. ¶ 9.)  Chief Marrone was at the crash site and involved in the early stages of learning about potential improper sharing of scene photos.  (*Id*.)  Chief McCloud, who was the head of the Leadership and Professional Standards Bureau, was the lead for the internal investigation that followed.  (*Id*.)  These two witnesses covered 23 topics.  (*Id*. & Ex. A.)  Those topics included:

- All training and instruction provided by the FIRE DEPARTMENT to FIRE DEPARTMENT PERSONNEL on or before January 26, 2020, related to (a) taking, obtaining, possessing, using, and/or SHARING PHOTOS of accident scenes, emergency scenes, and human remains; and (b) the handling or treatment of human remains.

- All FIRE DEPARTMENT policies in place on January 26, 27, and 28, 2020 regarding (a) PHOTOS of accident scenes, emergency scenes, and human remains; (b) handling and treatment of human remains; (c) use of personal cell phones by FIRE DEPARTMENT PERSONNEL to take photos or videos while on duty; and (d) the handling and/or confidentiality of information or materials involving celebrities.

- Whether and in what respect FIRE DEPARTMENT policies in place on January 26, 27, and 28, 2020 prohibited FIRE DEPARTMENT PERSONNEL from using personal or department-owned devices to take, obtain, possess, use, or SHARE PHOTOS of accident scenes, emergency scenes, and human remains.

- All training and instruction that has been provided by the FIRE
  DEPARTMENT to FIRE DEPARTMENT PERSONNEL since
  January 26, 2020, related to (a) taking, obtaining, possessing, using, and/or
  SHARING PHOTOS of accident scenes, emergency scenes, and human
  remains; and (b) the handling or treatment of human remains.

- All FIRE DEPARTMENT policies in place on January 1, 2021 regarding
  (a) PHOTOS of accident scenes, emergency scenes, and human remains;
  (b) handling and treatment of human remains; (c) use of personal cell
  phones by FIRE DEPARTMENT PERSONNEL while on duty; (d) the
  handling and/or confidentiality of information or materials involving
  celebrities; and (e) the preservation of evidence of potential violations of
  law or constitutional rights by FIRE DEPARTMENT PERSONNEL.

- Whether and in what respect FIRE DEPARTMENT policies in place on
  January 1, 2021 prohibited FIRE DEPARTMENT PERSONNEL from
  using personal or department-owned devices to take, obtain, possess, use,
  or SHARE PHOTOS of accident scenes, emergency scenes, and human
  remains.

If Plaintiffs are still not satisfied after two days of 30(b)(6) depositions covering 23 topics, they can (i) serve interrogatories; or (ii) depose subordinate employees who have more direct knowledge of LACFD policies, procedures, and training. *Levingston*, 320 F.R.D. at 528 (holding that party could obtain information about policies from the employees who "develop, administer and train on these policies"). Plaintiffs have already deposed an LACFD Captain and a Chief who was the incident commander on the day of the helicopter crash. (Rodriguez-Sanchirico Decl. ¶ 9.)

As for the communications with Sheriff Villanueva, that testimony is not "essential" and does not pertain to "material issues" in the case. *Myles*, 2016 WL 4366543, at *3 (citation omitted); *Levingston*, 320 F.R.D. at 525 (citation omitted).

### 4.     Interference with Performance of Government Duties

Plaintiffs must explain why "the deposition[s] would not significantly interfere with the ability of the official to perform his government duties." *Myles*, 2016 WL 4366543, at *3 (citation omitted).  They cannot.  Plaintiffs want to depose the heads of two of the largest municipal departments in the country for full, seven-hour depositions.  Taking them away from their official duties and making "unwarranted inquiries into their decision-making process[es]" are exactly what the apex doctrine protects against. *Coleman*, 2008 WL 4300437, at *2.  Strikingly, Plaintiffs fail to address the issue of these depositions interfering with the official duties of Sheriff Villanueva and Fire Chief Osby.  This interference is particularly significant for Fire Chief Osby, whose department is currently on high alert as the County is in the midst of wildfire season.

### 5.     Alternatives or Limitations Must Be Considered

Plaintiffs must show that "the evidence sought is not available through less burdensome means or alternative sources." *Myles*, 2016 WL 4366543, at *3 (citation omitted).  They cannot.  Plaintiffs have already deposed the Sheriff's Chief of Staff and the Captain of the Sheriff's Information Bureau.  (Rodriguez-Sanchirico Decl. ¶ 10.)  They did not seek the depositions of anyone from the Internal Affairs Bureau or the Professional Standards Division (despite individuals from those departments verifying Defendants' interrogatory responses), or an LASD 30(b)(6) deposition, until *after* receiving Defendants' portion of this joint statement.  (*Id*. ¶ 11 n.2.)  *Levingston*, 320 F.R.D. at 528 (holding that party could obtain information about policies from the employees who "develop, administer and train on these policies").

Plaintiffs' delay in pursuing depositions in this case is not a reason to allow them to leapfrog to the apex of the County hierarchy.  It is unclear why Plaintiffs only took two LACFD depositions, and *zero* LASD depositions, between January 1, 2021 and August 17, 2021 (when they finally emailed to ask for dates for eight

1   LASD/LACFD witnesses).  (Rodriguez-Sanchirico Decl. ¶ 13.)

2        Plaintiffs attempt to brush aside the requirement that they exhaust other

3   discovery methods prior to seeking apex depositions, claiming that this is not "an

4   absolute requirement," but is merely "important."  Plaintiffs are wrong.  Courts

5   routinely refuse to allow apex depositions where other means of discovery have yet

6   to be completed.  For example, in *Estate of Silva by and through Allen v. City of San*

7   *Diego*, the court precluded the taking of the *defendant* sheriff's deposition, despite

8   the sheriff possessing personal knowledge on relevant issues in the case, because the

9   plaintiffs did not "exhaust[] less intrusive means of discovery before seeking [the

10  sheriff's] deposition."  No. 18cv2282-L (MSB), 2021 WL 211613, at *5 (S.D. Cal.

11  Jan. 21, 2021).  Similarly, in *Soto v. County of Sacramento*, the court granted a

12  protective order preventing the deposition of the sheriff, *who was a named*

13  *defendant*, because the plaintiffs had "only deposed some of the named defendants"

14  and had not conducted any 30(b)(6) depositions.  2020 WL 5110372, at *2.

15       Indeed, Plaintiffs' own cases support the proposition that an apex deposition

16  of the head of a municipal department, such as a sheriff, is only appropriate after all

17  other means of discovery have been completed.  *See, e.g.*, *Ahlman v. Barnes*, 2021

18  WL 1570838, at *7-8 (denying motion for protective order *after* plaintiffs

19  demonstrated they could not get information through other means, including

20  deposing numerous 30(b)(6) witnesses on the topics plaintiffs identified).  To the

21  extent the Court determines that Sheriff Villanueva and/or Fire Chief Osby have

22  unique personal knowledge that cannot be obtained from other witnesses or an

23  LASD 30(b)(6) deposition on the topics Plaintiffs contend need addressing,

24  Defendants respectfully request that Plaintiffs be ordered to use interrogatories to

25  obtain that information.  *Kyle Eng'g Co.*, 600 F.2d at 231 (affirming order directing

26  agency head to answer interrogatories in lieu of sitting for a deposition).  Plaintiffs

27  have only served 29 interrogatories; the parties agreed they could serve up to 50.

28  (Rodriguez-Sanchirico Decl. ¶ 16; *see* Dkt. 91.)

537199.5                                    23                    Case No. 2:20-cv-09582-JFW-E

STIPULATION REGARDING DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND PLAINTIFFS'
MOTION TO COMPEL DEPOSITIONS OF SHERIFF VILLANUEVA AND CHIEF OSBY

If the Court determines that alternative forms of discovery are not viable here, and that apex depositions are *essential*, Defendants respectfully request that the Court limit the depositions in duration (to two hours) and scope (to unique personal knowledge that Plaintiffs have established they cannot obtain from other sources). *Apple Inc.*, 282 F.R.D. at 265-69 (granting motion for protective order for deposition of one high-level executive and limiting the duration of others to two or three hours).

**B.   Plaintiffs' Statement**

**1.   Legal Standard.**

Defendants misstate the legal standard for apex depositions in three respects.

*First*, Defendants' own authority shows that Defendants, not Plaintiffs, bear the burden of showing why Villanueva and Osby should not be deposed: "[A] party seeking to prevent a deposition carries a heavy burden to show why discovery should be denied." *Apple Inc. v. Samsung Elecs. Co.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012) (citation omitted).[4]  In light of this heavy burden, "it is very unusual for a court to prohibit the taking of a deposition altogether absent extraordinary circumstances." *Apple*, 282 F.R.D. at 263 (quotation marks omitted).

*Second*, Defendants cite *Coleman v. Schwarzenegger*, 2008 WL 4300437, at *2 (E.D. Cal. Sept. 15, 2008), in articulating the legal standard for apex depositions. But courts rarely rely on *Coleman*.[5]  Rather, courts in this District have looked to the

_____

[4] *See also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) ("[A] strong showing is required before a party will be denied entirely the right to take a deposition." (citation and quotation marks omitted)); *Ahlman v. Barnes*, 2021 WL 1570838, at *4 ("A district court has broad discretion to determine whether, on the totality of the record, a party seeking a protective order has met its burden of showing good cause to block an apex deposition.").

[5] Defendants' assertion that courts "routinely" apply *Coleman* is curious given that, according to Westlaw, courts in this District have cited *Coleman* only six times in the thirteen years since it was decided, and not a single time in the past five years.

apex deposition standard set forth in *Apple*: "In determining whether to allow an apex deposition . . . courts consider (1) whether the deponent has unique first-hand, non-repetitive knowledge of facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods." *Ahlman v. Barnes*, 2021 WL 1570838, at \*4 (quoting *Apple*) (allowing deposition of Orange County Sheriff).[6]

Under this standard, "[t]he party seeking to take [an apex] deposition does not need to prove conclusively in advance that the deponent definitely has unique, non-repetitive information; instead, where a corporate officer may have any first-hand knowledge of relevant facts, the deposition should be allowed." *Id.* (quotation marks omitted).[7]  In addition, exhausting other discovery methods is not an "absolute requirement," but rather "an important, but not dispositive, consideration . . . to take into account." *Id.*[8]

*Third*, Defendants rely on *Myles v. Cnty. of San Diego*, 2016 WL 4366543, at \*3 (S.D. Cal. Aug. 15, 2016) for the proposition that Plaintiffs "must" satisfy each prong of an <u>additional</u> five-factor test, including the requirement that "the deposition would not significantly interfere with the ability of the official to perform his

---

[6] *See Khan v. Boohoo.com USA, Inc.*, 2021 WL 3882969, at \*2 (C.D. Cal. July 28, 2021) ("The governing legal standard for prohibiting or limiting the scope of apex witness depositions is set forth in *Apple, Inc. v. Samsung Elecs.*"); *Monster Energy Co. v. Vital Pharm., Inc.*, 2021 WL 3524128, at \*3 (C.D. Cal. May 26, 2021) (applying *Apple* standard); *Alves v. Riverside County*, 2021 WL 3598728, at \*3-4 (C.D. Cal. Apr. 9, 2021) (same); *Ahlman v. Barnes*, 2021 WL 1570838, at \*4 (same).

[7] *See also Alves*, 2021 WL 3598728, at \*4 (same); *Monster Energy*, 2021 WL 3524128 at \*3 (same); *Novoa v. Geo Grp., Inc.*, 2020 WL 2501382, at \*2 (C.D. Cal. Jan. 2, 2020) (same).

[8] *Alves*, 2021 WL 3598728 at \*4 (same); *Monster Energy*, 2021 WL 3524128 at \*3 (same); *Novoa v. Geo Grp., Inc.*, 2020 WL 2501382, at \*2 (C.D. Cal. Jan. 2, 2020) (same).

537199.5

25

Case No. 2:20-cv-09582-JFW-E

STIPULATION REGARDING DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND PLAINTIFFS'
MOTION TO COMPEL DEPOSITIONS OF SHERIFF VILLANUEVA AND CHIEF OSBY

government duties."  No court in this District has ever cited *Myles*.  In fact, courts have routinely held that "the fact that the apex witness has a busy schedule is simply not a basis for foreclosing otherwise proper discovery."  *Luxottica Group S.p.A. v. Liquidity Services, Inc.*, 2019 WL 2620727, at \*3 (C.D. Cal. May 24, 2019); *Smith v. City of Stockton*, 2017 WL 11435161, at \*3 (E.D. Cal. Mar. 27, 2017) (denying protective order for police chief's deposition and holding that "[a] busy schedule is not sufficient to meet defendants' Rule 26(c) burden, and is an insufficient basis for precluding a deposition even under the 'apex' doctrine").

Under the correct legal standards, Plaintiffs are entitled to depose Villanueva and Osby.

### 2. **Plaintiffs Are Entitled to Depose Sheriff Villanueva and Chief Osby Because They Were Named in Defendants' Rule 26 Disclosures.**

Both the County and Sheriff's Department's Rule 26 disclosures identified Sheriff Villanueva as a person who "may have discoverable information regarding their defenses."  (Lavoie Decl. Ex. B (COLA/LASD's Suppl. Disclosures) at 2-3.)  Indeed, after Vanessa Bryant's name, Sheriff Villanueva was the first person listed.  (*Id.* at 3.)  Similarly, the Fire Department's disclosures list Chief Osby as a person who "may have discoverable information regarding its defenses."  (Lavoie Decl. Ex. D (LAFD Disclosures) at 4.)

This alone counsels in favor of denying Defendants' motion.  *See Oakley, Inc. v. Neff, LLC*, 2015 WL 4479424, at \*2 (S.D. Cal. July 21, 2015) (denying motion for protective order for apex deponent where defendant identified high-ranking executive in Rule 26 disclosures and thereby "conceded that [he] has knowledge of matters relevant to the litigation"); *Sawla v. B.E. Aerospace Inc.*, 2017 WL 11635761, at \*1-3 (C.D. Cal. May 3, 2017) (holding that party could not claim in Rule 26 disclosures that a witness "possess[ed] discoverable information that may support [his] claims" and "simultaneously seek to block Defendant from seeking

any further discovery from [the witness], claiming that he has no relevant information"); *Bagley v. Blagojevich*, 486 F. Supp. 2d 786, 789-90 (C.D. Ill. 2007) (allowing deposition of Illinois Governor where defendants had listed him in their Rule 26 disclosures).[9]

### 3. Plaintiffs Are Entitled to Depose Sheriff Villanueva and Chief Osby Because They Have Not Disclaimed Personal Knowledge Via Declarations.

The Court also should deny Defendants' request for a protective order because their assertions that Sheriff Villanueva and Chief Osby lack personal knowledge are not supported by competent evidence.  Defendants repeatedly cite *Estate of Levingston v. Cnty. of Kern*, 320 F.R.D. 520, 528 (E.D. Cal. 2017), but in that case the court relied on a sworn declaration from the apex official at issue asserting that he lacked knowledge relevant to the case.  Indeed, countless cases *allow* apex depositions of high-ranking officials *despite* a declaration from the official stating that they lack personal knowledge.[10]  Here, Sheriff Villanueva and Chief Osby have not submitted declarations disclaiming personal knowledge.  Accordingly, there is no basis to conclude that they lack personal knowledge of

---

[9] Other cases are legion.  *See Alexander v. 1328 Uptown, Inc.*, 2019 WL 4929931, at *5-6 (D. Minn. Oct. 7, 2019) (denying motion to quash where persons to be deposed were listed in moving party's Rule 26 disclosures); *Fugett v. Sec. Transp. Servs., Inc.*, 2015 WL 419716, at *3-5 (D. Kan. Feb. 2, 2015) (denying motion to quash where person to be deposed was listed in moving party's Rule 26 disclosures); *Ed Tobergte Assocs. Co. v. Russell Brands, LLC*, 259 F.R.D. 550, 555-557 (D. Kan. 2009) (same); *WIII Uptown, LLC v. B&P Restaurant Grp., LLC*, 2016 WL 4620200, at *5-6 (M.D. La. Sept. 6, 2016) (same).

[10] *See, e.g.*, *Green v. Baca*, 226 F.R.D. 624, 648-49 & n.47 (C.D. Cal. 2005) (holding that LA County Sheriff could be compelled to testify at trial *despite* Sheriff's declaration disclaiming personal knowledge); *Smith v. City of Stockton*, 2017 WL 11435161, at *3 (E.D. Cal. Mar. 27, 2017) (denying protective order regarding police chief's deposition *despite* chief submitting declaration that he had "no personal knowledge to contribute").

1  relevant facts.  Defendants' arguments to the contrary are just that—argument.  The

2  Court should not preclude Plaintiff from taking testimony based on defense

3  counsel's representations about what those witnesses know or would say.

### 4.   Sheriff Villanueva Possesses a Wealth of Unique Personal Knowledge That Cannot Be Obtained from Other Sources.

As explained below, discovery shows that Sheriff Villanueva played a key

role in the events at issue in this litigation and has first-hand knowledge of those

events.

### (a)   Sheriff Villanueva Discussed the Photos in Conversations that Other Participants Do Not Fully Remember.

According to deposition testimony taken so far, Sheriff Villanueva had

approximately three telephone calls with Captain Jorge Valdez and Lieutenant John

Satterfield on January 30 and 31, 2020, during which he was briefed on the

"inquiry" being conducted in response to the citizen complaint and the Sheriff

directed them how to proceed.  (Lavoie Decl. Ex. J (Valdez Dep.) at 109:6-13;

143:14-18; 158:23-160:2; 172:6-173:7.)  Valdez and Satterfield then relayed

Villanueva's orders to the highest-ranking personnel at the Lost Hills Station,

Captain Matthew Vander Horck and Lieutenant Hector Mancinas, and they in turn

interacted with the personnel who had been present at the crash site, including the

Deputy Defendants.  (*Id.*)

Valdez and Satterfield have already been deposed, but both testified that they

do not remember critical aspects of their calls with Sheriff Villanueva.  (Lavoie

Decl. Ex. K (Satterfield Dep.) at 103:16-105:25; *id.* Ex. J (Valdez Dep.) at 160:3-

25.)  Plaintiffs have exhausted every avenue of discovery regarding these

conversations, and Mrs. Bryant is now entitled to examine Sheriff Villanueva

regarding his recollection of them.  Mrs. Bryant also must be allowed to discover

whether Sheriff Villanueva discussed the photos with others in the Department

1 | besides Valdez and Satterfield.

2 |         **(b)**    **Sheriff Villanueva Must Clarify the Record Regarding**

3 |                     **His Orders to Delete Evidence.**

4 |       The County has taken the position that Sheriff Villanueva ordered deletion of

5 | the photos out of concern for the victims' families.  For example, the County's

6 | interrogatory responses state:

7 |       When he learned what had happened, **Sheriff Villanueva ordered all**
**Malibu/Lost Hills Station personnel who were involved in the**

8 | **helicopter crash investigation to respond to the station**.  The goal
was to immediately ascertain the existence of any crash site photos that

9 | contained human remains, halt any improper dissemination, and
identify any additional personnel who could have shared photos.  **To**

10 | **accomplish that goal, LASD told everyone involved that if they**
were truthful, **deleted the photos**, and had not shared any photos

11 | publicly, **they would receive a performance log entry** ("PLE") in lieu
of discipline.

12 | (Lavoie Decl. Ex. F (County Responses to Interrogatories) at 9-10.)

13 |       At deposition, Lt. Hector Mancinas testified that he understood the directive

14 | to delete photos to have come from the Sheriff:

15 |    Question:    [W]hat did you discuss with Captain Valdez and Lieutenant
Satterfield on these phone calls?

16 |

17 |    Mancinas:    They wanted me to identify personnel that had taken
photographs at the scene of the crash.

18 |    Question:    Did they also order you to identify persons with whom people

19 | present at the crash site had shared any photos of the crash site?

20 |    Mancinas:    Yes.

21 |    Question:    Did – did they order you to ensure that any photos of the crash
site were deleted?

22 |

23 |    Mancinas:    Correct.

24 |    Question:    Was it your understanding at the time that these orders came
from the sheriff?

25 |    Mancinas:    Correct.

26 | (*Id.* Ex I (Mancinas Dep.) at 49:6-19.)  Sergeant Marcus Phillips, who worked

27 | alongside Lt. Mancinas in talking to Lost Hills personnel who had been at the

28 | accident scene, testified similarly.  (*See id.* Ex. L (Phillips Dep.) at 43:8-14 ("[Lt.

1  Mancinas] told me that . . . per the [S]heriff we were to call the deputies in that were

2  suspected of either taking photos or having photos and that the [S]heriff's direction

3  was to have those photos deleted.").)

4       Other evidence also ties Sheriff Villanueva to the deletion.  Alarmed upon

5  learning of Sheriff Villanueva's deletion order, Captain Matthew Vander Horck of

6  the Malibu / Lost Hills Sheriff's Station called his supervisor on January 30, 2020,

7  to express concern.  (Lavoie Decl. ¶ 19.)  Vander Horck said: "[H]ow do we know

8  that we're not breaking some obscure federal law that we're not aware of?  And if

9  so, then are we telling them by deleting these photographs that we're destroying

10 evidence?"  (*Id.*)  Vander Horck reminded his supervisor that "the last time our

11 deputies got instructions from our executives in a federal case they were arrested

12 and tried for crimes, just to get to those executives."  (*Id.*)  A short while later,

13 Vander Horck's supervisor called him and stated: "[T]his is what the Sheriff wants

14 and so we're gonna go ahead and . . . continue what you're doing."  (*Id.*)

15      However, Valdez and Satterfield testified that they could not remember

16 whether the Sheriff ordered photos to be deleted.

17                        <u>Captain Jorge Valdez</u>

18   <u>Question:</u>   Was the word "delete" ever uttered during this call with the
                    sheriff?
19
     <u>Valdez:</u>     I don't recall.
20
     <u>Question:</u>   You don't recall as in you don't think it was, or you don't know
21                  whether it was or not?

22   <u>Valdez:</u>     I don't – I don't remember.

23   <u>Question:</u>   If the sheriff had said something to the effect of, "I want the
                    relevant personnel to delete the photos of the accident scene," do
24                  you think a statement like that would have been memorable to
                    you?
25
     <u>Valdez:</u>     Yes.
26
     <u>Question:</u>   But you don't remember him making a statement like that; is that
27                  right?

28                  [Objection]

1    <u>Valdez:</u>    I don't remember.[11]

2                             * * * * *

3                        <u>Lt. John Satterfield</u>

4    <u>Question:</u>    In any of your conversations with Sheriff Villanueva in the days
5                 after this allegation was received from the citizen, was the word
                 "delete" mentioned?

6    <u>Satterfield:</u>  I don't recall.

7                 …

8    <u>Question:</u>    Is it possible that during your call with Sheriff Villanueva, that
9                 he ordered or encouraged the personnel who had any photos of
                 the accident site to delete them?

10               [Objection.]

11   <u>Satterfield:</u>  I don't recall to the point where I could answer that question.

12               …

13   <u>Question:</u>    Do you think it would be memorable if you had a conversation
14               with Sheriff Villanueva in which he said that he wanted
                 department personnel to delete photos of an accident scene?

15               [Objection.]

16   <u>Satterfield:</u>  I obviously don't recall it; so if it did occur; it wasn't very
17               memorable.  If it didn't occur, there's no way for me to recall
                 it.[12]

18        Plaintiffs are entitled to depose Sheriff Villanueva on this issue to clarify the

19   record as to whether he directed the deletion of photos.  *See Smith v. City of*

20   *Stockton*, 2017 WL 11435161, at *5 (E.D. Cal. Mar. 27, 2017) (ordering deposition

21   where chief of police "had, or at least might have had, a direct hand in the training,

22   supervision and control of his own police officers").

23        Defendants' interrogatory responses and the testimony of their witnesses is

24   troubling.  They suggest that the Sheriff, a law enforcement officer, directed

25   subordinates to destroy evidence of potential misconduct alleged in a citizen

---

[11] Lavoie Decl. Ex. J (Valdez Dep.) at 160:3-25.

[12] Lavoie Decl. Ex. K (Satterfield Dep.) at 103:16-105:25.

complaint.  This, in turn, suggests awareness of wrongdoing.  To the extent that Defendants are going to argue that the deletion was a benevolent effort to protect the victims' families, Plaintiffs are entitled to depose Sherriff Villanueva to ascertain his state of mind and rebut Defendants' arguments.  *Cf. Freedom from Religion Found., Inc. v. Abbott*, 2017 WL 4582804, at *10-12 (W.D. Tex. Oct. 13, 2017) (allowing deposition of Texas Governor Greg Abbott where Abbott had "first-hand knowledge of his own motives" in taking the challenged action and "there is no alternative source from which [plaintiff] could acquire this knowledge").

The destruction of evidence also raises serious questions about spoliation. Sheriff Villanueva's intent in ordering the deletion is relevant to that issue and to whether any sanctions are appropriate.  *See Apple, Inc. v. Samsung Elecs., Co.*, 888 F. Supp. 2d 976, 992 (N.D. Cal. 2012) (in considering what spoliation sanction to impose, courts consider "the degree of fault of the party who altered or destroyed the evidence"); *Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 626 (C.D. Cal. 2013) (adverse inference for spoliation requires a showing that records were destroyed "with a culpable state of mind").  Plaintiffs are entitled to depose Villanueva on that issue as well, and no other witness (such as a Department 30(b)(6)) can competently testify regarding the thoughts that were running through the Sheriff's mind when he ordered personnel to delete the photos.[13]

---

[13] Defendants assert that "[t]he County and its departments are only directly named on the *Monell* claim" and "[t]he inquiry is thus whether Sheriff Villanueva and Fire Chief Osby have any relevant, first-hand information essential to the *Monell* claim that cannot be obtained through less burdensome means or alternative sources." Defendants are mistaken, as Plaintiffs have named the County, Sheriff's Department, and Fire Department as defendants on their claims for negligence and invasion of privacy.  (*See, e.g.*, Lavoie Decl. Ex. A (Bryant FAC) at 34, 37.) Although these tort claims are based on a vicarious liability theory, Villanueva and Osby's failure (as agents of their employers) to preserve evidence—and in some cases their affirmative efforts to destroy evidence—will be highly relevant to these tort claims, in addition to the *Monell* claim.

537199.5                                                                                      Case No. 2:20-cv-09582-JFW-E

32

STIPULATION REGARDING DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND PLAINTIFFS'
MOTION TO COMPEL DEPOSITIONS OF SHERIFF VILLANUEVA AND CHIEF OSBY

**(c)** **Sheriff Villanueva Described His Deputies' Conduct as "Wildly Inappropriate" and "Disgusting."**

One element Plaintiffs will be required to prove as part of their § 1983 claim is that Defendants violated their substantive due process rights in a manner that "shocks the conscience." *See Gantt v. City of Los Angeles*, 717 F.3d 702, 707 (9th Cir. 2013). Regarding this point, Plaintiffs intend to question Sheriff Villanueva regarding his public statements that the deputies' conduct was "wildly inappropriate" and "disgusting."[14] Only Sheriff Villanueva can speak to why he believed this.

**(d)** **Sheriff Villanueva Has Personally Stated that Prior Policies Were "Deficient."**

Plaintiffs contend that, by failing to establish a policy or procedure addressing the treatment of human remains, including the taking and sharing of photographs of human remains without any legitimate governmental purpose, the County and Sheriff's Department are liable for the violations of Plaintiffs' constitutional rights under *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978). *See Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1194-96 (9th Cir. 2002) (jury could find that omission in County's policy related to inmate medications constituted deliberate indifference to inmate's medical needs).

Sheriff Villanueva has made comments relevant to this issue. In a letter to the Los Angeles County Inspector General dated March 4, 2020, Sheriff Villanueva stated: "It is evident our photograph policy is deficient and this incident has identified a need for me to direct the creation of [a] new policy regarding the taking, possession, [and] distribution of photographs and recordings, etc., by on-duty LASD personnel." (Lavoie Decl. Ex. N (Villanueva Letter) at 2.) Only Sheriff Villanueva

---

[14] https://www.facebook.com/watch/live/?v=875675446231021&ref=watch_permalink.

can speak to these comments and, as the head policymaker for the Sheriff's Department, he is subject to deposition on this point.  *See Green v. Baca*, 226 F.R.D. 624, 649 (C.D. Cal. 2005) (holding that Sheriff Lee Baca could be compelled to testify in *Monell* action because, "as Los Angeles County Sheriff, [he] is the final policymaker for the County in setting and implementing jail release policies"); *Ahlman v. Barnes*, 2021 WL 1570838, at *5 (sheriff subject to deposition in suit regarding COVID-19 policies in county jail because "the best person to provide such information is the final policymaker, Sheriff Barnes"); *Lull v. Cnty. of Sacramento*, 2020 WL 4547166, at *2 (E.D. Cal. Aug. 6, 2020) (allowing deposition of county finance director in § 1983 action where evidence indicated the director "was involved in the process of drafting" the challenged policy).

In addition, since the helicopter crash, Sheriff Villanueva  shepherded the creation of a new policy regarding photographs of human remains.  In a television interview on March 2, 2020, Sheriff Villanueva stated: "[We're] redoing the entire policies and we're creating new ones that are very specific, with teeth in 'em, all up to including a penalty of discharge for a violation of those policies."  (Lavoie Decl. ¶ 22.)  That same day, Sheriff Villanueva stated at a press conference: "We're trying to put an end to this.  We're changing our policies to be very specific."[15]  Only Sheriff Villanueva can competently testify regarding why he himself (as the leader of the Sheriff's Department) believed this new policy was necessary and how it improved on the Department's past policy.  *See Smith v. City of Stockton*, 2017 WL 11435161, at *4 (E.D. Cal. Mar. 27, 2017) (denying protective order for police chief's deposition where chief was "the author of the officer-involved shooting policy adopted after the shooting at issue here").

---

[15] https://www.facebook.com/watch/live/?v=875675446231021&ref=watch_ permalink.

**(e)** **Sheriff Villanueva Personally Decided Not to Discipline Any of the Offending Deputies.**

According to Defendants' interrogatory responses, Sheriff Villanueva personally made the decision to forego discipline for deputies who took or shared photos of the victims' remains.[16]  Plaintiffs are entitled to examine Sheriff Villanueva on this decision because "a municipal defendant's failure to fire or reprimand officers evidences a policy of deliberate indifference to their misconduct."  *See Henry v. Cnty. of Shasta*, 132 F.3d 512, 519-20 (9th Cir. 1997); *see also Smith v. City of Stockton*, 2017 WL 11435161, at *3-5 (E.D. Cal. Mar. 27, 2017) (holding plaintiff was entitled to depose chief of policy in *Monell* case "to find out why [he] decided not to discipline the officers involved in this case").  No other witness (such as a Department 30(b)(6)) could competently testify to Sheriff Villanueva's thinking for punishing or not punishing certain personnel.

**(f)** **Sheriff Villanueva Stated that His Deputies' Conduct "Harm[ed] People Who Suffered a Tragedy Already."**

Defendants have implied that Plaintiffs cannot have suffered emotional distress from the sharing of photos of their loved ones' remains because Plaintiffs have yet to confront the images of their deceased loved ones' on the internet. However, Sheriff Villanueva himself stated publicly that unnecessary photos of human remains "harm[] people [who] suffered a tragedy already" by introducing the possibility "that it could be expanded beyond that by having a public display of their loved ones' remains."[17]  Plaintiffs should be allowed to question Sheriff Villanueva regarding those statements, which only he himself can competently explain.

---

[16] Sheriff Villanueva apparently ordered that the offending personnel be given performance log entries, which are not discipline under Department policy.  (*See* Lavoie Decl. Ex. K (Satterfield Dep.) at 51:13-23.)

[17] https://www.facebook.com/watch/live/?v=875675446231021&ref=watch_permalink.

**(g)** **Sheriff Villanueva Has Personally Expressed**

**Confidence that All Photos Have Been Contained.**

Defendants presumably plan to argue at trial that they successfully contained the spread of the photos.  For example, in public comments on March 2, 2020, Sheriff Villanueva stated: "[T]he photos were deleted, that we know.  All photos that we know of that were in the possession of the individuals have been deleted.  And . . . we're hoping that that is the outcome of this, that there is no photos to be circulated anywhere."[18]  If Defendants intend to make assertions like this at trial in an effort to minimize Plaintiffs' emotional distress, Plaintiffs must be entitled to question Defendants' witnesses—including Sheriff Villanueva—regarding the basis for their belief that all improper photos have been destroyed.

**(h)** **Sheriff Villanueva Has Made Public Statements About**

**His Experience With Improper Handling of Photos of**

**Human Remains.**

In the days after the *LA Times* report regarding the photos, Sheriff Villanueva addressed reporters at a press conference, during which he made the following statement?

> [U]nfortunately, ever since they invented the polaroid camera, this has been a problem in law enforcement across the nation, probably across the world, because it just makes it so much easier.  And then there's—there's, uh, cops—they keep death books, for example, where they—they have, uh, photos from crime scenes throughout their careers.  That's a macabre idea, but some do that.  And, uh, why?  I don't want to get into the psychology of people's decisions.[19]

The Sheriff made similar comments to the *LA Times* as part of its initial reporting on the photos, stating: "Every police department struggles with the same thing, where

---

[18] https://abc7.com/kobe-bryant-crash-helicopter-death/5980138/#:~:text=%3E-,Los%20Angeles%20County%20Sheriff%20Alex%20Villanueva%20said%20eight%20deputies%20were,and%20eight%20others%20in%20January.

[19] https://www.facebook.com/watch/live/?v=875675446231021&ref=watch_permalink.

36

Case No. 2:20-cv-09582-JFW-E

people take photos and they're not evidence.  So that's a practice we have to make sure that everyone walks away, and there is no evidence than the official photos of evidence that are taken for criminal purposes."[20]

Plaintiffs are entitled to explore the full extent of Sheriff Villanueva's knowledge of law enforcement officers keeping "death books" and taking improper photos of human remains, as it is relevant to their claim that the County and Sheriff's Department acted with deliberate indifference to their constitutional rights. *See Smith v. City of Stockton*, 2017 WL 11435161, at *3-4 (E.D. Cal. Mar. 27, 2017) (ordering police chief's deposition where plaintiff alleged the chief had "personal knowledge of serious problems—problems of constitutional dimension—with his officers' use of deadly force against unarmed African-American men during vehicle stops" and the chief's "own implementation (or failure to implement) a policy regarding use of force prior to the shooting").

Defendants' only response is to say that Sheriff Villanueva's comment about death books was, "on its face, not talking about LASD."  Counsel's characterization simply underscores the need to depose Sheriff Villanueva himself.

### (i)  <u>Sheriff Villanueva Made Personal Promises to Plaintiff Vanessa Bryant on the Day of the Accident.</u>

Defendants appear poised to argue that Plaintiffs are somehow exaggerating the emotional distress they have experienced due to the photos.  But any such argument is belied by conversations that occurred on the day of the accident.  In the hours after the crash, family members of the victims gathered at the nearby Sheriff's station in Lost Hills, where Plaintiff Vanessa Bryant spoke to Sheriff Villanueva and

---

[20] Alene Tchekmedyian & Paul Pringle, *Deputies Were Ordered to Delete Kobe Bryant Crash Photos to Avoid Discipline, Sources Say*, LA Times (Feb. 28, 2020), https://www.latimes.com/california/story/2020-02-28/kobe-bryant-crash-photos-sheriffs-deputies#:~:text=In%20an%20attempt%20to%20keep,sources%20with%20knowledge%20of%20the

expressed concern that the crash site was unprotected from photographers. (Lavoie Decl. Ex. A (Bryant FAC) ¶ 2.) In response, Sheriff Villanueva assured her that his deputies were securing the scene. (*Id.*) In other words, one of Mrs. Bryant's very first thoughts upon learning of the loss of her husband and daughter was to protect them from unauthorized photography. Unless Defendants will concede this aspect of her emotional distress damages, Mrs. Bryant is entitled to depose Sheriff Villanueva about these conversations to avoid unfair surprise at trial if he denies what occurred.

### (j)   Sheriff Villanueva Appears to Have Personal Knowledge About Why an Investigation Through Standard Processes Was Halted

Finally, there is evidence that Sheriff Villanueva has personal knowledge with respect to why an investigation through the chain of command was halted. As noted, Captain Vander Horck began the process of investigating the citizen complaint to the Lost Hills Station. However, evidence suggests that this process was cut short by officials outside the chain of command who ordered deputies to report to the Station to delete the photos. Vander Horck called his supervisor on January 30, 2020, to express concern that this course of action was highly unusual and perhaps unlawful. (Lavoie Decl. ¶ 19.) However, Vander Horck's supervisor called and stated: "[T]his is what the Sheriff wants and so we're gonna go ahead and . . . continue what you're doing." (*Id.*) Sheriff Villanueva must answer questions about why he halted the process of investigating the citizen complaint through standard processes.

### 5.   Chief Osby Has Extensive Personal Knowledge that Cannot Be Obtained from Other Sources.

Plaintiffs have adduced evidence that Chief Osby has unique personal knowledge that is highly relevant to Plaintiffs' claims.

### (a)   Osby Spoke Directly With Villanueva on January 31, 2020.

On January 31, 2020, the Sheriff's Department learned that a deputy had observed one firefighter taking photos of the victims' remains and had personally Airdropped his own photos of remains to a second firefighter.  (Lavoie Decl. Ex. H (McCloud Dep.) at 58:20-59:16.)  That same day, Captain Matthew Vander Horck relayed this information to the Fire Department by phone.  (*Id.*)  The Fire Department also learned that Sheriff Villanueva wanted to talk to Chief Osby about the situation.  (*Id.*)  The two department heads spoke by phone on January 31.  (*Id.* at 67:18-68:1.)  Plaintiffs inquired about this call during the Fire Department's 30(b)(6) deposition:

> Question:  Did a conversation ever take place between the sheriff and [Chief Osby] about the information you had received from Captain Vander Horck?
>
> Witness:  I believe there was a conversation . . . I was not part of the conversation, nor did I hear the conversation.  But I do believe that there was a conversation, and I cannot remember how I verified that.  But I do believe that they spoke.
>
> …
>
> Question:  And what can you tell me about the substance of that conversation between Sheriff Villanueva and Chief Osby on January 31st?
>
> Witness:  I cannot tell you any of the specifics of their conversation.  I – in general, it was regarding the Willow incident and the behavior of our firefighters and related to that incident.  And I think that's as much detail as I can get into.
>
> Question:  So beyond the general subject matter of the conversation, you're not prepared to tell me anything else about what was – what was talked about?
>
> Witness:  No, I'm not.

(*Id.* at 67:5-68:13.)  The only way for Plaintiffs to discover what was said during the one-on-one conversation between Sheriff Villanueva and Chief Osby, the two top policymakers at issue in this case, is to depose them.

**(b)**   <u>**Osby Spoke Directly with Chief William McCloud**</u>
<u>**about the Misconduct by Fire Department Personnel.**</u>

One of the Fire Department's 30(b)(6) witnesses, Chief William McCloud, testified that he had a direct conversation with Chief Osby regarding the intelligence from the Sheriff's Department that two members of the Fire Department had obtained improper photos of the victims' remains.  However, when testifying about the content of the call, McCloud did not recall what Chief Osby said during the conversation.  (Lavoie Decl. Ex. H (McCloud Dep.) at 62:8-10 ("I don't remember exactly what he [i.e., Osby] said to me.").)  Weeks later, after a citizen complained to the Fire Department that she had observed a firefighter showing off photos of the victims' remains to a group of off-duty firefighters and their wives and girlfriends while having cocktails at an awards ceremony at a Hilton hotel, Chief McCloud informed Chief Osby of the complaint.  But Chief McCloud could not recall any of the specifics of that conversation either.  (*Id.* at 94:8-12 ("Again, I cannot remember the specific call.").)  Plaintiffs are entitled to depose Chief Osby about his recollection of both calls.

**(c)**   <u>**Osby Spoke Directly With Battalion Chief Roland**</u>
<u>**Sprewell Regarding the LA Times Report on February**</u>
<u>**28, 2020.**</u>

A document produced by Defendants shows that, at 12:00 p.m. on the day the *LA Times* first reported on the improper photos (February 28, 2020), Chief Osby and Battalion Chief Roland Sprewell had a scheduled call titled: "Kobe Bryant IC." (Lavoie Decl. Ex. O (Osby Calendar Invite) at 1.)  Plaintiffs are entitled to discover what was said during this call.  Defendants have asserted that Battalion Chief Sprewell (the only other participant in the conversation) is on a leave of absence and unavailable for deposition, so Plaintiffs can only take testimony about this conversation by deposing Chief Osby.

537199.5

40

Case No. 2:20-cv-09582-JFW-E

STIPULATION REGARDING DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND PLAINTIFFS'
MOTION TO COMPEL DEPOSITIONS OF SHERIFF VILLANUEVA AND CHIEF OSBY

**(d)    Osby's Testimony is Relevant to Numerous Other Issues as Well.**

Chief Osby also has first-hand knowledge of other issues that are relevant.

*First*, Chief Osby must explain why he did not take action to investigate the improper photos until receiving a citizen complaint.  As noted above, just a few days after the accident, Chief Osby learned that at least two firefighters had obtained improper photos of the victims' remains.  Despite learning this information on January 31, 2020, the Fire Department did not launch an internal investigation, conduct interviews of the personnel who responded to the scene, or examine any devices of those personnel for more than a month, when on March 6, 2020, the citizen lodged her complaint about the public display she had observed over cocktails at the awards ceremony.  (Lavoie Decl. Ex. H (McCloud Dep.) at 80:21-81:23, 86:4-19, 89:20-25.)

Plaintiffs need to question Chief Osby about this inexplicable delay because the Fire Department's inaction increases the chances that the photos were disseminated, currently exist in the public realm, and could surface at some point in the future.  Moreover, discovery suggests that evidence of the firefighters' misconduct was destroyed between January 31 and March 6, 2020, including evidence that was housed on Department-owned electronic devices.  (*See* Lavoie Decl. ¶ 19.)  Chief Osby's state of mind is relevant to the legal consequences of that destruction.  *See Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 626 (C.D. Cal. 2013) (adverse inference for spoliation requires a showing that records were destroyed "with a culpable state of mind").

*Second*, as the chief policymaker for the Fire Department, Chief Osby is the best possible witness regarding whether the Department's then-existing policies were adequate to prevent violations of the constitutional right to control the death images of loved ones.  He is likewise best positioned to testify regarding the Department's creation of a new policy that provides guidance on inappropriate

1   photographs, as the Department has already acknowledged that Chief Osby was a

2   driving force behind the adoption of the new policy.  (Lavoie Decl. Ex. H (McCloud

3   Dep.) at 185:10-24 (identifying Chief Osby as part of the executive team involved in

4   reevaluating the effectiveness of the Department's policies), 188:15-25 ("I think the

5   chief [Osby] said it best . . . we owe it to the communities that we serve, we owe it

6   to the employees to get better; and part of that getting better; part of that corrective

7   action plan, if you will, is for us to communicate to everyone within the department

8   how we can get better.").)  Chief Osby's awareness of the problem of improper

9   photo sharing among first responders and any prior incidents in the Department is

10  also relevant.

11         *Third*, given the high-profile nature of the matter, it seems likely that Chief

12  Osby was the final decision-maker in attempting to terminate two firefighters and

13  suspend a third related to their conduct with the improper photos.  Chief Osby's

14  testimony on that issue is relevant to whether the conduct at issue "shocked the

15  conscience" as well as to the Department's culpability for sitting on its hands after

16  learning that members of its Department had potentially taken and received

17  improper death photographs.

18         **6.     There Is No Basis to Limit the Depositions or for Use of**

19         **Interrogatories as an Alternative.**

20         Limiting Plaintiffs to serving interrogatory responses on Sheriff Villanueva

21  and Chief Osby would be grossly unfair to Plaintiffs.  Interrogatory responses

22  drafted by Defendants' lawyers would be no substitute for live questioning, where

23  evasive answers can be followed up on and the witness can be pinned down.

24  Presumably that is why Defendants insisted on deposing Plaintiffs, who have or will

25  be sitting for a full day of deposition despite the inevitable pain of testifying about

26  matters related to the deaths of their spouses, children, and parents, and the pain

27  caused by firefighters and law enforcement officers gawking at photos of their

28  remains.  If Plaintiffs can endure a full day of deposition, surely Sheriff Villanueva

1    and Chief Osby can as well.

2        Interrogatories also would be impractical given the case schedule.  Because

3    Defendants waited until the eleventh hour to object to Sheriff Villanueva's and

4    Chief Osby's depositions, any disputes regarding interrogatories likely could not be

5    resolved before the discovery deadline of November 29, 2021.  *See Mansourian v.*

6    *Bd. of Regents*, 2007 WL 4557104, at *1-4 (E.D. Cal. Dec. 21, 2007) (allowing

7    deposition and holding that "even if plaintiffs were required to seek discovery from

8    [the apex deponent] via interrogatories or other such devices, the impending

9    discovery deadline leaves plaintiffs little time to effect such alternative discovery,

10   especially if a dispute were to arise as to the sufficiency of the responses").

11       Both Sheriff Villanueva and Chief Osby should be ordered to sit for the usual

12   seven hours provided by rule.

13              **7.    Defendants' Position with Respect to Sheriff Villanueva Is**

14                      **Frivolous and Continues a Pattern of Discovery Abuse.**

15       The County's arguments with respect to Sheriff Villanueva are frivolous,

16   constitute discovery abuse, and continue a pattern of forcing Mrs. Bryant to file

17   motions to obtain basic discovery.

18       As the Court will recall, the County began this litigation by forcing Mrs.

19   Bryant to move to compel production of the Sheriff's Department internal

20   investigation report ("IA Report") related to the improper photos—a document the

21   County itself described as "contain[ing] all of the information Plaintiff is seeking,

22   including the names of all witnesses who are likely to have discoverable information

23   regarding her claims and Defendants' defenses."  (Lavoie Decl. Ex. P

24   (COLA/LASD Initial Disclosures) at 3.)  The Court promptly ordered production of

25   the IA Report, but the County still profited off its baseless position by burning

26   nearly three months of Mrs. Bryant's precious discovery window, during which time

27   no documents were produced and no depositions could occur.

28       More recently, Defendants forced Mrs. Bryant to move to compel several

categories of documents that are obviously relevant.  To cite just two examples, the County refused to produce documents related to its employees scrapbooking gratuitous photos of human remains (despite Sheriff Villanueva's public statement that some officers keep "death books" of such photos) and documents related to the training deputies receive regarding the federal constitutional right to control death images of loved ones (the very right at issue in Mrs. Bryant's § 1983 claim).  The Court granted Mrs. Bryant's motion to compel in every material respect, but the dispute created unnecessary challenges in completing discovery on the current schedule.

With regard to the present dispute, Defendants listed Sheriff Villanueva and Chief Osby on their Rule 26 disclosures, thereby acknowledging that they "likely [] have discoverable information . . . that [Defendants] may use to support [their] claims or defenses."  Fed. R. Civ. P. 26(a)(1)(A)(i).  Later, when Plaintiffs wrote to Defendants with a list of deponents that included Sheriff Villanueva and Chief Osby, Defendants responded that "[n]othing strikes us as objectionable right now," aside from the number of depositions sought.  (Lavoie Decl. Ex E (Email re Consolidation) at 1.)  Then, with only eight weeks to go before the discovery deadline, Defendants raised for the first time that they would not make Sheriff Villanueva and Chief Osby available for deposition.  (Rodriguez-Sanchirico Decl., Ex F at 413.)

As with the IA Report, Defendants are again poised to profit from their discovery abuse, as counsel for Plaintiffs have had to spend precious time preparing this brief in the waning weeks of the discovery period and, in doing so, have been forced to disclose the topics on which they plan to depose important witnesses.

Plaintiffs considered seeking fees and/or sanctions in connection with this motion, as the County's frivolous position and pattern of forcing Plaintiffs to move to compel basic discovery satisfies the standard under the Federal Rules.  However, counsel for Plaintiffs have a practice of exercising restraint in requesting monetary

1    sanctions awards, and, in accordance with that practice, will not do so here.

2    **V.    <u>CONCLUSION</u>**

3          **A.    <u>Defendants' Statement</u>**

4          Defendants respectfully request that the Court grant their motion and issue a

5    protective order barring Plaintiffs from taking the depositions of Sheriff Alex

6    Villanueva and Fire Chief Daryl Osby.  To the extent the Court determines that any

7    of the areas of testimony referenced above are critical to the material issues in this

8    case, Plaintiffs should be ordered to pursue that information through other means

9    (including interrogatories and other witnesses).  If the Court determines that

10   Plaintiffs cannot obtain information about any material issues from any other source,

11   Defendants respectfully request that any ordered depositions be limited in duration

12   (to two hours) and scope (to unique personal knowledge that Plaintiffs have

13   established they cannot obtain from other sources).

14         **B.    <u>Plaintiffs' Statement</u>**

15         Plaintiffs respectfully request that the Court grant the motion to compel and

16   deny Defendants' motion for a protective order.  Plaintiffs further ask that, in light

17   of Plaintiffs' deadline of November 29 to oppose any summary judgment motion

18   filed by Defendants, the Court: (i) order the County to respond within 72 hours of

19   the order with a date for Sheriff Villanueva's and Chief Osby's depositions; and

20   (2) order that the depositions themselves occur within two weeks of the Court's

21   order, each for the duration provided by Federal Rule of Civil Procedure 30(d)(1)—

22   i.e., one day of 7 hours.

23

24

25

26

27

28

1    DATED:  October 15, 2021      OFFICE OF COUNTY COUNSEL

2

3

4                               By:     /s/ Jonathan C. McCaverty

5                                      JONATHAN C. McCAVERTY
                                     Attorneys for Defendant

6                                      LOS ANGELES COUNTY SHERIFF'S
                                     DEPARTMENT

7

8    DATED:  October 15, 2021      MILLER BARONDESS, LLP

9

10

11                             By:     /s/ Jason H. Tokoro

12                                      JASON H. TOKORO
                                     Attorneys for Defendants

13                                      COUNTY OF LOS ANGELES, LOS
                                     ANGELES COUNTY FIRE

14                                      DEPARTMENT, JOEY CRUZ, RAFAEL
                                     MEJIA, MICHAEL RUSSELL, RAUL

15                                      VERSALES, ARLIN KAHAN, and

16                                      TONY IMBRENDA

17

18    DATED:  October 15, 2021      MUNGER, TOLLES & OLSON LLP

19

20

21                             By:     /s/ Luis Li

22                                      LUIS LI
                                     Attorneys for Plaintiff

23                                      VANESSA BRYANT

24

25

26

27

28

STIPULATION REGARDING DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND PLAINTIFFS'
MOTION TO COMPEL DEPOSITIONS OF SHERIFF VILLANUEVA AND CHIEF OSBY

1    DATED:  October 15, 2021          JEROME M. JACKSON LAW OFFICES

2

3

4                                      By: ____/s/ Jerome M. Jackson____

5                                          JEROME M. JACKSON
                                           Attorneys for Plaintiffs
6                                          CHRISTOPHER L. CHESTER; R.C.; and
                                           H.C.
7

8    DATED:  October 15, 2021          PANISH SHEA & BOYLE LLP

9

10

11                                     By: ____/s/ Kevin R. Boyle____

12                                         KEVIN R. BOYLE
                                           Attorneys for Plaintiffs
13                                         MATTHEW MAUSER; T.M.; P.M.;
                                           I.M.; ALEXIS ALTOBELLI and JOHN
14                                         JAMES ALTOBELLI

15

16

17

18

19

20

21

22

23

24

25

26

27

28