LOUIS R. MILLER (State Bar No. 54141)
smiller@millerbarondess.com
MIRA HASHMALL (State Bar No. 216842)
mhashmall@millerbarondess.com
JASON H. TOKORO (State Bar No. 252345)
jtokoro@millerbarondess.com
CASEY B. SYPEK (State Bar No. 291214)
csypek@millerbarondess.com
EMILY A. RODRIGUEZ-SANCHIRICO (State Bar No. 311294)
esanchirico@millerbarondess.com
MILLER BARONDESS, LLP
1999 Avenue of the Stars, Suite 1000
Los Angeles, California 90067
Telephone:   (310) 552-4400
Facsimile:   (310) 552-8400

Attorneys for Defendants
COUNTY OF LOS ANGELES, LOS ANGELES COUNTY FIRE DEPARTMENT,
JOEY CRUZ, RAFAEL MEJIA, MICHAEL RUSSELL, and RAUL VERSALES

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| VANESSA BRYANT,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF LOS ANGELES, et al.,<br><br>Defendants. | **CASE NO. 2:20-cv-09582-JFW-E**<br><br>**DISCOVERY MATTER**<br><br>**JOINT STIPULATION REGARDING DEFENDANT COUNTY OF LOS ANGELES' MOTION TO COMPEL PRODUCTION OF DOCUMENTS**<br><br>Hearing Date:  November 26, 2021<br>Time:          9:30 a.m.<br>Place:         Courtroom 750<br><br>Discovery Cutoff: November 29, 2021<br>Pretrial Conference: February 4, 2022<br>Trial: February 22, 2022<br><br>Assigned to Hon. John F. Walter and Magistrate Judge Charles F. Eick |

**TO ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 26, 2021 at 9:30 a.m., or as soon thereafter as this matter may be heard in Courtroom 750 of the above-captioned Court, located at 255 East Temple Street, Los Angeles, California 90012, Defendant County of Los Angeles ("Defendant" or the "County") will and hereby does move for an order compelling Plaintiff Vanessa Bryant ("Plaintiff" or "Bryant") and her treating therapist to produce documents responsive to the County's Requests for Production and the County's subpoena for documents that are relevant to Plaintiff's claims and the County's defenses in this action.

Pursuant to Federal Rule of Civil Procedure 37(a) and Local Rule 37-2, the County respectfully submits the following Joint Stipulation Regarding Motion to Compel Production of Documents.

This Motion is based upon this Notice of Motion, the Joint Stipulation, the Declaration of Casey B. Sypek and exhibits thereto, and any other papers or argument of counsel that may be filed or submitted in connection with this Motion.

The County contends that it met and conferred in good faith before filing this Motion in accordance with Local Rule 37-1. (*See* Declaration of Casey B. Sypek ¶¶ 13-15, 18-19, Exs. I & K.) Counsel for Mrs. Bryant and Mrs. Bryant's therapist disagree that the County satisfied its meet and confer obligations under Rule 37-1. (*See* Declaration of Mari T. Saigal ¶¶ 2-7.)

1  DATED:  November 5, 2021          MILLER BARONDESS, LLP

2

3                                                    By:  _____

4

5                                                    CASEY B. SYPEK
                                                     Attorneys for Defendants
6                                                    COUNTY OF LOS ANGELES, LOS
                                                     ANGELES COUNTY FIRE
7                                                    DEPARTMENT, JOEY CRUZ, RAFAEL
                                                     MEJIA, MICHAEL RUSSELL, and
8                                                    RAUL VERSALES

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **<u>TABLE OF CONTENTS</u>**

<u>Page</u>

JOINT STIPULATION ................................................................................. 8

I.    INTRODUCTION ................................................................................. 8

    A.   The County's Position ................................................................. 8

    B.   Plaintiff's Position ...................................................................... 10

II.   ISSUES IN DISPUTE: PLAINTIFF'S THERAPY RECORDS .................... 13

    A.   The County's Position ................................................................. 15

        1.   Plaintiff's Therapy Records Are Relevant and Proportional to the Needs of the Case .......................................................... 15

        2.   Plaintiff Waived the Psychotherapist-Patient Privilege ............ 17

        3.   The Other Objections Have No Merit ....................................... 20

    B.   Plaintiff's Position ...................................................................... 21

        1.   The County's Motion Is Untimely ............................................ 21

        2.   The Psychotherapist-Patient Privilege Protects the Requested Records From Disclosure ............................................ 23

            (a)   Legal Standard ................................................................ 23

            (b)   Plaintiff Has Not Put Her Mental Health Records at Issue ................................................................................. 26

        3.   Twelve Years of Therapy Records on All Topics Are Irrelevant and Disproportionate to the Needs of the Case .......... 28

        4.   The County's Request Is Abusive and Harassing ...................... 29

    C.   Plaintiff's Therapist's Position ..................................................... 30

        1.   Issues Related to the Subpoena to Plaintiff's Therapist Are Not Ripe as The County Did Not Meet and Confer Regarding the Subpoena ......................................................... 30

        2.   The County's Request Is Unduly Burdensome and Disproportionate to the Needs of the Case ............................... 32

III.  CONCLUSION .................................................................................. 33

    A.   The County's Position ................................................................. 33

    B.   Plaintiff's Position ...................................................................... 33

# **TABLE OF AUTHORITIES**

**Page**

## **FEDERAL CASES**

*Aardwolf Indus., LLC v. Abaco Machines USA, Inc.*,
    2017 WL 10339007, at *3 (C.D. Cal. Aug. 9, 2017) ................................ 11, 22

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*,
    300 F.R.D. 406 (C.D. Cal. 2014) ...................................................... 32

*Arthrex, Inc. v. Parcus Med., LLC*,
    2011 WL 6415540, at *6 (S.D. Ind. Dec. 21, 2011) ...................................... 32

*Bangoura v. Andre-Boudin Bakeries*,
    No. C 12-3229 MMC (DMR), 2012 WL 5349991 (N.D. Cal. Oct. 29,
    2012) ........................................................................................ 18

*Boyd v. City & Cnty. of San Francisco*,
    2006 WL 1390423, at *6 (N.D. Cal. May 18, 2006) ............................... 24, 25

*Busselman v. Battelle Mem'l Inst.*,
    No. 4:18-cv-05109-SMJ, 2019 WL 7763824 (E.D. Wash. June 18,
    2019) ........................................................................................ 20

*Caesar v. Mountanos*,
    542 F.2d 1064 (9th Cir. 1976),
    *cert. denied*, 430 U.S. 954 (1977) .................................................... 18

*Cf. Pringle v. Wheeler*,
    2021 WL 1907824, at *4 (N.D. Cal. Apr. 16, 2021) .................................... 26

*Copetillo v. Fontana*,
    2020 WL 7861977, at *7 (C.D. Cal. Nov. 24, 2020) .................................... 29

*Curtis Conyers v. Marisa Cano*,
    No. CV 20-3146-JFW (PLAx), 2020 WL 7084546 (C.D. Cal. Sept. 25,
    2020) ................................................................................. 18, 19, 27

*Dickson v. Century Park E. Homeowners Ass'n*,
    2021 WL 3145680, at *2 (C.D. Cal. Mar. 22, 2021) .................................... 31

*Doe v. City of Chula Vista*,
    196 F.R.D. 562 (S.D. Cal. 1999) ................................................. 17, 18, 23

*Enwere v. Terman Assocs., L.P.*,
    No. C 07-1239 JF (PVT), 2008 WL 5146617 (N.D. Cal. Dec. 4, 2008) 17, 18, 27

*Equal Emp. Opportunity Comm'n v. Peters' Bakery*,
    301 F.R.D. 482, 486 (N.D. Cal. 2014) .................................................. 24

*Fitgerald v. Cassil*,
    216 F.R.D. 632 (N.D. Cal. 2003) ................................................. 14, 19, 23

Case No. 2:20-cv-09582-JFW-E

*Hukman v. Sw. Airlines Co.*,
    No. 18cv1204-GPC(RBB), 2019 WL 566451 (S.D. Cal. Feb. 12, 2019).......17

*Jaffee v. Redmond*,
    518 U.S. 1 (1996) ...............................................................................14, 23, 24

*Karimkhani v. Real Time Resolutions, Inc.*,
    No. EDCV 18-730-JGB-KKx, 2019 WL 6139160 (C.D. Cal. Aug. 2,
    2019)....................................................................................9, 18, 19, 27

*Kilroy v. L.A. Unified Sch. Dist. Bd. of Educ.*,
    No. CV 16-09068-DMG (JDE), 2018 WL 6071089 (C.D. Cal. Mar. 7,
    2018).......................................................................................................16

*KST Data, Inc. v. DXC Tech. Co.*,
    344 F. Supp. 3d 1132 (C.D. Cal. 2018)...........................................11, 22

*Larson v. Bailiff*,
    2015 WL 4425660, at *4 (S.D. Cal. July 17, 2015)....................................28

*M.S. v. City of Fontana*,
    2018 WL 6075323, at *4 (C.D. Cal. July 12, 2018) ...................12, 23, 24, 25

*Miller v. York Risk Servs. Grp.*,
    2014 WL 11515634, at *6 (D. Ariz. June 20, 2014)..................................32

*Mnyandu v. Cnty. of Los Angeles*,
    2017 WL 8943166, at *2 (C.D. Cal. Apr. 26, 2017)..................................24

*Nazarian v. City of Beverly Hills*,
    No. CV 19-4391-DSF(Ex), 2020 WL 7315477 (C.D. Cal. Oct. 19,
    2020).................................................................................................18, 19

*O. L. v. City of El Monte*,
    No. 2:20-cv-00797-RGK (JDE), 2021 WL 926392 (C.D. Cal. Feb. 1,
    2021)........................................................................................................20

*Priest v. Rotary*,
    98 F.R.D. 755, 761 (N.D. Cal. 1983) ......................................................29, 30

*Siniouguine v. Mediachase Ltd*,
    2012 WL 13009099, at *2 (C.D. Cal. Apr. 30, 2012)..................................22

*Stallworth v. Brollini*,
    288 F.R.D. 439, 444 (N.D. Cal. 2012) ...................................................24

*UMG Recordings, Inc. v. Am. Home Assurance Co.*,
    2008 WL 11343400, at *1 (C.D. Cal. July 29, 2008) ...................................22

*United States v. McGraw-Hill Cos., Inc.*,
    No. CV 13-779-DOC (JCGx), 2014 WL 1647385 (C.D. Cal. Apr. 15,
    2014)........................................................................................................20

*Valentine v. First Advantage Saferent Inc.*,
    2009 WL 3841967, at *2 (C.D. Cal. Sept. 18, 2009)................................24, 27

*Weiland v. City of Concord,*
    2014 WL 5358756, at *2 (N.D. Cal. Oct. 20, 2014)........................................26

*White v. Baca,*
    2014 WL 12696910, at *3 (C.D. Cal. Jan. 30, 2014).................................22

*Williams v. County of San Diego,*
    No. 17-cv-00815-MMA (JLB), 2019 WL 2330227, at *10-11 (S.D.
    Cal. May 31, 2019)........................................................................20

## STATE CASES

*Speaker ex rel. Speaker v. Cty. of San Bernardino,*
    82 F. Supp. 2d 1105 (C.D. Cal. 2000)..........................................27

## FEDERAL STATUTES

Fed. R. Civ. P. 26(b) ....................................................................28

Fed. R. Civ. P. 26(c)(1)(D) ...........................................................12

Fed. R. Civ. P. 45(d)(1) ................................................................32

Case No. 2:20-cv-09582-JFW-E
JOINT STIPULATION REGARDING DEFENDANT COUNTY OF LOS ANGELES'
MOTION TO COMPEL PRODUCTION OF DOCUMENTS

## JOINT STIPULATION

**I.      INTRODUCTION**

     **A.      The County's Position**

Defendant County of Los Angeles (the "County") brings this motion to compel production of Plaintiff Vanessa Bryant's ("Plaintiff's") therapy records, which are central to the claims and defenses in this case.

This case arises from the investigation of the tragic helicopter crash that killed Plaintiff's husband and daughter.  The County sympathizes with Mrs. Bryant for her loss and grief as a result of that accident and does not in any way minimize or dispute her suffering from that loss.  Plaintiff's claims, however, are not based on that loss; they are based on allegations that Defendants showed photographs of the crash scene to other first responders and to a bartender.  Contrary to Plaintiff's claims, the photographs did not focus on the remains of any of the victims but were general views of the crash scene that first responders and investigators typically use to assess the damage caused by tragic accidents such as this one.  None of the photographs were sent to anyone outside the County, nor were they publicly disseminated.

Mrs. Bryant seeks millions of dollars in damages for severe emotional distress, anxiety and mental anguish allegedly caused by the public dissemination of photographs, which has not happened.  She also seeks damages for Defendants' allegedly "compounding the trauma" of losing her husband and daughter.  Plaintiff claims she is depressed and has trouble sleeping.  Her damages claims are premised entirely on these mental and emotional injuries.  Plaintiff's therapy records go directly to her emotional condition, which she has put squarely at issue in this lawsuit.

Plaintiff's therapy records are critical to the County's defense.  Mrs. Bryant has, of course, suffered immense loss and distress.  But her distress is attributable to other factors—most obvious, the horrific loss of her family members.  Plaintiff

8

1  confirmed in her deposition that, unsurprisingly, the greatest pain she suffers is from

2  the loss of her husband and child.  The County (and, if necessary, a prospective jury)

3  needs to review Plaintiff's therapy records to parse out her larger grief from the

4  alleged harm caused by photographs that have never been publicly disseminated.

5  The County needs this information to properly separate and assess these different

6  stressors.  Without these records, the County cannot properly defend itself.

7      Accordingly, on September 14, 2021, the County served its third set of

8  requests for production ("RFPs"), which contained a single request for Plaintiff's

9  therapy records from 2010 to the present.  (Declaration of Casey B. Sypek ("Sypek

10  Decl.") Ex. C.)  Plaintiff refused to produce her responsive documents and objected

11  on relevance and privilege grounds, among other boilerplate objections.  (*Id.* Ex. D.)

12  On October 14, 2021, the County served a subpoena on Plaintiff's treating therapist

13  for the same records.  (*Id.* Ex. J.)  Plaintiff's therapist[1] asserted the exact same

14  objections and refused to produce any documents.  (*Id.* ¶ 17.)

15      Plaintiff contends these records are protected from disclosure by the

16  psychotherapist-patient privilege.  But Plaintiff waived the privilege by choosing to

17  put her emotional condition at issue and seeking significant damages for her alleged

18  emotional injuries.  *Karimkhani v. Real Time Resolutions, Inc.*, No. EDCV 18-730-

19  JGB-KKx, 2019 WL 6139160, at *5 (C.D. Cal. Aug. 2, 2019) (a patient waives

20  psychotherapist-patient privilege by claiming more than "garden variety" distress).

21      In an attempt to generate sympathetic press coverage, Plaintiff continues to

22  misrepresent the County's discovery requests as an intimidation tactic.  Not so.  This

23  is a complicated case in which Plaintiff admits to severe emotional distress that

24  compounded preexisting trauma from the tragic loss of her husband and daughter.

---

26  [1]  Plaintiff contends that the identity of her treating therapist is confidential and

27  needs to be sealed.  The County disagrees.  However, in an effort to avoid burdening the Court with a sealing application in connection with this motion, the County has

28  agreed to refer to him herein as "Plaintiff's therapist."

JOINT STIPULATION REGARDING DEFENDANT COUNTY OF LOS ANGELES'
MOTION TO COMPEL PRODUCTION OF DOCUMENTS

The County is entitled to a fair opportunity to defend itself from Plaintiff's allegations and to ascertain what portion of Plaintiff's emotional harm is attributable to Defendants' alleged conduct, if any.

The County met and conferred with Plaintiff, but to no avail.  (Sypek Decl. ¶¶ 13-15, 18-19, Exs. I & K.)

### B.    Plaintiff's Position

Having deprived Mrs. Bryant's family members of the respect and dignity that human decency required, the County now plays the victim and continues to offer the same story departments have offered for years: everything was done properly, the victims are lying, and there was no cover up.  The County now even claims that the photos did not depict human remains but were only legitimate accident photos.

The evidence says otherwise.  To take just one example, a County report on the matter found that "[t]here was no legitimate business need for [a County employee] to take photographs of human remains" at the site; that the County employee's "photographs . . . of the fuselage and human remains at the [site] did not further the Department's mission"; and that the employee's taking and distribution of the photos "only served to appeal to [his] baser instincts and desires for what amounted to visual gossip."  (Saigal Decl. ¶ 13.)

The County's carefully parsed suggestion that the photos were not "sent to anyone outside the County" or "publicly disseminated" is also troubling misdirection.  Even after Defendants' extensive spoliation, what evidence Defendants did not destroy shows that County personnel shared photos of human remains with numerous individuals both in and out of the County's employ who had no need to see them—including civilians at an award show gala, a patron and bartender at a bar in Norwalk, a firefighter for the City of Los Angeles who was not a County employee, Defendant Joey Cruz's niece, and Defendant Michael Russell's video-game buddy.  In addition, cell phone records of individuals known to have

Case No. 2:20-cv-09582-JFW-E

possessed photos of the victims' remains reveal a flurry of outgoing picture messages following the accident.  Plaintiff has produced in discovery several posts by individuals on social media claiming to have seen photos of the victims' remains, and Mrs. Bryant herself testified at deposition that she has seen a photo online that claims to depict her husband's remains.

The County's mischaracterizations are not the issue in this motion, but it is important to correct the record to provide context as to why the County continues to demand unwarranted intrusions into Mrs. Bryant's medical treatment.  Unable to defend the truth, the County continues to try to impose costs on Mrs. Bryant for pursuing accountability by seeking all of her private confidences with her therapist over a twelve-year period.  As a threshold matter, the County's motion comes too late.  Judge Walter's Scheduling Order provides that "[a]ll discovery shall be completed by the discovery cut-off date," and that the discovery cut-off is the date "**BY WHICH ALL DISCOVERY, INCLUDING EXPERT DISCOVERY, SHALL BE COMPLETED**."  (*See* Sypek Decl. Ex. M at 264.)  The Order further provides:  "Any motion challenging the adequacy of responses to discovery must be heard sufficiently in advance of the discovery cut-off date to permit the responses to be obtained before that date if the motion is granted."  (*Id.*)  Here, the County has improperly noticed the hearing on this Motion for a court holiday (Friday, November 26) that is one weekday before the discovery cut-off (Monday, November 29).  If the Court were to grant the County's motion, the Scheduling Order would allow Mrs. Bryant and her therapist fourteen days to seek review by Judge Walter.  *See* L.R. 7-18.  It would be impossible for such a motion to be briefed, heard, and resolved—let alone the documents searched for and produced— prior to the fact discovery cut-off.  Courts routinely deny motions to compel in such circumstances.  *See, e.g.*, *KST Data, Inc. v. DXC Tech. Co.*, 344 F. Supp. 3d 1132, 1135–36 (C.D. Cal. 2018); *Aardwolf Indus., LLC v. Abaco Machines USA, Inc.*, 2017 WL 10339007, at *3 (C.D. Cal. Aug. 9, 2017).

Even if it were timely, the County's motion would fail on the merits for several reasons. *First*, the psychotherapist-patient privilege protects all of the requested documents relevant to evaluating Mrs. Bryant's distress. Mrs. Bryant has not waived that privilege. She has not asserted any specific mental or psychiatric disorder and does not intend to rely on any treating therapists or medical evidence at trial. Courts have held that no waiver occurs in such circumstances. *See, e.g.*, *M.S. v. City of Fontana*, 2018 WL 6075323, at *4 (C.D. Cal. July 12, 2018).

*Second*, the County's theory of relevance is weak when balanced against the intrusion into Mrs. Bryant's privacy. The County argues it needs Mrs. Bryant's therapy records to show that any emotional distress is "attributable to other factors—most obvious, the horrific loss of her family members." (*Supra* at 7.) If Mrs. Bryant's pain from the loss of her husband and daughter is "obvious," the County does not need Mrs. Bryant's therapy records to prove it. Indeed, Mrs. Bryant testified at her deposition that her "greatest pain is the loss of [her] husband and child." Any therapy records on this point would be cumulative and unnecessary. Disclosing them would merely invade Plaintiff's privacy.

*Third*, the Court should "forbid[] inquiry into certain matters" to protect Mrs. Bryant from "embarrassment" and "oppression." *See* Fed. R. Civ. P. 26(c)(1)(D). The same celebrity-driven curiosity that resulted in more than twenty County employees improperly possessing photos of the victims' remains on their cell phones creates a major risk with respect to Mrs. Bryant's therapy records. In a case about the County's mishandling of highly sensitive material, the County must show a clear need to obtain still *more* highly sensitive material from Mrs. Bryant.

*Fourth*, even if the County could overcome its timeliness, privilege, and other problems, its requests are grossly overbroad in time and scope. The County seeks every document related to any therapy Mrs. Bryant has received for any issue over the past twelve years. If the Court is inclined to grant any production at all, it should be limited to only those records that (1) relate to the accident scene photos;

and (2) were created on or after February 28, 2020—the date Mrs. Bryant learned of the photos from the *Los Angeles Times* reports.

*Finally*, the Court should reject the County's document request to Plaintiff's therapist because the County failed to properly meet and confer with counsel for Plaintiff's therapist prior to filing this Motion.  Specifically, the County failed to send a letter requesting a meet and confer, as required by Local Rule 37; offered Plaintiff's therapist's counsel a one-day period in which to meet and confer; and is now bringing this motion without meeting and conferring.  (Saigal Decl. ¶ 7.)

## II.  ISSUES IN DISPUTE: PLAINTIFF'S THERAPY RECORDS

### REQUEST FOR PRODUCTION NO. 20

All DOCUMENTS RELATING TO or reflecting counseling, therapy, psychotherapy, psychiatry or any other mental health treatment YOU have received from January 1, 2010 to the present, including but not limited to medical records, reports, patient notes, progress notes, psychotherapy notes, charts, treatment summaries, bills, statements, intake surveys, histories, findings, diagnoses, prognoses, sign-in sheets and correspondence.

(For the avoidance of doubt, this Request includes copies of all reports and records from YOUR counselors, therapists, psychologists, psychiatrists and other healthcare providers.)

### RESPONSE TO REQUEST FOR PRODUCTION NO. 20

Plaintiff incorporates her Preliminary Statement and General Objections into this response as though fully set forth herein.  Plaintiff objects to this Request as calling for the disclosure of information or documents protected by the attorney-client privilege, the work-product doctrine, the common-interest doctrine, and/or any other applicable privilege, protection, or restriction upon discovery.

Plaintiff further objects to this request because it calls for material that is not relevant to any claim or defense in this action, is unduly burdensome, and is disproportionate to the needs of this case.  In this lawsuit, Plaintiff alleges that she

13

has suffered emotional distress in 2020 and 2021 as a result of County employees taking and sharing photos of her deceased loved ones.  Hence, a request for all documents related to counseling, therapy, psychotherapy, psychiatry, or any other mental health treatment received by Plaintiff related to any issue whatsoever over an eleven year period is improper.  Plaintiff furthers objects to this Request as abusive, harassing, and oppressive, as it appears to be an attempt by a public entity to intimidate Plaintiff into abandoning her pursuit of accountability for wrongdoing committed by County employees.

Plaintiff further objects to this Request because it infringes on the psychotherapist-patient privilege.  *See Jaffee v. Redmond*, 518 U.S. 1, 5 (1996). Plaintiff does not intend to call any counselors, therapists, psychotherapists, or psychiatrists as witnesses, to rely upon confidential psychotherapist-patient communications at trial, or introduce expert testimony regarding her mental condition.  *See Fitgerald v. Cassil*, 216 F.R.D. 632, 639 (N.D. Cal. 2003) (finding no waiver of psychotherapist-patient privilege where plaintiffs "stipulated that they will not affirmatively rely on any treating psychotherapist or other expert to prove the emotional distress suffered").  Plaintiff also objects to this request on the ground that it seeks information that is protected from disclosure by the right to privacy under the U.S. Constitution and the California Constitution.

Plaintiff will not be producing documents in response to this request. Discovery is still ongoing, and Plaintiff reserves the right to supplement and/or amend this response.

**DOCUMENT REQUEST TO PLAINTIFF'S THERAPIST**

All documents relating to or reflecting counseling, therapy, psychotherapy, psychiatry or any other mental health treatment provided to Vanessa Bryant (DOB 05/05/1982, SSN XXX-XX-███) from January 1, 2010 to the present, including but not limited to medical records, reports, patient notes, progress notes, psychotherapy notes, charts, treatment summaries, bills, statements, intake surveys,

14

histories, findings, diagnoses, prognoses, sign-in sheets and correspondence.[2]

A.   **The County's Position**

    1.   **Plaintiff's Therapy Records Are Relevant and Proportional to the Needs of the Case**

Plaintiff's entire lawsuit is based on her severe emotional distress, anxiety and mental anguish allegedly caused by Defendants taking and disseminating photos of the crash scene.  (Sypek Decl. Ex. A ¶¶ 9, 86, 92, 98, 105, 113; Ex. E at 140:23-141:6.)  Her only damages claims are for severe emotional distress.  (*Id.* Ex. A ¶¶ 86, 92, 98, 105, 113.)  Plaintiff alleges that Defendants' conduct "compounded the trauma" of losing her husband and daughter.  (*Id.* ¶ 9.)  She also claims that "Defendants' actions have made it impossible for [her] to have any peace of mind ever again."  (*Id.* Ex. G.)  And Plaintiff plans to call seven celebrity witnesses (her close friends) to testify at trial about the emotional distress she claims to have suffered at the hands of Defendants.  (*Id.* Ex. F at 6-9.)  It is Plaintiff's burden to prove that her harm was proximately caused by Defendants.  Mrs. Bryant undeniably suffered and continues to suffer terrible trauma and distress, but that distress was caused by other factors—the most obvious of which is the tragic loss of her husband and daughter.  This is central to Defendants' case, and they have asserted affirmative defenses to that effect.  (Sypek Decl. Ex. B [Superseding and Intervening Acts; No Causation; and No Damages].)  Plaintiff's mental health records are directly relevant to the existence, magnitude and *causes* of the emotional distress damages she alleges.

---

[2]  Plaintiff's therapist objected to the document request in the subpoena on the same exact grounds as Plaintiff.  Those objections are not copied here because Plaintiff's therapist designated his Response and Objections as "confidential" under the Protective Order in this case.  The County disagrees with this designation and asked Plaintiff's counsel (who is also representing Plaintiff's therapist) to de-designate the Response and Objections, but Plaintiff's counsel did not agree to do so.  (Sypek Decl. ¶ 19 Ex. K.)

Plaintiff's therapy records are also proportional to the needs of this case. The County needs these documents to determine whether Plaintiff's claimed injuries were caused by events other than Defendants' alleged conduct.

Plaintiff testified at deposition that she began seeing her therapist in 2010 and continued to seek treatment from him following the crash. (Sypek Decl. ¶ 11.) The only way to understand the changes in Plaintiff's emotional and mental state as a result of Defendants' alleged conduct is to review records that predate the alleged conduct. For example, if Plaintiff's therapy records show a ten-year history of severe anxiety and depression, they will support the County's affirmative defenses regarding lack of causation. Plaintiff's therapy records also relate to Plaintiff's claim that her preexisting trauma was exacerbated by Defendants. (*Id.* Ex. A ¶ 9 & Ex. E at 141:7-19.) Plaintiff's deposition and trial testimony are not sufficient replacements for contemporaneous records of Plaintiff's emotional distress— particularly because Plaintiff refused to answer questions about her therapy at deposition. (*Id.* ¶¶ 11-12.)

Moreover, these documents are critical to Defendants' expert, Dr. Cohen's, analysis. There is no way for Defendants (or the jury) to parse out the emotional harm caused by Plaintiff's tragic loss of her loved ones, from the alleged harm caused by crash site photos that were never publicly disseminated, without an expert's review and analysis of her mental health records. This is not a run-of-the-mill emotional distress case. Plaintiff's alleged mental and emotional harm is complicated, and it requires psychological expertise.

Courts regularly order plaintiffs to produce mental health records that are relevant to the existence or causes of their alleged emotional harm. *See*, *e.g.*, *Kilroy v. L.A. Unified Sch. Dist. Bd. of Educ.*, No. CV 16-09068-DMG (JDE), 2018 WL 6071089, at *3 (C.D. Cal. Mar. 7, 2018) (mental health treatment records were relevant and proportional to needs of case where plaintiff sought damages for severe mental and emotional distress); *Enwere v. Terman Assocs., L.P.*, No. C 07-1239 JF

16

(PVT), 2008 WL 5146617, at *4 (N.D. Cal. Dec. 4, 2008) (granting motion to compel therapy records and holding defendants were "entitled to discover what other causes exist for Plaintiff's emotional distress, regardless of whether any such other causes occurred before the events at issue in the lawsuit or afterwards"); *Doe v. City of Chula Vista*, 196 F.R.D. 562, 568, 570 (S.D. Cal. 1999) (concluding that "a plaintiff who seeks to recover for emotional distress damages is relying on her emotional condition as an element of her claim" and finding one-year time limit on therapy records too restrictive where plaintiff had received counseling prior to that time); *Hukman v. Sw. Airlines Co.*, No. 18cv1204-GPC(RBB), 2019 WL 566451, at *3 (S.D. Cal. Feb. 12, 2019) (denying motion to quash subpoena for therapy records and finding that "Defendants must be free to test the truth of [the plaintiff's] contention that she is emotionally upset *because of* the defendants' conduct" (alteration in original) (citation omitted)).

### 2.    <u>Plaintiff Waived the Psychotherapist-Patient Privilege</u>

As set forth above (*see supra* II(A)(1)), Plaintiff put her mental and emotional condition squarely at issue.  Her entire lawsuit and damages claims are based on it.  Plaintiff claims she is suffering from anxiety (a specific mental injury) and that she had preexisting trauma that was exacerbated by Defendants' conduct.  (Sypek Decl. Ex. A ¶¶ 86, 92, 98, 105, 113; Ex. E at 140:23-141:6.)  On top of her allegations and discovery responses, Plaintiff testified that she is depressed and has trouble sleeping.  (*Id*. ¶ 10.)  Plaintiff admits that her greatest emotional pain stems from the loss of her husband and daughter, and that this loss is one of "many" reasons she is depressed.  (*Ibid.*)  Of course, none of this is surprising given the horrific loss Plaintiff suffered.  But the law does not allow Plaintiff to demand that Defendants compensate her for those injuries and then use the psychotherapist-patient privilege to shield documents likely to show the nature, extent and causes of those injuries.

Courts regularly hold that a patient waives the psychotherapist-patient privilege with respect to therapy records by putting her emotional condition at issue

17

in a lawsuit, like Plaintiff has done here.  *Curtis Conyers v. Marisa Cano*, No. CV 20-3146-JFW (PLAx), 2020 WL 7084546, at *3 (C.D. Cal. Sept. 25, 2020) (cross-plaintiff waived privilege with respect to marriage counseling records where she alleged "severe" emotional distress and "mental and physical pain and anguish" attributable in part to sexual harassment by defendant); *Karimkhani*, 2019 WL 6139160, at *5 (plaintiffs waived privilege by seeking damages for "fear, stress, mental anguish, emotional stress and acute embarrassment" allegedly caused by defendant); *Enwere*, 2008 WL 5146617, at *3 ("By law this allegation of serious on-going mental and emotional distress, along with the request for damages for those injuries, constitutes a waiver . . . ."); *Bangoura v. Andre-Boudin Bakeries*, No. C 12-3229 MMC (DMR), 2012 WL 5349991, at *2 (N.D. Cal. Oct. 29, 2012) (plaintiff waived privilege by seeking $600,000 in emotional distress damages and testifying that defendant was one of multiple causes of his emotional distress); *Doe*, 196 F.R.D. at 569 ("[*I*]f the patient desires the jury to compensate her for damage to her emotional condition, then defendant is entitled to explore the circumstances [that] caused that injury.").  *See also Caesar v. Mountanos*, 542 F.2d 1064, 1066–67 (9th Cir. 1976) (patient waived psychotherapist-patient privilege under California Evidence Code by tendering his mental and emotional condition in issue), *cert. denied*, 430 U.S. 954 (1977).

Another recent case, *Nazarian v. City of Beverly Hills*, No. CV 19-4391-DSF(Ex), 2020 WL 7315477 (C.D. Cal. Oct. 19, 2020), is instructive.  There, the plaintiff alleged that she suffered "lasting anxiety, insomnia and [a] great deal of emotional distress, pain, mental anguish, humiliation and suffering" as a result of an encounter with defendants.  *Id.* at *1 (alteration in original).  This Court held that the plaintiff waived the psychotherapist-patient privilege with respect to her medical records by placing her medical condition at issue.  *Id.* at *2.  This included records that pre-dated the incident in the complaint, as those records showed the plaintiff sought and received treatment for anxiety and insomnia prior to the incident.  *Id.*

18

Case No. 2:20-cv-09582-JFW-E
JOINT STIPULATION REGARDING DEFENDANT COUNTY OF LOS ANGELES'
MOTION TO COMPEL PRODUCTION OF DOCUMENTS

1   at *1.

2         Plaintiff contends she has not waived the psychotherapist-patient privilege

3   because she is not relying on a therapist or other expert to prove her emotional harm.

4   (Sypek Decl. Ex. D.)  That is not how waiver works and not how it works in this

5   District.  A plaintiff waives the psychotherapist-patient privilege—and opens the

6   door to her mental health records—by putting her mental and emotional condition at

7   issue, like Plaintiff has done here.  *Curtis Conyers*, 2020 WL 7084546, at *3;

8   *Karimkhani*, 2019 WL 6139160, at *5.  The fact that Plaintiff does not intend to call

9   an expert at trial is not enough to shield her relevant documents from disclosure.

10         Plaintiff's reliance on *Fitzgerald v. Cassil*, 216 F.R.D. 632 (N.D. Cal. 2003),

11   is misplaced.  *Fitzgerald* held that a plaintiff who merely brings a "garden-variety"

12   claim for emotional distress (i.e., distress that is "incidental," "ordinary," "simple or

13   usual") does not waive the privilege.  *Id.* at 637 (citation omitted).  There, the

14   plaintiffs did not allege any specific psychiatric injury or unusually severe emotional

15   distress.  *Id.* at 639.  The plaintiffs in *Fitzgerald* also stipulated that they would not

16   claim they had any preexisting conditions that were exacerbated by the defendants'

17   conduct.  *Id.* at 636.

18         *Fitzgerald* is nothing like this case.  Here, Plaintiff claims Defendants'

19   conduct caused her severe anxiety, constant fear and mental anguish; and that

20   Defendants' alleged public dissemination of crash site photographs (there was no

21   public dissemination) exacerbated preexisting trauma from losing her husband and

22   daughter.  (Sypek Decl. Ex. A ¶¶ 86, 92, 98, 105, 113; Ex. E at 140:23-141:6.)

23   Moreover, Plaintiff's emotional injuries are not merely incidental to her claims; they

24   form the entire basis for her claimed damages.

25         Plaintiff's emotional injuries are complex and unusual.  There is nothing

26   "garden variety" about them.  There is no way for a jury to understand and parse out

27   these emotional injuries without Plaintiff's mental health records.

28

### 3. The Other Objections Have No Merit

**First**, the attorney-client and work product objections are moot.  During the parties' meet-and-confer, the County explained it is not seeking Plaintiff's or Plaintiff's therapist's communications with attorneys or any other privileged documents reflecting advice of counsel.  (Sypek Decl. Exs. I & K.)  These objections are not a valid basis for refusing to produce responsive documents.

**Second**, Plaintiff's privacy objection is also unfounded.  There is no separate constitutional right to privacy over mental health records apart from the psychotherapist-patient privilege, which Plaintiff has waived.  (*See supra* II(A)(2).) *Williams v. County of San Diego*, No. 17-cv-00815-MMA (JLB), 2019 WL 2330227, at *10-11 (S.D. Cal. May 31, 2019) (granting motion to compel documents relating to plaintiff's mental health treatment for five years preceding incident where plaintiff put her emotional health at issue), *objections overruled*, No. 17cv815-MMA (JLB), 2019 WL 3543792 (S.D. Cal. Aug. 5, 2019); *Busselman v. Battelle Mem'l Inst.*, No. 4:18-cv-05109-SMJ, 2019 WL 7763824, at *1 (E.D. Wash. June 18, 2019) ("Plaintiff has placed her emotional status at issue by claiming Defendant caused her to suffer emotional distress damages. There is no need to overthink this observation." (citation omitted)).

Moreover, there is a Protective Order with protocols governing the production of confidential materials by parties and third parties.  (Sypek Decl. Ex. H.)  Plaintiff can designate her mental health records as confidential pursuant to the Protective Order, ensuring that her privacy rights are protected.

**Finally**, Plaintiff's and Plaintiff's therapist's undue burden objection has no merit.  They have not offered any specific information to carry their "burden of clarifying, explaining, and supporting" this objection.  *See O. L. v. City of El Monte*, No. 2:20-cv-00797-RGK (JDE), 2021 WL 926392, at *2 (C.D. Cal. Feb. 1, 2021) (citation omitted); *United States v. McGraw-Hill Cos., Inc.*, No. CV 13-779-DOC (JCGx), 2014 WL 1647385, at *8 (C.D. Cal. Apr. 15, 2014) ("[T]he movant has the

initial burden of demonstrating relevance. 'In turn, the party opposing discovery has the burden of showing that discovery should not be allowed, and also has the burden of clarifying, explaining and supporting its objections with competent evidence.'" (citations omitted)).

In any event, the single document request does not require any complicated searches or document collection.  Plaintiff's therapist can collect these documents by searching for all files relating to Plaintiff, and Plaintiff can collect these documents by simply asking her treating therapists for her patient file.  There is no undue burden in searching for and producing these documents, particularly given their high probative value.

### B.   Plaintiff's Position

### 1.   The County's Motion Is Untimely

The County has known about Mrs. Bryant's emotional distress allegations since she filed her complaint in September 2020.  Nevertheless, the County waited nearly a year to serve a sprawling request for Plaintiff's mental health records, including requests for sixteen categories of documents over a twelve-year span, ten years of which predate the events at issue in this case.  The County has scheduled this motion for hearing on a court holiday one weekday before the November 29, 2021 discovery cutoff.  (*See* Sypek Decl. Ex. M.)  Even if there was merit to the County's position (there is not), the County's delay in seeking the requested discovery has left no time to complete litigation of the issue or conduct the extensive searches that the County requests.

For this reason, the Court should deny the County's motion as untimely and in violation of the Court's Scheduling Order.  According to that Scheduling Order: "All discovery shall be completed by the discovery cut-off date." (*Id.* at 264.)  The Scheduling Order makes clear that the discovery cut-off "**IS NOT THE DATE BY WHICH DISCOVERY REQUESTS MUST BE SERVED**," but rather is the date "**BY WHICH ALL DISCOVERY, INCLUDING EXPERT DISCOVERY,**

1   **SHALL BE COMPLETED**." (*Id.*)  The Order further provides:  "Any motion

2   challenging the adequacy of responses to discovery must be heard sufficiently in

3   advance of the discovery cut-off date to permit the responses to be obtained before

4   that date if the motion is granted." (*Id.*)  The noticed hearing date for this motion is

5   not "sufficiently in advance" of the discovery cutoff by any reasonable estimation.

6           Courts interpreting this exact language have denied motions to compel

7   brought on the eve of discovery cut-offs as untimely.  *See Siniouguine v.*

8   *Mediachase Ltd*, 2012 WL 13009099, at *2 (C.D. Cal. Apr. 30, 2012) (denying

9   motion to compel the production of documents when the scope of the requested

10  search "facially [did] not appear doable" in the eight days left in the discovery

11  period); *White v. Baca*, 2014 WL 12696910, at *3 (C.D. Cal. Jan. 30, 2014)

12  (interpreting Judge Walter scheduling order and denying ex parte application to file

13  motion to compel with expedited hearing, where there would be insufficient time for

14  the requested deposition to be held before the discovery cutoff); *see also Aardwolf*

15  *Indus., LLC v. Abaco Machines USA, Inc.*, 2017 WL 10339007, at *3 (C.D. Cal.

16  Aug. 9, 2017) (denying motion to compel "noticed for a hearing less than two weeks

17  before the discovery cutoff"); *KST Data, Inc. v. DXC Tech. Co.*, 344 F. Supp. 3d

18  1132, 1135–36 (C.D. Cal. 2018) (denying motion to compel noticed for a hearing

19  "just five days before the discovery cutoff"); *UMG Recordings, Inc. v. Am. Home*

20  *Assurance Co.*, 2008 WL 11343400, at *1 (C.D. Cal. July 29, 2008) (denying

21  motion to compel noticed for a hearing two days before discovery cutoff).

22          Following this ample precedent, the Court should deny the County's motion

23  as untimely because it would be impossible for the discovery dispute to be

24  conclusively resolved and the requested document produced prior to the discovery

25  cut-off.  If the Court were to rule in the County's favor on this motion, the

26  Scheduling Order would allow Plaintiff and Plaintiff's therapist to challenge the

27  ruling within fourteen days, and such a motion would inevitably be briefed and

28  decided *after* the discovery cut-off.  Additional time would then be needed to search

1  for, review, and produce the documents sought.  Hence, the County's motion does

2  not comply with the Court's Scheduling Order, and it should be denied on that basis.

3  **2.**     **The Psychotherapist-Patient Privilege Protects the Requested**

4            **Records From Disclosure**

5       The County does not dispute that the psychotherapist-patient privilege applies

6  to the documents it seeks.  Rather, the County incorrectly asserts that Mrs. Bryant

7  has waived this privilege.  She has not.

8                          **(a)     Legal Standard**

9       The Supreme Court has emphasized that mental health is "a public good of

10  transcendent importance."  Jaffee *v. Redmond*, 518 U.S. 1, 11 (1996).  Effective

11  therapy "depends upon an atmosphere of confidence and trust in which the patient is

12  willing to make a frank and complete disclosure of facts, emotions, memories, and

13  fears."  *Id.* at 10.  Because counseling often entails confidential communications

14  regarding problems of a "sensitive" nature, "the mere possibility of disclosure may

15  impede development of the confidential relationship necessary for successful

16  treatment."  *Id.*  Without that privilege, "confidential conversations between

17  psychotherapists and their patients would surely be chilled, particularly when it is

18  obvious that the circumstances that give rise to the need for treatment will probably

19  result in litigation."  *Id.* at 11–12.

20       The County cites cases in which courts have held that a simple allegation of

21  emotional distress waives the privilege.  *E.g.*, *Doe v. City of Chula Vista*, 196 F.R.D.

22  562, 568, 570 (S.D. Cal. 1999).  However, many courts have rejected this "broad"

23  approach to waiver as inconsistent with the Supreme Court's decision in *Jaffee*

24  because it would deny the protection of the privilege "even if the psychotherapy

25  treatment has little bearing on the claims, a result that would largely eviscerate the

26  privilege."  *City of Fontana*, 2018 WL 6075323, at *3; *Fitzgerald v. Cassil*, 216

27  F.R.D. 632, 637 (N.D. Cal. 2003) ("[T]he broad waiver approach would render the

28  psychotherapist-patient privilege pointless: '[T]he very nature of a privilege is that it

23

prevents disclosure of information that may be relevant in the case, in order to serve interests that are of over-arching importance.'" (citation omitted)); *Boyd v. City & Cnty. of San Francisco*, 2006 WL 1390423, at *6 (N.D. Cal. May 18, 2006) (noting the broad approach to waiver is "not sufficiently protective of the psychotherapist-patient privilege and come[s] too close to the type of balancing that the Supreme Court so emphatically rejected in *Jaffee*"); *e.g.*, *Mnyandu v. Cnty. of Los Angeles*, 2017 WL 8943166, at *2 (C.D. Cal. Apr. 26, 2017) (finding "the broad approach insufficiently protects the right covered by the privilege" and holding that plaintiff's mere allegation of emotional distress was insufficient to waive privilege).

Instead, many courts have taken a narrower approach and found waiver "only when a party has put not only his or her mental state at issue, but has also effectively put the records of his or her psychotherapy treatment at issue." *City of Fontana*, 2018 WL 6075323, at *3. In evaluating whether a party has placed their psychotherapy treatment at issue, these courts have considered (1) whether the party has alleged that the misconduct in question caused a specific mental or psychiatric disorder; and (2) whether the party seeks to rely on their medical records or a treating therapist to prove emotional distress at trial. *See id.* at *4; *Valentine v. First Advantage Saferent Inc.*, 2009 WL 3841967, at *2 (C.D. Cal. Sept. 18, 2009); *Equal Emp. Opportunity Comm'n v. Peters' Bakery*, 301 F.R.D. 482, 486 (N.D. Cal. 2014); *Stallworth v. Brollini*, 288 F.R.D. 439, 444 (N.D. Cal. 2012); *Boyd*, 2006 WL 1390423, at *6.

"[W]here a plaintiff does not raise any claim regarding an underlying mental health condition or does not rely on a treating psychotherapist or other expert to establish his or her claims, courts have found no waiver of the privilege." *City of Fontana*, 2018 WL 6075323, at *3; *see, e.g.*, *Valentine*, 2009 WL 3841967, at *2; *Peters' Bakery*, 301 F.R.D. at 486 (finding no waiver where plaintiff did not affirmatively rely on any therapist-patient communication and did not intend to introduce expert medical testimony regarding emotional distress at trial); *Stallworth*,

288 F.R.D. at 444 (same); *Boyd*, 2006 WL 1390423, at *6 (finding no waiver where plaintiffs did not affirmatively place therapist-patient communications in issue).

The narrower approach to waiver is better suited to cases such as this one alleging the violation of constitutional rights.  Taking a broad approach to waiver would chill citizens' willingness to litigate their constitutional rights claims and contravene Congress's intent to prioritize "litigants' access to the courts and the remedial nature of such suits." *Fitzgerald*, 216 F.R.D. at 639.  Mrs. Bryant should not be forced to choose between the privacy of her therapy records and holding County employees accountable for their unconstitutional conduct.

The recent decision from this District in *City of Fontana* is instructive on this point.  In that case, family members of a man killed by a police officer brought a civil rights action against the police officer and the city that employed him seeking, among other things, damages for emotional distress. *City of Fontana*, 2018 WL 6075323, at *1.  When the plaintiffs moved to quash a subpoena for their mental health records, the defendants argued that the plaintiffs waived the privilege by seeking emotional distress damages. *Id.* at *2.

In analyzing waiver, the Court noted that the plaintiffs did not allege that they suffered from any "specific medical condition" relating to their emotional distress and did not intend to rely on evidence of counseling treatment or call their therapists as witnesses at trial. *Id.* at *5.  The Court further noted that the plaintiffs' alleged emotional injuries were "not particularly unusual for a parent who experienced the unexpected death of his child." *Id*. at *4; *see also id.* at *5 ("Emotional injuries such as anxiety, trauma, and loss of interest are not unexpected or abnormal injuries when one's child suddenly and unexpectedly suffers a violent death.").  Given the "typical nature" of the family members' emotional injuries, the Court found that the plaintiffs had not waived privilege by putting their mental health treatment at issue. *Id.* at *5.  Rather, the Court found their alleged injuries could be understood by a jury "without [the] need for any underlying medical records." *Id.*  The Court further

Case No. 2:20-cv-09582-JFW-E

noted that quashing the subpoenas would not "unduly prejudice" the defendants, as they had "already deposed plaintiffs to evaluate the nature and extent of their emotional distress allegations." *Id.* at *6.

### (b) Plaintiff Has Not Put Her Mental Health Records at Issue

Under the appropriate standard for waiver in civil rights cases, Plaintiff has not waived the psychotherapist-patient privilege because she has not put her mental health records at issue.

*First*, Plaintiff has not alleged a specific mental or psychiatric injury or disorder or unusually severe emotional distress. The County misleadingly claims that Plaintiff's generic use of the terms "anxiety" and "trauma" in her complaint and her response to questions about depression at her deposition means that she has alleged she is suffering from "a specific mental injury" and "preexisting trauma." (*See supra* at 16.) None of the snippets the County cites actually allege clinical depression, an anxiety disorder, or psychiatric trauma. *Cf. Pringle v. Wheeler*, 2021 WL 1907824, at *4 (N.D. Cal. Apr. 16, 2021) (contrasting "general claims like anxiety," which do not put mental condition in controversy, with "more specific mental injuries such as post-traumatic stress disorder, depression, insomnia, and suicidal ideation").

Rather, Plaintiff has alleged the distress and anxiety that "an ordinary person subjected to similar circumstances would experience." *Weiland v. City of Concord*, 2014 WL 5358756, at *2 (N.D. Cal. Oct. 20, 2014) (citation omitted). A jury does not need any mental health records—let alone a decade's worth of therapy records— to understand Plaintiff's fear that she or her daughters may one day confront the photos of their deceased loved ones, or her distress at the thought of sheriff's deputies and firefighters passing around the photos like trading cards. A jury "will be able to properly evaluate the strengths and weaknesses of [Plaintiff's] emotional distress claim based on [her] in-court and deposition testimony." *City of Fontana*,

1 | 2018 WL 6075323, at *4.

2 |      *Second*, Plaintiff does not intend to call any treating therapist as a witness at

3 | trial or rely on expert testimony or any medical evidence to prove her distress.

4 | Contrary to the County's suggestion (*supra* at 18), courts in this District have

5 | rejected arguments that a plaintiff has waived the privilege under such

6 | circumstances.  *See City of Fontana*, 2018 WL 6075323, at *3-4; *Valentine*, 2009

7 | WL 3841967, at *2; *compare Speaker ex rel. Speaker v. Cty. of San Bernardino*, 82

8 | F. Supp. 2d 1105, 1118 (C.D. Cal. 2000) (finding party put his mental state

9 | regarding perception distortion at the time of a shooting at issue when he testified

10 | that his perception was distorted and submitted an expert report concluding that the

11 | distortion resulted from the trauma of the incident).

12 |      The County's cases are distinguishable because the plaintiffs in those cases

13 | put their mental health treatments at issue by alleging specific mental injuries or

14 | using their mental health treatments to prove their emotional distress.  *See Nazarian*,

15 | 2020 WL 7315477, at *1 (plaintiff claimed defendants' misconduct caused "acute

16 | stress disorder, fatigue, insomnia, hypertension, depression, PTSD" (citation

17 | omitted)); *Conyers*, 2020 WL 7084546, at *3 (plaintiff alleged "extreme" emotional

18 | distress and alleged that she "sought mental health treatment as a result of"

19 | defendants' conduct); *Karimkhani*, 2019 WL 6139160, at *5 (plaintiff alleged

20 | "extreme" emotional distress and sought to recover for medical expenses);  *Enwere*,

21 | 2008 WL 5146617, at *3 (plaintiff sought to recover for specific medical conditions,

22 | including "inability to sleep, depression and associated mental health injuries

23 | requiring continuing medical treatment" (citation omitted)); *Bangoura*, 2012 WL

24 | 5349991, at *2 (plaintiff alleged that he sought treatment for emotional distress at

25 | specific hospitals).  Here, by contrast, Plaintiff has not alleged that she sought

26 | treatment for the emotional distress Defendants caused, nor is she seeking to recover

27 | for any expenses associated with that treatment.  Mrs. Bryant has not waived the

28 | psychotherapist-patient privilege.

### 3.   Twelve Years of Therapy Records on All Topics Are Irrelevant and Disproportionate to the Needs of the Case

The County's request for all of Plaintiff's therapy records for twelve years contravenes the rule that discovery must be "proportional to the needs of the case." Fed. R. Civ. P. 26(b).  Plaintiff alleges that she suffered emotional distress in 2020 and 2021 after she learned that sheriff's deputies and firefighters took and shared graphic photos of her loved ones' remains.  The County cites no authority and makes no argument as to why they need every piece of paper regarding any mental health treatment Plaintiff received in the decade before she learned of the photos' existence to evaluate the cause of distress suffered in the last two years.  *See Larson v. Bailiff*, 2015 WL 4425660, at *4 (S.D. Cal. July 17, 2015) (finding request for "over ten years' worth of medical and mental health records" to be overbroad).

The County does not need Plaintiff's entire mental health file to prove up its defenses.  A jury does not need to read Mrs. Bryant's therapy records to understand that she has suffered immense grief due to the tragic loss of her husband and daughter.  Indeed, the County admits that such grief is "obvious."  (*Supra* at 14.)  Moreover, Mrs. Bryant has testified that the loss of Kobe and Gianna is "by many magnitudes the worst thing that's ever happened" in her life.  (Saigal Decl. Ex. 2 at 48:1-7.)  Any documents related to Mrs. Bryant's therapy would add little to a jury's understanding of her pain related to the accident scene photos.  Their disclosure would merely further invade her privacy.

Defendants have had (and will have) many opportunities to test their (callous and unconvincing) theory that the improper taking and sharing of photos cannot have caused Mrs. Bryant distress because she was already suffering from losing her husband and daughter.  The County questioned Plaintiff about her emotional distress at length during her deposition and will be deposing witnesses whom Plaintiff identified as having knowledge of her emotional distress.  (*See generally* Saigal Decl. Ex. 2.)  Defendants also questioned Plaintiff about whether she had ever been

diagnosed with PTSD and whether she takes medication, but opted not to ask whether she has ever suffered from other psychiatric disorders.  (*See* Saigal Decl. Ex. 2 at 28.)  The County's own failure to seek information it now deems "critical" to its case does not justify a fishing expedition into Mrs. Bryant's highly sensitive records.  (*Supra* at 7.)  Defendants have also had over a year to request non-privileged documents from Plaintiff relating to any emotional distress she has suffered since she learned of the photos, but chose not to.  (*See* Saigal Decl. Ex. 3-6.)  Defendants' decision to forego such discovery and instead demand a trove of highly private, privileged records on the eve of the discovery cutoff undermines their claim that the documents are "central" to their case.  (*Supra* at 7.)

In addition to being vastly overbroad as to time, the County's request is also overbroad in scope.  The County requests every document with any connection to any mental health treatment Mrs. Bryant has received, including "charts," "bills," "statements," and "sign-in sheets."  The County does not even attempt to explain how these documents would shed light on Mrs. Bryant's alleged emotional distress. *See Copetillo v. Fontana*, 2020 WL 7861977, at *7 (C.D. Cal. Nov. 24, 2020) (finding request for medical bills to be overbroad and burdensome where defendants sought documents to "evaluate potential alternate causes for Plaintiff's alleged injuries" (citation omitted)).

### 4.   <u>The County's Request Is Abusive and Harassing</u>

"When a discovery request approach[es] the outer bounds of relevance and the information requested may only marginally enhance the objectives of providing information to the parties or narrowing the issues, the Court must then weigh that request with the hardship to the party from whom the discovery is sought." *Priest v. Rotary*, 98 F.R.D. 755, 761 (N.D. Cal. 1983) (citation omitted).  Therapy records stretching back a decade before the events at issue have threadbare relevance, and the County's request should be seen for what it is: a tactic to intimidate Plaintiff into dropping her claims.

Defendants do not need Plaintiff's therapy records to make their case. Moreover, granting the County's request for all of Plaintiff's mental health records, even where those records have minimal probative value, would discourage future victims from prosecuting civil rights lawsuits. *Cf. Priest v. Rotary*, 98 F.R.D. 755, 761 (N.D. Cal. 1983) (noting that "[d]iscovery of intimate aspects of plaintiffs' lives . . . has the clear potential to discourage sexual harassment litigants from prosecuting lawsuits" and that allowing discovery tactics that might "intimidate, inhibit, or discourage Title VII plaintiffs" from pursuing their claims would "clearly contravene the remedial effect intended by Congress in enacting Title VII, and should not be tolerated by the federal courts"). The County's request should be denied as abusive and harassing.

## C.    Plaintiff's Therapist's Position

### 1.    Issues Related to the Subpoena to Plaintiff's Therapist Are Not Ripe as The County Did Not Meet and Confer Regarding the Subpoena

On October 12, 2021, the County served counsel in this case with a notice of subpoena to Plaintiff's treating therapist. On October 26, Plaintiff's therapist served responses and objections to the subpoena. (Saigal Decl. ¶ 3.) A few hours later, the County emailed counsel for Plaintiff's therapist demanding that they meet and confer the next day or agree to be bound by the Court's ruling on the County's motion to compel documents in response to RFP No. 20. (*Id.*) On October 27, Plaintiff's therapist's counsel responded and asked the County to send a letter pursuant to Local Rule 37-1 to initiate the meet and confer process. (*Id.* ¶ 4.) The County refused to do so, arguing that Plaintiff's therapist's objections to the subpoena are "nearly identical" to Plaintiff's objections to RFP No. 20, and that "[t]here is nothing left to meet and confer about." (Sypek Decl. Ex. K at 219.) The next day, and without meeting and conferring with counsel for Plaintiff's therapist, the County sent its portion of this Joint Stipulation, which included a request to

1  compel Plaintiff's therapist to produce documents pursuant to the subpoena.  (Saigal

2  Decl. ¶¶ 5, 7.)

3        With the discovery cutoff looming, the County is attempting to end run the

4  local rules and shoehorn a discovery dispute with a non-party, Plaintiff's therapist,

5  into this motion.  Contrary to the County's representation (*supra* at 10), no

6  videoconference or in-person meet and confer has occurred regarding the County's

7  subpoena, as required by Local Rule 37-1.  (Saigal Decl. ¶ 7.)  Nor has the County

8  sent the required letter requesting a Local Rule 37 conference regarding its

9  subpoena.  The County's only explanation for its disregard of the local rules is that a

10  meet and confer could not be arranged in the one-day window before its portion of

11  this joint stipulation was due (Saigal Decl. ¶ 4), and that the third-party therapist's

12  objections to the subpoena are "nearly" identical to Plaintiff's objections to RFP No.

13  20 (Sypek Decl. Ex. K at 219).

14        The Court should reject the County's attempt to sidestep the local rules.  *See*

15  *Dickson v. Century Park E. Homeowners Ass'n*, 2021 WL 3145680, at *2 (C.D. Cal.

16  Mar. 22, 2021) (rejecting defendant's request that the court "excuse all or some" of

17  the Local Rule 37 process where defendant faced a looming discovery cutoff).  If

18  the County wanted to avoid a conflict with the impending discovery cutoff, it should

19  have sought this discovery and brought this motion months ago.  It cannot now use

20  its own delay as justification to dispense with Local Rule 37's meet and confer

21  requirements.

22        The County also is wrong that there was no need to comply with the local

23  rules because its subpoena to Plaintiff's therapist seeks documents similar to the

24  documents it seeks from Mrs. Bryant.  Plaintiff's therapist is a non-party, which

25  places a subpoena to him on a different footing than a document request to Plaintiff.

26  The fact that Plaintiff's therapist is represented by the same counsel as Plaintiff does

27  not mean that a meet and confer regarding a discovery request to Plaintiff also

28  somehow pertained to her therapist's subpoena, particularly when the meet and

31

Case No. 2:20-cv-09582-JFW-E

1   confer occurred before any dispute related to the subpoena arose.

2      As the County has failed to comply with Local Rule 37, the Court should

3   deny its motion to compel records in response to the subpoena to Plaintiff's

4   therapist.

## 2. The County's Request Is Unduly Burdensome and Disproportionate to the Needs of the Case

7      Even if the Court could look beyond the County's failure to comply with the

8   local rules as to the subpoena to Plaintiff's therapist, its motion lacks merit as to that

9   subpoena.

10     Plaintiff's therapist is a non-party, and "[c]ourts are particularly reluctant to

11  require a non-party to provide discovery that can be produced by a party." *Amini*

12  *Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 410 (C.D.

13  Cal. 2014); *see* Fed. R. Civ. P. 45(d)(1) ("A party or attorney responsible for issuing

14  and serving a subpoena must take reasonable steps to avoid imposing undue burden

15  or expense on a person subject to the subpoena.").  The subpoena calls for the same

16  documents as RFP No. 20.  Requiring a non-party to search for the same documents

17  requested from a party imposes an undue burden that violates Rule 45. *Amini*

18  *Innovation Corp.*, 300 F.R.D. at 410; *Arthrex, Inc. v. Parcus Med., LLC*, 2011 WL

19  6415540, at *6 (S.D. Ind. Dec. 21, 2011) ("A party's ability to obtain documents

20  from a source with which it is litigating is a good reason to forbid it from burdening

21  a non-party with production of those same documents.").

22     Moreover, requiring a non-party to search for a sprawling array of records

23  over a twelve-year timespan is oppressive, especially where, as noted, ten years of

24  that time period predate the events at issue in this litigation.  *See Miller v. York Risk*

25  *Servs. Grp.*, 2014 WL 11515634, at *6 (D. Ariz. June 20, 2014) (quashing subpoena

26  calling for a nonparty health insurance provider to "search and pull eleven years of

27  records" as "oppressive").

28

III.   **CONCLUSION**

A.   **The County's Position**

For the reasons set forth herein, the County respectfully requests that the Court grant its motion to compel.

B.   **Plaintiff's Position**

For the reasons set forth herein, Plaintiff respectfully requests that the Court deny the County's motion in its entirety.  To the extent the Court is inclined to grant any production at all, it should be limited to only those records that (1) relate to the accident scene photos; and (2) were created on or after February 28, 2020—the date Mrs. Bryant learned of the photos from the *Los Angeles Times* reports.

DATED:  November 5, 2021          MILLER BARONDESS, LLP


By:   _____
     CASEY B. SYPEK
     Attorneys for Defendants
     COUNTY OF LOS ANGELES, LOS
     ANGELES COUNTY FIRE
     DEPARTMENT, JOEY CRUZ, RAFAEL
     MEJIA, MICHAEL RUSSELL, and
     RAUL VERSALES

1   DATED:  November 5, 2021          MUNGER, TOLLES & OLSON LLP

2

3

4                                      By:   ___/ s / Mari Saigal___

5                                            MARI SAIGAL
                                             Attorneys for Plaintiff
6                                            VANESSA BRYANT and Non-Party
7                                            Therapist

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## ATTESTATION CLAUSE

I, Casey B. Sypek, am the ECF User whose ID and password are being used to file this **JOINT STIPULATION REGARDING DEFENDANT COUNTY OF LOS ANGELES' MOTION TO COMPEL PRODUCTION OF DOCUMENTS**. In compliance with L.R. 5-4.3.4, I hereby attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

DATED:  November 5, 2021          MILLER BARONDESS, LLP

By: _____

CASEY B. SYPEK
Attorneys for Defendants
COUNTY OF LOS ANGELES, LOS
ANGELES COUNTY FIRE
DEPARTMENT, JOEY CRUZ, RAFAEL
MEJIA, MICHAEL RUSSELL, and
RAUL VERSALES

Case No. 2:20-cv-09582-JFW-E

JOINT STIPULATION REGARDING DEFENDANT COUNTY OF LOS ANGELES'
MOTION TO COMPEL PRODUCTION OF DOCUMENTS