1  LUIS LI (State Bar No. 156081)
   Luis.Li@wsgr.com
2  WILSON SONSINI GOODRICH & ROSATI
   633 West Fifth Street, Suite 1550
3  Los Angeles, California 90071
   Telephone:  (323) 210-2900
4  Facsimile:   (866) 974-7329

5  CRAIG JENNINGS LAVOIE (State Bar No. 293079)
   Craig.Lavoie@mto.com
6  JENNIFER L. BRYANT (State Bar No. 293371)
   Jennifer.Bryant@mto.com
7  MUNGER, TOLLES & OLSON LLP
   350 South Grand Avenue, Fiftieth Floor
8  Los Angeles, California 90071-3426
   Telephone:  (213) 683-9100
9  Facsimile:   (213) 687-3702

10 Attorneys for Plaintiff Vanessa Bryant

11            UNITED STATES DISTRICT COURT

12     CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

13

| 14 | VANESSA BRYANT, | Case No. 2:20-cv-09582-JFW-E |
|---|---|---|
| 15 | Plaintiff, | **DECLARATION OF VANESSA BRYANT IN SUPPORT OF HER OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| 16 | vs. | |
| 17 | COUNTY OF LOS ANGELES, et al., | |
| 18 | Defendants. | Judge:  Hon. John F. Walter<br>Date:   December 27, 2021<br>Time:   1:30 p.m.<br>Crtrm.: 7A |
| 19 | | |
| 20 | | Assigned to Hon. John F. Walter and Magistrate Judge Charles F. Eick |
| 21 | | |
| 22 | | Discovery Cutoff: November 29, 2021<br>Pretrial Conference: February 4, 2022<br>Trial: February 22, 2022 |
| 23 | | |

24

25

26

27

28

1

## DECLARATION OF VANESSA BRYANT

2       I, Vanessa Bryant, declare as follows:

3       1.      I am a party in the above-entitled action.  I have personal knowledge of

4  the facts set forth in this declaration, and, if called as a witness, I could and would

5  testify competently to the facts stated herein.

6       2.      On the morning of January 26, 2020, my husband and daughter, Kobe

7  and Gianna Bryant, passed away in a helicopter accident while flying to a youth

8  basketball game for Gianna.  I first learned about their potential passing because

9  Instagram notifications began popping up on my phone, with messages like "RIP

10  Kobe."  I immediately drove to the airport to try to get to the crash scene as soon as

11  possible, as I was initially told there were survivors, but was ultimately encouraged

12  to drive to the sheriff's station in Calabasas.

13      3.      After a long drive and an extended wait at the sheriff's station, Sheriff

14  Villanueva arrived and confirmed to me that there were no survivors in the crash,

15  meaning that Kobe and Gianna had passed away.  I was devastated and distraught.

16  Sheriff Villanueva asked whether there was anything he could do, and I responded:

17  "If you can't bring my husband and baby back, please make sure no one takes

18  photographs of them.  Please secure the area."  Having lived in the public eye for

19  twenty years and knowing the interest people have in my husband and family, I was

20  extremely fearful that people would want to take photographs and footage of the

21  crash site.  I have always been protective of my family's privacy, especially my

22  children, and it was important to me to protect their privacy and dignity.

23      4.      In late February 2020, shortly following a large public memorial

24  service for Kobe and Gianna that was highly emotional, I learned through reports by

25  the *Los Angeles Times* that members of the Sheriff's Department had taken and

26  shared improper photos of the crash victims' remains, and that these photos became

27  a source of gossip within the Department.  Soon thereafter, I learned that firefighters

28  engaged in similar behavior.

5.      This conduct has caused me tremendous pain and distress.  It infuriates me that the people I trusted to protect the dignity of my husband and daughter abused their positions to obtain souvenirs of their deaths, as though possessing pictures of their remains somehow makes them special.  I imagine Kobe watching over what occurred at that crash scene, and I am overcome with anger and emotion. Had Kobe been alive at that crash scene, he never would have let this happen and the wrongdoers never would have dared doing what they did, and I feel it's now my job to protect them by demanding accountability for the people who violated him and our little girl.

6.      I feel sick at the thought that deputies and firefighters have gawked at photos of my husband's and child's bodies without any reason.  I also feel extreme sadness and anger knowing that photos of my husband's and daughter's bodies were laughed about while shown at a bar and an awards banquet.  Given how many people had the photos, I am confident these were not the only times the photos were shown off.  Had it not been for the *Los Angeles Times* reporting and the courageous good Samaritans who came forward when they saw something that wasn't right, I believe these public showings of the photos by the deputies and firefighters would have never come to light and would have continued going on for a long time.

7.      Knowing that deputies and firefighters casually texted one another photos of my deceased husband and daughter is extremely distressing and infuriating.  In this lawsuit, the County seems to argue that a deputy texting photos of my husband and daughter's bodies to a video game buddy who works for the Sheriff's Department, even if that deputy had no role related to the accident, is somehow less bad than sharing photos with a member of the public.  To me, the pain is the same.  It makes no difference to me whether a person who needlessly gawks at photos of my loved ones' remains is a police officer or a construction worker.  My loss of privacy is the same.  Regardless of profession, it is deeply distressing to me

1    that at least twenty people—and likely many, many more—obtained photos of Kobe

2    and Gianna's bodies for no reason at all.

3          8.    I often cannot avoid thinking about the deputies' and firefighters'

4    wrongdoing.  When typing "Kobe" into search functions to look for something

5    related to my husband online, search features sometimes auto-suggest "Kobe Bryant

6    crash pictures" and "Kobe Bryant body."  Seeing this drags me back into thinking

7    about the deputies' and firefighters' violation of my husband.  A true and correct

8    copy of a screenshot capturing one of these instances is attached hereto as

9    **Exhibit 88**.  I have also been taunted online by people threatening to leak the photos

10   or posting fake images of my husband's dead body.  Confronting these taunts forces

11   me to think about the County employees' wrongdoing and how I wouldn't have to

12   think this, or worry whether purported images actually depict my husband's body, if

13   the deputies and firefighters hadn't violated my family's privacy and the public

14   trust.

15         9.    I have—and will have for the rest of my life—fear that I and my

16   daughters will one day be confronted online with the deputies' or firefighters' stash

17   of photos.  If this happens and my daughters (currently ages two, four, and eighteen)

18   are exposed to photos of their father's and sister's bodies, I don't know how me and

19   my daughters would cope.  One day, such as when my girls are assigned to research

20   their family tree for a school project, I do not want them searching my husband's

21   and daughter's names to discover photos of their remains.

22         10.    My fear and anxiety is informed by my understanding that the Sheriff's

23   and Fire Departments did not preserve or meaningfully search the wrongdoers'

24   phones.  Because of that, I do not believe all copies of the photos have been secured.

25   Anyone familiar with digital photos knows that they can be stored, backed up, and

26   shared in countless ways—sometimes even inadvertently—such as through iCloud,

27   Snapchat, a phone's trash-bin and backup trash folder, Google Photos, WhatsApp,

28   Facebook Messenger, Telegram, Signal and other encrypted messaging programs,

1  AirDrop, personal computers, printing, downloading to other devices, direct
2  messages on social media applications, and numerous other ways.

3      11.    I have already seen one photo purporting to show my husband's
4  remains that matches the location where he was found in relation to the helicopter.
5  Since viewing the photo, I've been tormented with thoughts of who took it and
6  whether it depicts my husband.  To my understanding, most of the people with
7  access to the scene at the time my husband's remains were uncovered were Los
8  Angeles County employees, which leads me to suspect the photo may have been
9  taken and distributed by a deputy or firefighter.  Sheriff Villanueva told me that he
10 had secured the scene, so to my knowledge only Los Angeles County employees
11 and the NTSB would have had access.

12     12.    These deputies and firefighters took the worst thing that has ever
13 happened to me—the worst thing that could happen to *any* mother or spouse—and
14 made it worse.  I will be never be able to shake the anguish from knowing that the
15 officials who are supposed to keep us safe treated Kobe and Gianna with such
16 callous disrespect.  For the rest of my life, one of two things will happen: either
17 close-up photos of my husband's and daughter's bodies will go viral online, or I will
18 continue to live in fear of that happening.

19     I declare under penalty of perjury under the laws of the United States of
20 America that the foregoing is true and correct.

21     Executed on this 6th day of December, 2021, at Newport Beach, California.

22
23
24                                                  
25                                          Vanessa Bryant
26
27
28

1

**Exhibit Index**

2

| Exhibit | Description |
|---|---|
| 88 | Screenshot search functions |

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BRYANT DECL. ISO OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT