LUIS LI (State Bar No. 156081)
Luis.Li@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
633 West Fifth Street, Suite 1550
Los Angeles, California 90071
Telephone:  (323) 210-2900
Facsimile:  (866) 974-7329

CRAIG JENNINGS LAVOIE (State Bar No. 293079)
Craig.Lavoie@mto.com
JENNIFER L. BRYANT (State Bar No. 293371)
Jennifer.Bryant@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:  (213) 683-9100
Facsimile:  (213) 687-3702

Attorneys for Plaintiff Vanessa Bryant

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| VANESSA BRYANT,<br><br>           Plaintiff,<br><br>     vs.<br><br>COUNTY OF LOS ANGELES, et al.,<br><br>           Defendants. | Case No. 2:20-cv-09582-JFW-E<br><br>**EXCERPTS OF DEPOSITION TESTIMONY OF VANESSA BRYANT (OCTOBER 12, 2021) IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTON FOR SUMMARY JUDGMENT**<br><br>Judge:  Hon. John F. Walter<br>Date:   December 27, 2021<br>Time:   1:30 p.m.<br>Crtrm.: 7A<br><br>Assigned to Hon. John F. Walter and Magistrate Judge Charles F. Eick<br><br>Discovery Cutoff: November 29, 2021<br>Pretrial Conference: February 4, 2022<br>Trial: February 22, 2022 |

48503000.1

-1-

EXCERPTS OF DEPOSITION TESTIMONY OF VANESSA BRYANT (OCTOBER 12, 2021) IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTON FOR SUMMARY JUDGMENT

Pursuant to the Court's Amended Scheduling and Case Management Order, Plaintiff submits the following excerpts of the deposition testimony of Vanessa Bryant, taken on October 12, 2021, in support of her Opposition to Defendants' Motion for Summary Judgment.

| Page /Line | Testimony |
|---|---|
| 7:14-8:9 | Page 7<br><br>14 Q. All right. Now, you filed this lawsuit and<br>15 you've alleged damages; harm to you consisting of<br>16 emotional distress. Correct?<br>17 A. Correct.<br>18 Q. Okay. And emotional distress, what does that<br>19 mean to you?<br>20 MR. TOKORO: Objection. Calls for a legal<br>21 conclusion.<br>22 You can answer.<br>23 A. Emotional distress means that not only do I<br>24 have to grieve to the loss of my husband and child, but<br>25 for the rest of my life I'm going to have to fear that<br><br>Page 8<br><br>1 these photographs of my husband and child will be<br>2 leaked. And I do not want my little girls or I to ever<br>3 have to see their remains in that matter. Nor do I<br>4 think it's right that the photographs were taken in the<br>5 first place because it's already tough enough that I<br>6 have to experience this heart ache and this loss. But<br>7 now to live the rest of my life having to fear those<br>8 photographs surfacing is something that I, I have to<br>9 deal with every single day. |
| 8:25-9:23 | Page 8<br><br>25 Q. (By Mr. Miller) When you say you fear that<br><br>Page 9<br><br>1 these photographs of the crash site will some day be<br>2 disclosed, do you know whether they actually have been |

| Page /Line | Testimony |
|---|---|
|  | 3 yet?<br>4 A. Not -- I'm not referring to just the crash<br>5 site. I'm referring to my husband and my daughter's<br>6 bodies.<br>7 Q. Okay. I'll rephrase my question. Do you know<br>8 whether any photographs of your husband's and your<br>9 daughter's bodies have been actually publicly disclosed<br>10 yet?<br>11 MR. LI: Objection. Calls for<br>12 speculation. Lack of foundation.<br>13 You may answer.<br>14 A. There was one photograph which was online<br>15 where someone said that it was my husband's body. And<br>16 when I -- when I spoke to the Medical Examiner, that<br>17 same photograph matched the location of where the<br>18 Medical Examiner told me his body was found.<br>19 Q. And do you know who took that photograph?<br>20 A. I don't know.<br>21 Q. Do you know if it was anybody within the<br>22 County?<br>23 A. I don't know. |
| 16:18-19:22 | Page 16<br><br>18 Q. And you said it took about an hour and<br>19 45 minutes?<br>20 A. Yes.<br>21 Q. Was the Sheriff's station in Malibu?<br>22 A. Yes.<br>23 Q. And what did you do when you got to the<br>24 Sheriff's station in Malibu?<br>25 A. They, they weren't prepared. We got there.<br><br>Page 17<br><br>1 And I kept asking if my husband and daughter were okay.<br>2 No one would answer me. They walked me into this<br>3 little closet area. It looked like a closet. It had a<br>4 sofa and some kids' toys. And I waited there and I<br>5 said, "Are they okay?" No one would answer me.<br>6 Then they said: Actually, we'll move you over |

| Page /Line | Testimony |
|---|---|
| | 7 here.<br>8 Then they moved us over to this conference<br>9 room area with lots of tables and chairs.<br>10 And I said: What is happening? Where are<br>11 they? Why is no one telling me what's going on.<br>12 And then they said: Actually, this isn't a<br>13 good space. Let's take you back to the first room.<br>14 So then they walked us over to this little<br>15 closet room area where we waited and waited. There was<br>16 one sheriff present. And I asked him: What is<br>17 happening? Why is no one telling me what is happening?<br>18 They wouldn't answer. And --<br>19 Q. So this is around, this is around 2, 3:00 in<br>20 the afternoon now on January 26, 2020?<br>21 A. I would think around 1:30-ish.<br>22 Q. 1:30. Okay. So nobody's telling you what<br>23 happened. And go ahead and tell me what that horrible<br>24 day was like. And I have to ask these questions, so<br>25 you know, I'm not, I'm not enjoying watching you upset,<br><br>Page 18<br><br>1 you know. And if you want to take a break, take a<br>2 break. Compose yourself. You can do whatever you<br>3 want. This is not an endurance test. It's not<br>4 harassment. It's just a lawsuit. And I'm so sorry to<br>5 put you through this, but like I said at the beginning,<br>6 I've got to do my job?<br>7 A. I shouldn't have to be going through this.<br>8 It's not just a lawsuit.<br>9 Q. I agree. But you filed the lawsuit.<br>10 MR. LI: Objection. Just --<br>11 Q. (By Mr. Miller) So go ahead and tell me --<br>12 A. I want accountability.<br>13 (Simultaneous cross-talking.)<br>14 MR. LI: I don't think you need to argue<br>15 with the witness. If you want to ask a question, go<br>16 ahead.<br>17 MR. MILLER: I don't want to argue with<br>18 this lady at all. Believe me, I wish I wasn't here |

| Page /Line | Testimony |
|---|---|
|  | 19 almost as much as she wishes she wasn't here. I don't<br>20 enjoy watching this at all. This is painful.<br>21 Q. Okay. So it's around 1:30 on January 26,<br>22 2020, and nobody's telling you what happened to your<br>23 husband and your daughter. So --<br>24 A. No.<br>25 Q. Okay. Tell me what happened next.<br><br>Page 19<br><br>1 A. Then there was a gentleman that walked in.<br>2 And I found out later he was a, I guess the pastor that<br>3 they had there. Again, no one's responding to my<br>4 question. And then Sheriff Villanueva walks in and<br>5 this email publicist walks in with him. And I'm asking<br>6 what's going on, and she's walking in, and I remember<br>7 looking at her, asking her what her position was. And<br>8 she said, "I'm just a publicist."<br>9 And I asked her to leave because I wanted<br>10 privacy. So she walks out. Sheriff Villanueva tells<br>11 me what happened. And he says, Is there anything I can<br>12 do for you?<br>13 And I said: If you can't bring my husband and<br>14 baby back, please make sure no one takes photographs of<br>15 them. Please secure the area.<br>16 And he said: I will.<br>17 I said: No, I need you to get on the phone<br>18 right now and I need you to make sure that you secure<br>19 the area.<br>20 So he excused himself. He came back and he<br>21 said: All is good. The area is secure. There's an<br>22 umbrella over the area. |
| 20:4-21:5 | Page 20<br><br>4 Q. You said there was an umbrella over the area.<br>5 Is that because there were helicopters and press and so<br>6 forth?<br>7 A. I was afraid of fans or drones or helicopters<br>8 getting images of my husband and my daughter and our<br>9 friends. |

| Page /Line | Testimony |
|---|---|
| | 10 Q. And he said he put a umbrella over the area to<br>11 prevent pictures like that?<br>12 A. Yes. That there was a no-fly zone over the<br>13 area.<br>14 Q. Ms. Bryant, let me ask you a question. You're<br>15 aware, aren't you, that when an accident happens, that<br>16 it's routine practice for the authorities, for the<br>17 governmental authorities to take pictures and record<br>18 what happened. Aren't you?<br>19 MR. LI: Objection. Lack of foundation.<br>20 Speculation.<br>21 You can answer, if you know.<br>22 A. I'm aware that the Coroner needs photographs.<br>23 Q. Okay. All right. And perhaps the aviation,<br>24 you know, the flight authorities, as well?<br>25 MR. LI: Objection. Lack of foundation.<br><br>Page 21<br><br>1 Calls for speculation.<br>2 If you know, you can answer.<br>3 A. I was told that the NTSB was going to conduct<br>4 an investigation and that they were going to take<br>5 photographs of the area. |
| 50:3-10 | Page 50<br><br>3 Q. Now, you used the word "may" in these<br>4 interrogatory answers. What did you mean by usage of<br>5 the word "may?"<br>6 A. It's possible that one day these will surface.<br>7 Q. Okay. Now, that has not occurred yet, has it?<br>8 A. I'm not exactly sure. As you know, I've said<br>9 before that there was a photograph. I don't know whose<br>10 body that was. I don't know. |
| 51:3-52:15 | Page 51<br><br>3 Q. (By Mr. Miller) Sure. The interrogatory<br>4 answer that you verified says that you have constant<br>5 fear and anxiety --<br>6 A. That is true. |

| Page /Line | Testimony |
|---|---|
| | 7 Q. Right. -- that you or your surviving loved<br>8 ones may one day be sent copies of photos of your<br>9 deceased husband and daughter.<br>10 My question to you is you used the word "may<br>11 one day be sent copies." You used those words. My<br>12 question to you is: Do you know one way or the other<br>13 whether that "may" has actually occurred? That you<br>14 have been sent.<br>15 A. I don't know. I wasn't at the crash site. I<br>16 don't know.<br>17 Q. Okay. That's fair.<br>18 MR. MILLER: And the next -- the next<br>19 page, page 21, if you could, Jason.<br>20 Q. And at the top, line 4 it says: The risk is<br>21 acute because there is keen public interest and demand<br>22 for a glimpse of the photos.<br>23 Now my question is you used the word "risk."<br>24 Did you use that word because that risk has not yet<br>25 come to tuition -- pardon me -- come to fruition?<br><br>Page 52<br><br>1 A. Well, there is public interest because your<br>2 clients showed the photographs to other people who were<br>3 interested in the photographs.<br>4 Q. But that wasn't my question. My question is:<br>5 Has that risk come to fruition? Has it actually<br>6 happened, to your knowledge?<br>7 A. Not to my knowledge.<br>8 Q. Okay. Then one more -- one more question on<br>9 the next paragraph, first sentence. In addition,<br>10 plaintiff is taunted with cruel reminders that these<br>11 photos exist and could surface at any moment.<br>12 Now you used the words "could surface at any<br>13 moment." Have they, to your knowledge, actual<br>14 knowledge, have any photographs actually surfaced?<br>15 A. Not to my knowledge. Not to my knowledge. |
| 52:21-54:12 | Page 52<br><br>21 Q. These are -- Ms. Bryant, these are more |

| Page /Line | Testimony |
|---|---|
| | 22 written, we call it, the lawyers call it written<br>23 discovery that has been prepared in this case. And I<br>24 have a couple questions about -- let me ask first about<br>25 Plaintiff Vanessa Bryant's First Amended Responses and<br><br>Page 53<br><br>1 Objections to Defendants County of L.A.'s First Set of<br>2 Requests For Admission.<br>3 Let's look at No. 1. It's on page 5. Okay?<br>4 No. 1 says -- these are where we send you written<br>5 requests that you admit something. And we ask you to<br>6 admit that you have not seen any photos containing<br>7 human remains from the January 26th helicopter crash.<br>8 And your answer, starting in line 13:<br>9 Plaintiff responds as follows: Plaintiff has<br>10 seen photos of the January 26th helicopter crash posted<br>11 online that purport to contain human remains.<br>12 Okay? Do you see that?<br>13 A. Yes.<br>14 Q. Okay. Do you know whether any of those photos<br>15 that you saw came from anybody in the County of Los<br>16 Angeles? Do you know that, one way or another?<br>17 A. I don't.<br>18 Q. Okay. And then I'm going to ask you about the<br>19 next request for admission where at line 18 we ask you<br>20 to admit that you have not seen any photos containing<br>21 the remains of Kobe Bryant from the January 26th, 2020<br>22 helicopter site.<br>23 And you said: Plaintiff responds as follows:<br>24 -- line 24 -- Plaintiff has seen photos of the<br>25 January 26th helicopter crash posted online that<br><br>Page 54<br><br>1 purport to contain Kobe Bryant's remains.<br>2 Do you see that?<br>3 A. Yes.<br>4 Q. Okay. My question to you is: Do you know<br>5 whether any of those photos that you're referencing |

| Page /Line | Testimony |
|---|---|
| | 6 there came from or emanated from anybody at the County<br>7 of L.A.? The Sheriff, the Fire Department, the<br>8 Coroner, or anybody else? Do --<br>9 A. I don't know --<br>10 (Simultaneous cross-talking.)<br>11 Q. Sorry. Do you know one way or another?<br>12 A. No. |
| 61:1-17 | Page 61<br><br>1 Q. Okay. Okay, at the beginning of the<br>2 deposition, if I remember correctly, I asked you if you<br>3 had seen any of the photographs of the remains of your<br>4 husband or your daughter. And if my memory serves me,<br>5 you said no. Is that correct?<br>6 MR. LI: Objection. Misstates the<br>7 testimony.<br>8 But you can answer.<br>9 A. Not confirmed. What I said is that I wasn't<br>10 at the crash site and I don't know if the photograph<br>11 that was online specifically pertained to my husband.<br>12 Q. Okay. Fair enough. And you, I think you also<br>13 said you don't know if the photograph you saw online is<br>14 attributable to anybody at the County of L.A.<br>15 Sheriff's Department, Fire Department, Coroner or<br>16 anybody else in the County. Correct?<br>17 A. I don't know that. |
| 63:6-11 | Page 63<br><br>6 Q. (By Mr. Miller) Now, you're aware, of course,<br>7 that the Coroner took pictures of the people who died<br>8 in the crash, including your relatives. Right?<br>9 A. Yes.<br>10 Q. Okay. And that's the Coroner's job. Correct?<br>11 A. That is the Coroner's job. |
| 65:17-25 | Page 65<br><br>17 Q. Okay. Have you ever seen any pictures? To<br>18 your knowledge. All I want is your knowledge. That's<br>19 what these questions ask for. Of any pictures taken of<br>20 the crash site. In the broadest sense of the |

| Page /Line | Testimony |
|---|---|
| | 21 helicopter of the remains, anything, by L.A. County<br>22 fire department people?<br>23 MR. LI: Objection. Lack of foundation.<br>24 Same objection.<br>25 A. Not that I'm aware of. |
| 68:1-19 | Page 68<br><br>1 Q. (By Mr. Miller) Okay. I mean, if that's your<br>2 answer, that's your answer. Let me ask a new question.<br>3 Your answer to this -- your response to this<br>4 Request For Admission No. 7, it states: Plaintiff<br>5 admits that she has searched damages based in part on<br>6 harm to her, from her awareness that Defendants'<br>7 misconduct created a risk that photographs or other<br>8 images depicting remains of Kobe Bryant may be and have<br>9 been publicly displayed or disseminated.<br>10 Now I asked you about the risk before and I<br>11 don't want to go back over that. My question is: Do<br>12 you know of any specific photographs that have been<br>13 publicly displayed or disseminated -- those are your<br>14 words -- of the remains of Kobe Bryant?<br>15 MR. LI: Objection. Asked and answered.<br>16 Vague as to display and disseminated.<br>17 You may answer if you understand.<br>18 A. I'm going to go back to that one photograph.<br>19 We don't know if that's him or not. |
| 70:7-12 | Page 70<br><br>7 Q. Anything else that you're aware of with<br>8 dissemination, public dissemination or displaying of<br>9 pictures of Kobe Bryant or Gianna Bryant that you<br>10 haven't already told me about?<br>11 A. Not -- not -- not right now. But I hope eye<br>12 cloud helps us gather more information. |
| 79:18-81:4 | Page 79<br><br>18 Q. (By Mr. Miller) Oh, okay. It's at the top --<br>19 go to the top. There's a reference to somebody named<br>20 Jessica Padeski-Wells. Do you know who that is?<br>21 A. No. |

| Page /Line | Testimony |
|---|---|
|  | 22 Q. Is this something that was sent to you? I'm<br>23 kind of low tech. Was this sent on Facebook or how was<br>24 this sent to you?<br>25 A. This is an Instagram Direct message.<br><br>                    Page 80<br><br>1 Q. Okay, from Jessica Padeski-Wells to Vanessa<br>2 Bryant. Right?<br>3 A. Yes.<br>4 Q. Okay. And you don't know this person? It was<br>5 just sent to you anonymously without even knowing her?<br>6 A. Yes.<br>7 Q. Did you reply?<br>8 A. No.<br>9 Q. Okay. Let's go to the next one. This is<br>10 Bates, the numbers are at the bottom right-hand corner.<br>11 48. Was -- what is this? I don't even know what it<br>12 is.<br>13 MR. LI: Go ahead.<br>14 A. It looks like fire emojis next to a<br>15 helicopter.<br>16 Q. Was this sent to you?<br>17 A. Yes.<br>18 Q. By whom?<br>19 A. By a stranger. I don't know.<br>20 Q. Did you reply?<br>21 A. No.<br>22 Q. All right. Let's go to the next one.<br>23 A. I says LMO leak Kobe's body. If you go up on<br>24 that same message.<br>25 Q. So you don't know who sent this to you or why?<br><br>                    Page 81<br><br>1 A. No.<br>2 Q. Pretty sick. Okay.<br>3 And you didn't answer it, obviously. Right?<br>4 A. No. |
| 83:11-17 | Page 83 |

EXCERPTS OF DEPOSITION TESTIMONY OF VANESSA BRYANT (OCTOBER 12, 2021) IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTON FOR SUMMARY JUDGMENT

| Page /Line | Testimony |
|---|---|
|  | 11 Q. (By Mr. Miller) Ms. Bryant, have you seen<br>12 Bates 49 before?<br>13 A. Is it the photo that I didn't want to -- yes.<br>14 Q. Yes. And do you know who it came from?<br>15 A. No.<br>16 Q. Did you respond to it?<br>17 A. No. |
| 84:22-24 | Page 84<br><br>22 Q. (By Mr. Miller) Do you know who Bates 50 came<br>23 from?<br>24 A. No. |
| 85:15-19 | Page 85<br><br>15 Q. (By Mr. Miller) Have you seen Bates 51?<br>16 A. If I sent it to my counsel, then yes, I've<br>17 seen it before.<br>18 Q. Okay. And do you know who sent it to you?<br>19 A. No. |
| 85:25-86:3 | Page 85<br><br>25 Q. And you don't know whether 51, 50 or 49, you<br><br>Page 86<br><br>1 have no knowledge one way or the other where these came<br>2 from. Correct?<br>3 A. No. |
| 87:23-88:25 | Page 87<br><br>23 MR. LI: I understand. So we would<br>24 stipulate -- I mean, I think 52 was the last -- Jason,<br>25 52 was the last image that you just showed with the<br><br>Page 88<br><br>1 Tweet with the two photos next to it. Is that correct?<br>2 If that's correct, then we would stipulate to along the<br>3 lines of what Skip just said. If that's correct. |

| Page /Line | Testimony |
|---|---|
|  | 4 MR. TOKORO: Right. I think as Skip laid <br> 5 out, 52 is the last image. And the stipulation would <br> 6 be as Skip laid out, that the photos are not from the <br> 7 County. <br> 8 MR. LI: She doesn't know – she doesn't <br> 9 know they're from the County. She didn't respond to <br> 10 any of these people and she doesn't know any of these <br> 11 people who posted or sent them to us. <br> 12 THE WITNESS: Yes. I don't know who had <br> 13 access to this area besides the County. <br> 14 MR. MILLER: Well, right now we're trying <br> 15 to get a stipulation with Luis. <br> 16 MR. LI: Yeah, I'm in agreement with you <br> 17 that if the exhibits are the ones that we've seen on <br> 18 the screen, you know, that we would stipulate that she <br> 19 does not know the people who sent them, she does not <br> 20 know whether they came from the County, and she did not <br> 21 reply to any of the people. Is that fair? <br> 22 MR. MILLER: Yeah. So stipulated. We <br> 23 have an agreement. We don't have to draft it up. <br> 24 We've got it on the record between counsel. That's <br> 25 good enough for me. |
| 96:11-25 | Page 96 <br><br> 11 Q. Let's go to 70. Bates 70. What is this? Is <br> 12 this another one of your posts? <br> 13 A. No. This is not one of my posts. This goes <br> 14 back to like what we were just looking at before the <br> 15 break. These are posts from someone else. |
| 99:12-16 | Page 99 <br><br> 12 MR. LI: Okay. So 71 through 93 we would <br> 13 stipulate that all of these we do not -- Mrs. Bryant <br> 14 does not know who posted these, she did not respond to <br> 15 these, and she does not know whether any of these <br> 16 commence or posts came from anybody at the County. |
| 103:8-16 | Page 103 <br><br> 8 Q. (By Mr. Miller) Take a look at this. This <br> 9 might come within the stipulation. I'm not sure what |

| Page /Line | Testimony |
|---|---|
|  | 10 it is, so take a look at it and tell me if you can tell<br>11 me what it is.<br>12 A. I can't read that. Yeah, that's something<br>13 that someone sent. I did not respond to that either.<br>14 Q. So you don't know who sent this and you didn't<br>15 respond to it –<br>16 A. No. |
| 104:6-14 | Page 104<br><br>6 MR. LI: So we would stipulate again that<br>7 these are all, that Mrs. Bryant --<br>8 THE WITNESS: I didn't produce these.<br>9 MR. LI: -- did not produce these.<br>10 (Simultaneous cross-talking.)<br>11 MR. LI: -- did not respond to this to<br>12 them, does not know who created them, and, you know,<br>13 does not know one way or another whether they are<br>14 County folks. County people. Employees. |
| 109:5-16 | Page 109<br><br>5 Q. I'm not asking for you to assume anything.<br>6 I'm asking for your actual knowledge. Other than the<br>7 incident at the bar and the, what occurred at the<br>8 banquet, do you have any knowledge of anybody from the<br>9 County of L.A. disseminating or displaying pictures of<br>10 the remains of your husband or your daughter?<br>11 MR. LI: Objection to the extent it<br>12 requires any, for you to reveal any attorney-client<br>13 privilege that we've had about our investigations.<br>14 Go ahead. But if you have other knowledge,<br>15 you should --<br>16 A. I don't have other knowledge. |
| 115:22-<br>116:15 | Page 115<br><br>22 Q. Okay. This is your deposition and I want to<br>23 get your point of view, you know. I mean, sheriffs<br>24 investigate car crashes, plane crashes. You know,<br>25 incidents. Crimes, shootings. And they take pictures.<br><br>Page 116 |

| Page /Line | Testimony |
|---|---|
| | 1 I mean, everybody seems to acknowledge that.<br>2 My question to you is: In this context, which<br>3 pictures do you contend that you believe were<br>4 improperly taken by the Sheriff's Department?<br>5 MR. LI: Objection. Foundation. Vague<br>6 and ambiguous. You can answer.<br>7 A. I haven't seen any of the pictures. I know<br>8 that if -- that pictures have circulated. So because I<br>9 haven't seen the pictures, I can't exactly tell you<br>10 which ones specifically. But I saw the photographs<br>11 that you -- well, the ones that I didn't want to see,<br>12 that were exhibits. And if that's one of them, that's<br>13 not a picture that should ever be shared or discussed<br>14 at a bar or at a benefit. The Coroner has a reason to<br>15 do a medical examination. |
| 128:25-<br>129:4 | Page 128<br><br>25 Q. (By Mr. Miller) Ms. Bryant, are you aware of<br><br>Page 129<br><br>1 any photographs taken by anybody in the L.A. County<br>2 sheriff's department being posted on the internet?<br>3 MR. LI: Objection. Asked and answered.<br>4 A. No. |
| 130:7-<br>131:23 | Page 130<br><br>7 Q. So my question is -- I'd like to wrap it up,<br>8 you know? Be done with this. Are you aware of any<br>9 photographs taken by the L.A. County Sheriff's<br>10 Department or the L.A. County Fire Department being<br>11 posted of the crash site, being posted on the internet?<br>12 MR. LI: Objection. Calls for speculation<br>13 lack of foundation. Are you asking her whether she<br>14 knows for a fact that.<br>15 A. That they did it or in general?<br>16 Q. I just want to know whether you know they did<br>17 it. Whether you have any awareness or knowledge that<br>18 they did it. |

| Page /Line | Testimony |
|---|---|
|  | 19 MR. LI: Objection. Lack of foundation.<br>20 Calls for speculation.<br>21 A. Specifically, no. I was told that the area<br>22 was secured and that only sheriffs had access to that<br>23 area and the NTSB.<br>24 Q. Okay. The point of these questions I'm trying<br>25 to establish, and I think I have, and I don't want<br><br>Page 131<br><br>1 there to be any misunderstanding about it, is you have<br>2 no knowledge one way or the other of any photographs<br>3 taken by the crash site by the Sheriff's Department or<br>4 its personnel or the L.A. County Fire Department or its<br>5 personnel being posted on the internet or given to the<br>6 media. Correct?<br>7 MR. LI: Other than the objection --<br>8 A. Other than that one photograph that we've<br>9 discussed? Discussing?<br>10 Q. Other than the one photograph that you've<br>11 already said you didn't know what the source was.<br>12 A. I don't know what the source is. However, I<br>13 was assured by Villanueva that the only people who had<br>14 a access to that area were people from the County.<br>15 Q. Okay. So you have no knowledge one way or the<br>16 other. Knowledge. Of any photograph of the crash site<br>17 taken by L.A. County sheriff personnel or L.A. County<br>18 fire personnel being posted on the internet or given to<br>19 media. Is that correct?<br>20 MR. LI: Objection. Asked and answered.<br>21 Lack of foundation. You know, other than that picture,<br>22 you may --<br>23 A. Yeah, that's correct. |

48503000.1

-16-

EXCERPTS OF DEPOSITION TESTIMONY OF VANESSA BRYANT (OCTOBER 12, 2021) IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTON FOR SUMMARY JUDGMENT

DATED: December 6, 2021    WILSON SONSINI GOODRICH & ROSATI

By: */s/ Luis Li*
    LUIS LI
    Attorneys for Plaintiff Vanessa Bryant