LUIS LI (State Bar No. 156081)
Luis.Li@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
633 West Fifth Street, Suite 1550
Los Angeles, California 90071
Telephone:   (323) 210-2900
Facsimile:   (866) 974-7329

CRAIG JENNINGS LAVOIE (State Bar No. 293079)
Craig.Lavoie@mto.com
JENNIFER L. BRYANT (State Bar No. 293371)
Jennifer.Bryant@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:   (213) 683-9100
Facsimile:   (213) 687-3702

Attorneys for Plaintiff Vanessa Bryant

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| VANESSA BRYANT,<br><br>        Plaintiff,<br><br>    vs.<br><br>COUNTY OF LOS ANGELES, et al.,<br><br>        Defendants. | Case No. 2:20-cv-09582-JFW-E<br><br>**EXCERPTS OF DEPOSITION TESTIMONY OF ARLIN KAHAN (OCTOBER 25, 2021) IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTON FOR SUMMARY JUDGMENT**<br><br>Judge:   Hon. John F. Walter<br>Date:    December 27, 2021<br>Time:    1:30 p.m.<br>Crtrm.:  7A<br><br>Assigned to Hon. John F. Walter and Magistrate Judge Charles F. Eick<br><br>Discovery Cutoff: November 29, 2021<br>Pretrial Conference: February 4, 2022<br>Trial: February 22, 2022 |

48503000.1

-1-

Pursuant to the Court's Amended Scheduling and Case Management Order, Plaintiff submits the following excerpts of the deposition testimony of Arlin Kahan, taken on October 25, 2021, in support of her Opposition to Defendants' Motion for Summary Judgment.

| Page /Line | Testimony |
| --- | --- |
| 11:13-15 | Page 11 <br><br> 13 Q. What's your current assignment? <br> 14 A. I am the staff aid for the central region <br> 15 deputy fire chief. |
| 12:11-15 | Page 12 <br><br> 11 Q. And what about if we look back to the <br> 12 January 2020 time frame? Who did you report to at <br> 13 that time? <br> 14 A. That would be Deputy Fire Chief Anthony <br> 15 Marrone. |
| 17:23-19:8 | Page 17 <br><br> 23 Q. All right. Captain Kahan, have you ever <br> 24 encountered human remains in your job with the fire <br> 25 department? <br><br> Page 18 <br><br> 1 A. I have. <br> 2 Q. And when I say "human remains," do you <br> 3 understand what I'm referring to? <br> 4 A. I do understand. <br> 5 Q. What do you understand that to mean? <br> 6 A. Human remains, body parts of humans, <br> 7 flesh, organs, brain matter. <br> 8 Q. Would you say that encountering death or <br> 9 encountering human remains is, unfortunately, a <br> 10 regular and routine part of your work with the fire <br> 11 department? <br> 12 A. Ma'am, over 30 years, I would say yes. <br> 13 Q. And can you give me a sense of examples of <br> 14 the types of occasions when you have encountered |

48503000.1

-2-

EXCERPTS OF DEPOSITION TESTIMONY OF ARLIN KAHAN (OCTOBER 25, 2021) IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTON FOR SUMMARY JUDGMENT

| Page /Line | Testimony |
|---|---|
| | 15 human remains in your work with the fire<br>16 department? So we are here today to talk about a<br>17 helicopter crash, so that would be one occasion, a<br>18 crash of some kind, an accident. I'm just trying<br>19 to get a sense of what some of the other occasions<br>20 be when you might encounter human remains on the<br>21 job.<br>22 A. Usually, it's a traumatic event, like a<br>23 traffic accident, a vehicular accident, a<br>24 motorcycle accident, ped versus auto, ped versus<br>25 motorcycle. That's on the trauma side.<br><br>Page 19<br><br>1 You know, on the medical side, we often go<br>2 on DOAs for full arrests.<br>3 Q. What about suicide? Is that something<br>4 that you encounter?<br>5 A. That's included, yes, ma'am.<br>6 Q. Drug overdoses, homicide, fire, those are<br>7 all things that you've encountered?<br>8 A. Those are all included. That's correct. |
| 21:3-22:6 | Page 21<br><br>3 So in the line of work, the work that you<br>4 do, encountering human remains is part of the job, a<br>5 day at the office. Is that fair?<br>6 A. That's a fair statement, yes.<br>7 Q. In your work with the fire department,<br>8 would you say that it is standard operating<br>9 procedure to take photos at incident sites?<br>10 A. It is.<br>11 Q. And when you take incident photos, is it<br>12 also standard operating procedure to share those<br>13 photos with other members of the department?<br>14 A. Ma'am, it would depend on who the members<br>15 are.<br>16 Q. So who might you share incident<br>17 photographs with?<br>18 A. So in my current position, it would be |

| Page /Line | Testimony |
|---|---|
| | 19 common for me to share incident photos to the<br>20 department PIO or -- and/or the incident commander.<br>21 Q. All right. So then if we kind of go back<br>22 to my prior question, would it be, then, standard<br>23 operating procedure in your current position to<br>24 share incident photographs with the department PIO<br>25 and/or the incident commander?<br><br>Page 22<br><br>1 A. That is correct.<br>2 Q. And when you share incident photos with<br>3 the department PIO and/or the incident commander,<br>4 do you share the photos with them via text message<br>5 or in some other manner?<br>6 A. That would be text message. |
| 31:23-32:1 | Page 31<br><br>23 Q. Is there any cloud storage associated with<br>24 your personal phone?<br>25 A. I would assume so. I believe that comes<br><br>Page 32<br><br>1 with the phone. |
| 42:17-25 | Page 42<br><br>17 So now let's turn to the second day of the<br>18 Willow Incident of January 27, 2020. Did you report<br>19 to the scene on that day?<br>20 A. I did.<br>21 Q. And I believe you testified a few moments<br>22 ago that you were contacted on the preceding day by<br>23 Chief Marrone and told to report to the scene on<br>24 the 27th. Is that right?<br>25 A. That is correct. |
| 43:22-44:5 | Page 43<br><br>22 A. Approximately 0900, I was driven up in a<br>23 QRV to the trail, on the hillside. |

EXCERPTS OF DEPOSITION TESTIMONY OF ARLIN KAHAN (OCTOBER 25, 2021) IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTON FOR SUMMARY JUDGMENT

| Page /Line | Testimony |
|---|---|
| | 24 Q. And who drove you?<br>25 A. Captain Brian Jordan.<br><br><div align="center">Page 44</div><br>1 Q. And did anyone else accompany you on that<br>2 drive up the trail?<br>3 A. Yes.<br>4 Q. Who else was with you?<br>5 A. Captain Tony Imbrenda. |
| 44:19-23 | <div align="center">Page 44</div><br>19 Q. All right. So you arrive at 8:00 a.m.,<br>20 you arrive at the command post, you are briefed by<br>21 Chief Marrone, and then you ride up to the hill.<br>22 How long did you spend up at the actual crash site?<br>23 A. Maybe a little more than an hour. |
| 47:10-14 | <div align="center">Page 47</div><br>10 Q. So when the three of you arrived in your<br>11 vehicle up on the crash site, Chief Marrone and<br>12 Chief Breshears were already at the crash site<br>13 location?<br>14 A. That is correct. |
| 48:15-49:5 | <div align="center">Page 48</div><br>15 A. I walked -- from where we were dropped off<br>16 by the QRV, I walked the trail to the crash site<br>17 where the impact zone, and I looked around, and I<br>18 pulled out my work cell and started documenting the<br>19 incident.<br>20 Q. So you get to the impact zone. You start<br>21 documenting the incident with your work cell. Do<br>22 you do that by just walking around the scene and<br>23 taking in as much as you can on your phone? Is<br>24 that basically how that worked?<br>25 A. Yes, ma'am. That is correct.<br><br><div align="center">Page 49</div> |

48503000.1

-5-

EXCERPTS OF DEPOSITION TESTIMONY OF ARLIN KAHAN (OCTOBER 25, 2021) IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTON FOR SUMMARY JUDGMENT

| Page /Line | Testimony |
|---|---|
|  | 1 Q. And aside from walking the scene and<br>2 documenting it using your work phone, is there<br>3 anything else you were doing up at the crash site<br>4 that morning? Any other tasks or duties?<br>5 A. There is not. |
| 52:1-4 | Page 52<br><br>1 So as you're walking the scene and<br>2 documenting it, using your work cell phone, could you<br>3 estimate for me how many total photos you took?<br>4 A. Somewhere in the area, 10 to 20. |
| 52:11-54:8 | Page 52<br><br>11 Q. And what was depicted in the 10 to 20<br>12 photos you took at the crash site?<br>13 A. Debris from the helicopter; what was left<br>14 of the fuselage; tail boom; tail rotor; the remains<br>15 of the engine block; small, red flags that were<br>16 scattered throughout; the hose lead that was put in<br>17 place on Day 1; the surrounding brush; clothing in<br>18 the brush; flesh; body parts; Malibu Search and<br>19 Rescue, their lowering system. Might have been<br>20 some deputies that were photographed. I believe<br>21 that's all.<br>22 Q. And based on that list that you just<br>23 provided, which is very helpful, it sounds -- is it<br>24 fair to say that you -- as you walked around, you<br>25 were just trying to depict the entirety of the<br><br>Page 53<br><br>1 scene or to get a flavor of each piece of it? Was<br>2 that your goal?<br>3 A. That is correct. I wanted to be able to<br>4 capture and document as much of the scene that I<br>5 could.<br>6 Q. And of those 10 to 20 photos you took, how<br>7 many would you estimate contained human remains?<br>8 A. Maybe five.<br>9 Q. So approximately five of the photos you |

EXCERPTS OF DEPOSITION TESTIMONY OF ARLIN KAHAN (OCTOBER 25, 2021) IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTON FOR SUMMARY JUDGMENT

| Page /Line | Testimony |
|---|---|
| | 10 took contained human remains, and then<br>11 approximately 10 to 15 did not depict any human<br>12 remains at all?<br>13 A. I think it would be unfair to say that.<br>14 Q. So would it be fair to say that in five of<br>15 the photographs, there were visible human remains,<br>16 and then in the balance of the photos you took, 10<br>17 to 15, there might have been human remains, but<br>18 they were not the principal focus of the<br>19 photographs?<br>20 A. That would be somewhat fair, yes.<br>21 Q. And you say "somewhat," so maybe you can<br>22 correct my summary there to make it more accurate.<br>23 A. Just because a photo had a body part in<br>24 it, that is not necessarily what I was trying to<br>25 capture. It might have been something next to that<br><br>Page 54<br><br>1 body part.<br>2 Q. I see. So the five photographs that you<br>3 took that had more readily visible human remains,<br>4 that does not mean that you were intentionally<br>5 trying to capture the human remains. They might<br>6 just have been next to something else that you were<br>7 photographing. Is that a more accurate summary?<br>8 A. That is correct. |
| 54:11-18 | Page 54<br><br>11 Q. So -- okay. So let's focus first on the<br>12 five photos that had human remains as a more<br>13 principal focus or were more visible. Can you<br>14 describe for me the human remains that were<br>15 depicted in those five photos?<br>16 A. Ma'am, are you asking me what body parts?<br>17 Q. Exactly.<br>18 A. ███████████████ |
| 55:5-8 | Page 55<br><br>5 Q. What about the ███████████████ |

| Page /Line | Testimony |
|---|---|
| | 6 ███████████? Was that depicted in any of<br>7 the photos that you took?<br>8 A. Yes. |
| 55:12-21 | Page 55<br><br>12 Let's talk, first,<br>13 about the ████████████████. In<br>14 how many photos that you took was that depicted?<br>15 MR. TOKORO: I'm sorry to interrupt, but<br>16 can I hear the question back, please?<br>17 MS. BRYANT: Go ahead. You can read it<br>18 back, Ms. Court Reporter.<br>19 (Reporter read back the requested text.)<br>20 A. Ma'am, I would say five, to my best<br>21 recollection. |
| 55:24-57:5 | Page 55<br><br>24 What<br>25 about the ████████ that you mentioned? How<br><br>Page 56<br><br>1 many photos did you take that depicted ████<br>2 ██?<br>3 A. I think that would be included in the<br>4 total of 10 that I mentioned.<br>5 Q. The 10 to 20 or whatever the total number<br>6 was? Basically every photo you took would have<br>7 included ████████?<br>8 A. That is incorrect. The first five that we<br>9 spoke about. Now we are on to the second five for<br>10 a total of 10. Correct?<br>11 Q. So we have five photos that depicted the<br>12 ████████████████, and then it<br>13 was a separate five photos that depicted ████<br>14 ██?<br>15 A. That's fair to say, yes.<br>16 Q. Okay. And how many of the photos that you<br>17 took included a ████ or a ████████?<br>18 A. One, maybe two. |

EXCERPTS OF DEPOSITION TESTIMONY OF ARLIN KAHAN (OCTOBER 25, 2021) IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTON FOR SUMMARY JUDGMENT

| Page /Line | Testimony |
|---|---|
| | 19 Q. And was the one or two photos that<br>20 depicted a █████, were those different photos from<br>21 the 10 that we just talked about, five of which<br>22 included the ██████████ and five of which<br>23 included the ████████████, or were some of these<br>24 things in the same photo?<br>25 A. That would be included.<br><br><div align="center">Page 57</div><br>1 Q. Got it. Okay.<br>2 And then you testified earlier that you<br>3 also took a photo of a █████████████████.<br>4 How many photos was that depicted in?<br>5 A. I believe one. |
| 60:12-17 | <div align="center">Page 60</div><br>12 Q. What about a ██████████████?<br>13 Could you see that in any of your photos?<br>14 A. That is possible.<br>15 Q. And how many photos do you think possibly<br>16 depicted a ██████████████?<br>17 A. One at the most. |
| 63:21-64:14 | <div align="center">Page 63</div><br>21 Q. And so we just walked through several of<br>22 the photographs that you took, that included human<br>23 remains. ██████████████████████<br>████████████████. And what you described as being<br>25 also depicted in those particular photographs were<br><br><div align="center">Page 64</div><br>1 parts of the fuselage or -- in that main impact<br>2 site. Do I have that accurate?<br>3 A. Yes, ma'am, you do.<br>4 Q. Did you also take any photographs of human<br>5 remains in other portions of the crash site?<br>6 A. You're referring to other than the impact<br>7 zone; is that correct? |

| Page /Line | Testimony |
|---|---|
| | 8 Q. Correct.<br>9 A. I believe I did.<br>10 Q. So what was the location of those other<br>11 human remains that were further away from the<br>12 fuselage area?<br>13 A. On the brush, some distance away from the<br>14 impact zone. |
| 67:13-16 | Page 67<br><br>13 Q. Would it be fair to say that some of the<br>14 photos showed ███████████ or ███<br>15 ███, when it was not a clear body part?<br>16 A. That would be fair to say, yes. |
| 67:25-68:5 | Page 67<br><br>25 Q. Is it possible that some of the photos<br><br>Page 68<br><br>1 contained body parts were remains from more than<br>2 one victim?<br>3 MS. RODRIGUEZ: Objection. Calls for<br>4 speculation.<br>5 A. It is possible. |
| 71:18-72:15 | Page 71<br><br>18 Q. Did Chief Marrone ask you to document the<br>19 crash site for him?<br>20 A. He did not.<br>21 Q. Did anyone at command post or anyone else<br>22 who was at the scene or even not at the scene ask<br>23 you to take photos at the crash site?<br>24 A. No one did.<br>25 Q. And so you did it on your own; correct?<br><br>Page 72<br><br>1 A. Yes, ma'am, that is correct.<br>2 Q. Based on standard operating procedure of<br>3 what you would do at an incident? |

EXCERPTS OF DEPOSITION TESTIMONY OF ARLIN KAHAN (OCTOBER 25, 2021) IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTON FOR SUMMARY JUDGMENT

| Page /Line | Testimony |
|---|---|
|  | 4 A. Yes, ma'am.<br>5 Q. So of the 10 to 20 photos you took, how<br>6 many of them did you use for training?<br>7 A. We did not use any for training.<br>8 Q. Did you use any for after-action reviews?<br>9 A. We did not.<br>10 Q. Did you use any to prepare a briefing<br>11 sheet for either yourself or Chief Marrone?<br>12 A. We did not.<br>13 Q. Did you end up using any of the 10 to 20<br>14 photos that you took for any purpose?<br>15 A. We did not. |
| 75:22-76:8 | Page 75<br><br>22 Q. And would it be typical, again, looking<br>23 beyond this incident to other incidents you've<br>24 worked in your capacity as a staff aid, to take<br>25 comprehensive photos for these purposes so the<br><br>Page 76<br><br>1 deputy chief is able to answer any queries from the<br>2 media and that those photos would, like the ones<br>3 you took at this particular incident, include human<br>4 remains?<br>5 A. Yes.<br>6 Q. So these 10 to 20 photos that you took,<br>7 did you share them with anyone else?<br>8 A. I did. |
| 76:11-12 | Page 76<br><br>11 Q. Who did you share them with?<br>12 A. Captain Tony Imbrenda. |
| 77:1-9 | Page 77<br><br>1 Let's talk about everything<br>2 you remember about sending the photos to Captain<br>3 Imbrenda. So first off, how did you send them to<br>4 him? Was it via text message?<br>5 A. Yes, ma'am. |

EXCERPTS OF DEPOSITION TESTIMONY OF ARLIN KAHAN (OCTOBER 25, 2021) IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTON FOR SUMMARY JUDGMENT

| Page /Line | Testimony |
|---|---|
|  | 6 Q. Did you send photos to him via any other 7 method, or was it exclusively a text message 8 transfer? 9 A. Exclusively text messaging. |
| 78:16-19 | Page 78<br><br>16 Q. And how many of the photos that you took 17 did you send to Captain Imbrenda? All of them or a 18 subset of them? 19 A. I pushed all of them. |
| 78:25-79:3 | Page 78<br><br>25 So just in terms of what you know, you<br><br>Page 79<br><br>1 pushed out the entirety of the photos that you took 2 to Captain Imbrenda? 3 A. That is correct. |
| 95:7-12 | Page 95<br><br>7 Q. Prior to the first week of February, when 8 you went in and deleted the photos from your album 9 on your work cell phone, had anyone told you to 10 preserve the Willow Incident photos that you had in 11 your possession? 12 A. Nobody told me that. |
| 97:22-98:17 | Page 97<br><br>22 Q. Do you recognize Exhibit 119? 23 A. I do recognize it. 24 Q. What is this document? 25 A. This is an internal memo identifying the<br><br>Page 98<br><br>1 fact that there is going to be an investigation. 2 Q. And is that your signature on the top 3 right-hand corner? 4 A. Yes, ma'am, it is. |

| Page /Line | Testimony |
|---|---|
|  | 5 Q. And did you sign and date this on<br>6 March 18th, 2020, as indicated there?<br>7 A. Yes, ma'am, I did.<br>8 Q. And did your supervisor, Chief Marrone,<br>9 hand-deliver this to you on March 18th, 2020, as<br>10 indicated immediately below your signature?<br>11 A. Yes, ma'am, he did.<br>12 Q. And was your receipt of this document from<br>13 Chief Marrone your first indication that you were<br>14 under investigation for conduct involving the<br>15 taking, sharing of graphic photos of the Willow<br>16 Incident?<br>17 A. Yes, ma'am, that is correct. |
| 100:5-13 | Page 100<br><br>5 Q. Did you think it was unfair that you were<br>6 under investigation for your conduct at the Willow<br>7 Incident?<br>8 A. Yes, ma'am, I did think it was unfair.<br>9 Q. And did you think that it was unfair<br>10 because your conduct, in your estimation, was<br>11 consistent with standard operating procedure for<br>12 documenting incidents?<br>13 A. Yes, ma'am, I agree with that statement. |
| 107:10-25 | Page 107<br><br>10 Q. Were you asked to hand over your personal<br>11 cell phone on May 29th, 2020?<br>12 A. I was not.<br>13 Q. After May 29th, 2020, did you continue<br>14 using your personal cell phone?<br>15 A. Ma'am, in what capacity are you asking me<br>16 did I use the personal cell?<br>17 Q. In any capacity. I'm just trying to seek<br>18 confirmation that you continued using your personal<br>19 cell phone in the ordinary course. There was no<br>20 disruption in the use of that device?<br>21 MR. TOKORO: Objection. Relevance. And<br>22 also vague and ambiguous.<br>23 A. So that is correct. After that date |

| Page /Line | Testimony |
|---|---|
| | 24 that's on that document, I did continue to use my<br>25 personal cell. |
| 108:2-109:12 | Page 108 |
| | 2 Q. At any point, did you surrender your<br>3 personal cell phone to anyone within the<br>4 department?<br>5 MR. TOKORO: Same objections.<br>6 A. Ma'am, I did not.<br>7 BY MS. BRYANT:<br>8 Q. To your knowledge, has the fire department<br>9 done anything to verify that you did not possess<br>10 photos of the Willow Incident on your personal cell<br>11 phone?<br>12 MR. TOKORO: Objection. Lacks foundation.<br>13 Calls for speculation.<br>14 A. Once again, ma'am, the department never<br>15 asked me for my personal cell phone.<br>16 BY MS. BRYANT:<br>17 Q. And so, again, to the best of your<br>18 knowledge, nobody within the department has ever<br>19 inspected your personal cell phone; correct?<br>20 MR. TOKORO: Objection. Relevance.<br>21 (Miscellaneous comments.)<br>22 BY MS. BRYANT:<br>23 Q. So, Captain Kahan, let me just repeat the<br>24 question since we had some interruptions there, so<br>25 it's fresh.<br><br>Page 109<br><br>1 So to the best of your knowledge, nobody<br>2 within the department has ever inspected your<br>3 personal cell phone; correct?<br>4 MR. TOKORO: Same objection.<br>5 A. Yes, ma'am, that is correct.<br>6 BY MS. BRYANT:<br>7 Q. And to the best of your knowledge, no one<br>8 within the department has ever checked the photo<br>9 gallery on your personal cell phone; correct? |

| Page /Line | Testimony |
|---|---|
| | 10 MR. TOKORO: Same objection. Relevance as<br>11 to personal cell phone of Mr. Kahan.<br>12 A. Yes, ma'am, that is correct. |
| 109:21-110:8 | Page 109<br><br>21 To the best of your recollection -- to the<br>22 best of your knowledge, no one within the<br>23 department has ever checked your personal email<br>24 accounts in connection with this investigation;<br>25 correct?<br><br>Page 110<br><br>1 A. Yes, ma'am, that is correct.<br>2 Q. And to the best of your knowledge, no one<br>3 within the department has ever checked your<br>4 personal cloud storage account in connection with<br>5 this investigation; correct?<br>6 MR. TOKORO: Objection. Asked and<br>7 answered.<br>8 A. Yes, ma'am, that is correct. |
| 110:21-111:2 | Page 110<br><br>21 Are you aware of anything that the<br>22 department did to verify that you did not have<br>23 photos of the Willow Incident on your personal cell<br>24 phone?<br>25 MR. TOKORO: Same objections. And asked<br><br>Page 111<br><br>1 and answered.<br>2 A. I am not aware. |
| 115:16-20 | Page 115<br><br>16 Q. Having just read and reviewed the specific<br>17 facts upon which the department's proposed<br>18 suspension would be based, is there anything in any<br>19 of those paragraphs that you think is inaccurate?<br>20 A. No, I don't think so. |

48503000.1

EXCERPTS OF DEPOSITION TESTIMONY OF ARLIN KAHAN (OCTOBER 25, 2021) IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTON FOR SUMMARY JUDGMENT

| Page /Line | Testimony |
|---|---|
| 133:8-19 | Page 133 |
|  | 8 Q. What about the text of the sub-bullet<br>9 there, "failure to follow established rules or<br>10 regulations"? Do you think that your conduct, as<br>11 it relates to photographs at the Willow Incident,<br>12 failed to follow established rules or regulations?<br>13 A. I don't think there is a specific policy.<br>14 Q. So did it occur to you at the time you<br>15 were taking photos at the crash site or when you<br>16 texted those photos to Tony Imbrenda, that it might<br>17 not be permissible to do so under fire department<br>18 policies?<br>19 A. Ma'am, I did not think that. |
| 135:4-10 | Page 135 |
|  | 4 So at any time prior to January 27th, 2020,<br>5 over the course of your 30-year career with the<br>6 department, had anyone provided training to you that<br>7 suggested that taking and sending photographs of<br>8 human remains in the manner that you did at the<br>9 Willow Incident would not be permissible?<br>10 A. That would not be permissible? No. |
| 139:20-141:12 | Page 139 |
|  | 20 Q. As of January 27th, 2020, had you heard<br>21 anything about the federal constitutional right<br>22 related to photographs of deceased family members?<br>23 A. Prior or post? I'm sorry. I missed the<br>24 first part.<br>25 Q. Prior. So as of January 27, 2020, had you |
|  | Page 140 |
|  | 1 heard anything about the existence of a federal<br>2 constitutional right related to photographs of<br>3 deceased family members?<br>4 A. No, ma'am. I've never heard of that.<br>5 Q. To your knowledge, has the L.A. County<br>6 Fire Department adopted a new policy related to |

| Page /Line | Testimony |
|---|---|
| | 7 photographs of human remains?<br>8 MR. TOKORO: Objection. Lacks foundation.<br>9 Calls for speculation.<br>10 A. There is not a specific policy. There has<br>11 been a directive released.<br>12 BY MS. BRYANT:<br>13 Q. And what's that directive that's been<br>14 released?<br>15 A. Ma'am, I can't recite it word for word,<br>16 but in general, it states to the fact that there<br>17 will be taking -- no taking of photographs in an<br>18 emergency incident where there are deceased.<br>19 Q. If that directive had been issued prior to<br>20 January 27th, 2020, would you have acted<br>21 differently at the Willow Incident?<br>22 MR. TOKORO: Objection. Hypothetical.<br>23 Lacks foundation. Calls for speculation.<br>24 Irrelevant.<br>25 A. Ma'am, what do you mean by acted<br><br>Page 141<br><br>1 different?<br>2 BY MS. BRYANT:<br>3 Q. Sure. That was imprecise, so let me try<br>4 it again.<br>5 MS. BRYANT: And, Jason, your objection<br>6 can stand. You don't need to repeat it.<br>7 Q. If that directive had been issued prior to<br>8 January 27, 2020, would you have taken and shared<br>9 the same photos that you took at the Willow<br>10 Incident?<br>11 MR. TOKORO: Same objections.<br>12 A. I would not have. |
| 148:13-20 | Page 148<br><br>13 Q. Have you ever received a written notice to<br>14 preserve documents and communications related to<br>15 the subject matter of this lawsuit?<br>16 A. I have not. |

EXCERPTS OF DEPOSITION TESTIMONY OF ARLIN KAHAN (OCTOBER 25, 2021) IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTON FOR SUMMARY JUDGMENT

| Page /Line | Testimony |
|---|---|
| | 17 Q. Have you been orally instructed or advised<br>18 to preserve documents and communications related to<br>19 the subject matter of this lawsuit?<br>20 A. I have not. |
| 150:22-151:3 | Page 150<br><br>22 Q. It's my understanding that you reported to<br>23 the command post about 8:00 a.m. on Monday the 27th<br>24 of January 2020; correct?<br>25 A. Yes, sir, that is correct.<br><br>Page 151<br><br>1 Q. And were you asked to report at that place<br>2 and time by Chief Marrone?<br>3 A. Yes, sir, that is correct. |
| 151:19-152:9 | Page 151<br><br>19 Q. Okay. How long did the conversation last?<br>20 A. Less than two minutes.<br>21 Q. At any time during that<br>22 less-than-two-minute conversation, did Chief<br>23 Marrone tell you, in sum and substance, "I need you<br>24 to be my eyes and ears tomorrow at the crash<br>25 scene"?<br><br>Page 152<br><br>1 A. He did not.<br>2 Q. At any time that evening, did he tell you,<br>3 in sum and substance, "I need you to document the<br>4 crash scene tomorrow morning"?<br>5 A. He did not.<br>6 Q. And when you reported at 8:00 a.m. on that<br>7 Monday morning to the command post, did I<br>8 understand you to say that you were briefed by<br>9 Chief Marrone? |
| 152:15-153:1 | Page 152<br><br>15 Q. And how long did that briefing last? |

48503000.1

EXCERPTS OF DEPOSITION TESTIMONY OF ARLIN KAHAN (OCTOBER 25, 2021) IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTON FOR SUMMARY JUDGMENT

| Page /Line | Testimony |
|---|---|
| | 16 A. Approximately ten minutes.<br>17 Q. At any time during that ten-minute<br>18 briefing, did Chief Marrone tell you, in sum and<br>19 substance, that you needed to be his eyes and ears<br>20 at the crash scene that morning?<br>21 A. He did not.<br>22 Q. At any time that morning, during that<br>23 ten-minute briefing, did Chief Marrone tell you<br>24 that he needed you to document the scene for him<br>25 that morning?<br><br>Page 153<br><br>1 A. He did not. |
| 162:4-10 | Page 161<br><br>4 Q. Are you aware of any function, any<br>5 official function, in which your department used<br>6 those photographs?<br>7 MR. TOKORO: Same objection. Lacks<br>8 foundation. Calls for speculation. And not a<br>9 30(b)(6).<br>10 A. I am not aware. |
| 166:24-168:10 | Page 166<br><br>24 Q. You appealed the disciplinary action that<br>25 was first proposed; correct?<br><br>Page 167<br><br>1 MR. TOKORO: Objection. Asked and<br>2 answered. We covered all this earlier.<br>3 A. That is correct, sir.<br>4 BY MR. JACKSON:<br>5 Q. And isn't it true that you suffered no<br>6 demotion in rank; correct?<br>7 MR. TOKORO: Same objections. Asked and<br>8 answered.<br>9 A. That is correct.<br>10 BY MR. JACKSON: |

EXCERPTS OF DEPOSITION TESTIMONY OF ARLIN KAHAN (OCTOBER 25, 2021) IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTON FOR SUMMARY JUDGMENT

| Page /Line | Testimony |
|---|---|
|  | 11 Q. You served no suspension; correct?<br>12 MR. TOKORO: Same objection. Asked and<br>13 answered.<br>14 A. That is also correct.<br>15 BY MR. JACKSON:<br>16 Q. To date, you have suffered no loss of<br>17 income; correct?<br>18 MR. TOKORO: Objection. Asked and<br>19 answered.<br>20 A. To date, that is correct.<br>21 BY MR. JACKSON:<br>22 Q. To date, you have suffered no loss of<br>23 seniority; correct?<br>24 MR. TOKORO: Same objections.<br>25 A. That is correct, sir.<br><br>Page 168<br><br>1 BY MR. JACKSON:<br>2 Q. To date, you have suffered no loss of<br>3 benefits; correct?<br>4 MR. TOKORO: Same objection.<br>5 A. That is correct.<br>6 BY MR. JACKSON:<br>7 Q. And to date, there has been no impact<br>8 whatsoever on your pension; correct?<br>9 MR. TOKORO: Same objection.<br>10 A. To date, that is correct. |

EXCERPTS OF DEPOSITION TESTIMONY OF ARLIN KAHAN (OCTOBER 25, 2021) IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTON FOR SUMMARY JUDGMENT

1   DATED:  December 6, 2021                WILSON SONSINI GOODRICH & ROSATI

2

3

4                                          By:     _/s/ Luis Li_
                                                LUIS LI
5                                          Attorneys for Plaintiff Vanessa Bryant

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXCERPTS OF DEPOSITION TESTIMONY OF ARLIN KAHAN (OCTOBER 25, 2021) IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTON FOR SUMMARY JUDGMENT