# EXHIBIT 97

EXHIBIT 97
824

**CERTIFIED COPY**

```
 1              UNITED STATES DISTRICT COURT

 2        CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

 3

 4   VANESSA BRYANT, a California )
     Resident,                    )
 5                                )
                    Plaintiff,    )
 6                                )
        vs.                       )   No. 2:20-cv-09582-JFW-E
 7                                )
     COUNTY OF LOS ANGELES, a     )
 8   Public entity, et al.,       )
                                  )
 9                  Defendants.   )
     _____)
10

11

12

13              C O N F I D E N T I A L

14       VIDEO-RECORDED DEPOSITION OF SCOTT MILLER

15                  October 28, 2021

16

17

18

19

20

21

22

23

24   Theresa JoAnn Phillips-Blackwell, CSR 12700.
     476612
25
```

**BARKLEY**
*Court Reporters*
barkley.com

SINCE 1972

(310) 207-8000 Los Angeles   (415) 433-5777 San Francisco   (949) 955-0400 Irvine         (858) 455-5444 San Diego
(310) 207-8000 Century City   (408) 885-0550 San Jose        (760) 322-2240 Palm Springs   (800) 222-1231 Carlsbad
(916) 922-5777 Sacramento     (800) 222-1231 Martinez        (702) 366-0500 Las Vegas      (800) 222-1231 Monterey
(951) 686-0606 Riverside      (818) 702-0202 Woodland Hills  (702) 366-0500 Henderson      (516) 277-9494 Garden City
(212) 808-8500 New York City  (347) 821-4611 Brooklyn        (518) 490-1910 Albany         (914) 510-9110 White Plains
(312) 379-5566 Chicago        00+1+800 222 1231 Paris        00+1+800 222 1231 Dubai       001+1+800 222 1231 Hong Kong

**EXHIBIT 97**
**825**



```
09:45   1

09:46   19          Do you ever carry your personal cell phone --
09:46   20   have you ever carried your personal cell phone on your
09:46   21   person while you were on duty?
09:46   22        A.   Yes.
09:46   23
```

18

SCOTT MILLER - CONFIDENTIAL

BARKLEY
Court Reporters

**EXHIBIT 97**
**826**

Case 2:20-cv-09582-JFW-E   Document 196-9   Filed 12/06/21   Page 4 of 40   Page ID #:12909



09:46  1

09:47  22      Q.   You've -- were you on duty on the day of the

09:48  23  helicopter accident, January 26, 2020?

09:48  24      A.   Yeah.   I was working overtime at Lost Hills

09:48  25  Station.

19

SCOTT MILLER - CONFIDENTIAL

**BARKLEY**
Court Reporters

**EXHIBIT 97**
**827**

09:48  1      Q.  And when you -- when you were working overtime

09:48  2  at Lost Hills, what -- what does that typically entail

09:48  3  -- or what did -- what would it have normally entailed

09:48  4  on a day like that?

09:48  5      A.  Working a patrol car.  So getting a patrol car

09:48  6  after briefing, getting a certain area assigned, and

09:48  7  then going and doing normal patrol duties.

09:48  8      Q.  So just responding to calls for service;

09:48  9  traffic accidents; you know, crime investigation; just

09:48 10  whatever comes up during the shift?

09:48 11      A.  Yes.

09:48 12      Q.  What do you recall happening that day -- the

09:48 13  day of the helicopter crash?  Let's say before you got

09:48 14  any call related to the helicopter crash that day, what

09:48 15  were you doing?

09:49 16      A.  I think just driving around.

09:49 17      Q.  And at some point did you receive a radio call

09:49 18  related to a potential aircraft accident?

09:49 19      A.  Yes.  It came on the MDC.

09:49 20      Q.  What do you recall about that?

09:49 21      A.  I think the call just said, "Possible aircraft

09:49 22  down."  The informant was trying to give directions on

09:49 23  where it -- where it was.  So there was myself, and I

09:49 24  think at the time there was at least five other patrol

09:49 25  cars, and we were just driving all over the area trying

20

SCOTT MILLER - CONFIDENTIAL

BARKLEY
Court Reporters

**EXHIBIT 97**
**828**

| 09:49 | 1 | to figure out where the informant was saying that it |
|---|---|---|
| 09:49 | 2 | went down.  Because we couldn't see anything.  We |
| 09:49 | 3 | couldn't find anything.  And then finally, somebody had |
| 09:49 | 4 | said that the fog had lifted enough and they saw smoke |
| 09:49 | 5 | over near the water company. |

09:49   6   ██   ████████████████████████

██ █   ████████████████

██ █   ██   ████████████

09:50   9       Q.  So what happened after you heard that -- that

09:50   10   one of your colleagues had potentially identified

09:50   11   where -- you know, identified the water district as, you

09:50   12   know, potentially close to where the helicopter went

09:50   13   down?  What happened at that point?

09:50   14       A.  We all responded over there to the water

09:50   15   district, drove up to where their offices are there on

09:50   16   the property.  And fire department personnel started to

09:50   17   arrive.  And there was some personnel that were going to

09:50   18   go up to the crash site and see what they could find.

09:50   19   And I said that I would start the command post there at

09:50   20   the water company.

09:50   21   ██   ████████████████████████

██ █   ████████████████████████

██ █   ████████████████████████

██ █   ████

██ █   ██   ████████████████████████

21

BARKLEY
*Court Reporters*

**EXHIBIT 97**
**829**

Case 2:20-cv-09582-JFW-E   Document 196-9   Filed 12/06/21   Page 7 of 40   Page ID
#:12912



09:52    11        Q.  So you mentioned that you volunteered to start

09:52    12    setting up a command post.  Can you describe that.

09:52    13        A.  We started out in the back of the sergeant's

09:52    14    car.  So I grabbed one of the -- the trainees -- one of

09:52    15    the deputies that's on training there at the station;

09:52    16    and I told him, "Come on.  I'm going to teach you how to

09:52    17    set up a command post and run it."  So we got up, you

09:53    18    know, a white board; and I started telling him some --

09:53    19    basically, when you run a command post, your job is to

09:53    20    get all of the information possible and document it, all

09:53    21    of the personnel and document that.  And then at that

09:53    22    point you start deploying personnel to where they're

09:53    23    needed.  You deploy, you know, any other resources.  You

09:53    24    request other resources as needed, if we need it.  You

09:53    25    know, let's say portable bathrooms.  That's one of the

23

SCOTT MILLER - CONFIDENTIAL

**EXHIBIT 97**
**830**

BARKLEY
Court Reporters



09:53   1   things we have -- we've come across before running a

09:53   2   command post.

24



09:58 13      Q.  Anything else that you were doing, let's say,

09:58 14  in the first couple of hours after you started setting

09:58 15  up the command post?

09:58 16      A.  It was mainly just making sure we had all of

09:58 17  the personnel, you know, listed, we knew where they

09:58 18  were.  We ended up putting deputies that -- you know,

09:58 19  down the street each direction just in case we had, you

09:59 20  know, looky-loos that wanted to go up and see a crash

09:59 21  site.  I mean, you get that all the time.  It's just --

09:59 22  it's no different than an auto accident.  You have

09:59 23  people -- you know, members of the public who have a

09:59 24  morbid curiosity; and we've got to keep them out.

09:59 25

27

SCOTT MILLER - CONFIDENTIAL

**BARKLEY**
Court Reporters

**EXHIBIT 97**
**832**

| | | |
|---|---|---|
| 10:04 | 1 | ████████████ |
| 10:04 | 2 | So it's -- I'm just -- I'm just wondering, for |
| 10:04 | 3 | example, like, were you investigating anything that day |
| 10:04 | 4 | as part of your role at the command post? |
| 10:04 | 5 | A.  No. |
| 10:04 | 6 | Q.  Just to break that down further, did you have |
| 10:04 | 7 | any role on January 26th in investigating what caused |
| 10:04 | 8 | the helicopter accident? |
| 10:04 | 9 | A.  No. |
| 10:05 | 10 | Q.  Did you have any role on January 26 in |
| 10:05 | 11 | investigating the identity of the helicopter? |
| 10:05 | 12 | A.  No. |
| 10:05 | 13 | Q.  Did you have any role on the day of the |
| 10:05 | 14 | accident in investigating the identity of the passengers |
| 10:05 | 15 | on the helicopter, the victims of the crash? |
| 10:05 | 16 | A.  No. |
| 10:05 | 17 | Q.  Did you write a report related to anything that |
| 10:05 | 18 | you did on January 26th? |
| 10:05 | 19 | A.  No. |
| 10:05 | 20 | ██ ████ |
| ██ | ██ | ██ ██████████ |
| ██ | ██ | ████████ |
| ██ | ██ | ██ ███████████ |
| ██ | ██ | ██████████████ |
| ██ | ██ | ████████ |

32

SCOTT MILLER - CONFIDENTIAL

**BARKLEY**
*Court Reporters*

**EXHIBIT 97**
**833**

Case 2:20-cv-09582-JFW-E   Document 196-9   Filed 12/06/21   Page 11 of 40   Page ID
#:12916



10:26  1

10:27  12        Q.  Detective Miller, is it true that sometime in

10:27  13   the evening on January 26 you received photos of the

10:27  14   accident scene from a deputy?

10:28  15        A.  Yes.

10:28  16

46

SCOTT MILLER - CONFIDENTIAL

**EXHIBIT 97**
**834**

BARKLEY
Court Reporters



```
10:31  1
10:31  4        Q.   Did you tell the deputy that you were
10:31  5   investigating something during this conversation about
10:32  6   the photos?
10:32  7        A.   No.
10:32  8        Q.   Did you indicate to the deputy in any way that
10:32  9   you needed the photos for some purpose?
10:32 10        A.   No.
10:32 11
```

49

**EXHIBIT 97**
**835**

BARKLEY
Court Reporters



10:34   1

10:35   6        Q.   How -- just mechanically, how did you receive

10:35   7   these photos of the accident scene?

10:35   8        A.   They came onto my phone by AirDrop.

10:35   9

51

SCOTT MILLER - CONFIDENTIAL

**EXHIBIT 97**
**836**

10:37  1

10:37  7        Q.   Sorry.   On January 26, 2020, what was your --

10:38  8   the work cell phone on which you received the photos,

10:38  9   what type of phone was it?

10:38  10       A.   An iPhone.

10:38  11       Q.   Do you still have that same iPhone that you

10:38  12   received the photos on in January 2020?

10:38  13       A.   No.

10:38  14

53

**BARKLEY**
Court Reporters

**EXHIBIT 97**
**837**



10:43 13    Q.   At any point after receiving these accident

10:43 14  scene photos, did you use them for something?

10:43 15         MR. TOKORO:   Objection.   Objection.   Asked and

10:43 16  answered.

10:43 17         THE WITNESS:   No.

56

SCOTT MILLER - CONFIDENTIAL

**EXHIBIT 97**
**838**



11:21  1

11:22  15    Q.   When you received these photos containing what
11:22  16    looked like ███████████ or a ███████████████
      █████████ on your cell phone, did it occur to you that
11:22  18    it may not be permissible under sheriff's department
11:22  19    policies for you to receive those photos?
11:22  20    A.   No.
11:22  21
11:22  22

11:23  25    Q.   So it was your understanding at the time that

71

SCOTT MILLER - CONFIDENTIAL

**EXHIBIT 97**
**839**

BARKLEY
Court Reporters

Case 2:20-cv-09582-JFW-E   Document 196-9   Filed 12/06/21   Page 17 of 40   Page ID
#:12922

11:23  1    you were allowed to receive accident scene photographs,

11:23  2    including accident scene photographs that may contain

11:23  3    human remains, on your cell phone?  That was your

11:23  4    understanding, that that was -- that was allowed by

11:23  5    sheriff's department policies at the time?

11:23  6         A.  It was on my work cell phone, and yes.

11:23  7



11:24  18        Q.  There are going to be a couple of questions I

11:24  19   also ask like this later that I imagine you're going to

11:24  20   want to keep confidential, so I just want to tell you

11:24  21   that I'm confident that your counsel -- your -- I guess

11:24  22   your counsel has every right -- I imagine they intend to

11:24  23   designate some of your personal information as

11:24  24   confidential so that it can't just be, you know, shared

11:24  25   with the public for no reason.  So I imagine that will

72

SCOTT MILLER - CONFIDENTIAL

**BARKLEY**
Court Reporters

**EXHIBIT 97**
**840**

| | | |
|---|---|---|
| 11:28 | 1 | can either continue to take your deposition or you can |
| 11:28 | 2 | decide to do whatever you want.  I'm not going to tell |
| 11:28 | 3 | you how to run your case.  But the witness has said that |
| 11:28 | 4 | he's not going to disclose it.  I've made my position |
| 11:28 | 5 | clear.  And it's your choice. |
| 11:28 | 6 | MR. LAVOIE:  Just to be clear, it's your |
| 11:28 | 7 | position that it is permissible for a witness not to |
| 11:28 | 8 | answer a question in a deposition based on privacy and |
| 11:28 | 9 | relevance grounds?  That's your position? |
| 11:28 | 10 | MR. TOKORO:  I do believe that is my position. |
| 11:28 | 11 | MR. LAVOIE:  Okay.  Okay. |
| 11:29 | 12 | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| 11:29 | 24 | Q.  Did you delete the accident scene photos at |
| 11:29 | 25 | some point? |

77

**BARKLEY**
*Court Reporters*

**EXHIBIT 97**
**841**

| 11:29 | 1 | A.  Yes. |
|---|---|---|
| 11:29 | 2 | Q.  When did you delete them? |
| 11:29 | 3 | A.  The following Saturday. |
| 11:29 | 4 | Q.  The following Saturday. |
| 11:30 | 5 | Okay.  Why did you delete them on that |
| 11:30 | 6 | Saturday, six days after the accident? |
| 11:30 | 7 | A.  I went to work overtime at Lost Hills again and |
| 11:30 | 8 | saw Sergeant Kelly at the station, and he said that they |
| 11:30 | 9 | were ordered to delete any photographs that they had of |
| 11:30 | 10 | the scene, and he told me that I needed to do the same. |
| 11:30 | 11 | So I followed the order and deleted all the photographs. |
| 11:30 | 12 | Q.  So after you had a conversation with |
| 11:30 | 13 | Sergeant Kelly -- let me back up. |
| 11:30 | 14 | So the accident occurred on a Sunday, |
| 11:30 | 15 | January 26th; right? |
| 11:30 | 16 | A.  Yes. |
| 11:30 | 17 | Q.  So after -- so after that, you'd have Monday, |
| 11:30 | 18 | January 27th; Tuesday, January 28th; Wednesday, |
| 11:30 | 19 | January 29th; Thursday, January 30th; Friday, |
| 11:30 | 20 | January 31st.  Saturday would have been February 1st. |
| 11:30 | 21 | Right? |
| 11:30 | 22 | A.  I don't know without looking at a calendar. |
| 11:31 | 23 | I'll take your word for it. |
| 11:31 | 24 | Q.  You know, one thing I've always been bad at is |
| 11:31 | 25 | knowing which months have 31 days and which ones have |

78

SCOTT MILLER - CONFIDENTIAL

**BARKLEY**
*Court Reporters*

**EXHIBIT 97**
**842**

Case 2:20-cv-09582-JFW-E   Document 196-9   Filed 12/06/21   Page 20 of 40   Page ID #:12925

11:31 1  30.  Apparently, people learn that in kindergarten.  And

11:31 2  my wife counts her knuckles or something.  I can never

11:31 3  get that right.

11:31 4       A.  Yeah.

11:31 5       Q.  So -- but -- but you're confident that it was

11:31 6  the Saturday after the accident?

11:31 7       A.  Yes.

11:31 8       Q.  Why -- why is that -- why does that stick out

11:31 9  to you, that it was the Saturday after?

11:31 10      A.  That was the first time that I went back and

11:31 11 worked overtime.

11:31 12      Q.  Oh, okay.  So you wouldn't have been at Lost

11:31 13 Hills if you weren't working overtime?

11:31 14      A.  Correct.

11:31 15      Q.  And was it typical for you to work overtime

11:31 16 only on the weekends?

11:31 17      A.  Yes.  I only work overtime on my days off.

11:31 18  ███  ██████████████████████████████████████

███ ██  ████████████████████████████████

███ ██  █████████████████████████████████████████

███ ██  ███████████████████████████████████

███ ██  █████████████████████████████████████

███ ██  ███████████████  ██████████████████████

███ ██  ██  ████  ██████████████████████████

███ ██  ████████████████████  ████████████████

79

SCOTT MILLER - CONFIDENTIAL

BARKLEY
Court Reporters

**EXHIBIT 97**
**843**



11:35

11:36 24    Q.  You mentioned that you deleted the photos

11:36 25  following a conversation with Sergeant Kelly on the

82

BARKLEY
Court Reporters

| | | |
|---|---|---|
| 11:36 | 1 | Saturday after the accident; is that correct? |
| 11:36 | 2 | A.  Yes. |
| 11:36 | 3 | Q.  Okay.  Approximately how long after your |
| 11:36 | 4 | conversation with Sergeant Kelly did you delete the |
| 11:36 | 5 | photos? |
| 11:36 | 6 | A.  Immediately. |
| 11:36 | 7 | Q.  So you were physically at the Lost Hills |
| 11:36 | 8 | Station when you deleted the photos? |
| 11:36 | 9 | A.  Yes. |
| 11:37 | 10 | Q.  And you're confident of that? |
| 11:37 | 11 | A.  Yes. |
| 11:37 | 12 | Q.  Why are you confident of that? |
| 11:37 | 13 | A.  Because I remember having a conversation with |
| 11:37 | 14 | Sergeant Kelly and him giving me order, and I did it |
| 11:37 | 15 | immediately. |
| 11:37 | 16 | Q.  So you understood Sergeant Kelly -- |
| 11:37 | 17 | Sergeant Kelly's instruction to delete the photos to be |
| 11:37 | 18 | an order; correct? |
| 11:37 | 19 | A.  Yes. |
| 11:37 | 20 | Q.  And you com -- you followed that order? |
| 11:37 | 21 | A.  Yes. |
| 11:37 | 22 | ██  ██████████████████████████████████████ |
| ██ ██ | | ████████████████████████████████ |
| ██ ██ | | ██  ███ |
| ██ ██ | | ██  █████████████████████ |

83

SCOTT MILLER - CONFIDENTIAL

**BARKLEY**
*Court Reporters*

**EXHIBIT 97**
**845**



11:42  6      Q.  Have you ever been told by a supervisor before,

11:42  7  other than this instance, to delete something from your

11:42  8  cell phone?

11:42  9      A.  No.

11:42  10

87

BARKLEY
Court Reporters

**EXHIBIT 97**
**846**

11:48   1   ▄▄   ▄▄▄▄▄▄▄▄▄▄▄

▄▄  ▮   ▄▄   ▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄

▄▄  ▮   ▄▄   ▄▄▄▄▄▄▄▄▄   ▄▄▄▄▄▄

▄▄  ▮   ▄▄   ▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄

▄▄  ▮   ▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄

▄▄  ▮   ▄▄  ▄▄

▄▄  ▮   ▄▄   ▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄

▄▄  ▮   ▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄

▄▄  ▮   ▄▄▄▄▄▄▄▄▄▄▄

▄▄  ▮   ▄▄  ▄▄

11:49  11       Q.  At any point in connection with this

11:49  12   conversation with Sergeant Kelly did he ask to look at

11:49  13   your cell phone?

11:49  14       A.  No.

11:49  15       Q.  At any point did you show Sergeant Kelly or any

11:49  16   other supervisors that day anything on your cell phone?

11:49  17       A.  No.

11:49  18       Q.  So there was never a point where you say, Hey,

11:49  19   look here.  I deleted the photos.  Here's -- you can

11:49  20   look at my phone.

11:49  21           Nothing like that happened on the day that you

11:49  22   deleted them?

11:49  23       A.  No.

11:49  24       Q.  Were you ever asked to write a memo related to

11:49  25   your receipt or handling of the photos?

91

SCOTT MILLER - CONFIDENTIAL

**BARKLEY**
*Court Reporters*

**EXHIBIT 97**
**847**

11:49  1        A.   No.

11:50  2        Q.   And you never did write any memo related to

11:50  3   accident scene photos?

11:50  4        A.   Correct.

11:50  5   ███  ████████████████████████

███ █  ██████████████████  ████████████

███ █  █████████████████████████

███ █  ███  ████████  █████████

███ █  ███  █████  █████  ████████████████

███ █  ████████

███ █  ███  ████

███ █  ███  ████  █████████████████

███ █  █████  ████████████████  █████████

███ █  █████████  ████████  █████████

███ █  █████████████████  ████████████████

███ █  ███████████████  ████

███ █  ███  █████████████  █████  █████████

███ █  ███  ████  █████

███ █  ███  █████████████  █████████

███ █  ████████

███ █  ████  █████████  ██████  ████████

███ █  ████████

███ █  █████  ████████  █████████  █████████

███ █  █████████████████████  █████████

███ █  █████████████████████  █████████

92

SCOTT MILLER - CONFIDENTIAL

**BARKLEY**
Court Reporters

**EXHIBIT 97**
**848**



11:57  1

11:58  15        So this is a little over three months after the

11:58  16  helicopter accident -- right? -- when they looked at

11:58  17  your phone -- when Internal Affairs investigators looked

11:58  18  at your phone; is that right?

11:58  19      A.   Yes.

11:58  20      Q.   And this interview -- the second interview that

11:58  21  you had with Internal Affairs investigators that took

11:58  22  place on May 5th, 2020, approximately three months after

11:58  23  the helicopter accident, was that the first time, to

11:59  24  your understanding, that anyone from the sheriff's

11:59  25  department looked at your phone to look for indications

97

SCOTT MILLER - CONFIDENTIAL

**BARKLEY**
Court Reporters

**EXHIBIT 97**
**849**

Case 2:20-cv-09582-JFW-E   Document 196-9   Filed 12/06/21   Page 27 of 40   Page ID #:12932

| | |
|---|---|
| 11:59 1 | of accident scene photos? |
| 11:59 2 | A.  Yes. |
| 11:59 3 | ████  ███████████████████████████████ |
| | ████ █ ███████████████████████████████ |
| | ████ █ ████████████████████████████████ |
| | ████ █ ███████████████████████████████ |
| | ████ █ ████████████████████████████████ |
| | ████ █ █████████████████████████████ |
| | ████ █ ████████████████████ |
| | ████ ██ █████   ████████████████████ |
| | ████ ██ ██████████ |
| | ████ ██ ███  ██████  ██████  ████████████████ |
| | ████ ██ ████████████████████████████ |
| | ████ ██ ██████████████  ████████████████. |
| 12:00 15 | So separate from submitting your phone for |
| 12:00 16 | forensic examination as part of this lawsuit, my |
| 12:00 17 | understanding of your testimony is that on May 5th, |
| 12:00 18 | 2020, Internal Affairs investigators looked at your cell |
| 12:00 19 | phone for approximately five minutes. |
| 12:00 20 | Aside from that and aside from anything that's |
| 12:00 21 | been done in connection with this lawsuit, are you aware |
| 12:00 22 | of any steps taken by the sheriff's department to verify |
| 12:00 23 | that you have deleted the accident scene photos and that |
| 12:00 24 | you did not share the accident scene photos with anyone? |
| 12:00 25 | A.  I am not aware of anything. |

98

SCOTT MILLER - CONFIDENTIAL

BARKLEY
Court Reporters

**EXHIBIT 97**
**850**

Case 2:20-cv-09582-JFW-E   Document 196-9   Filed 12/06/21   Page 28 of 40   Page ID
#:12933

12:00   1   ▮   ▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▮   ▮   ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▮   ▮   ▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▮   ▮   ▮   ▬▬▬▬▬▬

12:01   5      Q.  Have you ever provided any passwords or

12:01   6   usernames to e-mail accounts, social media accounts to

12:01   7   the sheriff's department?

12:01   8      A.  No.

12:01   9   ▮   ▬▬▬▬▬▬   ▬▬▬   ▬▬▬▬▬

▮   ▮   ▬▬▬▬▬▬

12:01  11         To your knowledge, has the sheriff's department

12:01  12   ever searched your personal e-mail account, or accounts,

12:01  13   for anything related to these accident scene photos?

12:01  14      A.  Not that I'm aware of.

12:02  15   ▮   ▬▬▬▬▬▬▬▬▬▬▬▬▬

▮   ▮   ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▮   ▮   ▬▬▬▬▬▬▬▬▬▬▬▬▬

▮   ▮   ▮   ▮

▮   ▮   ▮   ▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▮   ▮   ▬▬▬▬▬▬▬▬▬

▮   ▮   ▮   ▮

▮   ▮   ▮   ▬▬▬▬▬▬▬▬▬▬▬

▮   ▮   ▮   ▮

▮   ▮   ▮   ▬▬▬▬▬▬▬▬▬▬▬▬▬

▮   ▮   ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

99

SCOTT MILLER - CONFIDENTIAL

**BARKLEY**
Court Reporters

**EXHIBIT 97**
**851**

Case 2:20-cv-09582-JFW-E   Document 196-9   Filed 12/06/21   Page 29 of 40   Page ID #:12934

12:05  1  ████  ████

████ █  ████  ██████████████████████████████

12:05  3        Have you ever heard of a right protected by the

12:05  4  United States Constitution related to photographs of

12:06  5  deceased individuals?

12:06  6        A.  Just the -- the new law that was passed.

12:06  7        Q.  Oh, right.  I think -- I'm assuming what you're

12:06  8  referring to is a law passed in California about, you

12:06  9  know, improper taking or sharing of death photographs.

12:06  10       Is that what you're thinking of?

12:06  11       A.  I'm not sure what the wording is, but it was

12:06  12  the one that was just passed recently.

12:06  13       Q.  In California, like, by Governor Newsom and all

12:06  14  that?

12:06  15       A.  I -- I don't know who passed that.

12:06  16       Q.  Okay.  Okay.  So I'm -- I'm -- my question is a

12:06  17  little different.  I'm asking about rights under the

12:06  18  United States Constitution.

12:06  19       So, for example, you know, I'm sure you're

12:06  20  familiar with a lot of these constitutional rights in

12:06  21  connection with your work.  So just the Fourth Amendment

12:06  22  right to be free from unreasonable searches and

12:06  23  seizures, the Fifth Amendment right to remain silent,

12:06  24  et cetera.

12:06  25       My question is this.  Have you ever heard of a

102

**BARKLEY**
Court Reporters

**EXHIBIT 97**
**852**



| 12:07 | 1 | right protected by the United States Constitution -- a |
| 12:07 | 2 | constitutional right -- related to photographs of |
| 12:07 | 3 | deceased individuals? |
| 12:07 | 4 | MR. TOKORO:  Objection.  Asked and answered. |
| 12:07 | 5 | THE WITNESS:  No, I'm not aware. |
| 12:07 | 6 | BY MR. LAVOIE: |
| 12:07 | 7 | Q.  Have you ever heard that people have rights |
| 12:07 | 8 | under the United States Constitution related to images |
| 12:07 | 9 | of their dead family members? |
| 12:07 | 10 | MR. TOKORO:  Asked and answered. |
| 12:07 | 11 | THE WITNESS:  No. |

| 12:08 | 25 | Q.  And nothing from your, I guess, 35 years, |

103

SCOTT MILLER - CONFIDENTIAL

**EXHIBIT 97**
**853**



12:08  1   approximately, of training and experience up to this

12:08  2   point had given you any indication that receiving the

12:08  3   accident scene photos in a manner that you did was

12:08  4   improper?

12:08  5        A.   I've never heard of it being improper.

104

SCOTT MILLER - CONFIDENTIAL

**BARKLEY**
*Court Reporters*

**EXHIBIT 97**
**854**

12:36   1   ██    ██

12:36   2        Q.   Do you currently have access to any text

12:36   3   messages from your personal cell phone that you

12:36   4   exchanged in January of 2020?

12:36   5        A.   No.

12:36   6        Q.   Why not?

12:36   7        A.   Because after I text somebody I'll delete it

12:36   8   because I don't want to take up a bunch of space on the

12:36   9   phone.

12:36   10        Q.   So your practice is to delay -- to delete text

12:36   11   message threads, like, individually, just like a lot of

12:36   12   people delete e-mails?

12:36   13        A.   Yes.

12:36   14        Q.   And -- and how long do you usually keep text

12:36   15   messages on your phone before you delete them?

12:37   16        A.   Depends if there's information that I might

12:37   17   need later, which that generally isn't the case.  So

12:37   18   I'll read it and then delete it.

12:37   19        Q.   So you delete text messages -- like, on most

12:37   20   days you delete text messages; is that right?

12:37   21        A.   Yes.

12:37   22   ██  ████████████████████████████████

██  ██  ████████████████████████████████

██  ██  ████████████████████████████████

██  ██  ████████████████████████████████

116

Case 2:20-cv-09582-JFW-E   Document 196-9   Filed 12/06/21   Page 33 of 40   Page ID
#:12938



12:37  1
12:38  12        Q.    Have you ever had an Instagram or a Twitter
12:38  13   account?
12:38  14        A.    I'm on Instagram.
12:38  15        Q.    How long have you been on Instagram?
12:38  16        A.    I don't know.   Maybe a couple of years.
12:38  17

                                    117

SCOTT MILLER - CONFIDENTIAL

**EXHIBIT 97**
**856**



12:43  1  ████████████████████████████████████

12:43  2      Q.  At any point after you heard that media

12:43  3  coverage for the first time, did you learn that Vanessa

12:43  4  Bryant had some sort of legal dispute with the sheriff's

12:44  5  department related to these photos?

12:44  6      A.  I don't know when it was, but I heard it on the

12:44  7  radio that she had filed a suit.

121

SCOTT MILLER - CONFIDENTIAL

**EXHIBIT 97**
**857**

Case 2:20-cv-09582-JFW-E   Document 196-9   Filed 12/06/21   Page 35 of 40   Page ID #:12940



12:45   1

12:45   11    Q.  Do you recall replacing or up -- upgrading a

12:46   12  cell phone device in February of 2021?

12:46   13    A.  I can't say for sure it was February 2021, but

12:46   14  I know that the county had upgraded our county cell

12:46   15  phones, and we were -- had them replaced.

12:46   16    Q.  Okay.  And is February 2021 a reasonable

12:46   17  approximation of when that happened, you know, maybe

12:46   18  give or take a month?

12:46   19    A.  I can't say for sure.

12:46   20    Q.  Do you have any reason to believe that

12:46   21  Mr. Tokoro's statement here that you replaced or

12:46   22  upgraded a device in February 2021 -- do you have any

12:47   23  reason to believe that that is false or inaccurate?

12:47   24    A.  No.

12:47   25

123

**EXHIBIT 97**
**858**

BARKLEY
Court Reporters



12:54 14    Q.  Have you ever received a written notice to

12:54 15  preserve documents and communications related to this

12:54 16  lawsuit?

12:54 17    A.  Not that I remember.

12:54 18    Q.  Have you ever been orally instructed or advised

12:55 19  to preserve documents and communications related to this

12:55 20  lawsuit?

12:55 21    A.  I don't remember.

128

SCOTT MILLER - CONFIDENTIAL

**EXHIBIT 97**
**859**



12:56   1

12:58   25

At any point prior to giving the phone on which

130

SCOTT MILLER - CONFIDENTIAL

**EXHIBIT 97**
**860**

| | | |
|---|---|---|
| 12:58 | 1 | you had received these accident scene photos to the |
| 12:58 | 2 | department, were you ever told to hold on to that phone |
| 12:58 | 3 | and not get rid of it? |
| 12:58 | 4 | A.  No. |
| 12:58 | 5 | Q.  Did it occur to you when you gave that cell |
| 12:58 | 6 | phone to the department and no longer had possession of |
| 12:58 | 7 | it, that that phone may contain material or information |
| 12:58 | 8 | that was relevant to this lawsuit? |
| 12:59 | 9 | A.  No.  The phones are wiped clean.  We wipe them |
| 12:59 | 10 | clean before we hand them in. |
| 12:59 | 11 | Q.  So before you handed in the phone to the |
| 12:59 | 12 | department in approximately February of 2021, you -- you |
| 12:59 | 13 | wiped the phone clean? |
| 12:59 | 14 | A.  Yes. |

131

SCOTT MILLER - CONFIDENTIAL

**BARKLEY**
*Court Reporters*

**EXHIBIT 97**
**861**

```
 1              DEPOSITION OFFICER'S CERTIFICATE

 2

 3   STATE OF CALIFORNIA    }
                            }   ss.
 4   COUNTY OF LOS ANGELES  }

 5

 6          I, THERESA JOANN PHILLIPS-BLACKWELL, hereby

 7   certify:

 8          I am a duly qualified Certified Shorthand

 9   Reporter in the State of California, holder of

10   Certificate Number CSR 12700 issued by the Court

11   Reporters Board of California and which is in full force

12   and effect.  (Fed. R Civ. P. 28(a)).

13          I am authorized to administer oaths or

14   affirmations pursuant to California Code of Civil

15   Procedure, Section 2093(b) and prior to being examined,

16   the witness was first duly sworn by me.  (Fed. R. Civ.

17   P. 28(a), 30(f)(1)).

18          I am not a relative or employee or attorney or

19   counsel of any of the parties, nor am I a relative or of

20   such attorney or counsel, nor am I financially

21   interested in this action.  (Fed. R. Civ. P. 28).

22          I am the deposition officer that

23   stenographically recorded the testimony in the foregoing

24   deposition and the foregoing transcript is a true record

25                           ///
```

142

SCOTT MILLER - CONFIDENTIAL

BARKLEY
Court Reporters

**EXHIBIT 97**
**862**

1  of the testimony given by the witness.  (Fed. R. Civ. P.

2  30(f)(1)).

3       Before Completion of the deposition, review of

4  the transcript { } was {xx} was not requested.  If

5  requested, any changes made by the deponent (and

6  provided to the reporter) during the period allowed, are

7  appended hereto.  (Fed. R. Civ. P. 30(e)).

8

9  Dated: November 9, 2021

10

11  _____

12

13

14

15

16

17

18

19

20

21

22

23

24

25

143

SCOTT MILLER - CONFIDENTIAL

BARKLEY
Court Reporters

**EXHIBIT 97**
**863**