LUIS LI (State Bar No. 156081)
Luis.Li@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
633 West Fifth Street, Suite 1550
Los Angeles, California 90071
Telephone:  (323) 210-2900
Facsimile:   (866) 974-7329

CRAIG JENNINGS LAVOIE (State Bar No. 293079)
Craig.Lavoie@mto.com
JENNIFER L. BRYANT (State Bar No. 293371)
Jennifer.Bryant@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:  (213) 683-9100
Facsimile:   (213) 687-3702

Attorneys for Plaintiff Vanessa Bryant

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| VANESSA BRYANT,<br><br>                    Plaintiff,<br><br>          vs.<br><br>COUNTY OF LOS ANGELES, et al.,<br><br>                    Defendants. | Case No. 2:20-cv-09582-JFW-E<br><br>**JOINT STATEMENT REGARDING PLAINTIFF'S MOTION *IN LIMINE* #2: TO EXCLUDE EXPERT TESTIMONY OF DR. COHEN**<br><br>Pretrial Conference:<br>          February 4, 2022<br><br>Hearing on Motions *in Limine*:<br>          February 11, 2022<br><br>Trial Date: February 22. 2022 |

1

## **TABLE OF CONTENTS**

2

3    I.     IDENTIFICATION OF THE MATTER IN DISPUTE ....................................... 1

4    II.    PLAINTIFF'S POSITION ........................................................................... 2

5          A.    Background .......................................................................................... 2

6          B.    Dr. Cohen Should Be Precluded from Testifying About Plaintiff's
7                Emotional Distress Because Defendants Failed to Timely Disclose Dr.
                 Cohen's Expert Report ........................................................................ 4

8          C.    Dr. Cohen's Testimony Should also Be Excluded Because It Is
9                Inadmissible Under *Daubert* and Fed. R. Evid. 702 ............................ 6

10   III.   DEFENDANTS' CONTENTIONS OF POINTS AND AUTHORITIES ...... 11

11         A.    The Court Should Not Exclude Dr. Cohen On Timeliness Grounds ......... 13

12               1.   Defendants' Timing Was Substantially Justified ................................ 14

13
14               2.   The Timing Was Harmless to Plaintiff, and Excluding Dr. Cohen
                      Would Be Extremely Harmful to Defendants ...................................... 16

15               3.   Plaintiff's Cases Are Inapposite ........................................................ 17

16               4.   If the Court Disagrees, It Should Consider a Lesser Sanction ............ 18

17         B.    Dr. Cohen's Testimony Is Admissible Under Rule 702 And *Daubert* ...... 18

18
19               1.   Dr. Cohen's Opinions Are Ethical ....................................................... 18

20               2.   Dr. Cohen's Opinions Are Reliable and Not Speculative ................... 20

21   IV.    DEFENDANTS' CONCLUSION ............................................................... 22

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**CASES**

4

*Bresler v. Wilmington Tr. Co.*,
    855 F.3d 178 (4th Cir. 2017) ................................................................. 15

5

6

*C.S. by Spataro v. Sch. Bd. of Seminole Cty., Fla.*,
    2009 WL 10706170 (M.D. Fla. May 15, 2009) ......................................... 20, 21

7

8

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993) ....................................................................... *passim*

9

10

*ElSayed Mukhtar v. Cal. State Univ., Hayward*,
    299 F.3d 1053 (9th Cir. 2002), *overruled on other grounds* ............................... 7

11

12

*Goodness Films, LLC v. TV One, LLC*,
    2014 WL 12780291 (C.D. Cal. May 19, 2014) ........................................... 7

13

14

*Granados v. Geo Group, Inc.*,
    2020 WL 6694346 (C.D. Cal. Oct. 15, 2020) ..................................... 3, 6, 17

15

16

*Hangarter v. Provident Life & Accident Ins. Co.*,
    373 F.3d 998 (9th Cir. 2004) ............................................................. 21

17

18

*Hoffman v. Constr. Protective Servs., Inc.*,
    541 F.3d 1175 (9th Cir. 2008) .......................................................... 4, 17

19

20

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999) ........................................................................ 7

21

22

*Merch. v. Corizon Health, Inc.*,
    993 F.3d 733 (9th Cir. 2021) ............................................................ 5, 18

23

24

*Munoz v. FCA US LLC*,
    495 F. Supp. 3d 1008 (D.N.M. 2020) ................................................. 19, 21

25

*Pierce v. CVS Pharmacy, Inc.*,
    2007 WL 2725228 (D. Ariz. Sept. 17, 2007) ............................................ 17

26

27

*Pineda v. City & County of San Francisco*,
    280 F.R.D. 517 (N.D. Cal. 2012) ........................................................ 18

28

*Semtech Corp. v. Royal Ins. Co. of Am.*,
   2005 WL 6192906 (C.D. Cal. Sept. 8, 2005)...............................................13, 17

*Simmons v. City of Chicago*,
   2018 U.S. Dist. LEXIS 26140 (N.D. Ill. Feb. 18, 2018)...............................9, 20

*Stilwell v. Smith & Nephew, Inc.*,
   482 F.3d 1187, 1191 (9th Cir. 2007) ....................................................................7

*Torres v. City of Los Angeles*,
   548 F.3d 1197 (9th Cir. 2008) ........................................................................5, 17

*United States v. Gamarra*,
   2018 WL 5257846 (D.D.C. Oct. 19, 2018), *aff'd*, 940 F.3d 107
   (D.C. Cir. 2019)...................................................................................................19

*Valdez-Castillo v. Busch Entm't Corp.*,
   2009 WL 10668210 (S.D. Fla. Jan. 8, 2009).......................................................16

*Walker v. Soo Line R.R. Co.*,
   208 F.3d 581 (7th Cir. 2000) ..............................................................................20

*Wendell v. GlaxoSmithKline LLC*,
   858 F.3d 1227 (9th Cir. 2017) ..............................................................................7

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
   259 F.3d 1101 (9th Cir. 2001) ........................................................................4, 17

**RULES**

Fed. R. Civ. P. 26............................................................................................*passim*

Fed. R. Civ. P. 35...............................................................................2, 3, 5, 15

Fed. R. Civ. P. 37............................................................................................*passim*

Fed. R. Evid. 702............................................................................................*passim*

Local Rule 5-4.3.4(a)(2)(i) ...................................................................................23

Local Rule 37-1 ....................................................................................................14

## I.    <u>IDENTIFICATION OF THE MATTER IN DISPUTE</u>

Plaintiff Vanessa Bryant brings this motion *in limine* to exclude the testimony of Defendants' proposed psychiatric expert, Dr. Marc Cohen.  In reports served well after the deadlines, Dr. Cohen purports to conduct a "forensic psychiatric evaluation" of Plaintiff Vanessa Bryant and concludes that she has suffered no mental or emotional harm from Defendants' conduct, despite having never examined or even met Plaintiff.  Declaration of Craig Jennings Lavoie ("Lavoie Decl.") Ex. A (Nov. 11, 2021 Cohen Report) at 3; Ex. B (Dec. 14, 2021 Supp. Cohen Report) at 6.

Plaintiffs move to preclude Dr. Cohen from testifying for two reasons:

***First***, Plaintiff seeks to exclude Dr. Cohen's testimony because Defendants failed timely to provide Dr. Cohen's expert report pursuant to Rule 26(a) and this Court's Scheduling and Case Management Order, and thus are precluded from using him at trial under the Court's order and Rule 37(c).  Defendants first disclosed a report for Dr. Cohen on November 12, 2021, about six weeks after the deadline. Defendants then disclosed a supplemental report with additional opinions on December 16, 2021, over ten weeks after the deadline for expert disclosures and two weeks after the discovery cutoff.  Defendants' untimeliness is the product of their own lack of diligence and has prejudiced Plaintiff's ability to rebut Dr. Cohen's expert testimony and prepare for trial.

***Second***, Dr. Cohen's opinions are unreliable, unhelpful to the jury, and inadmissible under the *Daubert* standard and Fed. R. Evid. 702.  Dr. Cohen's efforts to offer a psychiatric evaluation of a person he has never examined are prohibited as unethical by his profession, entirely speculative, and without any proper basis in fact or in the approved methods of his field.

Accordingly, Plaintiff respectfully requests that the Court exercise its gatekeeping authority and bar Dr. Cohen's testimony.

JOINT STATEMENT REGARDING PLAINTIFF'S MOTION *IN LIMINE* #2: TO EXCLUDE EXPERT
TESTIMONY OF DR. COHEN

1
## II.    PLAINTIFF'S POSITION

2
### A.    Background

3
Plaintiff commenced this action on September 17, 2020 seeking damages for

4
emotional distress.  In October 2020, the Court entered its Standing Order stating

5
that "[c]ounsel shall begin to actively conduct discovery" before the Rule 26

6
conference because "the Court will impose tight deadlines to complete discovery."

7
(ECF No. 18.)  Under the Court's Amended Scheduling and Case Management

8
Order, the deadline to serve affirmative expert reports was October 4, 2021, the

9
deadline for rebuttal reports was October 25, 2021, and the discovery cutoff was

10
November 29, 2021.  (ECF No. 86 at 6, 35.)

11
On September 14, 2021—three weeks before the deadline for expert reports

12
and almost a year after the lawsuit was filed—Defendants served a document

13
request for all records relating to mental health treatment received by Mrs. Bryant.

14
Plaintiff timely objected, citing psychotherapist-patient privilege.  Defendants

15
moved to compel Plaintiff's therapy records on November 5, 2021.  (ECF No. 147.)

16
Judge Eick granted the motion in part on November 15 and ordered the records to be

17
produced by the discovery cutoff:  November 29, 2021.  (ECF No. 157.)

18
On September 16, 2021—less than three weeks before the deadline for expert

19
reports—Defendants for the first time mentioned that they intended to pursue

20
independent medical examinations ("IMEs") of Plaintiffs under Rule 35.  (*See* ECF

21
No. 111-34 ¶ 9; 111-16 at Ex. O.)  On September 21, 2012—two weeks before the

22
expert deadline—Defendants first proposed psychiatrists to conduct the IMEs.  (See

23
ECF No. 111-34 ¶ 9; 111-16 at Ex. P.)  Plaintiff told Defendants that the request

24
was untimely, including because it would not be practical to complete the expert

25
reports, rebuttal reports, and depositions on the schedule set by the Court.

26
Defendants waited until October 15, 2021, *after* the deadline for expert reports had

27
passed and only a few weeks before the close of all discovery, to move to compel an

28
IME.  Judge Eick denied Defendants' motion because it was untimely unless and

1    until this Court modified its Amended Scheduling and Case Management Order.

2    (ECF No. 139.)  As Judge Eick recognized, that Order required *any* affirmative

3    expert reports, including those facilitated by Rule 35, to be provided by October 4,

4    2021.  *See, e.g., Granados v. Geo Group, Inc.*, 2020 WL 6694346, at *1-2 (C.D.

5    Cal. Oct. 15, 2020); (ECF No. 86 at 5.)

6          Plaintiff complied with the expert disclosure deadline by serving two expert

7    reports on October 4.  Instead of serving reports, Defendants disclosed only the

8    names of two experts—Dr. Marc Cohen and Dr. Christopher R. Thompson.

9    Defendants' disclosure stated that these two experts would provide an opinion based

10   on IMEs of the Plaintiff per Rule 35.  No report came until almost six weeks later,

11   when Defendants served Dr. Cohen's report on November 12, 2021—almost three

12   weeks after the deadline for *rebuttal* reports.  Despite never meeting or speaking to

13   Mrs. Bryant, the first sentence of Dr. Cohen's report states:  "I conducted a forensic

14   psychiatric evaluation of Vanessa Bryant in order to determine whether she suffered

15   any mental damage or emotional harm as a result of the unauthorized taking or

16   sharing of crash-scene photographs of her late husband and daughter."  Lavoie

17   Decl., Ex. A at 1.  Dr. Cohen opines that he "found no evidence that Vanessa Bryant

18   has been mentally harmed or emotionally damaged" and that the source of Mrs.

19   Bryant's distress is her imagination about what the photos depict and the fear she

20   has about the images being publicly leaked.  *Id.* at 3.

21         Defendants served Dr. Cohen's supplemental report on December 16, 2021,

22   more than two weeks after the close of all discovery.  In his supplemental report, Dr.

23   Cohen addressed the therapy records Plaintiff produced in response to Judge Eick's

24   ruling and a declaration that Plaintiff submitted in opposition to Defendants' motion

25   for summary judgment.  Dr. Cohen's opinion remains unchanged that Plaintiff has

26   suffered no mental or emotional harm as a result of Defendants' unauthorized taking

27   and sharing of photographs of her loved ones' remains.  *Id.* at 6.

28

**B.** <u>**Dr. Cohen Should Be Precluded from Testifying About Plaintiff's Emotional Distress Because Defendants Failed to Timely Disclose Dr. Cohen's Expert Report.**</u>

The Court should exclude Dr. Cohen's testimony from trial because it was untimely.  The Court's Amended Scheduling and Case Management Order provides:

> If expert witnesses are to be called at trial, the parties shall designate affirmative experts to be called at trial <u>and shall provide reports</u> required by Fed. R. Civ. P. 26(a)(2)(B) not later than <u>eight weeks prior to the discovery cutoff date</u>. … <u>Failure to timely comply with this deadline will result in the expert being excluded at trial as a witness</u>.

(ECF No. 86 at 6 (emphasis added)).  Defendants failed to provide any report for Dr. Cohen until almost six weeks after the deadline, and then purported to provide a supplemental report for Dr. Cohen more than ten weeks after the deadline and two weeks after the discovery cutoff.

Rule 37(c) provides that a party who fails to provide information required by Rule 26(a)—including the expert reports required by Rule 26(a)(2)(B)—"is not allowed to use that information … to supply evidence … at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008).  This is "a 'self-executing,' 'automatic' sanction to 'provide[] a strong inducement for disclosure of material.'" *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (citation omitted).  This Court's Scheduling and Case Management Order is even stricter, stating that failure to comply with deadlines "will" result in exclusion of the expert witness at trial.  (ECF No. 86 at 6.) Defendants cannot meet their burden to show that the late reports were substantially justified or harmless under Rule 37(c).  *See Yeti by Molly*, 259 F.3d at 1106 (burden

on party facing exclusion to show justification or harmlessness); *Torres v. City of Los Angeles*, 548 F.3d 1197, 1213 (9th Cir. 2008).[1]

Defendants claim that, because they did not timely seek an IME under Rule 35, Dr. Cohen lacked sufficient information to form his complete opinion in time for the October 4 deadline. But that is Defendants' own fault. Defendants had other options from the outset. They could have timely requested and moved to compel an IME to avoid the foreseeable crunch in the months before trial and to ensure that any IME had been conducted before the expert disclosure deadline. Or recognizing the risk that they may not get an IME at all or in time, Defendants could have engaged Dr. Cohen at any time to try to prepare an opinion without conducting an IME, as they ultimately did. To the extent Dr. Cohen needed to review the deposition of Plaintiff for his report, Defendants could have taken that deposition before the October 4 deadline for expert reports. There is no reason that Dr. Cohen could not have prepared by October 4 the same report that Defendants now seek to use had Defendants planned ahead for the deadlines. Alternatively, once it became clear to Defendants that they would have difficulty complying with the Court's discovery schedule, they could and should have sought relief from the Court.

Instead of seeking permission, Defendants banked on forgiveness. They chose to let the deadline pass and then serve a report six weeks late on the hope that the Court would not enforce its deadlines. By then, Plaintiff's deadline to identify a rebuttal expert and serve a rebuttal report had already passed, and the close of all discovery was only about two weeks away. Defendants did not leave Plaintiff with a reasonable amount of time to analyze the report, retain a rebuttal expert if

---

[1] Rule 37(c)(1) allows the Court to impose additional or different sanctions, but only on a motion brought by the party facing exclusion, who bears the burden to show that a lesser sanction is better suited. *See Merch. v. Corizon Health, Inc.*, 993 F.3d 733, 741 (9th Cir. 2021). Because Defendants failed to move for a lesser sanction, they are not entitled to one and exclusion is the only remedy on the table. *See id.*

necessary, and depose Dr. Cohen within the discovery period. *See, e.g., Granados*, 2020 WL 6694346, at *2 ("The Federal Rules and the Court's Scheduling Order are designed to prevent a last-minute scramble of the type that would be necessary under these circumstances.").

Defendants' purported supplemental disclosure for Dr. Cohen on December 16 is even more problematic. By then, all discovery had closed. This Court's Amended Scheduling and Case Management Order makes clear that the November 29 discovery cutoff was "THE DATE BY WHICH ALL DISCOVERY, INCLUDING EXPERT DISCOVERY, SHALL BE COMPLETED," and that the "Court does not enforce side agreements to conduct discovery beyond the discovery cut-off date." (ECF No. 86 at 5.) Still Defendants sought no relief from the Court. Accordingly, although Defendants offered to make Dr. Cohen available for deposition after the cutoff, Plaintiffs did not have a meaningful opportunity to depose Dr. Cohen or rebut the supplemental report—and certainly not in accordance with the Court's order. The supplemental report purports to address material not available to Dr. Cohen on November 12: a declaration from Plaintiff and text messages between Plaintiff and her therapist. But Defendants had the opportunity to depose Plaintiff before the deadline and could have elicited whatever information they wanted Dr. Cohen to rely on. And they likewise could have sought the therapist texts in discovery before the deadline instead of waiting to the last minute.

Defendants' untimely disclosure is unjustified and prejudicial. It was the product of Defendants' own failure to plan ahead for the Court's deadlines. And it has prevented Plaintiff from taking discovery to contest Dr. Cohen's testimony. Accordingly, Dr. Cohen should be excluded as an expert witness.

**C.** **Dr. Cohen's Testimony Should also Be Excluded Because It Is Inadmissible Under *Daubert* and Fed. R. Evid. 702.**

Dr. Cohen's testimony is also inadmissible under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) and Fed. R. Evid. 702. Under Rule 702 an

-6-

expert witness may testify in the form of an opinion if:  (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. As the Supreme Court explained in *Daubert*, a district court's gatekeeping role is two-fold:  "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. 579, 592-93, 597; *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1232 (9th Cir. 2017).  This role is especially important "considering the aura of authority experts often exude, which can lead juries to give more weight to their testimony." *ElSayed Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1063-64 (9th Cir. 2002), *overruled on other grounds*.

   "In assessing reliability, courts must consider whether, in reaching conclusions, the expert used sufficient facts and data and applied reliable principles and methods to the facts of the case." *Goodness Films, LLC v. TV One, LLC*, 2014 WL 12780291, at *1 (C.D. Cal. May 19, 2014) (citing *Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1191 (9th Cir. 2007)); *see also* Fed. R. Evid. 702(b), (c). Expert testimony is inadmissible if it is unreliable or speculative.  *See, e.g., Daubert*, 509 U.S. at 590 (testimony must rest on "good grounds" not "subjective belief or unsupported speculation" (citation omitted)).  Dr. Cohen's purported forensic psychiatric evaluation of a person he has never met is both unreliable and speculative.

   One of the factors that the Supreme Court has identified in assessing the reliability of expert testimony is "whether [it has been] generally accepted in the relevant scientific community." *ElSayed Mukhtar*, 299 F.3d at 1064 (summarizing *Daubert*); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147, 151-52 (1999).  Dr. Cohen easily flunks this factor.  Dr. Cohen asserts that he "conducted a forensic psychiatric evaluation of Vanessa Bryant" without ever having met her.

Lavoie Decl., Ex. A at 1.  But his medical profession expressly *prohibits as unethical* the practice he has engaged in:  offering professional opinions about public figures without personally examining them.  Rule 7.3 of American Psychiatric Association's ("APA") Principles of Medical Ethics, also known as the "Goldwater Rule," states:  "[I]t is unethical for a psychiatrist to offer a professional opinion unless he or she has conducted an examination and has been granted proper authorization for such a statement."  APA, The Principles of Medical Ethics § 7.3.

Dr. Cohen purports to sidestep this ethical problem by labeling his professional opinions "preliminary diagnostic impressions" that he would intend to supplement after a face-to-face psychiatric examination.  Lavoie Decl., Ex. A at 1.  This is no help to Defendants for two reasons.  First, if even Dr. Cohen cannot bring himself to say that he is rendering a professional "opinion" based on "sufficient facts or data," he has no business offering expert testimony under Rule 702.  Fed. R. Evid. 702 (expert may testify in form of "opinion" if, *inter alia*, "the testimony is based on sufficient facts or data").  Second, the APA has rejected this dodge.  In 2017, the APA Ethics Committee clarified that rendering a formal diagnosis is not required for an opinion to be professional.  "Instead, when a psychiatrist renders an opinion about the affect, behavior, speech, or other presentation of an individual that draws on the skills, training, expertise, and/or knowledge inherent in the practice of psychiatry, the opinion is a professional one."[2]  Dr. Cohen offers just such opinions:  "I found no evidence that Vanessa Bryant has been mentally harmed or emotionally damaged from crash-scene photographs of her late husband and daughter being shared. … [T]he source of Vanessa Bryant's distress lies in what she imagines the photographs depict and the fear she has about such images being publicly

---

[2] https://www.psychiatry.org/File%20Library/Psychiatrists/Practice/Ethics/APA-Ethics-Committee-Goldwater-Opinion.pdf.  For example, "saying that a person does not have an illness is also a professional opinion."  *Id.*

1  disclosed ….″  Lavoie Decl., Ex. A at 3.  Even couched as "preliminary diagnostic

2  impressions," Dr. Cohen's opinions are flatly prohibited as unethical by the main

3  professional organization for psychiatrists in the United States.

4  　　　In a similar situation, a district court barred a psychiatrist from offering a

5  diagnosis of a plaintiff that he did not personally examine because his opinion was

6  based on speculation and inappropriate credibility determinations about the plaintiff.

7  *Simmons v. City of Chicago*, 2018 U.S. Dist. LEXIS 26140, at *5-7 (N.D. Ill. Feb.

8  18, 2018).  The court held that the psychiatrist's diagnosis was inadmissible because

9  it was primarily based on whether he believed the plaintiff's deposition testimony

10  and other speculation about her medical history.  *Id.*

11  　　　Because Dr. Cohen likewise did not examine the Plaintiff here, his purported

12  analysis is—of necessity—similarly speculative.  He provides no reliable bases to

13  support his conclusion that Plaintiff has suffered no emotional harm or distress as a

14  result of Defendants' actions, basing his opinions on nothing more than Plaintiff's

15  public statements and conjecture about Plaintiff, amplified by the publicity

16  surrounding her late husband.  For example, Dr. Cohen stated that "[w]hile little is

17  known about her life history, she certainly had some life experiences that could

18  understandably affect her trust in others."  Lavoie Decl., Ex. B at 5-6.  Although he

19  has reviewed no treatment records for Mrs. Bryant, based on the fact that Mrs.

20  Bryant mentioned "participat[ing] in therapy sessions at various points in her life,"

21  Dr. Cohen freely speculates that "she may have pre-existing mental health-related

22  problems."  Lavoie Decl., Ex. A at 8.  Without having spoken to Ms. Bryant, Dr.

23  Cohen confidently declares that she "was exposed to several situational factors …

24  which have undoubtedly affected how she has adapted to the loss of her husband

25  and daughter" and that Mrs. Bryant "appears to fit [the] response pattern" of adults

26  who lose a loved one to sudden violent death and "display a need for control in an

27  effort to restore predictability to their life and offset feeling profoundly vulnerable."

28

-9-  Case No. 2:20-cv-09582-JFW-E

1  Lavoie Decl., Ex. A at 8, 10.  This type of unsupported speculation about Plaintiff

2  and her life is of no legitimate help to any juror.

3       Dr. Cohen purports to apply the Diagnostic and Statistical Manual of Mental

4  Disorders (DSM-5) to Plaintiff, and to assess whether she has experienced "grief

5  reactions" or "persistent complex bereavement disorder," and what caused it.  *Id.* at

6  4-10.  But the only material pertaining to Mrs. Bryant that Dr. Cohen reviewed in

7  preparing his reports were Plaintiff's deposition transcript and video, Ms. Bryant's

8  publicly-filed declaration in opposition to summary judgment, and text messages

9  between Plaintiff and her therapist.  When stripped of psychiatric jargon and

10 background material, Dr. Cohen's opinion that Plaintiff has not been harmed by

11 Defendants' conduct primarily boils down to three things:  Mrs. Bryant has

12 supposedly never seen any authentic photographs of the remains of her husband and

13 daughter, there is supposedly no reliable evidence that these photographs still exist,

14 and Mrs. Bryant's text messages with her therapist do not expressly discuss the

15 photographs.  Defendants' lawyers are free to try arguing all of this to the jury from

16 the evidence, but it is hardly the subject of psychiatric analysis upon which Dr.

17 Cohen can bring his specialized knowledge and training to bear.

18      Dr. Cohen's report itself—in multiple instances—acknowledges the

19 insufficient bases for his opinions.  For example:

20    • As mentioned above, Dr. Cohen labels his opinions "preliminary diagnostic
         impressions" that he "inten[ds]" to supplement with "details from my face-to-
21       face psychiatric evaluation of Vanessa Bryant and/or my review of any
         available medical records"—material he never received.  Lavoie Decl., Ex. A
22       at 1.
23
24    • Dr. Cohen admits that Plaintiff's deposition testimony "sheds little light on
         whether she is experiencing a complicated grief reaction."  *Id.* at 7.
25
26    • Dr. Cohen concedes that it "remains unknown to what extent, if any, Vanessa
         Bryant's pre-existing mental health problems have affected her response to
27       the sudden violent death of her husband and daughter."  Lavoie Decl., Ex. B
         at 3.
28

- While conclusively opining that Plaintiff has suffered no emotional distress because of what Defendants did with images of her loved ones' remains, Dr. Cohen acknowledges that he is "unaware of any medical or scientific literature addressing the impact of viewing unwanted graphic photographs of deceased family members on the internet." *Id*. at 4.

- Dr. Cohen complains that the text messages he relied on were redacted and (in his view) incomplete, and opines that this "ensure[s] an unreliable evaluation, incomplete data, and a higher risk of both the evaluator and any fact finder relying on these data drawing incorrect conclusions." *Id*. at 2 n.2.

Dr. Cohen essentially admits he does not have all of the facts in front of him and that his report may not rest on a reliable foundation. That is more than clear from reading it. His testimony is speculative, conclusory, and will only serve to bias the jury. Accordingly, the Court should exercise its authority to exclude it.

## III.

## DEFENDANTS' CONTENTIONS OF POINTS AND AUTHORITIES

Plaintiff plans to ask the jury to award her tens of millions of dollars in damages based entirely on emotional distress. She intends to support her claimed damages with her own testimony and that of a few celebrity friends—not with any professional opinion based on experience or qualifications to diagnose or treat mental injuries. Plaintiff contends that her one-sided damages presentation is all that the trier of fact should hear; and that Dr. Cohen, a Board-certified psychiatrist with top-notch credentials, will be unhelpful to the jury. This does not make any sense and would deny Defendants critical evidence for their defense at trial.

Defendants have been diligent in conducting discovery while defending this case with sensitivity to Plaintiff. They did not engage in scorched-earth tactics and, every step of the way, have avoided causing Plaintiff harm beyond what she already suffered. Defendants hoped to resolve this case at mediation and have, in fact, reached settlements in two companion cases. Out of respect for Plaintiff and the mediation process, they stood down while settlement talks were ongoing. When it

became clear that Plaintiff had no genuine desire to settle, they proceeded with discovery about her emotional distress, including an IME.

To recover damages for emotional distress (and especially the magnitude Plaintiff is seeking), there must be proof of real, discernible injuries caused by the defendant.  Plaintiffs usually prove this with a diagnosis from a doctor or therapist.  Otherwise, it is difficult for the jury to assess emotional injuries, let alone quantify them.  Here, the jury's job is particularly difficult, as Plaintiff is suffering severe, ongoing distress from the loss of her husband and daughter—a loss far worse than the harm alleged in this case.  (Tokoro Decl. Ex. G [Bryant Tr.] at 48:1-7 ["Q: Is it fair to say that this loss of your husband and daughter is by far and away by many magnitudes the worst thing that's ever happened to you in your life?  A: Yes."].)

To help the jury untangle Plaintiff's distress caused by the loss of her loved ones from the distress she claims is a result of photos taken by the County, Defendants plan to offer their psychiatric expert, Dr. Cohen.

Dr. Cohen planned to conduct an IME of Plaintiff, as is typical in emotional distress cases, but she refused.  She obstructed and delayed to get past the Court's expert discovery deadline.  Accordingly, Dr. Cohen evaluated her distress based on other sources.  He reviewed Plaintiff's videotaped deposition testimony, her sworn statements submitted to this Court, and real-time communications with her therapist, among thousands of pages of other evidence.

Based on his review and clinical experience, including with patients who have experienced violent deaths of their loved ones, Dr. Cohen opined that Plaintiff's harm does not stem from any crash scene photos.  Rather, her harm lies in what she imagines the photos depict (she has never seen them); her fear that, one day, they may be publicly disseminated (they haven't been); and the malicious intent she assigns to the County.  These opinions are critical to the County's defense at trial.

1    Plaintiff has obstructed every attempt by Defendants to explore her claimed

2    damages in discovery.  Now, she seeks to exclude Dr. Cohen's testimony on two

3    grounds, neither of which has merit:

4        ***First***, Plaintiff argues that Dr. Cohen should be precluded from testifying

5    under Rule 37(c)(1) because his reports were produced a few weeks after the

6    October 4 deadline for Rule 26 expert reports.  This sanction is not warranted here.

7    The timing of Dr. Cohen's disclosures was substantially justified and harmless

8    under the criteria in Rule 37(c)(1).  Defendants were diligent in disclosing his

9    opinions, despite the many roadblocks thrown by Plaintiff; and Plaintiff has not

10   been prejudiced.  If Dr. Cohen is excluded, it is Defendants who will be

11   significantly prejudiced.

12       ***Second***, after refusing to submit to an IME, Plaintiff now argues that any

13   opinion about her emotional distress is inadmissible without an IME.  This is self-

14   serving and should not work.  Dr. Cohen's opinions are properly based on the

15   evidence, the facts and his expertise.  There is no requirement that a psychiatric

16   expert conducts a face-to-face examination to form a reliable opinion.  This is a

17   topic for cross-examination, not a motion *in limine*.

18   **A.    The Court Should Not Exclude Dr. Cohen On Timeliness Grounds**

19       Rule 37(c)(1) gives courts discretion to exclude late-disclosed expert reports.

20   However, there are two statutory exceptions: if the party's failure to disclose the

21   required information is: (1) substantially justified, *or* (2) harmless.  Fed. R. Civ. P.

22   37(c)(1); *Semtech Corp. v. Royal Ins. Co. of Am.*, 2005 WL 6192906, at *2 (C.D.

23   Cal. Sept. 8, 2005).  Both exceptions apply here.

24       Dr. Cohen's reports were disclosed after the October 4 deadline because of

25   Plaintiff's obstruction and intransigence.  Plaintiff objected and refused to cooperate

26   with discovery that was entirely appropriate—an IME and production of her therapy

27   records.  Magistrate Eick agreed that her therapy records were "plainly relevant."

28

[Dkt. 157 at 4.]  Moreover, after producing Dr. Cohen's reports, Defendants offered up Dr. Cohen for deposition multiple times, but Plaintiff refused.

## 1.   Defendants' Timing Was Substantially Justified

On June 1, 2021, the parties in this case and the three companion cases went to mediation with the Hon. Louis Meisinger (Ret.).  Although not successful, Judge Meisinger kept trying, and settlement discussions continued.  Defendants, hoping to settle and because of the tragic losses and heavy emotions involved, did not push for depositions or IMEs at that time.  Defendants were ultimately successful in settling with two of the families.  Thereafter, they promptly sought IMEs of the non-settling plaintiffs, including Plaintiff; and they proceeded with Dr. Cohen.  Defendants should not be penalized and prejudiced as a result.  This is why there is a "substantial justification" exception in Rule 37(c).

Plaintiff stalled and evaded Defendants' repeated requests for an IME.  [See Dkt. 111-1 at ¶¶ 16-20 & Exs. O-R.]  Despite putting her mental condition front and center, Plaintiff refused to submit to an IME, forcing Defendants to file a motion to compel this plainly relevant discovery.[3]

Plaintiff then argued that Defendants' motion was untimely.  Defendants had researched the timeliness issue and relied on established law permitting IMEs after the Rule 26 deadline.  [See Dkt. 132 at 3:3-4:19.]  There is no rule that an IME must

---

[3] Plaintiff's contention that Defendants "waited until October 15, 2021" to move to compel is inaccurate.  (See supra at 3:26-28.)  Defendants initiated the Local Rule 37-1 meet-and-confer immediately.  [See Dkt. 111-1 Ex. R.]  The parties met and conferred as soon as Plaintiff's counsel was available—on October 1.  Five days later, Defendants sent their motion to compel, which was then filed with the Court on October 15.  [Dkt. No. 111.]  Defendants have not "waited" for anything except Plaintiff's compliance with her discovery obligations.

Case No. 2:20-cv-09582-JFW-E

JOINT STATEMENT REGARDING PLAINTIFF'S MOTION IN LIMINE #2: TO EXCLUDE EXPERT TESTIMONY OF DR. COHEN

be conducted before Rule 26 expert reports are due. Nonetheless, Magistrate Eick disagreed on the timing issue and denied the motion. [Dkt. 139.[4]]

Ten days later (still weeks before the close of discovery), Defendants served Dr. Cohen's initial report, wherein he provided opinions based on the available evidence, including Plaintiff's deposition. (Lavoie Decl. Ex. A.) Dr. Cohen was not sprung on Plaintiff as a surprise. Defendants had disclosed Dr. Cohen on October 4, provided his credentials and explained that his report would follow Plaintiff's IME. (Tokoro Decl. ¶ 2 & Ex. A.) Defendants sent his report as early as possible.

Plaintiff's efforts to obstruct discovery went beyond refusing an IME. She refused to say if she was receiving treatment for her distress. [Dkt. 111-1 ¶ 20.] She also refused to identify her therapist in interrogatory responses. [*See* Dkt. 132-1 Ex. CC.] She did not reveal his name (let alone, his existence) until her October 4 deposition, which was difficult to schedule due to Plaintiff's unavailability. Plaintiff also refused to produce her therapy records based on meritless objections [*see id.* Ex. DD], forcing Defendants to file another motion. Granting the motion, Magistrate Eick agreed the records were "plainly relevant" to her emotional injuries and ordered them produced by November 29. [Dkt. No. 157 at 4-5.]

Two weeks later, after reviewing Plaintiff's newly produced therapy records and Plaintiff's December 6 declaration in opposition to the County's summary judgment motion, Dr. Cohen supplemented his report. (Lavoie Decl. Ex. B.)

The reason Dr. Cohen's reports were produced after the October 4 deadline is because Plaintiff stalled and resisted her discovery obligations. Defendants' disclosure of Dr. Cohen's reports was substantially justified. The Court should deny Plaintiff's request to exclude his testimony. *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 193-94 (4th Cir. 2017) (affirming district court ruling that belated disclosure of

---

[4] Magistrate Eick's Order did *not* say that all reports, including those under Rule 35, must be provided by the Rule 26 expert report deadline. (*See supra* at 4:2-4.)

-15-

expert's testimony and related exhibit regarding damages was substantially justified); *Valdez-Castillo v. Busch Entm't Corp.*, 2009 WL 10668210, at *2 (S.D. Fla. Jan. 8, 2009) (allowing plaintiff to use expert at trial where delay in disclosing expert witness and report was substantially justified).

### 2.    The Timing Was Harmless to Plaintiff, and Excluding Dr. Cohen Would Be Extremely Harmful to Defendants

The timing of Dr. Cohen's expert reports was also harmless to Plaintiff.  She tries to paint a picture that she was blindsided by Dr. Cohen's opinions and that Defendants prevented her from taking discovery to contest his testimony.  Not true.

On October 4, Defendants disclosed Dr. Cohen as their retained expert.  By that point, the parties had been engaged in IME discussions for weeks.  Plaintiff knew that Dr. Cohen planned to examine Plaintiff, evaluate the evidence in this case, and opine on the nature, extent and sources of Plaintiff's emotional distress.

On November 12, Defendants produced Dr. Cohen's report and told Plaintiff that "[h]e is ready and available for deposition."  (Tokoro Decl. ¶ 3.)  They reiterated this multiple times.  (*Id*. ¶¶ 4-5.)  They also told Plaintiff she could provide a rebuttal report after the cutoff.  (*Id*. ¶¶ 4-5 & Ex. B)  Plaintiff chose not to take Dr. Cohen's deposition or designate a rebuttal expert.  In fact, she has not taken any steps to mitigate the purported harm from Defendants' disclosure of Dr. Cohen's reports.

Moreover, there is still a month before trial.  Plaintiff has more than ample time to depose Dr. Cohen and prepare for his cross-examination.  Defendants are, of course, willing to make him available for deposition on short notice.[5]

---

[5] The Court's Amended Case Management and Scheduling Order does *not* prohibit parties from agreeing to conduct discovery beyond the cutoff, as Plaintiff contends. (*See supra* at 7:10-11.)  The order simply says the Court will not enforce those agreements.  Nothing prohibits the parties from cooperating with each other.

Defendants would be greatly prejudiced by the exclusion of Dr. Cohen. Without him, the jury will hear only a one-sided presentation of Plaintiff's alleged injuries.  His expertise is critical to the jury's understanding of Plaintiff's harm.

Because Plaintiff has not been harmed, the Court should deny her motion. *Semtech Corp.*, 2005 WL 6192906, at *3 (denying motion to bar plaintiff's expert report under Rule 37(c)(1) a month before trial, which was "ample time" to cure any potential harm by allowing defendant to depose the expert and rebut report (citation omitted)); *Pierce v. CVS Pharmacy, Inc.*, 2007 WL 2725228, at *4 (D. Ariz. Sept. 17, 2007) (denying motion to strike plaintiff's expert based on deficient expert report where plaintiff made attempts to cure deficiencies, the deficiencies could be cured, defendant did not show any prejudice, and plaintiff would be greatly prejudiced).

### 3.      Plaintiff's Cases Are Inapposite

Plaintiff does not cite a single case excluding an expert under Rule 37 because a report was disclosed a few weeks after the deadline.  Her cases involve opinions that were either never disclosed at all, or were disclosed years late.  *See Torres v. City of Los Angeles*, 548 F.3d 1197, 1213-14 (9th Cir. 2008) (district court abused discretion in denying motion to exclude expert where expert never provided a report); *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1177-80 (9th Cir. 2008) (in class action, excluding evidence of individualized damages where plaintiffs failed to disclose them *at any point* before trial); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1105-07 (9th Cir. 2001) (excluding defendant's damages expert where defendant provided report two years after close of discovery).  That is not the case.[6]

---

[6] Plaintiff's reliance on *Granados v. GEO Group, Inc.*, 2020 WL 6694346, at *1-2 (C.D. Cal. Oct. 15, 2020), is misplaced.  There, the court was dealing with a motion to compel an IME; it did not exclude an expert from testifying at trial.

### 4.      If the Court Disagrees, It Should Consider a Lesser Sanction

If the Court finds that neither of the Rule 37(c)(1) exceptions applies, then it should consider a lesser sanction than the exclusion of Dr. Cohen.  A lesser sanction (such as payment of reasonable expenses) is better suited here, where the late disclosure was not due to Defendants' lack of diligence and where Plaintiff has not been prejudiced.  *See, e.g., Pineda v. City & County of San Francisco*, 280 F.R.D. 517, 523-24 (N.D. Cal. 2012).  The parties will have an opportunity to be heard on this request, per Rule 37(c)(1), at the February 11, 2022 hearing on this motion.[7]

### B.      <u>Dr. Cohen's Testimony Is Admissible Under Rule 702 And *Daubert*</u>

Plaintiff does not dispute Dr. Cohen's qualifications or the relevance of his opinions.  Instead, Plaintiff argues that Dr. Cohen's opinions are unreliable and inherently speculative because he never met her face-to-face.  This, she contends, is "prohibit[ed] as unethical" in the psychiatric profession and renders his opinions inadmissible under Rule 702 and *Daubert*.  (*See supra* Section II.C.)  Not true.

### 1.      Dr. Cohen's Opinions Are Ethical

To support her accusation that Dr. Cohen's approach is "unethical," Plaintiff relies on Rule 7.3 of APA Principles of Medical Ethics, also known as the Goldwater Rule.  The rule, which stems from a controversy that emerged during the 1964 presidential election, cautions against psychiatrists making diagnoses of public figures (like presidential candidates) based on public information without conducting an examination.  Plaintiff's reliance on this rule is misplaced.

Plaintiff quotes only the end of the rule.  Here is the complete text:

> On occasion psychiatrists are asked for an opinion about an individual
> who is in the light of public attention or who has disclosed information

---

[7] The *Merchant* case, cited by Plaintiff, is readily distinguishable.  *Merchant v. Corizon Health, Inc.*, 993 F.3d 733, 740, 742 (9th Cir. 2021) (excluding experts where plaintiff made repeated, flagrant violations of Rule 26—disclosing experts 134 days after the deadline, failing to specify the witnesses' anticipated testimony in his disclosures, and failing to provide an expert report).

about himself/herself through public media.  In such circumstances, a psychiatrist may share with the public his or her expertise about psychiatric issues in general.  However, it is unethical for a psychiatrist to offer a professional opinion unless he or she has conducted an examination and has been granted proper authorization for such a statement.  (Cohen Decl. ¶¶ 6-7.)

Plaintiff is misstating the Goldwater Rule in arguing that a forensic psychiatrist cannot offer an opinion in a lawsuit without examining someone face-to-face.  That is not the rule.  Indeed, in response to the question of whether it was ethical for a psychiatrist to testify "based . . . on medical records" where he or she "did not examine the defendant," the APA Ethics Committee responded "yes." (Cohen Decl. ¶ 8.)  The Committee explained that "[i]t is common for forensic experts to offer opinions" based on review of records and without an in-person examination and the rule was designed instead "to protect public figures from psychiatric speculation that harms the reputation of the profession of psychiatry and of the unsuspecting public figure."  (*Id.*)  Plaintiff is not an "unsuspecting public figure"; she is the plaintiff in a lawsuit claiming severe emotional distress.

The APA Ethics Committee and the American Academy of Psychiatry and the Law (which oversees the practice of forensic psychiatry) have reaffirmed this view multiple times.  (Cohen Decl. ¶¶ 9-10.)  It is entirely ethical for a forensic psychiatrist to rely upon other sources of information when he or she is unable to perform a face-to-face examination.  (*Id.* ¶¶ 10-11.)

Moreover, the APA's ethical rules do not govern admissibility.  Plaintiff does not cite a single case excluding an expert on this ground, and Defendants are aware of none.  Indeed, courts consistently reject similar attempts to misuse the Goldwater Rule.  *See, e.g.*, *Munoz v. FCA US LLC*, 495 F. Supp. 3d 1008, 1012-13 (D.N.M. 2020) (denying motion to exclude expert and holding that whether expert complied with Goldwater Rule did not affect reliability under Rule 702); *United States v. Gamarra*, 2018 WL 5257846, at *10 (D.D.C. Oct. 19, 2018) (psychiatric expert's

opinion without in-person examination did not violate ethical standards), *aff'd*, 940 F.3d 107 (D.C. Cir. 2019); *C.S. by Spataro v. Sch. Bd. of Seminole Cty., Fla.*, 2009 WL 10706170, at *7 (M.D. Fla. May 15, 2009) (expert opinion admissible and reliable without in-person examination where expert examined relevant records).[8]

*Simmons v. City of Chicago*, the only case cited by Plaintiff, does not help her argument.  There, the court held that the Goldwater Rule does *not* bar a forensic expert from offering an opinion without personally examining someone.  (Request for Judicial Notice ("RJN") Ex. C at 2 ["Neither the law nor, it appears, norms established in the practice of psychiatry preclude [defendants' psychiatric expert] from diagnosing [the plaintiff] without examining her."].)[9]

### 2.    Dr. Cohen's Opinions Are Reliable and Not Speculative

Although Plaintiff refused to submit to an IME, that did not compromise Dr. Cohen's ability to reach his conclusions.  (Cohen Decl. ¶ 16.)  If Plaintiff believes his opinions are inadequate because he did not meet her, she can cross-examine him. The absence of an in-person examination goes to weight, not admissibility.  *Walker v. Soo Line R.R. Co.*, 208 F.3d 581, 591 (7th Cir. 2000) (expert testimony that employee was injured when struck by lightning was admissible even though he did not personally examine employee); RJN Ex. C [*Simmons v. City of Chicago*] at 2 (absence of an in-person examination "would affect the weight to be given to [the

---

[8]  Dr. Cohen has never been prevented from testifying as an expert on psychiatric matters in criminal or civil cases, both in state and federal court, even where he has been unable to perform a face-to-face examination, like here.  (Cohen Decl. ¶ 12.)

[9]  The court in *Simmons* held that the defendants' expert's opinion that the plaintiff does not suffer from PTSD was inadmissible for other reasons: (1) it was based on his determination that plaintiff's statements about the underlying traumatic event were untrue—an improper credibility determination; and (2) it was based on speculation about other potentially traumatizing events in plaintiff's life, where there was no evidence to support those propositions.  This is not a "similar situation," as Plaintiff contends, or anything close to it.  (*See supra* at 10:4.)

-20-

1  expert's] testimony"); *Munoz*, 495 F. Supp. 3d at 1012-13 (same); *C.S. by Spataro*,

2  2009 WL 10706170, at *7 (same).  Plaintiff could also submit to an IME.

3       Dr. Cohen's opinions are also not based on "unsupported speculation," as

4  Plaintiff contends.  He reviewed over 8,000 pages of material and watched hours of

5  videotaped testimony.  (Cohen Decl. ¶¶ 13-14).  This includes depositions of

6  Plaintiff and several friends who testified about her emotional distress; Plaintiff's

7  sworn statements submitted to this Court; and her real-time text messages with her

8  treating therapist.  (*Id.*)  Dr. Cohen also relied on more than 20 scientific articles and

9  books.  (*Id.*)  This is the kind of evidence on which forensic psychiatrists

10  customarily rely.  (*Id.* ¶ 16.)  Dr. Cohen's opinions are based on sufficient facts and

11  data; they are reliable under Rule 702 and *Daubert*.

12       Moreover, Dr. Cohen's use of the term "preliminary diagnostic impressions"

13  does not make his opinions inadmissible.  Dr. Cohen anticipated that more material,

14  such as therapy records, would be forthcoming and could impact his opinions.

15  (Cohen Decl. ¶ 15.)  "As always," he explained, "my opinions are subject to change

16  in the event that I learn of additional evidence . . ."  (Lavoie Decl. Ex. A. at 1.)

17       Plaintiff's various challenges to the factual bases underlying Dr. Cohen's

18  opinions are also meritless.  (*See supra* Section II.C.)  For example, Dr. Cohen does

19  not speculate that Plaintiff "was exposed to several situational factors" that affected

20  how she has adapted to the loss of her husband and daughter.  This opinion is

21  supported by actual evidence of "situational factors" from her deposition and her

22  complaint in the wrongful death case.  (Lavoie Decl. Ex. A at 8.)  In any event,

23  "[T]he factual basis of an expert opinion goes to the credibility of the testimony, not

24  the admissibility . . . ."  *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d

25  998, 1017 n.14 (9th Cir. 2004) (alteration in original) (citation omitted).

26

27

28

## IV.   <u>DEFENDANTS' CONCLUSION</u>

For the reasons set forth above, the Court should deny Plaintiff's motion *in limine* to exclude the testimony of Defendants' psychiatric expert, Dr. Cohen.

DATED:  January 20, 2022        WILSON SONSINI GOODRICH & ROSATI
                                Professional Corporation


                                By: _____*/s/ Luis Li*_____
                                    LUIS LI
                                Attorneys for Plaintiff VANESSA BRYANT


DATED:  January 20, 2022        OFFICE OF COUNTY COUNSEL


                                By: _____*/s/ Jonathan C. McCaverty*_____
                                    JONATHAN C. McCAVERTY
                                Attorneys for Defendant LOS ANGELES
                                COUNTY SHERIFF'S DEPARTMENT

DATED:  January 20, 2022        MILLER BARONDESS, LLP


                                By: _____*/s/ Louis R. Miller*_____
                                    LOUIS R. MILLER
                                Attorneys for Defendants COUNTY OF LOS
                                ANGELES, LOS ANGELES COUNTY FIRE
                                DEPARTMENT, JOEY CRUZ, RAFAEL
                                MEJIA, MICHAEL RUSSELL, RAUL
                                VERSALES, TONY IMBRENDA, and ARLIN
                                KAHAN

### <u>FILER ATTESTATION</u>

1    I, Luis Li, attest under Local Rule 5-4.3.4(a)(2)(i) that all other signatories
2    listed, and on whose behalf the filing is submitted, concur in the filing's content and
3    have authorized the filing.

4

5    Dated:  January 20, 2022                                    */s/ Luis Li*
6                                                                    Luis Li

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28