LUIS LI (State Bar No. 156081)
Luis.Li@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
633 West Fifth Street, Suite 1550
Los Angeles, California 90071
Telephone:  (323) 210-2900
Facsimile:  (866) 974-7329

CRAIG JENNINGS LAVOIE (State Bar No. 293079)
Craig.Lavoie@mto.com
JENNIFER L. BRYANT (State Bar No. 293371)
Jennifer.Bryant@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:  (213) 683-9100
Facsimile:  (213) 687-3702

Attorneys for Plaintiff Vanessa Bryant

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| VANESSA BRYANT,<br><br>              Plaintiff,<br><br>       vs.<br><br>COUNTY OF LOS ANGELES, et al.,<br><br>              Defendants. | Case No. 2:20-cv-09582-JFW-E<br><br>**JOINT STATEMENT REGARDING MOTION IN LIMINE #5: TO ADMIT RECORDINGS AND LETTERS**<br><br>Pretrial Conference:<br>       February 4, 2022<br><br>Hearing on Motions *in Limine*:<br>       February 11, 2022<br><br>Trial Date: February 22, 2022 |

## **TABLE OF CONTENTS**

I.  IDENTIFICATION OF THE MATTER IN DISPUTE ..................................7

II.  PLAINTIFF'S POSITION ...........................................................................7

    A.  Background Regarding Recordings of Sheriff Villanueva and Commander Valdez..................................................................................7

    B.  Background of Fire Department Discipline Letters............................10

    C.  Meet and Confer.................................................................................11

    D.  The Recordings and Firefighter Letters Are Authentic. ...................11

        1.  Recordings and Letters Produced by Defendants During Discovery Are Self-Authenticating ...........................................11

        2.  All of the Recordings Are Self-Authenticating News Footage.......................................................................................12

        3.  If Necessary, Plaintiff Can Establish Authenticity of the Recordings Through Testimony at Trial ...................................13

    E.  The Recordings and Firefighter Letters Are Relevant.......................14

    F.  The Recordings and Firefighter Letters Are Admissible Party Admissions..........................................................................................14

    G.  The *Los Angeles Times* Recording Is Not Precluded Simply Because It Was Made Public After the Close of Fact Discovery........15

    H.  The Recordings and Letters May Be Admitted Without a Sponsoring Witness...........................................................................16

III.  DEFENDANTS' CONTENTIONS AND POINTS OF AUTHORITIES....17

    A.  The Court Should Preclude Plaintiff From Introducing The Recordings At Trial.............................................................................17

        1.  The Recordings Are Not Relevant...........................................17

        2.  The Recordings Have No Probative Value, Are Highly Prejudicial, Will Mislead the Jury, and Will Waste Time........19

        3.  The Recordings Are Inadmissible under Fed. R. Evid. 608(b).......................................................................................22

        4.  Plaintiff Cannot Authenticate the Audio Recordings..............22

5.   Plaintiff Produced the LOS ANGELES TIMES's Recordings after the Discovery Cutoff ........................................................23

B.   The Court Should Preclude Plaintiff From Introducing The LACFD Letters At Trial.........................................................24

1.   The LACFD Letters Are Not Relevant, Are Prejudicial, and Will Cause Undue Consumption of Time ........................25

2.   The LACFD Discipline Letters Are Inadmissible under Fed. R. Evid. 407 .............................................................26

IV.   DEFENDANTS' CONCLUSION..............................................................27

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adams v. United States*,
2009 WL 1884387 (D. Idaho June 28, 2009)................................................ 16

*Anand v. BP W. Coast Prods. LLC*,
484 F. Supp. 2d 1086 (C.D. Cal. 2007)...................................................... 11

*Asociación De Periodistas De Puerto Rico v. Mueller*,
680 F.3d 70 (1st Cir. 2012) ...................................................................... 12

*Barner v. Pilkington N. Am.. Inc.*,
399 F.3d 745 (6th Cir. 2005).................................................................... 14

*Chisolm v. 7-Eleven, Inc.*,
814 F. App'x 194 (9th Cir. 2020).............................................................. 23

*City of Canton, Ohio v. Harris*,
489 U.S. 378 (1989) ................................................................................ 19

*Crawford v. George & Lynch. Inc.*,
19 F. Supp. 3d 546 (D. Del. 2013) ............................................................ 16

*Gomez v. Cnty. of L.A.*,
2007 WL 9717613 (C.D. Cal. May 7, 2007) ............................................. 14

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
2015 WL 13756254 (N.D. Cal. Aug. 13, 2015).......................................... 15

*In re Entropin. Inc. Sec. Litig.*,
487 F. Supp. 2d 1141 (C.D. Cal. 2007)...................................................... 11

*In re Neurontin Mktg. & Sales Practices Litig.*,
799 F. Supp. 2d 110 (D. Mass. 2011) ........................................................ 16

*James Stewart Entm't, LLC v. L&M Racing, LLC*,
2013 WL 12248146 (C.D. Cal. June 28, 2013) .......................................... 23

*Jones v. United Parcel Serv.. Inc.*,
658 F. Supp. 2d 1308 (D. Kan. 2009). *aff'd in part, rev'd in part
and remanded*, 674 F.3d 1187 (10th Cir. 2012)...................................... 15, 16

*LG Display Co. v. AU Optronics Corp.*,
265 F.R.D. 199 (D. Del. 2010)................................................................... 16

*Maddox v. City of L.A.*,
792 F.2d 1408 (9th Cir. 1986)............................................................... 25, 26

*Maljack Prods., Inc. v. GoodTimes Home Video Corp.*,

81 F.3d 881 (9th Cir. 1996)...........................................................................11

*Old Chief v. United States*,
     519 U.S. 172 (1997) ..............................................................................19

*Orr v. Bank of Am.. NT & SA*.
     285 F.3d 764 (9th Cir. 2002).............................................................11, 22

*Reeves v. Sanderson Plumbing Prods., Inc.*,
     530 U.S. 133 (2000) ..............................................................................14

*Scott v. Cnty. of San Bernardino*,
     2016 WL 6609211 (C.D. Cal. Jan. 7, 2016) ................................................22

*Shakur v. Schriro*,
     514 F.3d 878 (9th Cir. 2008)...................................................................18

*Shenzhenshi v. Haitiecheng Sci. & Tech. Co., Ltd. v. Rearden LLC*,
     2016 WL 11187258 (N.D. Cal. Nov. 15, 2016)............................................23

*Silvagni v. Wal-Mart Stores. Inc..*
     320 F.R.D. 237 (D. Nev. 2017)................................................................15

*TEK Global. S.R.L. v. Sealant Svs. Int'l. Inc..*
     2017 WL 952955 (N.D. Cal. Mar. 12, 2017)...............................................16

*United States v. Gadson*,
     763 F.3d 1189 (9th Cir. 2014)..................................................................13

*United States v. Hitt*,
     981 F.2d 422 (9th Cir. 1992)....................................................................19

*United States v. Holmquist*,
     36 F.3d 154 (1st Cir.1994) ......................................................................12

*United States v. Loera*,
     2018 WL 2744701 (E.D.N.Y. June 7, 2018) ...............................................12

*United States v. Ortiz*,
     776 F.3d 1042 (9th Cir. 2015)..................................................................13

*United States v. Smith*,
     591 F.3d 974 (8th Cir. 2010)...................................................................13

*United States v. Vayner*,
     769 F.3d 125 (2d Cir. 2014)....................................................................12

*Wettstein v. Cnty. of Riverside*,
     2020 WL 2199005 (C.D. Cal. Jan. 22, 2020) ..............................................18

**RULES**

JOINT STATEMENT REGARDING PLAINTIFF'S         -5-
MOTION IN LIMINE #5: TO ADMIT
RECORDINGS AND LETTERS

Fed. R. Civ. P. 26 ............................................................................................ 22

Fed. R. Civ. P. 37(c)(1) ............................................................................. 22, 23

Fed. R. Evid. 401 ............................................................................................ 13

Fed. R. Evid. 403 ...................................................................................... 19, 25

Fed. R. Evid. 407 ............................................................................................ 25

Fed. R. Evid. 608(b) ....................................................................................... 21

Fed. R. Evid. 613(b) ....................................................................................... 20

Fed. R. Evid. 801(d)(2)(D) ............................................................................ 14

Fed. R. Evid. 901 ............................................................................... 13, 16, 22

Fed. R. Evid. 902(6) ....................................................................................... 12

**MISCELLANEOUS**

30B Michael Graham, *Federal Practice & Procedure* § 7023
(2007 online ed.)........................................................................................ 14

31 Charles Alan Wright & Arthur R. Miller, *Federal Practice &*
*Procedure: Evidence* § 7105 (2d ed. 2021)................................................. 11

## I.     IDENTIFICATION OF THE MATTER IN DISPUTE

Plaintiff seeks to admit without the need for a sponsoring witness (1) six recordings of public statements made by Sheriff Alex Villanueva following the *Los Angeles Times* report regarding the improper taking and sharing of crash scene photos;[1] and (2) a recording of statements made by Sheriff Alex Villanueva and Commander Jorge Valdez to a *Los Angeles Times* reporter before the *Los Angeles Times* report.[2]  These recordings are being lodged with the Court in connection with this motion, and transcripts are attached to the Declaration of Craig Jennings Lavoie.  *See* Lavoie Decl., Exs. A-G.

Plaintiff also seeks to admit without a sponsoring witness three letters signed by Deputy Chief William McCloud of the Fire Department informing Brian Jordan, Tony Imbrenda, and Arlin Kahan of discipline against them in connection with their taking or sharing photos of the crash victims' remains.  Lavoie Decl., Exs. H-J.

## II.    PLAINTIFF'S POSITION

### A.    Background Regarding Recordings of Sheriff Villanueva and Commander Valdez.

In the days after the *Los Angeles Times* report on February 27 and 28, 2020, that first responders took and shared improper photos of the crash victims' remains, Sheriff Alex Villanueva made numerous press appearances in which he made admissions about the facts at issue in this case.  For example:

- In an interview with Fox 11 on March 2, 2020, and on several other occasions, Sheriff Villanueva admitted that members of his Department

---

[1] COLA001200 (Villanueva Press Briefing); VB00003620 (Villanueva CBS 2 Interview); VB00003622 (Villanueva Fox 11 Interview); COLA001182 (Villanueva ABC 7 Interview); COLA006932 (Villanueva KNX1070 Interview); COLA030878 (Villanueva NBC Interview)

[2] https://www.latimes.com/california/story/2021-12-21/vanessa-bryant-kobe-bryant-death-photos-lawsuit-la-county-sheriff

"ha[d] no place to be taking any photographs of anything."  Lavoie Decl., Ex. A (Fox 11 Interview – VB00003622) at 00:47-00:56; *see also id.*, Ex. B (Press Briefing – COLA001200) at 00:00-00:28 ("[I]n this type of scene, which is an accident, there's only two groups of people that should be taking photos: that is the NTSB and then the Coroner's Office . . . . Anybody outside of that would be unauthorized.  It'd be illicit photos."); *id.*, Ex. C (KNX1070 Interview – COLA006932) at 07:40-07:52 (similar comment); *id.*, Ex. D (ABC 7 Interview – COLA001182) at 01:40-01:46 ("[T]here were first responders that took photos at the scene that they were not supposed to."); *id.*, Ex. E (NBC Interview – COLA030878) at 03:44-03:52 (crash-scene photos "[n]ever should have been taken in the first place").

- In an interview with KNX1070 radio in March 2020, and on several other occasions, Sheriff Villanueva stated that: "[E]ver since they invented the Polaroid, law enforcement, first responders, coroner's office, everybody has been taking Polaroids of crime scenes and the human remains and some people collect them.  They put [them in] death books."  Lavoie Decl., Ex. C at 06:55-07:37; *see also id.*, Ex. B (March 2020 press briefing) at 00:28- 01:08 ("[E]ver since they invented the Polaroid camera, this has been a problem in law enforcement across the nation."); *id.*, Ex. E (NBC Interview) at 05:32- 05:48 (similar comment).

- In an interview with ABC 7, Sheriff Villanueva spoke about LASD's policies with respect to photographs of accident scenes, and stated: "We're going back and looking at our policies, and they were very deficient."  Lavoie Decl., Ex. D at 01:58-02:01.

- In an interview with KNX1070 radio in March 2020, Sheriff Villanueva acknowledged that the efficacy of his Department's response depended on the honesty of the personnel involved.  Sheriff Villanueva asserted that his Department would not be the source of any leaked photos, then added a caveat: "Unless someone was lying all along, and then all bets are off." Lavoie Decl., Ex. C at 14:35-15:05.

- In a press briefing on March 2, 2020, Sheriff Villanueva expressed uncertainty regarding the efficacy of his Department's response, stating: "[N]ow we're assessing:  is there more that we don't know, which is what concerns me.  What we don't know."  Lavoie Decl., Ex. B at 04:08-04:31.

- In a press briefing on March 2, 2020, and on at least one other occasion, Sheriff Villanueva described the deputies' conduct as "wildly inappropriate" and "disgusting," explaining that "it harms people that suffered a tragedy already on top of that to think that it could be expanded beyond that by having a public display of their loved ones' remains." Lavoie Decl., Ex. B at 01:12-01:26; *see also id.*, Ex. E (NBC Interview) at 05:18-05:29 & 11:21-11:35 (describing deputies' conduct as "inexcusable," "inappropriate," and "unconscionable," and stating that he would tell Vanessa Bryant: "I'm just terribly sorry for this additional anguish that you don't need nor does anyone need who lost someone in this tragedy."); *id.*, Ex. F (CBS 2 Interview) at 00:38-00:47 ("[T]hese families of the victims have suffered enough already. To have, you know, any action of our deputies compile their suffering that – that breaks my heart.").

Each of the above statements is captured on audio or video recordings that have been produced in this action.  Four of the recordings were produced by Defendants to Plaintiff in response to a discovery request.  Lavoie Decl. ¶¶ 4-7. Plaintiff located the remaining two on the websites of news outlets and produced them to Defendants.  *Id.* ¶¶ 3, 8.

Fact discovery in this matter closed on November 29, 2021.  On December 21, 2021—approximately twenty-two months after initial the *Los Angeles Times* report in February 2020—the *Times* published a story that included recordings of a *Times* reporter interviewing Sheriff Villanueva and other Department officials, identified as Exhibit G.  Plaintiff identified the recording to Defendants the very next day when Plaintiff provided the URL to Defendants' counsel and indicated that Plaintiff would rely on the recording at trial.  *See* Lavoie Decl., Ex. K at 78.

The recording reveals Sheriff Villanueva and Commander Valdez making false statements about the incident and the Department's response to it.  For example, when asked if he was aware of a citizen complaint regarding a deputy showing photos of victims' remains to a bartender in Norwalk, Sheriff Villanueva falsely responded: "No, I'm kinda lost."  Lavoie Decl., Ex. G at 0:05-0:16, 1:15-

1:17.  Commander Valdez, despite having personally conveyed Sheriff Villanueva's deletion order down the chain, also falsely denied knowledge of the citizen complaint and the order given to deputies in the Lost Hills station to delete photos, stating: "There was no order given to delete any photographs.  I'm not aware of any complaint."  *Id.* at 2:21-2:35.  Sheriff Villanueva also admitted that he was aware of the widespread problem of deputies taking and sharing pictures of remains: "Throughout the last 30 years, and obviously with the advent of modern technology, we've always had a situation . . . where people take photos and they're not evidence."  *Id.* at 0:53-1:09.

**B.      Background of Fire Department Discipline Letters.**

Writing on official Department letterhead, Deputy Chief William McCloud informed Jordan, Imbrenda, and Kahan of the Fire Department's findings:

- That "[t]here was no legitimate business need for [Jordan] to take photographs of human remains" at the site; that Jordan's "photographs . . . of the fuselage and human remains at the [site] did not further the [Fire] Department's mission" and "had no intel value or legitimate business purpose"; and that Jordan's taking and distribution of the photos "only served to appeal to baser instincts and desires for what amounted to visual gossip." Lavoie Decl., Ex. H (Jordan Discharge Ltr.) at 51-53.

- That Imbrenda "failed to show commitment to [his] job as the Department's PIO" when he "shared sensitive photos [he] obtained through the course of regular business in a public setting with no apparent business need for doing so."  Lavoie Decl., Ex. I (Imbrenda Discharge Ltr.) at 62.  Showing pictures "depict[ing] feet, shoes, a torso, a person bent in half, and human organs" was "wholly inappropriate" and showed no "regard for the public trust, or the dignity and privacy of the deceased or their families."  *Id.* at 61-63. Imbrenda's actions "brought discredit and embarrassment to the Department." *Id.* at 63.  And Imbrenda engaged in a "primarily self-serving" "attempt to cover up [his] role in the reported misuse of the photos" by deleting the photos and instructing others to do so.  *Id.*

- That "[t]here was no legitimate business need for [Kahan] to take photographs of human remains" at the site; that Kahan's "photographs . . . of the fuselage and human remains at the [site] did not further the [Fire] Department's mission" and "had no intel value or legitimate business purpose"; and that Kahan's taking and distribution of the photos "only served to appeal to baser instincts and desires for what amounted to visual gossip." Lavoie Decl., Ex. J (Kahan Discipline Ltr.) at 72-73.

Defendant produced these letters to Plaintiff in response to Plaintiff's discovery requests. Lavoie Decl. ¶¶ 4-7.

### C.    Meet and Confer.

When the parties met and conferred, Defendants stated that they would not stipulate to the admissibility of this material but provided no argument for why the materials are not authentic, relevant, and admissible. Lavoie Decl. ¶ 2.

### D.    The Recordings and Firefighter Letters Are Authentic.

The Court's Amended Scheduling and Case Management Order provides that "[a]ll parties shall stipulate to the authenticity of exhibits whenever possible." ECF No. 86 at 25. Defendants have declined to stipulate, but there is no serious question about the authenticity of the letters or the recordings.

#### 1.    Recordings and Letters Produced by Defendants During Discovery Are Self-Authenticating

Documents produced by a party in discovery are generally deemed authentic when offered by the party-opponent. *See Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 776 (9th Cir. 2002); *see also Anand v. BP W. Coast Prods. LLC*, 484 F. Supp. 2d 1086, 1092 n.11 (C.D. Cal. 2007) ("Documents produced in response to discovery requests . . . are self-authenticating and constitute the admissions of a party opponent."); *Maljack Prods., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 889 n. 12 (9th Cir. 1996) (documents produced by a party in discovery were deemed authentic when offered by the party-opponent); 31 Charles Alan Wright &

Arthur R. Miller, *Federal Practice & Procedure: Evidence* § 7105 (2d ed. 2021) ("Authentication can be accomplished through judicial admission, such as . . . production of the items at issue in response to a discovery request.").  In short, when the evidence at issue was produced by the opposing party during discovery, "any authentication objection is without merit."  *In re Entropin, Inc. Sec. Litig.*, 487 F. Supp. 2d 1141, 1143 n.1 (C.D. Cal. 2007).

Four of the seven recordings at issue here were produced by Defendants to Plaintiff during discovery and have COLA Bates numbers.  Lavoie Decl. ¶¶ 4-7 & Exs. B-E.  Likewise, all three of the LAFD letters were produced by Defendants.  Lavoie Decl. ¶¶ 10-12 & Exs. H-J.  Defendants have no basis to dispute the authenticity of these.

**2.**     **All of the Recordings Are Self-Authenticating News Footage**

The "contents or 'distinctive characteristics'" of evidence may provide circumstantial evidence sufficient for authentication.  *United States v. Vayner*, 769 F.3d 125, 132 (2d Cir. 2014); *see also United States v. Holmquist*, 36 F.3d 154, 167 (1st Cir.1994).  For this reason, news footage has been found to be self-authenticating.  *See United States v. Loera*, 2018 WL 2744701, at *4 (E.D.N.Y. June 7, 2018) ("It would be extremely difficult to forge news videos"); *see also* Fed. R. Evid. 902(6) advisory committee's note to 1972 proposed rules ("The likelihood of forgery of newspaper or periodicals is slight indeed.  Hence no danger is apparent in receiving them.").  In *Asociación De Periodistas De Puerto Rico v. Mueller*, 680 F.3d 70, 79-80 (1st Cir. 2012), the court found "no serious basis for disputing the authenticity" of "clips from multiple news programs with proprietary production sets and locally-known television personalities from various stations . . . all of which suggests these are actual news clips with footage from the scene."  Claims that the videos were "incomplete" and "extensively edited" were

insufficient when there was no claim of fabrication or "that the videos do not show actual footage of the incident in question." *Id.* at 79.

The three recordings obtained by Plaintiff from news outlets are self-authenticating under this standard.  Two are video recordings of segments that aired on the local news (Fox 11 and CBS 2), and one is an audio recording of an interview posted online by the *Los Angeles Times*.  Lavoie Decl., Exs. A, F, & G.  They include the indicia of authenticity discussed in *Asociación De Periodista*, such as having been held out as authentic by well-known local news organizations, and the inclusion of well-known local news anchors or reporters, sets, and logos.  Defendants cannot seriously contend that local networks or the *Los Angeles Times* fabricated these recordings.

### 3. If Necessary, Plaintiff Can Establish Authenticity of the Recordings Through Testimony at Trial

For the reasons explained above, the recordings at issue here are indisputably authentic.  But to the extent the Court has any doubts, it may grant Plaintiff's motion subject to Plaintiff establishing authenticity at trial.

An audio recording may be authenticated by a witness who recognizes the voice on the recording or by other extrinsic evidence.  *United States v. Gadson*, 763 F.3d 1189, 1204 (9th Cir. 2014).  Under Fed. R. Evid. 901(b)(5), any witness may identify the voice on a recording "based on hearing the voice at any time under circumstances that connect it with the alleged speaker."  The rule "'establishes a low threshold for voice identifications'" and an identifying witness need only be "minimally familiar with the voice he identifies."  *United States v. Ortiz*, 776 F.3d 1042, 1044-45 (9th Cir. 2015) (citation omitted).  Plaintiff will call multiple witnesses at trial who will be able to identify Sheriff Villanueva's and Commander Valdez's voices on tape.  If necessary, Plaintiff can also call witnesses who can authenticate the scene depicted in the video recordings of Sheriff

Villanueva speaking.  *See United States v. Smith*, 591 F.3d 974, 979 (8th Cir. 2010).

### E.      The Recordings and Firefighter Letters Are Relevant.

Generally, evidence having "any tendency" to make a fact of consequence in determining the action "more or less probable than it would be without the evidence" is relevant and therefore admissible.  Fed. R. Evid. 401.

Statements by top LASD and LAFD executives that the parties' conduct was unacceptable are highly relevant to Plaintiff's claims.  The reprehensible nature of the parties' actions, as well as the Departments' knowledge of such conduct as a longstanding and pervasive problem, speaks directly to the heart of Plaintiff's claims.  Evidence that the Sheriff and one of his top advisors lied about the Department's awareness of and response to the incident is also relevant as evidence that Defendants engaged in wrongdoing, knew it, and tried to cover it up.  *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000) ("[T]he factfinder is entitled to consider a party's dishonesty about a material fact as 'affirmative evidence of guilt.'" (citations omitted)).  Therefore, both the letters and the recordings are relevant evidence under Fed. R. Evid. 401.

### F.      The Recordings and Firefighter Letters Are Admissible Party Admissions.

Under Fed. R. Evid. 801(d)(2)(D), a statement is not hearsay if it is offered against an opposing party and "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed."  The rule "bind[s] the employer where one of its managerial employees makes a statement within the scope of the employee's duties as a manager."  *Barner v. Pilkington N. Am., Inc.*, 399 F.3d 745, 750 (6th Cir. 2005).  "[A]ll that is required is that the statement concern a matter within the scope of the agency or employment, and that the agent or servant still be employed at the time of making the statement."  *Gomez v. Cnty.*

*of L.A.*, 2007 WL 9717613, at \*3 n.6 (C.D. Cal. May 7, 2007) (citing 30B Michael Graham, *Federal Practice & Procedure* § 7023 (2007 online ed.)).

Villanueva, the Sheriff of Defendant Los Angeles County Sheriff's Department, and Valdez, then a Captain at Defendant Los Angeles County Sheriff's Department, were plainly managerial agents of their departments. The interviews and press conferences embodied in the recordings at issue were conducted by Sheriff Villanueva in his official capacity as Sheriff of LASD. He spoke about the conduct of LASD deputies with regard to the taking and sharing of photos of victims' remains at the crash site. And the statements made by Villanueva and Valdez in the *Los Angeles Times* recording denying that LASD had received a citizen complaint were similarly made in their official capacities. These statements made by top LASD executives about LASD's conduct are offered against Defendant LASD. As such, they are opposing party admissions and admissible as non-hearsay under Fed. R. Evid. 801(d)(2)(D).

The LAFD letters were written by a top LAFD executive in his official capacity, on LAFD letterhead, with the intent of communicating the Department's official position regarding the firefighters' discipline. They are also opposing party admissions and admissible as non-hearsay under Fed. R. Evid. 801(d)(2)(D).

### G.   The *Los Angeles Times* Recording Is Not Precluded Simply Because It Was Made Public After the Close of Fact Discovery.

Defendants have challenged the *Los Angeles Times*' recording of Sheriff Villanueva and Commander Valdez because Plaintiff produced it after the close of fact discovery—immediately after the *Times* first made it available. Defendants have no basis to complain about Plaintiff's use of a recording of Defendants' own executives that was identified by Plaintiff as soon as the *Times* made it public.

"There is no bright line rule that [discovery] supplementation is improper if made after ... the close of discovery." *Silvagni v. Wal-Mart Stores, Inc.*, 320

F.R.D. 237, 241 (D. Nev. 2017).  "Instead, the key inquiry is whether the timing of the supplemental disclosure is reasonable based on when the information was available."  *Id.*  Delayed production of documents is "substantially justified" when the material was not previously available to the producing party.  *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2015 WL 13756254, at *4 (N.D. Cal. Aug. 13, 2015).

There is no credible argument for preclusive sanctions under this standard. The recording at issue here was not available to Plaintiff until after discovery had closed and was identified by Plaintiff to Defendants the very next day.  Defendants cannot argue that they suffered unfair surprise or prejudice from the disclosure of statements made by their own representatives, to whom they have access and could have asked (and still can ask) about the recordings at any time.  *See Jones v. United Parcel Serv., Inc.*, 658 F. Supp. 2d 1308, 1318 (D. Kan. 2009), *aff'd in part, rev'd in part and remanded*, 674 F.3d 1187 (10th Cir. 2012) (where plaintiff's late-produced document was defendant's own filing, late disclosure was harmless); *Crawford v. George & Lynch, Inc.*, 19 F. Supp. 3d 546, 553 (D. Del. 2013) (party "was neither surprised nor prejudiced" by the late production where the documents "d[id] not contradict prior evidence in the record" and party "fail[ed] to demonstrate how the information would have altered her discovery strategy had it been produced sooner").

**H.    The Recordings and Letters May Be Admitted Without a Sponsoring Witness.**

Courts have discretion to admit documents into evidence without a sponsoring witness.  "There is no freestanding 'sponsoring witness' requirement in the Federal Rules of Evidence."  *TEK Global, S.R.L. v. Sealant Sys. Int'l, Inc.*, 2017 WL 952955, at *1 (N.D. Cal. Mar. 12, 2017) (citing Fed. R. Evid. 901); *see also In re Neurontin Mktg. & Sales Practices Litig.*, 799 F. Supp. 2d 110, 117-18

(D. Mass. 2011) (admitting exhibits into evidence without sponsorship); *LG Display Co. v. AU Optronics Corp.*, 265 F.R.D. 199, 206 (D. Del. 2010) (admitting exhibits into evidence although not presented during live testimony or via deposition designations); *Adams v. United States*, 2009 WL 1884387, at *1 (D. Idaho June 28, 2009) (admitting documents into evidence without sponsoring witness).

The recordings and letters at issue here should be admitted without the need for a sponsoring witness. As set forth above, each is authentic, non-hearsay, and relevant. Allowing use without requiring a sponsoring witness would streamline trial and potentially avoid the need to subpoena busy public officials. Nor will the presentation of this evidence without a sponsoring witness result in some unfairness to the Defendants. The recordings and letters are self-contained and speak for themselves, and Defendants can call any witnesses they believe are needed to respond to or contextualize the information during their own case.

## III.   DEFENDANTS' CONTENTIONS AND POINTS OF AUTHORITIES

By this motion, Plaintiff seeks to admit without the need for a sponsoring witness (1) eight recordings (audio and video) of statements purportedly made by Sheriff Villanueva to seven different media outlets on seven different occasions totaling more than 50 minutes, and (2) three letters from LACFD informing personnel of its intent to discipline them in response to the Department's internal investigation. As explained below, none of these should come in.

### A.   The Court Should Preclude Plaintiff From Introducing The Recordings At Trial

#### 1.   The Recordings Are Not Relevant

This case is about whether Defendants violated Plaintiff's constitutional rights by publicly disseminating crash site photos depicting Plaintiff's relatives. Plaintiff

has no evidence of public dissemination by the County, so she is trying to do everything she can to confuse and mislead the jury.

The recordings are not relevant for a host of reasons.  For example, two of the audio recordings purportedly reflect a conversation between Sherriff Villanueva, Commander Valdez, and Captain Satterfield and a LOS ANGELES TIMES reporter, Alene Tchekmedyian, wherein she asked whether LASD initiated an internal investigation.  (*See* Lavoie Decl. Ex. G [VB00004208].)  These issues are not relevant to Plaintiff's claims at trial.  Plaintiff *abandoned* her failure to investigate and discipline theory under *Monell*.

Plaintiff alleged three *Monell* theories in her First Amended Complaint ("FAC"): (i) failure to train; (ii) failure to adequately investigate and discipline; and (iii) a County "pattern of practice and/or custom of unnecessarily taking and sharing death images."  (FAC ¶¶ 81-86.)  Defendants moved for summary judgment on all three theories.  [*See* Dkt. 169-1 at 20:19-26:21.]  Plaintiff did not oppose Defendants' motion as to theories (ii) and (iii) [*see* Dkt. No. 190 at 18:5-20:9]; and, therefore, under Ninth Circuit case law, she abandoned all but the training theory.  *See Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008) ("[P]laintiff has 'abandoned . . . claims by not raising them in opposition to [the defendant's] motion for summary judgment.'" (second and third alterations in original) (citation omitted)).  Plaintiff has since confirmed that she is not pursuing a "failure to investigate and discipline" theory at trial.  (*See* Tokoro Decl. Ex. F [Disputed Instruction D].)

This applies not only to the LOS ANGELES TIMES's recordings, but also to the March 2, 2020 press briefing (Lavoie Decl. Ex. B) and the March 2020 KNX1070 interview (*id.* Ex. C).  Both of those recordings also deal with LASD's investigation.

To take another example, Plaintiff seeks to introduce statements that "ever

since they invented the Polaroid camera, this has been a problem in law enforcement across the nation." (*See* Lavoie Decl. Exs. B, E.) Those comments are taken out of context—Sheriff Villanueva did not state that LASD had ever dealt with "death images" being shared with anyone, let alone publicly disseminated. (Dkt. No. 208 ¶ 91.) Instead, he opined generally on "a problem in law enforcement across the nation" relating to officers keeping "photos from crime scenes throughout their careers." (*Id.* ¶ 92.)

That other jurisdictions *might* have dealt with their employees keeping photos from scenes they had encountered does not establish that LASD has any kind of "persistent and widespread" practice of disseminating death images. *See Wettstein v. County of Riverside*, 2020 WL 2199005, at *5 (C.D. Cal. Jan. 22, 2020) (dismissing *Monell* claim where plaintiff failed "to adequately allege a 'longstanding practice or custom' of constitutional violations *on the part of the County*" (emphasis added) (citation omitted)). To the contrary, there are no other complaints of LASD personnel doing anything similar. (Dkt No. 208 ¶ 82.)

The Sheriff's purported statements about LASD evaluating its policies are also irrelevant. Plaintiff intends to argue that the Sheriff's statements show LASD's policies were deficient. To the contrary, creating a new policy to address a situation LASD had never confronted (and supporting a new law making it illegal to take and/or share unauthorized photos of victims' remains) shows that it took seriously the need to prevent future harm. Plaintiff's *Monell* claim is based, in large part, on her displeasure with LASD policies. That is the exact type of "second-guessing" the "federal courts are ill suited to undertake." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 392 (1989).

> **2.**      **The Recordings Have No Probative Value, Are Highly Prejudicial, Will Mislead the Jury, and Will Waste Time**

The recordings also should be excluded because any minimal probative value is substantially outweighed by the risk of undue prejudice, confusing the issues, and misleading the jury, and will necessitate undue consumption of limited trial time. Fed. R. Evid. 403; *United States v. Hitt*, 981 F.2d 422, 424 (9th Cir. 1992) ("Where the evidence is of very slight (if any) probative value, it's an abuse of discretion to admit it if there's even a modest likelihood of unfair prejudice or a small risk of misleading the jury."); *Old Chief v. United States*, 519 U.S. 172, 180–92 (1997).

Plaintiff asks the Court to admit the recordings without a sponsoring witness because she wants to use them in her opening statement.  This would be prejudicial to Defendants.  These recorded statements are being taken out of context and without the opportunity for explanation.  They were made soon after the January 26, 2020 crash and before the Sheriff had full knowledge of what his deputies did on the day of the crash and before he had the findings from the Internal Affairs Bureau investigation.

The Sheriff was deposed about several of the recordings and explained his statements.  For example, Plaintiff questioned the Sheriff about whether LASD Deputy Doug Johnson was justified in taking photos when he made it the crash site, or whether the NTSB and County Coroner were the only entities that should have taken crash scene photos.  (Tokoro Decl. Ex. K [Sheriff Tr.] at 33:19-36:11].)  In response to the question of whether "the NTSB and the coroner's office" were "the only groups of people who should be taking photographs at a helicopter accident scene," Sheriff Villanueva responded, "I can tell you no, that is not true."  (*Id.*)

Plaintiff should not be permitted to use these recordings in her opening statement, or at all unless proper under the Rules of Evidence.  *See* Fed. R. Evid. 613(b) ("Extrinsic evidence of a witness's prior inconsistent statement is admissible only if the witness is given an opportunity to explain or deny the statement . . . .").

Plaintiff should wait until the Sheriff is on the witness stand and then, if proper, attempt to use the recordings.

Introduction of these recordings would also be a complete sideshow.  Plaintiff wants to make this case about the Sheriff's communications with the press, but those relationships are fraught with all sorts of issues and complexities.  For example, Ms. Tchekmedyian is the beat reporter assigned to cover LASD.  She has reported on everything from deputy shootings, use of force cases, personnel decisions at LASD, and the efforts to recall Sheriff Villanueva.

Explaining why Sheriff Villanueva (and others at LASD) may be guarded in their responses to an off-the-cuff question posed by Ms. Tchekmedyian would require Defendants to introduce evidence and testimony to explain this complex, and at times adversarial, relationship.  This would waste time on issues that have nothing to do with whether Defendants violated Plaintiff's constitutional rights.  It would also confuse and mislead the jury into thinking they need to decide the propriety of LASD's statements to the press.  This is what Rule 403 is intended to prevent.

The total time for the eight recordings is more than 50 minutes, and at least one of them talks about a different case.  (*See,* Lavoie Decl. Ex. D (questioning about deceased individual found in Valencia).  Defendants would need to put on evidence for each of the recordings and why the statements are being misused.  This Court has imposed strict time limits for trial.  These recordings should not take up any of the limited time the parties have for trial.

Plaintiff will need to call witnesses to authenticate the audio recordings, which will needlessly increase the number of witnesses at trial.  Plaintiff has already indicated she plans to call 45 witnesses with a total examination time of 35 hours.  (Tokoro Decl. Ex. D [Pl. Trial Summaries & Time Estimates].)  And that is just for Plaintiff's case-in-chief, not taking into account her cross of Defendants' witnesses.

JOINT STATEMENT REGARDING PLAINTIFF'S
MOTION IN LIMINE #5: TO ADMIT
RECORDINGS AND LETTERS

-21-

### 3.      The Recordings Are Inadmissible under Fed. R. Evid. 608(b)

Plaintiff seeks to introduce the recordings so that she can argue to the jury that the Sheriff "lied about the Department's awareness of and response to the incident," and that the jury should not trust anything said by the Sheriff or his deputies.  (*See* Mot. at 9.)  She cannot do that under Rule 608.

Rule 608 states: "Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness."  Fed. R. Evid. 608(b). The recordings are "extrinsic evidence," and Plaintiff is trying to use them to prove the Sheriff lied on a specific occasion to attack his "character for truthfulness."

### 4.      Plaintiff Cannot Authenticate the Audio Recordings

Plaintiff should be precluded from introducing the audio recordings at trial because she has no way to authenticate them as required by Federal Rule of Evidence 901(1)(a).  (*See* Lavoie Decl. Exs. C, E, G.)  "Authentication is a 'condition precedent to admissibility,' and this condition is satisfied by 'evidence sufficient to support a finding that the matter in question is what its proponent claims.'"  *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) (footnote omitted) (citation omitted).

The only people who can authenticate the audio recordings would be the individuals who made them.  *See* Fed. R. Evid. 901(b)(1); *Scott v. County of San Bernardino*, 2016 WL 6609211, at *4 (C.D. Cal. Jan. 7, 2016) (holding that an audio recording was not authenticated under Federal Rule of Evidence 901(b)(4) where it did not "not bear any markings establishing the recording's authenticity").  For example, Ms. Tchekmedyian is the only person who can authenticate the February 2020 recording.  (Lavoie Decl. Ex. G.)  The same goes for the other audio

recordings.

The problem for Plaintiff is that she did not disclose Ms. Tchekmedyian or any other reporters as potential witnesses in her initial disclosures or any of her discovery responses. (*See* Tokoro Decl. ¶ 19.)  As a result, Plaintiff cannot call any of them to testify at trial.  *See* Fed. R. Civ. P. 26(a)(1)(A)(i), (e), and 37(c)(1) (party is not allowed to use witness at trial who was not disclosed as required by Rule 26(a) or (e)).[3]

Plaintiff argues that these recordings are self-authenticating or can be authenticated by someone simply saying that the Sheriff's voice is on them.  (*See* Mot. at 11-12.)  Wrong.  The issue with the audio recordings is that there is no way—other than by asking the person who recorded it—to determine whether it is complete, unaltered and accurate.  *See, e.g., Scott*, 2016 WL 6609211, at *4.  Plaintiff also says Defendants authenticated the recordings by producing them in discovery.  Wrong again.  Defendants produced the recordings because Plaintiff requested all documents and communications having anything to do with the January 26, 2020 crash from all LASD and LACFD personnel—meaning, for example, anyone who had a Google alert setup that picked up the Sheriff interviews.

## 5.  Plaintiff Produced the Los Angeles Times's Recordings after the Discovery Cutoff

A party is not permitted to present evidence at trial that they did not produce during discovery. *See* Fed. R. Civ. P. 37(c)(1); *James Stewart Entm't, LLC v. L&M Racing, LLC*, 2013 WL 12248146, at *4-5 (C.D. Cal. June 28, 2013) (precluding

---

[3]  Plaintiff's failure to disclose these reporters is neither substantially justified nor harmless.  For example, as set forth below, Plaintiff has been aware of the Los Angeles Times article written by Ms. Tchekmedyian since February 2020.  (*See infra* at 18:23)

party from using document produced after the discovery cutoff). The reason for this rule is that, by not timely producing the evidence, the other side is prejudiced because they are prevented from conducting discovery of their own into the issue. *Chisolm v. 7-Eleven, Inc.*, 814 F. App'x 194, 196 (9th Cir. 2020) (trial court acted within its discretion in excluding email that plaintiff failed to produce until after discovery cutoff, as late disclosure of email prevented defendant from deposing any witnesses about the document).

Here, Plaintiff admits that the LOS ANGELES TIMES's recordings (Lavoie Decl. Ex. G) were produced nearly a month after the close of fact discovery. (*See* Mot. at 9, 15-16.) As a result, Defendants were prevented from conducting discovery into the recordings, including taking the deposition of Ms. Tchekmedyian.

Plaintiff claims that she did not have access to the recordings until they were publicly posted by the TIMES in December 2021. However, the Federal Rules require a litigant to affirmatively marshal evidence; she cannot wait for evidence to come to her without consequence. *See, e.g.*, *Shenzhenshi v. Haitiecheng Sci. & Tech. Co., Ltd. v. Rearden LLC*, 2016 WL 11187258, at *1 (N.D. Cal. Nov. 15, 2016) (holding that production of documents after discovery cutoff was not substantially justified despite the fact that the documents were produced as soon as they were made available by a third party).

Plaintiff could have sought the recordings during discovery. They were disclosed in a February 2020 LOS ANGELES TIMES article, which Plaintiff used as an exhibit in several depositions. (*See* Tokoro Decl. ¶ 18 (listing depositions).) Despite this, Plaintiff never deposed Ms. Tchekmedyian or requested that she produce the recorded interview. Plaintiff's failure to obtain and disclose these records before the discovery cutoff is not justified.

**B.**    **The Court Should Preclude Plaintiff From Introducing The**

**LACFD Letters At Trial[4]**

**1.     The LACFD Letters Are Not Relevant, Are Prejudicial, and Will Cause Undue Consumption of Time**

The three LACFD letters that Plaintiff seeks to introduce relate to the Department's investigation and discipline of certain personnel.  None of them are relevant.  For starters, none of the three recipients—Arlin Kahan, Brian Jordan, and Tony Imbrenda—are defendants in this case.  Moreover, as discussed above, Plaintiff is no longer pursuing a *Monell* theory at trial based on LACFD's failure to investigate and discipline personnel for the taking and sharing of crash scene photos. (*See supra* Part A.1.)  These letters notify the LACFD personnel that the Department intends to discipline them (e.g., discharge or suspend).  (*See* Lavoie Decl. Exs. H-J.)  These have nothing to do with the issues and facts the jury will need to decide.

Even if the letters were relevant (they aren't), their minimal probative value is outweighed by the probability that their admission will necessitate undue consumption of time, confuse the issues, mislead the jury, and create a danger of undue prejudice.  *See* Fed. R. Evid. 403.

Permitting Plaintiff to introduce this evidence will mislead and confuse the jury into thinking that it needs to decide whether LACFD adequately investigated and disciplined its personnel.  That is not before them.  It will also require

---

[4]  Pursuant to the Court's Amended Scheduling and Case Management Order, "[t]he Court will only entertain a maximum of *five* motions in limine by a party." [Dkt. 86 at 18 (emphasis added).]  Plaintiff has attempted an end-run around the Court's limitation by combining what should be two motions *in limine* dealing with separate issues and different evidence into a single motion—the recordings and LACFD discipline letters have nothing to do with each other.  The Court should not permit such gamesmanship and should not consider Plaintiff's second request for relief in this motion—to admit the LACFD letters.

Defendants to introduce evidence and examine witnesses at trial about the LACFD investigation, what was done, what was concluded, and why certain discipline was imposed.  It would be a sideshow on a theory that Plaintiff has abandoned.

Introduction of the letters would also be highly prejudicial to Defendants because Plaintiffs will argue that they show LACFD acknowledged its personnel violated her constitutional rights.  Courts have precluded such evidence and argument, recognizing that evidence of disciplinary proceedings poses a significant risk of prejudice because it could cause the jury to conclude that the employee was guilty of wrongdoing merely because their employer disciplined them.  *See, e.g., Maddox v. City of Los Angeles*, 792 F.2d 1408, 1417 (9th Cir. 1986) ("The prejudicial effect of this evidence was also arguably great. The jury might have inferred that Officer Harris was guilty of wrongdoing merely because the Police Department conducted disciplinary proceedings.  The jury might have given unfair or undue weight to this evidence or they might have been confused as to the relevance of this evidence.").

## 2. The LACFD Discipline Letters Are Inadmissible under Fed. R. Evid. 407

The LACFD letters are also inadmissible because they reflect subsequent remedial measures (i.e., discipline) taken by the Department.  Under Federal Rule of Evidence 407, "[w]hen measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove . . . culpable conduct."  Fed. R. Evid. 407.

The letters reflect the steps taken by LACFD to make sure the conduct complained of by Plaintiff does not happen again.  Courts have recognized that similar disciplinary proceedings are subsequent remedial measures in civil rights cases.  *See, e.g., Maddox*, 792 F.2d at 1417 (in section 1983 case based on police

use-of-force, Court properly excluded evidence from Internal Affairs investigation because "[t]he Internal Affairs investigation and measures taken by the defendant City were remedial measures taken after the incident").

## IV.    DEFENDANTS' CONCLUSION

For the foregoing reasons, Plaintiff's motion should be denied in its entirety.

DATED:  January 20, 2022          WILSON SONSINI GOODRICH & ROSATI
                                  Professional Corporation


                                  By: _____/s/ Luis Li_____
                                      LUIS LI
                                  Attorneys for Plaintiff VANESSA BRYANT


DATED:  January 20, 2022          OFFICE OF COUNTY COUNSEL


                                  By: _____/s/ Jonathan C. McCaverty_____
                                       JONATHAN C. McCAVERTY
                                  Attorneys for Defendant LOS ANGELES
                                  COUNTY SHERIFF'S DEPARTMENT

1

2

DATED:  January 20, 2022            MILLER BARONDESS, LLP

3

4

By: _____/s/ Louis R. Miller_____

5

LOUIS R. MILLER

6

Attorneys for Defendants COUNTY OF LOS

ANGELES, LOS ANGELES COUNTY FIRE

7

DEPARTMENT,   JOEY   CRUZ,   RAFAEL

MEJIA,   MICHAEL   RUSSELL,   RAUL

8

VERSALES, TONY IMBRENDA, and ARLIN

9

KAHAN

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT STATEMENT REGARDING PLAINTIFF'S            -28-
MOTION IN LIMINE #5: TO ADMIT
RECORDINGS AND LETTERS

# **ATTESTATION CLAUSE**

I, Luis Li, attest under L.R. 5-4.3.4(a)(2)(i) that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated:  January 20, 2022                                              /s/ Luis Li
                                                          Luis Li