1  JONATHAN C. McCAVERTY (State Bar No. 210922)
   Principal Deputy County Counsel
2  jmccaverty@counsel.lacounty.gov
3  OFFICE OF COUNTY COUNSEL
   General Litigation Division
4  500 West Temple Street, Suite 468
   Los Angeles, California 90012
5  Telephone:  (213) 974-1828
   Facsimile:   (213) 626-7446
6

7  Attorneys for Defendant
   LOS ANGELES COUNTY SHERIFF'S DEPARTMENT
8
9  [*Additional counsel continued on next page*.]

10              **UNITED STATES DISTRICT COURT**

11      **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

12

| 13 | VANESSA BRYANT, | **CASE NO. 2:20-cv-09582-JFW-E** |
|---|---|---|
| 14 | Plaintiff, | **JOINT STIPULATION** |
| 15 | v. | **REGARDING DEFENDANTS'** **MOTION *IN LIMINE* NO. 2 TO** |
| 16 | COUNTY OF LOS ANGELES, et al., | **EXCLUDE EXPERT TESTIMONY** **OF ADAM BERCOVICI** |
| 17 | Defendants. | Hearing Date:  February 11, 2022 |
| 18 | | Time:              8:00 a.m. |
| | | Place:             Courtroom 7A |
| 19 | | |
| 20 | | Assigned to Hon. John F. Walter and |
| 21 | | Magistrate Judge Charles F. Eick |
| 22 | | Pretrial Conference: February 4, 2022 |
| | | Trial: February 22, 2022 |

23

24

25

26

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1  [*Additional counsel, continued from previous page*:]

2  LOUIS R. MILLER (State Bar No. 54141)
3  smiller@millerbarondess.com
   MIRA HASHMALL (State Bar No. 216842)
4  mhashmall@millerbarondess.com
   JASON H. TOKORO (State Bar No. 252345)
5  jtokoro@millerbarondess.com
   CASEY B. SYPEK (State Bar No. 291214)
6  csypek@millerbarondess.com
7  MILLER BARONDESS, LLP
   1999 Avenue of the Stars, Suite 1000
8  Los Angeles, California 90067
   Telephone:   (310) 552-4400
9  Facsimile:   (310) 552-8400

10
   Attorneys for Defendants
11 COUNTY OF LOS ANGELES, LOS ANGELES COUNTY FIRE DEPARTMENT,
   JOEY CRUZ, RAFAEL MEJIA, MICHAEL RUSSELL, and RAUL VERSALES
12

13 LUIS LI (State Bar No. 156081)
   luis.li@wsgr.com
14 WILSON SONSINI GOODRICH & ROSATI
   633 West Fifth Street, Suite 1550
15 Los Angeles, California 90071
   Telephone:   (323) 210-2900
16 Facsimile:   (866) 974-7329

17
   Attorneys for Plaintiff
18 VANESSA BRYANT

19 CRAIG JENNINGS LAVOIE (State Bar No. 293079)
20 craig.lavoie@mto.com
   JENNIFER L. BRYANT (State Bar No. 293371)
21 jennifer.bryant@mto.com
   MUNGER, TOLLES & OLSON LLP
22 350 South Grand Avenue, Fiftieth Floor
   Los Angeles, California 90071-3426
23 Telephone:   (213) 683-9100
   Facsimile:   (213) 687-3702
24

25 Attorneys for Plaintiff
   VANESSA BRYANT
26

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1   **TO THE COURT, THE PARTIES AND THEIR COUNSEL OF RECORD:**

2        **PLEASE TAKE NOTICE** that on February 11, 2022 at 8:00 a.m., or as soon

3   thereafter as this matter may be heard in Courtroom 7A of the above-captioned

4   Court, located at 350 W. 1st Street, Los Angeles, California 90012, Defendants

5   County of Los Angeles (the "County"), Los Angeles County Sheriff's Department

6   ("LASD"), Los Angeles County Fire Department ("LACFD"), Joey Cruz, Rafael

7   Mejia, Michael Russell, and Raul Versales (collectively, "Defendants") will and

8   hereby do move *in limine* for an order barring Plaintiff Vanessa Bryant ("Plaintiff")

9   from introducing the expert testimony of Adam Bercovici at trial.

10       In accordance with the Court's Scheduling Order and Local Rule 7-3, the

11  parties met and conferred in good faith before filing this Motion.  (Declaration of

12  Casey B. Sypek ("Sypek Decl.") ¶¶ 2-3 & Ex. A.)  The parties respectfully submit

13  this joint stipulation setting forth their contentions.

14       This Motion is based upon this Notice of Motion, the Joint Stipulation, the

15  Sypek Declaration and exhibits thereto, the Request for Judicial Notice ("RJN") and

16  exhibits thereto, any oral argument the Court may entertain in considering this

17  Motion, and all pleadings and papers on file in this action.

18

19  DATED:  January 20, 2022          MILLER BARONDESS, LLP

20

21

22                                By:  ___/ s / Louis R. Miller___

23                                    LOUIS R. MILLER
                                      Attorneys for Defendants
24                                    COUNTY OF LOS ANGELES, LOS
                                      ANGELES COUNTY FIRE
25                                    DEPARTMENT, JOEY CRUZ, RAFAEL
                                      MEJIA, MICHAEL RUSSELL, and
26                                    RAUL VERSALES

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

# **TABLE OF CONTENTS**

**Page**

I. IDENTIFICATION OF MATTERS IN DISPUTE ................................................. 8

II. DEFENDANTS' CONTENTIONS AND POINTS OF AUTHORITIES ............ 9

    A.   The Court's Authority To Exclude Expert Witnesses At Trial ............. 9

    B.   Mr. Bercovici's Opinions Are Inadmissible Under Rule 702 ................ 9

        1.   Mr. Bercovici Is Not Qualified as an Expert on LASD or LACFD Policies and Practices ........................................ 9

        2.   Mr. Bercovici's Opinions Are Irrelevant To The *Monell* Claim ........................................................................................ 13

        3.   Mr. Bercovici's Speculative Opinions Will Not Assist the Jury ............................................................................................ 15

        4.   Mr. Bercovici's Opinions About Defendants' Intent Are Irrelevant ................................................................................. 16

        5.   Mr. Bercovici's Testimony Assessing Credibility Is Also Improper .................................................................................. 16

    C.   Mr. Bercovici's Testimony Should Be Excluded Under Rule 403 Because It Would Confuse The Jury And Cause Undue Prejudice ...... 17

III. DEFENDANTS' CONCLUSION ........................................................................ 18

IV. PLAINTIFF'S CONTENTIONS AND POINTS OF AUTHORITIES .............. 18

    A.   Mr. Bercovici Is Qualified to Provide Expert Testimony to Help the Jury Understand LASD and LACFD's Practices ........................... 19

    B.   Mr. Bercovici's Testimony Is Relevant to Plaintiff's Claims .............. 24

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### <u>FEDERAL CASES</u>

*Aramark Mgmt., LLC v. Borgquist*,
  No. 8:18-cv-01888-JLS-KESx, 2021 WL 864067 (C.D. Cal. Jan. 27,
  2021) ................................................................................................. 26

*Davis v. Mason County*,
  927 F.2d 1473 (9th Cir. 1991) .......................................................... 21

*Diviero v. Uniroyal Goodrich Tire Co.*,
  114 F.3d 851 (9th Cir. 1997) ............................................................ 16

*Dominguez v. City of Los Angeles*,
  No. CV 17-4557-DMG (PLAx), 2018 WL 6164278 (C.D. Cal. Oct. 9,
  2018) ................................................................................................. 13

*Doyle v. Chrysler Grp. LLC*,
  No. SACV 13-00620 JVS (ANx),  2015 WL 353993 (C.D. Cal. Jan. 21,
  2015) ................................................................................................. 23

*Gable v. Nat'l Broad. Co.*,
  727 F. Supp. 2d 815 (C.D. Cal. 2010) .......................................... 9, 13

*Georges v. Novartis Pharm. Corp.*,
  No. CV 06-05207 SJO (VBKx), 2013 WL 5217198 (C.D. Cal. Apr. 4,
  2013) ................................................................................................. 16

*Godinez v. Huerta*,
  No. 16-cv-0236-BAS-NLS, 2018 WL 2018048 (S.D. Cal. May 1,
  2018) ......................................................................................... 9, 17, 22

*Guidroz–Brault v. Mo. Pac. R.R. Co.*,
  254 F.3d 825 (9th Cir. 2001) ............................................................ 16

*Hangarter v. Provident Life & Accident Ins. Co.*,
  373 F.3d 998 (9th Cir. 2004) .................................................. 15, 19, 23

*Henry v. County of Shasta*,
  132 F.3d 512 (9th Cir. 1997) ............................................................ 25

*Hill v. Novartis Pharm. Corp.*,
  No. 1:06-cv-00939-AWI-DLB, 2012 WL 5451816 (E.D. Cal. Nov. 7,
  2012) ................................................................................................. 16

*Ikhinmwin v. Rendon*,
  No. SA-16-CV-184-OLG (HJB), 2017 WL 10768507 (W.D. Tex. Oct.
  2, 2017) ............................................................................................. 21

*In re Canvas Specialty, Inc.*,
  261 B.R. 12 (Bankr. C.D. Cal. 2001) ............................................... 10

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

*Jones v. Spentonbush-Red Star Co.*,
   155 F.3d 587 (2d Cir. 1998) ..................................................................... 14

*Lawson v. Trowbridge*,
   153 F.3d 368 (7th Cir. 1998) .................................................................... 22

*Lopez v. Chula Vista Police Dep't*,
   No. 07cv1272-WQH-BLM, 2010 WL 685014 (S.D. Cal. Feb. 18, 2010) ..... 19

*M.H. v. County of Alameda*,
   No. 11-cv-02868-JST, 2015 WL 54400 (N.D. Cal. Jan. 2, 2015) ...... 16, 26, 27

*Marsh v. County of San Diego*,
   680 F.3d 1148 (9th Cir. 2012) .......................................................... 13, 15, 25

*Molina v. City of Visalia*,
   No. 1:13-cv-01991-DAD-SAB, 2016 WL 8730723 (E.D. Cal. Sept. 16,
   2016) .......................................................................................................... 22

*Mukhtar v. Cal. State Univ., Hayward*,
   299 F.3d 1053 (9th Cir. 2002),
   *overruled on other grounds by Estate of Barabin v. AstenJohnson, Inc.*,
   740 F.3d 457 (9th Cir. 2014) ...................................................................... 24

*Perez v. City of Austin*,
   No. A-07-CA-044 AWA, 2008 WL 1990670 (W.D. Tex. May 5, 2008) ........ 21

*Primiano v. Cook*,
   598 F.3d 558 (9th Cir. 2010) ...................................................................... 24

*Shakur v. Schriro*,
   514 F.3d 878 (9th Cir. 2008) ...................................................................... 14

*Smith v. City of Hemet*,
   394 F.3d 689 (9th Cir. 2005) ................................................................. 21, 22

*Thomas v. City of Monroe*,
   157 F.3d 901 (5th Cir. 1998) ................................................................. 10, 22

*United States v. 87.98 Acres of Land More or Less in the Cty. of Merced*,
   530 F.3d 899 (9th Cir. 2008) ...................................................................... 10

*United States v. Amaral*,
   488 F.2d 1148 (9th Cir. 1973) .................................................................... 17

*United States v. Barnard*,
   490 F.2d 907 (9th Cir. 1973) ...................................................................... 17

*United States v. Benally*,
   541 F.3d 990 (10th Cir. 2008) .................................................................... 18

*United States v. Brown*,
   871 F.3d 532 (7th Cir. 2017) ...................................................................... 18

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

**6**

*United States v. Chang,*
   207 F.3d 1169 (9th Cir. 2000) ..................................................................9, 12

*United States v. Goode,*
   814 F.2d 1353 (9th Cir. 1987) .........................................................................28

*United States v. Miller,*
   874 F.2d 1255 (9th Cir. 1989) .........................................................................12

*United States v. Nelson,*
   No. 17-cr-00533-EMC-1, 2021 WL 75757 (N.D. Cal. Jan. 8, 2021) .............21

*United States v. Redlightning,*
   624 F.3d 1090 (9th Cir. 2010) ...........................................................................9

*Wisler v. City of Fresno,*
   No. CV F 06-1694 AWI SMS, 2008 WL 2880442 (E.D. Cal. July 22,
   2008)....................................................................................................................17

*Wyatt Tech. Corp. v. Malvern Instruments, Inc.,*
   No. CV 07-8298 ABC (MANx), 2010 WL 11505684 (C.D. Cal. Jan.
   25, 2010),
   *aff'd in part*, 526 F. App'x 761 (9th Cir. 2013) ..............................................14

## STATE CASES

*Lasarte v. Custom Performance,*
   No. BC514465, 2018 WL 4513110 (Cal. Super. Ct. July 9, 2018) ..........10, 23

## FEDERAL RULES

Fed. R. Evid. 403 .......................................................................................8, 9, 17, 18

Fed. R. Evid. 702 ........................................................................8, 9, 12, 15, 16, 19, 23

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

# I.

## **IDENTIFICATION OF MATTERS IN DISPUTE**

Plaintiff intends to offer her retained police practices expert, Adam Bercovici, to provide the following opinions at trial:

- That improper taking and sharing of photos of human remains is a problem so pervasive in law enforcement that it was "obvious" to LASD and LACFD that these practices would continue without explicit training;

- That there was no legitimate purpose for LASD personnel to take photos of the January 26, 2020 helicopter crash site;

- That LASD violated professional standards by ordering the deletion of all crash site photos to prevent their public dissemination; and

- That LASD's internal investigation deviated from professional standards.

(*See* Sypek Decl. Ex. G [Bercovici Report].)

Mr. Bercovici's opinions are inadmissible under Rule 702. They are based on his 30-year career at the City of Los Angeles in the Los Angeles Police Department ("LAPD"). Mr. Bercovici never worked for LASD, LACFD or the County; he never conducted or participated in an LASD investigation; and he does not have any ties to LASD or LACFD. Mr. Bercovici is not qualified to offer expert opinions on the policies, training, disciplinary or investigative practices in LASD or LACFD by "extrapolating" from his experience at LAPD. His opinions are based upon speculation—not upon scientific, technical or other specialized knowledge.

Mr. Bercovici's opinions are also not relevant to any viable theories underlying Plaintiff's *Monell* claim. He opines about issues Plaintiff abandoned or never raised in her complaint. His testimony should also be excluded because he improperly opines about Defendants' subjective intent and attempts to challenge the credibility of Defendants' witnesses. These are not proper expert opinions.

The risk of prejudice to Defendants also outweighs any probative value. Fed. R. Evid. 403. Jurors will give more weight to these "expert" opinions even though

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1  Mr. Bercovici lacks the knowledge and experience required for making them.

2  <center>**II.**</center>

3  <center>**DEFENDANTS' CONTENTIONS AND POINTS OF AUTHORITIES**</center>

4  **A.    The Court's Authority To Exclude Expert Witnesses At Trial**

5  A motion *in limine* may be used to exclude or limit an expert's testimony.

6  The proponent of the expert has the burden of proving admissibility of the expert's

7  proposed testimony by a preponderance of the evidence.  <u>Godinez v. Huerta</u>, No.

8  16-cv-0236-BAS-NLS, 2018 WL 2018048, at *2 (S.D. Cal. May 1, 2018).

9  Rule 702 governs the admissibility of expert testimony.  For an expert's

10  testimony to be admissible: (1) the expert must be qualified by knowledge, skill,

11  experience, training or education; (2) the expert's testimony must be relevant, i.e.,

12  must assist the trier of fact to understand the evidence or determine a fact in issue;

13  and (3) the expert's testimony must be reliable.  Fed. R. Evid. 702.

14  The Court has a "gatekeeping" function to ensure testimony meets these

15  requirements and has broad discretion in discharging this function.  <u>United States v.</u>

16  <u>Redlightning</u>, 624 F.3d 1090, 1111 (9th Cir. 2010).  Also, "[t]he court may exclude

17  relevant evidence if its probative value is substantially outweighed by a danger of []

18  unfair prejudice, confusing the issues, [or] misleading the jury."  Fed. R. Evid. 403.

19  **B.    Mr. Bercovici's Opinions Are Inadmissible Under Rule 702**

20  **1.    Mr. Bercovici Is Not Qualified as an Expert on LASD or LACFD**

21  **Policies and Practices**

22  "To qualify as an expert, a witness must have 'knowledge, skill, experience,

23  training, or education' relevant to such evidence or fact in issue."  <u>United States v.</u>

24  <u>Chang</u>, 207 F.3d 1169, 1172 (9th Cir. 2000) (citation omitted).  To determine if an

25  expert is qualified, the court must examine whether the witness's training,

26  experience or specialized knowledge is sufficiently related to the subject matter

27  upon which the witness offers an opinion.  <u>Gable v. Nat'l Broad. Co.</u>, 727 F. Supp.

28  2d 815, 833 (C.D. Cal. 2010).

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

<center>9</center>

"It is not enough that the proposed expert have expertise in an area of knowledge.  The expertise must be relevant to the determination of the facts in issue." _In re Canvas Specialty, Inc.,_ 261 B.R. 12, 19 (Bankr. C.D. Cal. 2001).  The proponent of the expert bears the burden of demonstrating that the expert is qualified.  _United States v. 87.98 Acres of Land More or Less in the Cty. of Merced,_ 530 F.3d 899, 904–05 (9th Cir. 2008).

"General experience as a police officer, standing alone, is not sufficient to qualify the officer as an expert in every area of law enforcement . . . ." _See, e.g., Thomas v. City of Monroe_, 157 F.3d 901, at *5 (5th Cir. 1998) (trial court properly found that police officer with over 20 years of experience was not qualified as an expert in area of police conduct relative to use of force, among other areas).

Prior to this case, Mr. Bercovici was precluded from doing exactly what Plaintiff is seeking to do here—give an expert opinion at trial that he has no qualifications to give.  In _Lasarte v. Custom Performance_, Mr. Bercovici was retained to provide an expert opinion on an investigation conducted by the Food and Drug Administration (FDA).  No. BC514465, 2018 WL 4513110, at *1 (Cal. Super. Ct. July 9, 2018).  The plaintiff moved _in limine_ to exclude his testimony because, as here, Mr. Bercovici never worked for the FDA or conducted an FDA investigation; had no personal involvement in the investigation at issue; had never investigated whether a business was involved in the illicit sale of nitrous oxide, the opinion he intended to offer at trial; and his extensive LAPD experience was not sufficiently related to the FDA.  (RJN Ex. A at 7.)  The court therefore precluded Mr. Bercovici from testifying at trial.

Here, Mr. Bercovici admits he lacks the requisite knowledge, experience and training to offer his opinions about LASD and LACFD policies and practices:

**_First_**, Mr. Bercovici intends to offer an opinion that LASD and LACFD knew about a pervasive practice of taking and sharing graphic photographs within the law enforcement community.  He bases this opinion on specific incidents he has

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

witnessed—showing off gruesome photos in locker rooms, creating "death books" and more.  (Sypek Decl. Ex. G [Bercovici Report] at 5.)  But these were all purported actions by LAPD officers—not LASD or LACFD personnel.

Mr. Bercovici admits he has no knowledge of anyone from LASD improperly taking or sharing photos of human remains prior to this case.  (Sypek Decl. Ex. Q [Bercovici Depo. Tr.] at 60:15-61:10; 84:14-18; 89:3-12.)  He never heard of LASD personnel sharing gruesome photos in a locker room; never saw a "death book" from anyone at LASD; and does not know of any LASD personnel who enjoy death images.  (*Id.* at 63:4-17; 75:1-7.)  Mr. Bercovici's specialized knowledge about the "pervasiveness" of this problem among LAPD is speculation by extrapolation.

***Second***, Mr. Bercovici intends to offer opinions on the policies, training, disciplinary practices and investigative decisions made by LASD—specifically: (1) that there was no legitimate purpose for LASD to take crash site photos[1]; (2) that LASD's decision to delete crash site photos to prevent any public dissemination deviated from professional standards; and (3) that LASD's inquiry and its Internal Affairs ("IA") investigation deviated from standard investigative protocols.  (Sypek Decl. Ex. G [Bercovici Report] at 1-2.[2])

These opinions are based on Mr. Bercovici's 30-year career in LAPD. Mr. Bercovici's knowledge of LAPD practices does not qualify him to render expert opinions on LASD/LACFD policies:

_____

[1] Although the introduction of Mr. Bercovici's report indicates that he will be opining about both LASD's and LACFD's supposed improper taking of crash site photos, he only offers an opinion about LASD taking photos.  (Sypek Decl. Ex. G [Bercovici Report] at 20-23.)  Aside from this introductory statement, Mr. Bercovici does not discuss LACFD personnel taking crash site photos anywhere in his report, at his deposition or in any declarations submitted to the Court.

[2] Per his testimony at deposition, Mr. Bercovici is not providing any opinion regarding LACFD's internal investigation into the taking and sharing of crash site photos—only LASD's.  (Sypek Decl. Ex. Q [Bercovici Depo. Tr.] at 32:4-8.)

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

- Mr. Bercovici never worked for LASD, LACFD or the County of Los Angeles.  (Sypek Decl. Ex. Q [Bercovici Depo. Tr.] at 13:4-12).

- He has never attended the LASD training academy.  (*Id.* at 20:19-24).

- He has never attended an LASD training regarding taking photos of accident/crime scenes or LASD's social media policy, and admittedly has no knowledge of what is said or what materials are provided during those trainings.  (*Id.* at 25:8-24.)

- He did not speak with anyone at LASD who was involved in responding to the crash site, the inquiry regarding taking and sharing of photos, or the IA investigation on which he opines.  (*Id.* at 37:3-18.)

- He has never been involved in an inquiry or IA investigation conducted by LASD and has no personal knowledge of LASD's internal rules and regulations regarding a sheriff's inquiry.  (*Id.* at 45:19-46:8.[3])

- He has no knowledge about LASD's internal policies regarding the requirements for documenting an investigation.  (*Id.* at 134:13-19 ["I don't know what the sheriffs do when they do that."].)

- He has no expertise in policies about the use of personal devices, nor did such policies even exist during his time at LAPD.  (*Id.* at 25:8-15; 68:7-23.)

Mr. Bercovici's career at LAPD does not give him a basis to opine on policies and practices of other law enforcement agencies about which he has no knowledge, experience or training.  He is not qualified under Rule 702: <u>United States v. Miller, 874 F.2d 1255, 1267-68 (9th Cir. 1989)</u> (witness not qualified to testify on recruitment tactics used by Soviet intelligence agency where he had no practical experience in Soviet recruitment and had not made any special study of the subject); *Chang*, 207 F.3d at 1172 (district court properly excluded opinion on authenticity of

---

[3] Mr. Bercovici claims to have personal knowledge of LASD's internal rules and regulations regarding IA investigations based on his familiarity with the handbook of guidelines for IA investigations issued by the U.S. Department of Justice in 2006. But Mr. Bercovici admits that this document was not issued by LASD, and that he does not know whether LASD actually implemented the 2006 DOJ guidelines. (Sypek Decl. Ex. Q [Bercovici Depo. Tr.] at 48:16-23; 50:12-51:1.)

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

certificate where expert had no formal training in identifying counterfeit securities); *Gable*, 727 F. Supp. 2d at 833-35 (copyright law expert not qualified to render opinion on similarities between TV show and screenplay without specialized training in literary analysis); <u>*Dominguez v. City of Los Angeles*, No. CV 17-4557-DMG (PLAx), 2018 WL 6164278, at *8-9 (C.D. Cal. Oct. 9, 2018)</u> (excluding opinion on trajectory of bullet where witness was not an expert in ballistics, medicine or biomechanics).[4]

Per his own testimony, no court has accepted Mr. Bercovici's opinion at trial regarding the propriety of a law enforcement investigation into any issue. (Sypek Decl. Ex. Q [Bercovici Depo. Tr.] at 24:4-10.)

### 2.   Mr. Bercovici's Opinions Are Irrelevant To The *Monell* Claim

**The "improper taking" opinion.** Mr. Bercovici's opinion that there was no legitimate purpose for County first responders to take crash site photos is irrelevant. The only basis for Plaintiff's *Monell* claim is <u>*Marsh v. County of San Diego*, 680 F.3d 1148, 1152 (9th Cir. 2012)</u>, which recognizes the distinct constitutional right to control "public dissemination" of a family member's death images.  There is no case law allowing Plaintiff to make a constitutional tort out of law enforcement *taking* crash site photos.  Even if Mr. Bercovici were qualified to give this opinion (he has no relevant experience, was not on the scene nor involved in the response), it is irrelevant because Plaintiff cannot predicate her *Monell* claim on taking photos.

In addition, Plaintiff cannot base her *Monell* or invasion of privacy claims on

---

[4] Plaintiff will argue that Mr. Bercovici has "collaborated" with other law enforcement agencies, including LASD; and that he has "extensive experience" in internal investigations.  (Dkt. No. 190-1 [Bercovici Decl.] ¶¶ 2-3.)  But these were all LAPD investigations.  They do not qualify him to opine on LASD.  Plaintiff will also argue that Mr. Bercovici's certifications from California POST (Peace Officer Standards & Training) qualify him to opine on LASD/LACFD procedures because "there is legislation that establishes POST as the . . . overseer of law enforcement in the State of California."  (Sypek Decl. Ex. Q [Bercovici Depo. Tr.] at 14-15.)  But Mr. Bercovici was unable to identify any such legislation.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1   just the "taking" of crash site photos. [*See generally* Dk. 54 (FAC).] Plaintiff did

2   not sue the LASD deputy who responded to the crash and took site photos, and it is

3   undisputed that the deputy was the only one who did so. And Plaintiff did not sue

4   any LACFD personnel who took crash site photos. [*See id.*] Instead, Plaintiff's

5   claims for invasion of privacy and *Monell* are against the individual LASD deputies

6   who received and/or showed the photos to others, and the County, LASD, and

7   LACFD for their alleged failure to train personnel about crash site photos. This is a

8   tacit admission by Plaintiff that "taking" photos is not actionable. Accordingly,

9   Mr. Bercovici's opinion that photos should never have been taken by LASD or

10  LACFD does not go to any issue to be decided by the jury at trial.

11      **"Pattern and practice" and "inadequate investigation" opinions.** Plaintiff

12  alleged three *Monell* theories in her First Amended Complaint ("FAC"): (i) failure

13  to train; (ii) failure to adequately investigate and discipline; and (iii) a County

14  "pattern of practice and/or custom of unnecessarily taking and sharing death

15  images." (FAC ¶¶ 81-86.) In her opposition to Defendants' Motion for Summary

16  Judgment, Plaintiff abandoned all but the training theory. [Dkt. No. 190 at 18:5-

17  20:9.] *See* <u>Shakur v. Schriro</u>, 514 F.3d 878, 892 (9th Cir. 2008) ("[P]laintiff has

18  'abandoned … claims by not raising them in opposition to [the defendant's] motion

19  for summary judgment.'" (second alteration in original) (citation omitted)).

20      Accordingly, Mr. Bercovici's opinions about the "pervasive" practice of

21  improper taking and sharing of death images and the adequacy of LASD's

22  investigation are not relevant to Plaintiff's claims. <u>Jones v. Spentonbush-Red Star</u>

23  <u>Co.</u>, 155 F.3d 587, 593 (2d Cir. 1998) ("[E]vidence offered to prove a matter not at

24  issue is immaterial."); <u>Wyatt Tech. Corp. v. Malvern Instruments, Inc.</u>, No. CV 07-

25  8298 ABC (MANx), 2010 WL 11505684, at *13 (C.D. Cal. Jan. 25, 2010) (granting

26  motion *in limine* precluding evidence about categories of trade secrets that no longer

27  remained after summary judgment), *aff'd in part*, 526 F. App'x 761 (9th Cir. 2013).

28      **The "improper deletion" opinion.** Mr. Bercovici's opinion about the

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1   propriety of Sheriff Villanueva's order to delete crash site photos is also irrelevant.

2   *First,* it is an improper back-door to Plaintiff's spoliation motion, wherein Plaintiff

3   contends this is an issue for the jury to decide.  Plaintiff plans to offer Mr. Bercovici

4   to decide this same issue for the jury as an "expert."  She cannot have it both ways.

5   This is not the proper role of an expert.[5]  *Second*, this opinion goes to LASD's post-

6   incident risk management decisions—not "public dissemination," which is the sole

7   basis for Plaintiff's *Monell* claim.  *Marsh*, 680 F.3d at 1152.

### 3.   Mr. Bercovici's Speculative Opinions Will Not Assist the Jury

9        Mr. Bercovici has done no personal investigation into this case and has never

10  even looked to see whether any County photographs of the crash site exist on the

11  Internet or otherwise.  (Sypek Decl. Ex. Q [Bercovici Depo. Tr.] at 72:15-19.)

12  Instead of basing his opinions on scientific, technical or other specialized

13  knowledge, as Rule 702 requires, Mr. Bercovici's opinions are based on

14  speculation—sometimes (as he testified) a "smell test" (*id.* at 124:15-125:16); other

15  times "picking up on" things (*id.* at 90:3-91:10).  For example:

16  - Based on the problem of taking/sharing death images he witnessed at
17    LAPD, Mr. Bercovici makes a "reasonable extrapolation . . . that this
     [problem] exists across law enforcement across the country including
18    [LASD]."  (*Id.* at 77:4-17; 93:19-94:17 ("I'm extrapolating that from my
     experience [at LAPD]").)  Mr. Bercovici admits that he "ha[s] no idea
19    how many—how often this behavior occurred" within the County.  (*Id.* at
20    83:14-84:13.)

21  - Mr. Bercovici speculates that the reason LASD did not receive prior
22    complaints about improper taking or sharing of photos of human remains

_____

24  [5] Plaintiff is also wrong on both fronts.  Mr. Bercovici's opinion—essentially, that
    LASD "spoliated" evidence—seeks to usurp the role of the Court, which is tasked
25  with deciding whether Defendants' deletion of crash site photos before any litigation
    was threatened or pending constitutes spoliation. This legal issue is for the Court to
26  decide, not for Mr. Bercovici and not for the jury.  *Hangarter v. Provident Life &*
27  *Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (an expert witness cannot give
28  an opinion on an ultimate issue of law).

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

is "because those photos are usually shared with other members of the law enforcement community or their family or friends, who are reluctant to report the misconduct."  (Dkt. No. 190-1 [Bercovici Decl. ¶ 15].)

Mr. Bercovici's speculative opinions are inadmissible under Rule 702. *Diviero v. Uniroyal Goodrich Tire Co*., 114 F.3d 851, 853 (9th Cir. 1997) (affirming district court's exclusion of expert opinions because they were speculative and did not assist the trier of fact); *Guidroz–Brault v. Mo. Pac. R.R. Co*., 254 F.3d 825, 829 (9th Cir. 2001) (expert testimony does not include speculation).

### 4.   **Mr. Bercovici's Opinions About Defendants' Intent Are Irrelevant**

Mr. Bercovici also intends to offer improper opinions on Defendants' state of mind and subjective intent:

- "Mr. Imbrenda's conduct is a textbook example of an individual showing off shocking imagery in an attempt to impress others with his exclusive access to a crime or accident scene."  (Sypek Decl. Ex. G [Bercovici Report] at 8; Dkt. No. 190-1 [Bercovici Decl.] ¶ 11.)

- Mr. Bercovici also offered an opinion regarding LASD's subjective intent in conducting its inquiry—"[T]here is no attempt to get to the bottom of anything here.  The only thing they're trying to do is to make it disappear." (*Id.* Ex. Q [Bercovici Depo. Tr.] at 128:22-129:22.)

These opinions are not based upon knowledge, skill, experience, training, or education; and they are not helpful to the jury.  They are plainly improper: *M.H. v. County of Alameda*, No. 11-cv-02868-JST, 2015 WL 54400, at *2 (N.D. Cal. Jan. 2, 2015) (an expert may not testify as to defendant's subjective state of mind); *Georges v. Novartis Pharm. Corp*., No. CV 06-05207 SJO (VBKx), 2013 WL 5217198, at *15 (C.D. Cal. Apr. 4, 2013) (precluding expert opinions on defendant's intent, motivations or state of mind); *Hill v. Novartis Pharm. Corp.*, No. 1:06-cv-00939-AWI-DLB, 2012 WL 5451816, at *2 (E.D. Cal. Nov. 7, 2012) (same).

### 5.   **Mr. Bercovici's Testimony Assessing Credibility Is Also Improper**

Mr. Bercovici also offers numerous opinions based on his assessment of the credibility of Defendants' witnesses.  For example:

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

- Mr. Bercovici discredits LASD deputies' testimony that, prior to this incident, they were not aware of any improper taking or sharing of death images:

  **Q:** "[Y]ou sitting here have acknowledged that the deposition testimony given by Los Angeles County Sheriff's deputies that you have reviewed has consistently been that prior to this incident the Sheriff's Department was not aware of any taking and sharing of any improper photos regarding human remains; correct?"

  **A:** "That's a difficult question to answer because in reading the depositions of – of the deputies involved, you know -- I mean to be frank, they all appear to be scrambling to a degree because they know they're in hot water . . . . So are they really going to cop out in their deposition that these photographs were shared?"  (*Id.* Ex. Q [Bercovici Depo. Tr.] at 90:13 – 91:10.)

- Mr. Bercovici also improperly discredits the testimony of LASD deputies that they wrote their investigation memoranda independently: "The memoranda were purportedly written by the crash-site personnel but were strikingly similar in their wording, suggesting that they followed a template or were directed to use particular language."  (*Id.* Ex. G [Bercovici Report] at 19; Ex. Q [Bercovici Depo. Tr.] at 134:25-137:22.)

Mr. Bercovici's opinions are based on how he judges the credibility of Defendants' witnesses, which is impermissible.  *United States v. Barnard*, 490 F.2d 907, 912 (9th Cir. 1973) ("Credibility . . . is for the jury— the jury is the lie detector in the courtroom."); *United States v. Amaral*, 488 F.2d 1148, 1153 (9th Cir. 1973) (expert testimony on the unreliability of eyewitness testimony properly excluded); *Wisler v. City of Fresno*, No. CV F 06-1694 AWI SMS, 2008 WL 2880442, at *4 (E.D. Cal. July 22, 2008) (excluding opinions inferring that officers were lying because credibility is an issue for the jury); *Godinez,* 2018 WL 2018048, at *6 (precluding expert from making credibility determinations).

## C. **Mr. Bercovici's Testimony Should Be Excluded Under Rule 403 Because It Would Confuse The Jury And Cause Undue Prejudice**

Allowing Mr. Bercovici to offer his irrelevant, speculative opinions would be

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1  profoundly confusing and misleading.  His testimony could lead the jury to believe

2  that certain *Monell* theories are viable where there is no authority to support them;

3  and that other *Monell* theories are still part of this case despite Plaintiff having

4  abandoned them.  Defendants will be forced either to ignore Mr. Bercovici's

5  irrelevant opinions and hope the jury understands the proper parameters of

6  Plaintiff's *Monell* claim, or spend valuable trial time introducing witnesses and

7  evidence to defend against nonexistent and abandoned claims.  It would also

8  confuse the jury regarding the fact that it is exclusively their role to determine which

9  witnesses are credible. *See United States v. Benally*, 541 F.3d 990, 995 (10th Cir.

10  2008) (expert testimony on credibility of other witnesses unduly influences the jury

11  and should be excluded under Rule 403).

12      Moreover, admission of Mr. Bercovici's testimony would be unduly

13  prejudicial to Defendants.  Mr. Bercovici has been on TV and has worked on other

14  high-profile cases.  Jurors could be swayed by his background and give undo weight

15  to his unfounded and unreliable testimony because he is called an "expert."

16      Accordingly, his testimony should be excluded under Rule 403.  *See United*

17  *States v. Brown*, 871 F.3d 532, 539 (7th Cir. 2017) (district court properly excluded

18  expert testimony where its admission "may have induced the jurors to defer to [the

19  expert's] conclusion rather than drawing their own").

## III.

## DEFENDANTS' CONCLUSION

22      For the foregoing reasons, Defendants respectfully request that Plaintiff be

23  precluded from introducing the expert testimony of Adam Bercovici at trial.

## IV.

## PLAINTIFF'S CONTENTIONS AND POINTS OF AUTHORITIES

26      Mr. Bercovici is well-qualified as an expert on the policies and practices of

27  Defendants at issue in this case, given his thirty-year career in law enforcement in

28  Los Angeles and specialized experience with police practices and internal

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

Case No. 2:20-cv-09582-JFW-E

investigations.  Mr. Bercovici's opinions go to key issues in this case, including whether it would have been obvious to Defendants that the absence of policies and training regarding photography of human remains would result in constitutional rights violations and whether the results of Defendants' investigation into the extent of misconduct and the containment of photos (which Defendants tout as a way to limit Plaintiff's damages) are to be trusted.  Those opinions are drawn from Mr. Bercovici's extensive experience and are helpful to the jury.  Defendants' myriad complaints against Mr. Bercovici go to the weight of his testimony, not its admissibility, and can each be dealt with on cross examination or by presenting contrary evidence.

**A.**  **Mr. Bercovici Is Qualified to Provide Expert Testimony to Help the Jury Understand LASD and LACFD's Practices**

Under Rule 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise."  Fed. R. Evid. 702.  In the context of "the reliability of non-scientific testimony," such as testimony on police practices and investigative standards, "reliability depends heavily on the *knowledge and experience* of the expert, rather than the methodology or theory behind it."  *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) (citations omitted); *Lopez v. Chula Vista Police Dep't*, No. 07cv1272-WQH-BLM, 2010 WL 685014, at *1 (S.D. Cal. Feb. 18, 2010).

Mr. Bercovici offers several key opinions based on his experience as a law enforcement officer with specialized knowledge in police practices and investigations:

- Defendants' unnecessary taking, sharing, and retaining photos of human remains is a pervasive problem in law enforcement, including in Los Angeles, and absent clear policies and training, it would have been foreseeable to any leader that these practices would continue;

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

- There was no legitimate purpose to take photographs that focused on human remains; and

- LASD's investigation was highly irregular and violated basic, commonly-accepted investigative standards, including by deleting rather than preserving, the evidence of misconduct, failing to investigate fully and meaningfully the allegations of misconduct or determine its full extent, and failing to hold the deputies accountable for their misconduct.

(*See* Sypek Decl. Ex. G [Bercovici Report at 1-2, 5, 10, 12, 16].)

Mr. Bercovici is qualified to render these opinions because of his extensive knowledge and expertise in law enforcement practices.  For over thirty years, Mr. Bercovici was a police officer with the LAPD, retiring in 2012 as a Lieutenant.  (*Id*. at 2.)  As an officer, he regularly responded to crime and incident scenes that contained human remains.  (*Id*. at 3-5.)  Mr. Bercovici personally observed repeated instances of police officers in Los Angeles taking and sharing photos of human remains for personal use in the presence of supervisors, including the regular practice of keeping "death books" as souvenirs.  (*Id*. at 5-7; *see also* Declaration of Craig Jennings Lavoie ("Lavoie Decl.") Ex. A at 59:3-60:2; 87:2-88:23.)  He has also had experience as a supervisor trying to put a stop to such practices.  (Sypek Decl. Ex. G [Bercovici Report] at 7; Lavoie Decl. Ex. A at 65:21-70:14; 73:8-25.)  Mr. Bercovici has also participated in many death investigations and is familiar with when photographs of remains are for legitimate law enforcement purposes.  (*See* Sypek Decl. Ex. G [Bercovici Report] at 3-4.)

During his tenure at the LAPD, Mr. Bercovici oversaw, and participated in, various assignments and roles that required him to determine proper office conduct—both as a supervisor and specifically in an internal investigative capacity. (*Id*.)  He has also collaborated with other law enforcement agencies on major crimes units and task forces.  (*Id*. at 4.)  For example, for seven years, Mr. Bercovici was the Officer-in-Charge of the Special Investigation Section ("SIS"), an investigative, surveillance, and apprehension team that collaborated with the Los Angeles County

JOINT STIPULATION RE DEFENDANTS' MIL NO. 2 TO EXCLUDE
EXPERT TESTIMONY OF ADAM BERCOVICI

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

Sheriff's Department, in addition to the FBI and the DEA.  (*Id.*; Lavoie Decl. Ex. A at 24:12-25:7; 46:15-47:16.)  He also holds advanced certifications with California's Peace Officer Standards & Training ("POST").  (*See* Lavoie Decl. Ex. A at 13:13-15:7.)

Mr. Bercovici has specialized knowledge regarding investigative standards for law enforcement, including in Los Angeles.  As a Lieutenant, he investigated and adjudicated complaints regarding officer conduct and recommended discipline for example, while in the Internal Affairs division, Mr. Bercovici presented disciplinary cases to the Police Board of Rights.  (*See* Sypek Decl. Ex. G [Bercovici Report] at 4.)

Courts generally uphold the reliability of law enforcement experts where the expert bases their testimony on substantial knowledge and experience.  *United States v. Nelson*, No. 17-cr-00533-EMC-1, 2021 WL 75757 (N.D. Cal. Jan. 8, 2021); *see also Ikhinmwin v. Rendon*, No. SA-16-CV-184-OLG (HJB), 2017 WL 10768507 (W.D. Tex. Oct. 2, 2017) (finding expert on police practices and training requirements qualified given thirty years of law enforcement experience, including knowledge of training requirements and internal investigations); *Perez v. City of Austin*, No. A-07-CA-044 AWA, 2008 WL 1990670, at *5 (W.D. Tex. May 5, 2008) (expert testimony can be "based mainly on his personal observations, professional experience, education and training." (citation omitted)).  In addition, expert testimony on police practices and standards is generally found to be admissible in cases concerning police misconduct, including where the expert's opinion is based on his experiences as a police officer with police training policies and standards like POST.  *See, e.g.*, *Smith v. City of Hemet*, 394 F.3d 689, 703 (9th Cir. 2005) (en banc) (expert qualified to submit report regarding training of police dogs and handlers, relying on California's Peace Officer Standards and Training); *Davis v. Mason County*, 927 F.2d 1473, 1484-85 (9th Cir. 1991) (allowing testimony by police practices expert that defendant officer violated law enforcement

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

standards); *Lawson v. Trowbridge*, 153 F.3d 368, 376 (7th Cir. 1998) ("[k]nowledge of police training is specialized" and testimony about that training can be helpful even when the testimony "cover[s] matters that are within the average juror's comprehension") (citation omitted)).

As a result, Mr. Bercovici has the necessary experience to testify in this case about the widespread practice among Los Angeles first responders of taking, sharing, and retaining photographs of human remains; whether there would be a legitimate purpose for the photos taken by first responders in this case; and whether Defendants' investigation in this case deviated from accepted standards. *See, e.g.*, *Smith*, 394 F.3d at 703 (citing expert testimony on "whether the officers' conduct comported with law enforcement standards, . . . rel[ying] upon [POST]"); *Molina v. City of Visalia*, No. 1:13-cv-01991-DAD-SAB, 2016 WL 8730723, at *6 (E.D. Cal. Sept. 16, 2016) ("[P]laintiffs' expert will be allowed to express an opinion on whether the officers' conduct, after they got out of their vehicle, was consistent with POST and constituted part of the totality of circumstances that led to their use of deadly force.").

The cases cited by Defendants are not to the contrary, and actually support Mr. Bercovici's qualifications to offer his opinions. *See, e.g.*, *Godinez v. Huerta*, No. 16-cv-0236-BAS-NLS, 2018 WL 2018048, at *3-4 (S.D. Cal. May 1, 2018) (allowing expert to opine "premised on his experience concerning police training standards and policies"; noting that the court would have allowed testimony on failure to investigate if plaintiff had pursued a *Monell* claim such as the one here). Defendants cite *Thomas v. City of Monroe*, 157 F.3d 901, at *5 (5th Cir. 1998), but the expert proffered in that case on use of force testified that he had not dealt with the use of force and did not have any special training in it. *Id.* Here, Mr. Bercovici plainly has experience in law enforcement practices and investigative standards, including the practice of taking and sharing photos of victims' remains and standards for investigating officer misconduct.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1   In addition, Defendants cite *Lasarte v. Custom Performance*, No. BC 514465,
2   2018 WL 4513110 (Cal. Super. Ct. July 9, 2018), in which Mr. Bercovici was
3   precluded because as a law enforcement expert, he lacked specific experience with
4   the Food and Drug Administration ("FDA") and its investigative procedures.  But
5   this case involves a law enforcement agency and the very kinds of investigative
6   standards with which Mr. Bercovici is well-versed.  Also, unlike in *Lasarte*, Mr.
7   Bercovici has specific experience with LASD.  *Lasarte* simply reinforces the
8   importance of having expertise and specialized knowledge in a specific subject
9   matter, which Mr. Bercovici has.  Defendants do not point to any authority that
10   supports the notion that experts must have direct experience with each entity they
11   opine about, regardless of their general knowledge and experience.

12   Just because Mr. Bercovici was not directly employed by LASD or LACFD
13   does not mean he is not familiar with the practices of law enforcement officers in
14   Los Angeles or the professional standards that apply to law enforcement officials,
15   particularly those in the same city.  Mr. Bercovici's opinions are based on his
16   personal knowledge as a 30-year veteran officer in Los Angeles, as well as his
17   experience working with multiple agencies, including the Sheriff's Department, and
18   with investigative standards that are used across law enforcement entities.  (*See*
19   Lavoie Decl. Ex. A at 77:12-80:14; 94:2-21.)  Mr. Bercovici's testimony is reliably
20   based upon his knowledge and experience.

21   Defendants nitpicking of the exact overlap between Mr. Bercovici's
22   experience and the agencies and conduct at issue here at most go to the weight of his
23   testimony, not its admissibility.  *See, e.g.*, *Doyle v. Chrysler Grp. LLC*, No. SACV
24   13-00620 JVS (ANx), 2015 WL 353993, at *5 (C.D. Cal. Jan. 21, 2015) ("the
25   admissibility hurdle for qualifications is relatively low" (citing *Hangarter*, 373 F.3d
26   at 1015-16)).  Defendants are free to pursue these lines of questioning on cross, but
27   Mr. Bercovici has demonstrated that he is qualified as a law enforcement expert
28   under Rule 702.

**B.**   **Mr. Bercovici's Testimony Is Relevant to Plaintiff's Claims**

Expert testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry.  *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010).  "Encompassed in the determination of whether expert testimony is relevant is whether it is helpful to the jury, which is the 'central concern' of Rule 702." *Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1063 n.7 (9th Cir. 2002) (citations omitted), *overruled on other grounds by Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457 (9th Cir. 2014).

Mr. Bercovici's opinion that the unnecessary taking, sharing, and retaining photos of human remains is a pervasive problem in law enforcement in Los Angeles—and that, absent clear policies and training backed by discipline, it would have been foreseeable to any leader that these practices would continue—is plainly relevant to Plaintiff's *Monell* claim.  In assessing that claim, the jury must consider whether Defendants had a "widespread or longstanding practice or custom" (9th Cir. Model Jury Instr. Civ. 9.5 (2017 ed.)), or whether Defendants were "deliberately indifferent" to the "substantial risk that [their] policies were inadequate to prevent violations of law by [their] employees" or to "the known or obvious consequences of [their] failure to train" (*id.* No. 9.8).  That deliberate indifference may be proven by showing that the Defendants were "on actual or constructive notice" of the problem.  *Id.*[6]  Mr. Bercovici's opinions go directly to these issues.

Mr. Bercovici's opinion that there was no legitimate purpose to take photographs that focused on human remains is plainly relevant to whether Defendants' conduct shocked the conscience and violated the Fourteenth Amendment.  *See Marsh v. County of San Diego*, 680 F.3d 1148, 1155 (9th Cir.

---

[6] There is no merit to Defendants' assertion that Plaintiff somehow waived some of her theories of *Monell* liability by not raising every possible argument when she successfully opposed summary judgment.  (*See* Joint Stmt. to Defs' Mot. *in Limine* No. 5, at 19-20.)

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

2012) ("This intrusion into the grief of a mother over her dead son—without any legitimate governmental purpose—'shocks the conscience' and therefore violates Marsh's substantive due process right").  Defendants' insistence that only widespread public dissemination can violate the Fourteenth Amendment is inconsistent with *Marsh*, where the misconduct involved photocopying an image and sending it to only two recipients who did not share the photo further or publish it.  *See id.* at 1152.

Finally, Mr. Bercovici's opinions that LASD's investigation was highly irregular and violated basic, commonly-accepted investigative standards—including by deleting rather than preserving evidence of misconduct, failing to investigate fully and meaningfully the allegations of misconduct or determine its full extent, and failing to hold the deputies accountable—goes to three key issues:

First, Defendants argue that their investigation determined and ensured that there was no widespread public dissemination of the death photos and that all copies were secured and destroyed, such that Plaintiff can have no reasonable fear of the photos going viral on the internet.  Whether Defendants are to be believed is a key question for the jury.  Mr. Bercovici's opinions cast significant doubt on the thoroughness and efficacy of Defendants' investigation, supporting the conclusion that Defendants' purported findings are not to be trusted; that dissemination was far more extensive than Defendants admit; and that the photos were never fully contained and could resurface at any moment.

Second, Mr. Bercovici's opinions go to whether LASD's decision to eschew a real investigation and grant amnesty to officers in exchange for deleting evidence demonstrates LASD's deliberate indifference to these violations and practices of tolerating them.  *See Henry v. County of Shasta*, 132 F.3d 512, 519 (9th Cir. 1997) ("post-event evidence is not only admissible for purposes of proving the existence of a municipal defendant's policy or custom, but is highly probative with respect to that inquiry"; jury may infer a "preexisting policy of deliberate indifference to the

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

dangerous recklessness of its . . . officers"). As Mr. Bercovici explains: "Based on my experience with internal law enforcement investigations, . . . the manner in which Sheriff Villanueva handled the Department's self-described 'inquiry' into the improper photos would have sent a signal to law enforcement officers that even egregious sharing of photos of victims' remains would go unpunished." (*See* Sypek Decl. Ex. G [Bercovici Report] at 21.)

Third, Mr. Bercovici's opinions on the irregularity of Defendants' deletion and loss of evidence will inform the jury's view of what inferences to draw from Defendants' spoliation of the direct forensic evidence of the extent of their misconduct—including whether the spoliated evidence was likely to be harmful to Defendants. *Aramark Mgmt., LLC v. Borgquist*, No. 8:18-cv-01888-JLS-KESx, 2021 WL 864067, at *13 (C.D. Cal. Jan. 27, 2021) (granting adverse inference instruction where "most important evidence" was "irretrievably lost" due to purposeful deletion "to prevent [Plaintiff] from using [it] in the litigation that the [Defendants] were anticipating"); Lavoie Decl. Ex. A at 110:12-113:12; 124:23-126:23.)

Mr. Bercovici has identified 17 major irregularities in the Sheriff's Department's purported investigation, and one reasonable inference from the irregularities is that the Sheriff's Department's investigation was in reality a self-interested attempt to destroy evidence and cover-up misconduct.

### A.    Mr. Bercovici Does Not Offer Any Improper Testimony

Defendants also claim that Mr. Bercovici's testimony about either the subjective intent of various defendants, or their credibility, are improper. No such testimony is offered here, and Defendants' cases in inapposite. For example, in *M.H. v. County of Alameda*, No. 11-cv-02868-JST, 2015 WL 54400 (N.D. Cal. Jan. 2, 2015), the court held that an expert could not testify about the defendant's subjective state of mind—reasonableness—because that went to the ultimate legal conclusion regarding deliberate indifference. *Id.* at *2. The court went on to

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

explain, however, that experts *can* opine as to appropriate standards of care or generally accepted law enforcement standards, customs, or practices, including what officers are expected to know. *Id.* For this reason, *M.H.* undermines Defendants' position because it makes clear the difference between opining on subjective mental state (which the court did not allow) and opining on what defendants "'knew' or 'should have known'" relative to professional standards (which is allowed). *Id.*

Here, Mr. Bercovici used the example of Mr. Imbrenda showing off the photos to illustrate the culture he personally witnessed throughout his 30-year career. He was not offering an opinion on Mr. Imbrenda's actual state of mind or intent—just that Mr. Imbrenda's conduct in showing the photos to colleagues and their spouses at a public event was consistent with behavior he had personally witnessed as an officer in the field. Mr. Bercovici's testimony provides insight into why photos like that are kept and circulated. He also states that, in his experience, this behavior is the result of a lack of specific training or an explicit policy against taking and sharing photos. Mr. Bercovici focuses his testimony on whether the behavior comported with relevant standards.

Similarly, Defendants claim that Mr. Bercovici cannot opine on Defendants' intent regarding the instruction to delete the photos after the crash. That Defendants deleted the evidence and disposed of many relevant devices is not in dispute. Defendants claim that any destruction of evidence was in an effort to contain the photos—which is disputed. Mr. Bercovici's testimony sheds light on whether deleting the evidence—instead of capturing, preserving, and analyzing it—was proper procedure in the first place. Mr. Bercovici is again not speaking to the subject intent of Defendants, but rather comparing what Defendants did to procedure that he is familiar with through his experience and training. Mr. Bercovici's expertise will help the jury appreciate professional investigative standards and determine whether Defendants' actions comported with them.

Finally, Defendants argue that Mr. Bercovici improperly assesses Defendants'

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1   credibility when criticizing their investigative process regarding the complaint.

2   While credibility is a matter for the jury, *United States v. Goode*, 814 F.2d 1353,

3   1355 (9th Cir. 1987), Mr. Bercovici does not submit any improper credibility

4   determinations.  Defendants argue that Mr. Bercovici improperly discredits officer

5   testimony that (i) the department had never received complaints regarding the

6   improper taking and sharing of crime scene photos; and (ii) that officers

7   independently wrote their incident memos.  But Mr. Bercovici is simply testifying to

8   his personal experience regarding the frequency of receiving these kinds of

9   complaints.  He provides helpful context that, in his role as a supervisor and internal

10   investigator, he did not receive any complaints about inappropriate photos, despite

11   observing that it was a problem.  For example, Mr. Bercovici explains that many

12   law enforcement officials show these photos to other members of law enforcement,

13   or to close family and friends—all individuals who are unlikely to report the

14   misconduct for fear of getting the officer in trouble.

15         Mr. Bercovici also observed that the memos written by officers were all

16   similarly worded, and that in his experience, that type of coordination requires a

17   centralized effort or instruction.  This testimony is not based on speculation, but

18   rather is grounded in Mr. Bercovici's experience in overseeing internal

19   investigations from his time adjudicating matters of misconduct.  In a case

20   highlighting police misconduct, his expertise regarding the typical practices

21   surrounding interviews of officers and the type of documentation collected and

22   recorded is helpful for the jury to understand the relevant standard.

23

24

25

26

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1  DATED: January 20, 2022      OFFICE OF COUNTY COUNSEL

2

3

4                                   By:        */ s / Jonathan C. McCaverty*

5                                        JONATHAN C. McCAVERTY
                                        Attorneys for Defendant

6                                        LOS ANGELES COUNTY SHERIFF'S
                                        DEPARTMENT

7

8  DATED: January 20, 2022      MILLER BARONDESS, LLP

9

10

11                                   By:        */ s / Louis R. Miller*

12                                        LOUIS R. MILLER
                                        Attorneys for Defendants

13                                        COUNTY OF LOS ANGELES, LOS
                                        ANGELES COUNTY FIRE

14                                        DEPARTMENT, JOEY CRUZ, RAFAEL
                                        MEJIA, MICHAEL RUSSELL, and

15                                        RAUL VERSALES

16

17

18  DATED: January 20, 2022      WILSON SONSINI GOODRICH & ROSATI

19

20

21                                 By:        */ s / Luis Li*

22                                          LUIS LI
                                        Attorneys for Plaintiff

23                                        VANESS BRYANT

24

25

26

27

28

Case No. 2:20-cv-09582-JFW-E
JOINT STIPULATION RE DEFENDANTS' MIL NO. 2 TO EXCLUDE
EXPERT TESTIMONY OF ADAM BERCOVICI

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1    DATED:  January 20 , 2022         MUNGER TOLLES & OLSON LLP

2

3

4                                      By:    _____/ s / Craig Jennings Lavoie_____
                                              CRAIG JENNINS LAVOIE
5                                             JENNIFER L. BRYANT
                                              Attorneys for Plaintiff
6                                             VANESSA BRYANT

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

Case No. 2:20-cv-09582-JFW-E
JOINT STIPULATION RE DEFENDANTS' MIL NO. 2 TO EXCLUDE
EXPERT TESTIMONY OF ADAM BERCOVICI

## **SIGNATURE ATTESTATION**

The other signatories listed, and on those behalf the filing is submitted, concur in the filing's content and have authorized the filing.

DATED:  January 20, 2022          MILLER BARONDESS, LLP


By:  _____/ s / Louis R. Miller_____
LOUIS R. MILLER
Attorneys for Defendants
COUNTY OF LOS ANGELES, LOS
ANGELES COUNTY FIRE
DEPARTMENT, JOEY CRUZ, RAFAEL
MEJIA, MICHAEL RUSSELL, and
RAUL VERSALES

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

Case No. 2:20-cv-09582-JFW-E
JOINT STIPULATION RE DEFENDANTS' MIL NO. 2 TO EXCLUDE
EXPERT TESTIMONY OF ADAM BERCOVICI