JONATHAN C. McCAVERTY (State Bar No. 210922)
Principal Deputy County Counsel
jmccaverty@counsel.lacounty.gov
OFFICE OF COUNTY COUNSEL
General Litigation Division
500 West Temple Street, Suite 468
Los Angeles, California 90012
Telephone:   (213) 974-1828
Facsimile:    (213) 626-7446

Attorneys for Defendant
LOS ANGELES COUNTY SHERIFF'S DEPARTMENT

[*Additional counsel continued on following page.*]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| CHRISTOPHER L. CHESTER, | **CASE NO. 2:20-cv-10844-JFW-E** |
| Plaintiff, | **DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW** |
| v. | |
| COUNTY OF LOS ANGELES, et al., | Pretrial Conf.: February 4, 2022<br>Time:            8:00 a.m. |
| Defendants. | |
| | Trial Date:     February 4, 2022<br>Time:            8:30 a.m. |
| | Assigned to Hon. John F. Walter and Magistrate Judge Charles F. Eick |

548599.1

1 | [*Additional counsel, continued from previous page.*]

2

3 | LOUIS R. MILLER (State Bar No. 54141)
smiller@millerbarondess.com
MIRA HASHMALL (State Bar No. 216842)
JASON H. TOKORO (State Bar No. 252345)
CASEY B. SYPEK (State Bar No. 291214)
MILLER BARONDESS, LLP
1999 Avenue of the Stars, Suite 1000
Los Angeles, California 90067
Telephone:  (310) 552-4400
Facsimile:  (310) 552-8400

Attorneys for Defendants
COUNTY OF LOS ANGELES, LOS ANGELES COUNTY FIRE DEPARTMENT,
JOEY CRUZ, RAFAEL MEJIA, MICHAEL RUSSELL, RAUL VERSALES,
ARLIN KAHAN, and TONY IMBRENDA

548599.1

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ............................................................................................ 9

II.     CLAIMS ........................................................................................................ 10

        A.      Identification And Elements Of Claims ............................................. 10

                1.      Claim 1: 42 U.S.C. § 1983 (*Monell*), Violation of
                        Fourteenth Amendment Against the Entity Defendants ............ 10

                2.      Claim 2: Negligence Against the Individual Defendants ........... 11

                3.      Claim 3: Negligence Against the Entity Defendants ................. 12

                4.      Claim 4: Invasion of Privacy Against the Individual
                        Defendants ................................................................................. 13

                5.      Claim 5: Invasion of Privacy Against the Entity
                        Defendants ................................................................................. 14

III.    KEY EVIDENCE IN SUPPORT OF DEFENDANTS' OPPOSITION
        TO PLAINTIFF'S CLAIMS .......................................................................... 14

        A.      Claim 1: 42 U.S.C. § 1983 (*Monell*), Violation Of Fourteenth
                Amendment Against The Entity Defendants ...................................... 14

        B.      Claim 2: Negligence Against Deputy Defendants .............................. 16

        C.      Claim 3: Negligence Against The Entity Defendants ......................... 18

        D.      Claim 4: Invasion Of Privacy Against the Individual Defendants ....... 18

        E.      Claim 5: Invasion of Privacy Against The Entity Defendants ............ 19

IV.     AFFIRMATIVE DEFENSES, ELEMENTS, AND EVIDENCE IN
        SUPPORT THEREOF .................................................................................... 19

        A.      Affirmative Defense 3: Discretionary Act Immunity .......................... 19

        B.      Affirmative Defense 4: No Vicarious Liability ................................... 20

        C.      Affirmative Defense 6: Good Faith .................................................... 21

        D.      Affirmative Defense 11: No Standing ................................................. 21

        E.      Affirmative Defense 17: Superseding and Intervening Acts ............... 22

        F.      Affirmative Defense 26: Qualified Immunity ..................................... 23

V.      ADDITIONAL ISSUES ................................................................................. 25

        A.      Bifurcation ......................................................................................... 25

B.     Anticipated Evidentiary Issues ................................................ 27

C.     Identification of Issues of Law ................................................ 27

D.     Jury Trial ................................................................................ 27

E.     Fees ......................................................................................... 27

F.     Abandoned Claims and Defenses ............................................ 27

G.     Witness and Exhibit Lists ....................................................... 29

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Chron. Pub. Co. v. Legrand,*
    1992 WL 420808 (N.D. Cal. Sept. 3, 1992) ...................................................18

*City of Canton, Ohio v. Harris,*
    489 U.S. 378 (1989) ...........................................................................................11

*Connick v. Thompson,*
    563 U.S. 51 (2011) .............................................................................................11

*Crabbs v. Pitts,*
    No. 2:16-cv-0387, 2018 WL 5262397 (S.D. Ohio Oct. 23, 2018) ................28

*Dupris v. McDonald,*
    2012 WL 210722 (D. Ariz. Jan. 24, 2012).....................................................23

*Flores v. County of Los Angeles,*
    758 F.3d 1154 (9th Cir. 2014)..........................................................................11

*Gomez v. Toledo,*
    446 U.S. 635 (1980) ...........................................................................................21

*Harlow v. Fitzgerald,*
    457 U.S. 800 (1982) ...........................................................................................23

*Hassan v. Facebook, Inc.,*
    No. 19-cv-01003-JST, 2019 WL 3302721 (N.D. Cal. July 23, 2019)...........13

*In re EPD Inv. Co., LLC,*
    2019 WL 4233575 (C.D. Cal. June 4, 2019) ..................................................25

*Jinro Am. Inc. v. Secure Invs., Inc.,*
    266 F.3d 993 (9th Cir. 2001)............................................................................25

*Lamorie v. Davis,*
    485 F. Supp. 3d 1065 (D. Ariz. 2020).............................................................24

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ...............................................................................11, 13, 21

*Marsh v. County of San Diego,*
    680 F.3d 1148 (9th Cir. 2012)...................................................................passim

*McClain v. SBC Sheriff's Dep't,*
    No. ED CV 17-01178-CJC (PLA), 2018 WL 3105248 (C.D. Cal. June
    21, 2018)..............................................................................................................28

*Molina v. J.C. Penney Co., Inc.,*
    2015 WL 183899 (N.D. Cal. Jan. 15, 2015) .............................................11, 14

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

*Olejnik v. England,*
    147 F. Supp. 3d. 763 (W.D. Wis. 2015)............................................................24

*Orff v. City of Imperial,*
    No. 17-CV-0116 W (AGS), 2017 WL 5569843 (S.D. Cal. Nov. 17,
    2017)....................................................................................................................13

*Panoyan v. Regalo Int'l LLC,*
    2019 WL 8758897 (C.D. Cal. Oct. 25, 2019) ....................................................11

*Pearson v. Callahan,*
    555 U.S. 223 (2009) ...........................................................................................23

*Probodanu v. Sessions,*
    387 F. Supp. 3d 1031 (C.D. Cal. 2019)........................................................11, 22

*Romero v. Kitsap County,*
    931 F.2d 924 (9th Cir. 1991) ..............................................................................23

*Saba v. Arizona,*
    2018 WL 10436615 (D. Ariz. April 17, 2018) ...................................................23

*Scheuer v. Rhodes,*
    416 U.S. 232 (1974) ...........................................................................................21

*Shakur v. Schriro,*
    514 F.3d 878 (9th Cir. 2008) ..............................................................................28

*Sorrels v. McKee,*
    290 F.3d 965 (9th Cir. 2002)...............................................................................23

*TransUnion LLC v. Ramirez,*
    141 S. Ct. 2190 (2021) ................................................................................passim

*Trevino v. Gates,*
    99 F.3d 911 (9th Cir. 1996).................................................................................11

*Tsao v. Desert Palace, Inc.,*
    698 F.3d 1128 (9th Cir. 2012).............................................................................11

*Viasphere Int'l, Inc. v. Vardanyan,*
    2017 WL 1065191 (N.D. Cal. Mar. 21, 2017) ...................................................17

*Wood v. Strickland,*
    420 U.S. 308 (1975) ...........................................................................................21

**STATE CASES**

*Brown v. USA Taekwondo,*
    11 Cal. 5th 204 (2021).........................................................................................27

*Catsouras v. Dep't of California Highway Patrol,*
    181 Cal. App. 4th 856 (2010)...............................................................11, 13, 26

*Connelly v. State*,
   3 Cal. App. 3d 744 (1970) ................................................................20

*Glickman v. Glasner*,
   230 Cal. App. 2d 120 (1964) ............................................................20

*Hill v. Nat'l Collegiate Athletic Ass'n*,
   7 Cal. 4th 1 (1994) ..........................................................13, 19, 26

*Ignat v. Yum! Brands, Inc.*,
   214 Cal. App. 4th 808 (2013) ..........................................................13

*Kemmerer v. County of Fresno*,
   200 Cal. App. 3d 1426 (1988) ..........................................................20

*Lawson v. Safeway Inc.*,
   191 Cal. App. 4th 400 (2010) ..........................................................22

*Mezger v. Bick*,
   66 Cal. App. 5th 76 (2021) ..............................................................13

*Padilla v. Rodas*,
   160 Cal. App. 4th 742 (2008) ..........................................................11

*Perez v. City of Huntington Park*,
   7 Cal. App. 4th 817 (1992) ..............................................................12

*Richards v. Dep't of Alcoholic Beverages Control*,
   139 Cal. App. 4th 304 (2006) ..........................................................21

*Soto v. BorgWarner Morse TEC Inc.*,
   239 Cal. App. 4th 165 (2015) ..........................................................17

*Williams v. State*,
   34 Cal. 3d 18 (1983) ......................................................................16

**FEDERAL STATUTES**

42 U.S.C. § 1983 ................................................................................passim

42 U.S.C. § 1988 ..................................................................................27

**STATE STATUTES**

Cal. Civ. Code § 1708.7 ........................................................................13

Cal. Civ. Code § 1714 ............................................................................16

Cal. Civ. Code § 3294(a) ..................................................................12, 14

Cal. Civ. Code § 3294(c) ........................................................................14

Cal. Civ. Proc. Code § 129(a) ...................................................................... 10

Cal. Gov't Code § 815 ...................................................................... 12, 14, 21

Cal. Gov't Code § 815.2 ................................................................................ 21

Cal. Gov't Code § 815.2(a) ........................................................................... 14

Cal. Gov't Code § 820.2 ................................................................................ 19

**<u>OTHER AUTHORITIES</u>**

RESTATEMENT (SECOND) OF TORTS § 652D cmt. a ....................................... 13

# I.   **INTRODUCTION**

This lawsuit arises out of a horrific accident that took nine innocent lives, including the wife and daughter of Plaintiff, Christopher Chester.  The County of Los Angeles ("County") did not cause this accident.  Both the County's Fire Department and Sheriff's Department ("LACFD" and "LASD," respectively) worked tirelessly to get firefighters and paramedics on the scene quickly despite dense fog and low visibility.  Their work involved stopping brush fires from spreading, setting a perimeter so that first responders could work while keeping media, hikers, bikers, and fans out, and providing security so that federal agencies and the coroner could conduct their investigations and remove helicopter parts and bodies in the rough terrain.

Plaintiff alleges three different claims against the County, LACFD, LASD, and LACFD and LASD personnel for civil rights violation under 42 U.S.C. section 1983 ("Section 1983"), negligence, and invasion privacy. Despite the multitude of defendants and claims, the key issue at trial is this: Was there public dissemination of County (LASD or LACFD) photos depicting the human remains of Plaintiff's deceased family members?

The evidence at trial will establish that the answer to this question is no. Plaintiff will be unable to answer this threshold question in the affirmative, which undermines all of his claims.  As such, judicial economy will be best served by bifurcating this trial into two phases so that the jury must answer this threshold question before turning to damages and liability for the entity Defendants under Section 1983.

Pursuant to Local Rule 16-4, Defendants hereby submit this Memorandum of Contentions of Law and Fact detailing the claims, defenses, and key evidence that will be the subject of this trial.

## II.    CLAIMS

### A.    Identification And Elements Of Claims

#### 1.    Claim 1: 42 U.S.C. § 1983 (*Monell*), Violation of Fourteenth Amendment Against the Entity Defendants

Plaintiff alleges that Defendants violated his Constitutional rights under the Section 1983 and the Fourteenth Amendment by taking and purportedly sharing photos of his deceased family members.  In order to prevail on his claim, Plaintiff must first establish a constitutional violation.  To do this, Plaintiff must show that (1) the Individual Defendants violated his due process right by publicly disseminating death images of his family members; (2) the Individual Defendants were acting under color of law; and (3) that the widespread dissemination of images of Plaintiff's deceased relatives shocks the conscience and offends the community's sense of fair play and decency.  *See Marsh v. County of San Diego*, 680 F.3d 1148, 1152, 1159-60 (9th Cir. 2012); Cal. Civ. Proc. Code § 129(a).

Next, under *Monell*, Plaintiff must establish the following elements to establish liability against the Entity Defendants for their failure to train: (1) the Entity Defendant was on notice that it needed to train its employees on the sharing of crash scene photos depicting human remains; (2) the Entity Defendant failed to adequately train its employees on the sharing of crash scene photos depicting human remains; (3) the inadequacy of the Entity Defendant's training amount amounted to deliberate indifference to the rights of Plaintiff such that the Entity Defendant knew that it would likely result in a deprivation of substantive due process rights under the Fourteenth Amendment through publication of images of Plaintiff's deceased relatives; (4) that the failure of the Entity Defendant to provide adequate training was the cause of the deprivation of Plaintiff's substantive due process rights under the Fourteenth Amendment; and (6) Plaintiff suffered a concrete and particularized harm as a result of the Entity Defendant's failure to adequately train its employees on the sharing of crash scene photos depicting human remains.  This is bedrock law:

42 U.S.C. § 1983; *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021); *Connick v. Thompson*, 563 U.S. 51, 61 (2011); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 578 (1992); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989); *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978); *Flores v. County of Los Angeles*, 758 F.3d 1154, 1159 (9th Cir. 2014); *Marsh v. County of San Diego*, 680 F.3d 1148 (9th Cir. 2012); *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996); *Probodanu v. Sessions*, 387 F. Supp. 3d 1031, 1039 (C.D. Cal. 2019); *Catsouras v. Dep't of California Highway Patrol*, 181 Cal. App. 4th 856 (2010); *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1146 (9th Cir. 2012).

### 2.   <u>Claim 2: Negligence Against the Individual Defendants</u>

Plaintiff alleges that the Individual Defendants were negligent by sharing photos of Plaintiff's deceased family members for personal, non-law-enforcement purposes.  To establish his claim for negligence, Plaintiff must prove (1) that any or all of the Individual Defendants owed Plaintiff a duty; (2) that any or all of the Individual Defendants breached a duty owed to Plaintiff; (3) that any breach of a duty owed to Plaintiff by any or all of the Individual Defendants was a substantial factor in causing harm to Plaintiff; and (4) that Plaintiff suffered a concrete and particularized harm.  *Padilla v. Rodas*, 160 Cal. App. 4th 742, 752 (2008); *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021); *Probodanu v. Sessions*, 387 F. Supp. 3d 1031, 1039 (C.D. Cal. 2019).

Plaintiff seeks punitive damages on his negligence claims.  But the law is clear that "mere or even gross negligence will not support an award of punitive damages."  *Molina v. J.C. Penney Co., Inc.*, 2015 WL 183899, at *3 (N.D. Cal. Jan. 15, 2015); *Panoyan v. Regalo Int'l LLC*, 2019 WL 8758897, at *3 (C.D. Cal. Oct. 25, 2019) ("Mere unintentional carelessness, characterized as negligence or recklessness, is not sufficient" (citation and quotations omitted)).  That is because punitive damages are only warranted where there is "oppression, fraud, or malice" which all contain an element of intentional, willful, or conscious conduct.  *See* Cal.

Civ. Code § 3294(a), (c); *Molina*, 2015 WL 183899, at *3.

### 3.     Claim 3: Negligence Against the Entity Defendants

Plaintiff alleges that the Entity Defendants are vicariously liable for the Individual Defendants' purported negligence by sharing photos of Plaintiff's deceased family members for personal, non-law-enforcement purposes.  To establish vicarious liability for the Entity Defendants, Plaintiff must show that the purported injury was proximately caused by an act or omission of the employee of the entity within the scope of his or her employment where the act or omission would give rise to a cause of action against that employee.  Cal. Gov't Code §§ 815, 815.2(a).

Defendants anticipate that Plaintiff may reply on *Perez v. City of Huntington Park*, 7 Cal. App. 4th 817 (1992) to argue that he can seek to hold the entities liable for the actions of employees other than the Individual Defendants.  *Perez*, however, is inapposite.  In *Perez*, the plaintiff sued four police officers and the city for battery after he was struck on the head.  The claims were tried to the court.  The court concluded that one of the four officers struck the plaintiff but could not determine which officer.  The court thus found for the individual officers while still holding the city itself liable.  This holding on these unique facts has no bearing here.  The court in *Perez* did not authorize the kind of vague verdict forms and instructions that Plaintiff is proposing in this case.

This is not a case where there is some uncertainly as to which precise employee the Plaintiff needed to sue.  Plaintiff had the benefit of multiple investigations and substantial discovery, and he named the individuals he thought could be liable.  The Individual Defendants are thus the only individuals the jury needs to be asked about in adjudicating vicarious liability.  Plaintiff's vague verdict forms that ask about the entities supposed "responsib[ility]" for other unnamed "employees" are prejudicial and risk confusing the jury into believing it can hold the Entity Defendants liable without finding at least one employee individually met all

the elements of a claim.  Plaintiff's verdict forms (and jury instructions) create a real danger of confusing the jury into treating the Entity Defendants as a collective (e.g., allowing different employees meet different elements, etc.) and making a Frankenstein finding of liability against them.

### 4. <u>Claim 4: Invasion of Privacy Against the Individual Defendants</u>

Plaintiff's invasion of privacy claim against the Individual Defendants requires Plaintiff to establish: (1) that Plaintiff had a reasonable expectation of privacy in the photos of his deceased relatives; (2) that any or all of the Individual Defendants intentionally intruded in Plaintiff's right to privacy by publicly disseminating photos of his deceased relatives to the public at large, and not just to a few persons or in limited circumstances; (3) that any or all of the Individual Defendants' intrusion would be highly offensive to the reasonable person; (4) that any or all of the Individual Defendants' conduct was a substantial factor in causing harm to Plaintiff; and (5) that Plaintiff suffered a concrete and particularized harm as a result. Again, this is established law: Cal. Civ. Code, §§ 1708.7, 1708.8; *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 578 (1992); *Marsh v. County of San Diego*, 680 F.3d 1148 (9th Cir. 2012); *Hassan v. Facebook, Inc.*, No. 19-cv-01003-JST, 2019 WL 3302721, at *3 (N.D. Cal. July 23, 2019) (citing *Ignat v. Yum! Brands, Inc.*, 214 Cal. App. 4th 808, 820 (2013)); *Orff v. City of Imperial*, No. 17-CV-0116 W (AGS), 2017 WL 5569843, at *11 (S.D. Cal. Nov. 17, 2017); *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 27 (1994) (citing RESTATEMENT (SECOND) OF TORTS § 652D cmt. a); *Mezger v. Bick*, 66 Cal. App. 5th 76, 86 (2021); *Catsouras v. Dep't of California Highway Patrol*, 181 Cal. App. 4th 856 (2010).

Plaintiff seeks punitive damages on his invasion of privacy claim.  Punitive damages are only warranted where there is "oppression, fraud, or malice" which all contain an element of intentional, willful, or conscious conduct.  *See* Cal. Civ. Code

1  § 3294(a), (c); *Molina*, 2015 WL 183899, at *3.

2       **5.**    **Claim 5: Invasion of Privacy Against the Entity Defendants**

3       Plaintiff alleges that the Entity Defendants are vicariously liable for any or all

4  of the Individual Defendants' purported invasion of privacy.  To establish vicarious

5  liability for the Entity Defendants, Plaintiff must show that the purported injury was

6  proximately caused by an act or omission of the employee of the entity within the

7  scope of his or her employment where the act or omissions would give rise to a

8  cause of action against that employee.  Cal. Gov't Code §§ 815, 815.2(a).  As

9  explained above regarding the negligence claim, Plaintiff cannot try an omnibus

10  "vicarious liability" claim for invasion of privacy, but rather is limited to pursing

11  that theory if he proves liability against the Individual Defendants.

12  **III.**    **KEY EVIDENCE IN SUPPORT OF DEFENDANTS' OPPOSITION TO**

13         **PLAINTIFF'S CLAIMS**

14      **A.**    **Claim 1: 42 U.S.C. § 1983 (*Monell*), Violation Of Fourteenth**

15         **Amendment Against The Entity Defendants**

16       The following key evidence establishes that there has been no predicate

17  constitutional violation to support a *Monell* claim:

- There has been no public dissemination of the photos despite the fact that this incident was an unprecedented mass fatality involving an international celebrity and involving numerous other federal and local agencies.  This was confirmed by a forensic examination of the personal devices of LACFD and LASD personnel.

- Photos were taken by LACFD and LASD personnel for legitimate reasons to facilitate the investigation of an unprecedented accident.

- LACFD and LASD made numerous efforts to ensure that the privacy and sanctity of Plaintiff's deceased family members were respected.  These efforts included securing a perimeter around the crash site to prevent paparazzi, media, and fans from entering the scene and instituting a "no-fly" zone over the crash site.

- Only one LASD personnel was able to reach the crash site in the immediate wake of the crash.  Photos had to be shared with others positioned at the command post at the bottom of the mountain in order to communicate what was happening on the scene and share information to others working on the investigation.

- The photos taken by Defendants have all been deleted, and therefore there is no possibility that Plaintiff might stumble  upon the photos.

- LASD instructed its personnel to delete the photos so that the photos could not be shared publicly.

- Autopsy photos were never copied, reproduced, faxed, or otherwise published.

- There is no evidence that any of the photos that were allegedly mishandled depicted the remains of Sarah or Payton Chester.

The following key evidence establishes that neither LASD nor LACFD caused a constitutional violation because there is no evidence that they failed to train their employees regarding photos of human remains and should have an established a specific policy on that issue.[1]

- There has never before been a complaint about a LASD or LACFD employee sharing photos of victim remains.  This incident was the first time LASD had confronted allegations that an employee shared photos internally containing victims' remains.

- There has been no public dissemination of the photos despite the fact that this incident was an unprecedented mass fatality involving an international celebrity.

- LASD and LACFD personnel receive extensive training about professional standards, ethics, and confidential information.

- Both LASD and LACFD have codified policies governing standards of behavior for both on- and off-duty conduct, confidentiality and ethics.

- <u>LASD adheres to the requirements established by the California Commission on Peace Officer Standards and Training.</u>

- <u>After the incident, LASD responded swiftly, adding an entirely new section to its Manual of Policies and Procedures, entitled "Photographs/Recordings at Scenes Where Human Remains Are Present."</u>

---

[1] Plaintiff has also alleged that Defendants (1) failed to adequately investigate the incident and discipline the involved personnel, and (2) have a pattern and practice or custom of unnecessarily taking and sharing death images.  Based on Plaintiff's opposition to Defendants' motion for summary judgment, however, Plaintiff has dropped these two theories, and thus Defendants do not address them here.

**B.**  **Claim 2: Negligence Against Deputy Defendants**

There is no duty owed.  Plaintiff invokes California Civil Code section 1714 as the source of the legal duty.  Plaintiff alleges the Individual Defendants owed a duty "to use ordinary care in the care and treatment of the remains of Sarah and Payton, including the obligation to refrain from taking and/or sharing death photos for personal purposes" and to "use ordinary care in preventing dissemination of any unnecessary death photos of the Sarah and Payton, once those photos were created and/or were within their control."  (SAC ¶¶ 40-41.)

But no special relationship exists to confer a duty.  Law enforcement officers are governed by the same rules as other individual defendants. *Williams v. State*, 34 Cal. 3d 18, 24 n.3 (1983).  There is no case holding that law enforcement officers working together at an incident have a duty to not send each other photos of that incident, particularly when they are trying to answer questions, only one deputy is on scene, and they need to know what resources are needed to do their jobs in difficult conditions.

Even assuming a duty is owed, the following key evidence establishes that there was no breach of any duty owed because the Individual Defendants did not disseminate the photos to anyone outside the County:

- None of the Individual Defendants sent an accident site photo to a member of the public.

- Deputy Cruz showed accident site photos to a friend.  The photos did not leave his phone.  He was disciplined for this.

- There is no evidence that any of the photos that were allegedly mishandled depicted the remains of Sarah or Payton Chester.

Plaintiff's harm is also speculative.  His alleged harm is that photos might one day be publicly disseminated.  But he has never seen any photos of the crash site on the internet that can be attributed to any of the Defendants.

With respect to punitive damages, Plaintiff has not pleaded the requisite oppression, fraud, or malice, and there is no evidence that supports punitive

548599.1

16

damages.  Rather, the evidence shows that Defendants acted in good faith and with the goal of protecting Plaintiff's privacy and the sanctity of the deceased:

- Photos were taken by LACFD and LASD personnel for legitimate reasons to facilitate the investigation of an unprecedented accident.

- LACFD and LASD made numerous efforts to ensure that the privacy and sanctity of Plaintiff's deceased family members were respected. These efforts included securing a perimeter around the crash site to prevent paparazzi, media, and fans from entering the scene and instituting a "no-fly" zone over the crash site.

- Only one LASD personnel was able to reach the crash site in the immediate wake of the crash.  Photos had to be shared with others positioned at the command post in order to communicate what was happening on the scene and share information to others working on the investigation.

- The photos taken by Defendants have all been deleted, and therefore there is no possibility that Plaintiff might stumble  upon the photos.

- LASD instructed its personnel to delete the photos so that the photos could not be shared publicly.

- Autopsy photos were never copied, reproduced, faxed, or otherwise published.

Additionally, there is no evidence that punitive damages are warranted against any of the Individual Defendants, and the Court should deem the issue waived by Plaintiff.  By law, punitive damages cannot be awarded against the County (including LASD and LACFD).  An award of punitive damages must be based on "some evidence about the defendant's financial condition and ability to pay the award" so that it is "properly calibrated so as to inflict economic pain without financially ruining the defendant."  *Soto v. BorgWarner Morse TEC Inc*., 239 Cal. App. 4th 165, 192 (2015).  In *Soto*, the plaintiff never sought pre-trial discovery to support its request for punitive damages and rather "elected to take the wait-and-see approach" at trial.  *Id.* at 198.  The court reversed the award of punitive damages given the insufficient evidence of the defendant's financial condition.  *Id.*

Similarly, in *Viasphere Int'l, Inc. v. Vardanyan*, 2017 WL 1065191, at *4-6 (N.D. Cal. Mar. 21, 2017), the court granted the defendant's motion for judgment as

a matter of law and reversed a punitive damages award because the plaintiff did not offer sufficient evidence of defendant's financial condition to support the award. Specifically, the plaintiff had failed to, among other things, conduct any pretrial discovery as to the defendant's financial condition, without any justification. *Id.* at *5.  Instead, the plaintiff made a strategic choice to wait until trial. *Id.*  The court concluded that "the punitive damages award cannot stand because there was no evidence of Vardanyan's net worth, much less any meaningful evidence of the same." *Id.* at *6; *see also Chron. Pub. Co. v. Legrand*, 1992 WL 420808, at *3, *5 (N.D. Cal. Sept. 3, 1992) ("A necessary prerequisite to" a punitive damages analysis "is the presence of 'meaningful evidence' in the record of defendant's financial status," including net assets or net income and not just gross assets or gross income) (vacating punitive damages award when there was insufficient evidence of defendant's net worth).

Here, Plaintiff never sought discovery regarding any of the individual Defendants' financial condition.  Plaintiff failed to do so despite extensive discovery in this case, including over 40 depositions and tens of thousands of pages of document production.

### C.     Claim 3: Negligence Against The Entity Defendants

Given that the negligence claim against the Entity Defendants only lies where there is a viable claim against the Individual Defendants, the same legal contentions and key evidence discussed in Section III.D apply here.

### D.     Claim 4: Invasion Of Privacy Against the Individual Defendants

Plaintiff's claim for invasion of privacy is based on: (i) sharing of photos internally among first responders who were working at the command post on the day of the crash; (ii) one deputy showing a friend photos on his phone; and (iii) one LACFD employee showing other fire department public information officers, who were also at the crash site, photos on his phone. The following key evidence undermines Plaintiff's claim that there has been any intrusion into Plaintiff's privacy

right.  The only member of the public who *saw* crash site photos was Victor Gutierrez, Deputy Cruz's friend. The photos were on Deputy Cruz's phone. Because the photos were not shown to "the public at large" and their content is not "of public knowledge," the "public disclosure" element for invasion of privacy has not been met. *Hill*, 7 Cal. 4th at 27. Moreover, there is no evidence that any of the photos that were allegedly mishandled depicted the remains of Sarah or Payton Chester.

Plaintiff's harm is also speculative.  His alleged harm is that photos might one day be publicly disseminated.  But he has never seen any photos of the crash site on the internet that can be attributed to any of the Defendants.  LACFD and LASD personnel have deleted the photos.  There is thus no evidence showing that it is substantially certain that the photos will become public.

With respect to punitive damages, the Court should deem the issue of punitive damages waived by Plaintiff for his failure to conduct the requisite pre-trial discovery.  Defendants incorporate herein their discussion of this issue in Section III.B, *supra*.

### E.  Claim 5: Invasion of Privacy Against The Entity Defendants

Given that the invasion of privacy claim against the Entity Defendants only lies where there is a viable claim against the Individual Defendants, the same legal contentions and key evidence discussed in Section III.D apply here.

## IV.  AFFIRMATIVE DEFENSES, ELEMENTS, AND EVIDENCE IN SUPPORT THEREOF

### A.  Affirmative Defense 3: Discretionary Act Immunity

Government Code section 820.2 provides that "a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Cal. Gov't Code § 820.2.  Section 820.2 was meant to "ensure that . . . public employees will continue to remain immune from liability for their

discretionary acts within the scope of their employment."  Legis. Comm. cmt., Cal. Gov't Code § 820.2.  "[A] discretionary act is one which requires the exercise of judgment or choice."  *Kemmerer v. County of Fresno*, 200 Cal. App. 3d 1426, 1437 (1988).  Thus, a government official is immune from suit if (1) he was acting within the scope of his employment, and (2) the conduct complained of was an exercise of discretion.  *Glickman v. Glasner*, 230 Cal. App. 2d 120, 125 (1964).

A fundamental purpose of discretionary immunity is the need to fix responsibilities and to attain finality of governmental decisions.  *Connelly v. State*, 3 Cal. App. 3d 744, 766 (1970).  If a trier of fact "is permitted to redetermine what [a public employee] should have done under a given set of circumstances where he had judgment and discretion, the ultimate power of decision is transferred to those not responsible."  *Id.*  The result of each lawsuit would become a redefinition of his duty.  *Id.*

The following key evidence supports this affirmative defense:

- The helicopter crash was an unprecedented mass fatality involving an international celebrity and involving numerous other federal and local agencies.

- LACFD and LASD personnel took photos of the crash scene, some of which depicting human remains, for the purpose of facilitating the investigation.  This required the exercise of judgment.

- Only a limited number of LACFD and LASD personnel were on the ground at the crash scene and able to take photos of the crash scene for the investigation.  The sharing of the photos required the exercise of judgment.  It was necessary to convey information to others who were not on the scene.

- The fact that the LASD and LACFD  personnel who received the photos may not have ultimately used them for the investigation does not undermine the proper purpose for which they were shared.

**B.**   **Affirmative Defense 4: No Vicarious Liability**

To establish vicarious liability for the Entity Defendants, Plaintiff must show that the purported injury was proximately caused by an act or omission of the employee of the entity within the scope of his or her employment and the act or omissions would give rise to a cause of action against that employee.  Cal. Gov't

1  Code §§ 815, 815.2(a).

2    The law and evidence cited in Section III. B.-E. are incorporated herein.

3    Additionally, Government Code section 815.2 provides that a government

4  agency is immune from vicarious liability "where the employee is immune from

5  liability." *Richards v. Dep't of Alcoholic Beverages Control*, 139 Cal. App. 4th 304,

6  317 (2006) ("[A] public entity is not vicariously liable if the employee is immune

7  from liability.").  Because County officials enjoy discretionary act immunity under

8  Government Code section 820.2, as discussed in Section IV.A, the County is

9  immune from Plaintiffs' vicarious liability claim

10    **C.**   <u>**Affirmative Defense 6: Good Faith**</u>

11    In a Section 1983 claim, the courts treat a good faith defense as subsumed

12  within a qualified immunity defense.  *See, e.g.*, *Gomez v. Toledo*, 446 U.S. 635

13  (1980).  "[I]t is the existence of reasonable grounds for the belief formed at the time

14  and in light of all the circumstances, coupled with good-faith belief, that affords a

15  basis for qualified immunity of executive officers for acts performed in the course of

16  official conduct."  *Id*. at 641 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 247-48 (1974)

17  (quotations omitted).  "The applicable test focuses not only on whether the official

18  has an objectively reasonable basis for that belief, but also on whether [t]he official

19  himself [is] acting sincerely and with a belief that he is doing right." *Id*. (citing

20  *Wood v. Strickland*, 420 U.S. 308, 321 (1975) (quotations omitted).)

21    Given the overlap of this affirmative defense with the qualified immunity

22  defense, Defendants incorporate their discussion in Section IV.F, *infra*.

23    **D.**   <u>**Affirmative Defense 11: No Standing**</u>

24    Article III standing is a jurisdictional requirement. *TransUnion LLC v.*

25  *Ramirez*, 141 S. Ct. 2190, 2203 (2021). A plaintiff must show (i) an injury in fact

26  that is concrete and particularized; (ii) that the injury was caused by the defendant;

27  and (iii) that the injury would likely be redressed by judicial relief.  *Id*.; *Lujan v.*

28  *Defenders of Wildlife*, 504 U.S. 555, 560-61, 578 (1992) (holding that respondents

1   lacked standing).  The plaintiff bears the burden of establishing standing.

2   *TransUnio*n, 141 S. Ct. at 2207-08; *Lujan*, 504 U.S. at 561.

3        The "concrete-harm requirement" is "essential to the Constitution's

4   separation of powers."  *TransUnion*, 141 S. Ct. at 2207.  To satisfy the requirement,

5   a plaintiff must show an injury that is "real, and not abstract."  *Id*. at 2204 (citation

6   omitted).  A hypothetical injury that *may* or *could* occur does not suffice, because

7   the "mere risk of future harm" is not a *concrete* harm.  *Id*. at 2210-11; *Probodanu v.*

8   *Sessions*, 387 F. Supp. 3d 1031, 1039 (C.D. Cal. 2019) ("Fear of some hypothetical,

9   future harm is insufficient to satisfy standing's injury-in-fact requirement.").

10       The following key evidence establishes that Plaintiff has not suffered the

11  requisite injury to confer standing to bring his claims:

12
        • Plaintiff is not aware of any of the photos actually surfacing on the
13          internet or being given to the media.

14      • Plaintiff has never seen any photos depicting his deceased wife or
            daughter.
15
        • Plaintiff has not seen any photos of the crash scene that he can attribute
16          to any of the Defendants.

17       **E.**   **Affirmative Defense 17: Superseding and Intervening Acts**

18       A defendant is not responsible for a plaintiff's harm because of the

19  misconduct of a third party if: (1) a third party's conduct occurred after the conduct

20  of the defendant; (2) a reasonable person would consider the third party's conduct

21  highly unusual or an extraordinary response to the situation; (3) the defendant did

22  not know and had no reason to expect that a third party would act in such wrongful

23  manner; and (4) the kind of harm resulting from the third party's conduct was

24  different from the kind of harm that could have been reasonably expected from

25  defendant's conduct.  CACI No. 432; *Lawson v. Safeway Inc*., 191 Cal. App. 4th

26  400, 417 (2010).

27       Here, to the extent Plaintiff has experienced harassment on social media from

28  unidentified parties, there is no evidence attributing any such harassment to the

1    Defendants.  Nor does he have any evidence that any third parties in fact do possess

2    any photos of his deceased family members, including those that can be attributed to

3    any of the Defendants.

4         **F.**    <u>**Affirmative Defense 26: Qualified Immunity**</u>

5         "A defendant in a § 1983 action is entitled to qualified immunity from

6    damages for civil liability if his conduct does not violate clearly established federal

7    statutory or constitutional rights of which a reason able person would have known."

8    *Saba v. Arizona*, 2018 WL 10436615, at *2 (D. Ariz. April 17, 2018) (citing *Harlow*

9    *v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The Supreme Court has established a two-

10   pronged analysis for qualified immunity.  *Pearson v. Callahan*, 555 U.S. 223

11   (2009). First, a court must decide whether the facts that the plaintiff has alleged a

12   violation of a constitutional right.  *Id*. at 232.  Second, the court must decide

13   whether the right at issue was "clearly established" at the time of the defendant's

14   alleged misconduct. *Id*.  The court is not required to resolve these issues in any

15   particular order.  *Id*. at 242 (holding that federal courts have discretion to reach the

16   second prong before analyzing the first).

17        Because qualified immunity is an affirmative defense, the "defendant

18   asserting qualified immunity bears the burden of both pleading and proving the

19   defense."  *Dupris v. McDonald*, 2012 WL 210722, at *3 (D. Ariz. Jan. 24, 2012).

20   Nonetheless, the plaintiff bears the burden of establishing that the constitutional

21   right was clearly established. *Saba*, 2018 WL 10436615, at *3 (citing *Sorrels v.*

22   *McKee*, 290 F.3d 965, 969 (9th Cir. 2002); *Romero v. Kitsap County*, 931 F.2d 924,

23   927 (9th Cir. 1991).

24        The evidence establishes that the facts Plaintiff has alleged do not make out a

25   violation of a constitutional right and that the right at issue was not "clearly

26   established" at the time of the alleged misconduct.  Under *Marsh v. County of San*

27   *Diego*, 680 F.3d 1148 (9th Cir. 2012), sending an autopsy photograph of a plaintiff's

28   family member to the press can violate a plaintiff's substantive due process right to

privacy.  *Id*. at 1153-55.  In *Marsh*, a former prosecutor sent autopsy photos of the remains of a young child to a newspaper and a television station with the goal of having them released publicly.  *Id*. at 1152.  The Ninth Circuit determined that sending an "autopsy photograph to the press" shocked the conscience because, "given the viral nature of the Internet," the victim's mother "might easily stumble upon photographs of her dead son on news websites, blogs or social media websites."  *Id*. at 1155.  The decision was based on the "publication of death images."  *Id*. at 1154.  The relevant constitutional right, which the court addressed for the first time, was the "federal privacy right to control public dissemination of a family member's death images."  *Id*. at 1152.

That constitutional right is not involved here. There was no public dissemination of the photographs.  Plaintiff is suing based on: (i) sharing of photos internally among first responders who were working the command post the day of the crash; (ii) one deputy showing photos on his phone to a friend; and (iii) one LACFD employee showing other fire department public information officers, who were also at the crash site, photos on his phone.  None of these acts amount to a Constitutional violation as articulated under *Marsh*.  *See*, *e.g.*, *Lamorie v. Davis*, 485 F. Supp. 3d 1065, 1073 (D. Ariz. 2020) (holding that conduct failed to shock the conscience as there was "no publication of [the child's] autopsy photos"); *Olejnik v. England*, 147 F. Supp. 3d. 763, 777-78 (W.D. Wis. 2015) (no substantive due process violation because medical examiner "made no public disclosure or display" of the decedent's "death or autopsy").

There is no case holding that law enforcement officers working together at an incident have a duty to not send each other photos of that incident, particularly when they are trying to answer questions, only one deputy is on scene, and they need to know what resources are needed.  Where no such federal right or duty exists, qualified immunity applies.  *See Marsh*, 680 F.3d at 1152, 1159-60.

Further, there is no real and concrete possibility that Plaintiff might "stumble

1  upon" the photos because, as the County, Kroll and Plaintiff's own expert all

2  confirmed, the photos were deleted.  Plaintiff has never seen photos of his loved

3  ones.

4       Accordingly, Defendants are entitled to qualified immunity because the

5  evidence does not establish a violation of a constitutional right that was clearly

6  established at the time of the alleged violation.

7  **V.**    **ADDITIONAL ISSUES**

8      **A.**    **Bifurcation**

9      The Court's Amended Scheduling Order directs the parties to be prepared at

10  the Pre-Trial Conference to discuss "streamlining the trial, including, but not limited

11  to: bifurcation."  (Dkt. 62 at 23:3-5.)  Plaintiff is asserting a sprawling case against

12  multiple individual defendants and two separate government agencies (LASD and

13  LACFD)—including challenges to their respective training policies.  Plaintiff plans

14  to call 39 witnesses, and there are many hundreds of trial exhibits.  This case calls

15  out for streamlining by an efficient bifurcation of issues.

16      Federal Rule of Civil Procedure 42 authorizes the Court to "order a separate

17  trial of one or more separate issues."  Fed. R. Civ. P. 42(b).  "Under Rule 42(b), the

18  district court has broad discretion to bifurcate a trial to permit deferral of costly and

19  possibly unnecessary proceedings pending resolution of potentially dispositive

20  preliminary issues."  *Jinro Am. Inc. v. Secure Invs., Inc.*, 266 F.3d 993, 998 (9th Cir.

21  2001); *see also In re EPD Inv. Co., LLC*, 2019 WL 4233575, at *1 (C.D. Cal. June

22  4, 2019) ("[T]he Court may bifurcate a trial *sua sponte*, . . . .").

23      In *Jinro*, the district bifurcated trial so that, before addressing the parties'

24  claims, an initial determination was made as to whether the parties had entered into

25  a valid agreement.  266 F.3d at 998.  The Ninth Circuit upheld the decision, finding

26  that "[t]he district court's approach was a reasonable way to promote clarity and

27  judicial economy, because the validity of the contract directly informed the

28  resolution of the other claims."  *Id.*

Defendants request that the trial be bifurcated into two phrases.  Phase one of the trial will be to determine a single discrete issue that underlies all of Plaintiff's claims and Defendants' challenge to Plaintiff's Article III standing—whether there has been any public dissemination of photographs depicting remains of Plaintiff's husband and daughter.  This determination would answer threshold elements for each of Plaintiff's claims.  With respect to his Section 1983 claim, it will determine whether there was a Constitutional violation.  *See Marsh v. County of San Diego*, 680 F.3d 1148, 1152 (9th Cir. 2012) (discussing federal privacy right to control "public dissemination of a family member's death images"). With respect to Plaintiff's negligence claim, it will determine whether there was a duty and a breach of that duty.  *See Catsouras v. Dep't of California Highway Patrol*, 181 Cal. App. 4th 856, 864, (2010) (negligence claim stated for placing "decedent's death images *on the Internet for the purposes of vulgar spectacle*" (emphasis added)). With respect to Plaintiff's invasion of privacy claim, it will determine whether any of the Individual Defendants invaded any privacy right of Plaintiff.  *See Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 27 (1994) ("[C]ommon law invasion of privacy by public disclosure of private facts requires that the actionable disclosure be *widely published and not confined to a few persons or limited circumstances*." (Emphasis added)).  The determination will also address standing.  *See TransUnion*, 141 S. Ct. at 2210-11 (class members whose misleading credit reports were not publicly disseminated lacked standing).

If the jury finds that there has been public dissemination of the photos, then Phase two of the trial can commence.  This second phase would deal with whether any of the Entity Defendants can be held liable for the Constitutional violation for their failure to provide adequate training.  It would also deal with Plaintiff's damages and any affirmative defenses that Defendants will pursue.

This proposed bifurcation would create efficiency and minimize confusion to the jury.  If the first phase of trial is limited to this threshold issue, it would

1  significantly reduce the number of witnesses that will need to testify and the amount

2  of evidence that will be submitted.

3      **B.      Anticipated Evidentiary Issues**

4      The parties have met and conferred regarding evidentiary issues.  The parties

5  will be filing multiple motions *in limine* to address unresolved evidentiary disputes.

6      **C.      Identification of Issues of Law**

7      In Defendants' motion for summary judgment, Defendants identified issues of

8  law that are germane to this case.  First, Defendants contend Plaintiff lacks

9  jurisdictional Article III standing.  Defendants' argument on this issue is detailed in

10  Section IV.D, *supra*, in its discussion of lack of standing as an affirmative defense.

11      Second, Defendants contend that there is no requisite duty to support

12  Plaintiff's claim of negligence.  The threshold issue of duty "is a question of law to

13  be resolved by the court."  *Brown v. USA Taekwondo*, 11 Cal. 5th 204, 213 (2021).

14  Defendants' position is detailed in Section III.B, *supra*, in its discussion of evidence

15  in support of their opposition to Plaintiff's negligence claim.

16      **D.      Jury Trial**

17      Both sides have requested a jury trial.

18      **E.      Fees**

19      To the extent Defendants prevail, Defendants will request a recovery of its

20  reasonable attorney's fees as part of their costs pursuant to 42 U.S. Code section

21  1988.

22      **F.      Abandoned Claims and Defenses**

23      The only remaining theory of liability underlying his Section 1983 claim is a

24  failure to train or a policy of inaction.

25      In addition to a failure to train, Plaintiff previously pleaded another theory: a

26  failure to investigate the complaints about photo sharing and inadequate discipline.

27  Plaintiff has also attempted to argue a third theory based on an affirmative policy in

28  the form of a practice or custom.  Despite the fact that the practice-or-custom theory

falls outside of his pleadings, both of these alternative theories have been waived in any event.  When Defendants moved for summary judgment, Defendants addressed all three of these theories of liability.  But in his Opposition, Plaintiff abandoned all but the training theory by failing to address them.  *See Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008) ("[P]laintiff has 'abandoned . . . claims by not raising them in opposition to [the defendant's] motion for summary judgment.'" (second alteration in original) (citation omitted)).  Thus, Plaintiff should not be permitted to revive or assert these theories through his verdict form.

While the parties met and conferred regarding jury instructions and verdict forms, Plaintiff tried to assert his theory based on a practice or custom but continued to ignore his prior theory based on a failure to investigate and adequately discipline. Plaintiff understands the weakness of the failure-to-investigate theory.  A *Monell* claim cannot be based on "actions that a government entity took or failed to take *subsequent* to the alleged violations."  *McClain v. SBC Sheriff's Dep't*, 2018 WL 3105248, at *7 (C.D. Cal. June 21, 2018) (dismissing *Monell* claim based on actions taken after "the incident that gave rise to plaintiff's claims"). That is because causation cannot be established.  Subsequent actions "cannot give rise to a reasonable inference that the County's actions at the time of the alleged violations of plaintiff's constitutional rights were *caused* by the County's traditional method of carrying out a policy." *Id.*; *see Crabbs v. Pitts*, No. 2:16-cv-0387, 2018 WL 5262397, at *2 (S.D. Ohio Oct. 23, 2018) (subsequent actions "could not have been 'the "moving force" behind the alleged constitutional violation' because actions that occur 'after an event cannot logically be said to have caused the event that preceded it'" (citation omitted)).  Thus, in the event Plaintiff tries to revive this theory on the eve of trial as well, he should be deemed to have waived it.

Defendants do not intend to pursue at trial the following affirmative defenses pleaded in their Answer to the First Amended Complaint: failure to state a claim, sovereign immunity, no violation of a legal duty, waiver, laches, unclean hands,

1  impossibility by operation of law, statute of limitations, mootness, unjust

2  enrichment, estoppel, acquiescence, conduct not wrongful, failure to exhaust

3  administrative remedies, after-acquired evidence, no causation, no damages, no

4  punitive damages, avoidable consequences, absence of malice, and no deprivation of

5  Constitutional rights.

6  **G.    Witness and Exhibit Lists**

7         The parties have exchanged witness and exhibits lists.  These will be

8  submitted under separate cover.

9

10 DATED:  January 20, 2022          OFFICE OF COUNTY COUNSEL

11

12

13                                   By: _____/s/ Jonathan C. McCaverty_____

14                                       JONATHAN C. McCAVERTY
                                         Attorneys for Defendant
15                                       LOS ANGELES COUNTY SHERIFF'S
                                         DEPARTMENT
16

17 DATED:  January 20, 2022          MILLER BARONDESS, LLP
18

19

20                                   By: _____/s/ Louis R. Miller_____

21                                       LOUIS R. MILLER
                                         Attorneys for Defendants
22                                       COUNTY OF LOS ANGELES, LOS
                                         ANGELES COUNTY FIRE
23                                       DEPARTMENT, JOEY CRUZ, RAFAEL
                                         MEJIA, MICHAEL RUSSELL, RAUL
24                                       VERSALES, ARLIN KAHAN, and
                                         TONY IMBRENDA
25

26

27

28