1  LUIS LI (State Bar No. 156081)
Luis.Li@wsgr.com
2  ERIC TUTTLE (State Bar No. 248440)
Eric.Tuttle@wsgr.com
3  WILSON SONSINI GOODRICH & ROSATI, PC
633 West Fifth Street, Suite 1550
4  Los Angeles, California 90071
Telephone:  (323) 210-2900
5  Facsimile:   (866) 974-7329

6
CRAIG JENNINGS LAVOIE (State Bar No. 293079)
7  Craig.Lavoie@mto.com
JENNIFER L. BRYANT (State Bar No. 293371)
8  Jennifer.Bryant@mto.com
MUNGER, TOLLES & OLSON LLP
9  350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
10  Telephone:  (213) 683-9100
Facsimile:   (213) 687-3702
11
Attorneys for Plaintiff Vanessa Bryant
12
[*Additional counsel continued on following page.*]
13

14              UNITED STATES DISTRICT COURT

15      CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

16

| | |
|---|---|
| 17  VANESSA BRYANT, | **CASE NO. 2:20-cv-09582-JFW-E** |
| 18        Plaintiff, | **JOINT STATEMENT FOR PLAINTIFF'S EXPERT ADAM BERCOVICI** |
| 19        v. | |
| 20  COUNTY OF LOS ANGELES, et al., | Pretrial Conference: |
| 21        Defendants. |        February 4, 2022 |
| 22 | |
| 23 | Hearing on Motions *in Limine*:        February 11, 2022 |
| 24 | |
| 25 | Trial Date:  February 22, 2022 |
| 26 | |
| 27 | Assigned to Hon. John F. Walter |
| 28 | |

JONATHAN C. McCAVERTY (State Bar No. 210922)
Principal Deputy County Counsel
jmccaverty@counsel.lacounty.gov
OFFICE OF COUNTY COUNSEL
General Litigation Division
500 West Temple Street, Suite 468
Los Angeles, California 90012
Telephone:   (213) 974-1828
Facsimile:    (213) 626-7446

Attorneys for Defendant
LOS ANGELES COUNTY SHERIFF'S DEPARTMENT

LOUIS R. MILLER (State Bar No. 54141)
smiller@millerbarondess.com
MIRA HASHMALL (State Bar No. 216842)
JASON H. TOKORO (State Bar No. 252345)
CASEY B. SYPEK (State Bar No. 291214)
MILLER BARONDESS, LLP
1999 Avenue of the Stars, Suite 1000
Los Angeles, California 90067
Telephone:   (310) 552-4400
Facsimile:    (310) 552-8400

Attorneys for Defendants
COUNTY OF LOS ANGELES, LOS ANGELES COUNTY FIRE DEPARTMENT,
JOEY CRUZ, RAFAEL MEJIA, MICHAEL RUSSELL, and RAUL VERSALES

# **TABLE OF CONTENTS**

**Page**

I.  OPINION #1: DEATH PHOTOS ARE A WIDESPREAD PROBLEM AND IT WOULD HAVE BEEN OBVIOUS TO THE AGENCIES THAT THE PROBLEM WOULD CONTINUE WITHOUT ADEQUATE POLICIES AND TRAINING ................................ 1

    A.  Proffering Party's Position (Plaintiff) ........................................... 3

        1.  Relevance of Opinion #1 ................................................ 3

        2.  Basis of Opinion #1 ....................................................... 4

    B.  Defendants' Position ...................................................................... 14

        1.  Opinion #1 Is Inadmissible Under Rule 702 ............................ 14

            (a)  Mr. Bercovici Is Not Qualified to Opine on the "Pervasiveness" of Any Problem Within LASD or LACFD ........................................................... 14

            (b)  The Opinion Is Irrelevant to Plaintiff's *Monell* Claim ............................................................. 17

            (c)  The Opinion Is Speculative and Will Not Assist The Jury ............................................................ 18

            (d)  The Opinion Improperly Discredits Defendants' Credibility ....................................................... 19

            (e)  The Opinion About Defendants' Intent Is Irrelevant ....... 19

        2.  Opinion #1 Should Be Excluded Under Rule 403 Because It Would Confuse The Jury And Cause Undue Prejudice .......... 20

        3.  Mr. Bercovici Improperly Relies On Materials Not Disclosed In His Report ................................................ 21

    C.  Proffering Party's Response (Plaintiff) ........................................... 21

        1.  Opinion #1 Is Admissible Under Rule 702 ............................ 21

            (a)  Mr. Bercovici Is Well-Qualified ....................................... 21

            (b)  Defendants' Relevance / Waiver Argument Is Meritless ........................................................ 25

            (c)  Mr. Bercovici's Opinions Are Based on Facts and Experience, Not Speculation .......................... 26

            (d)  Mr. Bercovici Does Not Opine on Witness Credibility or Subjective State of Mind ......................... 27

# TABLE OF CONTENTS
### (Continued)

**Page**

    2.    There Is No Unfair Prejudice That Substantially Outweighs the Probative Value of the Evidence ...................... 28

    3.    The Listed Reliance Materials Were Disclosed in Mr. Bercovici's Report .......................................................... 28

II.   OPINION #2: NO LEGITIMATE PURPOSE FOR TAKING THE DEATH PHOTOS IN THIS CASE ............................................ 29

    A.   Proffering Party's Position (Plaintiff) .................................. 30

        1.   Relevance of Opinion #2 ........................................... 30

        2.   Basis for Opinion #2 ................................................. 32

    B.   Defendants' Position ............................................................ 39

        1.   Opinion #2 Is Inadmissible Under Rule 702 ............. 39

            (a)   Mr. Bercovici Is Not Qualified as an Expert on LASD Policies and Practices ........................... 39

            (b)   Mr. Bercovici Should Not  Be Permitted To Opine On LACFD's Taking Crash Site Photos ......... 42

            (c)   The Opinion Is Irrelevant to Plaintiff's *Monell* Claim ............................................................... 43

        2.   Opinion #2 Should Be Excluded Under Rule 403 Because It Would Confuse The Jury And Cause Undue Prejudice ......... 44

        3.   Mr. Bercovici Improperly Relies On Materials Not Disclosed In His Report .............................................. 44

    C.   Proffering Party's Response (Plaintiff) ................................ 45

        1.   Opinion #2 Is Admissible Under Rule 702 ............... 45

            (a)   Mr. Bercovici Is Well-Qualified ..................... 45

            (b)   Mr. Bercovici Disclosed His Opinion Regarding LACFD .......................................................... 46

            (c)   The Opinion Is Relevant to All of Plaintiff's Claims ...... 46

        2.   Defendants Identify No Unfair Prejudice ................... 48

        3.   Mr. Bercovici Disclosed His Reliance Materials ....... 48

III.   OPINION #3: LASD VIOLATED BASIC STANDARDS BY DESTROYING EVIDENCE RATHER THAN PRESERVING IT ............. 49

# TABLE OF CONTENTS
## (Continued)

**Page**

A.   Proffering Party's Position (Plaintiff) .................................................. 51

    1.   Relevance of Opinion #3 ........................................................ 51

    2.   Basis for Opinion #3 .............................................................. 53

B.   Defendants' Position ............................................................................. 58

    1.   Opinion #3 Is Inadmissible Under Rule 702 .......................... 58

        (a)   Mr. Bercovici Is Not Qualified as an Expert on LASD Policies and Practices ........................................ 58

        (b)   The Opinion Is Irrelevant To The *Monell* Claim ............ 61

        (c)   The Opinion Is Irrelevant For Other Reasons And Will Not Assist The Jury ............................................ 62

    2.   Opinion #3 Should Be Excluded Under Rule 403 Because It Would Confuse The Jury And Cause Undue Prejudice .......... 63

    3.   Mr. Bercovici Improperly Relies On Materials Not Disclosed In His Report .......................................................... 64

C.   Proffering Party's Response (Plaintiff) ................................................. 64

    1.   Opinion #3 Is Admissible Under Rule 702 .............................. 64

        (a)   Mr. Bercovici Is Well-Qualified ...................................... 64

        (b)   The Opinion Is Relevant to *Monell* Liability .................. 65

        (c)   The Opinion Is Relevant to Several Other Issues ............ 66

    2.   Defendants Do Not Show Unfair Prejudice .............................. 67

    3.   Mr. Bercovici Disclosed His Reliance Materials ...................... 68

IV.   OPINION #4: LASD'S INVESTIGATION DEVIATED DRAMATICALLY FROM ACCEPTED STANDARDS IN ADDITIONAL WAYS THAT CAST DOUBT ON ITS EFFECTIVENESS AND RESULTS ................................................... 68

A.   Proffering Party's Position (Plaintiff) ................................................. 72

    1.   Relevance of Opinion #4 ........................................................ 72

    2.   Basis for Opinion #4 .............................................................. 73

B.   Defendants' Position ............................................................................. 82

# TABLE OF CONTENTS
### (Continued)

Page

1. Opinion #4 Is Inadmissible Under Rule 702 ............................ 83

    (a) Mr. Bercovici Is Not Qualified as an Expert on LASD Policies and Practices............................................. 83

    (b) The Opinion Is Irrelevant To The *Monell* Claim ............. 86

    (c) The Opinion About Defendants' Intent Is Irrelevant ....... 86

    (d) The Opinion Is Speculative And Will Not Assist the Jury ................................................................................ 87

    (e) The Opinion Improperly Assesses Defendants' Credibility........................................................................ 87

2. Opinion #4 Should Be Excluded Under Rule 403 Because It Would Confuse The Jury And Cause Undue Prejudice.......... 88

3. Mr. Bercovici Improperly Relies On Materials Not Disclosed In His Report.................................................... 89

C. Plaintiff's Response ................................................................ 89

1. Opinion #4 Is Admissible Under Rule 702 ................................ 89

    (a) Mr. Bercovici Is Well-Qualified ...................................... 89

    (b) The Opinion Is Relevant to *Monell* Liability .................. 89

    (c) Mr. Bercovici Is Not Opining on Intent ........................... 90

    (d) The Opinion Is Based on the Application of Mr. Bercovici's Experience to the Facts of This Case, Not Speculation ................................................................ 90

    (e) Mr. Bercovici Does Not Opine on Witness Credibility........................................................................ 90

2. Defendants Identify No Unfair Prejudice..................................... 91

3. Mr. Bercovici Disclosed His Reliance Materials ..................... 91

Pursuant to the Court's January 24, 2022 Order (ECF No. 266), Plaintiff Vanessa Bryant and Defendants County of Los Angeles ("County"), Los Angeles County Sheriff's Department ("LASD"), Los Angeles County Fire Department ("LACFD"), Joey Cruz, Rafael Mejia, Michael Russel, and Raul Versales (collectively, "Defendants") hereby submit the following Joint Statement for Plaintiff's Expert Adam Bercovici.  Mr. Bercovici's expert report, deposition transcript, and CV are attached hereto as **Exhibits A**, **B**, and **C**, respectively.

# I.   OPINION #1: DEATH PHOTOS ARE A WIDESPREAD PROBLEM AND IT WOULD HAVE BEEN OBVIOUS TO THE AGENCIES THAT THE PROBLEM WOULD CONTINUE WITHOUT ADEQUATE POLICIES AND TRAINING

Mr. Bercovici will testify that the unnecessary taking, sharing, and retaining photos of human remains has been a well-known and pervasive problem in law enforcement for decades, including in Los Angeles, and, absent explicit training and a clear policy prohibiting these practices backed by meaningful threats of disciplinary consequences, it would have been obvious to any law enforcement leader that these practices would continue; moreover, the LACFD was also on notice of the problem.  (Ex. A at 1, 5-10.)

More granularly, and as part of this opinion, Mr. Bercovici will opine that:

• It is well known and recognized in the Southern California law enforcement community that officers and deputies frequently take, view, keep, and share photos of human remains, and that a number of officers and deputies maintain collections of death images taken or acquired by virtue of the access afforded to them by their roles in law enforcement.  (*Id*. at 5.)

• Some individuals derive enjoyment from possessing and sharing death images because they allow the officer to demonstrate that he or she is "in the know" and has exclusive access to or possession of shocking information, or to suggest their heroism or masculinity by virtue of having been present at a particular scene. Fire Captain Tony Imbrenda's conduct displaying photos of human remains at the

gala is consistent Mr. Bercovici's experience with how and why people share death scene images.  (*Id*. at 7-8.)

•     The incidents of taking and sharing death scene photographs in this case, including those by LACFD, are unsurprising and predictable in the absence of clear policies and training.  (*Id*.)

•     The problem of unnecessarily taking, sharing, and keeping photographs of human remains is deeply embedded in the culture of public safety.  It was so pervasive and embedded in law enforcement culture by January 2020 that any reasonable law enforcement leader in the Los Angeles area—and anyone with the length of experience of Sheriff Villanueva and his leadership team—would or should have been aware of it.  (*Id*. at 8-9.)

•     It would have been obvious to reasonable law enforcement leaders in the months and years leading up to the helicopter accident in January 2020 that the widespread practice of unnecessarily taking, sharing, and keeping photos of human remains would continue among a sizeable portion of personnel absent express and specific policies prohibiting the practice and systemic training devoted to the issue, backed by meaningful threats of disciplinary consequences for violation.  (*Id*.)

•     High-level or generic rules that officers must behave appropriately have never been sufficiently clear or effective to address the issue.  Only specific policies supported by clear training and backed by meaningful threats of discipline could correct the problem.  (*Id*.)

•     It is unsurprising that a law enforcement agency would receive few complaints about improper death scene photos because the photos are usually shared with other members of the law enforcement community or their family or friends who are reluctant to report it.  It cannot be inferred from a purported absence of prior complaints to LASD that LASD officers were not previously engaged in taking or sharing photos of human remains or that LASD leadership was not aware of the practice or the risk it would occur without proper training and supervision.  (*Id*. at

1   10.)

2       A.      **Proffering Party's Position (Plaintiff)**

3           1.      **Relevance of Opinion #1**

4           Plaintiff is seeking damages for the unauthorized taking and sharing of photos

5   of her husband and daughter's remains by LASD and LACFD personnel.  Among

6   other claims, Plaintiff asserts a *Monell* claim under section 1983 based on (i)

7   Defendants' failure to adopt or enforce a policy or train their employees regarding

8   the taking and sharing of gratuitous death images, which led to the violation of

9   Plaintiff's constitutional right to privacy; and (ii) Defendants' practice or custom of

10  unnecessarily taking and sharing death images.  Mr. Bercovici's opinions are

11  relevant to establishing the custom and practice under the second theory, and the

12  existence of the deliberate indifference and causation required under the first theory.

13          A *Monell* claim can be established based on a "widespread or longstanding

14  practice or custom" of the defendant agency.  9th Cir. Model Instr. 9.5.  Mr.

15  Bercovici's opinions help establish that the practice of taking and sharing death

16  scene photos was widespread and longstanding among law enforcement in Southern

17  California, including in Los Angeles.  He opines directly on those issues.

18          A *Monell* claim can also be established based on a failure to implement a

19  needed policy or to train officers when the agency was "deliberately indifferent" to

20  the "substantial risk that [its] policies were inadequate to prevent violations" or to

21  "the known or obvious consequences of [its] failure to train."  9th Cir. Model Instr.

22  9.8.  Deliberate indifference is "the conscious choice to disregard the consequences

23  of one's acts or omissions," and may be proven by showing that the facts available

24  to the agency put it on actual or constructive notice that its failure to implement

25  adequate policies or failure to train adequately was substantially certain to result in

26  violations.  *Id.*  It must also be shown that the agency's failure to train or failure to

27  prevent violations played a substantial part in causing the injury.  *Id.*

28          A key issue in this case, therefore, is whether it would have been obvious to

Defendants that the absence of policies and training regarding photos of human remains would result in constitutional violations.  Mr. Bercovici's opinions address that issue and will help establish that Defendants acted with the requisite deliberate indifference.  Mr. Bercovici's opinions also help show causation between the failure to train or adopt a policy and the violation.

Mr. Bercovici will also provide helpful context for the jury to understand the prevalence of the problem and why it is prevalent, why there may have been few complaints about it despite its prevalence, and why it would have been well-known or obvious to leadership despite a lack of complaints.  Jurors may not understand why law enforcement personnel would engage is this repulsive conduct, why it would not generate substantial complaints and be reported if it happens frequently, and how leadership would know of the problem if it were not reported in formal complaints.  Mr. Bercovici will address and explain these issues so that the jury has the proper context to evaluate the evidence and arguments presented by Plaintiff and Defendants on these issues.

For example, LASD has argued that it never received any complaints related to the improper sharing of photos prior to this case.  Mr. Bercovici opines, that even if that were true, based on his experience, the absence of complaints does not point to the absence of a problem or the absence of knowledge of the problem.  In his experience, the photos are often shared with other members of the law enforcement community or their family and friends, who are reluctant to report any misconduct. For example, Mr. Bercovici explains that while he was an internal affairs investigator, he did not receive any formal complaints regarding death photos, but he had first-hand knowledge that the practice was ongoing and widespread.

## 2.    Basis of Opinion #1

Mr. Bercovici has over thirty years of law enforcement experience in Los Angeles and has extensive experience with accident and crime scenes (including aircraft accident scenes), supervising other officers, and overseeing internal

investigations.  (Ex. A at 2-4.)  He worked for the Los Angeles Police Department but collaborated extensively with other law enforcement agencies throughout his career, including specifically with LASD.  (Id. at 4; Ex. B at 24:12-25:7.)  From 2000 to 2003, Mr. Bercovici was the Officer-in-Charge of the federal Violent Crime Task Force, with direct supervision of personnel from the LASD and other agencies and became familiar with the practices and culture of LASD and the other agencies. (Ex. A at 4.)  For seven years thereafter, Mr. Bercovici was the Officer-in-Charge of the Special Investigation Section ("SIS"), an investigative, surveillance, and apprehension team that collaborated with LASD.  (Id.)  He holds multiple certifications (basic, intermediate, advanced, supervisor, and management) from California Peace Officer Standards & Training (POST).  (Ex. C at 2.)

Mr. Bercovici routinely was present at and supervised accident and crime scenes where human remains were present.  (Ex. A at 3.)  He also supervised other officers for over 15 years as a Sergeant, Watch Commander, Lieutenant, and Officer in Charge, including supervision of officers at crime or accident scenes and supervision of investigations involving celebrity victims.  (Id. at 3-5.)  He has personally observed Southern California law enforcement officers taking unauthorized photos of human remains for personal reasons in the presence of supervisors who did nothing to address or stop it, beginning around when he first joined the LAPD in 1983.  (Id. at 5-7.)  Throughout his career, Mr. Bercovici has also observed officers displaying photos of human remains to one another in locker rooms, at the back of roll call, or in their squad cars.  (Id. at 5.)  He witnessed, with some regularity, that many senior officers kept "death books" as souvenirs and would display their gruesome collections both on their own initiative and at the request of other officers.  (Id.; Ex. B at 59:3-60:2.)  Mr. Bercovici observed that the more graphic photos—like the ones LASD and LACFD personnel took here—are especially popular amongst law enforcement officials, and that the viewing of these photos could become a small event accompanied by distasteful humor (as happened

Case No. 2:20-cv-09582-JFW-E

1  here).  (Ex. A at 5-6.)

2        Mr. Bercovici has also observed law enforcement officers in Southern

3  California sharing gruesome death photos more broadly, not only with other officers

4  but with friends, family, and other members of the general public, including through

5  magazines and books—such as a magazine published by the California Highway

6  Patrol called *The Highway Patrolman* and a book of collected images entitled

7  "*Death Scenes:  A Homicide Detective Scrapbook.*"  (*Id*. at 6, 10.)

8        Mr. Bercovici observed improper behavior related to death photos not only as

9  a junior officer but as he rose in the supervisory ranks of the LAPD, including the

10 sharing of graphic death photos of celebrities.  (*Id*. at 5-7.)  Several specific

11 incidents are given as examples in his Report (*id*.) and in his deposition (Ex. B at

12 64:22-65:9, 87:2-88:23.)

13        Mr. Bercovici has also seen many posts on social media accounts associated

14 with LASD containing pixelated photos of deceased or severely injured victims,

15 with the officers retaining the original (unpixellated) photos and these photos

16 serving no legitimate law enforcement purpose.  (Ex. A at 8 n.5.)

17        Mr. Bercovici also knows from firsthand experience that improper taking and

18 sharing of death scene photos can be widespread even though there are no formal

19 complaints about the practice.  He was involved in internal affairs for many years

20 and received no complaints about improperly sharing or retaining photos of human

21 remains despite knowing from his experience that this practice was widespread.  (*Id*.

22 at 10.)

23        Finally, Mr. Bercovici knows from firsthand experience that establishing a

24 clear policy, backed by training and meaningful threats of discipline, can be

25 effective to curb this behavior even as the behavior continues in other units that do

26 not have such policies.  As a supervisor, Mr. Bercovici established his own policy

27 with those under his command that personal devices such as digital cameras were

28 never to be used to photograph human remains and that the job of the police at a

1  catastrophic scene was to secure the location until the proper investigative resources

2  were able to respond.  (*Id*. at 7.)  But he remained aware that improper taking and

3  sharing of graphic photographs continued to occur in other parts of the department

4  and the law enforcement community in Southern California.  (*Id*.)

5       In addition to his extensive personal experience, Mr. Bercovici also reviewed

6  and relied on other materials.  This includes public statements made by Sheriff

7  Villaneuva describing the prevalence of the problem of death scene photographs in

8  law enforcement, books and articles documenting the problem, and internal

9  investigation reports at LASD and LACFD relating to this incident and prior

10  incidents.  For example, he relies on documents related to at least two prior incidents

11  involving LASD and LACFD employees using personal cell phones to take

12  inappropriate photos of the remains of crime and accident victims and make

13  inappropriate comments.  These materials are listed in the table below:

14  **Documents Relied upon in Forming Opinion #1**

| Title | Author | Date | Bates | TREX |
|---|---|---|---|---|
| Correspondence to: W. McCloud from: R. Cambell Case #2020-16745 | L.A. Cnty. Dep't of Auditor | April 4, 2020 | COLA035477 | N/A |
| Skelly Hearing Captain Brian Jordan | Hanley Law Group | January 14, 2021 | COLA035490-95 | N/A |
| Hanley Law Group email thread re: Correspondence re NOI to Discharge Captain Brian Jordan | Hanley Law Group | January 29, 2021 | COLA035496-605 | N/A |
| Compilation of Instagram and Twitter posts made by accounts affiliated with LASD (@lasdhq, @lasdsar, @lasd_lhs, | Social Media | Various | N/A | 171; 191 |

| @malibusar, @seblasd--IG; and @lasdhq, @lhslasd, @seblasd--Twitter) | | | | |
|---|---|---|---|---|
| Death Scenes: A Homicide Detective Scrapbook, Katherin Dunn (2001) | Katherin Dunn | 2001 | N/A | N/A |
| Shots in the Dark: True Crime Pictures, Gail Buckland (2001) | Gail Buckland | 2001 | N/A | N/A |
| Scenes of the Crime: Photographs from the LAPD Archive, Tom Wride, James Elroy, and William Bratton (2004) | Tom Wride, James Elroy, and William Bratton | 2004 | N/A | N/A |
| FAC Exhibit 2 LASD Manual and Policy Section 5-09/475.00 | LASD | September 10, 2020 | N/A | N/A |
| FAC Exhibit 3 LASD Manual and Policy Volume 3 - Chapter 1 (Policy and Ethics) | LASD | Undated | N/A | 613 |
| LASD IAB Investigation Report No. IV2504757 | LASD | Undated | COLA000001-1140 | 600; 134; 135 |
| Letter to Jordan re Intention to Discharge and attachment | LACFD | December 2, 2020 | COLA001341-1378 | 26 |
| Letter to Imbrenda re Intention to Discharge and attachment | LACFD | December 2, 2020 | COLA001384-1421 | 27 |
| Letter to Kahan re Intention to Suspend and attachment | LACFD | December 2, 2020 | COLA001311-1340 | 28 |

Case No. 2:20-cv-09582-JFW-E

JOINT STATEMENT FOR PLAINTIFF'S EXPERT ADAM BERCOVICI

| Field Operations Newsletter Proposal | LASD | Undated | COLA035451 | N/A |
|---|---|---|---|---|
| POST Training Records for Michael Russell | Cal. Comm'n on POST | August 24, 2021 | COLA035454-55 | N/A |
| POST Training Records for Rafael Mejia | Cal. Comm'n on POST | August 24, 2021 | COLA035468-70 | N/A |
| POST Training Records for Raul Versales | Cal. Comm'n on POST | August 24, 2021 | COLA035472-74 | N/A |
| Links to Newsletter 20-15: Safeguarding the Integrity of Department Investigations | LASD | July 29, 2020 | COLA035465-66 | N/A |
| Additional POST Training Records for Rafael Mejia | Cal. Comm'n on POST | August 24, 2021 | COLA035468-70 | N/A |
| Memorandum from C. Jauregui to H. Mancinas re: Willow Incident Photographs | Christopher Jauregui | January 31, 2020 | COLA004013-14 | 57 |
| County Policy of Equity Report/Notification Form | L.A. Cnty. | October 23, 2020 | COLA035480-88 | N/A |
| Email from D. Katz to J. Warren re: Good Morning!! | Joana Warren | February 6, 2020 | COLA005852 | N/A |
| County of Los Angeles Incident Jurisdictional Form | LACFD | January 26, 2020 | COLA006998-99 | N/A |
| Email from D. Kneer to M. Vander Horck & C. Reed re R. Mendez complaint | Ralph Mendez | January 29, 2020 | COLA007135-36 | 126 |
| Email thread from T. Schrader to B. Grubb re: Contact US - LASD.org "Kobe" | Ralph Mendez | January 29, 2020 | COLA007128 | N/A |

JOINT STATEMENT FOR PLAINTIFF'S EXPERT ADAM BERCOVICI

| Email from T. Schrader to J. Diez re: Contact Us - LASD.org "Kobe" | Ralph Mendez | January 29, 2020 | COLA007129; COLA007130 | N/A |
|---|---|---|---|---|
| LASD Supplemental Report 920-00536-2244-496 | LASD | January 26, 2020 | COLA007249-52 | 33 |
| Email thread from A. Tchekmedyian (L.A. Times) to J. Valdez re: LA Times follow up re Lost Hills | L.A. Times | February 26, 2020 | COLA007318-20 | 72 |
| Email from V. Chow to Various Recipients re: Media Statements | LASD | March 1, 2020 | COLA007375 | N/A |
| Email thread from M. Vander Horck to A. Tchekmedyian re: LA Times Inquiry | L.A. Times | March 2, 2020 | COLA007391 | N/A |
| Email thread from S. Gross to D. Kneer re: Contact US - LASD.org "Kobe" | Ralph Mendez | January 29, 2020 | COLA009784 | 152 |
| Email thread from J. Diez to H. Mancinas & M. Vander Horck | Ralph Mendez | January 29, 2020 | COLA009758-59 | 53 |
| Email thread from M. Velazquez to D. Alkonis re: CBS NEWS REQUEST FOR KOBE BRYANT CRASH FOOTAGE | Maryhelen Campa | February 14, 2020 | COLA010626-29 | N/A |
| Email thread from C. Stelter to J. Warren re: Department and Photos | Joana Warren | March 9, 2020 | COLA033883-85 | N/A |
| Watch Commander's Report 243817 | LASD | July 31, 2016 | COLA035335-99 | 85 |
| LASD Newsletter 20-04 | LASD | February 12, 2020 | COLA035442-44 | N/A |

| | | | | |
|---|---|---|---|---|
| Email thread from L. Corvera to F. Tse re: AB2655 | Lina Corvera | May 7, 2020 | COLA035825-26 | N/A |
| Executive Summary Proposed Manual Revision 2020-014-03 | LASD | March 14, 2020 | COLA035827-28 | N/A |
| Executive Summary Proposed Manual Revision 2020-006-01 | LASD | June 1, 2020 | COLA035829-30 | N/A |
| Manual of Policy and Procedures 2-11/020.00-Aero Bureau | LASD | September 28, 2021 | N/A | N/A |
| Manual of Policy and Procedures 4-04/025.00-Aircraft | LASD | September 28, 2021 | N/A | N/A |
| Manual of Policy and Procedures 4-19/010.00-Person Dead | LASD | September 28, 2021 | N/A | N/A |
| Manual of Policy and Procedures 4-19/015.00-Personal Injured | LASD | September 28, 2021 | N/A | N/A |
| Manual of Policy and Procedures 5-06/050.00-Search or Rescue Operations | LASD | September 28, 2021 | N/A | N/A |
| Manual of Policy and Procedures 5-05/050.50-Responses to Civil Air Patrol Reports of Downed/Missing Aircraft And/Or Activations of Emergency Locator Transmitters | LASD | September 28, 2021 | N/A | N/A |
| Manual of Policy and Procedures 5-09/090.00-Dead | LASD | September 28, 2021 | N/A | N/A |

| | | | | |
|---|---|---|---|---|
| Bodies-Homicides, Suicides, Accidental and Natural | | | | |
| Marsh v. County of San Diego | 9th Cir. | May 29, 2012 | N/A | 168 |
| Catsouras v. Department of CHP | Cal. Ct. App. | January 29, 2010 | N/A | N/A |
| Deposition Transcript of David Katz | David Katz | September 13, 2021 | N/A | N/A |
| LASD Office Correspondence Dated 11-29-16 | LASD | November 29, 2016 | COLA035337-0335344 | N/A |
| LASD News Letter Volume 13 Number 4 3-29-13 Use of Personal Communciation Devices | LASD | March 29, 2013 | COLA035348-49 | N/A |
| LASD EM Deployment Sheet | LASD | July 31, 2016 | COLA035350-53 | N/A |
| LASD PM Deployment Sheet | LASD | July 31, 2016 | COLA035354-55 | N/A |
| LASD Incident History | LASD | July 31, 2016 | COLA035346-59 | N/A |
| LASD Incident Report | LASD | July 31, 2016 | COLA035360-62 | N/A |
| LASD Crime Analysis Supplemental Form | LASD | Undated | COLA035363-64 | N/A |
| LASD Supplemental Report | LASD | August 1, 2016 | COLA035365-68 | N/A |
| LASD Evidence and Property Page | LASD | July 31, 2016 | COLA035369-70 | N/A |
| LASD Major Incident Log | LASD | July 31, 2016 | COLA035371-74 | N/A |
| LASD Supplemental Report | LASD | July 31, 2016 | COLA035375-80 | N/A |
| LASD Witness Transportation Consent Form | LASD | July 31, 2016 | COLA035381 | N/A |
| State of California Transportation | | July 31, 2016 | COLA035382-83 | N/A |

| Consent Form | | | | |
|---|---|---|---|---|
| LASD Supplemental Report | LASD | July 31, 2016 | COLA035384-96 | N/A |
| LASD Memo | LASD | December 2, 2016 | COLA035397 | N/A |
| LASD Correspondence Sheriff's Office to Complainant | LASD | August 2, 2016 | COLA035398-99 | N/A |
| LACFD Notice to Suspend | LACFD | June 22, 2015 | COLA035403-08 | 434 |
| LACFD Notice to Suspend | LACFD | March 1, 2018 | COLA035409-16 | 435 |
| LACFD Confidential Memo | LACFD | May 29, 2015 | COLA035417-28 | 436 |
| LACFD Confidential Memo | LACFD | November 1, 2017 | COLA035429-37 | 437 |
| LACFD Letter of Reprimand | LACFD | March 27, 2019 | COLA035438-41 | 438 |
| Villanueva Recording, ABC-7, https://www.facebook.com/watch/live?v=875675446231021&ref=watch_permalink | ABC-7 | March 2, 2020 | COLA001182 | 303 |
| Villanueva Recording, NBC-4, https://www.nbclosangeles.com/news/local/sheriff-ordered-deletion-of-kobe-bryant-crash-photos-to-prevent-wider-distribution/2321002/ | NBC-4 | March 2, 2020 | COLA030878 | 305 |
| LA Times, Firing of LAPD Officer Upheld in Case of Leaked Rihanna Photo | LA Times | March 21, 2014 | N/A | N/A |
| LA Times, Rihanna Photo Sparks LAPD Probe | LA Times | February 21, 2009 | N/A | N/A |

| LA Times, LAPD Tries to Fire Cops Thought to Have Leaked Rihanna Photo to TMZ | LA Times | June 29, 2012 | N/A | N/A |
|---|---|---|---|---|
| LA Times, LAPD Officers Suspected of Leaking Rihanna Photo Won't Be Charged | LA Times | June 29, 2012 | N/A | N/A |
| https://cops.usdoj.gov/ric/Publications/cops-p164-pub-pdf | DOJ | Undated | N/A | N/A |

### B.   Defendants' Position

Opinion #1 is inadmissible under Rule 702 because Mr. Bercovici is not qualified to offer it; the opinion is not relevant to any viable theories underlying Plaintiff's *Monell* claim; the opinion is based upon speculation (not any scientific, technical or specialized knowledge); and the opinion is improperly based on Mr. Bercovici's assessment of the credibility of Defendants' witnesses.  The opinion should also be excluded under Rule 403 because it would confuse the jury and cause undue prejudice.

### 1.   Opinion #1 Is Inadmissible Under Rule 702

#### (a)   Mr. Bercovici Is Not Qualified to Opine on the "Pervasiveness" of Any Problem Within LASD or LACFD

"To qualify as an expert, a witness must have 'knowledge, skill, experience, training, or education' relevant to such evidence or fact in issue." *United States v. Chang*, 207 F.3d 1169, 1172 (9th Cir. 2000) (citation omitted).  To determine if an expert is qualified, the court must examine whether the witness' training, experience or specialized knowledge is sufficiently related to the subject matter upon which the witness offers an opinion.  *Gable v. Nat'l Broad. Co.*, 727 F. Supp. 2d 815, 833 (C.D. Cal. 2010).

1    "It is not enough that the proposed expert have expertise in an area of
2    knowledge.  The expertise must be relevant to the determination of the facts in
3    issue." *In re Canvas Specialty, Inc.,* 261 B.R. 12, 19 (Bankr. C.D. Cal. 2001).  The
4    proponent of the expert bears the burden of demonstrating that the expert is
5    qualified.  *United States v. 87.98 Acres of Land More or Less in the Cty. of*
6    *Merced,* 530 F.3d 899, 904–05 (9th Cir. 2008).

7    "General experience as a police officer, standing alone, is not sufficient to
8    qualify the officer as an expert in every area of law enforcement . . . ." *See, e.g.,*
9    *Thomas v. City of Monroe,* 157 F.3d 901, at *5 (5th Cir. 1998) (trial court properly
10   found that police officer with over 20 years of experience was not qualified as an
11   expert in area of police conduct relative to use of force, among other areas).

12   Prior to this case, Mr. Bercovici was precluded from doing exactly what
13   Plaintiff is seeking to do here—give an expert opinion at trial that he has no
14   qualifications to give.  In *Lasarte v. Custom Performance*, Mr. Bercovici was
15   retained to provide an expert opinion on an investigation conducted by the Food and
16   Drug Administration (FDA).  No. BC514465, 2018 WL 4513110, at *1 (Cal. Super.
17   Ct. July 9, 2018).  The plaintiff moved *in limine* to exclude his testimony because,
18   as here, Mr. Bercovici never worked for the FDA or conducted an FDA
19   investigation; had no personal involvement in the investigation at issue; had never
20   investigated whether a business was involved in the illicit sale of nitrous oxide, the
21   opinion he intended to offer at trial; and his extensive LAPD experience was not
22   sufficiently related to the FDA.  (Dkt. 251-1 at 7.)  The court therefore precluded
23   Mr. Bercovici from testifying at trial.

24   Here, Mr. Bercovici's opinion is based on his 30-year career at the City of
25   Los Angeles in the Los Angeles Police Department ("LAPD").  Mr. Bercovici never
26   worked for LASD, LACFD or the County.

27   Mr. Bercovici bases this opinion—that Defendants knew about a pervasive
28   practice of taking and sharing photographs within the law enforcement

community—on specific incidents he has "personally observed": officers taking Polaroids of human remains, retaining photos as "personal souvenirs," showing off gruesome photos in locker rooms, creating "death books" and more.  (Offer of Proof, Ex. A at 5-10.)  But these were all purported actions by LAPD officers—not LASD or LACFD personnel.

Mr. Bercovici admits he has no knowledge of anyone from LASD improperly taking or sharing photos of human remains prior to this case.  (Offer of Proof, Ex. B at 60:15-61:10; 84:14-18; 89:3-12.)  He never heard of LASD personnel sharing gruesome photos in a locker room; never saw a "death book" from anyone at LASD; and does not know of any LASD personnel who enjoy death images.  (*Id.* at 63:4-17; 75:1-7.)

Mr. Bercovici's specialized knowledge about the "pervasiveness" of this problem among LAPD is speculation by extrapolation.  His career at LAPD does not give him a basis to opine on the "pervasiveness" of problems within other law enforcement agencies about which he has no knowledge, experience or training.  He is not qualified under Rule 702: *United States v. Miller*, 874 F.2d 1255, 1267-68 (9th Cir. 1989) (witness not qualified to testify on recruitment tactics used by Soviet intelligence agency where he had no practical experience in Soviet recruitment and had not made any special study of the subject); *Chang*, 207 F.3d at 1172-73 (district court properly excluded opinion on authenticity of certificate where expert had no formal training in identifying counterfeit securities); *Gable*, 727 F. Supp. 2d at 833-35 (copyright law expert not qualified to render opinion on similarities between TV show and screenplay without specialized training in literary analysis); *Dominguez v. City of Los Angeles*, No. CV 17-4557-DMG (PLAx), 2018 WL 6164278, at *8-9 (C.D. Cal. Oct. 9, 2018) (excluding opinion on trajectory of bullet where witness was not an expert in ballistics, medicine or biomechanics).

Plaintiff argues that Mr. Bercovici has "collaborated extensively" with other law enforcement agencies, including LASD, throughout his career.  But the fact that

Mr. Bercovici has interacted with LASD personnel over the course of his 30-year LAPD career does not qualify him to give an expert opinion on the pervasiveness of problems within LASD.  And there is no indication that Mr. Bercovici has ever had *any* interactions with LACFD personnel, let alone "collaborated extensively" with them.  He is not qualified to give Opinion #1.

### (b)   The Opinion Is Irrelevant to Plaintiff's *Monell* Claim

Plaintiff alleged three *Monell* theories in her First Amended Complaint ("FAC"): (i) failure to train; (ii) failure to adequately investigate and discipline; and (iii) a County "pattern of practice and/or custom of unnecessarily taking and sharing death images."  (FAC ¶¶ 81-86.)  In her opposition to Defendants' Motion for Summary Judgment, Plaintiff abandoned all but the training theory.  [Dkt. No. 190 at 18:5-20:9.]  *See Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008) ("[P]laintiff has 'abandoned … claims by not raising them in opposition to [the defendant's] motion for summary judgment.'" (second and third alterations in original) (citation omitted)).

Accordingly, Mr. Bercovici's opinion about the "pervasive" practice of improper taking and sharing of death images is not relevant to Plaintiff's claims. *Jones v. Spentonbush-Red Star Co.*, 155 F.3d 587, 593 (2d Cir. 1998) ("[E]vidence offered to prove a matter not at issue is immaterial."); *Wyatt Tech. Corp. v. Malvern Instruments, Inc.*, No. CV 07-8298 ABC (MANx), 2010 WL 11505684, at *13 (C.D. Cal. Jan. 25, 2010) (granting motion *in limine* precluding evidence about categories of trade secrets that no longer remained after summary judgment), *aff'd in part*, 526 F. App'x 761 (9th Cir. 2013).

Plaintiff's attempt to squeeze Opinion #1 into the training theory does not work.  This opinion falls squarely within the "pattern of practice and/or custom" theory, which she has abandoned.

(c)     **The Opinion Is Speculative and Will Not Assist The Jury**

Mr. Bercovici has done no personal investigation into this case and has never even looked to see whether any County photographs of the crash site exist on the Internet or otherwise.  (Offer of Proof, Ex. B at 72:15-19.)  Instead of basing his opinions on scientific, technical or other specialized knowledge, as Rule 702 requires, Mr. Bercovici's opinions are based on speculation—sometimes (as he testified) a "smell test" (*id.* at 124:15-125:16); other times "picking up on" things (*id.* at 90:3-91:10).  For example:

- Based on the problem of taking/sharing death images he witnessed at LAPD, Mr. Bercovici makes a "reasonable extrapolation . . . that this [problem] exists across law enforcement across the country including [LASD]."  (*Id.* at 77:4-17; 93:19-94:17 ("I'm extrapolating that from my experience [at LAPD]").)  Mr. Bercovici admits that he "ha[s] no idea how many—how often this behavior occurred" within the County.  (*Id.* at 83:14-84:13.)

- Mr. Bercovici speculates that the reason LASD did not receive prior complaints about improper taking or sharing of photos of human remains is "because those photos are usually shared with other members of the law enforcement community or their family or friends, who are reluctant to report the misconduct."  (Dkt. No. 190-1 [Bercovici Decl. ¶ 15].)

- Mr. Bercovici bases this opinion on unidentified social media posts containing pixelated photos of deceased or injured persons.  (Offer of Proof, Ex. A at 8 n.5.)  But Mr. Bercovici admits that he does not know anything about how these photos were obtained or why they were posted: Q: "And you have no idea whether the consent was obtained for those people to post those photos; correct?"  A: "I have no idea what the process is, no."  (*Id.* Ex. B at 85:14-17.)

Mr. Bercovici's speculative opinion is inadmissible under Rule 702.  *Diviero v. Uniroyal Goodrich Tire Co.*, 114 F.3d 851, 853 (9th Cir. 1997) (affirming district court's exclusion of expert opinions because they were speculative and did not assist the trier of fact); *Guidroz–Brault v. Mo. Pac. R.R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001) (expert testimony does not include speculation).

### (d)    The Opinion Improperly Discredits Defendants' Credibility

This opinion is based on Mr. Bercovici's assessment of the credibility of Defendants' witnesses.  In forming this opinion, Mr. Bercovici discredits LASD deputies' testimony that, prior to this incident, they were not aware of any improper taking or sharing of death images:

> **Q:** "[Y]ou sitting here have acknowledged that the deposition testimony given by Los Angeles County Sheriff's deputies that you have reviewed has consistently been that prior to this incident the Sheriff's Department was not aware of any taking and sharing of any improper photos regarding human remains; correct?"

> **A:** "That's a difficult question to answer because in reading the depositions of – of the deputies involved, you know -- I mean to be frank, they all appear to be scrambling to a degree because they know they're in hot water . . . . So are they really going to cop out in their deposition that these photographs were shared?"  (Offer of Proof, Ex. B at 90:13 – 91:10.)

Mr. Bercovici's opinion is based on how he judges the credibility of Defendants' witnesses, which is impermissible.  *United States v. Barnard*, 490 F.2d 907, 912 (9th Cir. 1973) ("Credibility . . . is for the jury— the jury is the lie detector in the courtroom."); *United States v. Amaral*, 488 F.2d 1148, 1153 (9th Cir. 1973) (expert testimony on the unreliability of eyewitness testimony properly excluded); *Wisler v. City of Fresno*, No. CV F 06-1694 AWI SMS, 2008 WL 2880442, at *4 (E.D. Cal. July 22, 2008) (excluding opinions inferring that officers were lying because credibility is an issue for the jury); *Godinez v. Huerta,* No. 16-cv-0236-BAS-NLS, 2018 WL 2018048, at *6 (S.D. Cal. May 1, 2018) (precluding expert from making credibility determinations).

### (e)    The Opinion About Defendants' Intent Is Irrelevant

This opinion is based on Mr. Bercovici's assessment of Defendants' state of mind and subjective intent, which is improper.  For example, Mr. Bercovici intends to testify that Fire Captain Tony Imbrenda's conduct is consistent with "how and

why people share death scene images"—because they enjoy it; to show they are "in the know"; or to project heroism or masculinity.   (Offer of Proof at Ex. A, 7-8.)

This opinion is not based upon knowledge, skill, experience, training, or education; and it is not helpful to the jury.  It is plainly improper: *M.H. v. County of Alameda*, No. 11-cv-02868-JST, 2015 WL 54400, at *2 (N.D. Cal. Jan. 2, 2015) (an expert may not testify as to defendant's subjective state of mind); *Georges v. Novartis Pharm. Corp.*, No. CV 06-05207 SJO (VBKx), 2013 WL 5217198, at *15 (C.D. Cal. Apr. 4, 2013) (precluding expert opinions on defendant's intent, motivations or state of mind); *Hill v. Novartis Pharm. Corp.*, No. 1:06-cv-00939-AWI-DLB, 2012 WL 5451816, at *2 (E.D. Cal. Nov. 7, 2012) (same).

### 2.   Opinion #1 Should Be Excluded Under Rule 403 Because It Would Confuse The Jury And Cause Undue Prejudice

Allowing Mr. Bercovici to offer this irrelevant, speculative opinion would be profoundly confusing and misleading.  It could lead the jury to believe that certain *Monell* theories are still part of this case despite Plaintiff having abandoned them. Defendants will be forced either to ignore Mr. Bercovici's irrelevant opinion and hope the jury understands the proper parameters of Plaintiff's *Monell* claim, or spend valuable trial time introducing witnesses and evidence to defend against abandoned claims.  It would also confuse the jury regarding the fact that it is exclusively their role to determine which witnesses are credible.  *See United States v. Benally*, 541 F.3d 990, 995 (10th Cir. 2008) (expert testimony on credibility of other witnesses unduly influences the jury and should be excluded under Rule 403).

Moreover, admission of Mr. Bercovici's testimony would be unduly prejudicial to Defendants.  Mr. Bercovici has been on TV and has worked on other high-profile cases.  Jurors could be swayed by his background and give undo weight to his unfounded and unreliable testimony because he is called an "expert."

Accordingly, his testimony should be excluded under Rule 403.  *See United States v. Brown*, 871 F.3d 532, 539 (7th Cir. 2017) (district court properly excluded

expert testimony where its admission "may have induced the jurors to defer to [the expert's] conclusion rather than drawing their own").

### 3.   Mr. Bercovici Improperly Relies On Materials Not Disclosed In His Report

Plaintiff's Offer of Proof reveals that, in forming Opinion #1, Mr. Bercovici improperly relied on materials not disclosed in his report (Offer of Proof, Ex. A). To the extent Opinion #1 is based on any of the materials listed below, it should be excluded:

| Letter to Jordan re Intention to Discharge and attachment | LACFD | December 2, 2020 | COLA001341-1378 | 26 |
|---|---|---|---|---|
| Letter to Imbrenda re Intention to Discharge and attachment | LACFD | December 2, 2020 | COLA001384-1421 | 27 |
| Letter to Kahan re Intention to Suspend and attachment | LACFD | December 2, 2020 | COLA001311-1340 | 28 |
| Email thread from T. Schrader to B. Grubb re: Contact US - LASD.org "Kobe" | Ralph Mendez | January 29, 2020 | COLA007128 | N/A |
| Email thread from L. Corvera to F. Tse re: AB2655 | Lina Corvera | May 7, 2020 | COLA035825-26 | N/A |

### C.   Proffering Party's Response (Plaintiff)

### 1.   Opinion #1 Is Admissible Under Rule 702

### (a)   Mr. Bercovici Is Well-Qualified

Mr. Bercovici's thirty years of experience in law enforcement in Southern California amply qualify him to opine on the pervasiveness of death photos in law enforcement culture, the extent to which the practice was widely known, whether express and specific policies were needed to address the problem, and whether that would have been obvious to reasonable law enforcement leaders.  As detailed above,

1    he has extensive firsthand experience with all of these issues.  *See supra* at 6-9.

2         Defendants argue that Mr. Bercovici should be precluded because he worked

3    for LAPD, not LASD (or LACFD).  But they cite no authority that an expert must

4    have worked for the exact same agency to have sufficient experience to opine about

5    the practices of law enforcement generally, including at that agency.  On the

6    contrary, courts routinely allow law enforcement experts who gained experience

7    with one agency to testify about practices extending to law enforcement generally or

8    at other nearby agencies.  *See, e.g., Castro v. Cnty. of L.A.*, 2015 WL 4694070, at

9    *12 (C.D. Cal. Aug. 3, 2015) (allowing 20-year veteran of LAPD to testify as expert

10   in police practices in case involving conduct of LASD deputies); *Dominguez v. City*

11   *of Los Angeles*, 2018 WL 6164278, at *12-13 (C.D. Cal. Oct. 9, 2018) (allowing

12   former LASD officer to testify as police practices expert in *Monell* case alleging

13   misconduct by LAPD), *aff'd*, 836 F. App'x 489 (9th Cir. 2020); *Kreuzer v. City of*

14   *Hous.*, 2005 WL 5977653, at *1 (S.D. Tex. Apr. 8, 2005) (allowing expert

15   testimony regarding "the culture of police departments" from expert who never

16   worked at specific police department involved); *Hogan v. City of Easton*, 2007 WL

17   4859769, at *1 (E.D. Pa. Apr. 16, 2007) (allowing former LAPD officer to testify

18   that "absence of necessary policies, procedures, and supervision" within a

19   Pennsylvania police department "created a systemic culture, pattern, and practice"

20   that contributed to violation and "demonstrated an unnecessary reckless disregard

21   for [plaintiff's] safety"); *Valentin v. New York City*, 1997 WL 33323099, at *23

22   (E.D.N.Y. Sept. 9, 1997)  (allowing expert with experience in NYPD to testify about

23   "culture and biases" in NY Housing Police; differences between agencies go to

24   weight not admissibility).

25         In arguing that Mr. Bercovici's opinions are based solely on his experience at

26   LAPD, Defendants simply ignore the portions of Mr. Bercovici's report and

27   testimony that show otherwise:

28         •      From 2000 to 2003, Mr. Bercovici was the Officer-in-Charge of a

multi-agency task force and had "direct supervision of personnel from the Los Angeles County Sheriff's Department" and other agencies, through which he "became familiar with the practices and culture of these law enforcement agencies." (Ex. A at 4.)  For a further seven years, he was the Officer-in-Charge of a unit that collaborated with LASD.  (*Id.*)  Beginning the in the 1980s, and continuing over his decades of law enforcement work, Mr. Bercovici trained and worked with LASD officers.  (Ex. B at 24:12-25:7, 80:8-14.)

•      Mr. Bercovici personally observed instances of death photo sharing not just among LAPD officers, but other Southern California law enforcement personnel including the California Highway Patrol.  (Ex. A at 6)

•      Mr. Bercovici reviewed documentation showing similar past incidents at LASD and LACFD where their personnel used personal devices to take photos of victims' remains and make inappropriate comments about them, which were consistent with "the kind of … behavior that [he] witnesses over [his] thirty-year career." (*Id.* at 8-9.)

•      Mr. Bercovici reviewed social media posts associated with LASD showing gratuitous photos of dead and injured victims.  (*Id.* at 8 & n.5.)

•      Mr. Bercovici reviewed the evidence of what numerous LASD and LACFD personnel did in this case and what they said about it, including the fact that the personnel did not believe it was wrong.  (*Id.* at 7-8, 10; Ex. B at 94:7-21.)  This evidence was again consistent with Mr. Bercovici's own experience.  (Ex. A at 7-9.)

•      Mr. Bercovici reviewed recordings of statements by Sheriff Villaneuva describing the extent of the problem in law enforcement.  (Ex. A at 6, 9 & nn.1, 6.)

•      Mr. Bercovici reviewed books and articles documenting practices of photo collecting and sharing among law enforcement.  (*Id.* at 8-9 & n.2.)

•      Mr. Bercovici has been extensively trained and certified under a statewide program called California Peace Officer Standards & Training ("POST"). (Ex. C at 2; Ex. B at 13:13-15:7.)

1      • In Mr. Bercovici's experience, big agencies like LAPD and LASD have

2  similar problems and issues.  In cross-agency internal investigations he worked on,

3  he saw LASD having similar behavioral issues as LAPD, and he learned the same

4  thing in POST management training with supervisors from LASD.  Other than the

5  fact that LASD operates jails while LAPD doesn't, an issue not relevant here, in Mr.

6  Bercovici's experience the two agencies have similar issues and problems. (Ex. B at

7  77:4-80:14.)

8      Mr. Bercovici's extensive experience in law enforcement, including working

9  with personnel from LASD and other agencies, puts him in a position to offer

10  helpful testimony to the jury about law enforcement culture and practices in

11  Southern California; to assess the incidents of death photo sharing at LASD and

12  LACFD, place them in context, and conclude that they are consistent with his own

13  experiences working with LAPD, LASD, and other law enforcement offers; to give

14  an overall sense of the prevalence and widespread understanding of the problem;

15  and to explain why it would be obvious to leadership that clear policies backed by

16  training and discipline are needed to solve that problem.

17      Mr. Bercovici explained why, in his experience, LASD and LAPD are

18  similarly situated.  (Ex. B at 77:4-80:14.)  Defendants point to no examples or

19  evidence of meaningful differences between LASD and LAPD on these issues.

20  Sheriff Villanueva himself acknowledged that death photos are a general and

21  pervasive problem across all law enforcement.  Ex. A at 9 (quoting Sheriff's

22  admission that "ever since they invented the polaroid," the improper taking and

23  sharing of photos of human remains "has been a problem in law enforcement across

24  the nation").  And Plaintiffs offer no explanation for why Mr. Bercovici's

25  experiences with correcting officer behavior through policies, training, and

26  discipline would not apply equally to LASD.

27      Defendants' reliance on *Lasarte v. Custom Performance*, 2018 WL 4513110

28  (L.A. Cnty. Super. Ct. July 9, 2018), is misplaced.  Mr. Bercovici's testimony was

precluded there because, as a law enforcement expert, he lacked experience with the very different world of the Food and Drug Administration and its investigative procedures.  But this case involves a law enforcement agency and the very kinds of conduct, policies, and investigative standards with which Mr. Bercovici is well-versed.  Likewise unhelpful to Defendants is *Thomas v. City of Monroe*, 1998 WL 611550 (5th Cir. Aug. 19, 1998) (unpublished and non-precedential), where the proffered expert on use of force testified that he had not dealt with use of force and did not have any special training in it.  *Id.* at *5.  Here, Mr. Bercovici plainly has experience in the practice of taking and sharing photos of victims' remains and in correcting that behavior through implementation of policies, as well as special training in supervising and managing law enforcement.  These cases simply reinforce the importance of having expertise and specialized knowledge in a specific subject matter, which Mr. Bercovici has.

Because Rule 702 "contemplates a *broad conception* of expert qualifications," only a "*minimal foundation* of knowledge, skill, and experience" is required.  *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1015-16 (9th Cir. 2004).  Defendants' arguments about Mr. Bercovici's "lack of particularized expertise goes to the weight accorded [his] testimony, not to the admissibility of [his] opinion as an expert."  *United States v. Garcia*, 7 F.3d 885, 890 (9th Cir. 1993); *see also Valentin*, 1997 WL 33323099, at *23 ("[T]o the extent that there are any significant relevant differences between the policies and practices of the NYPD and the Housing Police, these differences go not to the admissibility of Dr. Leinen's testimony, but rather to the weight given by the factfinder to this testimony").

**(b)   Defendants' Relevance / Waiver Argument Is Meritless**

Defendants make a specious argument that Mr. Bercovici's opinion is irrelevant because Plaintiff has abandoned her *Monell* theory based on custom or practice.

First, Plaintiff did not abandon the theory by defeating Defendants' summary judgment motion on other grounds.  A party of course is not required to raise every possible issue to successfully oppose summary judgment; as the Court noted, it need only show that a disputed issue of material fact exists.  *See Long v. Howard Univ.,* 550 F.3d 21, 24 (D.C. Cir. 2008) (finding no requirement that "a party assert a . . . defense in opposition to a summary-judgment motion in order to assert it at trial"); *Daingerfield Island Protective Soc'y v. Babbitt,* 40 F.3d 442, 445 (D.C. Cir. 1994) (holding that after party raised affirmative defense in its answer, it was "not required to reassert the defense in its subsequent successful summary judgment motion" in order to avoid abandonment).  Defendants cite *Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008), which addresses the completely different question of whether a party who *lost* summary judgment may advance *on appeal* an issue it failed to raise in its opposition below.  *Id*.  In any event, Plaintiff never abandoned her custom and practice theory.  Plaintiff's First Amended Complaint ("FAC") expressly pleads a custom or practice theory.  (ECF No. 54 ¶ 85.)   Plaintiff's summary judgment opposition advanced these same points and supplied ample evidence (including Mr. Bercovici's expert testimony) in support.  (ECF No. 190 at 18-19; ECF No. 191 ¶¶ 128, 489-490, 569-576.)

Second, Mr. Bercovici's testimony is relevant to the failure to train theory that Defendants concede to be at issue, because—as explained above—such a theory requires proof that the agency was "deliberately indifferent" to "the known or obvious consequences of [its] failure to train," and that the failure to train played a substantial part in causing the injury.  *See* 9th Cir. Model Instr. 9.8; *supra* at 3.

### (c)  Mr. Bercovici's Opinions Are Based on Facts and Experience, Not Speculation

Defendants' assertion that Mr. Bercovici has done no personal investigation into this case is false.  As set forth above and in his report, he reviewed numerous materials documenting the misconduct that occurred here and its investigation by

Defendants, as well as the absence of any policy or training by Defendants.  He also relied on his extensive personal experience and knowledge as a law enforcement officer and supervisor of law enforcement officers, which he applied to those facts to arrive at his opinion.  For example, his opinion that the dearth of complaints is unsurprising because the sharing usually occurs with other members of law enforcement or their family or friends, who are reluctant to report it, is squarely tied to his own personal experience observing this phenomenon.  (Ex. A at 5-10.)

Mr. Bercovici also explained why, based on his experience, LASD and LAPD are similar, such that his experiences at LASD are relevant. (Ex. B at 77:4-80:14.) He also explained that this was confirmed by the evidence he reviewed of what the LASD personnel did in this case and in prior incidents of misconduct, which are consistent with his own experiences.  (Ex. A at 7-9; Ex. B at 94:2-21.)  This is not speculation; it is the rational application of experience to facts.

Defendants' complaints that Mr. Bercovici cannot say exactly how often this behavior occurred at LASD, or all the details of how the photos on LASD's social media posts were obtained, are at most issues that go to weight; Defendants are free to explore them in cross-examination.

### (d)   Mr. Bercovici Does Not Opine on Witness Credibility or Subjective State of Mind

Mr. Bercovici has not been asked to opine on witness credibility, and Plaintiff has not proffered any such opinion.  Defendants point to an instance where *they asked him* in his deposition to react to deposition testimony by LASD deputies that they were not aware of any taking or sharing of improper photos.  *See supra* at 19 (citing Ex. B at 90:13-91:10).

Nor is Mr. Bercovici opining on the subjective state of mind of any person. Rather, he is testifying based on experience to what was pervasive, widely-known, and obvious.  That form of opinion is permissible.  *See, e.g.*, *M.H. v. Cnty. of Alameda*, 2015 WL 54400, at *1-2 (N.D. Cal. Jan. 2, 2015) (experts allowed to

testify about generally accepted law enforcement standards, customs, or practices, including what officers are expected to know, and on that basis "may opine as to what Defendants 'knew' or 'should have known.'").

Here, Mr. Bercovici used the example of Mr. Imbrenda showing off the photos to illustrate the culture he personally witnessed throughout his 30-year career. He was not offering an opinion on Mr. Imbrenda's actual state of mind or intent—just that Mr. Imbrenda's conduct in showing the photos to colleagues and their spouses at a public event was consistent with behavior he had personally witnessed as an officer in the field. Mr. Bercovici's testimony provides insight into why photos like that are kept and circulated. He also states that, in his experience, this behavior is the result of a lack of specific training or an explicit policy against taking and sharing photos. Mr. Bercovici focuses his testimony on whether the behavior comported with relevant standards.

### 2. There Is No Unfair Prejudice That Substantially Outweighs the Probative Value of the Evidence

Defendants show no unfair prejudice, let alone one that would substantially outweigh the probative value of Mr. Bercovici's plainly relevant opinion. They argue that time would be wasted on abandoned theories, or confuse the jury about who makes credibility determinations, but that is wrong as explained above. *See supra* at 25-28. Defendants express concern that the jury will be swayed by Mr. Bercovici's extensive and impressive background and experience, but that is inherent in expert testimony with any qualified witness.

### 3. The Listed Reliance Materials Were Disclosed in Mr. Bercovici's Report

Defendants are wrong that materials listed in Plaintiff's Offer of Proof were not disclosed in his report. They were all disclosed:

| Document | Where Disclosed |
|---|---|
| Letter to Jordan re Intention to Discharge and attachment | Ex. A at 23 ("Los Angeles County Fire Department Internal Complaint and disciplinary recommendations") |
| Letter to Imbrenda re Intention to Discharge and attachment | Ex. A at 7-8 ("internal investigation report by the Los Angeles County Fire Department, which concluded that Fire Captain Tony Imbrenda displayed photos of human remains at the scene of the helicopter crash to colleagues and members of the public during a cocktail hour at an awards banquet"); Ex. A at 23 ("Los Angeles County Fire Department Internal Complaint and disciplinary recommendations") |
| Letter to Kahan re Intention to Suspend and attachment | Ex. A at 23 ("Los Angeles County Fire Department Internal Complaint and disciplinary recommendations") |
| Email thread from T. Schrader to B. Grubb re: Contact US - LASD.org "Kobe" | Ex. A at 24 ("Email Complainant Mendez to SIB") |
| Email thread from L. Corvera to F. Tse re: AB2655 | Ex. A at 25 ("Email Covera to Fong") |

## II.    OPINION #2: NO LEGITIMATE PURPOSE FOR TAKING THE DEATH PHOTOS IN THIS CASE

Mr. Bercovici will testify that there was no legitimate purpose for LASD and LACFD personnel at the scene of the helicopter accident on January 26 and 27, 2020 to take photos, especially photos focused on human remains, or to share those photos later, and that this conduct reflects and was caused by a lack of training and proper discipline and oversight.  (Ex. A at 1, 10-12.)

More granularly, and as part of this opinion, Mr. Bercovici will opine that:

• There is no purpose for a law enforcement officer at the scene of an aircraft accident to take numerous photos that are focused on human remains. (*Id*. at 10-11.)

• The role of law enforcement officers in the case of an aircraft accident is subordinate to other agencies that investigate and conduct rescue operations (the NTSB, FAA, and fire operations), and is to provide support to these other agencies such as scene control and maintaining ingress and egress routes for public safety and civilian traffic. (*Id*. at 11; Ex. B at 33:21-35:14.)

• That LASD personnel took numerous photographs of the scene, including photos focused on remains, reflects a lack of discipline and command and control at the crash site, a lack of training, and a lack of leadership and supervision. (Ex. A at 11-12.)

• That LASD personnel shared the photographs afterwards also reflects a lack of discipline and training. (*Id*. at 11.)

• To perform properly at a major critical event like the helicopter accident on January 26, 2020, subordinate personnel like the LASD officers on the scene require training and leadership that includes a combination of fairness, consistent supervision, clearly communicated expectations, clear policy, and the effective enforcement of policy. (*Id*. at 11-12.)

• The taking and sharing of photographs of victims' remains occurred because of a lack of training, oversight, supervision, discipline, and leadership that was department-wide in scope. (*Id*.)

A. **Proffering Party's Position (Plaintiff)**

1. **Relevance of Opinion #2**

In order to establish a violation of her Fourteenth Amendment right to privacy in the remains and death scene of her husband and daughter, as a predicate for her section 1983 *Monell* claim, Plaintiff must show that Defendants engaged in an

"unwarranted" intrusion into that privacy and that the conduct "shocks the conscience." *See Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1153-54 (9th Cir. 2012). Mr. Bercovici's opinion that there was no legitimate purpose for Defendants' personnel to take (or subsequently share) photographs that focused on human remains is directly relevant to whether their conduct was unwarranted and shocks the conscience. *See id.* at 1155 ("This intrusion into the grief of a mother over her dead son—without any legitimate governmental purpose—'shocks the conscience' and therefore violates Marsh's substantive due process right.").

Also, to establish *Monell* liability against the agencies, Plaintiff must show that Defendants' practice, custom, failure to train, or failure to implement a policy caused harm to Plaintiff. *See* 9th Cir. Model Instr. Nos. 9.5, 9.8. Mr. Bercovici's opinions help show that Defendants' employees' conduct at the scene shows—and was caused by—a failure to train and implement adequate policies.

Mr. Bercovici's opinions are similarly relevant to Plaintiff's state-law claims. Plaintiff's negligence claim alleges a violation of Defendants' duty "refrain from exploiting gruesome death images by disseminating them to friends and family members or others with no involvement in official [law enforcement] activities." *Catsouras v. Dep't of Cal. Highway Patrol*, 181 Cal. App. 4th 856, 884 (2010); *see also Bryant v. Cnty. of L.A.*, 2020 WL 8024857, at *7 (C.D. Cal. Dec. 28, 2020) ("*Catsouras* strongly supports the existence of a duty in this case with respect to the LASD deputies who took the photos of the victims and shared them with others others . . . ."). And Plaintiff's privacy claim requires showing that Defendants' conduct "would be highly offensive to a reasonable person" and/or that the disclosed private information was "not of legitimate public concern." *See* CACI Nos. 1800, 1801. Mr. Bercovici's opinion that Defendants' personnel took and shared photos without any legitimate purpose is directly relevant to whether Defendants acted negligently, as opposed to properly, and whether that conduct was highly offensive and disclosed information of no legitimate public concern.

1   Mr. Bercovici's opinions about the role of law enforcement at the accident
2   scene also rebut arguments that Defendants have made that they took the photos to
3   help with identification efforts.  Mr. Bercovici's testimony provides important
4   context for the jury to evaluate the strength of Defendants' arguments and Plaintiff's
5   contention that there was no legitimate purpose for the taking and sharing of these
6   photographs.

7                  **2.      Basis for Opinion #2**

8   Mr. Bercovici's thirty years of law enforcement experience in Los Angeles is
9   a significant part of the basis of his opinion.  He has extensive experience providing
10  law enforcement support to accident scenes—many of which involve human
11  remains—both in being present at such scenes and supervising officers present at
12  such scenes.  (Ex. A at 3-5, 7.)  He regularly responded to crime and accident scenes
13  that contained human remains and participated in many death investigations.  (_Id._)
14  He has specific experience providing law enforcement support at the scenes of
15  aircraft accidents, including aircraft accidents that involve fatalities and human
16  remains.  (_Id_. at 3.)  Through those experiences over his years of service, he became
17  familiar with the responsibilities of a law enforcement officer when responding to
18  critical incidents, including aircraft accidents and incidents involving human
19  remains.  (_Id_. at 3-5.)

20  Mr. Bercovici also has personal experience in the role that policies, training,
21  leadership, supervision, oversight, and discipline play in officer behavior, including
22  officer behavior at accident scenes and officer behavior with respect to death photos.
23  Mr. Bercovici routinely observed officers both responding to accident scenes and
24  taking and sharing death photos; and he spent a significant portion of his career
25  supervising other officers, including officers who responded to accident and crime
26  scenes involving human remains.  (_Id_. at 3-7; Ex. B at 59:3-60:2, 87:2-88:23.)
27  When he was a Sergeant and later Lieutenant, he established a policy for his units
28  that personal devices were never to be used to photograph human remains and that

the job of the police at a catastrophic scene was to secure the location until the proper investigative resources were able to respond, but saw that the improper taking and sharing of graphic photographs continued to occur in other units and departments in Southern California.  (Ex. A at 7; Ex. B at 65:21-70:14, 73:8-25.) Mr. Bercovici also investigated complaints regarding fellow officers and recommended discipline.  (Ex. A at 3.)

In addition, Mr. Bercovici relied on various materials, including witness testimony that one LASD officer took more than 100 photos of the crash scene; internal investigation reports concluding that manty of the photos were lose-ups of human remains; the LASD policy manual's section describing officer responsibilities at the scene of an aircraft accident; and Sheriff Villanueva's public statements that only the NTSB and Coroner's Office should have been taking photos and that no one else had a reason to be taking photos.  These materials are listed in the table below:

### Documents Relied upon in Forming Opinion #2

| Title | Author | Date | Bates | TREX |
|---|---|---|---|---|
| Deposition Transcript of Hector Mancinas | Hector Mancinas | September 27, 2021 | N/A | N/A |
| Spread Sheet Training for Joey Cruz | Joey Cruz | August 24, 2021 | COLA035400 | N/A |
| Additional POST Training for Joey Cruz | Cal. Comm'n on POST | August 24, 2021 | COLA035401-02 | N/A |
| FAC Exhibit 2 LASD Manual and Policy Section 5-09/475.00 | LASD | September 10, 2020 | N/A | N/A |
| FAC Exhibit 3 LASD Manual and Policy Volume 3 - Chapter 1 (Policy and Ethics) | LASD | Undated | N/A | 613 |

| LASD IAB Investigation Report No. IV2504757 | LASD | Undated | COLA000001-1140 | 600; 134; 135 |
|---|---|---|---|---|
| Letter to Jordan re Intention to Discharge and attachment | LACFD | December 2, 2020 | COLA001341-1378 | 26 |
| Letter to Imbrenda re Intention to Discharge and attachment | LACFD | December 2, 2020 | COLA001384-1421 | 27 |
| Letter to Kahan re Intention to Suspend and attachment | LACFD | December 2, 2020 | COLA001311-1340 | 28 |
| Field Operations Newsletter Proposal | LASD | Undated | COLA035451 | N/A |
| POST Training Records for Michael Russell | Cal. Comm'n on POST | August 24, 2021 | COLA035454-55 | N/A |
| POST Training Records for Rafael Mejia | Cal. Comm'n on POST | August 24, 2021 | COLA035468-70 | N/A |
| POST Training Records for Raul Versales | Cal. Comm'n on POST | August 24, 2021 | COLA035472-74 | N/A |
| Links to Newsletter 20-15: Safeguarding the Integrity of Department Investigations | LASD | July 29, 2020 | COLA035465-66 | N/A |
| Additional POST Training Records for Rafael Mejia | Cal. Comm'n on POST | August 24, 2021 | COLA035468-70 | N/A |
| Memorandum from C. Jauregui to H. Mancinas re: Willow Incident Photographs | Christopher Jauregui | January 31, 2020 | COLA004013-14 | 57 |
| County Policy of Equity Report/Notification Form | L.A. Cnty. | October 23, 2020 | COLA035480-88 | N/A |

| Email from D. Katz to J. Warren re: Good Morning!! | Joana Warren | February 6, 2020 | COLA005852 | N/A |
|---|---|---|---|---|
| County of Los Angeles Incident Jurisdictional Form | LACFD | January 26, 2020 | COLA006998-99 | N/A |
| Email thread from D. Kneer to M. Vander Horck & C. Reed re R. Mendez complaint | Ralph Mendez | January 29, 2020 | COLA007135-36 | 126 |
| Email thread from T. Schrader to B. Grubb re: Contact US - LASD.org "Kobe" | Ralph Mendez | January 29, 2020 | COLA007128 | N/A |
| Email from T. Schrader to J. Diez re: Contact Us - LASD.org "Kobe" | Ralph Mendez | January 29, 2020 | COLA007129; COLA007130 | N/A |
| LASD Supplemental Report 920-00536-2244-496 | LASD | January 26, 2020 | COLA007249-52 | 33 |
| Email thread from A. Tchekmedyian (L.A. Times) to J. Valdez re: LA Times follow up re Lost Hills | L.A. Times | February 26, 2020 | COLA007318-20 | 72 |
| Email from V. Chow to Various Recipients re: Media Statements | LASD | March 1, 2020 | COLA007375 | N/A |
| Email thread from M. Vander Horck to A. Tchekmedyian re: LA Times Inquiry | L.A. Times | March 2, 2020 | COLA007391 | N/A |
| Email thread from S. Gross to D. Kneer re: Contact US - LASD.org "Kobe" | Ralph Mendez | January 29, 2020 | COLA009784 | 152 |
| Email thread from J. Diez to H. Mancinas & M. Vander Horck | Ralph Mendez | January 29, 2020 | COLA009758-59 | 53 |

JOINT STATEMENT FOR PLAINTIFF'S EXPERT ADAM BERCOVICI

| | | | | |
|---|---|---|---|---|
| Email thread from M. Velazquez to D. Alkonis re: CBS NEWS REQUEST FOR KOBE BRYANT CRASH FOOTAGE | Maryhelen Campa | February 14, 2020 | COLA010626-29 | N/A |
| Email thread from C. Stelter to J. Warren re: Department and Photos | Joana Warren | March 9, 2020 | COLA033883-85 | N/A |
| Watch Commander's Report 243817 | LASD | July 31, 2016 | COLA035335-99 | 85 |
| LASD Newsletter 20-04 | LASD | February 12, 2020 | COLA035442-44 | N/A |
| Email thread from L. Corvera to F. Tse re: AB2655 | Lina Corvera | May 7, 2020 | COLA035825-26 | N/A |
| Executive Summary Proposed Manual Revision 2020-014-03 | LASD | March 14, 2020 | COLA035827-28 | N/A |
| Executive Summary Proposed Manual Revision 2020-006-01 | LASD | June 1, 2020 | COLA035829-30 | N/A |
| Manual of Policy and Procedures 2-11/020.00-Aero Bureau | LASD | September 28, 2021 | N/A | N/A |
| Manual of Policy and Procedures 4-04/025.00-Aircraft | LASD | September 28, 2021 | N/A | N/A |
| Manual of Policy and Procedures 4-19/010.00-Person Dead | LASD | September 28, 2021 | N/A | N/A |
| Manual of Policy and Procedures 4-19/015.00-Personal Injured | LASD | September 28, 2021 | N/A | N/A |
| Manual of Policy and Procedures 5-06/050.00-Search or Rescue Operations | LASD | September 28, 2021 | N/A | N/A |

| Manual of Policy and Procedures 5-05/050.50-Responses to Civil Air Patrol Reports of Downed/Missing Aircraft And/Or Activations of Emergency Locator Transmitters | LASD | September 28, 2021 | N/A | N/A |
|---|---|---|---|---|
| Manual of Policy and Procedures 5-09/090.00-Dead Bodies-Homicides, Suicides, Accidental and Natural | LASD | September 28, 2021 | N/A | N/A |
| Marsh v. County of San Diego | 9th Cir. | May 29, 2012 | N/A | 168 |
| Catsouras v. Department of CHP | Cal. Ct. App. | January 29, 2010 | N/A | N/A |
| Deposition Transcript of David Katz | David Katz | September 13, 2021 | N/A | N/A |
| LASD Office Correspondence Dated 11-29-16 | LASD | November 29, 2016 | COLA035337-0335344 | N/A |
| LASD News Letter Volume 13 Number 4 3-29-13 Use of Personal Communciation Devices | LASD | March 29, 2013 | COLA035348-49 | N/A |
| LASD EM Deployment Sheet | LASD | July 31, 2016 | COLA035350-53 | N/A |
| LASD PM Deployment Sheet | LASD | July 31, 2016 | COLA035354-55 | N/A |
| LASD Incident History | LASD | July 31, 2016 | COLA035346-59 | N/A |
| LASD Incident Report | LASD | July 31, 2016 | COLA035360-62 | N/A |
| LASD Crime Analysis Supplemental Form | LASD | Undated | COLA035363-64 | N/A |

| LASD Supplemental Report | LASD | August 1, 2016 | COLA035365-68 | N/A |
|---|---|---|---|---|
| LASD Evidence and Property Page | LASD | July 31, 2016 | COLA035369-70 | N/A |
| LASD Major Incident Log | LASD | July 31, 2016 | COLA035371-74 | N/A |
| LASD Supplemental Report | LASD | July 31, 2016 | COLA035375-80 | N/A |
| LASD Witness Transportation Consent Form | LASD | July 31, 2016 | COLA035381 | N/A |
| State of California Transportation Consent Form | | July 31, 2016 | COLA035382-83 | N/A |
| LASD Supplemental Report | LASD | July 31, 2016 | COLA035384-96 | N/A |
| LASD Memo | LASD | December 2, 2016 | COLA035397 | N/A |
| LASD Correspondence Sheriff's Office to Complainant | LASD | August 2, 2016 | COLA035398-99 | N/A |
| LACFD Notice to Suspend | LACFD | June 22, 2015 | COLA035403-08 | 434 |
| LACFD Notice to Suspend | LACFD | March 1, 2018 | COLA035409-16 | 435 |
| LACFD Confidential Memo | LACFD | May 29, 2015 | COLA035417-28 | 436 |
| LACFD Confidential Memo | LACFD | November 1, 2017 | COLA035429-37 | 437 |
| LACFD Letter of Reprimand | LACFD | March 27, 2019 | COLA035438-41 | 438 |
| Villanueva Recording, ABC-7, https://www.facebook.com/watch/live?v=875675446231021&ref=watch_permalink | ABC-7 | March 2, 2020 | COLA001182 | 303 |
| Villanueva Recording, NBC-4, https://www.nbclosangeles.com/news/local/sh | NBC-4 | March 2, 2020 | COLA030878 | 305 |

| | | | | |
|---|---|---|---|---|
| eriff-ordered-deletion-of-kobe-bryant-crash-photos-to-prevent-wider-distribution/2321002/ | | | | |
| LA Times, Firing of LAPD Officer Upheld in Case of Leaked Rihanna Photo | LA Times | March 21, 2014 | N/A | N/A |
| LA Times, Rihanna Photo Sparks LAPD Probe | LA Times | February 21, 2009 | N/A | N/A |
| LA Times, LAPD Tries to Fire Cops Thought to Have Leaked Rihanna Photo to TMZ | LA Times | June 29, 2012 | N/A | N/A |
| LA Times, LAPD Officers Suspected of Leaking Rihanna Photo Won't Be Charged | LA Times | June 29, 2012 | N/A | N/A |
| https://cops.usdoj.gov/ric/Publications/cops-p164-pub-pdf | DOJ | Undated | N/A | N/A |

### B.   Defendants' Position

Opinion #2 is inadmissible under Rule 702 because Mr. Bercovici is not qualified to offer it; and the opinion is not relevant to any viable theories underlying Plaintiff's *Monell* claim.  Moreover, to the extent Opinion #2 involves LACFD, it is barred because Mr. Bercovici's report limited this opinion to LASD.  Opinion #2 should also be excluded under Rule 403 because it would confuse the jury and cause undue prejudice.

### 1.   Opinion #2 Is Inadmissible Under Rule 702

#### (a)   Mr. Bercovici Is Not Qualified as an Expert on LASD Policies and Practices

"To qualify as an expert, a witness must have 'knowledge, skill, experience,

training, or education' relevant to such evidence or fact in issue." *Chang*, 207 F.3d at 1172 (citation omitted). To determine if an expert is qualified, the court must examine whether the witness's training, experience or specialized knowledge is sufficiently related to the subject matter upon which the witness offers an opinion. *Gable*, 727 F. Supp. 2d at 833.

"It is not enough that the proposed expert have expertise in an area of knowledge. The expertise must be relevant to the determination of the facts in issue." *In re Canvas Specialty*, 261 B.R. at 19. The proponent of the expert bears the burden of demonstrating that the expert is qualified. *87.98 Acres of Land More or Less in the Cty. of Merced*, 530 F.3d at 904–05.

"General experience as a police officer, standing alone, is not sufficient to qualify the officer as an expert in every area of law enforcement . . . ." *See, e.g.*, *Thomas*, 157 F.3d, at *5 (trial court properly found that police officer with over 20 years of experience was not qualified as an expert in area of police conduct relative to use of force, among other areas).

Prior to this case, Mr. Bercovici was precluded from doing exactly what Plaintiff is seeking to do here—give an expert opinion at trial that he has no qualifications to give. In *Lasarte v. Custom Performance*, Mr. Bercovici was retained to provide an expert opinion on an investigation conducted by the Food and Drug Administration (FDA). 2018 WL 4513110, at *1. The plaintiff moved *in limine* to exclude his testimony because, as here, Mr. Bercovici never worked for the FDA or conducted an FDA investigation; had no personal involvement in the investigation at issue; had never investigated whether a business was involved in the illicit sale of nitrous oxide, the opinion he intended to offer at trial; and his extensive LAPD experience was not sufficiently related to the FDA. (Dkt. 251-1 at 7.) The court therefore precluded Mr. Bercovici from testifying at trial.

Here, Mr. Bercovici's opinion is based on his 30-year career at the City of Los Angeles in LAPD. Mr. Bercovici's knowledge of LAPD practices does not

qualify him to render expert opinions on LASD/LACFD policies:

- Mr. Bercovici never worked for LASD, LACFD or the County of Los Angeles.  (Offer of Proof, Ex. B at 13:4-12).

- He has never attended the LASD training academy.  (*Id.* at 20:19-24).

- He has never attended an LASD training regarding taking photos of accident/crime scenes or LASD's social media policy, and admittedly has no knowledge of what is said or what materials are provided during those trainings.  (*Id.* at 25:8-24.)

- He did not speak with anyone at LASD who was involved in responding to the crash site, the inquiry regarding taking and sharing of photos, or the IA investigation on which he opines.  (*Id.* at 37:3-18.)

- He has no knowledge about LASD's internal policies regarding the requirements for documenting an investigation.  (*Id.* at 134:13-19 ["I don't know what the sheriffs do when they do that."].)

- He has no expertise in policies about the use of personal devices, nor did such policies even exist during his time at LAPD.  (*Id.* at 25:8-15; 68:7-23.)

Mr. Bercovici's career at LAPD does not give him a basis to opine on policies and practices of other law enforcement agencies about which he has no knowledge, experience or training.  He is not qualified under Rule 702: *Miller*, 874 F.2d at 1267-68 (witness not qualified to testify on recruitment tactics used by Soviet intelligence agency where he had no practical experience in Soviet recruitment and had not made any special study of the subject); *Chang*, 207 F.3d at 1172-73 (district court properly excluded opinion on authenticity of certificate where expert had no formal training in identifying counterfeit securities); *Gable*, 727 F. Supp. 2d at 833-35 (copyright law expert not qualified to render opinion on similarities between TV show and screenplay without specialized training in literary analysis); *Dominguez*, 2018 WL 6164278, at *8-9 (excluding opinion on trajectory of bullet where witness was not an expert in ballistics, medicine or biomechanics).

Plaintiff argues that Mr. Bercovici has "collaborated extensively" with other

law enforcement agencies, including LASD, throughout his career.  But the fact that Mr. Bercovici has interacted with LASD personnel over the course of his 30-year LAPD career does not qualify him to give an expert opinion on LASD practices and procedures.  And there is no indication that Mr. Bercovici has ever had *any* interactions with LACFD personnel, let alone "collaborated extensively" with them.

Plaintiff also argues that Mr. Bercovici has "extensive experience" in internal investigations.  (Dkt. No. 190-1 [Bercovici Decl.] ¶¶ 2-3.)  But these were all LAPD investigations.  They do not qualify him to opine on LASD.  Plaintiff also contends that Mr. Bercovici's certifications from California POST (Peace Officer Standards & Training) qualify him to opine on LASD/LACFD procedures because "there is legislation that establishes POST as the . . . overseer of law enforcement in the State of California."  (Offer of Proof, Ex. B at 14-15.)  But Mr. Bercovici was unable to identify any such legislation.

**(b)** **Mr. Bercovici Should Not  Be Permitted To Opine On LACFD's Taking Crash Site Photos**

As set forth in his report, Mr. Bercovici's opinion that there was no legitimate purpose for taking crash scene photos is limited to LASD.  (Offer of Proof, Ex. A at 10-12.)  Mr. Bercovici should not be permitted to present testimony at trial regarding LACFD's taking crash scene photos because Plaintiff's Initial Expert Witness Disclosure did not disclose that opinion and it is therefore barred.  (*See* Dkt 269-2 [Offer of Proof, Ex. A].)  *See* Fed. R. Civ. P. 26; Amended Scheduling and Case Management Order (Dkt. 86) ("Expert witnesses will be bound by the opinions expressed in their reports prepared in accordance with Fed. R. Civ. P. 26(a)(2)(B) and will not be permitted to offer new opinions at trial."); *see also Mariscal v. Graco, Inc.*, 52 F. Supp. 3d 973, 981 (N.D. Cal. 2014) (excluding second opinion offered by expert that "did not merely revisit opinions previously stated, but it included new previously undisclosed opinions"); *Emelianenko v. Affliction Clothing*, No. 09-07865 MMM (MLGx), 2011 WL 13176755, at *3 (C.D. Cal. July 28, 2011)

1   (excluding expert opinion not contained in expert report and not disclosed until two

2   days before the expert discovery cut-off date).  To the extent Opinion #2 includes

3   any conduct by LACFD, it is barred.

4             **(c)**     <u>**The Opinion Is Irrelevant to Plaintiff's *Monell* Claim**</u>

5         Mr. Bercovici's opinion that there was no legitimate purpose for County first

6   responders to take crash site photos is irrelevant.  The only basis for Plaintiff's

7   *Monell* claim is <u>*Marsh v. County of San Diego*, 680 F.3d 1148, 1152 (9th Cir. 2012)</u>,

8   which recognizes the distinct constitutional right to control "public dissemination"

9   of a family member's death images.  There is no case law allowing Plaintiff to make

10  a constitutional tort out of law enforcement *taking* crash site photos.  Even if

11  Mr. Bercovici were qualified to give this opinion (he has no relevant experience,

12  was not on the scene nor involved in the response), it is irrelevant because Plaintiff

13  cannot predicate her *Monell* claim on taking photos.

14        In addition, Plaintiff cannot base her *Monell* or invasion of privacy claims on

15  the "taking" of crash site photos.  [*See generally* Dkt. 54 (FAC).]  Plaintiff did not

16  sue the LASD deputy who responded to the crash and took site photos, and it is

17  undisputed that the deputy was the only one who did so.  And Plaintiff did not sue

18  any LACFD personnel who took crash site photos.  [*See id.*]  Instead, Plaintiff's

19  claims for invasion of privacy and *Monell* are against the individual LASD deputies

20  who received and/or showed the photos to others, and the County, LASD, and

21  LACFD for their alleged failure to train personnel about crash site photos.  This is a

22  tacit admission by Plaintiff that "taking" photos is not actionable.  Accordingly,

23  Mr. Bercovici's opinion that photos should never have been taken by LASD or

24  LACFD does not go to any issue to be decided by the jury at trial.

25        Plaintiff's attempt to save this opinion about "taking" photos by compounding

26  it with "sharing" photos does not work.  These are two separate categories of alleged

27  misconduct.  Opinion #2 is not relevant to any viable *Monell* theory.

28

### 2.     Opinion #2 Should Be Excluded Under Rule 403 Because It Would Confuse The Jury And Cause Undue Prejudice

Allowing Mr. Bercovici to offer this irrelevant, unfounded opinion would be profoundly confusing and misleading.  It could lead the jury to believe that certain *Monell* theories are viable where there is no authority to support them.  Defendants will be forced either to ignore Mr. Bercovici's irrelevant opinion and hope the jury understands the proper parameters of Plaintiff's *Monell* claim, or spend valuable trial time introducing witnesses and evidence to defend against nonexistent claims.

Moreover, admission of Mr. Bercovici's testimony would be unduly prejudicial to Defendants.  Mr. Bercovici has been on TV and has worked on other high-profile cases.  Jurors could be swayed by his background and give undo weight to his unfounded and unreliable testimony because he is called an "expert." Accordingly, his testimony should be excluded under Rule 403.  *See Brown*, 871 F.3d at 539 (district court properly excluded expert testimony where its admission "may have induced the jurors to defer to [the expert's] conclusion rather than drawing their own").

### 3.     Mr. Bercovici Improperly Relies On Materials Not Disclosed In His Report

Plaintiff's Offer of Proof reveals that, in forming Opinion #2, Mr. Bercovici improperly relied on materials not disclosed in his report (Offer of Proof, Ex. A). To the extent Opinion #2 is based on any of the materials listed below, it should be excluded:

| Letter to Jordan re Intention to Discharge and attachment | LACFD | December 2, 2020 | COLA001341-1378 | 26 |
|---|---|---|---|---|
| Letter to Imbrenda re Intention to Discharge and attachment | LACFD | December 2, 2020 | COLA001384-1421 | 27 |
| Letter to Kahan re Intention to Suspend and attachment | LACFD | December 2, 2020 | COLA001311-1340 | 28 |

| Email thread from T. Schrader to B. Grubb re: Contact US - LASD.org "Kobe" | Ralph Mendez | January 29, 2020 | COLA007128 | N/A |
| Email thread from L. Corvera to F. Tse re: AB2655 | Lina Corvera | May 7, 2020 | COLA035825-26 | N/A |

### C.   Proffering Party's Response (Plaintiff)

#### 1.   Opinion #2 Is Admissible Under Rule 702

##### (a)   Mr. Bercovici Is Well-Qualified

Defendants largely repeat the arguments they made about Mr. Bercovici's qualifications for Opinion #1, which fail for the reasons addressed above.  *See supra* at 21-25.

Defendants do not address Mr. Bercovici's extensive experience providing law enforcement support to accident and crime scenes involving human remains, including aircraft accident scenes and including the supervision of such support. *See supra* at 32; Ex. A at 3-5, 7.  They ignore the fact that, "[d]uring those years of service, [he] became familiar with the responsibilities of a law enforcement officer when responding to critical incidents, including aircraft and rail accidents."  (Ex. A at 3.)  They likewise ignore Mr. Bercovici's personal experience in the role that policies, training, leadership, supervision, oversight, and discipline play in officer behavior, including officer behavior at accident scenes and officer behavior with respect to death photos.  *See supra* at 32-33; Ex. A at 3-7; Ex. B at 59:3-60:2, 65:21-70:14, 73:8-25, 87:2-88:23.

Defendants again argue that Mr. Bercovici did not work for LASD.  They ignore that Mr. Bercovici reviewed LASD's policy manual describing officer responsibilities at the scene of an aircraft accident, and found it consistent with his experience and confirmatory of his opinions.  (Ex. A at 11.)  And they again point to no evidence of meaningful differences between LASD and LAPD on these issues.

Sheriff Villanueva himself publicly stated that at an accident scene only the NTSB and Coroner's Office should have been taking photos and that no one else had "any reason to take any photos"—entirely consistent with Mr. Bercovici's experience and opinion.  (Ex. A at 11 (quoting Sheriff's public statement)).  Defendants likewise offer no explanation for why Mr. Bercovici's experiences with the training, oversight, supervision, discipline, and leadership required for officers to perform properly at an accident scene—and relationship between the inadequacy of such training and oversight and the taking and sharing of photos—would be any different for LASD than LAPD.

Mr. Bercovici has substantially more than the "*minimal foundation* of knowledge, skill, and experience" required by the "*broad conception* of expert qualifications" in Rule 702.  *Hangarter*, 373 F.3d at 1015-16.  Defendants' arguments about Mr. Bercovici's "lack of particularized expertise goes to the weight accorded [his] testimony, not to the admissibility of [his] opinion as an expert." *Garcia*, 7 F.3d at 890; *see also Valentin*, 1997 WL 33323099, at *23.

**(b)   Mr. Bercovici Disclosed His Opinion Regarding LACFD**

Defendants argue, incorrectly, that Mr. Bercovici did not disclose in his expert report his opinion that LACFD had no legitimate reason to take photos of the victims' remains.  The opinion was plainly stated on the first page of the report: "(2) there was no legitimate purpose for LASD *and Fire Department personnel* at the scene of the helicopter accident on January 26 and 27, 2020, to take a large number of photos focused on human remains."  Ex. A at 1 (emphasis added).

**(c)   The Opinion Is Relevant to All of Plaintiff's Claims**

Mr. Bercovici's opinion that Defendants' employees had no legitimate basis to take photos of the remains is plainly relevant to whether Defendants engaged in an "unwarranted" intrusion into her Fourteenth Amendment right to privacy in a manner that "shocks the conscience."  *See Marsh v. Cnty. of San Diego*, 680 F.3d

1    1148, 1153-55 (9th Cir. 2012) ("This intrusion into the grief of a mother over her

2    dead son—without any legitimate governmental purpose—'shocks the conscience'

3    and therefore violates Marsh's substantive due process right.").  Plaintiffs are wrong

4    that *Marsh* limited a Fourteenth Amendment violation to "public dissemination" of

5    death photos.  *Marsh* explained that the Fourteenth Amendment protects "a family's

6    control over the body and death images of the deceased."  *Id.* at 1154 (quoting *Nat'l*

7    *Archives & Records Admin. v. Favish*, 541 U.S. 157, 168 (2004)); *see also Marsh*,

8    680 F.3d at 1154 ("a parent's right to control a deceased child's remains and death

9    images flows from the well-established substantive due process right to family

10    integrity").  The unwarranted *taking* of the photographs also intrudes on this right to

11    control the remains and their images, and can also violate the Fourteenth

12    Amendment if it shocks the conscience.  But even if *Marsh* were limited to

13    dissemination, the fact that there was no legitimate reason to *take* the photos in the

14    first place obviously helps show that there was also, *a fortiori*, no legitimate purpose

15    for *sharing* them after the fact.

16        Defendants do not address the part of Mr. Bercovici's opinion explaining that

17    Defendants' failure to train and implement adequate policies lead to the misconduct,

18    or controvert that it is relevant to establishing the causation required for Plaintiff's

19    *Monell* claim.  *See* 9th Cir. Model Instr. No. 9.8.

20        Nor do Defendants dispute the relevance of Mr. Bercovici's opinions to

21    Plaintiff's state-law claims.  They have no response to this Court's prior holding

22    that, with respect to the negligence claim, "*Catsouras* strongly supports the

23    existence of a duty in this case with respect to the LASD deputies *who took the*

24    *photos of the victims* and shared them with others."  *Bryant v. Cnty. of L.A.*, 2020

25    WL 8024857, at *7 (C.D. Cal. Dec. 28, 2020) (emphasis added).  Nor do they

26    controvert the point that Mr. Bercovici's opinion helps show that Defendants'

27    conduct "would be highly offensive to a reasonable person" and/or that the disclosed

28    private information was "not of legitimate public concern," as required for the

1    invasion of privacy claim.  *See* CACI Nos. 1800, 1801.

2        Finally, Defendants do not deny that they have argued and intend to argue to

3    the jury that Defendants' officers took the photos to help with identification efforts.

4    They cannot dispute that Mr. Bercovici's testimony is relevant to the jury in

5    assessing the credibility of that argument.

6        Defendants' argument that Plaintiff cannot base her *Monell* or state law

7    claims on the taking of the photos because Plaintiff did not sue the LASD and

8    LACFD employees who took the photos is a non-sequitur.  A *Monell* claim is, by

9    definition, asserted against the agency, not individual employees.  If the

10   requirements for *Monell* liability are established, LASD and LACFD are liable for

11   the conduct of *any and all* of their employees who violated Plaintiff's constitutional

12   rights under color of state law.  *See* 9th Cir. Model Instr. 9.8.  Likewise, on the state

13   law claims, a "plaintiff seeking to hold an employer liable for injuries caused by

14   employees acting within the scope of their employment is not required to name or

15   join the employees as defendants."  *Perez v. City of Huntington Park*, 7 Cal. App.

16   4th 817, 820 (1992).  "Even where the plaintiff names and joins a particular

17   employee and the judgment is for that employee, a simultaneous judgment against

18   the employer will be upheld if the evidence supports the conclusion that other

19   uncharged employees committed the wrongful acts."  *Id.* at 821.

20        **2.    Defendants Identify No Unfair Prejudice**

21        Defendants make the same baseless argument under Rule 403 that they raise

22   on Opinion #1, which should be rejected for the same reasons.  *See supra* at 28.

23        **3.    Mr. Bercovici Disclosed His Reliance Materials**

24        Defendants point to the same supposedly undisclosed documents as in

25   Opinion #1.  The documents were disclosed.  *See supra* at 28-29.

26

27

28

### III. <u>OPINION #3: LASD VIOLATED BASIC STANDARDS BY DESTROYING EVIDENCE RATHER THAN PRESERVING IT</u>

Mr. Bercovici will testify that LASD violated basic, commonly accepted investigative standards when, rather than taking steps to preserve evidence related to a complaint of improper sharing of death images, LASD directed officers to destroy and actually destroyed evidence of such conduct.  (<u>Ex. A</u> at 1-2, 12-16.)

More granularly, and as part of this opinion, Mr. Bercovici will opine that:

•      The collection and preservation of evidence is a key component in any investigation, whether internal or criminal, and is part of the minimum standard for any such investigation.  The standard protocol is to recover, preserve, and record all evidence, rather than order its destruction, even in cases involving the most sensitive evidence.  Preserving and documenting evidence is especially important in cases of potential misconduct.  (<u>Id</u>. at 12-13.)

•      When a complaint is lodged, standard law enforcement protocol is to intake information provided by the complainant and if misconduct appears to have potentially occurred, then all evidence of the potential misconduct must be found and secured as soon as possible.  (<u>Id</u>. at 13.)

•      It would have been clear to any professional investigator upon receiving a complaint like the one that LASD received that the scope of the investigation would include photographic and forensic evidence, and likely text messages as well, and that those photos and text messages, as well as forensic evidence related to the devices, needed to be located and preserved.  (<u>Id</u>. at 13-14.)

•      The Sheriff's Department's failure to obtain the phones or instruct officers to preserve evidence, and its affirmative orders to officers to destroy evidence, is an egregious violation of the basic standards for any investigation, including an internal investigation.  (<u>Id</u>. at 14.)

•      The proper way to preserve photographic and forensic evidence according to basic law enforcement standards would have been to order each deputy

1   at the incident to secure and not delete any photographs or text messages related to

2   their activity at the crash scene and to secure and preserve them for Internal Affairs

3   investigators.  Deletion of copies should not have been considered until an

4   investigation had determined that all evidence had been secured, recovered, and

5   preserved, and any deletion should only have been done in a controlled setting

6   where the actions could be properly documented.  (*Id*. at 14-15.)

7          •       The photos were relevant to an ongoing, federal investigation and

8   should have been preserved, among other reasons, because of that.  (Ex. B at

9   110:12-112:6, 129:18-132:8.)

10         •       LASD should have conducted a forensic analysis of the devices

11  belonging to or used by the officers involved in responding to the crash to determine

12  whether cached copies existed or whether images had been shared with others.  (Ex.

13  A at 15.)

14         •       It was feasible to quickly and efficiently secure and preserve the

15  photographs taken at the crash scene and conduct a forensic analysis of devices

16  belonging to or used by the officers involving in responding to the crash.  There was

17  no reason why LASD could not have done this.  (*Id*.)

18         •       LASD's explanation that the deletion was ordered to prevent harm to

19  family members of the crash victims does not make sense, is inconsistent with

20  standard law enforcement procedures and practices, and is unprecedented.  (*Id*.)

21         •       The intentional destruction of evidence, contrary to basic investigative

22  standards, is consistent with trying to cover up the truth.  (*Id*. at 16.)

23         •       By promising the involved deputies a lesser penalty if they deleted the

24  photographs of human remains, LASD leadership violated basic professional

25  standards for law enforcement in two ways:  by failing to investigate fully an

26  allegation of misconduct and failing to discipline and hold the deputies accountable

27  for their actions.  (*Id*.)

28

A.    **Proffering Party's Position (Plaintiff)**

   1.    **Relevance of Opinion #3**

Mr. Bercovici's opinions that LASD's investigation violated basic, commonly-accepted investigative standards—including by deleting rather than preserving evidence of misconduct, failing to investigate fully and meaningfully the allegations of misconduct or determine its full extent, and failing to hold the deputies accountable—goes to three key issues:

First, Defendants argue that their actions have ensured that all copies of the photos have been were secured and destroyed, such that Plaintiff can have no reasonable fear of the photos going viral on the internet.  Whether Defendants are to be believed is a key question for the jury.  Mr. Bercovici's opinions cast significant doubt on the thoroughness and efficacy of Defendants' investigation, supporting the conclusion that Defendants' purported findings are not to be trusted; that dissemination was far more extensive than Defendants admit; and that the photos were never fully contained and could resurface at any moment.

Second, Mr. Bercovici's opinions go to whether LASD's decision to eschew a real investigation and grant amnesty to officers in exchange for deleting evidence demonstrates LASD's deliberate indifference to these violations and practices of tolerating them.  *See Henry v. Cnty. of Shasta*, 132 F.3d 512, 519 (9th Cir. 1997) ("post-event evidence is not only admissible for purposes of proving the existence of a municipal defendant's policy or custom, but is highly probative with respect to that inquiry"; jury may infer a "preexisting policy of deliberate indifference to the dangerous recklessness of its . . . officers").  As Mr. Bercovici explains:  "Based on my experience with internal law enforcement investigations, . . . the manner in which Sheriff Villanueva handled the Department's self-described 'inquiry' into the improper photos would have sent a signal to law enforcement officers that even egregious sharing of photos of victims' remains would go unpunished."  (Ex. A at 21.)

1    Third, Mr. Bercovici's opinions on the irregularity of Defendants' deletion

2  and loss of evidence will inform the jury's view of what inferences to draw from

3  Defendants' spoliation of the direct forensic evidence of the extent of their

4  misconduct—including whether the spoliated evidence was likely to be harmful to

5  Defendants. *Aramark Mgmt., LLC v. Borgquist*, 2021 WL 864067, at *13 (C.D.

6  Cal. Jan. 27, 2021) (granting adverse inference instruction where "most important

7  evidence" was "irretrievably lost" due to purposeful deletion "to prevent [Plaintiff]

8  from using [it] in the litigation that the [Defendants] were anticipating").  Because

9  Defendants destroyed the direct forensic evidence of their misconduct, the full scope

10  of that misconduct must be inferred from circumstantial evidence.  Part of the

11  circumstantial evidence that may inform the jury's conclusion about the extent of

12  the misconduct—and whether Defendants are to be believed that the taking and

13  sharing of photos went no further than what they have admitted to—is Defendants'

14  intentional destruction of the photos and text messages and the devices containing

15  them.  Plaintiff seeks several jury instructions on this issue.  *See* Disputed Jury Instr.

16  Nos. 46-48.  Mr. Bercovici's explanation of how an investigation is supposed to be

17  run, and how LASD's investigation deviated from standards, provides important

18  context for the jury in assessing this evidence and making its inferences.

19    Mr. Bercovici's testimony also directly rebuts Defendants' argument that the

20  photos were ordered to be deleted to prevent harm to the family members of the

21  victims.  He explains that he has never encountered a situation in which law

22  enforcement officials appropriately deleted or destroyed evidence so that family

23  members of the victims would not see it, even though there are many examples of

24  situations where the evidence would be disturbing to family members if it got out.

25  (Ex. A at 15; Ex. B at 110:12-113:12.)  For example, although no family member

26  would want to see inappropriate images of children, it is not standard protocol to

27  destroy such images during an investigation.  (Ex. A at 15.)  Mr. Bercovici explains

28  that there are proper ways to destroy illicit copies of evidence in a controlled setting,

after an investigation has been completed and the original evidence secured.  (Ex. A
at 15; Ex. B at 110:12-113:12.)  Mr. Bercovici's testimony will provide the jury
with helpful context for understanding why the destruction of evidence in this case
was not in accord with professional investigative standards, despite Defendants'
attempt to paint this as a favor to Plaintiff.  He will explain what LASD could and
should have done in the aftermath of the revelation that deputies took unauthorized
photos, and why it was inappropriate for the Sheriff to order the photos' deletion
instead of preserving them.  For example, Mr. Bercovici explains that the decision to
delete the photos never belonged to Sheriff Villanueva in the first place, because the
photos were evidence in an official, federal investigation into the crash.  (Ex. B at
110:12-112:6, 129:18-132:8.)

## 2.   Basis for Opinion #3

Mr. Bercovici spent nineteen years as a supervisor and manager, investigating
over one hundred personnel complaints, supervising subordinates investigating such
complaints, adjudicating them and recommending discipline, and presenting
misconduct cases to department tribunals.  (Ex. A at 3-4, 13.)  Through this work he
became extremely familiar with basic standards and practices for internal
investigations from start to finish, including the preservation of evidence,
identifying witnesses, and interviewing officers who were the subjects of the
investigation.  (Id. at 3-4.)

Mr. Bercovici also has specific experience conducting and overseeing
forensic collections and analyses of devices.  For example, as the Officer-in-Charge
of the FBI Violent Crime Task Force and the Homicide Special Section, Robbery
and Homicide Division, personnel under his command regularly secured and
preserved photographic evidence and conducted forensic analysis of electronic
devices.  (Id. at 4, 15.)  And as an advocate in internal affairs, he also routinely
presented cases where photographic evidence was used.  (Id. at 3, 15.)

In addition to his specialized expertise, Mr. Bercovici relied on various materials, including published guidelines and authorities on investigation standards; Sheriff Villaneuva's public statements regarding the deletion of photos and the priority of his investigation; and Defendants' interrogatory responses regarding the ordering of deletion and offer of leniency.  These materials are listed in the table below:

**Documents Relied upon in Forming Opinion #3**

| Title | Author | Date | Bates | TREX |
|---|---|---|---|---|
| FAC Exhibit 1 LASD SIB Press Release | LASD | February 28, 2020 | N/A | N/A |
| Deposition Transcript of Marcus Phillips | Marcus Phillips | September 14, 2021 | N/A | N/A |
| Disposition Sheet Recommendation for Discipline, Joey Cruz No. IV2504757 | LASD | July 24, 2020 | COLA035214-19 | 124 |
| Discipline Disposition, Douglas Johnson No. IV2504757 | LASD | August 8, 2020 | COLA035220-24 | 439 |
| Discipline Disposition, Travis Kelly No. IV2504757 | LASD | August 8, 2020 | COLA035225-32 | 147 |
| Discpline Disposition, Justin Diez No. IV2504757 | LASD | August 8, 2020 | COLA035233-37 | N/A |
| Correspondence from Joey Cruz to Captain Vander Horck | Joey Cruz | January 30, 2020 | COLA003305-06; COLA003311-12; COLA003318-19; COLA003327; COLA003331 | N/A |
| Discpline Disposition, Rafael Mejia IV 2504757 | LASD | August 5, 2020 | COLA035244-52 | 108 |

| | | | | |
|---|---|---|---|---|
| Notice of Completion of Investigation for Michael Russell | LASD | August 5, 2020 | COLA035253-61 | 63 |
| Email thread between C. Stelter and N. Cabrera re: NL Safeguarding the integrity of Department Investigations | Vanessa Marquez | May 14, 2020 | COLA035463-64 | N/A |
| Notice of Completion of Investigation for Raul Versales | LASD | January 30, 2020 | COLA035262-69 | 112 |
| Email thread from J. Valdez to M. Vander Horck re: Contact US - LASD.org "Kobe" | Ralph Mendez | January 29, 2020 | COLA007168-69 | 70 |
| Performance Log Entry for D. Johnson | LASD | February 27, 2020 | COLA000747 | 58 |
| Performance Log Entry for J. Cruz | LASD | February 27, 2020 | COLA000745 | 59 |
| Performance Log Entry for M. Russell | LASD | February 27, 2020 | COLA000743 | 60 |
| Performance Log Entry for R. Mejia | LASD | February 27, 2020 | COLA000744 | 61 |
| Performance Log Entry for R. Versales | LASD | February 27, 2020 | COLA000746 | 62 |
| Managing Accountability Systems for Police Conduct-Internal and External Oversight, by Jeffrey J. Noble and Geoffrey P. Alpert | Jeffrey J. Noble | July 1, 1905 | N/A | N/A |
| Law Enforcement Administrative Investigations, by Lou Reiter | Lou Reiter | January 1, 1993 | N/A | N/A |
| Internal Investigations A Practioners Approach, by Frank Colaprete, Chapter 12 | Frank Coloprete | 2007 | N/A | N/A |

JOINT STATEMENT FOR PLAINTIFF'S EXPERT ADAM BERCOVICI

| Defendant County of Los Angeles' Responses to Plaintiff Vanessa Bryant's Third Set of Interrogatories, Response to Interrogatory No. 7 | L.A. Cnty. | October 1, 2021 | N/A | 169 |
|---|---|---|---|---|
| Deposition Transcript of Hector Mancinas | Hector Mancinas | September 27, 2021 | N/A | N/A |
| LASD IAB Investigation Report No. IV2504757 | LASD | Undated | COLA000001-1140 | 600; 134; 135 |
| Memorandum from C. Jauregui to H. Mancinas re: Willow Incident Photographs | Christopher Jauregui | January 31, 2020 | COLA004013-14 | 57 |
| County of Los Angeles Incident Jurisdictional Form | LACFD | January 26, 2020 | COLA006998-99 | N/A |
| Email thread from D. Kneer to M. Vander Horck & C. Reed re R. Mendez complaint | Ralph Mendez | January 29, 2020 | COLA007135-36 | 126 |
| Email thread from T. Schrader to B. Grubb re: Contact US - LASD.org "Kobe" | Ralph Mendez | January 29, 2020 | COLA007128 | N/A |
| Email from T. Schrader to J. Diez re: Contact Us - LASD.org "Kobe" | Ralph Mendez | January 29, 2020 | COLA007129; COLA007130 | N/A |
| LASD Supplemental Report 920-00536-2244-496 | LASD | January 26, 2020 | COLA007249-52 | 33 |
| Email thread from A. Tchekmedyian (L.A. Times) to J. Valdez re: LA Times follow up re Lost Hills | L.A. Times | February 26, 2020 | COLA007318-20 | 72 |
| Email from V. Chow to Various Recipients re: Media Statements | LASD | March 1, 2020 | COLA007375 | N/A |

JOINT STATEMENT FOR PLAINTIFF'S EXPERT ADAM BERCOVICI

| Email thread from M. Vander Horck to A. Tchekmedyian re: LA Times Inquiry | L.A. Times | March 2, 2020 | COLA007391 | N/A |
|---|---|---|---|---|
| Email thread from S. Gross to D. Kneer re: Contact US - LASD.org "Kobe" | Ralph Mendez | January 29, 2020 | COLA009784 | 152 |
| Email thread from J. Diez to H. Mancinas & M. Vander Horck | Ralph Mendez | January 29, 2020 | COLA009758-59 | 53 |
| Email thread from M. Velazquez to D. Alkonis re: CBS NEWS REQUEST FOR KOBE BRYANT CRASH FOOTAGE | Maryhelen Campa | February 14, 2020 | COLA010626-29 | N/A |
| Email thread from C. Stelter to J. Warren re: Department and Photos | Joana Warren | March 9, 2020 | COLA033883-85 | N/A |
| Watch Commander's Report 243817 | LASD | July 31, 2016 | COLA035335-99 | 85 |
| Villanueva Recording, ABC-7, https://www.facebook.com/watch/live?v=875675446231021&ref=watch_permalink | ABC-7 | March 2, 2020 | COLA001182 | 303 |
| Villanueva Recording, NBC-4, https://www.nbclosangeles.com/news/local/sheriff-ordered-deletion-of-kobe-bryant-crash-photos-to-prevent-wider-distribution/2321002/ | NBC-4 | March 2, 2020 | COLA030878 | 305 |

| LA Times, Firing of LAPD Officer Upheld in Case of Leaked Rihanna Photo | LA Times | March 21, 2014 | N/A | N/A |
|---|---|---|---|---|
| LA Times, Rihanna Photo Sparks LAPD Probe | LA Times | February 21, 2009 | N/A | N/A |
| LA Times, LAPD Tries to Fire Cops Thought to Have Leaked Rihanna Photo to TMZ | LA Times | June 29, 2012 | N/A | N/A |
| LA Times, LAPD Officers Suspected of Leaking Rihanna Photo Won't Be Charged (June 29, 2012) | LA Times | June 29, 2012 | N/A | N/A |
| https://cops.usdoj.gov/ric/Publications/cops-p164-pub-pdf | DOJ | Undated | N/A | N/A |

## B.    Defendants' Position

Opinion #3 is inadmissible under Rule 702 because Mr. Bercovici is not qualified to offer it; and the opinion is not relevant and will not assist the trier of fact.  The opinion should also be excluded under Rule 403 because it would confuse the jury and cause undue prejudice.

### 1.    Opinion #3 Is Inadmissible Under Rule 702

#### (a)    Mr. Bercovici Is Not Qualified as an Expert on LASD Policies and Practices

"To qualify as an expert, a witness must have 'knowledge, skill, experience, training, or education' relevant to such evidence or fact in issue." *Chang*, 207 F.3d at 1172 (citation omitted).  To determine if an expert is qualified, the court must examine whether the witness's training, experience or specialized knowledge is sufficiently related to the subject matter upon which the witness offers an opinion.

1    *Gable,* 727 F. Supp. 2d at 833.

2         "It is not enough that the proposed expert have expertise in an area of

3    knowledge.  The expertise must be relevant to the determination of the facts in

4    issue." *In re Canvas Specialty,* 261 B.R. at 19.  The proponent of the expert bears

5    the burden of demonstrating that the expert is qualified.  *87.98 Acres of Land More*

6    *or Less in the Cty. of Merced,* 530 F.3d at 904–05.

7         "General experience as a police officer, standing alone, is not sufficient to

8    qualify the officer as an expert in every area of law enforcement . . . ." *See, e.g.,*

9    *Thomas*, 157 F.3d, at *5 (trial court properly found that police officer with over 20

10   years of experience was not qualified as an expert in area of police conduct relative

11   to use of force, among other areas).

12        Prior to this case, Mr. Bercovici was precluded from doing exactly what

13   Plaintiff is seeking to do here—give an expert opinion at trial that he has no

14   qualifications to give.  In *Lasarte v. Custom Performance*, Mr. Bercovici was

15   retained to provide an expert opinion on an investigation conducted by the Food and

16   Drug Administration (FDA).  No. BC514465, 2018 WL 4513110, at *1 (Cal. Super.

17   Ct. July 9, 2018).  The plaintiff moved *in limine* to exclude his testimony because,

18   as here, Mr. Bercovici never worked for the FDA or conducted an FDA

19   investigation; had no personal involvement in the investigation at issue; had never

20   investigated whether a business was involved in the illicit sale of nitrous oxide, the

21   opinion he intended to offer at trial; and his extensive LAPD experience was not

22   sufficiently related to the FDA.  (Dkt. 251-1 at 7.)  The court therefore precluded

23   Mr. Bercovici from testifying at trial.

24        Here, Mr. Bercovici's opinion is based on his 30-year career at the City of

25   Los Angeles in LAPD.  Mr. Bercovici's knowledge of LAPD practices does not

26   qualify him to render expert opinions on LASD policies:

27   • Mr. Bercovici never worked for LASD or the County of Los Angeles.  (Offer
     of Proof, Ex. B at 13:4-12).

28

- He has never attended the LASD training academy. (*Id.* at 20:19-24).

- He has never attended an LASD training regarding taking photos of accident/crime scenes or LASD's social media policy, and admittedly has no knowledge of what is said or what materials are provided during those trainings. (*Id.* at 25:8-24.)

- He did not speak with anyone at LASD who was involved in responding to the crash site, the inquiry regarding taking and sharing of photos, or the IA investigation on which he opines. (*Id.* at 37:3-18.)

- He has never been involved in an inquiry or IA investigation conducted by LASD and has no personal knowledge of LASD's internal rules and regulations regarding a sheriff's inquiry. (*Id.* at 45:19-46:8.[1])

- He has no knowledge about LASD's internal policies regarding the requirements for documenting an investigation. (*Id.* at 134:13-19 ["I don't know what the sheriffs do when they do that."].)

- He has no expertise in policies about the use of personal devices, nor did such policies even exist during his time at LAPD. (*Id*. at 25:8-15; 68:7-23.)

Mr. Bercovici's career at LAPD does not give him a basis to opine on policies and practices of other law enforcement agencies about which he has no knowledge, experience or training. The fact that Mr. Bercovici has never encountered a situation at LAPD where an officer appropriately deleted photos to protect family members of the victims does not qualify him to opine on LASD's investigation or its efforts to protect Plaintiff and the other victims' families. Mr. Bercovici is simply not qualified under Rule 702: *Miller*, 874 F.2d at 1267-68 (witness not qualified to testify on recruitment tactics used by Soviet intelligence agency where he had no

---

[1] Mr. Bercovici claims to have personal knowledge of LASD's internal rules and regulations regarding IA investigations based on his familiarity with the handbook of guidelines for IA investigations issued by the U.S. Department of Justice in 2006. But Mr. Bercovici admits that this document was not issued by LASD, and that he does not know whether LASD actually implemented the 2006 DOJ guidelines. (Offer of Proof, Ex. B at 48:16-23; 50:12-51:1.)

practical experience in Soviet recruitment and had not made any special study of the subject); *Chang*, 207 F.3d at 1172-73 (district court properly excluded opinion on authenticity of certificate where expert had no formal training in identifying counterfeit securities); *Gable*, 727 F. Supp. 2d at 833-35 (copyright law expert not qualified to render opinion on similarities between TV show and screenplay without specialized training in literary analysis); *Dominguez*, No. CV 17-4557-DMG (PLAx), 2018 WL 6164278, at *8-9 (excluding opinion on trajectory of bullet where witness was not an expert in ballistics, medicine or biomechanics).

Plaintiff argues that Mr. Bercovici has "collaborated extensively" with other law enforcement agencies, including LASD, throughout his career.  But the fact that Mr. Bercovici has interacted with LASD personnel over the course of his 30-year LAPD career does not qualify him to give an expert opinion on LASD investigations.  Plaintiff also argues that Mr. Bercovici has "extensive experience" in internal investigations.  (Dkt. No. 190-1 [Bercovici Decl.] ¶¶ 2-3.)  But these were all LAPD investigations.  They do not qualify him to opine on LASD.  Plaintiff also contends that Mr. Bercovici's certifications from California POST (Peace Officer Standards & Training) qualify him to opine on LASD/LACFD procedures because "there is legislation that establishes POST as the . . . overseer of law enforcement in the State of California."  (Offer of Proof, Ex. B at 14-15.)  But Mr. Bercovici was unable to identify any such legislation.

**(b)**   **The Opinion Is Irrelevant To The *Monell* Claim**

As an initial matter, Opinion #3 goes to LASD's post-incident risk management decisions—not "public dissemination," which is the sole basis for Plaintiff's *Monell* claim.  *Marsh*, 680 F.3d at 1152.  To the extent Plaintiff contends that *Marsh* does not require public dissemination because, there, the misconduct involved sending images to only two recipients, she is wrong.  Those two recipients were reporters. This case is not *Marsh*: no County photos of Plaintiff's husband and daughter were given to the media; Plaintiff has never seen the photos; and the

photos were deleted and are gone.

Moreover, Plaintiff alleged three *Monell* theories in her FAC: (i) failure to train; (ii) failure to adequately investigate and discipline; and (iii) a County "pattern of practice and/or custom of unnecessarily taking and sharing death images."  (FAC ¶¶ 81-86.)  In her opposition to Defendants' Motion for Summary Judgment, Plaintiff abandoned all but the training theory.  [Dkt. No. 190 at 18:5-20:9.]  *See Shakur*, 514 F.3d at 892 ("[P]laintiff has 'abandoned … claims by not raising them in opposition to [the defendant's] motion for summary judgment.'" (second alteration in original) (citation omitted)).

Accordingly, Mr. Bercovici's opinion about the adequacy of LASD's investigation is not relevant to Plaintiff's claims.  *Jones*, 155 F.3d at 593 ("[E]vidence offered to prove a matter not at issue is immaterial."); *Wyatt Tech. Corp.*, 2010 WL 11505684, at *13 (granting motion *in limine* precluding evidence about categories of trade secrets that no longer remained after summary judgment).

Plaintiff argues that Mr. Bercovici's opinion that LASD improperly deleted crash scene photos is relevant to show LASD's "deliberate indifference" to misconduct.  This argument does not many any sense.  Opinion #3 does not have any bearing on the training theory under *Monell*—the only theory that remains in this case.

**(c)**     **The Opinion Is Irrelevant For Other Reasons And Will Not Assist The Jury**

Mr. Bercovici's opinion about the propriety of Sheriff Villanueva's order to delete crash site photos is also irrelevant for other reasons.

*First,* it is an improper back-door to Plaintiff's spoliation motion, wherein Plaintiff contends this is an issue for the jury to decide.  Plaintiff plans to offer Mr. Bercovici to decide this same issue for the jury as an "expert."  She cannot have

1   it both ways.  This is not the proper role of an expert.[2]

2        *Second*, to the extent Plaintiff contends Mr. Bercovici's opinion is relevant to

3   show that there was some intent to "cover up" the truth, she is wrong.  An opinion

4   about Defendants' subjective intent or state of mind is not based upon knowledge,

5   skill, experience, training, or education; and it is not helpful to the jury.  Such an

6   opinion is plainly improper: *M.H.*, 2015 WL 54400, at *2 (an expert may not testify

7   as to defendant's subjective state of mind); *Georges*, 2013 WL 5217198, at *15

8   (precluding expert opinions on defendant's intent, motivations or state of mind);

9   *Hill*, 2012 WL 5451816, at *2 (same).

10             **2.**      **Opinion #3 Should Be Excluded Under Rule 403 Because It**

                 **Would Confuse The Jury And Cause Undue Prejudice**

11        Allowing Mr. Bercovici to offer this irrelevant, unfounded opinion would be

12   profoundly confusing and misleading.  It could lead the jury to believe that certain

13   *Monell* theories are viable where there is no authority to support them.  Defendants

14   will be forced either to ignore Mr. Bercovici's irrelevant opinion and hope the jury

15   understands the proper parameters of Plaintiff's *Monell* claim, or spend valuable

16   trial time introducing witnesses and evidence to defend against nonexistent claims.

17   It would also confuse the jury regarding whose role it is to decide whether

18   Defendants' deletion of crash site photos before any litigation was threatened or

19   pending constitutes spoliation.

20        Moreover, admission of Mr. Bercovici's testimony would be unduly

21   prejudicial to Defendants.  Mr. Bercovici has been on TV and has worked on other

22

23

---

[2] Plaintiff is also wrong on both fronts.  Mr. Bercovici's opinion—essentially, that
LASD "spoliated" evidence—seeks to usurp the role of the Court, which is tasked
with deciding whether Defendants' deletion of crash site photos before any litigation
was threatened or pending constitutes spoliation. This legal issue is for the Court to
decide, not for Mr. Bercovici and not for the jury.  *Hangarter v. Provident Life &
Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (an expert witness cannot give
an opinion on an ultimate issue of law).

high-profile cases.  Jurors could be swayed by his background and give undo weight to his unfounded and unreliable testimony because he is called an "expert." Accordingly, his testimony should be excluded under Rule 403.  *See Brown*, 871 F.3d at 539 (district court properly excluded expert testimony where its admission "may have induced the jurors to defer to [the expert's] conclusion rather than drawing their own").

### 3.    Mr. Bercovici Improperly Relies On Materials Not Disclosed In His Report

Plaintiff's Offer of Proof reveals that, in forming Opinion #3, Mr. Bercovici improperly relied on materials not disclosed in his report (Offer of Proof, Ex. A).  To the extent Opinion #3 is based on any of the materials listed below, it should be excluded:

| Email thread from T. Schrader to B. Grubb re: Contact US - LASD.org "Kobe" | Ralph Mendez | January 29, 2020 | COLA007128 | N/A |
|---|---|---|---|---|

## C.    Proffering Party's Response (Plaintiff)

### 1.    Opinion #3 Is Admissible Under Rule 702

#### (a)    Mr. Bercovici Is Well-Qualified

Defendants largely repeat the arguments they made about Mr. Bercovici's qualifications for Opinion #1 and Opinion #2, which fail for the reasons addressed above.  *See supra* at 21-25, 45-46.

Defendants do not address Mr. Bercovici's extensive experience supervising and managing law enforcement officers, investigating complaints against law enforcement officers, supervising subordinates investigating such complaints, adjudicating complaints and recommending discipline, presenting misconduct cases to department tribunals, and overseeing forensic collections and analyses of devices. *See supra* at 53; Ex. A at 3-4, 13, 15.)  They ignore that, through this work, he "became extremely familiar with basic standards for internal investigations,

1  including the preservation of evidence, identifying witnesses, and interviewing

2  officers who were the subjects of the investigation" and became "very experienced

3  in the practices of internal investigations from start to finish." (Ex. A at 3-4.)

4        Defendants again argue that Mr. Bercovici did not work for LASD.  They

5  ignore Mr. Bercovici's training in statewide peace officer standards.  (Ex. C at 2;

6  Ex. B at 13:13-15:7.)  They also ignore that he relied on a set of standards and

7  guidelines developed by eleven major police agencies—including **both LAPD and**

8  **LASD**—and published by the FBI, as well as other literature general to all law

9  enforcement investigations.  (Ex. A at 12-13 & nn.10-12; *see also Standards and*

10  *Guidelines for Internal Affairs: Recommendations from a Community of Practice* at

11  6-7, *available at* https://cops.usdoj.gov/ric/Publications/cops-p164-pub.pdf.)

12        Once again, Defendants point to no evidence that LASD and LAPD, who

13  wrote and use the same handbook for internal investigations, operate under or are

14  governed by different standards for internal investigations.  Defendants likewise

15  offer no explanation for why Mr. Bercovici's extensive experience with internal

16  investigations would not apply to LASD.

17        Mr. Bercovici has substantially more than the "*minimal foundation* of

18  knowledge, skill, and experience" required by the "*broad conception* of expert

19  qualifications" in Rule 702.  *Hangarter*, 373 F.3d at 1015-16.  Defendants'

20  arguments about Mr. Bercovici's "lack of particularized expertise goes to the weight

21  accorded [his] testimony, not to the admissibility of [his] opinion as an expert."

22  *Garcia*, 7 F.3d at 890; *see also Valentin*, 1997 WL 33323099, at *23.

23              **(b)    The Opinion Is Relevant to *Monell* Liability**

24        Plaintiff's proffer explains that Mr. Bercovici's opinion is relevant, among

25  other reasons, because it demonstrates LASD's deliberate indifference to its

26  officers' constitutional violations and its practice of tolerating them.  Without

27  elaboration, Defendants assert that Sheriff Villanueva's offer of amnesty in

28  exchange for destruction of evidence— and Mr. Bercovici's opinion that it was an

egregious breach of basic standards that resulted in a failure to fully investigate misconduct and discipline the deputies involved—"does not have any bearing on" Defendants' *Monell* liability.[3]  Defendants ignore Ninth Circuit precedent holding that "post-event evidence" of a failure to respond appropriately to violations or reprimand misconduct is "highly probative" of "a municipal defendant's policy or custom," from which a jury may infer a "preexisting policy of deliberate indifference to the dangerous recklessness" of its officers.  *Henry v. Cnty. of Shasta*, 132 F.3d 512, 519 (9th Cir. 1997); *see also, e.g.*, *Rodriguez v. Cty. of L.A.*, 891 F.3d 776, 803 (9th Cir. 2018) (LASD's "failure to take any remedial action" post-incident allows jury "to infer that LASD had adopted a custom or practice of condoning [misconduct]"); *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001) (A "turn a-blind-eye approach," including "failure to investigate" and "lack of reprimand or discipline for the officers involved even when their supervisors were aware of the complaints" supported conclusion that "a policy or custom [] led to violation" of constitutional rights).  They also ignore Mr. Bercovici's explanation that, "[b]ased on [his] experience with internal law enforcement investigations, . . . the manner in which Sheriff Villanueva handled the Department's self-described 'inquiry' into the improper photos would have sent a signal to law enforcement officers that even egregious sharing of photos of victims' remains would go unpunished."  (Ex. A at 21.)

### (c)    The Opinion Is Relevant to Several Other Issues

Besides demonstrating deliberate indifference, Plaintiff's proffer gives three other reasons for why Mr. Bercovici's opinions are relevant:  (1) casting doubt on Defendants' evidence that their actions and investigation determined and ensured

---

[3] Defendants are wrong that Plaintiff abandoned her *Monell* theories other than failure to train.  *See supra* at 27.  In any event, a failure to train theory requires deliberate indifference.  *See* 9th Cir. Model Instr. 9.8.

that dissemination was limited, that all copies of the photos have been were secured and destroyed, and that Plaintiff can have no reasonable fear of the photos going viral on the internet; (2) informing the jury's view of what inferences to draw from Defendants' destruction of the direct forensic evidence of the extent of their misconduct; and (3) disproving Defendants' argument that the photos were ordered to be deleted to prevent harm to the family members of the victims. *See supra* at 51-53.

Defendants ignore the first and third reasons, thereby conceding them. They do not dispute that they plan to argue to the jury that LASD deleted the photos to prevent harm to the families, or that Mr. Bercovici's opinions directly rebut that argument. (*See* Ex. A at 15-16.) Nor do they dispute that they plan to argue to the jury that their actions confirmed and ensured that dissemination was limited and all copies of the photos were secured and destroyed, or that Mr. Bercovici's opinions cast doubt on that argument.

Defendants are wrong that Mr. Bercovici's opinions usurp the role of the Court or the jury on spoliation. It is up the Court to decide how to instruct the jury on what inferences it may draw. And it is up to the jury to decide what inferences to draw. But Mr. Bercovici's testimony that the destruction was highly irregular, unnecessary, and improper, that it was inconsistent with proper law enforcement objectives, and that law enforcement officers know of the need to preserve evidence of misconduct and evidence that might be relevant to an ongoing federal investigation, is certainly informative to the jury in deciding whether to infer that the destroyed evidence would likely have contradicted Defendants' arguments.

## 2.   Defendants Do Not Show Unfair Prejudice

Defendants make the same baseless argument under Rule 403 that they raise on Opinion #1, which should be rejected for the same reasons. *See supra* at 28. Nor would Mr. Bercovici's testimony confuse the jury about its role with regard to drawing inferences from spoliation. Plaintiff has requested several jury instructions

1  that make the jury's role quite clear.  *See* Disputed Jury Instr. Nos. 46-48.

2  **3.  Mr. Bercovici Disclosed His Reliance Materials**

3  Defendants point to one of the same supposedly undisclosed documents as in

4  Opinion #1.  The document was disclosed.  *See supra* at 28-29.

5  **IV.  OPINION #4: LASD'S INVESTIGATION DEVIATED**
   **DRAMATICALLY FROM ACCEPTED STANDARDS IN**
6  **ADDITIONAL WAYS THAT CAST DOUBT ON ITS**
   **EFFECTIVENESS AND RESULTS**
7

8  Mr. Bercovici will testify that LASD's so-called "inquiry" (conducted in late

9  January and early February 2020) and "internal investigation" (conducted from

10 March through May 2020) deviated dramatically from accepted investigative

11 standards in many other ways—besides the deletion of evidence—and that these

12 deviations call into question the effectiveness and results of LASD's investigative

13 process.  (Ex. A at 2, 16-21.)

14 More granularly, and as part of this opinion, Mr. Bercovici will opine that:

15 •     There were at least 17 irregularities from standard investigative

16 protocols during LASD's initial "inquiry" into the complaint regarding deputies

17 sharing photos from the crash:

18 ○     Given the seriousness of the allegation in the citizen complaint, it

19 should have been automatically routed to the Sheriff's Department's Internal Affairs

20 Bureau ("IAB"), which specializes in investigating officer misconduct.  (*Id*. at 16.)

21 ○     An "inquiry," like the one undertaken by the Sheriff's

22 Department, is conducted only if it is not clear whether the complaint merits further

23 investigation.  The information already known to LASD established at the time it

24 conducted the inquiry that serious misconduct likely had occurred and a full

25 investigation was warranted.  (*Id*.)

26 ○     Sheriff Villanueva and SIB immediately taking control of the

27 investigation before evidence was collected broke the chain-of-command and

28 presented a serious risk that the investigation would be improperly influenced.

1  Because the Sheriff has the final say on discipline and is supposed to be an objective
2  trier-of-fact who reviews the final product, he should not have been involved in the
3  investigation.  But he became party to the issues under investigation when he
4  ordered the destruction of evidence and could no longer objectively adjudicate.  The
5  correct procedure would have been to allow IAB to complete the investigation
6  without interfering.  (*Id*. at 16-17)

7              ○      The leadership role played by members of the Sheriff's
8  Information Bureau office (Captain Jorge Valdez and Lieutenant John Satterfield)
9  was problematic, because the Sheriff's Information Bureau serves a public-relations
10 role and is not well versed in internal investigations.  The involvement of the
11 Sheriff's Information Bureau was improper and counterproductive to an internal
12 investigation, which requires clearly defined roles.  (*Id*. at 17; Ex. B at 122:25-
13 126:23.)

14             ○      The instruction to personnel to delete evidence before they came
15 into the station for formal interviews amounted to a "delete first, ask questions later"
16 strategy.  LASD had not determined the potential scope of the misconduct and
17 problem before destroying evidence of that scope.  (Ex. A at 17.)

18             ○      Because the phones used to take and share the photos were not
19 inspected or analyzed, the "inquiry" simply assumed that members of the
20 Department suspected of misconduct had told the truth when they said they deleted
21 any photos they had.  This reliance on the honor system violated professional
22 standards of internal investigation, under which the first step should have been to
23 secure the evidence.  This failure to adhere to investigative standards was one of the
24 early factors in compromising the investigation.  (Ex. A at 17.)

25             ○      The minimal time spent interviewing officers (five or ten
26 minutes apiece) was insufficient to conduct a proper inquiry regarding alleged
27 misconduct.  A complete and thorough series of initial interviews was needed.  (*Id*.;
28 Ex. B at 127:12-129:17.)

1    o    The Sheriff's Department's self-described "interviews" of the

2    suspected personnel essentially amounted to a statement from supervisors to the

3    suspected wrongdoers that they would receive amnesty in exchange for deleting the

4    photos, which was not a true fact-finding interview.  (Ex. A at 17.)

5    o    The interviewing officers' failure to use any video or audio

6    recording for the interviews, or prepare a transcript, missed a basic investigative step

7    and compromised the inquiry.  Interviews should be recorded because they are

8    difficult to authenticate without one.  (*Id*.)

9    o    The failure to ask Joey Cruz whether the photos in his possession

10    contained human remains was a gross oversight in light of Cruz having been

11    identified as the officer who showed photos of Kobe's body in a bar.  (*Id*. at 18.)

12    o    The failure to document the interviews, such as with

13    contemporaneous notes or memos, rendered the interviews anecdotal and deprived

14    them of most of their investigative value.  (*Id*.)

15    o    The failure to try to obtain, search, or preserve the cell phones of

16    personnel at the crash site violated investigative standards.  (*Id*.)

17    o    The failure of departmental leadership to document their

18    involvement in the inquiry violated investigative standards.  (*Id*.)

19    o    The lack of email correspondence or other records regarding the

20    "inquiry" is irregular in light of the number of investigators and subjects.  (*Id*.)

21    o    The short memos purportedly written by personnel who had been

22    at the crash scene are worded very similarly, suggesting that they followed a

23    template or were directed to use particular language and that there was no attempt to

24    solicit independent accounts from the involved personnel.  (*Id*.)

25    o    The performance log entries are conspicuously unusual in not

26    describing the misconduct, or even mention the taking, sharing, displaying, or

27    keeping of photos of human remains.  (*Id*.)

28

1      ○     The log entries are also unusual in that they were not issued until

2 several weeks after the inquiry concluded and around the time that the *Los Angeles*

3 *Times* reached out for comment.  (*Id*. at 19.)

4     •    There were at least 7 irregularities from standard investigative

5 protocols during LASD's subsequent IAB investigation:

6       ○     The failure to conduct a forensic examination of any devices

7 (despite the in-house capability to do so), or to preserve or direct the preservation of

8 those devices, or to ask whether personnel would voluntarily submit their phones for

9 analysis, all deviated from standard protocols.  (*Id*.)

10       ○     The IAB investigation interviews very short given the

11 seriousness and scope of the issues.  (*Id*.)  For example, one employee who

12 possessed photos of the victims' remains was interviewed for only thirteen minutes.

13 (*Id*.)

14       ○     The investigators do not appear to have been adept in the

15 relevant technology for sharing photos across devices, limiting the confidence in

16 their competence to conduct the investigation and in the conclusions of the

17 investigation.  Given the subject of the investigation, the investigators should have

18 become familiar with the technology or enlisted others who had familiarity.  (*Id*.)

19       ○     The investigators' failed to follow up when personnel expressed

20 uncertainty regarding whether any photos existed on personal cloud accounts, which

21 violates standards and undermines the conclusion of the investigation.  (*Id*.)

22       ○     The investigators' failed to examine cell phone records of the

23 targets of the investigation, and others known to have possessed the photos, which

24 violates standards and undermines the conclusion of the investigation.  (*Id*.)

25       ○     The monologue that preceded many of the interviews by the IAB

26 examiner was highly suggestive and reduced the likelihood of candor and is contrary

27 to accepted investigative techniques.  (*Id*. at 19-20.)

28

1          ○          IAB investigators should have interviewed Sheriff Villanueva,

2   given his involvement in the deletion and leniency offers, and forgoing his interview

3   failed to close the investigative circle.  (*Id.* at 20.)

4          •          In sum, these irregularities constituted a dramatic deviation from

5   professional law enforcement standards and basic investigation protocols, and

6   contrast starkly with past inquiries of similar misconduct by other agencies.  (*Id.* at

7   20-21.)

8          •          These irregularities render the investigation unreliable and deficient, for

9   reasons beyond the decision to delete the most critical evidence of misconduct.  (*Id.*

10  at 21.)

11          •          The manner in which Sheriff Villanueva handled the Department's

12  inquiry into the improper photos would have sent a signal to law enforcement

13  officers that even egregious sharing of photos of victims' remains would go

14  unpunished.  (*Id.*)  Command staff commitment is required to correct longstanding,

15  widespread inappropriate conduct that has become a part of law enforcement

16  culture, such as taking, sharing, and keeping death photos.  (*Id.*)  The inquiry here

17  conveyed the opposite of such commitment.  (*Id.*)

18      **A.      Proffering Party's Position (Plaintiff)**

19              **1.      Relevance of Opinion #4**

20          Mr. Bercovici's opinions that LASD's investigation was highly irregular and

21  deviated from basic, commonly accepted investigative standards, goes to the same

22  three issues discussed above with respect to Opinion #3:

23          It casts significant doubt on the thoroughness and efficacy of Defendants'

24  investigation.  It undermines Defendants' arguments that its investigation proved

25  there was no widespread public dissemination and all copies were secured and

26  destroyed.  It supports the conclusion that Defendants' findings are not to be trusted,

27  that dissemination was more extensive than Defendants admit, and that the photos

28  were never fully contained and could resurface at any moment.

It helps the jury see that, by eschewing a real investigation and granting amnesty to officers in exchange for deleting evidence, LASD demonstrated its deliberate indifference to these violations and its custom and practice of tolerating them.  For example, Mr. Bercovici explains how LASD leadership's handling of the investigation "would have sent a signal to law enforcement officers that even egregious sharing of photos of victims' remains would go unpunished."  (Ex. A at 21.)

And it informs the jury's view of what inferences to draw from Defendants' spoliation of the only forensic evidence that would reflect the extent of their misconduct, including whether the spoliated evidence was likely to be harmful to Defendants.

Mr. Bercovici provides context about how law enforcement investigations are and are not supposed to be conducted that will be helpful to jurors, who are likely unfamiliar with law enforcement investigations but who will be asked to draw inferences from the investigation here and to accept or reject its findings.

### 2.     Basis for Opinion #4

Mr. Bercovici's extensive experience participating in and overseeing internal investigations, discussed above as a basis for Opinion #3, is also an important basis for Opinion #4.  (Ex. A at 3-4, 13, 15.)

In addition to his specialized expertise, Mr. Bercovici relied on various materials, including documents describing Defendants' inquiry and investigation, and articles demonstrating how prior similar misconduct was investigated by another law enforcement agency in Los Angeles.  These materials are listed in the table below:

**<u>Documents Relied upon in Forming Opinion #4</u>**

| Title | Author | Date | Bates | TREX |
|---|---|---|---|---|
| Discpline Disposition Reserve Deputies Katz, Marshall, Garden and Civilian Specialists Thomhill and Hollinger IAB 2504757 | LASD | July 23, 2020 | COLA035238-39 | N/A |
| Email thread between D. Woodward and N. Cabrera | Naomi Cabrera | March 29, 2020 | COLA035456 | N/A |
| Email thread between D. Woodward and N. Cabrera re: Missing Newletter | Naomi Cabrera | May 5, 2020 | COLA035457-60 | N/A |
| Draft LASD Newsletter | LASD | May 11, 2020 | COLA035445-47 | N/A |
| Spread Sheet Project 20-013 | LASD | Undated | COLA035448 | N/A |
| FAC Exhibit 1 LASD SIB Press Release | LASD | February 28, 2020 | N/A | N/A |
| Deposition Transcript of Marcus Phillips | Marcus Phillips | September 14, 2021 | N/A | N/A |
| Disposition Sheet Recommendation for Discipline, Joey Cruz No. IV2504757 | LASD | July 24, 2020 | COLA035214-19 | 124 |

| | | | | |
|---|---|---|---|---|
| Discipline Disposition, Douglas Johnson No. IV2504757 | LASD | August 8, 2020 | COLA035220-24 | 439 |
| Discipline Disposition, Travis Kelly  No. IV2504757 | LASD | August 8, 2020 | COLA035225-32 | 147 |
| Discpline Disposition, Justin Diez No. IV2504757 | LASD | August 8, 2020 | COLA035233-37 | N/A |
| Correspondence from Joey Cruz to Captain Vander Horck | Joey Cruz | January 30, 2020 | COLA003305-06; COLA003311-12; COLA003318-19; COLA003327; COLA003331 | N/A |
| Discpline Disposition, Rafael Mejia IV 2504757 | LASD | August 5, 2020 | COLA035244-52 | 108 |
| Notice of Completion of Investigation for Michael Russell | LASD | August 5, 2020 | COLA035253-61 | 63 |
| Email thread between C. Stelter and N. Cabrera re: NL Safeguarding the integrity of Department Investigations | Vanessa Marquez | May 14, 2020 | COLA035463-64 | N/A |
| Notice of Completion of Investigation for Raul Versales | LASD | January 30, 2020 | COLA035262-69 | 112 |
| Email thread from J. Valdez to M. Vander Horck re: Contact US - LASD.org "Kobe" | Ralph Mendez | January 29, 2020 | COLA007168-69 | 70 |

JOINT STATEMENT FOR PLAINTIFF'S EXPERT ADAM BERCOVICI

| | | | | |
|---|---|---|---|---|
| Performance Log Entry for D. Johnson | LASD | February 27, 2020 | COLA000747 | 58 |
| Performance Log Entry for J. Cruz | LASD | February 27, 2020 | COLA000745 | 59 |
| Performance Log Entry for M. Russell | LASD | February 27, 2020 | COLA000743 | 60 |
| Performance Log Entry for R. Mejia | LASD | February 27, 2020 | COLA000744 | 61 |
| Performance Log Entry for R. Versales | LASD | February 27, 2020 | COLA000746 | 62 |
| Managing Accountability Systems for Police Conduct-Internal and External Oversight, by Jeffrey J. Noble and Geoffrey P. Alpert | Jeffrey J. Noble | July 1, 1905 | N/A | N/A |
| Law Enforcement Administrative Investigations, by Lou Reiter | Lou Reiter | January 1, 1993 | N/A | N/A |
| Internal Investigations A Practioners Approach, by Frank Colaprete, Chapter 12 | Frank Coloprete | 2007 | N/A | N/A |
| Deposition Transcript of Hector Mancinas | Hector Mancinas | September 27, 2021 | N/A | N/A |
| LASD IAB Investigation Report No. IV2504757 | LASD | Undated | COLA000001-1140 | 600; 134; 135 |

JOINT STATEMENT FOR PLAINTIFF'S EXPERT ADAM BERCOVICI

| Memorandum from C. Jauregui to H. Mancinas re: Willow Incident Photographs | Christopher Jauregui | January 31, 2020 | COLA004013-14 | 57 |
|---|---|---|---|---|
| County of Los Angeles Incident Jurisdictional Form | LACFD | January 26, 2020 | COLA006998-99 | N/A |
| Email thread from D. Kneer to M. Vander Horck & C. Reed re R. Mendez complaint | Ralph Mendez | January 29, 2020 | COLA007135-36 | 126 |
| Email thread from T. Schrader to B. Grubb re: Contact US - LASD.org "Kobe" | Ralph Mendez | January 29, 2020 | COLA007128 | N/A |
| Email from T. Schrader to J. Diez re: Contact Us - LASD.org "Kobe" | Ralph Mendez | January 29, 2020 | COLA007129; COLA007130 | N/A |
| LASD Supplemental Report 920-00536-2244-496 | LASD | January 26, 2020 | COLA007249-52 | 33 |
| Email thread from A. Tchekmedyian (L.A. Times) to J. Valdez re: LA Times follow up re Lost Hills | L.A. Times | February 26, 2020 | COLA007318-20 | 72 |
| Email from V. Chow to Various Recipients re: Media Statements | LASD | March 1, 2020 | COLA007375 | N/A |
| Email thread from M. Vander Horck to A. Tchekmedyian re: LA Times Inquiry | L.A. Times | March 2, 2020 | COLA007391 | N/A |
| Email thread from S. Gross to D. Kneer re: Contact US - LASD.org "Kobe" | Ralph Mendez | January 29, 2020 | COLA009784 | 152 |

Case No. 2:20-cv-09582-JFW-E

JOINT STATEMENT FOR PLAINTIFF'S EXPERT ADAM BERCOVICI

| Email thread from J. Diez to H. Mancinas & M. Vander Horck | Ralph Mendez | January 29, 2020 | COLA009758-59 | 53 |
|---|---|---|---|---|
| Email thread from M. Velazquez to D. Alkonis re: CBS NEWS REQUEST FOR KOBE BRYANT CRASH FOOTAGE | Maryhelen Campa | February 14, 2020 | COLA010626-29 | N/A |
| Email thread from C. Stelter to J. Warren re: Department and Photos | Joana Warren | March 9, 2020 | COLA033883-85 | N/A |
| Watch Commander's Report 243817 | LASD | July 31, 2016 | COLA035335-99 | 85 |
| Villanueva Recording, ABC-7, https://www.facebook.com/watch/live?v=875675446231021&ref=watch_permalink | ABC-7 | March 2, 2020 | COLA001182 | 303 |
| Villanueva Recording, NBC-4, https://www.nbclosangeles.com/news/local/sheriff-ordered-deletion-of-kobe-bryant-crash-photos-to-prevent-wider-distribution/2321002/ | NBC-4 | March 2, 2020 | COLA030878 | 305 |
| LA Times, Firing of LAPD Officer Upheld in Case of Leaked Rihanna Photo | LA Times | March 21, 2014 | N/A | N/A |
| LA Times, Rihanna Photo Sparks LAPD Probe | LA Times | February 21, 2009 | N/A | N/A |

| | | | | |
|---|---|---|---|---|
| LA Times, LAPD Tries to Fire Cops Thought to Have Rihanna Photo to TMZ | LA Times | June 29, 2012 | N/A | N/A |
| LA Times, LAPD Officers Suspected of Leaking Rihanna Photo Won't Be Charged | LA Times | June 29, 2012 | N/A | N/A |
| https://cops.usdoj.gov/ric/Publications/cops-p164-pub-pdf | DOJ | Undated | N/A | N/A |
| Discpline Disposition Reserve Deputies Katz, Marshall, Garden and Civilian Specialists Thomhill and Hollinger IAB 2504757 | LASD | July 23, 2020 | COLA035238-39 | N/A |
| Email thread between D. Woodward and N. Cabrera | Naomi Cabrera | March 29, 2020 | COLA035456 | N/A |
| Email thread between D. Woodward and N. Cabrera re: Missing Newletter | Naomi Cabrera | May 5, 2020 | COLA035457-60 | N/A |
| Draft LASD Newsletter | LASD | May 11, 2020 | COLA035445-47 | N/A |
| Spread Sheet Project 20-013 | LASD | Undated | COLA035448 | N/A |
| FAC Exhibit 1 LASD SIB Press Release | LASD | February 28, 2020 | N/A | N/A |
| Deposition Transcript of Marcus Phillips | Marcus Phillips | September 14, 2021 | N/A | N/A |
| Disposition Sheet Recommendation for Discipline, Joey Cruz No. IV2504757 | LASD | July 24, 2020 | COLA035214-19 | 124 |
| Discipline Disposition, Douglas Johnson No. IV2504757 | LASD | August 8, 2020 | COLA035220-24 | 439 |

| | | | | |
|---|---|---|---|---|
| Discipline Disposition, Travis Kelly  No. IV2504757 | LASD | August 8, 2020 | COLA035225-32 | 147 |
| Discpline Disposition, Justin Diez No. IV2504757 | LASD | August 8, 2020 | COLA035233-37 | N/A |
| Correspondence from Joey Cruz to Captain Vander Horck | Joey Cruz | January 30, 2020 | COLA003305-06; COLA003311-12; COLA003318-19; COLA003327; COLA003331 | N/A |
| Discpline Disposition, Rafael Mejia IV 2504757 | LASD | August 5, 2020 | COLA035244-52 | 108 |
| Notice of Completion of Investigation for Michael Russell | LASD | August 5, 2020 | COLA035253-61 | 63 |
| Email thread between C. Stelter and N. Cabrera re: NL Safeguarding the integrity of Department Investigations | Vanessa Marquez | May 14, 2020 | COLA035463-64 | N/A |
| Notice of Completion of Investigation for Raul Versales | LASD | January 30, 2020 | COLA035262-69 | 112 |
| Email thread from J. Valdez to M. Vander Horck re: Contact US - LASD.org "Kobe" | Ralph Mendez | January 29, 2020 | COLA007168-69 | 70 |
| Performance Log Entry for D. Johnson | LASD | February 27, 2020 | COLA000747 | 58 |
| Performance Log Entry for J. Cruz | LASD | February 27, 2020 | COLA000745 | 59 |
| Performance Log Entry for M. Russell | LASD | February 27, 2020 | COLA000743 | 60 |
| Performance Log Entry for R. Mejia | LASD | February 27, 2020 | COLA000744 | 61 |

| | | | | |
|---|---|---|---|---|
| Performance Log Entry for R. Versales | LASD | February 27, 2020 | COLA000746 | 62 |
| Managing Accountability Systems for Police Conduct-Internal and External Oversight, by Jeffrey J. Noble and Geoffrey P. Alpert | Jeffrey J. Noble | July 1, 1905 | N/A | N/A |
| Law Enforcement Administrative Investigations, by Lou Reiter | Lou Reiter | January 1, 1993 | N/A | N/A |
| Internal Investigations A Practioners Approach, by Frank Colaprete, Chapter 12 | Frank Coloprete | 2007 | N/A | N/A |
| Deposition Transcript of Hector Mancinas | Hector Mancinas | September 27, 2021 | N/A | N/A |
| LASD IAB Investigation Report No. IV2504757 | LASD | Undated | COLA000001-1140 | 600; 134; 135 |
| Memorandum from C. Jauregui to H. Mancinas re: Willow Incident Photographs | Christopher Jauregui | January 31, 2020 | COLA004013-14 | 57 |
| County of Los Angeles Incident Jurisdictional Form | LACFD | January 26, 2020 | COLA006998-99 | N/A |
| Email thread from D. Kneer to M. Vander Horck & C. Reed re R. Mendez complaint | Ralph Mendez | January 29, 2020 | COLA007135-36 | 126 |
| Email thread from T. Schrader to B. Grubb re: Contact US - LASD.org "Kobe" | Ralph Mendez | January 29, 2020 | COLA007128 | N/A |
| Email from T. Schrader to J. Diez re: Contact Us - LASD.org "Kobe" | Ralph Mendez | January 29, 2020 | COLA007129; COLA007130 | N/A |

JOINT STATEMENT FOR PLAINTIFF'S EXPERT ADAM BERCOVICI

| | | | | |
|---|---|---|---|---|
| LASD Supplemental Report 920-00536-2244-496 | LASD | January 26, 2020 | COLA007249-52 | 33 |
| Email thread from A. Tchekmedyian (L.A. Times) to J. Valdez re: LA Times follow up re Lost Hills | L.A. Times | February 26, 2020 | COLA007318-20 | 72 |
| Email from V. Chow to Various Recipients re: Media Statements | LASD | March 1, 2020 | COLA007375 | N/A |
| Email thread from M. Vander Horck to A. Tchekmedyian re: LA Times Inquiry | L.A. Times | March 2, 2020 | COLA007391 | N/A |
| Email thread from S. Gross to D. Kneer re: Contact US - LASD.org "Kobe" | Ralph Mendez | January 29, 2020 | COLA009784 | 152 |
| Email thread from J. Diez to H. Mancinas & M. Vander Horck | Ralph Mendez | January 29, 2020 | COLA009758-59 | 53 |
| Email thread from M. Velazquez to D. Alkonis re: CBS NEWS REQUEST FOR KOBE BRYANT CRASH FOOTAGE | Maryhelen Campa | February 14, 2020 | COLA010626-29 | N/A |
| Email thread from C. Stelter to J. Warren re: Department and Photos | Joana Warren | March 9, 2020 | COLA033883-85 | N/A |
| Watch Commander's Report 243817 | LASD | July 31, 2016 | COLA035335-99 | 85 |

## B.   **Defendants' Position**

Opinion #4 is inadmissible under Rule 702 because Mr. Bercovici is not qualified to offer it; the opinion is not relevant to any viable theories underlying Plaintiff's *Monell* claim; and the opinion is improperly based on Mr. Bercovici's

assessment of Defendants' subjective intent and the credibility of Defendants' witnesses.  The opinion should also be excluded under Rule 403 because it would confuse the jury and cause undue prejudice.

### 1.   Opinion #4 Is Inadmissible Under Rule 702

#### (a)   Mr. Bercovici Is Not Qualified as an Expert on LASD Policies and Practices

"To qualify as an expert, a witness must have 'knowledge, skill, experience, training, or education' relevant to such evidence or fact in issue." *Chang*, 207 F.3d at 1172 (citation omitted).  To determine if an expert is qualified, the court must examine whether the witness's training, experience or specialized knowledge is sufficiently related to the subject matter upon which the witness offers an opinion. *Gable*, 727 F. Supp. 2d at 833.

"It is not enough that the proposed expert have expertise in an area of knowledge.  The expertise must be relevant to the determination of the facts in issue." *In re Canvas Specialty,* 261 B.R. at 19.  The proponent of the expert bears the burden of demonstrating that the expert is qualified.  *87.98 Acres of Land More or Less in the Cty. of Merced,* 530 F.3d at 904–05.

"General experience as a police officer, standing alone, is not sufficient to qualify the officer as an expert in every area of law enforcement . . . ." *See, e.g., Thomas*, 157 F.3d, at *5 (trial court properly found that police officer with over 20 years of experience was not qualified as an expert in area of police conduct relative to use of force, among other areas).

Prior to this case, Mr. Bercovici was precluded from doing exactly what Plaintiff is seeking to do here—give an expert opinion at trial that he has no qualifications to give.  In *Lasarte v. Custom Performance*, Mr. Bercovici was retained to provide an expert opinion on an investigation conducted by the Food and Drug Administration (FDA).  2018 WL 4513110, at *1.  The plaintiff moved *in limine* to exclude his testimony because, as here, Mr. Bercovici never worked for the

FDA or conducted an FDA investigation; had no personal involvement in the investigation at issue; had never investigated whether a business was involved in the illicit sale of nitrous oxide, the opinion he intended to offer at trial; and his extensive LAPD experience was not sufficiently related to the FDA.  (Dkt. 251-1 at 7.)  The court therefore precluded Mr. Bercovici from testifying at trial.

Here, Mr. Bercovici's opinion is based on his 30-year career at the City of Los Angeles in LAPD.  Mr. Bercovici's knowledge of LAPD practices does not qualify him to render expert opinions on LASD policies:

- Mr. Bercovici never worked for LASD or the County of Los Angeles.  (Offer of Proof, Ex. B at 13:4-12).

- He has never attended the LASD training academy.  (*Id.* at 20:19-24).

- He has never attended an LASD training regarding taking photos of accident/crime scenes or LASD's social media policy, and admittedly has no knowledge of what is said or what materials are provided during those trainings.  (*Id.* at 25:8-24.)

- He did not speak with anyone at LASD who was involved in responding to the crash site, the inquiry regarding taking and sharing of photos, or the IA investigation on which he opines.  (*Id.* at 37:3-18.)

- He has never been involved in an inquiry or IA investigation conducted by LASD and has no personal knowledge of LASD's internal rules and regulations regarding a sheriff's inquiry.  (*Id.* at 45:19-46:8.[4])

- He has no knowledge about LASD's internal policies regarding the requirements for documenting an investigation.  (*Id.* at 134:13-19 ["I don't know what the sheriffs do when they do that."].)

---

[4] Mr. Bercovici claims to have personal knowledge of LASD's internal rules and regulations regarding IA investigations based on his familiarity with the handbook of guidelines for IA investigations issued by the U.S. Department of Justice in 2006. But Mr. Bercovici admits that this document was not issued by LASD, and that he does not know whether LASD actually implemented the 2006 DOJ guidelines. (Offer of Proof, Ex. B at 48:16-23; 50:12-51:1.)

- He has no expertise in policies about the use of personal devices, nor did such policies even exist during his time at LAPD.  (*Id*. at 25:8-15; 68:7-23.)

Mr. Bercovici's career at LAPD does not give him a basis to opine on policies and practices of other law enforcement agencies about which he has no knowledge, experience or training.  He is not qualified under Rule 702: *Miller*, 874 F.2d at 1267-68 (witness not qualified to testify on recruitment tactics used by Soviet intelligence agency where he had no practical experience in Soviet recruitment and had not made any special study of the subject); *Chang*, 207 F.3d at 1172 (district court properly excluded opinion on authenticity of certificate where expert had no formal training in identifying counterfeit securities); *Gable*, 727 F. Supp. 2d at 833-35 (copyright law expert not qualified to render opinion on similarities between TV show and screenplay without specialized training in literary analysis); *Dominguez, 2018 WL 6164278, at *8-9* (excluding opinion on trajectory of bullet where witness was not an expert in ballistics, medicine or biomechanics).

Plaintiff argues that Mr. Bercovici has "collaborated extensively" with other law enforcement agencies, including LASD, throughout his career.  But the fact that Mr. Bercovici has interacted with LASD personnel over the course of his 30-year LAPD career does not qualify him to give an expert opinion on LASD investigations.  Plaintiff also argues that Mr. Bercovici has "extensive experience" in internal investigations.  (Dkt. No. 190-1 [Bercovici Decl.] ¶¶ 2-3.)  But these were all LAPD investigations.  They do not qualify him to opine on LASD. Plaintiff also contends that Mr. Bercovici's certifications from California POST (Peace Officer Standards & Training) qualify him to opine on LASD/LACFD procedures because "there is legislation that establishes POST as the . . . overseer of law enforcement in the State of California."  (Offer of Proof, Ex. B at 14-15.)  But Mr. Bercovici was unable to identify any such legislation.

Per his own testimony, no court has accepted Mr. Bercovici's opinion at trial regarding the propriety of a law enforcement investigation into any issue.  (Offer of

1   Proof, Ex. B at 24:4-10.)

2   **(b)    The Opinion Is Irrelevant To The *Monell* Claim**

3       Plaintiff alleged three *Monell* theories in her FAC: (i) failure to train;

4   (ii) failure to adequately investigate and discipline; and (iii) a County "pattern of

5   practice and/or custom of unnecessarily taking and sharing death images."  (FAC

6   ¶¶ 81-86.)  In her opposition to Defendants' Motion for Summary Judgment,

7   Plaintiff abandoned all but the training theory.  [Dkt. No. 190 at 18:5-20:9.]  *See*

8   *Shakur*, 514 F.3d at 892 ("[P]laintiff has 'abandoned … claims by not raising them

9   in opposition to [the defendant's] motion for summary judgment.'" (second

10  alteration in original) (citation omitted)).

11      Accordingly, Mr. Bercovici's opinion about the adequacy of LASD's

12  investigation is not relevant to Plaintiff's claims.  *Jones*, 155 F.3d at 593

13  ("[E]vidence offered to prove a matter not at issue is immaterial.");  *Wyatt Tech.*

14  *Corp.*, 2010 WL 11505684, at *13 (granting motion *in limine* precluding evidence

15  about categories of trade secrets that no longer remained after summary judgment).

16      Like Opinion #3, Plaintiff argues that Mr. Bercovici's opinion about the

17  various insufficiencies with LASD's internal investigations is relevant to show

18  LASD's "deliberate indifference" to a supposed practice of improperly taking and

19  sharing death images.  This argument does not many any sense.  Opinion #4 does

20  not have any bearing on the training theory under *Monell*—the only theory that

21  remains in this case.

22  **(c)    The Opinion About Defendants' Intent Is Irrelevant**

23      This opinion is based on Mr. Bercovici's assessment of Defendants' state of

24  mind and subjective intent, which is improper.  For example, Mr. Bercovici testified

25  regarding LASD's subjective intent in conducting its inquiry—"[T]here is no

26  attempt to get to the bottom of anything here.  The only thing they're trying to do is

27  to make it disappear."  (Offer of Proof, Ex. B at 128:22-129:22.)

28      This opinion is not based upon knowledge, skill, experience, training, or

education; and it is not helpful to the jury.  It is plainly improper: *M.H.* 2015 WL 54400, at *2 (an expert may not testify as to defendant's subjective state of mind); *Georges*, 2013 WL 5217198, at *15 (precluding expert opinions on defendant's intent, motivations or state of mind); *Hill*, 2012 WL 5451816, at *2 (same).

### (d) The Opinion Is Speculative And Will Not Assist the Jury

Mr. Bercovici has done no personal investigation into this case and cannot even state with certainty whether he read the entirety of the IA report.  (Offer of Prof, Ex. B at 43:11-18.)  Instead of basing his opinions on scientific, technical or other specialized knowledge, as Rule 702 requires, Mr. Bercovici's opinion is based on speculation—sometimes (as he testified) a "smell test" (*id.* at 124:15-125:16); other times "picking up on" things (*id.* at 90:3-91:10).  For example:

- Mr. Bercovici admits that he has "no direct experience working the sheriff's inquiry". (*Id.* at 104:16-25.)
- Mr. Bercovici's opinion about LASD's investigative procedure is based on a "smell test."  (*Id.* at 124:16 – 125:13.)
- Mr. Bercovici admits that he has no knowledge of LASD's policies about documenting an investigation ("I don't know what the sheriffs do when they do that.").  (*Id.* at 134:13-19.)
- Although Mr. Bercovici opines that LASD's interviews were too short, he admits that there is no standard for their length.  (*Id.* at 144:9-13.)

Mr. Bercovici's speculative opinion is inadmissible under Rule 702.  *Diviero*, 114 F.3d at 853 (affirming district court's exclusion of expert opinions because they were speculative and did not assist the trier of fact); *Guidroz–Brault*, 254 F.3d at 829 (expert testimony does not include speculation).

### (e) The Opinion Improperly Assesses Defendants' Credibility

In forming this opinion, Mr. Bercovici improperly discredits the testimony of

LASD deputies that they wrote their investigation memoranda independently and without a template: "The memoranda were purportedly written by the crash-site personnel but were strikingly similar in their wording, suggesting that they followed a template or were directed to use particular language."  (Offer of Proof, Ex. A at 19; Ex. B at 134:25-137:22.)

Mr. Bercovici's opinion is based on how he judges the credibility of Defendants' witnesses, which is impermissible.  *Barnard*, 490 F.2d at 912 ("Credibility . . . is for the jury— the jury is the lie detector in the courtroom."); *Amaral*, 488 F.2d at 1153 (expert testimony on the unreliability of eyewitness testimony properly excluded); *Wisler*, 2008 WL 2880442, at *4 (excluding opinions inferring that officers were lying because credibility is an issue for the jury); *Godinez*, 2018 WL 2018048, at *6 (precluding expert from making credibility determinations).

### 2.   Opinion #4 Should Be Excluded Under Rule 403 Because It Would Confuse The Jury And Cause Undue Prejudice

Allowing Mr. Bercovici to offer this irrelevant, speculative opinion would be profoundly confusing and misleading.  It could lead the jury to believe that certain *Monell* theories are still part of this case despite Plaintiff having abandoned them. Defendants will be forced either to ignore Mr. Bercovici's irrelevant opinion and hope the jury understands the proper parameters of Plaintiff's *Monell* claim, or spend valuable trial time introducing witnesses and evidence to defend against abandoned claims.  It would also confuse the jury regarding the fact that it is exclusively their role to determine which witnesses are credible.  *See Benally*, 541 F.3d at 995 (expert testimony on credibility of other witnesses unduly influences the jury and should be excluded under Rule 403).

Moreover, admission of Mr. Bercovici's testimony would be unduly prejudicial to Defendants.  Mr. Bercovici has been on TV and has worked on other high-profile cases.  Jurors could be swayed by his background and give undo weight

to his unfounded and unreliable testimony because he is called an "expert." Accordingly, his testimony should be excluded under Rule 403. *See Brown*, 871 F.3d at 539 (district court properly excluded expert testimony where its admission "may have induced the jurors to defer to [the expert's] conclusion rather than drawing their own").

### 3.   Mr. Bercovici Improperly Relies On Materials Not Disclosed In His Report

Plaintiff's Offer of Proof reveals that, in forming Opinion #4, Mr. Bercovici improperly relied on materials not disclosed in his report (Offer of Proof, Ex. A). To the extent Opinion #4 is based on any of the materials listed below, it should be excluded:

| Email thread from T. Schrader to B. Grubb re: Contact US - LASD.org "Kobe" | Ralph Mendez | January 29, 2020 | COLA007128 | N/A |
| --- | --- | --- | --- | --- |

### C.   Plaintiff's Response

#### 1.   Opinion #4 Is Admissible Under Rule 702

##### (a)   Mr. Bercovici Is Well-Qualified

Defendants' argument on Mr. Bercovici's qualifications to Offer Opinion #4 is essentially identical to their argument on Opinion #3, and fails for the same reasons. *See supra* at 64-65.

##### (b)   The Opinion Is Relevant to *Monell* Liability

Defendants' argument on relevance to *Monell* liability is essentially identical to their argument on Opinion #3, and fails for the same reasons. *See supra* at 65-66.

Moreover, Plaintiff's offer of proof explained how Mr. Bercovici's opinion was relevant to several other important issues, including casting doubt on the thoroughness and efficacy of Defendants' investigation; undermining Defendants' arguments that its investigation proved there was no widespread public dissemination and all copies were secured and destroyed; supporting the conclusion

1   that dissemination was more extensive than Defendants admit and that the photos

2   were never fully contained and could resurface at any moment; and informing the

3   jury's view of what inferences to draw from Defendants' spoliation of the only

4   forensic evidence that would reflect the extent of their misconduct, including

5   whether the spoliated evidence was likely to be harmful to Defendants.  *See supra* at

6   72-73; *see also supra* at 51-52.  Defendants fail to address or controvert these

7   points.

8   <center>(c)   <u>Mr. Bercovici Is Not Opining on Intent</u></center>

9   Plaintiff has not proffered an opinion by Mr. Bercovici on Defendants' intent.

10  The Court can review the proffered opinion, *see supra* at 68-72, and see that for

11  itself.  Defendants point to a different statement they elicited from Mr. Bercovici in

12  deposition.  But even there, Mr. Bercovici's statement that "there is no attempt to

13  get to the bottom of anything here" (Ex. B at 128:22-129:22) is a reasonable critique

14  of the process Defendants employed, informed by Mr. Bercovici's extensive

15  experience with how a proper investigation is conducted.

16  <center>(d)   <u>The Opinion Is Based on the Application of Mr. Bercovici's Experience to the Facts of This Case, Not</u></center>

17  <center><u>Speculation</u></center>

18  Defendants are simply wrong that Mr. Bercovici has done no investigation

19  into this case.  He reviewed voluminous records concerning LASD's "inquiry" and

20  subsequent "investigation" into the misconduct at issue in this case.  He then applied

21  his extensive experience in internal investigations, and accepted published standards

22  for such investigations, to identify and explain 24 different irregularities in

23  Defendants' processes.  (*See* Ex. A at 16-20.)  Defendants' quibbles with some of

24  those irregularities at most go to weight, not admissibility.

25  <center>(e)   <u>Mr. Bercovici Does Not Opine on Witness Credibility</u></center>

26  Plaintiff is not proffering any opinion by Mr. Bercovici on the credibility of

27  LASD deputies.  Defendants point to Mr. Bercovici's statement that "memoranda

28  were purportedly written by the crash-site personnel but were strikingly similar in

their wording, suggesting that they followed a template or were directed to use particular language." (Ex. A at 18.)  Mr. Bercovici is offering an opinion, based on his years of experience, that the similarity in the wording of the memoranda suggests they were coordinated and not independently written.  That opinion could cause jurors to question the credibility of any witnesses who might testify that the deputies wrote their own memos, but that doesn't mean that Mr. Bercovici is offering an opinion on witness credibility.

### 2.   Defendants Identify No Unfair Prejudice

Defendants' argument that Opinion #4 should be excluded under Rule 403 is essentially identical to the argument they make on Opinion #1 and should be rejected for the same reasons.  *See supra* at 28.

### 3.   Mr. Bercovici Disclosed His Reliance Materials

Defendants point to one of the same supposedly undisclosed documents as in Opinion #1.  The document was disclosed.  *See supra* at 28-29.

DATED:  February 2, 2022              WILSON SONSINI GOODRICH & ROSATI, PC

By:   _____*/s/ Luis Li*_____
                      LUIS LI

Attorneys for Plaintiff Vanessa Bryant

1   DATED:  February 2, 2022          OFFICE OF COUNTY COUNSEL

2

3

4                                     By:      /s/ Jonathan McCaverty

5                                           JONATHAN C. McCAVERTY
                                            Attorneys for Defendant

6                                           LOS ANGELES COUNTY SHERIFF'S
                                            DEPARTMENT

7

8

9   DATED:  February 2, 2022          MILLER BARONDESS, LLP

10

11

12                                    By:      /s/ Luis Miller

13                                          LOUIS R. MILLER
                                            Attorneys for Defendants

14                                          COUNTY OF LOS ANGELES, LOS
                                            ANGELES COUNTY FIRE

15                                          DEPARTMENT, JOEY CRUZ, RAFAEL
                                            MEJIA, MICHAEL RUSSELL, and

16                                          RAUL VERSALES

17

18

19

20

21

22

23

24

25

26

27

28