LUIS LI (State Bar # 156081)
Luis.Li@wsgr.com
ERIC P. TUTTLE (State Bar # 248440)
Eric.Tuttle@wsgr.com
WILSON SONSINI GOODRICH & ROSATI, P.C.
633 West Fifth Street, Suite 1550
Los Angeles, California 90071
Telephone:  (323) 210-2900
Facsimile:   (866) 974-7329

CRAIG JENNINGS LAVOIE (State Bar # 293079)
Craig.Lavoie@mto.com
JENNIFER L. BRYANT (State Bar # 293371)
Jennifer.Bryant@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:  (213) 683-9100
Facsimile:   (213) 687-3702

Attorneys for Plaintiff Vanessa Bryant

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| VANESSA BRYANT,<br><br>        Plaintiff,<br><br>    vs.<br><br>COUNTY OF LOS ANGELES, et al.,<br><br>        Defendants. | Case No. 2:20-cv-09582-JFW(Ex)<br><br>**PLAINTIFF'S OPENING SUPPLEMENTAL BRIEF RE *MONELL* CLAIM**<br><br>Final Pretrial Conference:<br>    July 8, 2022 at 8:00 a.m.<br><br>Hearing on Motions *in Limine*:<br>    July 15, 2022 at 8:00 a.m.<br><br>Trial Date:  July 26, 2022<br><br>The Honorable John F. Walter |

Pursuant to the Court's February 4, 2022 Minute Order (ECF No. 279), Plaintiff Vanessa Bryant hereby submits this opening brief regarding the theories of liability underlying her *Monell* claim that remain at issue for trial.

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...........................................................................................1

II.   BACKGROUND .............................................................................................1

III.  ARGUMENT ..................................................................................................5

A.   Plaintiff Properly Identified *Monell* Liability Theories Consistent with Ninth Circuit Law and Put Defendants on Notice of Them ..........5

B.   Plaintiff Was Not Required to Raise Every Argument or Piece of Evidence in Successfully Opposing Summary Judgment to Preserve Them for Trial ...........................................................................9

1.   A Party Need Not Raise on Summary Judgment Every Argument It Intends to Prove at Trial........................................10

2.   A Party Need Not Present All the Evidence That It Intends to Present at Trial in Opposition to Summary Judgment ..........15

C.   In Any Event, Plaintiff Did Raise These Issues in Opposing Summary Judgement...............................................................................16

IV.   CONCLUSION ..............................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adickes v. S.H. Kress & Co.*,
398 U.S. 144 (1970) ...................................................................... 11, 16

*Armbruster v. Unisys Corp.*,
32 F.3d 768 (3d Cir. 1994) ................................................................. 10

*Beem v. Providence Health & Servs.*,
2011 WL 13228199 (E.D. Wash. Dec. 12, 2011) ................................ 14

*Bequeath v. L.B. Foster Co.*,
367 F. Supp. 2d 779 (W.D. Pa. 2005) ................................................. 10

*Berg v. Cnty. of L.A.*,
2021 WL 4691154 (C.D. Cal. May 28, 2021) ....................................... 7

*Conn v. City of Reno*,
591 F.3d 1081 (9th Cir. 2010), *cert. granted, judgment vacated sub nom. City of Reno v. Conn*, 563 U.S. 915 (2011), *opinion reinstated in relevant part*, 658 F.3d 897 (9th Cir. 2011) .............................. 6

*Daingerfield Island Protective Soc'y v. Babbitt*,
40 F.3d 442 (D.C. Cir. 1994) ......................................................... 13, 14

*Daniel v. Cook Cnty.*,
833 F.3d 728 (7th Cir. 2016) ............................................................... 5

*Gibson v. Cnty. Of Washoe*,
290 F.3d 1175 (9th Cir. 2002)*, overruled on other grounds by Castro v. Cnty. Of L.A.*, 833 F.3d 1060 (9th Cir. 2016) ......................... 5, 6

*Gomez v. Vernon*,
255 F.3d 1118 (9th Cir. 2001) .............................................................. 6

*Gordon v. Riverside Transit Agency*,
2021 WL 3934663 (C.D. Cal. July 22, 2021),
*report and recommendation adopted*,
2021 WL 3930078 (C.D. Cal. Sept. 2, 2021) ........................................ 5

*Grandstaff v. City of Borger*,
767 F.2d 161 (5th Cir.1985) ................................................................. 7

*Henry v. Cnty. of Shasta*,
132 F.3d 512 (9th Cir. 1997) ...................................................... 4, 7, 17

*Henry v. Gill Indus., Inc.*,
983 F.2d 943 (9th Cir. 1993) ......................................................... 11, 17

*Hernandez v. Cnty. of Marin*,
2013 WL 4525640 (N.D. Cal. Aug. 19, 2013) ................................ 11, 17

*Holley v. Northrop Worldwide Aircraft Servs., Inc.,*
835 F.2d 1375 (11th Cir. 1988)................................................................15

*Honcharov v. Barr,*
924 F.3d 1293 (9th Cir. 2019)...........................................................12, 13

*Hunter v. Cnty. of Sacramento,*
652 F.3d 1225 (9th Cir. 2011)..................................................................6

*Jackson v. Barnes,*
749 F.3d 755 (9th Cir. 2014)....................................................................5

*Kutner Buick, Inc. v. Am. Motors Corp.,*
868 F.2d 614 (3d Cir. 1989)....................................................................15

*Larez v. City of L.A.,*
946 F.2d 630 (9th Cir. 1991)...........................................................4, 7, 17

*LaVoie v. Haynes,*
2011 WL 13183245 (D. Ariz. Apr. 18, 2011)...........................................5

*Locricchio v. Legal Servs. Corp.,*
833 F.2d 1352 (9th Cir. 1987)...........................................................13, 15

*Long v. Cnty. of L.A.,*
442 F.3d 1178 (9th Cir. 2006)..................................................................5

*Long v. Howard Univ.,*
439 F. Supp. 2d 68 (D.D.C. 2006) ..........................................................10

*Long v. Howard Univ.,*
550 F.3d 21 (D.C. Cir. 2008) ............................................................10, 14

*McRorie v. Shimoda,*
795 F.2d 780 (9th Cir. 1986)....................................................................7

*Monell v. Dep't of Social Servs.,*
436 U.S. 658 (1978) ........................................................................*passim*

*Natale v. Camden Cnty. Corr. Facility,*
318 F.3d 575 (3d Cir. 2003).....................................................................5

*Nehad v. Browder,*
929 F.3d 1125 (9th Cir. 2019)..................................................................7

*Pozos Leon v. Tillamook Cty. Sch. Dist.,*
2018 WL 2175949 (D. Or. May 11, 2018).................................................5

*Reefer & Gen. Shipping Co. v. Great White Fleet, Ltd.,*
1995 WL 575290 (S.D.N.Y. Sept. 28, 1995).............................................15

*Rodriguez v. Cnty. of L.A.,*
891 F.3d 776 (9th Cir. 2018).....................................................................6

*Shakur v. Schriro,*
514 F.3d 878 (9th Cir. 2008).................................................................12, 13

*Smith v. Marsh,*
194 F.3d 1045 (9th Cir. 1999)...................................................................13

*Soderberg v. City of L.A.,*
2020 WL 6540511 (C.D. Cal. Sept. 30, 2020)...........................................8

*Tsao v. Desert Palace, Inc.,*
698 F.3d 1128 (9th Cir. 2012)..................................................................5, 6

*U.S. Bank Nat'l Ass'n v. PHL Variable Ins. Co.,*
2015 WL 4610894 (S.D.N.Y. July 30, 2015)...........................................9, 10

*United Incentives, Inc. v. Sea Gull Lighting Prod., Inc.,*
1993 WL 147266 (E.D. Pa. May 4, 1993).................................................14

*United Mine Workers of Am. 1974 Pension v. Pittston Co.,*
984 F.2d 469 (D.C. Cir. 1993).............................................................13, 14

*Unum Life Ins. Co. of Am. v. Rietz,*
2013 WL 362894 (E.D. Mich. Jan. 30, 2013)...........................................10

*Waggy v. Spokane Cnty.,*
594 F.3d 707 (9th Cir. 2010)......................................................................5

*Watson v. Amedco Steel, Inc.,*
29 F.3d 274 (7th Cir. 1994)..................................................................12, 13

**STATUTES**

42 U.S.C. § 1983.....................................................................................1, 9

**RULES**

C.D. Cal. Civ. L.R. 7-18............................................................................12

Fed. R. Civ. P. 56.........................................................................11, 13, 15

## I.   **INTRODUCTION**

Throughout this case, Plaintiff has presented two theories for Defendants' *Monell* liability:  an affirmative policy in the form of a widespread practice or custom, and a policy of inaction in the form of a failure to train and/or implement a needed policy.  Plaintiff has also consistently argued that Defendants' post-incident decision to try to sweep the misconduct under the rug rather than investigate or discipline the bad actors is powerful evidence of the pre-existing custom and practice and of Defendants' deliberate indifference to the inadequacy of their training and policies.  Ninth Circuit precedent strongly supports Plaintiff's position.

Plaintiff has not waived or abandoned any of these theories.  She preserved them in her complaint, in discovery, and in her proposed jury instructions and other pretrial briefing.  Plaintiff was not required to present every argument and piece of evidence that she might use at trial in opposing Defendants' motion for summary judgment.  Having successfully defeated summary judgment by showing triable issues of fact on all claims, she is free to raise evidence and arguments at trial whether or not they were contained in her opposition.  In any event, Plaintiff's opposition contested and presented evidence relating to these issues.

Accordingly, Plaintiff may proceed to trial on both of her theories, and may present evidence of Defendants' post-incident cover-up and failure to investigate or discipline in support of both theories.

## II.   **BACKGROUND**

Plaintiff's Complaint alleges that the County, Sheriff's Department, and Fire Department (the "Agency Defendants") are liable for their employees' constitutional violations under 42 U.S.C. § 1983 and *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978).  The Complaint alleges multiple theories of liability:

First, the Complaint alleges that the Agency Defendants are liable for their deliberate *failure* to act:  in particular, their failure to adopt a specific policy regarding the taking or sharing of photos of human remains, their failure to enforce

a generic policy prohibiting the use of personal cellular devices to capture or transmit work-related information, and their failure to train their employees to refrain from taking or sharing photos of human remains without a legitimate purpose.  (*See* ECF No. 54 (FAC) ¶¶ 54-61, 81-83.)  The Complaint further alleges that the Agency Defendants were on notice and aware of the problem, and acted with deliberate indifference in failing to address it.  (*See* FAC ¶¶ 51-52, 61, 82-84.)

Second, the Complaint alleges that the Agency Defendants are liable for their *affirmative* policy in the form of a widespread custom or pattern of practice of gratuitously taking and sharing death images, which the Agency Defendants tolerated and even encouraged.  (*See* FAC ¶¶ 57.c, 57.d, 60-61, 81, 85-86.)

In addition, the Complaint alleges that Defendants failed to investigate or discipline employees who engaged in this misconduct, and instead offered amnesty and attempted to cover up the misconduct.  (*See* FAC ¶¶ 5, 45-49, 61, 72, 82.c, 83.)  As discussed below, this is evidence that supports the existence of both of the above theories of *Monell* liability—(1) an affirmative policy in the form of custom or practice, or (2) a policy of inaction through a deliberately indifferent failure to train or implement a needed policy.

In discovery, Plaintiff continued to assert and support both theories, including with evidence of Defendants' failure to investigate or discipline.  (*See, e.g.*, Ex. A (Pl.'s 2d Am. Resp. to Defs.' Am. 1st Set of Interrogs.) at 7-18 (identifying facts supporting *Monell* claim, including failure to investigate or discipline, cover-up of misconduct, retaliation against whistleblower, knowledge of the longstanding and widespread practice of unnecessarily taking and keeping death photos, failure to institute policies to prohibit the practice, and failure to adequately train and supervise); ECF No. 92-10 (Ex. I to Martinez Decl. i/s/o Pl.'s Mot. to Compel) at 369-70 (meet and confer correspondence explaining why discovery was "relevant to Plaintiff's *Monell* claim that the Sheriff's Department had a custom or practice of violating constitutional rights related to death images" and to "[o]ne of Plaintiff's

theories of liability for her *Monell* claim … that the Sheriff's Department's lack of a policy regarding the photographing and treatment of human remains constituted deliberate indifference"); ECF No. 92 (Joint Stip. re Pl.'s Mot. to Compel) at 4-5 (explaining relevance of discovery to Plaintiff's allegation that Defendants acted with deliberate indifference by failing to establish policies or procedures to prevent taking and sharing of remains photos and failing to train personnel on that issue); ECF No. 112 (Joint Stip. re Pl.'s Mot. to Compel) at 33-35 (explaining relevance of discovery to Plaintiff's theory for *Monell* liability due to failure to establish policy regarding remains photos, including because failure to discipline shows deliberate indifference)).

In opposing Defendants' motion for summary judgment, Plaintiff argued that disputed issues of material fact precluded judgment in Defendants' favor.  (ECF Nos. 190 (Mem. of P. & A.), 191 (Genuine Disputes of Material Fact).)  Although the section of Plaintiff's brief specifically addressing legal arguments for *Monell* liability focused on Defendants' policy of inaction—their failure to train or implement a policy (ECF No. 190 at 15, 18-20)—Plaintiff also made a broader argument that Defendants' motion should be denied because the material facts on which it rested were genuinely disputed.  (*See, e.g., id.* at 1, 10.)  In their motion, Defendants had argued that Plaintiff's theory that the Agency Defendants "have a 'pattern of practice and/or custom of unnecessarily taking and sharing death images'" failed because "[t]here is no evidence that there is a 'persistent and widespread' practice of sharing death images that has risen to the level of a 'permanent and well settled' County policy." (ECF No. 169-1 at 25.)  In contravention of that assertion, Plaintiff's brief and separate Genuine Disputes of Material Fact pointed to evidence she had adduced on the issue:

• Sheriff Villanueva's own admission that "[e]ver since they invented the Polaroid, law enforcement, first responders, coroner's office, everybody's been taking Polaroids of crime scenes and human remains.  And some people collect 'em.

They put death books…. And this is something that's true across the nation. It's not unique to Los Angeles." (ECF No. 190 at 2-3, 18-19; ECF No. 191 ¶¶ 92, 128.)

   • Plaintiff's expert's testimony that "[i]t is well known and recognized in the Southern California law enforcement community that officers and deputies frequently take, view, keep, and share photos of human remains," a practice that Plaintiff's expert himself had observed going back to at least 1983; that officers did this in full view of their supervisors who did nothing to stop it; that "many senior officers kept 'death books' as ghoulish souvenirs and would display the photos"; that there was a "widespread practice of unnecessarily taking, sharing, and keeping photos of human remains"; and that this practice was "pervasive and embedded in law enforcement culture by January of 2020." (ECF No. 191 ¶¶ 571-576; ECF No. 190 at 19.)

   • Admissions from Sheriff's Department and Fire Department employees that they and their peers have regularly taken and shared photos of human remains (ECF No. 191 ¶¶ 491-496.)

   In addition, Plaintiff pointed to evidence of Defendants' failure to investigate or discipline the violations at issue in this case, and to instead discipline a whistleblower who expressed concerns about both the practice itself and the cover-up that ensued. (*See* ECF No. 190 at 8; ECF No. 191 ¶¶ 33, 49, 189, 354-428, 436-463, 577-590.) Plaintiff argued that this evidence was "highly probative" of Defendants' deliberate indifference notwithstanding that it came *after* the constitutional violation in this case, citing *Henry v. County of Shasta*, 132 F.3d 512, 519-20 (9th Cir. 1997), *amended by* 137 F.3d 1372 (9th Cir. 1997) and *Larez v. City of Los Angeles*, 946 F.2d 630, 645 (9th Cir. 1991). (ECF No. 191 ¶¶ 107-108.)

   The Court denied Defendants' Motion for Summary Judgment in its entirety on the ground that "[f]or the reasons stated in Plaintiff's Opposition, the Court concludes that there are genuine issues of material fact for trial." (ECF No. 227.)

   Plaintiff has subsequently sought jury instructions on both her affirmative

policy (custom/practice) theory and her policy of inaction (failure to train or implement policy) theory (ECF No. 242 at 50, 59), and argued both theories in motion in limine briefing, the pretrial conference order, and her memorandum of contentions of fact and law, contending that both are supported by, among other things, evidence of Defendants' failure to investigate or discipline.  (*See, e.g.*, ECF Nos. 234, 235, 238, 240, 261.)

## III.    ARGUMENT

### A.    Plaintiff Properly Identified *Monell* Liability Theories Consistent with Ninth Circuit Law and Put Defendants on Notice of Them

The Ninth Circuit recognizes two distinct theories for establishing the "policy" required for agency liability under *Monell*:  (1) an *affirmative* policy (sometimes called a "policy of action") in the form of an official policy or a widespread or longstanding custom or practice; and (2) a policy of *inaction* (sometimes called a "policy of omission") in the form of a failure to train, implement a policy,[1] or otherwise put a stop to violations that the agency knows or should know are likely to occur.  *See, e.g.*, *Jackson v. Barnes*, 749 F.3d 755, 763 (9th Cir. 2014); *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143-44 (9th Cir. 2012); *Waggy v. Spokane Cnty.*, 594 F.3d 707, 713 (9th Cir. 2010); *Long v. Cnty. of*

---

[1] The failure to implement a policy can take the form of any "omission" in an agency's policies, *Tsao*, 698 F.3d at 1144-45; *Gibson*, 290 F.3d at 1194-96, including a failure to *adopt* (or establish) a policy, *see, e.g.*, *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 585 (3d Cir. 2003), or the failure to *enforce* a policy that is nominally on the books, *see, e.g.*, *Daniel v. Cook Cnty.*, 833 F.3d 728, 737 (7th Cir. 2016); *Gordon v. Riverside Transit Agency*, 2021 WL 3934663, at *4 (C.D. Cal. July 22, 2021), *report and recommendation adopted*, 2021 WL 3930078 (C.D. Cal. Sept. 2, 2021); *LaVoie v. Haynes*, 2011 WL 13183245, at *3 (D. Ariz. Apr. 18, 2011).  In this case, Plaintiff has alleged both.  *See* ECF No. 54 ¶¶ 54-58 (failure to adopt a specific policy); *id.* ¶¶ 59-61 (failure to enforce a generic policy); *see also Pozos Leon v. Tillamook Cnty. Sch. Dist.*, 2018 WL 2175949, at *7-8 (D. Or. May 11, 2018) (finding allegations that agency failed "both in enforcing its existing policies and in failing to enact new policies" were "sufficient to state a claim that [agency] had a policy of inaction").

1  *L.A.*, 442 F.3d 1178, 1185 (9th Cir. 2006); *Gibson v. Cnty. Of Washoe*, 290 F.3d

2  1175, 1185-86 (9th Cir. 2002), *overruled on other grounds in Castro v. Cnty. of*

3  *L.A.*, 833 F.3d 1060 (9th Cir. 2016).

4          When a plaintiff alleges a policy of inaction, the plaintiff must also show

5  deliberate indifference.  *See Tsao*, 698 F.3d at 1143-44; *Gibson*, 290 F.3d at 1185-

6  86.  The Ninth Circuit Model Instructions recognize both of these theories, and

7  provide a separate instruction for each.  *See Cmts.*, 9th Cir. Model Civ. Jury Instrs.

8  9.5 (where "*Monell* liability is based on an expressly adopted official policy or a

9  widespread or longstanding practice or custom"); *id.* at 9.8 (where "*Monell* liability

10  is based on a local governing body's policy of inaction, such as a failure to train its

11  police officers" or "failure to adopt a needed policy").

12          An agency's failure to investigate or discipline misconduct is not an

13  independent theory of *Monell* liability, but rather evidence that tends to support one

14  or both of the other two theories—the existence of (1) an affirmative policy, custom,

15  or practice at the agency, or (2) the agency's deliberate indifference to the violations

16  that it failed to stop through training or implementation of policies.  *See, e.g.*, *Conn*

17  *v. City of Reno*, 591 F.3d 1081, 1105 (9th Cir. 2010) ("Failure to discipline is not a

18  separate ground for establishing municipal liability.  Rather, it is evidence that tends

19  to establish the absence of or failure to enforce a policy …."), *cert. granted*,

20  *judgment vacated sub nom. City of Reno v. Conn*, 563 U.S. 915 (2011), *opinion*

21  *reinstated in relevant part*, 658 F.3d 897 (9th Cir. 2011).[2]

22

23  _____

23  [2] *See also Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1233-34 & n.8 (9th Cir.

24  2011) ("*evidence* of inaction—specifically, failure to investigate and discipline

24  employees in the face of widespread constitutional violations—can support an

25  inference that an unconstitutional custom or practice has been unofficially adopted

26  by a municipality"); *Rodriguez v. Cnty. of L.A.*, 891 F.3d 776, 802-03 (9th Cir.

26  2018) ("We have recognized that a § 1983 plaintiff may prove the second type of

27  *Monell* liability"—i.e., "fail[ure] to train employees in a manner that amounts to

28  'deliberate indifference' to a constitutional right"—"through evidence of a 'failure

In particular, evidence of *post-incident* failure to investigate and discipline is relevant to proving both theories. "[P]ost-event evidence is not only admissible for purposes of proving the existence of a municipal defendant's policy or custom, but may be highly probative with respect to that inquiry." *Henry*, 132 F.3d at 519, *as amended by* 137 F.3d 1372. In *Henry*, the Ninth Circuit cited a "leading" Fifth Circuit case which held that, where "there were no reprimands" and "no discharges," the city's reaction to the incident "evidenced the city's preexisting policy of deliberate indifference to the dangerous recklessness of its police officers." *Id.* at 519-20 (quoting *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir.1985)). Thus, "a municipal defendant's failure to fire or reprimand officers evidences a policy of deliberate indifference to their misconduct." *Henry*, 132 F.3d at 520.

---

to investigate and discipline employees in the face of widespread constitutional violations'"); *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001) ("a policy-maker's pronouncement that he has not or will not discipline officers that [committed violations] is sufficient evidence of a policy or custom"; "administrators' failure to investigate" complaints and "the lack of reprimand or discipline for the officers involved" demonstrate a "turn a-blind-eye approach" that "supports the district court's finding that there was a policy or custom that led to violation of the [plaintiffs'] rights").

Numerous other Ninth Circuit[3] and district court[4] decisions accord.

Here, Plaintiff properly pleaded *Monell* liability under both theories:  an affirmative policy in the form of an informal and unofficial but longstanding and widespread custom or practice, (*see* ECF No. 54 ¶¶ 57.c, 57.d, 60-61, 81, 85-86);

_____

[3] *See, e.g.*, *Nehad v. Browder*, 929 F.3d 1125, 1142 (9th Cir. 2019) (evidence that department "took no action" against officer for the violation at issue and conducted an irregular interview of the officer "several days after the shooting, once [the officer] had watched the surveillance video with his lawyer" was sufficient to create triable issue of an informal practice or custom), *cert. denied*, 141 S. Ct. 235 (2020); *Larez v. City of L.A.*, 946 F.2d 630, 645, 647 (9th Cir. 1991) (court could "hardly think of better evidence" than police chief's statements to press after incident to show that he "set a tone which condoned and encouraged the use of excessive force"; jury "properly could find such policy or custom [of resorting to excessive force] from the failure of [police chief] to take any remedial steps after the violations"; evidence of improper procedures and "'holes' and inconsistencies" in city's post-incident investigation of plaintiffs' complaint supported conclusion that "LAPD's disciplinary and complaint processes, executed by policy or custom, contributed to the police excesses"); *McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1986) ("Policy or custom may be inferred if, after the [particular constitutional violation at issue], the prison officials took no steps to reprimand or discharge the [relevant employees] ….").

[4] *See, e.g.*, *Berg v. Cnty. of L.A.*, 2021 WL 4691154, at *9, 13 (C.D. Cal. May 28, 2021) (failure to discipline officers for violations "at the heart of this case" supports *Monell* claim that LAPD "has unofficial custom or policy" of indiscriminately using excessive force; "the lack of evidence that any officers have been counseled or disciplined for the uses of force at the … protests in question indicates that those allegedly unreasonable uses of force were officially sanctioned"); *Soderberg v. City of L.A.*, 2020 WL 6540511, at *22 (C.D. Cal. Sept. 30, 2020) ("a reasonable jury could find … that the City's failure to train the officer defendants after their conduct was found to be outside of policy" in a post-incident investigation "evidences an informal policy or practice of deliberate indifference"); *Est. of Sanchez v. Cnty. of Stanislaus*, 2020 WL 2937456, at *2 (E.D. Cal. June 3, 2020) (evidence of post-event failure to investigate supports *Monell* liability); *Paris v. Conmed Healthcare Mgmt., Inc.*, 2017 WL 7310079, at *12 (D. Or. Nov. 28, 2017), *report and recommendation adopted*, 2018 WL 664807 (D. Or. Jan. 31, 2018) (post-event failure to reprimand supports policy or custom); *Lisker v. City of L.A.*, 2013 WL 1276047, at *33 (C.D. Cal. Feb. 4, 2013) (police chief's failure to discipline and endorsement of flawed investigation was evidence of custom or policy).

and a policy of inaction in the form of a deliberately indifferent failure to train or to adopt or enforce a policy against the taking of death photos, (*see* FAC ¶¶ 51-61, 81-84).  In support of those allegations, Plaintiff alleged, *inter alia*, that Defendants failed to investigate or discipline the officers involved and attempted to cover up the misconduct.  (*See id.* ¶¶ 5, 45-49, 61, 72, 82.c, 83.)  Throughout discovery, Plaintiff continued to identify both theories and the evidence supporting them, including the post-incident cover-up and failure to investigate or discipline.  (*See, e.g.*, Ex. A (Pl.'s 2d Am. Resp. to Defs.' Am. 1st Set of Interrogs.) at 7-18; ECF No. 92-10 (Ex. I to Martinez Decl. i/s/o Pl.'s Mot. to Compel) at 369-70; ECF No. 92 (Joint Stip. re Pl.'s Mot. to Compel) at 4-5; ECF No. 112 (Joint Stip. re Pl.'s Mot. to Compel) at 33-35.)

Defendants nevertheless argue that Plaintiff abandoned or waived the custom or practice theory, and the evidence related to failure to investigate or discipline, by not raising them in opposition to Defendants' summary judgment motion. Defendants are wrong both legally and factually.  Legally, Plaintiff was not required to raise all possible arguments or evidence in her opposition to summary judgment to preserve them for trial.  Factually, Plaintiff did in fact raise these issues in opposing Defendants' motion.

### B. Plaintiff Was Not Required to Raise Every Argument or Piece of Evidence in Successfully Opposing Summary Judgment to Preserve Them for Trial

Defendants are wrong that Plaintiff was required to raise her custom or practice theory in opposition to Defendants' summary judgment motion in order to preserve it for trial.  All Plaintiff had to do was to defeat the motion by pointing to triable issues of material fact on her Section 1983 *Monell* claim.  She was not required to raise every argument she intended to advance at trial.  Defendants are doubly wrong that Plaintiff was required to raise a theory of failure to investigate or discipline in order to preserve it.  As discussed above, failure to investigate or discipline is not an independent legal theory of liability but is instead *evidence*

supporting liability under either a custom/practice or a failure to train/implement policy theory.  And a party need not include all evidence it plans to use at trial in opposition to a summary judgment motion.

### 1. A Party Need Not Raise on Summary Judgment Every Argument It Intends to Prove at Trial

It is "well-established" that "a party need not raise on summary judgment every argument it intends to advance at trial." *U.S. Bank Nat'l Ass'n v. PHL Variable Ins. Co.*, 2015 WL 4610894, at *2 (S.D.N.Y. July 30, 2015).  In *U.S. Bank*, defendant Phoenix argued that plaintiff U.S. Bank should be precluded from asserting at trial a theory for why Phoenix breached a contract because U.S. Bank had failed to advance that theory either in its own motion for summary judgment or in opposition to Phoenix's motion for summary judgment. *Id.* at *1-2.  The court rejected Phoenix's argument.  By failing to raise the theory in summary judgment briefing, U.S. Bank had "forfeited its right to use the [theory] in order to defeat Phoenix's summary judgment motion and prevail on its own motion." *Id.* at *2.  But having survived summary judgment, U.S. Bank was free to use the theory at trial because it had preserved it in its complaint.  "Fairly read, the complaint easily encompasses the temporal breach claim.  That U.S. Bank chose not to advance that theory in support of its summary judgment motion (or in opposition to Phoenix's) means nothing other than that the argument is reserved for trial." *Id.*

Other decisions are in accord.  For example, in *Long v. Howard Univ.*, 550 F.3d 21 (D.C. Cir. 2008), the plaintiff argued that the defendant had forfeited an affirmative defense by failing to raise it in a successful opposition to the plaintiff's summary judgment motion, which the defendant defeated on other grounds by showing the existence of genuine factual disputes. *See id.* at 24; *Long v. Howard Univ.*, 439 F. Supp. 2d 68, 70 (D.D.C. 2006).  The D.C. Circuit rejected the argument, noting that—as here—the party had preserved the argument by alleging it in its pleading and then repeating it in discovery responses, at the pretrial

conference, and a motion in limine.  *Long*, 550 F.3d at 24.  "There is no requirement that a party assert a … defense in opposition to a summary-judgment motion in order to assert it at trial.  On the contrary, the defense can be raised at trial so long as it was properly asserted in the answer and not thereafter affirmatively waived."  *Id*.  *See also, e.g.*, *Bequeath v. L.B. Foster Co.*, 367 F. Supp. 2d 779, 787 & n.5 (W.D. Pa. 2005) (party who defeated summary judgment on discrimination claim arguing only a pretext theory also preserved for trial a mixed motive theory); *Armbruster v. Unisys Corp.*, 32 F.3d 768, 781 & n.17 (3d Cir. 1994) (affirming summary judgment on *Price Waterhouse* mixed motive theory of discrimination, but nevertheless allowing plaintiff to present evidence of that theory at trial in light of reversal of summary judgment on a separate theory:  "[w]hile the evidence here presented to us at the summary judgment state does not trigger the *Price Waterhouse* framework, the evidence presented during trial may").

This makes sense in light of the rules for summary judgment, which do not require the non-moving party to prove its entire case and expressly contemplate that issues are preserved for trial even if not raised in opposition.  Indeed, "[w]here the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if *no opposing evidentiary matter is presented*."  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970) (quoting FED. R. CIV. P. 56(e) advisory committee's note to 1963 amendment) (emphasis added).  Thus, denial of summary judgment may be required even if the motion is *entirely unopposed*.  *See, e.g.*, *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993); *Hernandez v. Cnty. of Marin*, 2013 WL 4525640, at *4 (N.D. Cal. Aug. 19, 2013).  Similarly, while Rule 56(e)(2) "authorizes the court to consider a fact as undisputed for purposes of the motion" if the non-moving party fails adequately to respond to the motion, "[t]he fact is considered undisputed only for purposes of the motion; if summary judgment is denied, a party who failed to make a proper Rule 56 response or reply remains free to contest the fact in further

proceedings." FED. R. CIV. P. 56 advisory committee's note to 2010 amendment. Thus, Rule 56 contemplates that—*if summary judgment is denied*—arguments not raised in opposition to the motion for summary judgment are preserved for trial.

This also makes sense in light of the space constraints and other practical considerations underlying an opposition to summary judgment. To survive summary judgment, the non-moving party need only convince the court that a genuine dispute of material fact precludes judgment in the moving party's favor. This is often best accomplished by a targeted opposition focusing on the most glaring weaknesses in the motion. There often will not be space to lay out every argument that might be advanced at trial, nor is that often rhetorically effective. If the non-moving party shows or the court finds that a genuine dispute of material fact precludes judgment in the moving party's favor, the motion is denied. Rule 56 contemplates no limitation on the arguments that the parties may advance at trial. As the Seventh Circuit has observed: "A trial court's task on summary judgment is specific and limited—'to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial.' In denying such a motion, the court 'decides only one thing—that the case should go to trial;' that denial 'does not settle or even tentatively decide anything about the merits of the claim.'" *Watson v. Amedco Steel, Inc.*, 29 F.3d 274, 277 (7th Cir. 1994) (citations omitted).

The situation is obviously very different if the non-moving party *loses* summary judgment. In that situation, the party generally will not be able to seek reconsideration of the decision on grounds that it could have presented in the opposition but did not. *See* C.D. Cal. Civ. L.R. 7-18. Nor will the party generally be allowed to present arguments on appeal that were not presented to the district court in opposing the motion. *See generally Honcharov v. Barr*, 924 F.3d 1293, 1295-96 (9th Cir. 2019). Thus, in *Shakur v. Schriro*, 514 F.3d 878 (9th Cir. 2008)—the sole case on which Defendants previously relied—a plaintiff whose claims were dismissed on summary judgment was precluded from raising on appeal an

argument that the plaintiff had not made to the district court in unsuccessfully opposing the motion.  The plaintiff's complaint, liberally construed, had included a claim under the Establishment Clause, as well as claims under the Free Exercise and Equal Protection Clauses and a statutory claim.  But when defendant moved for summary judgment, the plaintiff did not raise the Establishment Clause and the district court granted summary judgment in the defendant's favor on all counts, addressing only the Free Exercise and Equal Protection Clauses and the statutory claim.  *Id.* at 883, 892.  The court held that, by failing to raise the Establishment Clause claim in his *unsuccessful* opposition to summary judgment, the plaintiff "failed to preserve this issue *for appeal*."  *Id.* at 892 (emphasis added).

Defendants take *Shakur* out of context and seek to extend its holding to a general rule that a party "abandons" any argument *for trial* if it does not make the argument in its opposition to a summary judgment motion—even though the party successfully *defeats* summary judgment on other grounds.  *Shakur* simply doesn't address that circumstance.  *Shakur* addresses whether a party preserved an issue "for appeal" by failing to raise it in the district court before having judgment entered against him, *id.* at 892, and is consistent with the Ninth Circuit's "general rule [that] we will not consider arguments that are raised for the first time on appeal."  *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999).  That is a very different situation, driven by different structural concerns not applicable here: "'preserv[ing] the integrity of the appellate structure' by ensuring that 'an issue must be presented to, considered and decided by the trial court before it can be raised on appeal.'"  *Honcharov*, 924 F.3d at 1295; *see also id.* at 1296 ("Waiver and forfeiture are thus important tools for preserving the structure of hierarchical court systems by allowing appellate courts to act as courts of 'review, not first view.'").[5]  Extending

---

[5] Unlike the granting of summary judgment, the denial of summary judgment is not reviewable on appeal and becomes moot after a full trial.  *See Locricchio v. Legal Servs. Corp.*, 833 F.2d 1352, 1358-59 (9th Cir. 1987); *Watson*, 29 F.3d at 277.

1   *Shakur* as Defendants attempt to do would be inconsistent not only with "the

2   rationales behind waiver and forfeiture," *id.* at 1296, but also with Rule 56's express

3   contemplation that arguments not raised in opposition are preserved for trial if

4   summary judgment is *denied*.

5         This distinction has been recognized by the courts.  In *Daingerfield Island*

6   *Protective Soc'y v. Babbitt*, 40 F.3d 442 (D.C. Cir. 1994), the plaintiff argued that

7   the defendant had abandoned a defense by not raising it in a summary judgment

8   motion.  The plaintiff cited precedent holding that a defendant "abandoned its

9   affirmative defenses … by not raising them prior to summary judgment."  *Id.* at 445

10  (quoting *United Mine Workers of Am. 1974 Pension v. Pittston Co.*, 984 F.2d 469,

11  478 (D.C. Cir. 1993)).  The court found that holding "inapposite" because there the

12  defendant had *lost* summary judgment and was trying to advance new arguments on

13  reconsideration and appeal of that ruling:  "[T]he *Pittston* court simply found that

14  waiver precluded the defendant from raising those defenses for the first time after

15  summary judgment had been granted in the plaintiff's favor."  *Daingerfield Island*,

16  40 F.3d at 445.  That logic did not apply to a defendant who pleaded the defense in

17  is complaint and *survived* (or obtained) summary judgment without raising the

18  defense.  *See id.* ("[T]he government adequately raised the limitations defense in its

19  answer—it was not required to reassert the defense in its subsequent successful

20  summary judgment motion."); *Long*, 550 F.3d at 25 (extending *Daingerfield* to

21  situation where defendant successfully opposed summary judgment on other

22  grounds, and similarly distinguishing *Pittston*; "there is no requirement that a party

23  assert a statute-of-limitations defense in opposition to a summary-judgment motion

24  in order to assert it at trial").

25        Accordingly, Plaintiff was under no obligation to raise all of her theories for

26  *Monell* liability in her opposition to summary judgment to preserve them for trial.

27  Having defeated summary judgment by showing genuine issues of material fact, all

28

of the theories asserted in Plaintiff's complaint (and maintained in discovery, jury instructions, and other pretrial briefing) were preserved for trial.

### 2. A Party Need Not Present All the Evidence That It Intends to Present at Trial in Opposition to Summary Judgment

As explained above, Defendants' post-incident failure to investigate or discipline the officers involved in the misconduct at issue, and their attempt to sweep it under the rug and retaliate against a whistleblower, is not an independent legal *theory* of *Monell* liability; rather, it is *evidence* that supports both the custom practice and failure to train/implement policy theories. *See supra* pp. 6-8 & notes 2-4. And it is black-letter law that when a court denies a defendant's summary judgment motion on a claim, a plaintiff is "free to present evidence on this claim at trial and is not limited to evidence that was presented in the summary judgment record." *Beem v. Providence Health & Servs.*, 2011 WL 13228199, at *2 (E.D. Wash. Dec. 12, 2011); *see also, e.g., United Incentives, Inc. v. Sea Gull Lighting Prod., Inc.*, 1993 WL 147266, at *1 (E.D. Pa. May 4, 1993) ("Clearly, at trial parties are not limited to evidence produced in support of and opposition to unsuccessful summary judgment motions."); *Reefer & Gen. Shipping Co. v. Great White Fleet, Ltd.*, 1995 WL 575290, at *5 (S.D.N.Y. Sept. 28, 1995) (neither party was "preclude[d] … from offering additional evidence on this issue at trial" by court's denial of summary judgment motion); *Kutner Buick, Inc. v. Am. Motors Corp.*, 868 F.2d 614, 619 (3d Cir. 1989) ("[s]ince the record at a trial may be different" than on summary judgment, "[t]he denial of a motion for summary judgment" "does not determine what issues should be submitted to the jury"); FED. R. CIV. P. 56 advisory committee's note to 2010 amendment (even where non-moving party fails to controvert a fact for purposes of summary judgment motion, "if summary judgment is denied, a party who failed to make a proper Rule 56 response or reply remains free to contest the fact in further proceedings").

Indeed, the Ninth Circuit has held that a jury verdict will be upheld if supported by new evidence not presented in a successful opposition to summary judgment, even if summary judgment should have been granted on the record then presented. *See Locricchio*, 833 F.2d at 1358-59. "[A] party may not rely on the undeveloped state of the facts at the time he moves for summary judgment to undermine a fully-developed set of trial facts which militate against his case." *Holley v. Northrop Worldwide Aircraft Servs., Inc.*, 835 F.2d 1375, 1378 (11th Cir. 1988).

Accordingly, Plaintiff is free to present evidence of a failure to investigate or discipline at trial regardless of whether she is deemed to have presented that evidence in opposition to Defendants' summary judgment motion; she cannot have "abandoned" that evidence.

**C.   <u>In Any Event, Plaintiff Did Raise These Issues in Opposing Summary Judgement</u>**

In any event, Plaintiff *did* sufficiently contest these issues in opposing Defendants' summary judgment motion, such that Defendants' abandonment theory is academic and fails on the facts as well as the law.

Plaintiff argued in her opposition that genuine disputes of material fact precluded summary judgment, and that Defendants had flipped the summary judgment standard "on its head" by basing their motion "on inferences drawn in *their* favor from disputed facts" and by ignoring key evidence. ECF No. 190 at 2, 10. That applies in particular to the arguments Defendants made about the custom or practice theory of *Monell* liability and the evidence of post-incident failure to investigate or discipline.

In her brief and Genuine Disputes of Material Fact, Plaintiff specifically controverted the facts on which Defendants had sought summary judgment on the *Monell* claim under a custom or practice theory. Defendants argued that the custom or practice theory failed because "[t]here is no evidence that there is a 'persistent

and widespread' practice of sharing death images that has risen to the level of a 'permanent and well settled' County policy," citing three supposedly undisputed facts. (ECF No. 169-1 at 25-26 (citing SSUF ¶¶ 82, 91, 92).)  Defendants went on to undermine their own assertion by acknowledging Sheriff Villanueva's admissions that this was a longstanding problem in law enforcement throughout the country. (ECF No. 169-1 at 25-26 (citing FAC ¶ 83 and SSUF ¶¶ 91, 92.)  Because the motion did not establish the absence of a genuine issue, denial of summary judgment on this ground would have been required "even if no opposing evidentiary matter [had been] presented." *Adickes*, 398 U.S. at 160(1970).  But Plaintiff ***did*** present opposing evidence.  She specifically disputed each of the three supposedly undisputed facts upon which Defendants' argument was based.  (*See* ECF No. 191 ¶¶ 82, 91, 92.)  And she presented additional evidence of Defendants' widespread and longstanding custom or practice of taking and sharing death photos.  (*See id.* ¶¶ 128, 491-496, 571-576; *see also supra* pp. 3-4.)  Plaintiff discussed and cited this evidence in her brief.  (*See* ECF No. 190 at 2-3, 18-19.)  Plaintiff's brief focused on the relevance of that evidence to Defendants' deliberate indifference to their failure to train or implement policy, but the very same evidence also shows a custom or practice.

Plaintiff's opposition also specifically controverted Defendants' arguments about their failure to investigate and discipline.  Defendants made a legal argument that their post-incident conduct in refusing adequately to investigate or discipline the misconduct was irrelevant because those subsequent actions could not have caused the antecedent misconduct.  (*See* ECF No. 169-1 at 24-25.)  That legal argument has been rejected by the Ninth Circuit.  *See, e.g.*, *Henry*, 132 F.3d at 519-20; *see also supra* pp. 7-8 and notes 3-4.  Accordingly, summary judgment on this ground should have been rejected even if unopposed and if no opposing facts were presented.  *See Henry*, 983 F.2d at 950; *Hernandez*, 2013 WL 4525640, at *4.  But Plaintiff did contest the argument: She noted that Defendants' legal conclusions had been

rejected by the Ninth Circuit, which has held that a defendant's post-violation conduct can be "highly probative" because a municipality's pre-existing deliberate indifference "may be inferred circumstantially" from the municipality's response to the constitutional violations. (ECF No. 191 ¶¶ 107-108 (citing and quoting *Henry*, 132 F.3d at 519-20 and *Larez*, 946 F.2d at 645).) She specifically argued that "LASD's highly irregular so-called 'inquiry' in response to the citizen complaint serves as additional evidence from which a jury could reasonably infer deliberate indifference" and that a "jury could fairly find the Sheriff tried to sweep the constitutional violation under the rug" and that this, as well as its "decision to forgo discipline on the deputies who took and shared the photos," "'set a tone which condoned' the misconduct." (ECF No. 191 ¶¶ 107-108.) And she supported those arguments by adducing evidence of Defendants' failure to investigate or discipline the violations at issue in this case, and to instead discipline a whistleblower who expressed concerns about it. (*See* ECF No. 190 at 8; ECF No. 191 ¶¶ 33, 49, 189, 354-428, 436-463, 577-590.)

For these reasons, even if Plaintiff had been required in opposing summary judgment to present evidence regarding custom/practice or failure to investigate/discipline to preserve those issues for trial—and she was not—Plaintiff did so.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, the Court should reject Defendants' argument that Plaintiff has abandoned her theories of *Monell* liability based on custom or practice or on Defendants' failure to investigate or discipline by not raising them in opposition to Defendants' motion for summary judgment. The Court should instead hold that (1) Plaintiff adequately preserved arguments that the Agency Defendants are liable under either an affirmative policy in the form of custom or practice, or a policy of inaction in the form of a deliberately indifferent failure to train or adopt or enforce a needed policy, and (2) that Plaintiff may put on any admissible evidence

1   in support of those theories, including post-violation conduct probative of

2   Defendants' deliberate indifference or custom or practice, such as Defendants'

3   failure to investigate or discipline misconduct.

4

5   DATED:  February 14, 2022        WILSON SONSINI GOODRICH & ROSATI,
                                     Professional Corporation
6

7                                    By:        /s/ Luis Li
                                              _____
8                                                  LUIS LI

9                                    Attorneys for Plaintiff Vanessa Bryant

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28