# Exhibit A

LUIS LI (State Bar No. 156081)
Luis.Li@mto.com
CRAIG JENNINGS LAVOIE (State Bar No. 293079)
Craig.Lavoie@mto.com
JENNIFER L. BRYANT (State Bar No. 293371)
Jennifer.Bryant@mto.com
MARI T. SAIGAL (State Bar No. 318556)
Mari.Saigal@mto.com
BRANDON E. MARTINEZ (State Bar No. 318749)
Brandon.Martinez@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue
Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:   (213) 683-9100
Facsimile:   (213) 687-3702

Attorneys for Plaintiff Vanessa Bryant

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| VANESSA BRYANT, a California Resident,<br><br>             Plaintiff,<br><br>      vs.<br><br>COUNTY OF LOS ANGELES, a public entity, et al.,<br><br>             Defendants. | Case No.  2:20-cv-09582-JFW-E<br><br>**PLAINTIFF VANESSA BRYANT'S SECOND AMENDED RESPONSES & OBJECTIONS TO DEFENDANT COUNTY OF LOS ANGELES'S AMENDED FIRST SET OF INTERROGATORIES**<br><br>Judge:  Hon. John F. Walter<br><br>Trial Date:     February 22. 2021 |

PROPOUNDING PARTY:      COUNTY OF LOS ANGELES

RESPONDING PARTY:      VANESSA BRYANT

SET NO.:                    ONE

Case No. 2:20-cv-09582-JFW-E

PLAINTIFF VANESSA BRYANT'S SECOND AMENDED RESPONSES & OBJECTIONS TO
DEFENDANT COUNTY OF LOS ANGELES'S AMENDED FIRST SET OF INTERROGATORIES

EXHIBIT A
21

**SPECIFIC OBJECTIONS AND RESPONSES TO INTERROGATORIES**

Subject to and without waiving each objection set forth in the foregoing General Objections, which are incorporated by reference into each response below, and the Specific Objections and Responses to Interrogatories set forth below, and without waiving any objections that may be interposed in the future, Plaintiff responds to the Interrogatories as follows:

**INTERROGATORY NO. 1:**

DESCRIBE all facts supporting the First Cause of Action in YOUR COMPLAINT for violation of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983.

**RESPONSE TO INTERROGATORY NO. 1:**

Plaintiff incorporates her General Objections above as if fully set forth herein. Plaintiff objects to this Interrogatory because it is a premature contention interrogatory improperly served before discovery in this matter—including document productions, inspection of electronic devices, depositions, and expert reports—is substantially complete. *See, e.g.*, *In re eBay Seller Antitrust Litig.*, 2008 WL 5212170, at *2 (N.D. Cal. Dec. 11, 2008). Given this outstanding discovery, it is improper and unreasonable to request that Plaintiff set forth "all facts" in support of her claims, and the burden imposed on Plaintiff in compiling a list of facts is grossly disproportionate to any likely benefit to COLA. This is especially true given that the overwhelming majority of facts pertaining to Plaintiff's claims are reflected in Defendants' documents and/or are within the personal knowledge of COLA employees, both of which are the object of pending discovery.

Plaintiff further objects that COLA's request that Plaintiff "state with particularity all material information pertaining to identified subject matter" and provide a "detailed account of the PERSONS, places, and timeframe involved" is overbroad, unreasonable, unduly burdensome, calls for information outside of Plaintiff's personal knowledge, and is not proportional to the needs of the case. The

PLAINTIFF VANESSA BRYANT'S SECOND AMENDED RESPONSES & OBJECTIONS TO
DEFENDANT COUNTY OF LOS ANGELES'S AMENDED FIRST SET OF INTERROGATORIES

EXHIBIT A
22

1   burden and expense that would be imposed on Plaintiff in reciting a list of facts

2   adduced from thousands of pages of documents and deposition testimony would

3   decidedly outweigh any likely benefit to COLA.

4        Plaintiff further objects to this Interrogatory under Fed. R. Civ. P. 33(d)

5   because it seeks information that is contained in documents that have been or are

6   expected to be produced by Plaintiff, COLA, the Sheriff's Department, the Fire

7   Department, and the Deputy Defendants, or that are publicly available, and the

8   burden of deriving or ascertaining the information from those documents will be

9   substantially the same for Plaintiff as it is for COLA.

10       Plaintiff further objects to this Interrogatory to the extent it seeks information

11  beyond the scope of her personal knowledge or about documents not in Plaintiff's

12  custody or control.

13       Plaintiff reserves the right to supplement and amend this response, including

14  based on discovery taken or information discovered after service of the response.

15  **AMENDED RESPONSE TO INTERROGATORY NO. 1:**

16       Plaintiff incorporates her General Objections above as if fully set forth herein.

17  Plaintiff objects to this Interrogatory because it is a premature contention

18  interrogatory improperly served before discovery in this matter—including

19  document productions, inspection of electronic devices, depositions, and expert

20  reports—is substantially complete. *See, e.g.*, *In re eBay Seller Antitrust Litig.*, 2008

21  WL 5212170, at *2 (N.D. Cal. Dec. 11, 2008). Given this outstanding discovery, it

22  is improper and unreasonable to request that Plaintiff set forth "all facts" in support

23  of her claims, and the burden imposed on Plaintiff in compiling a list of facts is

24  grossly disproportionate to any likely benefit to COLA. This is especially true given

25  that the overwhelming majority of facts pertaining to Plaintiff's claims are reflected

26  in Defendants' documents and/or are within the personal knowledge of COLA

27  employees, both of which are the object of pending discovery.

28

PLAINTIFF VANESSA BRYANT'S SECOND AMENDED RESPONSES & OBJECTIONS TO
DEFENDANT COUNTY OF LOS ANGELES'S AMENDED FIRST SET OF INTERROGATORIES

EXHIBIT A
23

*THIS PAGE CONTAINS MATERIAL DESIGNATED*
*CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER*

1    Plaintiff further objects that COLA's request that Plaintiff "state with

2 particularity all material information pertaining to identified subject matter" and

3 provide a "detailed account of the PERSONS, places, and timeframe involved" is

4 overbroad, unreasonable, unduly burdensome, calls for information outside of

5 Plaintiff's personal knowledge, and is not proportional to the needs of the case.  The

6 burden and expense that would be imposed on Plaintiff in reciting a list of facts

7 adduced from thousands of pages of documents and deposition testimony would

8 decidedly outweigh any likely benefit to COLA.

9    Plaintiff further objects to this Interrogatory under Fed. R. Civ. P. 33(d)

10 because it seeks information that is contained in documents that have been or are

11 expected to be produced by Plaintiff, COLA, the Sheriff's Department, the Fire

12 Department, and the Deputy Defendants, or that are publicly available, and the

13 burden of deriving or ascertaining the information from those documents will be

14 substantially the same for Plaintiff as it is for COLA.

15    Plaintiff further objects to this Interrogatory to the extent it seeks information

16 beyond the scope of her personal knowledge or about documents not in Plaintiff's

17 custody or control.

18    Subject to and without waiving the foregoing objections, Plaintiff identifies

19 the following facts that, based on the information available to Plaintiff to date,

20 support Plaintiff's First Cause of Action in her Amended Complaint.  Plaintiff

21 reserves the right to supplement and amend this response, including based on

22 discovery taken or information discovered after service of the response:

23    While in uniform at the scene of the January 26, 2020 helicopter crash in

24 which Plaintiff's husband and daughter were killed, several personnel of the Los

25 Angeles County Sheriff's Department ("LASD") and the Los Angeles County Fire

26 Department ("LAFD") used their cell phones to take unauthorized images of the

27 remains of victims of the crash, including images of the remains of Plaintiff's

28 husband and daughter.  LASD and LAFD personnel kept those images on their cell

PLAINTIFF VANESSA BRYANT'S SECOND AMENDED RESPONSES & OBJECTIONS TO
DEFENDANT COUNTY OF LOS ANGELES'S AMENDED FIRST SET OF INTERROGATORIES

EXHIBIT A
24

*THIS PAGE CONTAINS MATERIAL DESIGNATED CONFIDENTIAL
PURSUANT TO PROTECTIVE ORDER*

1  phones and then indiscriminately shared those images with others within their

2  departments who had no legitimate need or reason to see the photos, including a

3  trainee whose only role at the scene was monitoring the entry to a trailhead, a video-

4  game buddy, and an LAFD public information officer ("PIO") called to the scene to

5  liaise with the media.

6      At least several of these LASD and LAFD personnel shared these photos

7  with members of the public.  Defendant Joey Cruz showed off photos of the victims'

8  remains at a bar, bragging about how he had been at the crash site, smiling while

9  displaying the images to the bartender and another patron, and identifying one of the

10  individuals depicted as Kobe Bryant.  Deputy Cruz also showed the photos to his

11  niece.  The LAFD PIO showed off and discussed photos of the victims' remains

12  with fellow LAFD personnel and their girlfriends and wives at a public awards-

13  show gala.

14      The Los Angeles County Sheriff, Alex Villanueva, told reporters that LASD

15  personnel "had no place to be taking photographs of anything"; that in this scenario

16  "there's only two groups of people that should be taking photos . . . the NTSB and

17  the Coroner's office"; and that any photos taken by anyone outside of that group

18  "would be unauthorized" and "illicit," in addition to being "disgusting," "wildly

19  inappropriate," "inexcusable," and "unconscionable."  Deputy Chief William

20  McCloud of the LAFD Leadership and Professional Standards Bureau similarly

21  stated that the photos taken and shared by LAFD personnel "served no business

22  necessity" and instead "only served to appeal to baser instincts and desires for what

23  amounted to visual gossip."

24      At all relevant times, the LASD and LAFD personnel who took or shared

25  photos of Plaintiff's loved ones' remains for personal, non-law-enforcement

26  purposes, including the Deputy Defendants, were employed by LASD and LAFD

27  and were under COLA, LASD, or LAFD's direction and control when they engaged

28  in this misconduct.  These LASD and LAFD personnel, including the Deputy

PLAINTIFF VANESSA BRYANT'S SECOND AMENDED RESPONSES & OBJECTIONS TO
DEFENDANT COUNTY OF LOS ANGELES'S AMENDED FIRST SET OF INTERROGATORIES

EXHIBIT A
25

*THIS PAGE CONTAINS MATERIAL DESIGNATED CONFIDENTIAL
PURSUANT TO PROTECTIVE ORDER*

Defendants, were able to obtain photos of Plaintiffs' loved ones' remains by virtue of their access to the crash site while on duty and were able to access such photos, both while on duty and off duty, by virtue of their employment with LASD and LAFD.  LASD and LAFD personnel showed the photos to members of the public while discussing their presence and activities at the crash site—access they had by virtue of their employment with LASD and LAFD.

LASD, LAFD, and COLA failed to preserve evidence or conduct a proper investigation of their personnel's misconduct.  Just five days after the accident, LAFD was informed that LAFD personnel took photos of the crash site and received such photos from an LASD deputy.  Upon receiving this information, LAFD made a "cursory assessment" to try to identify the individuals involved in the misconduct. It did not launch an internal investigation, conduct any interviews, or examine any devices used by personnel who responded to the scene.  To this day, LAFD has yet to identify the LAFD employee who received photos of victims' remains from the LASD deputy.

On Sheriff Villanueva's order, LASD deputies were told that they would not face any discipline if they "came clean" and deleted any photos in their possession, and LASD deputies did delete those photos.  LAFD personnel also deleted photos in their possession, which LAFD has recognized as a "primarily self-serving" attempt "to cover up [their] role[s] in the reported misuse of the photos," showing a "refusal to take responsibility."  Neither LASD nor LAFD conducted any prompt forensic investigation of the devices that their personnel used to engage in misconduct in order to determine the scope of that misconduct and the extent of the dissemination of the photos of Plaintiff's deceased family members, and LASD never forensically preserved or examined any devices at all.

Upon learning of Sheriff Villanueva's deletion order, the then-Captain of the Lost Hills LASD station, Matthew Vander Horck, halted the deletion and called his supervisor to express concern that the Sheriff's order might constitute an instruction

-9-

PLAINTIFF VANESSA BRYANT'S SECOND AMENDED RESPONSES & OBJECTIONS TO
DEFENDANT COUNTY OF LOS ANGELES'S AMENDED FIRST SET OF INTERROGATORIES

EXHIBIT A
26

*THIS PAGE CONTAINS MATERIAL DESIGNATED CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER*

1  to destroy evidence of a violation of federal law, reminding his supervisor that the

2  "last time that our deputies got instructions from our executives" of a similar nature,

3  "they were arrested and tried for crimes."  After contacting the Sheriff's office,

4  Vander Horck's supervisor called Vander Horck and told him "this is the direction

5  we're gonna go."  Just a few weeks later, on February 18, 2020, LASD demoted and

6  transferred Vander Horck to Men's Central Jail.  Defendant Cruz, on the other hand,

7  received only a ten day suspension without pay, and no other LASD personnel were

8  subject to disciplinary action at all.  Although the LAFD PIO received a demotion,

9  two other LAFD personnel involved in the sharing of photos of Plaintiff's loved

10 ones' remains have to date not been subjected to disciplinary action.

11      Sheriff Villanueva has acknowledged to the press that "there's cops—they

12 keep death books, for example, where . . . they have photos from crime scenes

13 throughout their careers" and that "unfortunately, ever since they invented the

14 Polaroid camera, this has been a problem in law enforcement across the nation,

15 probably across the world, because it just makes it so much easier."  He has further

16 acknowledged that "[e]very police department struggles with the same thing, where

17 people take photos and they're not evidence . . . So that's a practice we have to

18 make sure that everyone walks away, and there is no evidence other than the official

19 photos of evidence that are taken for criminal purposes."  Similarly, LAFD first

20 responders encounter scenes with human remains all the time, and "it is very

21 common for photos to be taken," including "gruesome photos."  Given the nature of

22 their work, LAFD was "in need of a strong policy" to prevent unnecessary graphic

23 photographs of human remains.

24      Despite their knowledge of this longstanding practice of law enforcement

25 improperly taking and disseminating photos of deceased individuals and the

26 frequency with which their personnel confront scenes involving human remains,

27 COLA, LASD, and LAFD failed to institute policies or procedures prohibiting the

28 taking, keeping, and distributing gratuitous images of human remains; failed to

PLAINTIFF VANESSA BRYANT'S SECOND AMENDED RESPONSES & OBJECTIONS TO
DEFENDANT COUNTY OF LOS ANGELES'S AMENDED FIRST SET OF INTERROGATORIES

EXHIBIT A
27

*THIS PAGE CONTAINS MATERIAL DESIGNATED CONFIDENTIAL
PURSUANT TO PROTECTIVE ORDER*

1   adequately train and supervise their personnel to ensure they did not do so; and

2   failed to adequately investigate and discipline personnel who did do so.

3           Numerous deputies who responded to the accident scene on January 26, 2020

4   told investigators there was no instruction or briefing regarding photography of the

5   crash site or human remains.  In a letter to the Los Angeles County Inspector

6   General, Sheriff Villanueva stated:  "It is evident our photograph policy is deficient

7   and this incident has identified a need for me to direct the creation of a new policy."

8   Similarly, in a March 2020 media interview, Sheriff Villanueva stated that the

9   Department was "creating new [policies] that are very specific, with teeth in 'em, up

10  to and including a penalty of discharge for violation of these policies."

11          Within months, LASD added an entirely new section to its Manual of Policies

12  and Procedures, entitled "Photographs/Recordings at Scenes Where Human

13  Remains Are Present."  The new policy dictates that, "[i]n order to preserve the

14  dignity and privacy of the deceased and their families, scenes where human remains

15  are present shall only be photographed/recorded by Scientific Services Bureau or the

16  Department of Medical Examiner (DME) personnel."  The new policy further

17  provides: "Any photograph, recording, or record produced by a Department

18  member . . . shall be considered the sole property of the Department" and "[a]ny

19  unauthorized release or sharing is strictly prohibited."

20          LAFD has likewise admitted that, at the time of the crash, LAFD lacked any

21  policies regarding photos of accident or emergency scenes; photos of human

22  remains; the use of personal cell phones by LAFD personnel while on duty; or the

23  confidentiality or handling of materials or information relating to celebrities, and

24  that LAFD still had not implemented any such policies as of January 1, 2021.  Given

25  this prior gap in their policies and training, LAFD has recognized that it "owe[s] it

26  to the communities that [it] serve[s]" to adopt a new policy that provides guidance to

27  rank and file employees regarding what photographs are and are not appropriate at

28  work-related scenes.

-11-                    Case No. 2:20-cv-09582-JFW-E
PLAINTIFF VANESSA BRYANT'S SECOND AMENDED RESPONSES & OBJECTIONS TO
DEFENDANT COUNTY OF LOS ANGELES'S AMENDED FIRST SET OF INTERROGATORIES

EXHIBIT A
28

1    Defendants' misconduct has caused Plaintiff emotional distress.

2    **SECOND AMENDED RESPONSE TO INTERROGATORY NO. 1:**

3    Plaintiff incorporates her General Objections above as if fully set forth herein.

4    Plaintiff objects to this Interrogatory because it is a premature contention

5    interrogatory improperly served before discovery in this matter—including

6    document productions, inspection of electronic devices, depositions, and expert

7    reports—is substantially complete. *See, e.g.*, *In re eBay Seller Antitrust Litig.*, 2008

8    WL 5212170, at *2 (N.D. Cal. Dec. 11, 2008). Given this outstanding discovery, it

9    is improper and unreasonable to request that Plaintiff set forth "all facts" in support

10    of her claims, and the burden imposed on Plaintiff in compiling a list of facts is

11    grossly disproportionate to any likely benefit to COLA. This is especially true given

12    that the overwhelming majority of facts pertaining to Plaintiff's claims are reflected

13    in Defendants' documents and/or are within the personal knowledge of COLA

14    employees, both of which are the object of pending discovery.

15    Plaintiff further objects that COLA's request that Plaintiff "state with

16    particularity all material information pertaining to identified subject matter" and

17    provide a "detailed account of the PERSONS, places, and timeframe involved" is

18    overbroad, unreasonable, unduly burdensome, calls for information outside of

19    Plaintiff's personal knowledge, and is not proportional to the needs of the case. The

20    burden and expense that would be imposed on Plaintiff in reciting a list of facts

21    adduced from thousands of pages of documents and deposition testimony would

22    decidedly outweigh any likely benefit to COLA.

23    Plaintiff further objects to this Interrogatory under Fed. R. Civ. P. 33(d)

24    because it seeks information that is contained in documents that have been or are

25    expected to be produced by Plaintiff, COLA, the Sheriff's Department, the Fire

26    Department, and the Deputy Defendants, or that are publicly available, and the

27    burden of deriving or ascertaining the information from those documents will be

28    substantially the same for Plaintiff as it is for COLA.

PLAINTIFF VANESSA BRYANT'S SECOND AMENDED RESPONSES & OBJECTIONS TO
DEFENDANT COUNTY OF LOS ANGELES'S AMENDED FIRST SET OF INTERROGATORIES

EXHIBIT A
29

*THIS PAGE CONTAINS MATERIAL DESIGNATED CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER*

1  Plaintiff further objects to this Interrogatory to the extent it seeks information
2  beyond the scope of her personal knowledge or about documents not in Plaintiff's
3  custody or control.

4  Subject to and without waiving the foregoing objections, Plaintiff identifies
5  the following facts that, based on the information available to Plaintiff to date,
6  support Plaintiff's First Cause of Action in her Amended Complaint.  Plaintiff
7  reserves the right to supplement and amend this response, including based on
8  discovery taken or information discovered after service of the response:

9  While in uniform at the scene of the January 26, 2020 helicopter crash in
10  which Plaintiff's husband and daughter were killed, several personnel of the Los
11  Angeles County Sheriff's Department ("LASD") and the Los Angeles County Fire
12  Department ("LAFD") used their cell phones to take unauthorized images of the
13  remains of victims of the crash, including images of the remains of Plaintiff's
14  husband and daughter.  LASD and LAFD personnel kept those images on their cell
15  phones and then indiscriminately shared those images with others within their
16  departments who had no legitimate need or reason to see the photos, including a
17  trainee whose only role at the scene was monitoring the entry to a trailhead, a video-
18  game buddy, and an LAFD public information officer ("PIO") called to the scene to
19  liaise with the media.

20  At least several of these LASD and LAFD personnel shared these photos
21  with members of the public.  Defendant Joey Cruz showed off photos of the victims'
22  remains at a bar, bragging about how he had been at the crash site, smiling while
23  displaying the images to the bartender and another patron, and identifying one of the
24  individuals depicted as Kobe Bryant.  Deputy Cruz also showed the photos to his
25  niece.  The LAFD PIO showed off and discussed photos of the victims' remains
26  with fellow LAFD personnel and their girlfriends and wives at a public awards-
27  show gala.

28

-13-    Case No. 2:20-cv-09582-JFW-E
PLAINTIFF VANESSA BRYANT'S SECOND AMENDED RESPONSES & OBJECTIONS TO
DEFENDANT COUNTY OF LOS ANGELES'S AMENDED FIRST SET OF INTERROGATORIES

*THIS PAGE CONTAINS MATERIAL DESIGNATED CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER*

1    The Los Angeles County Sheriff, Alex Villanueva, told reporters that LASD
2  personnel "had no place to be taking photographs of anything"; that in this scenario
3  "there's only two groups of people that should be taking photos . . . the NTSB and
4  the Coroner's office"; and that any photos taken by anyone outside of that group
5  "would be unauthorized" and "illicit," in addition to being "disgusting," "wildly
6  inappropriate," "inexcusable," and "unconscionable."  Deputy Chief William
7  McCloud of the LAFD Leadership and Professional Standards Bureau similarly
8  stated that the photos taken and shared by LAFD personnel "served no business
9  necessity" and instead "only served to appeal to baser instincts and desires for what
10  amounted to visual gossip."

11    At all relevant times, the LASD and LAFD personnel who took or shared
12  photos of Plaintiff's loved ones' remains for personal, non-law-enforcement
13  purposes, including the Deputy Defendants, were employed by LASD and LAFD
14  and were under COLA, LASD, or LAFD's direction and control when they engaged
15  in this misconduct.  These LASD and LAFD personnel, including the Deputy
16  Defendants, were able to obtain photos of Plaintiffs' loved ones' remains by virtue
17  of their access to the crash site while on duty and were able to access such photos,
18  both while on duty and off duty, by virtue of their employment with LASD and
19  LAFD.  LASD and LAFD personnel showed the photos to members of the public
20  while discussing their presence and activities at the crash site—access they had by
21  virtue of their employment with LASD and LAFD.

22    LASD, LAFD, and COLA failed to preserve evidence or conduct a proper
23  investigation of their personnel's misconduct.  Just five days after the accident,
24  LAFD was informed that LAFD personnel took photos of the crash site and received
25  such photos from an LASD deputy.  Upon receiving this information, LAFD made a
26  "cursory assessment" to try to identify the individuals involved in the misconduct.
27  It did not launch an internal investigation, conduct any interviews, or examine any
28  devices used by personnel who responded to the scene.  To this day, LAFD has yet

-14-                                    Case No. 2:20-cv-09582-JFW-E
PLAINTIFF VANESSA BRYANT'S SECOND AMENDED RESPONSES & OBJECTIONS TO
DEFENDANT COUNTY OF LOS ANGELES'S AMENDED FIRST SET OF INTERROGATORIES

EXHIBIT A
31

*THIS PAGE CONTAINS MATERIAL DESIGNATED CONFIDENTIAL
PURSUANT TO PROTECTIVE ORDER*

1  to identify the LAFD employee who received photos of victims' remains from the

2  LASD deputy.

3        On Sheriff Villanueva's order, LASD deputies were told that they would not

4  face any discipline if they "came clean" and deleted any photos in their possession,

5  and LASD deputies did delete those photos. LAFD personnel also deleted photos in

6  their possession, which LAFD has recognized as a "primarily self-serving" attempt

7  "to cover up [their] role[s] in the reported misuse of the photos," showing a "refusal

8  to take responsibility." Neither LASD nor LAFD conducted any prompt forensic

9  investigation of the devices that their personnel used to engage in misconduct in

10 order to determine the scope of that misconduct and the extent of the dissemination

11 of the photos of Plaintiff's deceased family members, and LASD never forensically

12 preserved or examined any devices at all.

13       Upon learning of Sheriff Villanueva's deletion order, the then-Captain of the

14 Lost Hills LASD station, Matthew Vander Horck, halted the deletion and called his

15 supervisor to express concern that the Sheriff's order might constitute an instruction

16 to destroy evidence of a violation of federal law, reminding his supervisor that the

17 "last time that our deputies got instructions from our executives" of a similar nature,

18 "they were arrested and tried for crimes." After contacting the Sheriff's office,

19 Vander Horck's supervisor called Vander Horck and told him "this is the direction

20 we're gonna go." Just a few weeks later, on February 18, 2020, LASD demoted and

21 transferred Vander Horck to Men's Central Jail. Defendant Cruz, on the other hand,

22 received only a ten day suspension without pay, and no other LASD personnel were

23 subject to disciplinary action at all. Although the LAFD PIO received a demotion,

24 two other LAFD personnel involved in the sharing of photos of Plaintiff's loved

25 ones' remains have to date not been subjected to disciplinary action.

26       Sheriff Villanueva has acknowledged to the press that "there's cops—they

27 keep death books, for example, where . . . they have photos from crime scenes

28 throughout their careers" and that "unfortunately, ever since they invented the

-15-                          Case No. 2:20-cv-09582-JFW-E
PLAINTIFF VANESSA BRYANT'S SECOND AMENDED RESPONSES & OBJECTIONS TO
DEFENDANT COUNTY OF LOS ANGELES'S AMENDED FIRST SET OF INTERROGATORIES

EXHIBIT A
32

*THIS PAGE CONTAINS MATERIAL DESIGNATED CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER*

1   Polaroid camera, this has been a problem in law enforcement across the nation,

2   probably across the world, because it just makes it so much easier." He has further

3   acknowledged that "[e]very police department struggles with the same thing, where

4   people take photos and they're not evidence . . . So that's a practice we have to

5   make sure that everyone walks away, and there is no evidence other than the official

6   photos of evidence that are taken for criminal purposes." Similarly, LAFD first

7   responders encounter scenes with human remains all the time, and "it is very

8   common for photos to be taken," including "gruesome photos." Given the nature of

9   their work, LAFD was "in need of a strong policy" to prevent unnecessary graphic

10  photographs of human remains.

11      Despite their knowledge of this longstanding practice of law enforcement

12  improperly taking and disseminating photos of deceased individuals and the

13  frequency with which their personnel confront scenes involving human remains,

14  COLA, LASD, and LAFD failed to institute policies or procedures prohibiting the

15  taking, keeping, and distributing gratuitous images of human remains; failed to

16  adequately train and supervise their personnel to ensure they did not do so; and

17  failed to adequately investigate and discipline personnel who did do so.

18      Numerous deputies who responded to the accident scene on January 26, 2020

19  told investigators there was no instruction or briefing regarding photography of the

20  crash site or human remains. In a letter to the Los Angeles County Inspector

21  General, Sheriff Villanueva stated: "It is evident our photograph policy is deficient

22  and this incident has identified a need for me to direct the creation of a new policy."

23  Similarly, in a March 2020 media interview, Sheriff Villanueva stated that the

24  Department was "creating new [policies] that are very specific, with teeth in 'em, up

25  to and including a penalty of discharge for violation of these policies."

26      Within months, LASD added an entirely new section to its Manual of Policies

27  and Procedures, entitled "Photographs/Recordings at Scenes Where Human

28  Remains Are Present." The new policy dictates that, "[i]n order to preserve the

-16-    Case No. 2:20-cv-09582-JFW-E

PLAINTIFF VANESSA BRYANT'S SECOND AMENDED RESPONSES & OBJECTIONS TO
DEFENDANT COUNTY OF LOS ANGELES'S AMENDED FIRST SET OF INTERROGATORIES

EXHIBIT A
33

*THIS PAGE CONTAINS MATERIAL DESIGNATED CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER*

1  dignity and privacy of the deceased and their families, scenes where human remains

2  are present shall only be photographed/recorded by Scientific Services Bureau or the

3  Department of Medical Examiner (DME) personnel."  The new policy further

4  provides: "Any photograph, recording, or record produced by a Department

5  member . . . shall be considered the sole property of the Department" and "[a]ny

6  unauthorized release or sharing is strictly prohibited."

7        LAFD has likewise admitted that, at the time of the crash, LAFD lacked any

8  policies regarding photos of accident or emergency scenes; photos of human

9  remains; the use of personal cell phones by LAFD personnel while on duty; or the

10  confidentiality or handling of materials or information relating to celebrities, and

11  that LAFD still had not implemented any such policies as of January 1, 2021.  Given

12  this prior gap in their policies and training, LAFD has recognized that it "owe[s] it

13  to the communities that [it] serve[s]" to adopt a new policy that provides guidance to

14  rank and file employees regarding what photographs are and are not appropriate at

15  work-related scenes.

16        In the days following the helicopter crash, Jennifer Danielle Bolden was

17  working as a bartender at the Bottoms Up Tiki Lounge on Alondra Avenue in

18  Bellflower, California.  While Ms. Bolden and several others at the bar were

19  discussing the crash and comforting each other regarding Kobe and Gianna Bryant's

20  deaths, a dark-haired man sitting at the bar told Ms. Bolden and others that a friend

21  of his who was employed as a law-enforcement officer had been stationed at the

22  crash site to keep coyotes away from the accident victims' remains; that the friend

23  had shown the dark-haired man pictures of the victims' remains on his smartphone;

24  and that the photos depicted, among other graphic details, ███████████████

25  ████████████████████████████████████.

26        Within three or four days of the crash, Jessica Padeski-Wells was working at

27  the bar of a TGI Friday's restaurant in Corona, California.  A bar patron showed Ms.

28  Padeski-Wells about five to ten photos on his smartphone that depicted, at close

-17-                                    Case No. 2:20-cv-09582-JFW-E

PLAINTIFF VANESSA BRYANT'S SECOND AMENDED RESPONSES & OBJECTIONS TO
DEFENDANT COUNTY OF LOS ANGELES'S AMENDED FIRST SET OF INTERROGATORIES

*THIS PAGE CONTAINS MATERIAL DESIGNATED CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER*

1  range, fiery wreckage at the crash site.  The patron told Ms. Padeski-Wells that he

2  was employed with the Orange County Sheriff's Department and that he had been

3  sent the photos by someone in his department.  Regarding the photos, he also told

4  Ms. Padeski-Wells, "I'm not even supposed to have these."

5      Within a few days of the helicopter accident, Rose Abraham, a loan officer

6  residing in West Hills, California, discussed the crash with her daughter.  Ms.

7  Abraham's daughter told her that her friend—an officer of the Los Angeles Police

8  Department—had received gory and grotesque photos of the crash site.

9      Members of the general public have taunted Plaintiff about the possibility of

10  photographs of her husband or daughter's remains being publicly shared and have

11  even threatened to publish such images.  Others have claimed that they have seen

12  such photos or know people who have seen such photos, while still others have

13  claimed that images circulating online—including at least one fake image created

14  using photo-manipulation tools—show Plaintiff's husband's remains.  Plaintiff has

15  seen photos of the January 26, 2020 helicopter crash posted online that purport to

16  contain human remains.

17      Defendants' misconduct has caused Plaintiff emotional distress.

18  **INTERROGATORY NO. 2:**

19      DESCRIBE all facts supporting the Second Cause of Action in YOUR

20  COMPLAINT for negligence.

21  **RESPONSE TO INTERROGATORY NO. 2:**

22      Plaintiff incorporates her General Objections above as if fully set forth herein.

23  Plaintiff objects to this Interrogatory because it is a premature contention

24  interrogatory improperly served before discovery in this matter—including

25  document productions, inspection of electronic devices, depositions, and expert

26  reports—is substantially complete.  *See, e.g.*, *In re eBay Seller Antitrust Litig.*, 2008

27  WL 5212170, at *2 (N.D. Cal. Dec. 11, 2008).  Given this outstanding discovery, it

28  is improper and unreasonable to request that Plaintiff set forth "all facts" in support

-18-                                    Case No. 2:20-cv-09582-JFW-E

PLAINTIFF VANESSA BRYANT'S SECOND AMENDED RESPONSES & OBJECTIONS TO DEFENDANT COUNTY OF LOS ANGELES'S AMENDED FIRST SET OF INTERROGATORIES

EXHIBIT A
35