LUIS LI (State Bar No. 156081)
Luis.Li@wsgr.com
ERIC TUTTLE (State Bar No. 248440)
Eric.Tuttle@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
633 West Fifth Street, Suite 1550
Los Angeles, California 90071
Telephone:   (323) 210-2900
Facsimile:    (866) 974-7329

CRAIG JENNINGS LAVOIE (State Bar No. 293079)
Craig.Lavoie@mto.com
JENNIFER L. BRYANT (State Bar No. 293371)
Jennifer.Bryant@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:   (213) 683-9100
Facsimile:    (213) 687-3702

Attorneys for Plaintiff Vanessa Bryant

[*Additional counsel continued on next page.*]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| VANESSA BRYANT,<br><br>        Plaintiff,<br><br>    v.<br><br>COUNTY OF LOS ANGELES, et al.,<br><br>        Defendants. | **CASE NO. 2:20-cv-09582-JFW-E**<br><br>**JOINT STATEMENT RE: MOTIONS IN LIMINE**<br><br>Assigned to Hon. John F. Walter and Magistrate Judge Charles F. Eick<br><br>Pretrial Conf.:          July 8, 2022<br><br>Hearing on Motions in Limine: TBD<br><br>Trial Date:                      TBD |

1  [*Additional counsel, continued from previous page*]

2

3  LOUIS R. MILLER (State Bar No. 54141)
   smiller@millerbarondess.com

4  MIRA HASHMALL (State Bar No. 216842)
   JASON H. TOKORO (State Bar No. 252345)

5  CASEY B. SYPEK (State Bar No. 291214)

6  MILLER BARONDESS, LLP
   1999 Avenue of the Stars, Suite 1000

7  Los Angeles, California 90067

8  Tel.: (310) 552-4400 | Fax: (310) 552-8400

9  Attorneys for Defendants

10 County of Los Angeles, Los Angeles County Fire Department, Joey Cruz, Rafael
   Mejia, Michael Russell, and Raul Versales

11

12 JONATHAN C. McCAVERTY (State Bar No. 210922)

13 *Principal Deputy County Counsel*
   jmccaverty@counsel.lacounty.gov

14 OFFICE OF THE COUNTY COUNSEL

15 General Litigation Division

16 500 West Temple Street, Suite 468
   Los Angeles, California 90012

17 Tel.: (213) 974-1828 | Fax: (213) 626-7446

18

19 Attorneys for Defendant Los Angeles County Sheriff's Department

20

21

22

23

24

25

26

27

28

Case No. 2:20-cv-09582-JFW-E

# **TABLE OF CONTENTS**

Page

I.      Plaintiff's MIL #1: Spoliation.............................................................................1

II.     Plaintiff's MIL #2:  Exclusion of Defendants' Expert Dr. Cohen...................2

III.    Plaintiff's MIL #3:  Plaintiff's Financial Condition / Crash Lawsuit..............4

IV.     Plaintiff's MIL #4:  Admission of Complainant Witness Testimony .............6

V.      Plaintiff's MIL #5:  Admission of Recordings and Letters ...........................8

VI.     Defendants' MIL #1:  Non-County Photographs ...........................................10

VII.    Defendants' MIL #2:  Adam Bercovici .........................................................12

VIII.   Defendants' MIL #3:  Job Transfer ...............................................................13

IX.     Defendants' MIL #4:  David Freskos .............................................................14

X.      Defendants' MIL #5:  Late Disclosed Documents ........................................15

## I.     Plaintiff's MIL #1: Spoliation

**Plaintiff's Summary:**  After a duty to preserve arose, ten of eleven LASD personnel known to have possessed remains photos disposed of or intentionally wiped their phones.  **Dkt. 235 at 12-13; Dkt. 243-4 at 26; Dkt. 151-57 ¶ 25.**  As a result, evidence that would have shown what happened—including the nature and extent of the dissemination—was permanently lost.  This destruction was the direct consequence of LASD's failure to preserve evidence, including by not issuing preservation notices to relevant personnel.  **Dkt. 160-3.**  Rather than take any steps to preserve the evidence, the Sheriff offered his deputies a chance to avoid discipline if they deleted evidence of their wrongdoing.  A senior fire captain (Tony Imbrenda) likewise orchestrated a widespread mass-deletion campaign that the Fire Department itself concluded was a "primarily self-serving . . . attempt to cover up [Imbrenda's] role in the reported misuse of the photos."  **Dkt. 191 ¶¶ 253-260.**

Because Defendants have spoliated all the direct evidence of what the photos depicted, how many were taken and shared, and how widely they spread, Plaintiff seeks measures "to cure the prejudice."  *See* Fed. R. Civ. P. 37(e)(1).[1]  Specifically, Defendants should be precluded from exploiting the evidentiary gap they have created by offering unverifiable, self-serving argument or evidence at trial that denies the photos depicted Plaintiff's deceased family members or denies the photos were electronically disseminated, including to members of the public.  **Dkt. 235 at 26-27.**  Moreover, to mitigate the impact of Defendants' spoliation, Plaintiff should be allowed to present evidence to the jury regarding Defendants' cover-ups and their failure to preserve evidence.  *Id.* **at 27-28; Dkt. 299 at 87-88**.

**Defendants' Summary:** Plaintiff seeks spoliation sanctions precluding Defendants from denying that they publicly disseminated crash site photos.  But there was no spoliation.  Defendants' duty to preserve ESI did not arise until May

---

[1] Plaintiff also requests an adverse inference instruction under Rule 37(e)(2), which is separately addressed in the parties' instruction memorandum.  **Dkt. 299 at 75-83**.

1   2020 (LASD) and July 2020 (LACFD), when tort claims were submitted.  *See*
2   *Garcia v. United States*, 2014 WL 12709430, at *1 (C.D. Cal. Sept. 3, 2014).
3   LASD and LACFD launched comprehensive preservation efforts once these claims
4   were submitted, and the photos had already been deleted to prevent dissemination.

5        Plaintiff's request for sanctions should also be denied because Plaintiff cannot
6   establish that any data was lost that "would have produced evidence favorable to
7   [her] cause." *United States v. Town of Colorado City, Ariz.*, 2014 WL 3724232, at
8   *7 (D. Ariz. July 28, 2014).  Plaintiff's sanctions request is also effectively a
9   terminating sanction, which is justified only in "extreme circumstances."  *See*
10  *Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 380 (9th Cir. 1988).

11       Plaintiff has not shown any prejudice.  She has the 1,140-page Internal
12  Affairs report and the entire LACFD internal investigation.  She took 40 depositions
13  and served over 100 discovery requests.  Defendants produced over 35,000 pages of
14  documents.  Plaintiff also has Kroll's report on its forensic examination, and all
15  personnel from LASD and LACFD produced their cellphone records.  Whether or
16  not Plaintiff can prove her case has nothing to do with any supposed spoliation.

17       Plaintiff alternatively seeks permission to present evidence of Defendants'
18  alleged spoliation to the jury.  But spoliation is not "a run-of-the-mill fact issue to be
19  resolved by the jury." *Mannion v. Ameri-Can Freight Sys. Inc.*, 2020 WL 417492,
20  at *3 (D. Ariz. Jan. 27, 2020).  "[P]resenting spoliation-related factual disputes to
21  juries creates a high risk of confusion and prejudice." *Id*. at *4.

22  **II.   Plaintiff's MIL #2:  Exclusion of Defendants' Expert Dr. Cohen**

23       **Plaintiff's Summary:**  Plaintiff's psychiatric expert Dr. Cohen should be
24  excluded for two independent reasons: (1) late disclosure; and (2) unreliability.

25       *Late Disclosure*.  Defendants served expert reports for Dr. Cohen weeks after
26  the deadline.  Defendants' excuse is that they were waiting to see if they would get a
27  medical examination of Plaintiff.  But they did not request an exam until the end of
28  discovery when it was too late, as Judge Eick recognized when he denied the

request.  Plaintiffs could have timely requested the exam, or engaged Dr. Cohen to prepare a timely report without an exam, or asked this Court to allow them to conduct a late exam or serve a late expert report.  Instead they simply served late reports.  The Court's CMO states: "Failure to timely comply with [the expert] deadline will result in the expert being excluded at trial as a witness." **Dkt. 86 at 6**. Plaintiff was prejudiced by the inability to depose Dr. Cohen or disclose a rebuttal expert under the Court's schedule.  Defendants do not need a medical expert given that this is a common-sense claim for emotional distress and Plaintiff is not putting on a medical expert in her case in chief. **Dkt. 275 at 14-18**.

*Unreliability*.  Dr. Cohen has never examined Mrs. Bryant or reviewed her medical records—just some text messages she sent her therapist, her deposition, and some public statements.  Dr. Cohen *admits* that assessing Mrs. Bryant's mental condition (or its causation) "cannot be reliably accomplished without considering the entire life history," and that he knows "little … about her life history."  The psychiatric profession agrees that it violates medical ethics and the "methods of the profession" to opine on mental condition without history-taking, review of medical records, and an examination.  Yet Dr. Cohen opines that he "found no evidence that Vanessa Bryant has been mentally harmed or emotionally damaged from" Defendants' taking and sharing of photos and further opines on what he contends are the true "sources" of Mrs. Bryant's distress.  He has no medical basis on which to draw such a conclusion. **Dkt. 275 at 19-24**.  His opinion that a person "cannot be emotionally distressed by photographs she has never seen" is contrary to law and not based on specialized expertise. ***Id.* at 39-41**.

If Dr. Cohen is allowed to testify, Plaintiff should be able to depose him and call a rebuttal expert, which Defendants do not oppose. **Dkt. 300 at 31**.

**Defendants' Summary:** Plaintiff asks the Court to exclude testimony by Dr. Marc Cohen—a Board-certified psychiatrist with top-notch credentials— notwithstanding that Plaintiff plans to ask the jury to award her tens of millions of

dollars in damages based entirely on emotional distress.

*First*, Plaintiff argues that Dr. Cohen should be precluded under Rule 37(c)(1) because his reports were produced a few weeks after the October 4, 2021 deadline for expert reports.  This sanction is not warranted.  The timing of Dr. Cohen's disclosures was substantially justified.  Plaintiff repeatedly stalled and resisted discovery—evading repeated requests for an IME; refusing to identify if she even had a therapist until her October 4 deposition; and refusing to produce her therapy records.  The timing was also harmless.  Plaintiff has had *eight months* since Dr. Cohen's report was produced on November 12 to depose him.  Excluding Dr. Cohen would be an extreme sanction that would greatly prejudice Defendants.

*Second*, Plaintiff argues that Dr. Cohen's opinions are unreliable and speculative because he never met her face-to-face.  Plaintiff contends rendering opinions without meeting her is "prohibited as unethical" by the APA Principles of Medical Ethics.  That is not true.  The APA Ethics Committee and American Academy of Psychiatry and the Law allow a forensic psychiatrist to rely upon other sources of information when a face-to-face examination cannot be performed.  In any event, the APA's ethical rules do not govern admissibility.  Dr. Cohen's opinions are neither unreliable nor speculative.  Dr. Cohen reviewed 8,000 pages of material and watched hours of videotaped deposition.  Plaintiff will have the opportunity to challenge the bases of Dr. Cohen's opinions on cross-examination.

### III.   Plaintiff's MIL #3:  Plaintiff's Financial Condition / Crash Lawsuit

**Plaintiff's Summary:**  As the Court suggested, the jury can be instructed that this case is not about what caused the crash, Defendants are not responsible for the crash, and Plaintiff's damages do not include grief from the deaths of her loved ones that would have occurred regardless of Defendants' misconduct.  With that, there is no reason for Defendants to discuss Plaintiff's lawsuit against the helicopter operator or its settlement other than to improperly (and falsely) cast Plaintiff as litigious or suggest that she already has been compensated for her injury through

other litigation.  Whether there was a suit against the operator and whether it was settled are simply irrelevant to the jury's task here, including because it involves different conduct and harm; emotional distress was not recoverable in that lawsuit. **Dkt. 237** **at 9-12**.  Defendants also should not discuss Plaintiff's income or financial condition, though this would not preclude them from asking questions about her activities (if relevant).  Plaintiff proposed an instruction and order to resolve this MIL, attached as **Exhibit A**, which Defendants rejected.  Defendants' proposal and redline are attached as **Exhibits B** and **C**.  Among other things, Defendants' version improperly instructs the jury not to consider grief from the deaths of her loved ones at all, even though Defendants are liable to the extent their conduct aggravated that grief.  *See, e.g.*, *Meadows v. Guptill*, 856 F. Supp. 1362, 1371 (D. Ariz. 1993); *Rojas v. Home Depot U.S.A., Inc.*, 2020 WL 1625590, at *5 (C.D. Cal. Feb. 6, 2020).

        **Defendants' Summary:** Plaintiff's proposed jury instruction does not work. Defendants proposed revisions to the instruction that Plaintiff rejected.

        As the Court indicated at the July 8 pretrial conference, Defendants should be able to tell the jury that Plaintiff filed a lawsuit against the helicopter company and settled that lawsuit.  Plaintiff's proposed jury instruction does not tell the jury any of this.  Defendants are entitled to defend against Plaintiff's claim of emotional distress by showing that other factors caused her distress.  This includes the stress from multiple lawsuits, including the lawsuit against the helicopter operators, as well as the lawsuit filed by Plaintiff's mother against her.  *See*, *e.g.*, *Williams v. County of San Diego*, 2020 WL 2991515, at *4 (S.D. Cal. June 3, 2020) ("Defendant is entitled to show that 'other factors' contributed to Plaintiffs' emotional distress.").  Also, if the lawsuit against the helicopter operators is not disclosed, the jury could believe this suit was Plaintiff's only recourse for the crash, inflaming their emotions.

        Plaintiff's instruction and order is also imprecise in ways that will create confusion as to its scope—*e.g.*, precluding evidence of "financial status" rather than simply "net worth or salary."  Defendants' alternative makes clear that they can

1  examine Plaintiff about aspects of her job—*i.e.*, taking over as CEO—that could
2  contribute to her distress, but not about her salary or net worth.

3  **IV.    Plaintiff's MIL #4:  Admission of Complainant Witness Testimony**

4      **Plaintiff's Summary:**  Luella Weireter is a third party who attended a gala
5  and witnessed firefighters Sky Cornell and Tony Imbrenda, the latter's girlfriend,
6  and others looking at Imbrenda's phone, making gestures, and talking about photos
7  of remains.  **Dkt. 238** **at 13-14**.  Weireter can clearly talk about what she saw, and
8  she can also talk about what she heard.  Imbrenda's and Cornell's statements are
9  party admissions.  ***Id.*** **at 14-15**.  The girlfriend's "excited" statement that "they're
10  looking at the Kobe pictures right now"—describing an ongoing event she had just
11  witnessed and stepped away from—is a present sense impression and an excited
12  utterance, and her further exhortation to "go look at the Kobe pictures" / "don't you
13  guys want to see the Kobe pictures" is additionally relevant for its effect on the
14  listener to show Defendants' conduct shocks the conscience.  ***Id.*** **at 15-17**.

15      Ralph Mendez, Jr. is the citizen who complained about Deputy Cruz's
16  conduct at the bar.  Three minutes after Cruz left the bar, the bartender, Victor
17  Gutierrez, approached Mendez in "excitement" and recounted (i) what Cruz had said
18  and done; and (ii) what Gutierrez himself had seen in Cruz's photos.  **Dkt. 238** **at 8-**
19  **9**.  Mendez can testify regarding Gutierrez's statements because they were excited
20  utterances made while Gutierrez was still "animated" by the startling event he had
21  just seen.  ***Id.*** **at 10-11**.  They are also present sense impressions because Gutierrez
22  was describing photographs he had just seen and statements he had just heard, and
23  he "exploded" with that information just three minutes after Cruz left the bar and
24  Gutierrez had his first opportunity to report what he'd witnessed.  ***Id.*** **at 11-13**.
25  Cruz's statements (relayed to Mendez through Gutierrez) are party admissions.  ***Id.***
26  **at 9**.  The statements are also admissible for their effect on the listener, Mendez
27  (who was horrified) to show that Cruz's conduct shocked the conscience.  ***Id.*** **at 9-**
28  **10**.  In addition, the accurate and non-public detail in which Gutierrez described the

Case No. 2:20-cv-09582-JFW-E

remains photos is admissible for the non-hearsay purpose of showing that he had seen those photos. *See United States v. Ambrose*, 668 F.3d 943, 961 (7th Cir. 2012) (declarant's repetition of non-public information was non-hearsay to show that leaked information was received by him and to show the identity of the leaker given limited number of people with access to information). *Cf.* **Dkt. 245** **at 27-28**.

Mendez's recounting of Gutierrez's statements can be used for impeachment if Gutierrez testifies inconsistently with his past statements. *See, e.g.*, *United States v. Monroe*, 943 F.2d 1007, 1012 (9th Cir. 1991); *United States v. Gilbert*, 57 F.3d 709, 711-12 (9th Cir. 1995); FRE 607. But Plaintiff can also introduce this evidence affirmatively through Mendez to streamline trial.

**Defendants' Summary:** The proffered testimony of Mendez and Weireter is inadmissible hearsay. *First*, Plaintiff intends to call Mendez to testify to what Gutierrez *told him* about what Deputy Cruz *told Gutierrez*. Plaintiff argues that Gutierrez's statements are admissible for the non-hearsay purpose of their effect on Mendez. But Mendez's state of mind is not relevant.

Gutierrez's statements also are not "excited utterances." Gutierrez's statements were not a "spontaneous reaction" to an event "sufficiently startling to render normal reflective thought processes inoperative." *United States v. McLennan*, 563 F.2d 943, 948 (9th Cir. 1977). Gutierrez walked over to chat with other customers 30 minutes after being shown the pictures by his friend, Cruz. In fact, Mendez testified that Gutierrez was *not* "excited" about what he saw.

Nor are Mendez's statements "present sense impressions." The 30-minute time-gap makes this exception inapplicable. *See* Fed. R. Evid. 803(1) ("A statement describing or explaining an event or condition, made while or immediately after the declarant perceived it.").

Plaintiff also makes an argument not in her Motion—that the "non-public detail" in Gutierrez's statements is admissible for the "non-hearsay purpose" of showing he saw the photos. The hearsay rule is not skirted so easily—Gutierrez's

1    "detail[s]" could have been learned from Cruz or anyone else at the scene, with or

2    without seeing photos, or simply guessed. *Ambrose* is distinguishable because the

3    information there could *only* have come from the limited, specific sources at issue.

4        *Second*, Plaintiff plans to call Weireter to testify that: (1) Firefighter Imbrenda

5    said the crash scene was "crazy"; (2) Imbrenda's girlfriend told her that a group was

6    looking at crash site photos; and (3) Captain Cornell said that he saw Plaintiff's

7    husband's remains in the photos. Plaintiff argues these statements are admissible

8    for the non-hearsay purpose of their effect on the listener. But the effect of these

9    statements on Weireter is irrelevant.

10        Imbrenda's girlfriend's statement is not an "excited utterance." To the

11    contrary, Weireter testified that she got the impression Imbrenda's girlfriend had

12    seen the photos previously. Imbrenda's and Cornell's statements are not party

13    admissions as they were not made on behalf of the County. Cornell's statement is

14    not a "present sense impression" either. He does not describe an event or condition

15    that he just perceived. Nor is Cornell's statement admissible to show his then-

16    existing mental condition under Rule 803(3), as his mental state is irrelevant.

17    **V.    Plaintiff's MIL #5:  Admission of Recordings and Letters**

18        **Plaintiff's Summary:**  Letters sent by LACFD Deputy Chief McCloud to

19    Brian Jordan, Tony Imbrenda, and Arlin Kahan concerning their misconduct contain

20    key admissions that directly undermine Defendants' argument that employees were

21    "just doing their jobs" when they took and shared photos. For example, LACFD

22    concluded in those letters that "[t]here was no legitimate business need for [Jordan]

23    to take photographs of human remains" and Jordan's conduct "only served to appeal

24    to baser instincts and desires for what amounted to visual gossip." **Dkt. 240** **at 10-**

25    **11, 14**. Defendants now argue that the letters are inadmissible under FRE 407 as

26    remedial measures. Defendants did not disclose that objection in the meet-and-

27    confer, so Plaintiff did not anticipate it in her motion. But Plaintiff addressed this

28    issue in the Exhibit Joint Statement. **Dkt. 304** **at 6-7, 20-23, 41-43**; **Dkt. 278** **at 15-**

**17**.  Courts have repeatedly held that (1) FRE 407 protects only the actual remedial measures themselves, such as the actual disciplining of officers; and (2) FRE 407 does *not* protect admissions made in an investigation or analysis of an incident, even if they lead to or support the discipline or other remedial measure or appear in the same document.  *See id.*[2]  The letters' reference to proposed discipline (some of which was not carried out) can be redacted.  But Defendants' statements that their employees acted improperly are admissible admissions, not remedial measures.

Recordings of Sheriff Villanueva's public statements are likewise key party admissions.  For example, he admits his deputies had no reason to photograph the remains, that their conduct was "wildly inappropriate," that the practice of collecting remains photos was widespread in law enforcement, and that LASD's policies were "very deficient."  **Dkt. 240 at 7-10**.  Plaintiff is preparing excerpts of the relevant statements for the exhibit list, and the parties will meet and confer to eliminate or narrow disputes.  But Defendants are wrong that admissions regarding the County's inadequate investigation and discipline are categorically irrelevant.  ***Id.* at 14**; **Dkt. 255 at 19-21**; **Dkt. 281 at 6-8**.  Defendants are also wrong that these statements can only be introduced during the Sheriff's examination so he can be given an opportunity to explain them.  The Rules are explicit that a party admission can be introduced without giving the witness an opportunity to explain it.  *See* FRE 613(b) (requirement "does not apply to an opposing party's statement").  Party admissions are admissible without *any* sponsoring witness when authenticity is undisputed, as is now the case here.  **Dkt. 240 at 16-17**.  And they can be used with any witness.

**Defendants' Summary:** Based on the Court's comments at the July 8, 2022

---

[2] *E.g.*, *Aguilar v. Los Angeles*, 853 F. App'x 92, 95 (9th Cir. 2021) (unpublished); *Rigsbee v. Honolulu*, 2019 WL 1064106, at *2 (D. Haw. Mar. 6, 2019); *Hansen v. Werner Enters.*, 2016 WL 7479349, at *4 (C.D. Cal. May 18, 2016); *Aranda v. McMinnville*, 942 F. Supp. 2d 1096, 1103 (D. Or. 2013); *J.M. v. Milwaukee*, 249 F. Supp. 3d 920, 932 (E.D. Wis. 2017); *In re Chicago Flood Litig.*, 1995 WL 437501, at *5 (N.D. Ill. July 21, 1995).

pretrial conference, Defendants have withdrawn their general objections to the recordings of Sheriff Villanueva.  However, some of the recordings contain news reporting on the crash and its aftermath or include questions about other irrelevant LASD matters, which should be excised.  Questions and answers regarding the status of disciplinary proceedings and policy changes are also irrelevant and should be excised.  *See Nadell v. Las Vegas Metro. Police Dep't*, 268 F.3d 924, 929 (9th Cir. 2001) (failure to discipline as to incident at issue failed to evidence custom or policy for *Monell*); *Gordon v. Cnty. of Orange*, 6 F.4th 961, 974 (9th Cir. 2021) ("subsequent changes to operating procedures is insufficient" for *Monell* claim).

Defendants continue to oppose these recordings being pre-admitted and, instead, believe they should be introduced at trial (if at all) during the Sheriff's examination.  It would be prejudicial to Defendants if these recordings were admitted without a sponsoring witness because Sheriff Villanueva would not be given the opportunity to explain the context and his answers.

Plaintiff also seeks to admit three letters from LACFD informing personnel of its intent to discipline them in response to the Department's internal investigation. These letters are inadmissible because Plaintiff is no longer pursuing a *Monell* theory at trial based on LACFD's failure to investigate and discipline.  *See, e.g., Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008).  Evidence of disciplinary proceedings also poses a significant risk of prejudice because it could cause the jury to conclude that the employee was guilty of wrongdoing merely because their employer disciplined them.  *See, e.g., Maddox v. City of Los Angeles*, 792 F.2d 1408, 1417 (9th Cir. 1986).  Moreover, these letters reflect subsequent remedial measures and are inadmissible under Rule 407.

## VI.  **Defendants' MIL #1:  Non-County Photographs**

**Defendants' Summary:** Plaintiff produced social media posts and private messages from strangers about the crash (Bates labeled VB00000047-93).  None of the social media posts and messages came from the County, and none of the images

1  included can be traced to the County.  Some of the photos are fake or photoshopped.

2  Others are aerial photos—despite there being no allegation that County personnel

3  took or shared any aerial photos.  These exhibits have no connection to the County

4  and are irrelevant and inadmissible.  Plaintiff cannot establish their authenticity.  *See*

5  Fed. R. Evid. 901(a).  And the social media posts and messages are replete with

6  inadmissible hearsay—*e.g.*, "Man I got a actually pic of his body . . . ."

7  (VB00000052).  The danger of undue prejudice from these posts and messages far

8  outweighs any possible probative value.  *See* Fed. R. Evid. 403.

9     Plaintiff plans to call: (1) Bolden to testify that, while she was bartending, a

10  nameless "man with dark hair" claimed to have seen photos of Plaintiff's husband

11  and daughter on the phone of an unidentified "friend in law enforcement"; and (2)

12  Jessica Wells to testify that, while she was bartending, a nameless man who claimed

13  to be a "member of law enforcement in Orange County" showed her photos of the

14  crash that had been sent to him by a colleague.  This testimony consists of multiple

15  levels of inadmissible hearsay.  There is also nothing to tie these supposed photos to

16  the County.  *See* Fed. R. Evid. 402, 403.

17     **Plaintiff's Summary:**  Third party Jessica Wells can testify to what she saw:

18  a man showed her photographs of the crash site while she was bartending.  Third

19  party Jennifer Bolden can explain that a man in a bar accurately described non-

20  public details of the photos to her.  That is admissible circumstantial evidence for

21  the non-hearsay purpose of showing that the man in fact saw photos of the remains.

22  *See Ambrose*, 668 F.3d at 961.  **Dkt. 245** at 27-28.  There is more than enough

23  evidence for the jury to infer that these photos originated with Defendants,

24  especially given Defendants' spoliation.  ***Id.*** **at 20-22**.

25     Evidence that Plaintiff was taunted in social media posts about the photos is

26  relevant to show the harm inflicted on Plaintiff by Defendants' conduct.  Courts

27  have recognized that such taunting is the foreseeable result of the violations at issue

28  here, and Defendants are responsible for that foreseeable injury.  ***Id.*** **at 23-26**.

1  Plaintiff can lay the foundation for those posts.  *Id.* **at 26-27**.

2  **VII.    Defendants' MIL #2:  Adam Bercovici**

3  **Defendants' Summary:** Plaintiff intends to offer her retained police practices

4  expert, Adam Bercovici, to provide the following opinions:

5
6  - That improper taking and sharing of photos of human remains is a problem so pervasive in law enforcement that it was "obvious" to LASD and LACFD that these practices would continue without explicit training;

7
8  - That there was no legitimate purpose for LASD personnel to take photos of the January 26, 2020 helicopter crash site;

9
10  - That LASD violated professional standards by ordering the deletion of all crash site photos to prevent their public dissemination; and

11
12  - That LASD's internal investigation deviated from professional standards.

12  Mr. Bercovici is not qualified to offer these opinions under Rule 702—he is

13  not an expert on LASD or LACFD policies and practices; has never worked for

14  LASD or LACFD; and has never attended the LASD training academy.  Mr.

15  Bercovici has previously been precluded from doing exactly what Plaintiff is

16  seeking to do here—give an improper expert opinion at trial.  *See Lasarte v. Custom*

17  *Performance*, No. BC514465, 2018 WL 4513110, at *1 (Cal. Super. Ct. July 9,

18  2018) (precluding Mr. Bercovici from testifying because he had never worked for

19  the FDA).  Mr. Bercovici's speculative opinions would be prejudicial, confusing,

20  and misleading to the jury.  *See* Fed. R. Evid. 403.[3]

21  Mr. Bercovici's opinion about LASD's internal investigation is also not

22  relevant since Plaintiff waived her failure to adequately investigate and discipline

23  theory under *Monell*.  *See Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008).

24  **Plaintiff's Summary:**  Adam Bercovici is well-qualified to opine on the

25  widespread problem of death photos among law enforcement, the obvious need for

26

27  _____

28  [3] Many of Mr. Bercovici's opinions are also defective for other reasons and would need to be excluded, even if he was qualified to testify.  (Dkt. 249-3 at 13-14.)

training and policies to stop it, the absence of a legitimate purpose for the photos here, and LASD's deviation from standards in how it investigated, disciplined, and destroyed evidence of the misconduct.  He has thirty years of LA law enforcement experience, including extensive experience with accident scenes, officers keeping and sharing death photos, and officer misconduct investigations.  **Dkt. 276 at 4-7, 32-33, 45, 53, 64**.  It doesn't matter that he wasn't employed by LASD, including because of his substantial experience with LASD and other agencies and the similarities between LAPD (where he worked) and LASD.  *Id.* **at 22-25, 45-46, 65**.

Absence of a legitimate purpose for the photos is key to the constitutional violation, and the widespread problem and need for training is key to *Monell* liability.  **Dkt. 276 at 3-4, 30-32, 46-48**.  The inadequacy of Defendants' discipline, investigation, and preservation of evidence are relevant to show (1) Defendants' conclusions that dissemination was limited and contained should be rejected; (2) dissemination was broader than Defendants admit and Plaintiff reasonably fears the photos could resurface; (3) deliberate indifference and tolerated custom; and (4) what inferences to draw from Defendants' spoliation.  *Id.* **at 51-53, 65-67, 72-73**.

Bercovici bases his opinions on facts and experience, not speculation, and he is not opining on witness credibility or subjective state of mind.  *Id.* **at 26-28, 90-91**.

## VIII.  **Defendants' MIL #3:  Job Transfer**

**Defendants' Summary:** A few weeks after the crash, Sheriff Villanueva transferred Captain Vander Horck from the Lost Hills Station to the Men's Central Jail.  Plaintiff seeks to introduce evidence and argument that Captain Vander Horck was demoted/transferred in retaliation for expressing concerns about Sheriff Villanueva's handling of the crash site photos.  That is plainly not true.  Every witness testified that the transfer had nothing to do with the photos.  Captain Vander Horck testified: "No, I don't believe my temporary—whatever—demotion, whatever you want to call it, or my transfer had anything to do with this crash or the photos."  Sheriff Villanueva had lost confidence in Captain Vander Horck because

of how he handled an unrelated investigation into a sexual assault incident in the Malibu area, and that is what led to the transfer. Even if Plaintiff's unfounded retaliation theory were true (it is not), it would still be irrelevant and more prejudicial, confusing, and misleading than probative. *See* Fed. R. Evid. 402, 403.

**Plaintiff's Summary:** Defendants do not seek to exclude evidence that Captain Vander Horck tried to conduct a serious investigation of the misconduct, was thwarted by the Sheriff, and expressed concerns about the Sheriff's highly-irregular inquiry. Instead, Defendants target only evidence that the Sheriff retaliated against Vander Horck for this. **Dkt. 252 at 14-17**. The retaliation evidence is relevant to *Monell* liability (deliberate indifference and custom) (*id.* **at 17-19**); the motive and intent underlying Defendants' spoliation (*id.* **at 19-21**); and rebutting Defendants' assertions that the Sheriff acted altruistically (*id.* **at 21-22**).

## IX.    Defendants' MIL #4:  David Freskos

**Defendants' Summary:** Plaintiff intends to offer her retained digital forensics expert, David J. Freskos, to testify that: (1) the EDRM sets forth "core forensic principles" that apply to all investigations involving digital evidence; (2) LASD's and LACFD's investigations into allegations that personnel improperly took and shared crash site photos "violated fundamental forensic principles" (i.e., the EDRM); (3) Defendants' deletion of crash site photos constitutes spoliation; and (4) The neutral examiner's forensic analysis confirms Defendants' spoliation.

Mr. Fresko's testimony is not admissible. *First*, spoliation is a legal issue for the Court. An expert witness "cannot give an opinion as to [his or] her legal conclusion, i.e., an opinion on an ultimate issue of law." *Hangarter v. Provident Life and Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (citation omitted).

*Second*, Mr. Fresko's opinions based on EDRM standards are not reliable or helpful. The EDRM is not a legal standard by which government investigations are evaluated. And Mr. Fresko's is not qualified to testify to the adequacy of the LASD or LACFD investigations based on the agencies' own standards. Mr. Freskos has

1   admitted that he has no knowledge of their rules or procedures.

2          *Third*, Mr. Freskos has no factual basis to offer his opinion that information

3   was lost because LASD and LACFD did not preserve the relevant electronic

4   devices; and that because personnel deleted crash site photos, it made the forensic

5   examination of the devices more difficult.  Mr. Freskos did not participate in the

6   independent forensic examination by Kroll's Forensic Investigations and

7   Intelligence team.  The proper person to testify about the forensic examination, and

8   what its results mean, is Justin Price, who led Kroll's forensic examination.

9          **Plaintiff's Summary:**  Defendants do not dispute that David Freskos is well-

10  qualified to opine on the technical characteristics of mobile devices and forensic

11  preservation.  **Dkt. 253** at 18-19; **Dkt. 269-1** at 22-25.  Freskos will explain how

12  activity on mobile devices can be traced through an examination of "forensic

13  artifacts"—if the devices are promptly preserved—and he will opine on LASD's

14  drastic deviation from standard preservation protocols.  Freskos will opine on

15  technical forensic principles, not legal issues.  **Dkt. 253** at 24-25.  It does not matter

16  that Freskos has never worked for LASD or LACFD.  *Id.* at 25-26.

17         Freskos is also well-qualified to contextualize the lack of findings by forensic

18  examiner Justin Price.  **Dkt. 253** at 23-24.  Freskos need not have conducted the

19  examination himself to do so, as he does not challenge Price's findings.  He will

20  connect the dots between Defendants' inadequate preservation and the

21  examination's inability to recover any relevant evidence (not even the admitted

22  transfers of the photos).  *Id.* at 23.  Relying on undisputed facts, Mr. Freskos will

23  explain why Defendants' preservation failures resulted in the permanent data loss

24  reflected in Price's findings.  Price cannot provide such context or explain his

25  findings because he is unfamiliar with the underlying facts.  *Id.* at 21-23.

26  **X.     Defendants' MIL #5:  Late Disclosed Documents**

27         Based on the Court's comments at the conference on July 8, 2022, Defendants

28  have withdrawn their Motion *In Limine* No. 5.

1  DATED:  July 13, 2022          WILSON SONSINI GOODRICH & ROSATI

2

3

4                                 By:  _____
                                              */s/ Luis Li*
5                                             LUIS LI

6

7  DATED:  July 13, 2022          OFFICE OF COUNTY COUNSEL

8

9

10                                By:  _____
                                           */s/ Jonathan McCaverty*
11                                         JONATHAN C. MCCAVERTY

12                                Attorneys for Defendant
                                  LOS ANGELES COUNTY SHERIFF'S
13                                DEPARTMENT

14

15

16 DATED:  July 13, 2022          MILLER BARONDESS, LLP

17

18

19                                By:  _____
                                           */s/ Louis Miller*
                                           LOUIS R. MILLER
20

21                                Attorneys for Defendants
                                  COUNTY OF LOS ANGELES, LOS
22                                ANGELES COUNTY FIRE
                                  DEPARTMENT, JOEY CRUZ, RAFAEL
23                                MEJIA, MICHAEL RUSSELL, and
                                  RAUL VERSALES
24

25

26                            ECF CERTIFICATION

27        The filing attorney attests that Defendants' counsel concurs in the content of,

28 and has authorized, this filing.