JONATHAN C. McCAVERTY (State Bar No. 210922)
Principal Deputy County Counsel
jmccaverty@counsel.lacounty.gov
OFFICE OF COUNTY COUNSEL
General Litigation Division
500 West Temple Street, Suite 468
Los Angeles, California 90012
Tel.: (213) 974-1828 / Fax: (213) 626-7446

Attorneys for Defendant
LOS ANGELES COUNTY SHERIFF'S DEPARTMENT

LOUIS R. MILLER (State Bar No. 54141)
smiller@millerbarondess.com
MIRA HASHMALL (State Bar No. 216842)
JASON H. TOKORO (State Bar No. 252345)
CASEY B. SYPEK (State Bar No. 291214)
MILLER BARONDESS, LLP
1999 Avenue of the Stars, Suite 1000
Los Angeles, California 90067
Tel.: (310) 552-4400 / Fax: (310) 552-8400

Attorneys for Defendants
COUNTY OF LOS ANGELES, LOS ANGELES COUNTY FIRE DEPARTMENT,
JOEY CRUZ, RAFAEL MEJIA, MICHAEL RUSSELL and RAUL VERSALES

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| VANESSA BRYANT,<br><br>                 Plaintiff,<br><br>         v.<br><br>COUNTY OF LOS ANGELES, et al.,<br><br>                 Defendants. | **CASE NO. 2:20-cv-09582-JFW-E**<br><br>**DEFENDANTS' OPPOSITION TO CONSOLIDATION OF CASES FOR TRIAL**<br><br>[Filed Concurrently with Declaration of Mira Hashmall]<br><br>Assigned to Hon. John F. Walter and Magistrate Judge Charles F. Eick |

570028.5

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION ................................................................................... 4

II.     LEGAL STANDARD ............................................................................. 5

III.    THE *CHESTER* AND *BRYANT* CASES SHOULD NOT BE
        CONSOLIDATED FOR TRIAL ............................................................. 5

        A.      There Is No Evidence Of Photos Depicting Chester's Loved
                Ones ............................................................................................... 6

        B.      It Would Be Misleading And Prejudicial For The Same Jury To
                Hear Evidence Of Both Bryant's And Chester's Emotional
                Distress .......................................................................................... 9

        C.      The County Will Be Prejudiced If The Jury Imputes Bryant's
                Social Media Evidence And Witnesses To Chester ...................... 11

        D.      Bryant And Chester Have Opposite Positions Regarding
                Evidence Of Their Settlement With The Helicopter Company ........... 12

IV.     CONCLUSION ..................................................................................... 12

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.*,
  1994 WL 16780779 (N.D. Cal. Apr. 19, 1994) ...................................................5

*Arroyo v. Chardon*,
  90 F.R.D. 603 (D.P.R. 1981) ...........................................................................5, 8

*Bowles v. Novartis Pharm. Corp.*,
  2013 WL 663040 (S.D. Ohio Feb. 25, 2013) ...................................................10

*Crocker v. Sky View Christian Acad.*,
  2009 WL 77456 (D. Nev. Jan. 8, 2009) .............................................................9

*Garrity v. Governance Bd. of Cariños Charter Sch.*,
  2020 WL 5074385 (D.N.M. Aug. 27, 2020) ..................................................5, 11

*Lewis v. Jefferson Par. Hosp. Serv. Dist. No. 2, Parish of Jefferson*,
  2013 WL 1880838 (E.D. La. May 3, 2013) ...................................................6, 12

*Malcolm v. Nat'l Gypsum Co.*,
  995 F.2d 346 (2d Cir. 1993) ...............................................................................5

*Marsh v. County of San Diego*,
  680 F.3d 1148 (9th Cir. 2012) ...................................................................4, 6, 8

*McCoy v. Biomet Orthopedics, LLC*,
  2019 WL 6324558 (D. Md. Nov. 25, 2019) ........................................................8

*Michael v. Wyeth, LLC*,
  2011 WL 1527581 (S.D. W. Va. Apr. 20, 2011) .........................................6, 12

*Snyder v. Nationstar Mortg. LLC*,
  2016 WL 3519181 (N.D. Cal. June 28, 2016) ....................................................5

## FEDERAL RULES

Fed. R. Civ. P. 42(a) ...................................................................................................5

## OTHER AUTHORITIES

U.S. Const. amend. XIV ..............................................................................................4

570028.5

3

## MEMORANDUM OF POINTS AND AUTHORITIES

At the July 8, 2022 pretrial conference, the Court ordered the parties to submit briefing on whether the *Bryant* and *Chester* cases should be consolidated for trial. Defendants hereby submit their opposition to consolidation.

## I.   INTRODUCTION

The *Bryant* and *Chester* cases arise from the same tragic incident, but they are two different cases.  Consolidating them for trial would create a risk of jury confusion and risk a fair trial.  The Court has broad discretion to deny consolidation when the benefits are outweighed by the risk of jury confusion and prejudice.

Vanessa Bryant's ("Bryant") and Christopher Chester's ("Chester") cases are materially different.  Chester cannot point to any evidence of photos depicting his loved ones.  Unlike in the *Bryant* case, where witnesses have testified about pictures of Kobe Bryant, no witness has ever testified about seeing a photo depicting Chester's family members.  This is a significant gap in Chester's evidence, making it unlikely he can prove public dissemination and thereby establish a violation of the Fourteenth Amendment under *Marsh*.

Given Kobe Bryant's worldwide recognition, Bryant's case is distinct. Chester should not be permitted to ride Bryant's coattails and benefit from critical evidence that only pertains to *Bryant*.  Chester has shown his propensity to do this in nearly every pretrial filing and again at the July 8 pretrial conference.  When the Court asked whether there is any *evidence* of dissemination of pictures of Chester's family members, Chester's lawyer dissembled.  He conflated the evidence in the two cases and thereby demonstrated the substantial prejudice to the County if the cases are tried together.

As explained below, there are different facts and witnesses in play.  The party who stands to benefit from consolidation is Chester.  Given the celebrity of the *Bryant* case, there is a real risk that the jury will impute evidence regarding Bryant to Chester.  In the interest of fairness, each Plaintiff should have to prove his and her

1    distinct claims and injuries at trial.

2       This is a most unusual case.  Kobe Bryant was a revered icon.  The case

3 brought by his widow, Vanessa Bryant, is highly charged and has already received a

4 great deal of media coverage.  The *Chester* case should be dealt with alone, on its

5 merits, and not bootstrap the *Bryant* case.

6 ## II.  LEGAL STANDARD

7       Federal Rule of Civil Procedure 42(a) permits consolidation of cases that

8 involve a common question of law or fact.  Fed. R. Civ. P. 42(a); *Snyder v.*

9 *Nationstar Mortg. LLC*, 2016 WL 3519181, at *2 (N.D. Cal. June 28, 2016).

10       However, "[e]ven if a common question exists, consolidation is not

11 appropriate where it results in 'inefficiency, inconvenience, or unfair prejudice to a

12 party.'"  *Snyder*, 2016 WL 3519181, at *2 (citation omitted).  *See Malcolm v. Nat'l*

13 *Gypsum Co.*, 995 F.2d 346, 350 (2d Cir. 1993) ("The benefits of efficiency can

14 never be purchased at the cost of fairness.").

15       In deciding whether to consolidate, courts consider various factors, including

16 whether the actions are similar, whether the complexity of the consolidated case will

17 confuse the jury, and whether consolidation would adversely affect the rights of any

18 of the parties.  *Applied Materials, Inc. v. Advanced Semiconductor Materials Am.,*

19 *Inc.*, 1994 WL 16780779, at *1 (N.D. Cal. Apr. 19, 1994).  These factors militate

20 against consolidation in this case.

21 ## III.  THE *CHESTER* AND *BRYANT* CASES SHOULD NOT BE

22 ## CONSOLIDATED FOR TRIAL

23       Where the facts are materially different, courts reject consolidation for trial:

24 *Garrity v. Governance Bd. of Cariños Charter Sch.*, 2020 WL 5074385, at *4

25 (D.N.M. Aug. 27, 2020) (denying consolidation where there was "potential that a

26 jury may impute certain facts from one case to the other"); *Arroyo v. Chardon,* 90

27 F.R.D. 603, 606 (D.P.R. 1981) (denying consolidation where there was "similarity

28 of issues alleged in the complaints and the possibility of different facts in each

1    case"); *Michael v. Wyeth, LLC*, 2011 WL 1527581, at *3 (S.D. W. Va. Apr. 20,

2    2011) (denying consolidation despite similar claims and defendants where

3    differences in factual issues would "create a significant risk of jury confusion and

4    prejudice to defendants"); *Lewis v. Jefferson Par. Hosp. Serv. Dist. No. 2, Parish of*

5    *Jefferson*, 2013 WL 1880838, at *3 (E.D. La. May 3, 2013) (denying consolidation

6    where there was a danger the jury would assume evidence relating to one plaintiff

7    also relates to the other plaintiff).

8            **A.     There Is No Evidence Of Photos Depicting Chester's Loved Ones**

9            To prevail on their *Monell* claims, Plaintiffs Bryant and Chester must each

10   prove an underlying constitutional violation—that photos depicting their loved ones

11   were publicly disseminated.  *Marsh v. County of San Diego*, 680 F.3d 1148, 1153-

12   55 (9th Cir. 2012).  As Chester's attorney conceded at the pretrial conference, "if

13   there are no photographs, . . . there's no Fourteenth Amendment violation."

14   (Declaration of Mira Hashmall ("Hashmall Decl.") Ex. 1 [Tr. at 50:19-21].)

15          Chester likely cannot make this showing.  There is no evidence that any of the

16   photos shown by Deputy Cruz at the bar in Norwalk or by Firefighter Imbrenda at

17   the awards banquet depicted Chester's wife or daughter.  Out of the 40 witnesses

18   who were deposed in these cases, not one could identify Chester's loved ones in any

19   of the photos taken by County personnel.  Moreover, not a single document,

20   including the internal investigations conducted by LASD and LACFD, identifies

21   either of Chester's family members in the photos.

22          At the pretrial conference, the Court asked Chester to point to evidence of

23   photos depicting his loved ones.  In doing so, Chester's attorney conflated the

24   evidence, and it is all but certain he will try to do so in a consolidated trial.

25   Allowing Chester to piggy-back Bryant's case would not be fair to the defense.

26          ***Deputy Cruz's Photos***.  At the pretrial conference, Chester argued that

27   Gutierrez, the bartender who was shown photos by Deputy Cruz, made "vertical"

28   hand gestures up and down his face in the surveillance video to describe a facial

wound, which is an injury that Chester claims only his wife suffered.  (Hashmall Decl. Ex. 1 [Tr. at 48:4-49:9].)  Chester also argued that Gutierrez saw photos containing "parts that are usually inside a human being," and that these must belong to Mrs. Chester.  (*Id*. at 48:17-49:2.)  However, the actual evidence negates these claims.

First, Gutierrez testified at deposition that the only identifiable person in the photos he saw looked like a "man's body" and that "[i]t could have been, like a really dark Mexican or a black person."  (Hashmall Decl. Ex. 2 [Gutierrez Tr. at 22:23-23:1; 32:5-11].)  Both Chesters who died in the crash were white and female.  When asked whether the photos depicted any child or part of a child, Gutierrez said, "No."  (*Id*. at 34:25-35:3.)  This testimony is dispositive.

Second, Sarah Chester was not the only victim to experience lacerations on the head or face.  The autopsy reports prepared by the Coroner's office show that John Altobelli, Kobe Bryant, and Gianna Bryant all suffered lacerations to their heads and faces.  (*See* Tr. Exs. 44-45, 52.)  Consistent with its efforts to avoid any publication of the graphic descriptions of Plaintiffs' deceased family members, the County is not submitting the supporting documents with this briefing but can provide the Court with copies *in camera* upon request.

Third, due to the horrific nature of the crash, Mrs. Chester was also not the "only person" who lost internal organs, as Chester's lawyer contended.  (Hashmall Decl. Ex. 1 [Tr. at 47:18-48:1].)  The Coroner reports confirm that Kobe Bryant, John Altobelli, Alyssa Altobelli, and Christina Mauser all suffered injuries that resulted in the loss of internal organs.  (*See* Tr. Exs. 49-50, 52.)  And obviously, a person cannot be identified by looking at an internal organ (we're surprised Chester would even make that argument).

***Firefighter Imbrenda's Photos.***  At the pretrial conference, Chester claimed that Captain Cornell testified that, at the awards banquet, Imbrenda showed him "a picture of intestines lying in the vegetation," which he claims must have depicted

1    Mrs. Chester.  (Hashmall Decl. Ex. 1 [Tr. at 48:2-4].)  Wrong.

2         At his deposition, Cornell testified that he believed one photo "had what

3    looked like the inner intestines amongst some blades of grass," but that they were

4    "unidentifiable remains."  (Hashmall Decl. Ex. 3 [Cornell Tr. at 55:12-56:1].)

5    Cornell was not able to identify Chester's family members in the photos he saw at

6    the awards banquet, nor did anyone else at the awards banquet suggest that

7    Chester's family members were in Imbrenda's photos.

8         Moreover, any photos taken by Imbrenda or Arlin Kahan were taken the day

9    after the crash ("Day 2").  By Day 2, all identifiable human remains had either been

10   taken off the hill or covered with blankets.  As a result, no photos taken on Day 2

11   could have depicted Chester's family members.  He cannot prove that any such

12   photos constitute a *Marsh* violation.

13        Chester cannot point to any evidence of County photos depicting his loved

14   ones.  If the cases are consolidated for trial, the evidence will get muddied.  There is

15   a danger that the jury will be more inclined to find the County liable for both

16   Plaintiffs' claims despite the defects in Chester's evidence.

17        The Court should not consolidate in these circumstances: *McCoy v. Biomet*

18   *Orthopedics, LLC*, 2019 WL 6324558, at *7-8 (D. Md. Nov. 25, 2019) (denying

19   consolidation of cases because of a risk that "spillover" evidence that was

20   admissible as to one plaintiff but not another may cause the jury to find liability in

21   both cases in a "guilty by association" manner); *Arroyo,* 90 F.R.D. at 605-06.

22        In *Arroyo*, the plaintiffs alleged that they were demoted based on political

23   discrimination.  90 F.R.D. at 605.  Although the same legal standard applied in each

24   case, the court denied consolidation because the cases were based on different

25   evidence.  *Id*.  The court reasoned that consolidation would impair the "jury's

26   function to weigh and consider impartially the evidence presented in each particular

27   case and it may result in prejudice to the parties' right to a fair day in court."  *Id*. at

28   606.  The same is true here.

**B.**     <u>It Would Be Misleading And Prejudicial For The Same Jury To Hear Evidence Of Both Bryant's And Chester's Emotional Distress</u>

Bryant and Chester are each seeking only emotional distress damages.  By their nature, emotional distress damages are individualized and personal, and thus hard to monetize.  *Crocker v. Sky View Christian Acad.*, 2009 WL 77456, at *2 (D. Nev. Jan. 8, 2009) ("[B]ecause emotional suffering is personal and difficult to quantify, damages for emotional anguish likely will be established predominantly through the plaintiffs' testimony concerning the emotional suffering they experienced . . . .").

At trial, Chester and Bryant will each testify about their unique emotional distress.  Tying the two cases together will unfairly magnify and bolster both.  This is already a very sad situation, with great loss of life.  But this case is only about photos.  Separate juries should hear and judge the evidence of emotional distress independently.

***Vanessa Bryant.***  Bryant will testify that she is living in fear that, one day, photographs of her husband and child may appear online, and that she and her three surviving daughters will see them.  (Hashmall Decl. Ex. 4 [Bryant Tr. at 7:14-8:9].)  She will testify that she has been taunted and harassed by third parties and Internet trolls who claim to have pictures of her loved ones' bodies, and she will seek to introduce those messages and social media posts into evidence.  (*See* Tr. Exs. 317-326.)

Bryant also plans to call her celebrity friends to testify about her emotional distress.  These witnesses include: Rob Pelinka, GM of the Lakers, and his wife; Kobe Bryant's sister; Catherine Gasol, the wife of former Laker Pau Gasol; and Monica Arnold, a Grammy-award winning singer and wife of Shannon Brown, Kobe Bryant's former Lakers teammate.  (*See Bryant* Dkt. 292.)

Since she started dating her late husband over 20 years ago, Bryant has also lived in the public eye.  Paparazzi followed them everywhere.  Immediately

1   following the crash, she asked the Sheriff to keep paparazzi away from the site.

2   (Hashmall Decl. Ex. 4 [Bryant Tr. at 18:21-20:13].)  Bryant will present this as

3   evidence in support of her ongoing "fear" of public dissemination at trial.

4       ***Christopher Chester***.  Chester will testify that his emotional distress has

5   manifested as sadness, anger, intermittent insomnia, nightmares, and self-medicating

6   with alcohol.  (Hashmall Decl. ¶ 6, Ex. 5 [Chester Tr. at 40:1-44:9].)  Chester

7   intends to bring only one witness to trial to testify about his distress—his business

8   partner, Paul Westhead.  (*See Chester* Dkt. 208.)

9       Chester also plans to pursue a "fear theory" at trial, but he has no reasonable

10  basis for his fear that photos of his family will be publicly disseminated.  Unlike

11  Bryant, Chester is not a celebrity with millions of social media followers.  He is a

12  private person who avoids the spotlight, and he was not worried about paparazzi in

13  the hours following the death of his loved ones.

14      Chester testified at deposition that he did not like the fact that his daughter's

15  photo had been taken while she was traveling with Kobe Bryant.  (Hashmall Decl. ¶

16  6, Ex. 5 [Chester Tr. at 19:12-23].)  Chester admitted at deposition that he is not

17  aware of any County photos being publicly disseminated via newspaper, television,

18  or Internet.  (*Id.* at 10:17-13:11; 13:21-14:21.)  Chester has never been taunted or

19  harassed online regarding the crash.

20      If these cases are consolidated for trial, it will be difficult for the jury to judge

21  Chester's harm and "fear" as distinct from Bryant's.  Chester will also unfairly reap

22  the benefits of the significant impact Bryant and her celebrity witnesses will have on

23  this case, even though Bryant's emotional distress is wholly distinct from and

24  irrelevant to Chester's damages.  Due to the risk of prejudice and confusion, these

25  cases should not be consolidated.  *See Bowles v. Novartis Pharm. Corp.*, 2013 WL

26  663040, at *2 (S.D. Ohio Feb. 25, 2013) (denying consolidation because

27  "individualized questions predominate").

28

**C.** **The County Will Be Prejudiced If The Jury Imputes Bryant's Social Media Evidence And Witnesses To Chester**

Bryant intends to (1) offer at trial documents such as social media posts, private messages, and comments by third-party strangers about the crash; and (2) bring two third-party witnesses, Jennifer Bolden and Jessica Wells, who will testify that other strangers said they have seen crash site photos from "law enforcement."  Bryant contends this evidence is relevant to "demonstrate the full scope of dissemination of the photos that Defendants took and shared, and the full scope of the harm inflicted on Ms. Bryant."  (*Bryant* Dkt. 245 at 19.)

For example, when Bryant was asked at deposition whether she had ever seen photos of her loved ones taken by the County, she testified that she had seen one photo posted by a stranger on Twitter that purported to include her husband's body.  While Bryant has no evidence that the photo came from the County, she plans to offer this Twitter post as evidence at trial.  (Tr. Ex. 318.)

Chester, on the other hand, cannot point to any evidence of online postings or taunts from strangers on the Internet.  In fact, Chester withdrew all of these trial exhibits.  (Hashmall Decl. Ex. 6.)  He is not going to call Bolden and Wells at trial. He has never seen the photos in question nor been sent photos from third parties. When he was asked at deposition whether he is aware of any County photos of his wife or daughter posted online, his unequivocal response was "no."  (*Id.* Ex. 5 [Chester Tr. at 13:12-14:12].)  Chester is not aware of a single photo from the County being posted online.

If there is consolidation, the *Bryant* evidence will spill over into Chester's case even though it is wholly irrelevant to Chester.  None of the social media posts, private messages, or comments relate to Chester.  Chester has never received social media attention like Bryant.  Nonetheless, there's a real risk the jury will impute Bryant's evidence to Chester.  This, too, weighs against consolidation.  *See Garrity*, 2020 WL 5074385, at *3-4 (denying consolidation despite shared questions of law

1  and fact because substantive law at issue hinged on prejudicial, fact-specific
2  inquiries).

3  **D.**   **Bryant And Chester Have Opposite Positions Regarding Evidence**
4  **Of Their Settlement With The Helicopter Company**

5      The County intends to introduce at trial evidence relating to the fact that both
6  Chester and Bryant filed a separate lawsuit against the helicopter company over the
7  deaths of their loved ones and settled that lawsuit.  Without this evidence, the jury
8  may infer that the County is responsible for the crash itself and for Plaintiffs'
9  emotional distress stemming from the loss of their loved ones.

10     Bryant moved *in limine* to exclude this evidence; Chester did not.  (*See*
11  *Bryant* Dkt. 237.)  That means that if the Court consolidates trial and grants Bryant's
12  motion *in limine*, the County would be able to bring in evidence regarding Chester's
13  settlement but not Bryant's.  That will confuse the jury.  The jury could reasonably
14  infer that Chester filed a lawsuit against the helicopter company, but Bryant did not.
15  That would be inaccurate.

16     In that scenario, a jury may be more inclined to find for Bryant with an
17  excessive award if it believes that she was never compensated by the helicopter
18  company that, in fact, caused the crash.  This weighs against consolidation.  *See*
19  *Lewis*, 2013 WL 1880838, at *3; *Michael*, 2011 WL 1527581, at *3.

20  **IV.**   **CONCLUSION**

21     For the foregoing reasons, Defendants request that the Court not consolidate
22  the *Bryant* and *Chester* cases for trial.

23

24

25

26

27

28

1    DATED:  July 13, 2022                Respectfully Submitted,

2                                         MILLER BARONDESS, LLP

3

4                                         By:        */s/ Mira Hashmall*
                                          _____
5                                               MIRA HASHMALL
                                                Attorneys for Defendants
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28