LUIS LI (State Bar No. 156081)
Luis.Li@wsgr.com
ERIC TUTTLE (State Bar No. 248440)
Eric.Tuttle@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
633 West Fifth Street, Suite 1550
Los Angeles, California 90071
Telephone:   (323) 210-2900
Facsimile:    (866) 974-7329

CRAIG JENNINGS LAVOIE (State Bar No. 293079)
Craig.Lavoie@mto.com
JENNIFER L. BRYANT (State Bar No. 293371)
Jennifer.Bryant@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:   (213) 683-9100
Facsimile:    (213) 687-3702

Attorneys for Plaintiff Vanessa Bryant

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| VANESSA BRYANT,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF LOS ANGELES, et al.,<br><br>Defendants. | Case No. 2:20-cv-09582-JFW-E<br><br>**PLAINTIFF'S BRIEF IN SUPPORT OF CONSOLIDATING RELATED CASES FOR TRIAL**<br><br>Judge:          Hon. John F. Walter<br>Courtroom:   7A<br><br>Pretrial Conference: None Set<br><br>Trial Date: None Set |

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES............................................ 1

I.    INTRODUCTION................................................................................... 1

II.   BACKGROUND .................................................................................... 2

III.  ARGUMENT ......................................................................................... 4

    A.   The Court Has Discretion to Consolidate Cases Presenting At Least One "Common Question" for a Single Trial................................. 4

    B.   *Bryant* and *Chester* Cases Involve Numerous Common Questions ................................................................................................ 5

    C.   Consolidation Will Promote Efficiency, Reduce Unnecessary Costs, and Eliminate the Risk of Inconsistent Judgments. ..................... 7

    D.   Consolidation Will Not Prejudice Defendants...................................... 10

        1.   Any Risk of Spillover Evidence Can be Addressed with Jury Instructions and Verdict Forms. .......................................... 10

        2.   The Existence of Independent Damages Claims Does Not Prejudice Defendants................................................................... 12

        3.   Questions About the Admissibility of Plaintiffs' Other Lawsuits Do Not Prejudice Defendants.......................................... 13

IV.   CONCLUSION ..................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Arroyo v. Chardon,*
90 F.R.D. 603 (D.P.R. 1981) ................................................................ 11

*BD ex rel. Jean Doe v. DeBuono,*
193 F.R.D. 117 (S.D.N.Y. 2000) ................................................ 7, 10, 13

*Blount v. Bos. Sci. Corp.,*
2019 WL 3943872 (E.D. Cal. Aug. 21, 2019) .................................... 10

*Derrick Through Tina v. Glen Mills Schs.,*
2019 WL 7019633 (E.D. Pa. Dec. 19, 2019) ........................................ 9

*Dusky v. Bellasaire Invs.,*
2007 WL 4403985 (C.D. Cal. Dec. 4, 2007) ......................................... 7

*E.E.O.C. v. HBE Corp.,*
135 F.3d 543 (8th Cir. 1998) ............................................................ 7, 8

*Herd v. Asarco Inc.,*
2003 WL 25847423 (N.D. Okla. May 28, 2003) ................................. 13

*Ingram v. Cnty. of Camden,*
2019 WL 231759 (D.N.J. Jan. 16, 2019) .............................................. 9

*Invs. Rsch. Co. v. U.S. Dist. Ct.,*
877 F.2d 777 (9th Cir. 1989) ............................................................... 5

*Jackson v. Barnes,*
749 F.3d 755 (9th Cir. 2014) ............................................................... 6

*Kong Meng Xiong v. City of Merced,*
2013 WL 5493388 (E.D. Cal. Oct. 1, 2013) ......................................... 9

*Lewis v. City of Fresno,*
2009 WL 1948918 (E.D. Cal. July 6, 2009) ....................................... 10

*Lewis v. Jefferson Par. Hosp. Serv. Dist. No. 2, Par. of Jefferson,*
2013 WL 1880838 (E.D. La. May 3, 2013) ........................................ 12

*Little v. Pfizer, Inc.,*
2014 WL 1569425 (N.D. Cal. Apr. 18, 2014) ...................................... 7

*Lowery v. Great Lakes Dredge & Dock Co.,*
2001 WL 818548 (E.D. Pa. July 18, 2001) ........................................ 13

*Marsh v. Cnty. of San Diego,*
680 F.3d 1148 (9th Cir. 2012) ............................................................. 5

*McCoy v. Biomet Orthopedics, LLC,*
2019 WL 6324558 (D. Md. Nov. 25, 2019) .................................................. 12

*Michael v. Wyeth, LLC,*
2011 WL 1527581 (S.D. W. Va. Apr. 20, 2011) ........................................... 12

*Miller v. Ventro Corp.,*
2001 WL 34497752 (N.D. Cal. Nov. 28, 2001) .............................................. 7

*Moore v. AEP MEMCO LLC,*
2008 WL 3187972 (E.D. La. Aug. 5, 2008) .................................................. 13

*Reeves v. Sanderson Plumbing Prods., Inc.,*
530 U.S. 133 (2000) ....................................................................................... 7

*Snyder v. Nationstar Mortg. LLC,*
2016 WL 3519181 (N.D. Cal. June 28, 2016) ........................................... 5, 7

*Tsao v. Desert Palace, Inc.,*
698 F.3d 1128 (9th Cir. 2012) ....................................................................... 6

*United States v. Redwood,*
2017 WL 85445 (N.D. Ill. Jan. 10, 2017) ...................................................... 8

**STATUTES**

42 U.S.C. § 1983 ................................................................................. 3, 6, 9

**RULES**

Fed. R. Civ. P. 42(a) ................................................................................... 4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff Vanessa Bryant files this brief in response to the Court's order for briefing on whether the *Bryant* and *Chester* cases should be consolidated for trial. Mrs. Bryant supports consolidation because a single trial would promote efficiency, reduce costs for all involved, and reduce the risk of inconsistent verdicts.

## I.   INTRODUCTION

*Bryant* and *Chester* overlap substantially in both the legal questions involved and the factual questions that jurors must resolve to reach a verdict.  Both cases arise from the same helicopter crash.  Both challenge the same actions by County personnel—namely, their taking and sharing of photos depicting human remains at the crash site for no legitimate purpose.  Both rely on the same *Monell* theories for holding the County liable.  And both present common questions of credibility and spoliation that go to the heart of both adjudications.  In short, as Defendants themselves once stipulated in this case before changing their position, these cases "concern common questions of law and fact," and "should be consolidated" to preserve "party and judicial resources." (*Bryant* Dkt. 71 at 3 ¶ 2.)

Consolidation will avoid unnecessary costs and duplication.  A substantial amount of common evidence will be presented at trial in both *Bryant* and *Chester*. Fifty-two common witnesses have been identified as trial witnesses in both cases.  If the cases are not consolidated, many or all of these witnesses will need to testify twice about the same events.  This redundancy would serve no useful purpose.  It would only increase costs, create a risk of inconsistent judgments, and unnecessarily burden the Court, jurors, witnesses, and the parties.

By contrast, resolving *Bryant* and *Chester* in a single trial would not prejudice any party.  Although Defendants suggest that a consolidated trial would allow Mr. Chester to benefit unfairly from Mrs. Bryant's merits evidence, only a small portion of the merits evidence Mrs. Bryant will present at trial is admissible only as to her. Given the substantial overlap in the cases, almost all the evidence that Mrs. Bryant

- 1 -

will present would be equally admissible in a trial involving only Mr. Chester. This common evidence includes testimony and documents describing the condition of the crash site, the actions of first responders and the people to whom they sent photos, the County's awareness of the risk of death photos, the adequacy of County policies and training, the County's deliberate indifference and longstanding practices, and the like. Any risk of confusion caused by the limited amount of *Bryant*-only evidence is easily addressed through appropriate jury instructions and verdict forms.

Defendants suggest that allowing Mrs. Bryant and Mr. Chester to present their damages evidence in the same trial will confuse the jury. But courts routinely consolidate cases where plaintiffs pursue independent damage claims. Defendants offer nothing beyond speculation about the impact of Mrs. Bryant's celebrity to suggest that the risk they foresee cannot be resolved through jury instructions that direct jurors to consider each plaintiff's damages independently.

Finally, Defendants suggest the possibility of confusion related to the admissibility of prior lawsuits filed by Mrs. Bryant and Mr. Chester, but that too is a red herring. Plaintiff anticipates that the Court will issue consistent rulings in *Bryant* and *Chester* on the common legal issue of whether the lawsuits are admissible, whether by ruling on a motion in limine or on objections raised at trial.

## II.   **BACKGROUND**

The facts of *Bryant* and *Chester* are well known to the Court and will be recited only briefly here. Both cases arise out of the actions of the Los Angeles Sheriff's Department ("LASD") and Los Angeles Fire Department ("LAFD") following a helicopter crash on January 26, 2020 that killed nine people. Among the victims were two of Plaintiff Vanessa Bryant's family members and two family members of Christopher Chester, plaintiff in *Chester*. Responding personnel from LASD and LAFD took graphic close-up photos of human remains strewn across the crash site, then shared those photos indiscriminately, both within and beyond their departments. At least eleven LASD personnel and a dozen firefighters shared the

- 2 -

photos within 24 hours of the crash.  In the following weeks, one LASD deputy flaunted photos of remains at a bar, another texted photos to a group of video game buddies, and LAFD personnel displayed photos at an awards gala.

When details of this misconduct began to emerge, LASD and LAFD took steps to prevent Mrs. Bryant and Mr. Chester from learning the full scope of their misconduct.  After a citizen complained of a public display he witnessed at a bar, LASD immediately began deleting evidence of the crash site photos at the direction of Sheriff Alexander Villanueva.  LAFD followed suit when a fire captain orchestrated a mass-deletion campaign which LAFD itself has characterized as a "primarily self-serving" "attempt to cover up [the captain's] role in the reported misuse of the photos."  Deletions continued after litigation began, with at least ten witnesses who are known to have possessed photos of remains from the crash site wiping or replacing their phones before they could be forensically examined.  None of the other devices these witnesses might possess (computers, laptops, iPads, other phones, etc.) have ever been examined.  Nor has any examination reached all of their iCloud or other online cloud storage systems.

Based on these actions, Mrs. Bryant and Mr. Chester both assert a cause of action against defendants LASD, LAFD, and Los Angeles County under 42 U.S.C. section 1983.  Both allege that LASD and LAFD personnel's taking and dissemination of photos violated their constitutional rights to control the remains and death images of their deceased loved ones.  This common federal cause of action will be the subject of the first phase of trial conducted in both cases, with plaintiffs' related state-law claims to be addressed following that first phase. (Declaration of Craig Lavoie ("Lavoie Decl.") Ex. A at 57:24-25.)

The Court previously consolidated *Bryant* and *Chester* for purposes of discovery, reserving for a later date a decision on whether to consolidate for trial. (*Bryant* Dkt. 91.)  Although Defendants now oppose a consolidated trial, they previously stipulated that a consolidated trial would be appropriate under the facts at

- 3 -

hand.  Indeed, before their about-face, Defendants advocated for an all-purpose consolidation and threatened motion practice if they did not get their way.

In March 2021, Defendants demanded that Mrs. Bryant and Mr. Chester stipulate to consolidation and stated "[i]f not, Defendants intend to file a motion to consolidate the three cases." (Lavoie Decl. Ex. B at 1.)  Plaintiffs agreed to a Stipulation to Consolidate Related Actions, which the parties filed in April 2021. (*Bryant* Dkt. 71.)  In the Stipulation, all parties—including Defendants—agreed that it would be appropriate and desirable to consolidate *Bryant* and *Chester* for all purposes given the cases' extensive factual and legal overlap:

> *Bryant*, *Mauser*, and *Chester* all concern the alleged taking and sharing
> of photographs of the remains of Plaintiffs' family members by
> Sheriff's Department and Fire Department personnel following a
> helicopter crash in Calabasas, California on January 26, 2020. . . .  The
> [cases] concern common questions of law and fact, and the Parties
> believe that party and judicial resources will be saved by consolidating
> the actions pursuant to Federal Rule of Civil Procedure 42(a).
> Plaintiffs and Defendants agree that the [cases] should be consolidated
> and, following meet and confer, jointly propose certain terms of the
> consolidation for the Court's consideration.

(*Id.* at 3 ¶ 2.)

## III.  ARGUMENT

### A.  The Court Has Discretion to Consolidate Cases Presenting At Least One "Common Question" for a Single Trial.

Federal Rule of Civil Procedure 42(a) governs consolidation.  It states that if "actions before the court involve a common question of law or fact" then "the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay."  Fed. R. Civ. P. 42(a).  Rule 42(a) vests courts with "broad discretion under

1  this rule to consolidate cases pending in the same district." *Invs. Rsch. Co. v. U.S.*

2  *Dist. Ct.*, 877 F.2d 777, 777 (9th Cir. 1989).

3      In exercising that discretion, courts balance the efficiencies to be gained by

4  consolidation against the risk of prejudice to the parties.  Specifically, a court

5  "weighs the saving of time and effort consolidation would produce against any

6  inconvenience, delay, or expense that it would cause." *Snyder v. Nationstar Mortg.*

7  *LLC*, 2016 WL 3519181, at *2 (N.D. Cal. June 28, 2016) (citation omitted).

8      **B.     *Bryant* and *Chester* Cases Involve Numerous Common Questions.**

9      Defendants do not dispute that *Bryant* and *Chester* satisfy the sole legal

10  requirement for consolidation: the presence of at least one common question of law

11  or fact.  Defendants have previously stipulated that the cases "concern common

12  questions of law and fact." (*Bryant* Dkt. 71 at 3 ¶ 2.)  And correctly so.

13      Both cases center on the taking and sharing of photos of human remains at the

14  helicopter crash by LASD and LAFD personnel.  Both present a single cause of

15  action against the same Defendants alleging that such actions violated the plaintiffs'

16  right to control the remains and death images of their loved ones. *See Marsh v.*

17  *Cnty. of San Diego*, 680 F.3d 1148, 1154 (9th Cir. 2012).

18      This constitutional claim raises legal questions applicable to both cases, such

19  as the proper interpretation of *Marsh*—an issue the parties have briefed extensively

20  which affects jury instructions, verdict forms, and other matters for trial in both

21  cases.  (*See*, *e.g.*, *Bryant* Dkt. 299 at 39-48 (briefing regarding jury instruction).)

22      *Bryant* and *Chester* also present numerous common questions of fact.  In both

23  cases, jurors must determine whether LASD and LAFD personnel photographed

24  human remains, the contents of those photos, their purpose for taking them, the

25  extent of the dissemination, and—ultimately—whether the conduct of LASD and

26  LAFD personnel "offend[s] the community's sense of fair play and decency."

27  *Marsh*, 680 F.3d at 1154 (citation omitted).  Such questions go to the heart of both

28  plaintiffs' claims.  Given that both cases involve photos taken by the same

individuals at the same crash (and since deleted through Defendants' spoliation), the evidence that answers them will be virtually identical in both cases.

Plaintiffs' *Monell* theories present additional commonalities.  Because both plaintiffs assert section 1983 claims against government entities, jurors will be asked whether violations resulted from either (1) a policy of inaction in the form of a deliberately-indifferent failure to adopt or enforce a policy on death images or adequately train employees; or (2) a longstanding custom or practice of taking and sharing improper death images.  *See, e.g.*, *Jackson v. Barnes*, 749 F.3d 755, 763 (9th Cir. 2014); *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143-44 (9th Cir. 2012); 42 U.S.C. § 1983.  This inquiry will turn on questions about Defendants' awareness of the risk of their personnel taking and sharing death photos and their response to that risk, including their policies, training, investigation, and discipline.  Those questions are equally important to both cases' resolution.

The full scope of dissemination presents another common issue.  Throughout this litigation, Defendants have repeatedly tried to benefit from their spoliation of evidence by asserting that no photos exist beyond those that their employees have admitted.[1]  That assertion will play a prominent role in Defendants' trial presentation in *Bryant* and in *Chester*.  To address it, the plaintiffs in both cases will need to introduce cell phone records, statements by third-party witnesses, prior inconsistent statements by Defendants' witnesses, proof of intentional destruction of evidence, and other evidence that suggests that the wrongdoing was more pervasive than acknowledged.  In both cases, witness credibility will be key because "the factfinder is entitled to consider a party's dishonesty about a material fact as 'affirmative evidence of guilt.'"  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530

---

[1] Defendants make a version of the same argument in their brief requesting de-consolidation for trial, arguing in effect (and contrary to the evidence) that because no defense witness admitted taking photos of the *Chester* plaintiff's loved ones, *Chester* lacks merit and should not be tried together with *Bryant*.

U.S. 133, 134, 147 (2000).  Also critical to both cases will be the Court's instructions and rulings related to spoliation, and the common evidence that the parties will elicit on Defendants' destruction of evidence and the reasons for it.  This evidence of the full scope of the misconduct—and whether jurors believe or disbelieve Defendants' present assertions about whether their photos depicted the remains of plaintiffs' loved ones and how broadly such photos were disseminated—will play a central role in both cases.

### C.   Consolidation Will Promote Efficiency, Reduce Unnecessary Costs, and Eliminate the Risk of Inconsistent Judgments.

Because common questions abound, the Court should consolidate *Bryant* and *Chester* for trial if the resulting benefits outweigh any prejudice.  *Snyder*, 2016 WL 3519181, at *2.  Courts have found consolidation appropriate when it would "avoid the unnecessary costs or delays that would ensue from proceeding separately with claims or issues sharing common aspects of law or fact."  *Miller v. Ventro Corp.*, 2001 WL 34497752, at *2 (N.D. Cal. Nov. 28, 2001); *Little v. Pfizer, Inc.*, 2014 WL 1569425, at *2 (N.D. Cal. Apr. 18, 2014) (avoidance of adjudication of same questions in multiple cases promotes efficiency).  Courts have also consolidated cases to avoid the risk of inconsistent adjudication.  *See E.E.O.C. v. HBE Corp.*, 135 F.3d 543, 551 (8th Cir. 1998); *Dusky v. Bellasaire Invs.*, 2007 WL 4403985, at *1 (C.D. Cal. Dec. 4, 2007) (noting goal of "avoid[ing] substantial danger of inconsistent adjudications.").  Both considerations favor consolidation here.

First, consolidation will avoid unnecessary costs for all involved by eliminating the need for duplicative evidentiary presentations.  Given the degree of factual and legal overlap, much of the evidence that will be presented at trial in *Bryant* will also be presented in *Chester*, and vice versa.  *See BD ex rel. Jean Doe v. DeBuono*, 193 F.R.D. 117, 141 (S.D.N.Y. 2000) (consolidating two *Monell* cases when nearly all the plaintiffs' witnesses other than damages witnesses would testify in both cases).

- 7 -

1    The trial witness lists filed in both cases illustrate the extent of the overlap.

2  The *Bryant* list identifies 57 witnesses; *Chester* identifies 54.  (*Bryant* Dkt. 300;

3  *Chester* Dkt. 212.)  Of those, only seven witnesses appear on the list for one case

4  but not the other,[2] leaving 52 (including four experts) who could be called at trial in

5  both cases.  These witnesses will offer testimony on a range of issues relevant to

6  both *Bryant* and *Chester*, including: the condition of the crash site and of human

7  remains; the actions of LASD and LAFD personnel at the crash site; the taking and

8  sharing of crash site photos; the subsequent deletion of evidence of photo-taking and

9  sharing by LASD and LAFD personnel; the risk of improper death photos inherent

10  in Defendants' operations and widespread practices related to such photos; and

11  Defendants' responses to those risks and practices, including their policies, training,

12  investigation, and discipline.

13    Consolidation will ensure that these witnesses testify only once in a single

14  trial.  This will streamline proceedings and avoid imposing on the Court, the jurors,

15  and dozens of witnesses the burden of conducting two trials on similar evidence.

16  *See* *HBE*, 135 F.3d at 551 (affirming district court's decision to consolidate cases

17  for trial to "avoid the inefficiency of separate trials involving related parties,

18  witnesses, and evidence").  Avoiding duplicative trials will be particularly important

19  to those witnesses who will testify about traumatic or painful events—*e.g.*, viewing

20  human remains—for whom testimony will entail not only the typical inconvenience

21  of appearing in court but also the distress of reliving the underlying experience.  *See*

22  *United States v. Redwood*, 2017 WL 85445, at *4 (N.D. Ill. Jan. 10, 2017) (finding

23  in a request to bifurcate that a single trial would be preferable because it would

24  avoid causing victim "the stress of testifying twice"); *Derrick Through Tina v. Glen*

25

26  _____

[2] The trial witnesses identified in *Bryant* but not *Chester* are Catherine Gasol, Rob
27  Pelinka, Kristin Pelinka, Vanessa Bryant, and Sharia Washington.  The *Chester*-only
    witness are Christopher Chester and Paul Westhead.
28

1   *Mills Schs*., 2019 WL 7019633, at \*19 (E.D. Pa. Dec. 19, 2019) (denying motion to

2   sever claims when "[d]uplication of trials thus would be inefficient and could

3   unnecessarily expose the plaintiffs, who are minors, to additional trauma").

4      Consolidation will also save costs and legal fees for the parties.  And because

5   the entity Defendants are public entities, whose trial defense is funded by the

6   taxpayers, the public purse will likewise benefit.  *See Ingram v. Cnty. of Camden,*

7   2019 WL 231759, at \*3 (D.N.J. Jan. 16, 2019) (noting that savings to public purse

8   favored consolidation of multiple section 1983 cases involving the same incident).

9      Second, consolidation will eliminate the risk of inconsistent adjudications.

10   Absent consolidation, jurors in *Bryant* and *Chester* could give inconsistent answers

11   to the questions that define both cases.  For instance, jurors could find Defendants

12   deliberately indifferent to the risk of improper death photos in one case but not in

13   the other.  Such outcomes would create confusion and prejudice the parties.  *See*

14   *Kong Meng Xiong v. City of Merced*, 2013 WL 5493388, at \*7 (E.D. Cal. Oct. 1,

15   2013) (consolidation due to "risk of inconsistent judgments if the cases proceed with

16   dispositive motions or trials in an uncoordinated manner").

17      Courts in this Circuit and elsewhere routinely consolidate cases for trial under

18   similar circumstances.  When multiple plaintiffs assert section 1983 claims against

19   the same municipal defendants based on the same government actions or policies,

20   efficiency and consistency typically counsel for resolving the cases in a single trial.

21   *See Ingram*, 2019 WL 231759, at \*3 (consolidating two section 1983 actions

22   brought by plaintiffs who were allegedly harmed in the same incident with police

23   because consolidation would result in "significant time and expense saved by the

24   parties, the Court, and the public purse"); *Kong*, 2013 WL 5493388, at \*4

25   (consolidating *Monell* cases brought by two plaintiffs who were injured in the same

26   police shooting); *DeBuono*, 193 F.R.D. at 141 (consolidating *Monell* cases brought

27   against county by children with autism when the claims arose from the same county

28   policies).  The same is true here.

**D.  Consolidation Will Not Prejudice Defendants.**

By contrast, trying *Bryant* and *Chester* in a single trial will not prejudice any party.  Defendants' arguments to the contrary are unavailing.

**1.  Any Risk of Spillover Evidence Can be Addressed with Jury Instructions and Verdict Forms.**

Defendants argue that because (in their view) Mrs. Bryant has better evidence that the crash site photos depicted her loved ones' remains than Mr. Chester, Defendants would be prejudiced by trying the cases together.  (*Bryant* Dkt. 319 at 6-8.)  But, consolidated or not, Defendants will have the opportunity at trial to elicit testimony and present evidence about the contents of the photos taken by LASD and LAFD personnel.  If Defendants believe that evidence defeats Mr. Chester's claim that the photos depicted his loved ones, they can argue that point to the jury.

Defendants real concern appears to be that jurors might improperly "impute" Mrs. Bryant's merits evidence to Mr. Chester—presumably by considering evidence that is admissible only as to Mrs. Bryant in its evaluation of Mr. Chester's claims.  (*Bryant* Dkt. 319 at 11).  But any such risk is adequately addressed through jury instructions and verdict forms that make clear that each plaintiff must each prove their claim independently.  *See Blount v. Bos. Sci. Corp*., 2019 WL 3943872, at \*4 (E.D. Cal. Aug. 21, 2019) (finding consolidation appropriate and explaining that "any danger that is present can be sufficiently alleviated through jury instructions and the trial process"); *Lewis v. City of Fresno*, 2009 WL 1948918, at \*1 (E.D. Cal. July 6, 2009) ("[T]he risks of prejudice and confusion" from consolidation "may be reduced by the use of cautionary instructions to the jury and verdict sheets outlining the claims of each plaintiff" (citation omitted)).  Armed with such instructions, jurors should have no difficulty considering each plaintiff's case on its own merits.

This is particularly true given that the amount of merits evidence that is admissible in *Bryant* but not in *Chester* is relatively limited.  Defendants identify just two such categories of evidence (*see Bryant* Dkt. 319 at 11)—and even that

figure is overstated.  First, Defendants argue that Mrs. Bryant alone will call third parties Bolden and Wells to testify about public displays of pictures depicting the crash site.  (*Id.*)  In fact, both witnesses also appear on the *Chester* witness list and may testify in the *Chester* trial.  (*Chester* Dkt. 212 at 9, 38.)  Their testimony—for instance, Well's testimony that she saw ground-level photos of the accident—is as relevant to the extent of dissemination in *Chester* as it is in *Bryant*.  (*Bryant* Dkt. 300 at 42 (summary of Wells's anticipated testimony); *Chester* Dkt. 212 at 38 (same).)  So there is no risk that a consolidated trial will expose jurors in *Chester* to testimony from Bolden and Wells that could not have been admitted without consolidation.  Moreover, Defendants have a pending motion in limine to exclude these witnesses, so it is unclear whether they will even testify in the *Bryant* case.

This leaves only Defendants' second category of spillover evidence—namely, social media messages directed to Mrs. Bryant by people who claim to have seen her husband's remains.  (*Bryant* Dkt. 319 at 11.)  Such evidence is unlikely to confuse.  By their very nature, posts addressed to Mrs. Bryant that specifically reference Mrs. Bryant's deceased husband obviously relate only to Mrs. Bryant's claims and not Mr. Chester's.  Further, this evidence is only a small portion of Mrs. Bryant's overall trial presentation.  The relative prevalence of evidence that is admissible in both cases reduces the risk that jurors will misuse the limited *Bryant*-specific evidence in evaluating the *Chester* claims.  And, again, Defendants have a pending motion in limine to exclude this evidence from the *Bryant* case.

Defendants' cases do not require a different result.  In *Arroyo v. Chardon*, 90 F.R.D. 603, 604-06 (D.P.R. 1981), the court declined to consolidate nine cases in which plaintiffs alleged political discrimination against a defendant because each case would require particularized proof of discriminatory conduct and jurors might confuse the incidents.  Nothing similar exist here, where a consolidated trial would involve only two plaintiffs, not nine, and all the alleged misconduct arises from a single crash and common misconduct by numerous officers taking and sharing

photos of the victims' remains.  Under these circumstances, consolidation is far less likely to confuse than trying nine discrimination cases simultaneously.[3]  Deciding as to two plaintiffs whether the photos taken at the crash site depicted their loved ones is much simpler than evaluating the merits of nine adverse employment actions.

In *McCoy v. Biomet Orthopedics, LLC*, 2019 WL 6324558 (D. Md. Nov. 25, 2019), the court denied consolidation of two product liability actions brought by plaintiffs who were implanted with different medical devices based on different designs and accompanied by different warnings.  *Id.* at *7.  The court cited both the lack of "overlap" in the plaintiffs' evidence and the risk of "'spillover evidence'— *i.e.*, evidence that is admissible as to some but not other plaintiffs."  *Id.* at *7-8. Here, by contrast, *Bryant* and *Chester* involve a single incident and turn on similar evidence.  Evidence on such issues as who took photos at the helicopter crash, what the photos depicted, and to whom they were disseminated is plainly admissible as to both Mrs. Bryant and Mr. Chester.  So too is evidence on spoliation and Defendants' policies and practices.  Thus, unlike in *McCoy*, the legal and factual issues overlap substantially, and there is little risk of spillover.

**2.    The Existence of Independent Damages Claims Does Not Prejudice Defendants.**

Defendants also argue that allowing Mrs. Bryant and Mr. Chester to present evidence of their emotional distress in a consolidated trial will "magnify and bolster" both plaintiffs' damages.  (*Bryant* Dkt. 319 at 9.)  Yet they provide no

---

[3] Other cases cited by Defendants are distinguishable for the same reason.  *See Michael v. Wyeth, LLC*, 2011 WL 1527581, at *2 (S.D. W. Va. Apr. 20, 2011) (listing seven distinctions between product liability plaintiffs and concluding that individualized issues preclude consolidation); *Lewis v. Jefferson Par. Hosp. Serv. Dist. No. 2, Par. of Jefferson*, 2013 WL 1880838, at *3 (E.D. La. May 3, 2013) (denying consolidation of multiple employment discrimination cases when each would require individualized proof regarding employment history).

reason to believe this will occur other than the unremarkable observation that Mrs. Bryant is a public figure while Mr. Chester is not.  (*Id.* at 9-10.)

Courts consolidate related cases even when the plaintiffs seek independent damages.  *See Moore v. AEP MEMCO LLC*, 2008 WL 3187972, at *5 (E.D. La. Aug. 5, 2008) (denying motion to de-consolidate even where "plaintiffs' damages claims are unique"); *Lowery v. Great Lakes Dredge & Dock Co.*, 2001 WL 818548, at *1 (E.D. Pa. July 18, 2001) (ordering consolidation even where moving party "concede[d] that the facts and law are somewhat unique to each plaintiff" on the issue of damages); *DeBuono*, 193 F.R.D. at 142 (granting motion to consolidate several section 1983 cases where each plaintiff brought claim for emotional distress).  This is because—as with other individual issues—any risk of confusion can "be addressed through the use of appropriate jury instructions." *Herd v. Asarco Inc.*, 2003 WL 25847423, at *2 (N.D. Okla. May 28, 2003).

Defendants offer no facts suggesting that such measures would be insufficient here.  Defendants concede that Mrs. Bryant and Mr. Chester intend to present different evidence from different witnesses concerning the nature and extent of their respective emotional harms.  Far from sowing confusion, these individualized presentations will help the jury distinguish between the injuries that each plaintiff suffered.  And although Defendants speculate that Mrs. Bryant's celebrity status might confuse the analysis, Mrs. Bryant's unique relationship with the public and the media is at least as likely to *assist* jurors in conducting individualized evaluations.  It strains credulity to believe that a properly instructed jury would mistakenly impute an injury that is tied to Mrs. Bryant's "millions of social media followers" to a "private person who avoids the spotlight." (*Bryant* Dkt. 319 at 10.)

### 3.  Questions About the Admissibility of Plaintiffs' Other Lawsuits Do Not Prejudice Defendants.

Finally, Defendants argue that consolidation creates a risk that Defendants will be permitted to introduce evidence of Mr. Chester's prior lawsuits against the

helicopter company but not Mrs. Bryant's, leading to juror confusion.  (*Bryant* Dkt. 319 at 12.)  Defendants base this argument on the fact that only Mrs. Bryant has a pending motion in limine to exclude the lawsuit.  But if the Court grants Mrs. Bryant's motion in limine on the ground that the helicopter company lawsuit is inadmissible, Mr. Chester could assert the same evidentiary objections at trial.  The absence of a motion in limine is not an admission that evidence is admissible. Consistent rulings on the admissibility of the helicopter lawsuits in both cases would remove the risk of inconsistent treatment and, hence, of juror confusion.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff requests that the Court consolidate *Bryant* and *Chester* for trial.

DATED:  July 15, 2022                  WILSON SONSINI GOODRICH & ROSATI


By:   _____
                         */s/ Luis Li*
                       LUIS LI

Attorneys for Plaintiff Vanessa Bryant