```
 1  JONATHAN C. McCAVERTY (State Bar No. 210922)
    Principal Deputy County Counsel
 2  jmccaverty@counsel.lacounty.gov
    OFFICE OF COUNTY COUNSEL
 3  500 West Temple Street, Suite 468
    Los Angeles, California 90012
 4  Telephone: (213) 974-1828
 5
    Attorneys for Defendant
 6  LOS ANGELES COUNTY SHERIFF'S DEPARTMENT
 7
    LOUIS R. MILLER (State Bar No. 54141)
 8  MIRA HASHMALL (State Bar No. 216842)
    mhashmall@millerbarondess.com
 9  JASON H. TOKORO (State Bar No. 252345)
    CASEY B. SYPEK (State Bar No. 291214)
10  MILLER BARONDESS, LLP
    1999 Avenue of the Stars, Suite 1000
11  Los Angeles, California 90067
    Telephone: (310) 552-4400
12  Facsimile: (310) 552-8400
13
    Attorneys for Defendants
14  COUNTY OF LOS ANGELES, LOS ANGELES COUNTY FIRE DEPARTMENT,
    JOEY CRUZ, RAFAEL MEJIA, MICHAEL RUSSELL, RAUL VERSALES,
15  ARLIN KAHAN and TONY IMBRENDA
```

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| VANESSA BRYANT,<br><br>    Plaintiff,<br><br>    v.<br><br>COUNTY OF LOS ANGELES; LOS ANGELES COUNTY SHERIFF'S DEPARTMENT; LOS ANGELES COUNTY FIRE DEPARTMENT; JOEY CRUZ; RAFAEL MEJIA; MICHAEL RUSSELL; and RAUL VERSALES,<br><br>    Defendants. | **CASE NO. 2:20-cv-09582-JFW-E (Lead Case)**<br><br>**DEFENDANTS' NOTICE OF DESIGNATED DEPOSITION TESTIMONY OF BRIAN JORDAN**<br><br>Assigned to the Hon. John F. Walter and Magistrate Judge Charles F. Eick |

571893.2

| | |
|---|---|
| CHRISTOPHER L. CHESTER,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COUNTY OF LOS ANGELES; LOS ANGELES COUNTY SHERIFF'S DEPARTMENT; LOS ANGELES COUNTY FIRE DEPARTMENT; JOEY CRUZ; RAFAEL MEJIA; MICHAEL RUSSELL; RAUL VERSALES; ARLIN KAHAN; BRIAN JORDAN; and TONY IMBRENDA,<br><br>　　　　Defendants. | **CASE NO. 2:20-cv-10844-JFW-E** |

Pursuant to the Court's Civil Trial Order of February 7, 2022 (Dkt. 280), Defendants submit the following notice of designated deposition testimony of Brian Jordan.

| Defendants' Designations | Objection | Response to Objection |
|---|---|---|
| 12:5-7<br>Q: Can you please state your full name for the record.<br>A: Brian Jordan. | | |
| 20:17-21:15<br>Q: So, Captain Jordan, you retired from the L.A. County Fire Department earlier this year; is that right?<br>A: Yes.<br>Q. And was your retirement on or around January 19th, 2021?<br>A. I—I believe that is around that that time.<br>Q. And what was your rank at the time of your retirement?<br>A. Fire captain.<br>Q. How long had you held that rank?<br>A. At least 20, 25 years.<br>Q. And what was your most recent assignment?<br>A. I was the safety officer—one of the safety officers.<br>Q. And how long had you held that assignment?<br>A. I don't remember. Six, seven, eight years.<br>Q. Can you explain to me what were your day-to-day duties and responsibilities as the safety officer.<br>A. You work directly for the deputy chief and go to any incidents, provide safety intelligence on what's going on at the scene. | | |

| Defendants' Designations | Objection | Response to Objection |
|---|---|---|
| Q. And how long was your total tenure with the L.A. County Fire Department?<br>A. Thirty-five years. | | |
| 30:21-31:18<br>Q. Would you automatically take photos on most incidents?<br>THE WITNESS: So as a safety officer, besides providing safety intel and mitigation of safety issues, you may be tasked with transmitting incident intelligence -- intelligence to the command post or the higher-ups.<br>Q. And so in your experience, was -- was that a common occurrence, for photographs to be taken at incidents?<br>THE WITNESS: I believe if photos are needed to provide incident intelligence, it's used. | | |
| 118:3-6<br>Q: So just to make sure I'm understanding and following, Chief Marrone gave you an instruction to take photos at the Willow Incident; is that right?<br>A: Yes. | | |
| 140:21-22; 142:3-143:12<br>Q. So let me now show you what I'll mark next in order, which is Exhibit 162.<br>-------------------------------------<br>Q. So the document states that you were ordered to return your department electronic devices, provide passwords for those devices, and preserve electronic media and photographs involving the Willow Incident. Did you comply with that order? | | |

| Defendants' Designations | Objection | Response to Objection |
|---|---|---|
| A. Yes.<br>Q. On what date did you comply with that order? Is it the same day you got this document?<br>A. Probably. I assume it was.<br>Q. And do you remember what devices you returned to Chief Marrone on that date?<br>A. Yeah. I turned in my electronic devices.<br>Q. So did that include your department-issued phone?<br>A. Yes.<br>Q. And a department-issued laptop?<br>A. Yes.<br>Q. Department-issued iPad?<br>A. Yes.<br>Q. Did you also provide him with passwords to any desktop computer that you were using?<br>A. I wrote my -- wrote my passwords down on Post-its.<br>Q. Did you have a desktop computer that you used as part of your job back in the early 2020 time frame?<br>A. I'm sure I did.<br>Q. And those documents that you surrendered to Chief Marrone on May 29th, 2020, did you ever get those back?<br>A. What documents?<br>Q. Oh, I'm sorry. Did I say "documents"? Sorry. I meant those devices that you surrendered to Chief Marrone on May 29th, 2020. Did you ever get those devices back?<br>A. No.<br><br>*141:17-19* (Counter-designations)<br>Q. And did Chief Marrone hand-deliver this document to you on May 29, 2020, as indicated here? | | |

| Defendants' Designations | Objection | Response to Objection |
|---|---|---|
| A. That probably was the date, yeah. | | |
| 144:15-145:3<br>Q. So on this date that you surrendered your department-issued devices, did you produce or provide any Willow Incident photographs to the department from your personal cell phone as ordered to do under No. 2 here?<br>A. I doubt it.<br>Q. Why do you say that? Why do you say, "I doubt it"?<br>A. Well, I'd have to have them to do that. I can't extract it out of my brain.<br>Q. So am I correct in interpreting that to mean on May 29th, 2020, you did not have any Willow Incident photographs on your personal cell phone?<br>A. Correct.<br><br>145:5-15, 145:17-146:2 *(Counter-designations)*<br>Q. Did the department ask to search your personal cell phone on May 29th, 2020?<br>A. I don't remember. Well, go back to that document. Let me look.<br>Q. Sure. Let me see here. Okay.<br>A. Please.<br>Q. So here's Exhibit 163 again<br>A. Yeah. I -- I didn't have anything -- I didn't have anything.<br>Q. And so again, just to make sure I have your clear testimony, did the department, on May 29th, 2020, ask to inspect or search your personal cell phone?<br>THE WITNESS: And I don't remember if somebody physically asked me to -- to -- to | | |

571893.2

6

| Defendants' Designations | Objection | Response to Objection |
|---|---|---|
| look at it. I just -- sure did what that thing -- what that document said.<br>Q. Did the department ever ask to search or inspect your personal cell phone on any subsequent date after May 29th, 2020?<br>A. I don't remember.<br>Q. Did they ever ask before that date, May 29th, 2020, to look at your personal cell phone?<br>A. I do not remember. | | |
| Q. Were you given the choice of retiring or being terminated by the fire department?<br>A. Oh, God, no.<br>Q. You got a letter from the fire department saying they intended to terminate you; correct?<br>A. Yes, sir.<br>Q. And -- and you were never terminated; right?<br>A. No.<br>Q. That is correct; correct? You were never terminated?<br>A. I wasn't terminated, no.<br><br><u>169:5-9</u> *(Counter-designations)*<br>Q. Well, let me ask this, Captain Jordan. When was the last day that you worked— fire captain?<br>A. Probably June.<br>Q. June of 2020?<br>A. Yes. | | |
| <u>170:14-23</u><br>Do you know how you were able to avoid termination?<br>A. I don't look at it as an avoidance. In October -- I believe it was October -- I was | | |

| Defendants' Designations | Objection | Response to Objection |
|---|---|---|
| told I cannot return to work. I started the retirement process in November and retired in January. And within that time frame the department wrote that letter. And --and -- matter of fact, that -- the date of that letter was the same day workers' comp granted me my -- my injuries.<br><br>170:24-171:5 *(Counter-Designations)*<br>Q. So was it -- was it a workers' comp determination that you were disabled?<br>A. You know, you'd have to talk to my workers' comp lawyer. I don't know how that works.<br>Q. In October of 2020 you were told that you couldn't return to work; right?<br>A. Yes, sir. | | |

DATED: July 28, 2022    MILLER BARONDESS, LLP

By: _____
MIRA HASHMALL
Attorneys for Defendants
COUNTY OF LOS ANGELES, LOS ANGELES COUNTY FIRE DEPARTMENT, JOEY CRUZ, RAFAEL MEJIA, MICHAEL RUSSELL, RAUL VERSALES, ARLIN KAHAN and TONY IMBRENDA

571893.2

8

DEFENDANTS' NOTICE OF DESIGNATED DEPOSITION TESTIMONY OF BRIAN JORDAN