LUIS LI (State Bar No. 156081)
Luis.Li@wsgr.com
ERIC P. TUTTLE (State Bar No. 248440)
Eric.Tuttle@wsgr.com
WILSON SONSINI GOODRICH & ROSATI, P.C.
633 West Fifth Street, Suite 1550
Los Angeles, California 90071
Telephone:  (323) 210-2900
Facsimile:   (866) 974-7329

CRAIG JENNINGS LAVOIE (State Bar No. 293079)
Craig.Lavoie@mto.com
JENNIFER L. BRYANT (State Bar No. 293371)
Jennifer.Bryant@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:  (213) 683-9100
Facsimile:   (213) 687-3702

Attorneys for Plaintiff Vanessa Bryant

[*Additional counsel continued on next page.*]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| VANESSA BRYANT,<br><br>              Plaintiff,<br><br>       vs.<br><br>COUNTY OF LOS ANGELES, et al.,<br><br>              Defendants.<br><br>_____<br><br>CHRISTOPHER L. CHESTER,<br><br>              Plaintiff,<br><br>       vs.<br><br>COUNTY OF LOS ANGELES, et al.,<br><br>              Defendants. | Case No. 2:20-cv-09582-JFW-E<br>(Consolidated with 2:20-cv-10844-JFW-E)<br><br>**PLAINTIFF'S NOTICE OF DESIGNATED DEPOSITION TESTIMONY OF BRIAN JORDAN**<br><br>Trial Date:      None Set<br><br>The Hon. John F. Walter |

1  [*Additional counsel, continued from previous page*]

2
3  JEROME M. JACKSON (State Bar No. 64238)
   jmjlaw@aol.com
4  JEROME M. JACKSON LAW OFFICES
   880 Apollo Street, Suite 238
5  El Segundo, California 90245
   Telephone: (310) 726-4199
6  Facsimile: (310) 414-0486

7
8  Attorneys for Plaintiff Christopher L. Chester

9  LOUIS R. MILLER (State Bar No. 54141)
   smiller@millerbarondess.com
10 MIRA HASHMALL (State Bar No. 216842)
   JASON H. TOKORO (State Bar No. 252345)
11 CASEY B. SYPEK (State Bar No. 291214)
   MILLER BARONDESS, LLP
12
   1999 Avenue of the Stars, Suite 1000
13 Los Angeles, California 90067
   Tel.: (310) 552-4400 | Fax: (310) 552-8400
14

15
16 Attorneys for Defendants County of Los Angeles, Los Angeles County Fire
   Department, Joey Cruz, Rafael Mejia, Michael Russell, Raul Versales, Arlin Kahan
17 and Tony Imbrenda

18
19 JONATHAN C. McCAVERTY (State Bar No. 210922)
   *Principal Deputy County Counsel*
20 jmccaverty@counsel.lacounty.gov
   OFFICE OF THE COUNTY COUNSEL
21 General Litigation Division
   500 West Temple Street, Suite 468
22 Los Angeles, California 90012
   Tel.: (213) 974-1828 | Fax: (213) 626-7446
23

24
25 Attorneys for Defendant Los Angeles County Sheriff's Department

26

27

28

- 2 -

Pursuant to the Court's Civil Trial Order of February 7, 2022 (Dkt. 280), Plaintiffs Vanessa Bryant and Christopher L. Chester ("Plaintiffs") and Defendants submit the following notice of designated deposition testimony of Brian Jordan.

| Plaintiff's Designations | Objection | Response to Objection |
|---|---|---|
| <u>12:5-7</u><br>Q. Can you please state your full name for the record.<br>A. Brian Jordan | | |
| <u>20:17 – 21:5</u><br>Q. So, Captain Jordan, you retired from the L.A. County Fire Department earlier this year; is that right?<br>A. Yes.<br>Q. And was your retirement on or around January 19th, 2021?<br>A. I – I believe that is around that time.<br>Q. And what was your rank at the time of your retirement?<br>A. Fire captain.<br>Q. How long had you held that rank?<br>A. At least 20, 25 years.<br>Q. And what was your most recent assignment?<br>A. I was the safety officer – one of the safety officers. | | |
| <u>21:6-12</u> (Counter-designation) | Plaintiff's Objection | Defendants' Response: |

| Plaintiff's Designations | Objection | Response to Objection |
|---|---|---|
| *Q. And how long had you held that assignment?*<br>*A. I don't remember.  Six, seven, eight years.*<br>*Q. Can you explain to me what were your day-to-day duties and responsibilities as the safety officer.*<br>*A.  You work directly for the deputy chief and go to any incidents, provide safety intelligence on what's going on at the scene.* | This second question and answer (21:8-12) is not a proper counter-designation for fairness completeness under FRCP 32(a)(6). Defendants may introduce this testimony on their own, but it must count toward their trial time.<br><br>Nor is this a proper counter-designation under FRE 106, as Plaintiff's designation is not misleading.  While Defendants may want to introduce the witness's characterization of his job responsibilities, Plaintiff's designated testimony is not rendered misleading without such testimony. | This testimony provides necessary context to the immediately preceding designated testimony—without it, the jury will have no idea what a safety officer is. |
| <u>21:13-15</u><br>Q. And how long was your total tenure with the L.A. County Fire Department?<br>A. Thirty-Five years. | | |
| <u>21:23 – 22:17</u><br>Q. And did you ever serve in the Public Information Office?<br>A. Yes | | |

| Plaintiff's Designations | Objection | Response to Objection |
|---|---|---|
| Q. When – when was that, approximately? A. probably 2000ish. Q. And do you remember approximately how long you were in the Public Information Office? A. Couple years. Q. Around two years? A. I think two or three years. I don't remember exactly. Q. What were your day-to-day duties and responsibilities when you were serving in – in that role? A. As a – as which role? Q. In the Public Information Office. A. Yeah. When you work for that position, you're working for the fire chief and doing all sorts of special projects for the fire chief. And you also handle media inquiries and – and public information. | | |
| <u>40:1-6</u> Q. My question was, In response to the subpoena served upon you to produce documents relevant to this – certain categories that are specified in the subpoena, did you search your cell | <u>Defendants' Objection</u> Irrelevant (FRE 104(b), 401, 402) Mr. Jordan's compliance with a subpoena has no bearing on the factual issues for the jury to decide. Plaintiffs could have raised this issue with the | <u>Plaintiff's Response</u> Defendants' boilerplate contention of irrelevance ignores that Jordan's testimony on whether he attempted to comply with the subpoena by searching for responsive materials to this litigation |

PLAINTIFF'S NOTICE OF DESIGNATED DEPOSITION TESTIMONY OF BRIAN JORDAN

| Plaintiff's Designations | Objection | Response to Objection |
|---|---|---|
| phone for text messages that were responsive to the documents we requested?<br>A. I have not searched my cell phone for anything. | Court if they wanted to compel further compliance with the subpoena. | in his possession, custody, or control bears on numerous issues in this case, including the extent of his dissemination of photos and his consciousness of wrongdoing.  Jordan's response also informs the jury why they are not being presented with certain information—*i.e.*, not necessarily because certain evidence no longer exists, but because Jordan has defied a duly-issued subpoena.  As a recipient of then-Captain Imbrenda's deletion order, Jordan's testimony further bears on this Court's ruling granting Plaintiff's spoliation motion.  *See* Dkt. 340; *see also* July 26, 2022 Hr'g Tr. at 28-53. |
| <u>40:21 – 41:2</u><br>Q. Do you currently have any applications or programs on your phone that you use to send messages other than text messaging – standard text messaging app?<br>A. E-mail.  I have – I have e-mail. | | |

| Plaintiff's Designations | Objection | Response to Objection |
|---|---|---|
| Q. Do you have Facebook Messenger on your phone?<br>A. Yes. | | |
| 41:25 – 42:3<br>Q. Is there any cloud storage associated with your personal cell phone?<br>A. I have – it's, like, iCloud that you're talking about? | | |
| 42:16-18<br>Q. Do you have a personal tablet, like an iPad or anything like that?<br>A. Yes. | | |
| 43:2-6<br>Q. Going back to when you were in the Public Information Office, where I understand that part of your duties were interfacing with the media, did you develop any relationships with any members of the media?<br>A. Probably.  A bunch of them. | | |
| 43:10-12<br>Q. Do you know someone named Tony Buttitta, B-u-t-t-i-t-t-a?<br>A. He's a photographer, I think. | | |

PLAINTIFF'S NOTICE OF DESIGNATED DEPOSITION TESTIMONY OF BRIAN JORDAN

| Plaintiff's Designations | Objection | Response to Objection |
|---|---|---|
| <u>43:22 – 44:8</u><br>Q. Do you ever talk to him on the phone?  text with him?<br>A. Probably used to.<br>Q. And what would you – what would you text with him?<br>[Omitted objections]<br>A. Yeah.  Anything – it's probably about an incident or something.  It depends what was going on.  Because when you're in PIO, you need to communicate with – any way you can with people. | | |
| <u>44:15 – 45:12</u><br>Q. And you mentioned a few moments ago that you would communicate, text, or call Tony to talk about incidents.<br>And so were most of your communications with him – was your relationship with him of a working nature, or were you personal friends?<br>A. I wouldn't look at it as personal friends.<br>Q. So he was someone –<br>A. He's a photographer-reporter.<br>Q. What about someone named Stu Mundel?  Do you know him? | | |

| Plaintiff's Designations | Objection | Response to Objection |
|---|---|---|
| A. I text chat with Stu Mundel – Stu Mundel, but I don't know about Stu Mundel.<br><br>_45:13-22_ (Counter-designation)<br>_Q. I see. So you – you text chat with him, but he's not someone you interact with in person; is that fair?_<br>_A. Yes._<br>_Q. And is your relationship with Mr. Mundel similar to the relationship you were just describing with – with Tony?_<br>_A. I think the work "relationship" is being overused. I don't have a relationship with either one of them._ | | |
| _46:8-9_<br>Q. You text with Stu Mundel; correct?<br>A. I probably have. Not much. | | |
| _48:21 – 49:7_<br>Q. What about, do you know anyone named Alex Calder?<br>A. Yes.<br>Q. And who is Alex Calder? | | |

| Plaintiff's Designations | Objection | Response to Objection |
|---|---|---|
| A. You know, I don't even know what he does now.<br>I think he works for one of the news stations.<br>Q. And how do you know Mr. Calder?<br>A. Probably from the time I was in PIO.<br>Q. Do you consider him a friend or a work colleague?<br>A. Neither.  I don't either.<br>I don't – I don't know these people. | | |
| <u>49:13-15</u><br>Q. Have you ever texted with Mr. Calder?<br>A. I've probably text him before too. | | |
| <u>49:20 - 51:11</u><br>Q. Do you know someone named Rick Dickert, D-i-c-k-e-r-t?<br>A. yes.  But I don't "know him" know him.<br>But I've heard the – I know the name.<br>Q. How do you know the name – or who is Rick Dickert, I should say?<br>A. I think he's a reporter also.<br>Q. And is he another reporter that you came to know when you were PIO? | | |

PLAINTIFF'S NOTICE OF DESIGNATED DEPOSITION TESTIMONY OF BRIAN JORDAN

| Plaintiff's Designations | Objection | Response to Objection |
|---|---|---|
| A. Probably.<br>Q. And do you ever or have you ever texted with Mr. Dickert?<br>A. I believe so.<br>Q. And would those texts have been of a work-related nature?<br>A. Probably.  I don't know.<br>Q. And what about, do you know someone names Kevin Takumi?<br>A. Kevin is a – I think he's a newsperson too.  He's a photographer or reporter-photographer.  Reporter.<br>Q. And can you remember anything about how you came to know Kevin Takumi?<br>A. Probably the same thing.  When I was PIO.<br>Q. And can you recall having ever texted Mr. Takumi?<br>A. No.  But I'm sure I text all of them.<br>Q. And similar to – to the others that we've been talking about, to the best of your recollection, would your texts with Mr. Takumi have been work-related?<br>A. Most likely.<br>Q. What about, do you know someone named | | |

PLAINTIFF'S NOTICE OF DESIGNATED DEPOSITION TESTIMONY OF BRIAN JORDAN

| Plaintiff's Designations | Objection | Response to Objection |
|---|---|---|
| Toni Guinyard?  That's G-u-i-n-y-a-r-d.<br>A. Yes.<br>Q. And who is – who is that?<br>A. She's a reporter.<br>Q. and is she another reporter that you came to know during your time as PIO?<br>A. I think so.<br>Q. And do you consider her a personal friend or just a work colleague?<br>A. None of them are work colleagues, and none of them are personal friends. | | |
| <u>51:24-52:12</u><br>Q. So a few moments ago you testified that you – so these reporters that we've been talking about, including most recently Ms. Guinyard, you testified that you wouldn't consider them personal friends but you wouldn't consider them work colleagues.<br>And so I was just asking, Would a fair summary of the relationship be individuals who you sometimes communicate with about work?  Would that be a fair summary?<br>A. Yeah.  About incident information, yes. | | |

PLAINTIFF'S NOTICE OF DESIGNATED DEPOSITION TESTIMONY OF BRIAN JORDAN

| Plaintiff's Designations | Objection | Response to Objection |
|---|---|---|
| Q. And just to be clear – I don't think I specifically asked the question.  But is Ms. Guinyard someone you've also exchanged text messages with?<br>A. Probably. | | |
| <u>53: 1-6</u><br>Q. Do you know someone by the name of David Laub, L-a-u-b?<br>A. Yes.<br>Q. And how do you know him?<br>A. Just he's on the job. Worked for the same department.<br><br>*<u>53:7-13</u> (Counter-designation)*<br>*Q. How long have you known Mr. Laub?*<br>*A. I have no idea.*<br>*Q. Have you ever spent time with him outside of work?*<br>*A. Not that I can remember.*<br>*Q. Ever text with him?*<br>*A. I don't know.* | | |
| <u>55:4-17</u><br>Q. Do you know someone by the name of Alexis Kendricks?<br>A. Yes.<br>Q. And how do you know her? | | |

| Plaintiff's Designations | Objection | Response to Objection |
|---|---|---|
| A. She's a firefighter on the job.<br>Q. And did you get to know her through your work for the department?<br>A. I didn't – get to know her?  I don't think – no. But I know she works for the department.<br>Q. Ever text with her?<br>A. Probably.<br>Q. Ever text with her about anything not work-related?<br>A. Not that I remember. | | |
| <u>56:20 – 57:1</u><br>Q. Do you know someone named Kelly Love?<br>A. Yes.<br>Q. And who is that?<br>A. Just a person I know.<br>Q. And how do you know him?<br>A. I've known him for a hundred years, so I don't know. | | |
| <u>57:18 – 58:3</u><br>Q. Do you know what he does for a living?<br>A. I believe he's a police officer.<br>Q. Do you know what agent – agency he's with?<br>A. Last I knew, if I were to think about it, probably LAPD. | | |

PLAINTIFF'S NOTICE OF DESIGNATED DEPOSITION TESTIMONY OF BRIAN JORDAN

| Plaintiff's Designations | Objection | Response to Objection |
|---|---|---|
| Q. What about, do you know someone named Sean Fox?<br>A. yes.<br>Q. And who is Sean Fox?<br>A. He is a police officer<br>Q. What agency is he – is he with, if you know?<br>A. He's LAPD too, I think. | | |
| <u>58:15-18</u><br>Q. How would you describe your relationship with – with Mr. Fox, or how would you characterize it?<br>A. Somebody I know from probably doing stuff at work. | | |
| <u>59: 23-25; 60:2-10</u><br>Q. Do you know someone named – I don't – I'm not sure about the pronunciation, so let me spell the – spell it for the record … First name D-i-n-e-i-c-a, last name Hardaway?<br>A. Yes.<br>Q. And who is that?<br>A. She's a – she's a sheriff's department employee.<br>Q. And how did you come to know her?<br>A. I don't remember where we met. | | |

PLAINTIFF'S NOTICE OF DESIGNATED DEPOSITION TESTIMONY OF BRIAN JORDAN

| Plaintiff's Designations | Objection | Response to Objection |
|---|---|---|
| Q. How long have you known her?<br>A. She's – probably forever.<br><br>60:11-14<br>Q. And how would you characterize your relationship with her?<br>A. We haven't talked in a while.  Friends – not even friends.  We used to date. | Defendants' Objection<br>60:11-14 – Irrelevant (FRE 104(b), 401, 402).  Mr. Jordan's dating history has nothing to do with the claims or issues in this case.  In any event, there is is no evidence that Mr. Jordan sent Ms. Hardaway anything relating to the crash site.  She is not a witness in this case and has nothing to do with Plaintiffs' claims. | Plaintiff's Response<br>Defendants' boilerplate contention of irrelevance ignores that Jordan's testimony on his relationship with Ms. Hardaway, who appears in Jordan's cell phone records as a recipient of picture messages in the critical time period after the crash, bears on issues at the heart of this case, namely the scope of his dissemination of crash-site photos and the likely content of picture messages Jordan sent to Hardaway.  For purposes of determining whether there was a legitimate purpose for Jordan to send crash-scene photos to Hardaway, it is relevant that Jordan communicates with her in a personal—rather than work-related—capacity.  Also, as a recipient of then-Captain Imbrenda's deletion order, Jordan's testimony is also relevant in light of the Department's spoliation, |

| Plaintiff's Designations | Objection | Response to Objection |
|---|---|---|
| | | a topic on which Plaintiff is permitted to introduce evidence under the Court's ruling on Plaintiff's Motion *in Limine* No. 1.  *See* Dkt. 340; *see also* July 26, 2022 Hr'g Tr. at 28-53. |
| <u>62:12-18</u><br>Q. Prior to your retirement in the – the last year, when – when you were working, how many cell phones did you typically carry while on duty?<br>A. Probably two.<br>Q. And would those be a department-issued phone and a personal phone?<br>A. Yes, ma'am. | | |
| <u>63: 7-13</u><br>Q. Did you ever use your personal cell phone to do anything related to your job?<br>A. Probably.<br>Q. Have you ever used it to text with a colleague?<br>A. Probably.<br>Q. Ever used it to make work-related phone calls?<br>A. Probably. | | |
| <u>65:12-20</u><br>Q. Did – I believe I – you testified a few moments | | |

| Plaintiff's Designations | Objection | Response to Objection |
|---|---|---|
| ago, though, that your supervisors never told you not to use your personal cell phone for work-related purposes; is that accurate? A. I don't remember anybody saying anything about phones. Q. And did you ever get in trouble for using a personal phone for work-related purposes? A. Not that I remember. <br><br> _65:21-23 (Counter-designation)_ _Q. Did a supervisor ever ask you to use your personal cell phone for anything work-related?_ _A. Not that I remember._ | | |
| _67:5-7_ Q. Have you ever used your personal cell phone to take a photo at a incident? A. Probably. | | |
| _68:8-18_ Q. On those occasions when you had used your personal cell phone to take a photograph at an incident, what would you do with the photo after you had taken it? [Omitted objection] | | |

| Plaintiff's Designations | Objection | Response to Objection |
|---|---|---|
| Witness: Yeah.  I – that doesn't make sense because I don't even know if I have but – I said, "Probably," but – I don't know what I did with it.<br>You know, I retired in January, so – so I don't remember much what was going on when I was working. | | |
| <u>77:7-10</u><br>Q. So to the best of your recollection sitting here today, you haven't taken any steps to search for documents in connection with this lawsuit; correct?<br>A. Correct. | | |
| <u>79:20-23; 80:2-3</u><br>Q. As of January 2020, had you ever heard anything at all about a right protected by the United States Constitution related to photographs of deceased individuals?<br>A. Yeah.  I haven't heard of anything like that. | | |
| <u>81:16-19; 81:24 – 82:1; 82:20 – 83:12</u><br>Q. I'm going to share what I've just marked as Exhibit 157.  And Exhibit | | |

| Plaintiff's Designations | Objection | Response to Objection |
|---|---|---|
| 157 is a transcript of the audio interview that you had with Ronda Jamgotchian of Sheppard Mullin, the fire department's investigator…. I – I want to just direct your attention to a few portions of this transcript. So I've turned to Page 15 of Exhibit 157. . . I just want to draw your attention to this question that he asked you during the interview here at the 41:30 mark, which ends with asking if you have taken photos to provide intel to your deputy chief on other incidents.  And you responded, "Everything.  Ever major incident."  Is that accurate, to the best of your recollection sitting here, that you took photographs at every major incident? A. I don't remember saying that, and I don't remember that interview. Q. So my question is not if you remember saying this but if you agree with this response that you gave in response to Mr. Currier's question that you took photos at every | | |

| Plaintiff's Designations | Objection | Response to Objection |
|---|---|---|
| major incident. Is that accurate?<br>A. Probably every major incident I was on. | | |
| <u>83:19 – 84:7</u><br>Q. I want to direct your attention to the 13:34 mark. This is when the fire department's investigator, Ms. Jamgotchian, asked you if anyone asked you to take photos at this particular incident. And you responded here in the middle, "I automatically take them on most incidents. A few days ago we had another incident that I took photos of" – or "took pictures of." I'm sorry. Is that accurate, that you would automatically take photos on most incidents?<br>A. I'm not going to go too deep back that time; but with the position I had, when you know the expectations of your supervisor, you automatically do them. | | |
| <u>88:20-24</u><br>Q. Do you know anyone by the name of Adriana Drake Glenn?<br>A. Yes. | <u>Defendants' Objection</u><br>Irrelevant (FRE 104(b), 401, 402) | <u>Plaintiff's Response</u><br>Defendants' boilerplate contention of irrelevance ignores that Jordan's testimony on his |

| Plaintiff's Designations | Objection | Response to Objection |
|---|---|---|
| Q. And who is that?<br>A. Former girlfriend. | | relationship with Ms. Glenn, who appears in Jordan's cell phone records as a recipient of picture messages in the critical time period after the crash, bears on issues at the heart of this case, namely the scope of his dissemination of crash-site photos and the likely content of picture messages Jordan sent to Glenn.  The identity of recipients of crash-scene photos is relevant to whether there was a legitimate purpose for Jordan to share the photos.  As a recipient of then-Captain Imbrenda's deletion order, Jordan's testimony is also relevant in light of the Department's spoliation, a topic on which Plaintiff is permitted to introduce evidence under the Court's ruling on Plaintiff's spoliation motion.  *See* Dkt. 340; *see also* July 26, 2022 Hr'g Tr. at 28-53. |
| <u>89:18-21</u><br>Q. Do you know someone named Lesley Sheen?<br>A. Yes.<br>Q. And how do you know Ms. Sheen? | <u>Defendants' Objection</u><br>Irrelevant (FRE 104(b), 401, 402) | <u>Plaintiff's Response</u><br>Defendants' boilerplate contention of irrelevance ignores that Jordan's testimony on his relationship with Ms. |

| Plaintiff's Designations | Objection | Response to Objection |
|---|---|---|
| A. We used to be neighbors. | | Sheen, who appears in Jordan's cell phone records as a recipient of picture messages in the critical time period after the crash, bears on issues at the heart of this case, namely the scope of his dissemination of crash-site photos and the likelihood that the photo messages Jordan sent to Sheen contained human remains.  As a recipient of then-Captain Imbrenda's deletion order, Jordan's testimony is also relevant in light of the Department's spoliation, a topic on which Plaintiff is permitted to introduce evidence under the Court's ruling on Plaintiff's spoliation motion.  *See* Dkt. 340; *see also* July 26, 2022 Hr'g Tr. at 28-53. |
| <u>91:7-8; 91:20 – 92:10</u><br>Q. Exhibit 158 are phone records that were produced to us from your wireless carrier, AT&T. . . And so at the – on the first page here there is a notation that these are voice usage records, and then it has a phone | | |

| Plaintiff's Designations | Objection | Response to Objection |
|---|---|---|
| number.  Do you recognize that phone number?<br>A. Which phone number?<br>Q. This phone number right here that's on the top left corner of the screen to the right of voice usage for, colon, beginning with 818.  Do you see that number?<br>A. That's my number.<br>Q. Okay.  So I'm going to turn to Page 423.  And this here – let me direct your attention to the top left corner, again, where it says "SMS Usage For" and then it again has an (818) 292 number.  Is that also your phone number?<br>A. Yes. | | |
| 98:13-21<br>Q. Do you have any recollection of sending a group text messages – a group text message to Rick Dickert, Tony Buttitta, Kevin Takumi, Alex Calder, and Stu Mundel on January 26, 2020?<br>A. No, I do not.<br>Q. Are you still in possession of the – of any group text message that you sent or received from | | |

- 24 -

| Plaintiff's Designations | Objection | Response to Objection |
|---|---|---|
| this group on January 26, 2020?<br>A. I doubt it. | | |
| 99:20 – 100:1<br>Q. And I'll represent to you if we continue going down this page, there is several group messages with the same group on January 26, 2020.  Does that help jog your memory at all about what you might have been texting with this group about on January 26, 2020?<br>A. No. No. | | |
| 100:8 – 101:6<br>Q. Let me direct you to Page 451.  Okay.  So I'll direct your attention to the bottom of Page 451 to a group of text messages once again that have the same time stamp.  This time it's 03:02:23. Do you see that?  This is Lines 1028 through 1035.<br>A. Okay.<br>Q. And this is the same group that we were just talking about of folks in the media.  And if we go all the way over to the right-hand column, you'll see that this group message indicates that it | | |

| Plaintiff's Designations | Objection | Response to Objection |
|---|---|---|
| was an image – image – image message.  Do you see that?<br>A. Yes.<br>Q. Do you have any recollection of what image you were sending to Rick Dickert, Tony Buttitta, Kevin Takumi, Alex Calder, and Stu Mundel on February 11, 2020?<br>A. No.<br>Q. What kind of – do you have any recollection of ever sending this group an image?<br>A. No.<br>Q. Do you still have text messages in your phone dating back to February 11th, 2020?<br>A. I don't know.<br><br><u>101:7-13</u><br>Q. Do you have your phone with you today?<br>A. Yes.<br>Q. Could you pull it out and scroll to see if you have texts going back to February 11th, 2020?<br>A. No.<br>Q. Why not?<br>A. You need to talk to my attorney. | <u>Defendants' Objections</u><br>101:7-13 - Irrelevant (FRE 104(b), 401, 402); more prejudicial than probative (FRE 403). Whether Mr. Jordan was properly served with a request for inspection of his personal devices, and his response to counsel's request to inspect his phone, are not relevant to any issues before the jury. | <u>Plaintiff's Response</u><br>Jordan's refusal to check his phone for picture-messages he was sending to reporters in the aftermath of the crash bears on issues at the heart of this case—namely, the scope of his dissemination of crash-site photos and his consciousness of wrongdoing.  Jordan's refusal to consult or |

PLAINTIFF'S NOTICE OF DESIGNATED DEPOSITION TESTIMONY OF BRIAN JORDAN

| Plaintiff's Designations | Objection | Response to Objection |
|---|---|---|
| | | search his cell phone helps explain to the jury why certain evidence they might otherwise expect is not before them.  As a recipient of then-Captain Imbrenda's deletion order, Jordan's testimony is also relevant in light of the Department's spoliation, a topic on which Plaintiff is permitted to introduce evidence under the Court's ruling on Plaintiff's Motion *in Limine* No. 1.  *See* Dkt. 340; *see also* July 26, 2022 Hr'g Tr. at 28-53. |
| <u>103:22-25; 104:2</u><br>Q. Does seeing this record of a 61-minute phone call with Kelly Love on January 31st, 2020, refresh your recollection about what you were talking to him about for so long on that day?<br>[Omitted objection]<br>A. No. | | |
| <u>104:8-25</u><br>Q. You have no memory of this phone call?<br>A. No.<br>Q. Okay.  And now scrolling down to Page | | |

PLAINTIFF'S NOTICE OF DESIGNATED DEPOSITION TESTIMONY OF BRIAN JORDAN

| Plaintiff's Designations | Objection | Response to Objection |
|---|---|---|
| 14, Line 208, here is another 20-minute phone call from that same phone number, which, again, records indicate belongs to Kelly Love.  Does seeing that you had a further 18-minute conversation on January 31st with Mr. Love give you any – any idea – any recollection of what you were talking with him about?<br>A. No.<br>Q. And then if we go down to Page 15 of Exhibit 158 and Line 225, there is another lengthy 40-minute phone call between yourself and Mr. Love.  Does that help jog your memory at all about what you were talking with Mr. Love about in late January and early February 2020?<br>A. No. | | |
| 105:7-9<br>Q. Do you remember what image you sent to Kelly Love on February 1st, 2020?<br>A. No. | | |
| 106:18-21<br>Q. Any memory of any images that you've sent to | | |

PLAINTIFF'S NOTICE OF DESIGNATED DEPOSITION TESTIMONY OF BRIAN JORDAN

| Plaintiff's Designations | Objection | Response to Objection |
|---|---|---|
| Kelly Love at the LAPD in the late January – or on February 1st, 2020, or that general time frame?<br>A. What I said – no.  No memory. | | |
| 107:12-14<br>Q. Do you know what images you were sending to Toni Guinyard on – on or around February 1st, 2020?<br>A. No. | | |
| 109:5-8<br>Q. Do you know what pictures or what images you sent to David Laub of the L.A. County Fire Department in February 2020?<br>A. No. | | |
| 109:23 – 110:3<br>Q. Do you know Al Jackson?<br>A. I know an Al Jackson.<br>Q. Do you remember texting images to an Al Jackson in February 2020 or have any indication or recollection of what those images might have depicted?<br>A. No. | | |

PLAINTIFF'S NOTICE OF DESIGNATED DEPOSITION TESTIMONY OF BRIAN JORDAN

| Plaintiff's Designations | Objection | Response to Objection |
|---|---|---|
| <u>110:12-14</u><br>Q. What images were you sending to LAPD Officer Sean Fox in February 2020?<br>A. I have – I don't know. | | |
| <u>110:17-20</u><br>Q. How do you know Al Jackson?<br>A. He's one of the – he's dispatcher.<br>Q. With – with the L.A. County Fire Department?<br>A. Yes. | | |
| <u>111:9-16</u><br>Q. If we scroll over again, you'll see that all of these messages that you sent to Alexis Kendricks of the L.A. County Fire Department in February 2020 contained both an image and a text message. What images were you sending to Alexis Kendricks in February 2020?<br>A. I don't remember. | | |
| <u>114:22-25</u><br>Q. What did you and Tony Imbrenda discuss early in the morning on February 28th, 2020, for approximately eight minutes? | | |

| Plaintiff's Designations | Objection | Response to Objection |
|---|---|---|
| A. I do not remember. | | |
| <u>115:10-14</u><br>Q. Did you and Tony Imbrenda discuss the February 27th, 2020, L.A. Times article regarding Willow incident photos during your nearly eight-minute phone call on the morning of February 28th, 2020?<br>A. I do not remember. | | |
| <u>117: 19-21</u><br>Q. So Chief Marrone did instruct you to take photos of the Willow Incident?<br>A. Yes. | | |
| <u>118:3-6</u><br>Q. So just to make sure I'm understanding and following, Chief Marrone gave you an instruction to take photos at the Willow Incident; is that right?<br>A. Yes. | | |
| <u>118:11-14</u><br>Q. Can you tell me everything you remember about the instruction that Chief Marrone gave you to take photos.<br>A. I just remember being told to take pictures. | | |

| Plaintiff's Designations | Objection | Response to Objection |
|---|---|---|
| 118:21-22; 118:25 – 119:1<br>Q. Did you take any photos at the scene before you had received this instruction from Chief Marrone?<br>[Omitted objection]<br>Witness: I know I took pictures. I just don't remember when I was told to. | | |
| 119:9-15<br>Q. Did Chief Marrone give you any direction or instruction in terms of the types of photos that he wanted you to take?<br>A. I don't remember any of that.<br>Q. All you remember is just a general instruction to – to document the scene?<br>A. Yeah. Yes. Something like that. | | |
| 119:25 – 120:5<br>Q. Did Chief Marrone tell you why he wanted you to take pictures for him?<br>A. I do not remember.<br>Q. Did you send any pictures that you took to Chief Marrone?<br>A. I do not remember. | | |

PLAINTIFF'S NOTICE OF DESIGNATED DEPOSITION TESTIMONY OF BRIAN JORDAN

| Plaintiff's Designations | Objection | Response to Objection |
|---|---|---|
| <u>121:10-12</u><br>Q. Did you receive an order to delete photos of the Willow Incident that were in your possession?<br>A. I don't remember. | | |
| <u>126:4-9; 126:12-13</u><br>Q. Sitting here today, do you deny that you took graphic images at the Willow Incident?<br>A. How can I deny what I do not remember?<br>Q. And sitting here today, do you deny that Koby Bryant's remains were probably in photographs that you took at the Willow Incident?<br>[Omitted objection]<br>Witness: How can I deny what I do not remember? | | |
| <u>132:4-7; 132:10-20; 132:25 – 133:5</u><br>Q. My question for you, Captain Jordan, is, Do you feel empathy for the pain Mrs. Bryant and her family are subjected to from the notion that one day photographs will come to light that might affect her family?<br>[Omitted objection]<br>Witness: The photographs are already here.<br>Q. What do you mean? | <u>Defendants' Objection</u><br>Irrelevant (FRE 104(b), 401, 402).  Mr. Jordan's personal feelings toward Mrs. Bryant and the psychological pain he has endured from responding to the crash have no relevance to Plaintiffs' *Monell* claims. | <u>Plaintiff's Response</u><br>Jordan's testimony bears on his mental and emotional state, intentions, and consciousness of guilt as it relates to his taking and sharing of graphic photographs of the victims' remains, as well as his credibility. Jordan's testimony also bears on his perspective of his own suffering and emotional distress set |

| Plaintiff's Designations | Objection | Response to Objection |
|---|---|---|
| A. They're already here.<br>Q. What do you mean?<br>A. Right here.  Every freaking day.  And you're trying to bring it all up again.  I'm trying to get better.<br>Q. Do you remember the question that I asked?  Is your answer no?<br>A. I have to wake up every day –<br>[Omitted objection]<br>Witness: When you're talking about pictures, I have the pictures in my head.  Do I – am I empathetic to somebody who's lost a family member?  Yes.  But I was injured over this.  It ended my career.  I don't think anybody has suffered as much as I have. | | against his perspective of the suffering he caused to Plaintiff and others through his actions. Jordan's attitude as a County employee regarding his gratuitous taking and sharing photos of victims' remains while casting himself as a victim, rather than acknowledging his role as a perpetrator, reflects a lack of regard for the dignity of the decedents and the reprehensibility of his conduct, which shocks the conscience. |
| <u>136:3-4; 136:7</u><br>Q. Do you know how many total photos you took on January 26, 2020, at the crash site?<br>[Omitted objection]<br>Witness: No. | | |
| <u>137:25 – 138:3</u><br>Q. Can you describe for me or list for me all of the tasks that you performed on January 26, 2020, | | |

| Plaintiff's Designations | Objection | Response to Objection |
|---|---|---|
| when you were at the crash site?<br>A. I do not remember. | | |
| 138:19 – 139:3<br>Q. Did you share any of the photos you took at the crash site with anyone else?<br>A. I don't remember.<br>Q. Did you text photos of the Willow Incident to captain – then-Captain Tony Imbrenda?<br>A. I do not remember.<br>Q. Was there ever a point on January 26th, January 27th, or any subsequent date when you received photos of the Willow Incident from anyone else?<br>A. I do not remember. | | |
| 139:7-16<br>Q. Did you have any role in investigating the cause of the helicopter crash?<br>A. That's a NTSB, if anything.  So I doubt it.<br>Q. Did you have any role in identifying the victims?<br>A. I don't remember.  I doubt it.<br>Q. Do you remember having any sort of investigatory function related to the helicopter accident? | | |

| Plaintiff's Designations | Objection | Response to Objection |
|---|---|---|
| A. I do not remember. | | |
| 146:3-12<br>Q. You did not surrender your personal cell phone at any point in 2020 to the department; correct?<br>A. If I remember correctly, yes.<br>Q. And you also didn't surrender your cell phone at any point in 2021 when you were already retired; correct?<br>A. Correct.<br>Q. And so you continued using your personal cell phone that entire time; correct?<br>A. Yes. | | |
| 146:21 – 147:12<br>Q. But to your knowledge, are you aware of the fire department doing anything to verify that you did not possess photos of the Willow Incident on your personal phone?<br>A. Not to my knowledge.<br>Q. Has anyone affiliated with the fire department ever asked to check your social media accounts?<br>A. No.<br>Q. Has anyone affiliated with the fire department | | |

| Plaintiff's Designations | Objection | Response to Objection |
|---|---|---|
| ever asked to search your personal e-mail accounts?<br>A. No.<br>Q. Has anyone affiliated with the fire department ever asked to check your personal iCloud storage?<br>A. No.<br>Q. And has anyone affiliated with the fire department ever asked to check your text messages?<br>A. Not that I can remember. | | |
| <u>173:6-16</u><br>Q. You've talked about there is still images in your head; correct?<br>A. Yeah.  I'd rather not bring that up.<br>Q. You have brought that up repeatedly, have you not?  You said the images are right here.<br>A. Go ahead.<br>Q. Images are very troublesome for you, are they not?<br>A. Yes.<br>Q. Cause you severe emotional distress?<br>A. Yes. | <u>Defendants' Objections</u><br>Irrelevant (FRE 104(b), 401, 402); more prejudicial than probative (FRE 403).  Mr. Jordan's emotional distress has nothing to do with this case.  It would be highly prejudicial for Plaintiffs to present this testimony and ask the jury to draw a connection between Mr. Jordan's distress and Plaintiffs' distress. | <u>Plaintiff's Response</u><br>Defendants' boilerplate contention of irrelevance ignores that Jordan's testimony bears on how his own experience at the crash site, and the effect of "images in [his] head," impacted him emotionally and caused him severe emotional distress, as is the case for Plaintiffs when contemplating the prospect of seeing images of their deceased family members.  Jordan's response to the question is also evasive, which bears on his credibility with regards to other issues (such as whether he had a need to take such photos).  Defendants |

PLAINTIFF'S NOTICE OF DESIGNATED DEPOSITION TESTIMONY OF BRIAN JORDAN

| Plaintiff's Designations | Objection | Response to Objection |
|---|---|---|
| | | proffer no legal, factual, or other argument to support why this testimony would be more prejudicial than probative and their conclusory assertion to exclude such testimony should be overruled. |

DATED: July 28, 2022        WILSON SONSINI GOODRICH & ROSATI
                            Professional Corporation


                            By:  _____ /s/ Luis Li _____
                                          LUIS LI


DATED: July 28, 2022        JEROME M. JACKSON LAW OFFICES


                            By:  _____ /s/ Jerome M. Jackson _____
                                      JEROME M. JACKSON

                            JEROME M. JACKSON
                            jmjlaw@aol.com
                            JEROME M. JACKSON LAW OFFICES
                            880 Apollo Street, Suite 238
                            El Segundo, California 90245
                            Telephone: (310) 726-4199
                            Facsimile: (310) 414-0486

                            *Attorneys for Plaintiff Christopher Chester*

1   DATED:  July 28, 2022          OFFICE OF COUNTY COUNSEL

2

3

4                               By:     /s/ Jonathan C. McCaverty
                                        JONATHAN C. MCCAVERTY
5

6                               Attorneys for Defendant
                                LOS ANGELES COUNTY SHERIFF'S
7                               DEPARTMENT

8

9

10  DATED:  July 28, 2022          MILLER BARONDESS, LLP

11

12                              By:     /s/ Mira Hashmall
                                        MIRA HASHMALL
13

14                              Attorneys for Defendants
15                              COUNTY OF LOS ANGELES, LOS
                                ANGELES COUNTY FIRE
16                              DEPARTMENT, JOEY CRUZ, RAFAEL
                                MEJIA, MICHAEL RUSSELL, RAUL
17                              VERSALES, ARLIN KAHAN and
                                TONY IMBRENDA
18

19

20                        **ECF CERTIFICATION**

21        The filing attorney attests that Defendants' counsel concurs in the content of,

22  and has authorized, this filing.

23

24

25

26

27

28