LUIS LI (State Bar No. 156081)
Luis.Li@wsgr.com
ERIC P. TUTTLE (State Bar No. 248440)
Eric.Tuttle@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
633 West Fifth Street, Suite 1550
Los Angeles, California 90071
Telephone:   (323) 210-2900
Facsimile:   (866) 974-7329

CRAIG JENNINGS LAVOIE (State Bar No. 293079)
Craig.Lavoie@mto.com
JENNIFER L. BRYANT (State Bar No. 293371)
Jennifer.Bryant@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:   (213) 683-9100
Facsimile:   (213) 687-3702

Attorneys for Plaintiff Vanessa Bryant

[*Additional counsel continued on next page*]

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| VANESSA BRYANT,<br><br>        Plaintiff,<br><br>    vs.<br><br>COUNTY OF LOS ANGELES, et al.,<br><br>        Defendants. | Case No. 2:20-cv-09582-JFW-E (Consolidated with 2:20-cv-10844-JFW-E)<br><br>**[PROPOSED] FINAL PRE-TRIAL CONFERENCE ORDER**<br><br>Trial Date:  August 10, 2022<br><br>The Honorable John F. Walter |
| CHRISTOPHER L. CHESTER,<br><br>        PLAINTIFF,<br><br>    vs.<br><br>COUNTY OF LOS ANGELES, et al.,<br><br>        Defendants. | |

[*Additional counsel, continued from previous page*]
JEROME M. JACKSON (State Bar No. 64238)
jmjlaw@aol.com
JEROME M. JACKSON LAW OFFICES
880 Apollo Street, Suite 238
El Segundo, California 90245
Telephone: (310) 726-4199
Facsimile: (310) 414-0486

Attorneys for Plaintiff Christopher L. Chester


LOUIS R. MILLER (State Bar No. 54141)
MIRA HASHMALL (State Bar No. 216842)
mhashmall@millerbarondess.com
JASON H. TOKORO (State Bar No. 252345)
CASEY B. SYPEK (State Bar No. 291214)
MILLER BARONDESS, LLP
1999 Avenue of the Stars, Suite 1000
Los Angeles, California 90067
Tel.: (310) 552-4400 | Fax: (310) 552-8400

Attorneys for Defendants County of Los Angeles, Los Angeles County Fire Department, Joey Cruz, Rafael Mejia, Michael Russell, Raul Versales, Tony Imbrenda and Arlin Kahan


JONATHAN C. McCAVERTY (State Bar No. 210922)
*Principal Deputy County Counsel*
jmccaverty@counsel.lacounty.gov
OFFICE OF THE COUNTY COUNSEL
General Litigation Division
500 West Temple Street, Suite 468
Los Angeles, California 90012
Tel.: (213) 974-1828 | Fax: (213) 626-7446

Attorneys for Defendant Los Angeles County Sheriff's Department

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

1.  THE PARTIES ........................................................................ 2

2.  JURISDICTION AND VENUE................................................ 3

3.  TRIAL ESTIMATE ............................................................... 4

4.  FORM OF TRIAL .................................................................. 5

5.  FACTS ADMITTED AND STIPULATED............................. 5

6.  STIPULATED FACTS SUBJECT TO OBJECTION ............. 6

7.  CLAIMS AND DEFENSES TO BE PRESENTED AT TRIAL ..................... 6

8.  ISSUES TO BE TRIED ........................................................ 21

9.  DISCOVERY ........................................................................ 21

10. DISCLOSURES AND EXHIBITS ....................................... 22

11. WITNESSES ......................................................................... 22

12. PENDING AND CONTEMPLATED MOTIONS ................ 23

13. BIFURCATION .................................................................... 24

14. EFFECT OF THIS ORDER .................................................. 24

Pursuant to the Court's Order Requiring Parties to File Revised Pre-Trial Documents (Dkt. 341) and Local Rule 16, the parties, by and through their undersigned counsel, hereby submit their revised Proposed Pre-Trial Conference Order.

The parties originally held Local Rule 16-2 conferences on December 23, 2021.  The conference regarding the *Bryant* case was attended by Luis Li, Craig Jennings Lavoie, Jennifer Bryant, Eric Tuttle, Naomi Strauss, and Quincy Rush, representing Plaintiff Vanessa Bryant; and Skip Miller, Jon McCaverty, Mira Hashmall, and Jason H. Tokoro, representing Defendants.  The conference regarding the *Chester* case was attended by Jerome M. Jackson, representing Plaintiff Christopher Chester; and Skip Miller and Jason H. Tokoro representing Defendants. Following the continuance of the trial, the parties held further conferences on June 7, 2022, June 13, 2022, and August 1, 2022.

Following pretrial proceedings, pursuant to Federal Rule of Civil Procedure 16 and Local Rule 16, IT IS ORDERED:

**1.      THE PARTIES**

The parties are:

   **a.**      Plaintiff Vanessa Bryant

   **b.**      Plaintiff Christopher L. Chester

   **c.**      Defendant County of Los Angeles

   **d.**      Defendant Los Angeles County Sheriff's Department

   **e.**      Defendant Los Angeles County Fire Department

Each of these parties has been served and has appeared.  All other defendants named in the pleadings and not identified in the preceding paragraph are named as defendants for Plaintiffs' state law claims.  The Court bifurcated those state law claims at the July 8, 2022 conference.

The operative pleadings which raise the issues are Bryant's First Amended Complaint (Dkt. 54),[1] Chester's Second Amended Complaint (Chester Dkt. 54), Defendants' Answer to Bryant's First Amended Complaint (Dkt. 75), and Defendants' Answer to Chester's Second Amended Complaint (Chester Dkt. 56).

## 2.    JURISDICTION AND VENUE

The parties disagree as to whether there is federal jurisdiction.

**Plaintiffs' Position**:  Defendants never contested jurisdiction for the first year or so of this case.  Defendants moved for summary judgment on the issue of Plaintiffs' standing (Dkt. 169-1 at 16-17), which Plaintiffs opposed (Dkt. 190 at 24-25).  The Court denied Defendants' motion "[f]or the reasons stated in Plaintiff's Opposition." (Dkt. 227 at 2.)  Plaintiffs have standing for the reasons explained in their briefs in opposition to summary judgment.

At the February 4, 2022 Pretrial Conference, the Court once again rejected Defendants' meritless standing argument, ruling:  "[W]ith respect to the standing issue that the defendants continually raise in this case, I conclude that the plaintiff does have Article III standing to pursue these claims."  (Dkt. 285, Hr'g Tr. 8:5-8.) The issue of standing has thus already been resolved by this Court.

**Defendants' Position**:  Article III standing is a jurisdictional requirement. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).  Plaintiffs do not have standing because they have not demonstrated they suffered a "concrete and particularized" injury-in-fact caused by Defendants.  *Id.*  A "mere risk of future harm" is not a concrete harm.  *Id.* at 2210-11.  In *TransUnion*, class members whose misleading credit reports were not publicly disseminated but were maintained internally did not have standing.  *Id.* at 2208-210.  The plaintiffs argued they still had standing because of the "risk of future harm"—that the misleading reports might one

---

[1] Unless otherwise indicated, all docket citations refer to the *Bryant* case (2:20-cv-09582-JFW-E).

day be released to third parties. *Id*. at 2210.  The Supreme Court rejected their "risk of future harm" argument. *Id*. at 2211.

Bryant claims to have been injured based on the "risk" images of her deceased husband and daughter may one day be publicly disseminated by Defendants.  (*See* Bryant Depo. Tr. 7:14-8:9.)  Bryant testified that "[i]t's possible that one day these will surface."  (*Id*. at 50:3-10.)  But when asked whether any photos had actually surfaced, she answered: "Not to my knowledge." (*Id*. at 52:8-15.)  Bryant's fear stems in large part from comments or photos received through social media and other unidentified third-party sources that cannot be traced back to Defendants.

Chester also claims to have been injured based on the "risk" images of his deceased wife and daughter may one day be publicly disseminated by Defendants. But when asked whether he has seen any crash site photos the County, LASD or LACFD, Chester said he never has.  (*See* Chester Tr. at 36:7-23.)  He also testified that he no knowledge of any County photos of his family being publicly disseminated. *(Id.* at 13:21-14:21.)  *TransUnion* holds that Plaintiffs' fear is not a concrete injury for purposes of Article III standing.

*      *      *

The parties agree that, if there is Article III standing, then the Court would have jurisdiction over this action pursuant to 28 U.S.C. sections 1331 and 1343 because Plaintiffs bring claims for violation of the Fourteenth Amendment of the United States Constitution under 42 U.S.C. section 1983.

Venue is proper in this District pursuant to 28 U.S.C. section 1391(b), because Defendants are public agencies situated in Los Angeles County and because the acts or omissions giving rise to Plaintiffs' action occurred in the Central District of California.

## 3.    TRIAL ESTIMATE

**Plaintiffs' Position:**  Given the number of witnesses and the need to rely on extensive circumstantial evidence to establish the full extent of Defendants'

misconduct, Plaintiffs believe 15 days would be appropriate, but they are preparing their case based on the 9-day estimate the Court provided at the July 26, 2022 conference.

**Defendants' Position:**  At the July 26, 2022 hearing, the Court stated that it is allotting 9 days for the consolidated trial.  Defendants agree with the Court's trial allotment.

**4.      FORM OF TRIAL**

The trial is to be a jury trial.  Defendants would waive jury if Plaintiffs were to agree.

**5.      FACTS ADMITTED AND STIPULATED**

The following facts are admitted and require no proof:

a.      On the morning of Sunday, January 26, 2020, Plaintiff Vanessa Bryant's husband, Kobe Bryant, and thirteen-year-old daughter, Gianna Bryant, and Plaintiff Christopher Chester's wife, Sarah Chester, and thirteen-year-old daughter, Payton Chester, were flying by helicopter to Thousand Oaks, California, where Gianna Bryant and Payton Chester were set to play in a youth basketball tournament on a team coached by Kobe.  Kobe, Gianna, Sarah, and Payton were joined on the helicopter by (1) thirteen-year-old Alyssa Altobelli, a teammate of Gianna and Payton on the basketball team, and Alyssa's parents, John Altobelli and Keri Altobelli; (2) thirty-eight-year-old Christina Mauser, an assistant coach for the girls' basketball team; and (3) the pilot, Ara Zobayan.

b.      At approximately 9:45 a.m., the helicopter carrying Kobe, Gianna, Sarah, and Payton crashed into a hillside in the Santa Monica Mountains, killing everyone onboard.  Large portions of the helicopter came to rest near a mountain-biking trail on a hillside east of the Los Virgenes Municipal Water District in Calabasas, California.

c.  At 9:47 a.m., the Los Angeles County Sheriff's Department put out a radio call requesting that its personnel respond to a helicopter crash in Calabasas near Los Virgenes Road.

d.  At 11:24 a.m., TMZ—an online media outlet—reported that Kobe Bryant had died in a helicopter crash in Calabasas.

**6.  STIPULATED FACTS SUBJECT TO OBJECTION**

None.

**7.  CLAIMS AND DEFENSES TO BE PRESENTED AT TRIAL**

**Plaintiffs**:

a.  **Claims.**  Plaintiffs plan to pursue a 42 U.S.C. § 1983 *Monell* claim against each Defendant.  Plaintiffs may establish Defendants' *Monell* liability under one or both of the following theories:

        i.  <u>Failure to Establish Policy or Train</u>:  Plaintiffs allege Defendants' failure to adopt or enforce a needed policy and failure to train their employees caused the deprivation of Plaintiffs' rights under the Fourteenth Amendment to the United States Constitution.

        ii.  <u>Custom or Practice Theory</u>:  Plaintiffs allege Defendants' widespread or longstanding custom or practice caused the deprivation of Plaintiffs' rights under the Fourteenth Amendment to the United States Constitution.

b.  **Elements.**  The parties disagree regarding the elements required to establish Defendants' *Monell* liability, and have briefed their respective positions in their Joint Memorandum Regarding Disputed Jury Instructions, filed under separate cover.  Below, Plaintiffs and Defendants each set forth their positions.

**Plaintiffs' Position**

**42 U.S.C. § 1983 – Failure to Establish Policy or Train**:

With respect to Plaintiffs' § 1983 claim based on a policy of inaction, the following elements apply:

1. The acts of one or more employees of the defendant deprived the plaintiff of his or her particular rights under the United States Constitution;

2. The one or more employees of the defendant acted under color of state law;

3. The policies or training of the defendant were not adequate to prevent violations of law by its employees or to train its employees to handle the usual and recurring situations with which they must deal;

4. The defendant was deliberately indifferent to the substantial risk that its policies were inadequate to prevent violations of law by its employees or to the known or obvious consequence of its failure to adopt or enforce a policy or train its employees adequately; and

5. The failure of the defendant to prevent violations of law by its employees, adopt or enforce a policy, or provide adequate training caused the deprivation of the plaintiff's rights by the one or more employees of the defendant; that is, the defendant's failure to prevent violations of law by its employees, adopt or enforce a policy, or train its employees played a

[PROPOSED] FINAL PRE-TRIAL CONFERENCE ORDER

substantial part in bringing about or actually causing the injury or damage to the plaintiff.

**42 U.S.C. § 1983 – Custom or Practice Theory:**

With respect to Plaintiffs' § 1983 claim based on a custom or practice theory, the following elements apply:

1. The acts of one or more employees of the defendant deprived the plaintiff of his or her particular rights under the United States Constitution;

2. The one or more employees of the defendant acted under color of state law;

3. The one or more employees of the defendant acted pursuant to a widespread or longstanding practice or custom of defendant; and

4. The defendant's widespread or longstanding practice or custom caused the deprivation of the plaintiff's rights by the one or more employees of the defendant; that is, the defendant's widespread or longstanding practices or customs were so closely related to the deprivation of the plaintiff's rights as to be the moving force that caused the ultimate injury.

As referenced above, both theories of *Monell* liability require a showing that the acts of one or more employees of the defendant deprived the plaintiff of his or her particular rights under the United States Constitution.  The elements of the constitutional rights violation are:

1. One or more employees of the defendant intruded upon the plaintiff's right to personal privacy with

respect to his or her spouse's and daughter's remains and death scenes through the unwarranted taking or sharing of photos of their remains or unwarranted revealing of details of the manner of their deaths or suffering in their final moments.

2. The conduct of the one or more employees of the defendant shocks the conscience.

**Defendants' Position**

**42 U.S.C. § 1983 – Practice or Custom**:  To prevail on their Section 1983 claims based on a practice or custom theory against the Agency Defendants, Plaintiffs must each first establish a constitutional violation by proving Joey Cruz, Rafael Mejia, Michael Russell, Raul Versales, Anthony Imbrenda, or Arlin Kahan:

(1) violated their federal right to privacy by engaging in public dissemination of death images of their family members;

(2) was acting under color of law;

(3) acted pursuant to a widespread or longstanding practice or custom of the Defendants of engaging in public dissemination of images of human remains; and

(4) that the dissemination of images of Plaintiffs' deceased relatives shocks the conscience and offends the community's sense of fair play and decency.

Next, Plaintiffs must also each establish the following elements to establish *Monell* liability against the Agency Defendants based on a practice or custom:

[PROPOSED] FINAL PRE-TRIAL CONFERENCE ORDER

1                         (1) the Agency Defendants have a widespread or

2                         longstanding practice or custom of engaging in public

3                         dissemination of images of human remains;

4                         (2) the Agency Defendants knew, or it should have been

5                         obvious to them, that this widespread or longstanding

6                         practice or custom was likely to result in the deprivation of

7                         Plaintiffs' substantive due process rights under the

8                         Fourteenth Amendment through the publication of images

9                         of Plaintiff's deceased relatives;

10                       (3) the widespread or longstanding practice or custom of

11                       the Agency Defendants of engaging in public

12                       dissemination of images of human remains caused the

13                       deprivation of Plaintiffs' substantive due process rights

14                       under the Fourteenth Amendment; and

15                       (4) Plaintiffs were harmed as a result of the Agency

16                       Defendants' widespread or longstanding practice or

17                       custom of engaging in public dissemination of images of

18                       human remains.

19        **<u>42 U.S.C. § 1983 – Failure to Train</u>**:  To prevail on their

20        Section 1983 claims based on a failure to train theory against the

21        Agency Defendants, Plaintiffs must each first establish a

22        constitutional violation by proving Joey Cruz, Rafael Mejia,

23        Michael Russell, Raul Versales, Anthony Imbrenda, or Arlin

24        Kahan:

25                       (1) violated their federal right to privacy by engaging in

26                       public dissemination of death images of their family

27                       members;

28                       (2) was acting under color of law; and

1    (3) that the dissemination of images of Plaintiffs' deceased

2    relatives shocks the conscience and offends the

3    community's sense of fair play and decency.

4    Next, Plaintiffs must also each establish the following elements

5    to establish *Monell* liability against the Agency Defendants for

6    their failure to train:

7    (1) the Agency Defendants were on notice that they

8    needed to train their employees on the sharing of crash

9    scene photos depicting human remains;

10    (2) the Agency Defendants failed to adequately train their

11    employees on the sharing of crash scene photos depicting

12    human remains;

13    (3) the inadequacy of the Agency Defendants' training

14    amounted to deliberate indifference to the rights of

15    Plaintiffs such that the Agency Defendants knew that it

16    would likely result in a deprivation of substantive due

17    process rights under the Fourteenth Amendment through

18    publication of images of Plaintiffs' deceased relatives;

19    (4) Plaintiffs' substantive due process rights under the

20    Fourteenth Amendment relating to the public

21    dissemination of images of Plaintiff's deceased relatives

22    were clearly established at the time of the alleged conduct

23    by Joey Cruz, Rafael Mejia, Michael Russell, Raul

24    Versales, Anthony Imbrenda, or Arlin Kahan;

25    (5) the failure of the Agency Defendants to provide

26    adequate training was the cause of the deprivation of

27    Plaintiffs' substantive due process rights under the

28    Fourteenth Amendment; and

- 11 -

(6) Plaintiffs were harmed as a result of the Agency Defendants' failure to adequately train their employees on the sharing of crash scene photos depicting human remains.

c.   **Key Evidence:**[2]

In brief, the key evidence Plaintiffs rely on for their *Monell* claim is as follows.

42 U.S.C. § 1983 – Failure to Establish Policy or Train

The following evidence supports the elements for Plaintiffs' failure to train theory:

1.   The acts of one or more employees of the defendant deprived the plaintiff of his or her particular rights under the United States Constitution;

♦ See evidence regarding violation of Fourteenth Amendment right to control death images below.

2.   The one or more employees of the defendant acted under color of state law;

♦ Testimony and prior admissions by Sheriff's and Fire Department employees that they took, received, or shared photos of Plaintiffs' loved ones' remains while on duty, at work-related functions, and/or via access provided by their jobs as public employees.

---

[2] Pursuant to Local Rule, Plaintiffs herein set forth "in brief" the "key evidence" related to each element of each claim.  (*See* Local Rules, App'x A, Chapter I – 139.) In keeping with the instruction of the Local Rules, and to avoid an overlong document, Plaintiffs do not set forth each piece of evidence they intend to offer at trial and reserve the right to introduce evidence at trial beyond the summaries provided in this document.  The "key evidence" is set out by Plaintiffs and such listing does not constitute agreement by Defendants.

♦ Documents evidencing transmission of text and picture
messages while relevant employees were on duty.

♦ Documents evidencing Defendants' internal investigation
findings that employees took and shared improper photos of
the crash victims' remains while on duty or at social functions
for work.

3.   The policies or training of the defendant were not adequate to
prevent violations of law by its employees or to train its
employees to handle the usual and recurring situations with
which they must deal;

♦ Testimony and prior admissions by Sheriff's Department and
Fire Department employees regarding (i) absence of policies
and training; and (ii) failure to enforce policies regarding use
of personal cell phones.

♦ Prior admissions by Sheriff Alex Villanueva regarding
Sheriff's Department's "deficient" policy with regard to
photos.

♦ Documents evidencing an absence of policies and training in
January 2020.

♦ Documents evidencing changes (or contemplated changes) to
Defendants' policies regarding photos of human remains
following the accident in January 2020.

♦ Defendants' interrogatory responses regarding absence of
policies and training.

4.   The defendant was deliberately indifferent to the substantial risk
that its policies were inadequate to prevent violations of law by
its employees or to the known or obvious consequence of its

- 13 -
[PROPOSED] FINAL PRE-TRIAL CONFERENCE ORDER

failure to adopt or enforce a policy or train its employees adequately; and

♦ Testimony and prior admissions by Sheriff's Department and Fire Department employees regarding (i) employees' practice of taking photos of human remains using personal cell phones; (ii) Defendants' knowledge that employees in January 2020 routinely used personal cell phones to photograph work-related environments, including deceased individuals; and (iii) employees' lack of awareness of constitutional right to privacy in death images.

♦ Expert testimony by Adam Bercovici regarding widespread practice in Southern California law enforcement of taking and sharing photographs of human remains for personal, non-law-enforcement reasons.

♦ Video and audio recordings of Sheriff Villanueva acknowledging long-standing problem of "death books" in law enforcement.

♦ Testimony and documents evidencing Defendants' decision to try to sweep the misconduct under the rug rather than investigate.

♦ Testimony and documents evidencing an absence of discipline for all but a single member of the Sheriff's Department involved in taking and sharing the improper photos, and a mere two-day suspension for Joey Cruz, who displayed photos of the victims' remains in a bar.

♦ Documents evidencing Sheriff's Department posting pixelated photos of deceased and injured members of the public on Department-controlled social media accounts.

- 14 -

♦ Sheriff's Department and Fire Department documents evidencing prior incidents of improper conduct involving photos of human remains.

5.    The failure of the defendant to prevent violations of law by its employees, adopt or enforce a policy, or provide adequate training caused the deprivation of the plaintiff's rights by the one or more employees of the defendant; that is, the defendant's failure to prevent violations of law by its employees, adopt or enforce a policy, or train its employees played a substantial part in bringing about or actually causing the injury or damage to the plaintiff.

♦ Testimony by line-level Sheriff's and Fire Department employees regarding (i) their past practices with respect to taking photos of human remains while on duty; (ii) their reasons for taking, receiving, and sharing photos of the accident victims' remains; (iii) their understanding of policies in place at the time of the accident; and (iv) training they had received (and not received) up through the time of the accident.

♦ Prior admissions by Sheriff Alex Villanueva regarding the Sheriff's Department's "deficient" policy with regard to photos.

♦ Expert testimony by Adam Bercovici regarding the need to train line-level employees regarding photographing of deceased individuals and what law enforcement leaders would reasonably expect to occur absent such training.

- 15 -

♦ Documents evidencing Sheriff's Department's changed policy regarding photos of human remains following helicopter accident.

42 U.S.C. § 1983 – Custom or Practice Theory

The following evidence supports the elements for Plaintiffs' custom or practice theory:

1.  The acts of one or more employees of the defendant deprived the plaintiff of his or her particular rights under the United States Constitution;

    ♦ See evidence regarding violation of Fourteenth Amendment right to control death images below.

2.  The one or more employees of the defendant acted under color of state law;

    ♦ See evidence for color of law requirement above.

3.  The one or more employees of the defendant acted pursuant to a widespread or longstanding practice or custom of defendant; and

    ♦ Testimony and prior admissions by Sheriff's Department and Fire Department employees regarding (i) the practice of employees taking photos of human remains using personal cell phones; and (ii) Defendants' knowledge that employees in January 2020 routinely used personal cell phones to photograph work-related environments, including deceased individuals.

    ♦ Expert testimony by Adam Bercovici regarding widespread practice in Southern California law enforcement of taking and sharing photographs of human remains for personal, non-law-enforcement reasons.

- 16 -
[PROPOSED] FINAL PRE-TRIAL CONFERENCE ORDER

- ♦ Video and audio recordings of Sheriff Villanueva acknowledging long-standing problem of "death books" in law enforcement.

- ♦ Documents evidencing Sheriff's Department posting pixelated photos of deceased and injured members of the public on Department-controlled social media accounts.

- ♦ Sheriff's Department and Fire Department documents evidencing prior incidents of improper conduct involving photos of human remains.

- ♦ Testimony and documents evidencing Defendants' decision to try to sweep the misconduct under the rug rather than investigate.

- ♦ Testimony and documents evidencing an absence of discipline for all but a single member of the Sheriff's Department involved in taking and sharing the improper photos, and a mere two-day suspension for Joey Cruz, who displayed photos of the victims' remains in a bar.

4. The defendant's widespread or longstanding practice or custom caused the deprivation of the plaintiff's rights by the one or more employees of the defendant; that is, the defendant's widespread or longstanding practices or customs were so closely related to the deprivation of the plaintiff's rights as to be the moving force that caused the ultimate injury.

- ♦ Testimony and prior admissions by line-level Sheriff's and Fire Department employees regarding (i) their past practices with respect to taking photos of human remains while on duty; (ii) their reasons for taking, receiving, and sharing photos of the accident victims' remains; and (iii) the absence

- 17 -

of Department-provided equipment to take on-the-job photos, despite Department expectation to take photos.

♦ Prior admissions by Sheriff Alex Villanueva regarding motivations for members of law enforcement to take and retain human remains photos.

Underlying Constitutional Violation – Both *Monell* Theories

With respect to both *Monell* theories, the following evidence supports the elements of the constitutional rights violation:

1.    One or more employees of the defendant intruded upon the plaintiff's right to personal privacy with respect to his or her spouse's and daughter's remains and death scenes through the unwarranted taking or sharing of photos of their remains or unwarranted revealing of details of the manner of their deaths or suffering in their final moments.

♦ Testimony and prior admissions by Sheriff's and Fire Department personnel regarding, *inter alia*, (i) the taking, receiving, sharing, and displaying of photos of the victims' remains; (ii) the condition of the remains in the photos taken, received, shared, and displayed; (iii) identification of Kobe Bryant in photos taken, received, shared, and displayed; (iv) the absence of any legitimate purpose in taking and sharing photos of the victims' remains; (v) the findings of the Sheriff's Department's and Fire Department's investigations regarding their personnel's improper taking and sharing of photos of the victims' remains.

♦ Testimony by Coroner's Office personnel regarding the condition of Kobe and Gianna Bryant's remains and the condition of Sarah and Payton Chester's remains.

- 18 -

- ◆ Testimony by Victor Gutierrez regarding Joey Cruz displaying photos of the crash victims' remains at a bar in Norwalk.

- ◆ Evidence relating to Defendants' intentional deletion of evidence, failure to preserve evidence, and failure to produce evidence, including (i) testimony and prior admissions regarding Sheriff Villanueva's deletion order, Tony Imbrenda's self-serving deletion of evidence and directive to other Fire Department personnel to do the same, the disposal of cell phones by Sheriff's Department employees, and Joey Cruz's intentional wiping of his cell phone; (ii) documents evidencing selective deletion of text-message records; and (iii) Defendants' interrogatory responses regarding failure to preserve evidence.

- ◆ False exculpatory statements by Sheriff's and Fire Department personnel regarding their conduct with the photos.

- ◆ Documents evidencing the Sheriff's and Fire Department's findings regarding their employees' improper taking and sharing photos of the crash victims' remains.

- ◆ Documents evidencing transmission of text and picture messages by Sheriff's and Fire Department personnel in days and weeks following crash.

- ◆ Testimony by Thomas Pikor regarding the identities and professions of recipients of text and photo messages sent by Sheriff's and Fire Department personnel.

- ◆ Documents evidencing photos of human remains from accident scene posted to social media.

♦ Surveillance footage showing Joey Cruz displaying photos of the crash victims' remains, including Kobe Bryant's remains.

♦ Testimony by Jessica Wells about being shown crash-scene photos by a law enforcement officer three days after the accident.

♦ Testimony by Jennifer Bolden regarding a bar patron's detailed description of non-public details of Kobe and Gianna's remains based on photos shown to the patron by a friend in law enforcement.

2.   The conduct of the one or more employees of the defendant shocks the conscience.

♦ Testimony and prior admissions by Sheriff's and Fire Department employees regarding the reasons for their conduct.

♦ Testimony by Ralph Mendez and Luella Weireter (citizens who complained to Sheriff's and Fire Department, respectively) regarding conduct they observed by Defendants' employees.

♦ Sheriff Villanueva's prior admissions regarding "disgusting" nature of deputies' conduct.

♦ Fire Department letters regarding the reprehensible conduct by employees Tony Imbrenda, Brian Jordan, and Arlin Kahan.

♦ Testimony by Coroner's Office personnel regarding condition of Kobe and Gianna Bryant's remains and the condition of Sarah and Payton Chester's remains.

1    **Defendants**:

2    **a.**    **Affirmative Defenses**.  Due to the Court's bifurcation ruling,

3    Defendants do not intend to pursue any affirmative defenses at trial.

4    **8.    ISSUES TO BE TRIED**

5    In view of the admitted facts and the elements required to establish the claims

6    and affirmative defenses, the following issues remain to be tried:

7    **a.**    Whether Plaintiffs' constitutional rights under the Fourteenth

8    Amendment were violated.

9    **b.**    Whether Defendants are liable (*Monell*) for violation of Plaintiffs'

10    constitutional rights under the Fourteenth Amendment.

11    **c.**    Whether Plaintiffs are entitled to damages.

12    Defendants also contend that the issue of whether Plaintiffs suffered injury-

13    in-fact caused by Defendants remains to be adjudicated.  Plaintiffs disagree.  (*See*

14    Dkt. 285, Hr'g Tr. 8:5-8 ["[W]ith respect to the standing issue that the defendants

15    continually raise in this case, I conclude that the plaintiff does have Article III

16    standing to pursue these claims."].)

17    **9.    DISCOVERY**

18    The parties are conducting the deposition of expert Marc A. Cohen on

19    August 1, 2022.  Per the Court's ruling at the July 26, 2022 hearing, Plaintiffs may

20    also designate a rebuttal expert by August 1, 2022.  To the extent Plaintiffs do so,

21    Defendants reserve the right to seek discovery and a deposition from that rebuttal

22    expert as ordered by the Court at the July 26, 2022 hearing.

23    With respect to Kelli Beard, a third-party witness who Plaintiffs intend to call

24    at trial, Plaintiffs have informed Defendants that, although they do not control or

25    represent Ms. Beard, they do not oppose a deposition for her if Defendants wish to

26    seek one, and Plaintiffs' understanding is that Ms. Beard would be willing to sit for

27    a deposition if necessary.

28    All other discovery is complete.

## 10.    DISCLOSURES AND EXHIBITS

Each party believes it has made all disclosures required by Federal Rule of Civil Procedure 26(a)(3).

The Joint Exhibit List has been filed under separate cover as required by L.R. 16-6.1.  (Dkt. 290.)  The parties filed an Updated Pre-Trial Exhibit Stipulation on July 16, 2022.  (Dkt. 328.)  Unless all parties agree that an exhibit shall be withdrawn, all exhibits will be admitted without objection at trial, except those exhibits that the Pre-Trial Exhibit Stipulation lists as being objected to by Plaintiffs or Defendants.  The objections and grounds therefore are listed in the Pre-Trial Exhibit Stipulation.

## 11.    WITNESSES

The parties filed their Witness Testimony Summaries and Time Estimates on June 27, 2022, as required by Section 6(d) of the Amended Scheduling and Case Management Order.  (Dkt. 300; Chester Dkt. 222.)  Only the witnesses identified in those lists will be permitted to testify (other than solely for impeachment).

The parties do not intend to present evidence by way of deposition testimony. Plaintiffs currently intend to call Mark Flores, William Jaeger, Anthony Marrone, and William McCloud to testify live regarding matters within their personal knowledge as well as matters to which they testified at deposition as 30(b)(6) representatives for their respective departments.  However, in the event time constraints at trial make live testimony impracticable, Plaintiffs may seek to introduce these witnesses' designated 30(b)(6) deposition testimony filed on July 28, 2022.  (Dkt. 343, 344, 346, 347.)  Both Plaintiffs and Defendants intend to call former Fire Captain Brian Jordan to testify live but have designated his deposition testimony in the event he is unavailable.  (Dkt. 342, 345).

Plaintiffs intend to offer testimony by two retained expert witnesses, Adam Bercovici and David Freskos.  Defendants have submitted motions in limine to exclude testimony by Bercovici and Freskos.

1   Defendants intend to offer testimony by retained expert Dr. Marc Cohen.  If
2   they do so, Plaintiffs intend to offer testimony by a rebuttal expert who will be
3   designated by August 1, 2022.

4   **12.   PENDING AND CONTEMPLATED MOTIONS**

5   The following law and motion matters and motions in limine, and no others,
6   are pending or contemplated:

7   **Plaintiffs' Motions in Limine**

8   **a.**   Plaintiffs' Motion in Limine #4: To Admit Eyewitness Statements

9   **b.**   Plaintiffs' Motion in Limine #5: To Admit Recordings and Letters

10   **Defendants' Motions in Limine**

11   **a.**   Defendants' Motion in Limine #1: To Exclude Evidence of
12   Photographs and Witnesses Who Have Nothing to Do With and No
13   Connection to the County

14   **b.**   Defendants' Motion in Limine #2: To Exclude Expert Testimony of
15   Adam Bercovici

16   **c.**   Defendants' Motion in Limine #3: To Exclude Evidence of Captain
17   Vander Horck's Job Transfer

18   **d.**   Defendants' Motion in Limine #4: To Exclude Expert Testimony of
19   David Freskos

20   **Plaintiffs' Other Motions**

21   Plaintiffs will file motions to recover attorneys' fees and costs should either
22   of them be a prevailing party.

23   **Defendants' Other Motions**

24   Defendants anticipate moving for judgment as a matter of law under Federal
25   Rule of Civil Procedure 50 and reserve the right to renew the motion or move for a
26   new trial as necessary.  Defendants will file a motion to recover attorneys' fees and
27   costs should they be a prevailing party.

28

- 23 -

**13.   BIFURCATION**

At the July 8, 2022 Pretrial Conference Hearing, the Court ordered that the state law and federal law claims be bifurcated for trial, and that trial in this matter will proceed first on only the federal law claims.

**14.   EFFECT OF THIS ORDER**

The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues remaining to be litigated, this Final Pretrial Conference Order shall supersede the pleadings and govern the course of the trial of this cause, unless modified to prevent manifest injustice.

DATED: _____, 2022   _____

Hon. John F. Walter

[PROPOSED] FINAL PRE-TRIAL CONFERENCE ORDER

Approved as to form and content.

DATED:  August 1, 2022          WILSON SONSINI GOODRICH & ROSATI,
                                Professional Corporation


                                By:  _____/s/ Luis Li_____
                                              LUIS LI

                                Attorneys for Plaintiff
                                VANESSA BRYANT

DATED:  August 1, 2022          JEROME M. JACKSON LAW OFFICES


                                By:  _____/s/ Jerome M. Jackson_____
                                          JEROME M. JACKSON

                                Attorneys for Plaintiff
                                CHRISTOPHER L. CHESTER

DATED:  August 1, 2022          OFFICE OF COUNTY COUNSEL


                                By:  ____/s/ Jonathan C. McCaverty_____
                                          JONATHAN C. McCAVERTY

                                Attorneys for Defendant
                                LOS ANGELES COUNTY SHERIFF'S
                                DEPARTMENT

DATED:  August 1, 2022

MILLER BARONDESS, LLP

By: _____/s/ Mira Hashmall_____
MIRA HASHMALL

Attorneys for Defendants
COUNTY OF LOS ANGELES, LOS
ANGELES COUNTY FIRE
DEPARTMENT, JOEY CRUZ, RAFAEL
MEJIA, MICHAEL RUSSELL, RAUL
VERSALES, ARLIN KAHAN, and
TONY IMBRENDA

# **FILER ATTESTATION**

I, Luis Li, attest under Local Rule 5-4.3.4(a)(2)(i) that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized this filing.

Dated:  August 1, 2022

/s/ Luis Li
Luis Li

[PROPOSED] FINAL PRE-TRIAL CONFERENCE ORDER