LUIS LI (State Bar No. 156081)
Luis.Li@wsgr.com
ERIC P. TUTTLE (State Bar No. 248440)
Eric.Tuttle@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
633 West Fifth Street, Suite 1550
Los Angeles, California 90071
Telephone:  (323) 210-2900
Facsimile:   (866) 974-7329

CRAIG JENNINGS LAVOIE (State Bar No. 293079)
Craig.Lavoie@mto.com
JENNIFER L. BRYANT (State Bar No. 293371)
Jennifer.Bryant@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:  (213) 683-9100
Facsimile:   (213) 687-3702

Attorneys for Plaintiff Vanessa Bryant

[*Additional counsel continued on next page*]

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| VANESSA BRYANT,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>COUNTY OF LOS ANGELES, et al.,<br><br>　　　　Defendants. | Case No. 2:20-cv-09582-JFW-E (Consolidated with 2:20-cv-10844-JFW-E)<br><br>**JOINT STATEMENT REGARDING OPENING STATEMENTS**<br><br>Trial Date:  August 10, 2022<br><br>The Honorable John F. Walter |
| CHRISTOPHER L. CHESTER,<br><br>　　　　PLAINTIFF,<br><br>　vs.<br><br>COUNTY OF LOS ANGELES, et al.,<br><br>　　　　Defendants. | |

[*Additional counsel, continued from previous page*]

JEROME M. JACKSON (State Bar No. 64238)
jmjlaw@aol.com
JEROME M. JACKSON LAW OFFICES
880 Apollo Street, Suite 238
El Segundo, California 90245
Telephone: (310) 726-4199
Facsimile: (310) 414-0486

Attorneys for Plaintiff
CHRISTOPHER L. CHESTER

LOUIS R. MILLER (State Bar No. 54141)
smiller@millerbarondess.com
MIRA HASHMALL (State Bar No. 216842)
JASON H. TOKORO (State Bar No. 252345)
CASEY B. SYPEK (State Bar No. 291214)
MILLER BARONDESS, LLP
1999 Avenue of the Stars, Suite 1000
Los Angeles, California 90067
Tel.: (310) 552-4400 | Fax: (310) 552-8400

Attorneys for Defendants
COUNTY OF LOS ANGELES, LOS ANGELES COUNTY FIRE DEPARTMENT, JOEY CRUZ, RAFAEL MEJIA, MICHAEL RUSSELL, RAUL VERSALES, ARLIN KAHAN, and TONY IMBRENDA


JONATHAN C. McCAVERTY (State Bar No. 210922)
*Principal Deputy County Counsel*
jmccaverty@counsel.lacounty.gov
OFFICE OF THE COUNTY COUNSEL
General Litigation Division
500 West Temple Street, Suite 468
Los Angeles, California 90012
Tel.: (213) 974-1828 | Fax: (213) 626-7446

Attorneys for Defendant
LOS ANGELES COUNTY SHERIFF'S DEPARTMENT

Pursuant to the Court's order during the status conference on August 5, 2022, Plaintiffs Vanessa Bryant and Christopher Chester ("Plaintiffs") and Defendants jointly submit this brief regarding objections to the demonstrative slides that each side anticipates using in its opening statement. Copies of the disputed slides referenced in this briefing are attached to the Declaration of Craig Jennings Lavoie, filed concurrently with this brief.

## I.   PLAINTIFFS' OPENING STATEMENTS

### A.   *Bryant* Opening Slides 4-6

Defendants' Objection:

Slides 4-6 excerpt various portions of Deputy Fire Chief William McCloud's deposition during which he was asked questions about the discipline letters issued to Captains Jordan, Imbrenda, and Kahan (Trial Exhibits 26-28).  The Court denied in part Plaintiff motion *in limine* no. 5 and ruled that the LACFD discipline letters were inadmissible under Federal Rule of Evidence 407.  (*See* Dkt. 375; Aug. 5, 2022 Hearing Tr. at 83:11-87:5 ("[T]he Court concluded that the letters should be excluded under Federal Rule of Evidence 407.").)  The slides likewise should be excluded as inadmissible under Rule 407.

Chief McCloud is the head of the disciplinary arm of LACFD.  He did not respond to the January 26, 2020 crash.  His only role in connection with the incident was discipline.  That is why he was designated to testify as the Department's 30(b)(6) witness on topics directly related to LACFD's investigation and discipline, including Topic No. 14: "Any discipline or contemplated discipline of FIRE DEPARTMENT PERSONNEL related to taking, obtaining, possessing, using, and/or SHARING PHOTOS of the ACCIDENT SCENE or VICTIMS' REMAINS." (Plaintiff Bryant's Notice of 30(b)(6) Deposition to LACFD at 7.)  Plaintiffs never deposed Chief McCloud in his personal capacity.

During the deposition, Plaintiffs' counsel introduced the discipline letters as exhibits.  (*See, e.g.,* McCloud Depo Tr. at 136 (Jordan discipline letter – Trial

Exhibit 26), 155 (Imbrenda discipline letter – Trial Exhibit 27), 163 (Kahan discipline letter – Trial Exhibit 27).)  Chief McCloud was then asked a series of questions taken straight out of the discipline letters.  (*See* McCloud Depo. Tr. at 136-167.)    The deposition excerpts in Slides 4-6 come directly from that portion of Chief McCloud's deposition—Slide 4 (148:12-16), Slide 5 (151:5-10, 151:21-25), and Slide 6 (152:8-11).  They excerpt testimony by Chief McCloud about the Department's findings and conclusions that were the basis for disciplining Captains Jordan, Imbrenda and Kahan.  Plaintiffs included these same excerpts in their Notice of Designated Deposition Testimony for Chief McCloud, and Defendants have objected to them as irrelevant and inadmissible subsequent remedial measures. (Dkt. 347 at 85, 90-91.)

        This fits squarely within the remedial measures doctrine and Federal Rule of Evidence 407.  Otherwise, parties could do an end run around the rule by seeking to introduce deposition testimony about disciplinary matters, as Plaintiffs seek to do here.

        As the chart below makes clear, the deposition testimony reflects language taken directly out of Captain Jordan's disciplinary letter.

| Slide | Excerpted Testimony | Jordan Disciplinary Letter (Trial Exhibit 26) |
|---|---|---|
| 4 | Q: So did the department's investigation conclude that Captain Jordan's sharing of the photos with Captain Imbrenda did not serve any legitimate business purpose?  Correct?<br>A: Yes. | "As noted earlier, your photos had no intel value or *legitimate business purpose. . .*" |

| Slide | Excerpted Testimony | Jordan Disciplinary Letter (Trial Exhibit 26) |
|---|---|---|
| 5 | Q: So in addition to concluding that the photos served only to appeal to baser instincts and amounted to visual gossip, the department also concluded that Captain Jordan's actions eroded the dignity of the access [phonetic] team; correct?<br>A: Yes.<br>Q: In other words, the department concluded the – Captain Jordan's photos of the victim's remains offended the dignity of the deceased and their families; correct?<br>A; Yes. | "Instead, such photographs only served to *appeal to the baser instincts and desires for what amounted to visual gossip*. . . . your *actions only eroded what dignity remained* of the Willow incident. . . ." |
| 6 | Q: The department concluded that Captain Jordan's actions showed a lack of regard for the privacy of the deceased and their families; correct?<br>A: Yes. | "However, the Department also considers the aggravating circumstances as well, the foremost of which was your willingness to take photographs of the fuselage and human remains and then share them with a colleague, without any demonstrable regard for the public |

| Slide | Excerpted Testimony | Jordan Disciplinary Letter (Trial Exhibit 26) |
|---|---|---|
| | | trust, or the *dignity and privacy of the deceased or their families*." |

Plaintiffs' Response:

    Contrary to Defendants' objection, Federal Rule of Evidence 407 does not apply to the deposition testimony quoted in Slides 4-6, which is the testimony of LACFD's 30(b)(6) deponent[1] regarding the findings and conclusions of the Fire Department's internal investigation. Thus, Rule 407 provides no basis to strike those slides from Plaintiffs' opening statement. Defendants' contrary arguments rest on a fundamental misapplication of Rule 407's narrow exclusionary principle.

    Rule 407 prohibits evidence of subsequent measures "that would have made an earlier injury or harm less likely to occur" when admitted to prove "culpable conduct." Fed. R. Evid. 407. "Rule 407 applies only to remedial measures actually taken by defendants. It does not apply to defendants' internal investigations or reports created in the process of determining the appropriate remedial action." (Lavoie Decl. Ex. A [August 5, 2022 Hearing Tr.] at 85:3-6 (quoting *Hansen v. Werner Enterprises Inc.*, 2016 WL 7479349, at *4 (C.D. Cal. May 18, 2016)).) Thus, as the Court explained in its ruling on Plaintiffs' Motion in Limine No. 5, "internal investigations and findings from those investigations are not inadmissible under Rule 407." (Lavoie Decl. Ex. A [August 5, 2022 Hearing Tr.] at 85:8-9].)

---

[1] Contrary to Defendants' suggestion, Chief McCloud was designated to provide 30(b)(6) testimony concerning the Department's investigation and findings, including "All facts and details relating to any investigation or inquiry conducted by the FIRE DEPARTMENT or FIRE DEPARTMENT PERSONNEL regarding PHOTOS of the ACCIDENT SCENE or VICTIMS' REMAINS, including but not limited to the findings of any such investigation or inquiry."

The Ninth Circuit's unpublished decision in *Aguilar v. City of Los Angeles*, 853 F. App'x 92 (9th Cir. 2021), illustrates this principle. There, the Ninth Circuit held that the trial court erred in excluding the findings of LAPD's investigation of an in-custody death. *Id.* at 95. It reasoned that "[i]f the LAPD findings had prompted disciplinary action, policy changes, or the like, then evidence of those subsequent remedial actions would have been inadmissible to prove culpable conduct. But the LAPD findings themselves were retrospective, not remedial; they assessed what happened and whether the officers' actions were consistent with LAPD policy, without meting out discipline or changing LAPD policy." *Id.*

Similarly, in *Aranda v. City of McMinnville*, 942 F. Supp. 2d 1096 (D. Or. 2013), the court admitted over a Rule 407 objection a police department's "Use of Force Review" regarding an officer altercation. The Review analyzed the altercation using video and other evidence, describing "each stage of the encounter between the officers and [arrestee]." *Id.* at 1102. It found "that Heidt violated . . . Department policy by using more force than reasonably necessary," among other violations, and "expressed concern about Heidt's credibility based on discrepancies between his account of the events and the newly discovered video footage." *Id.* The court found that the Review was not remedial because of the "distinction" between "the actual disciplining of officers for their conduct, which could constitute a remedial measure, and the investigation that precedes a disciplinary process." *Id.* at 1104.

The same reasoning applies to McCloud's testimony quoted in Slides 4-6. In the deposition testimony on Slide 4, McCloud testified that LACFD's investigation concluded that Jordan had no legitimate purpose for sharing photos. In Slide 5, McCloud testified to LACFD's conclusion that Jordan's actions offended the dignity of the deceased and their families. And in Slide 6, McCloud testified that LACFD concluded that Jordan's actions evinced lack of respect for privacy. Like the investigative reports in *Aguilar* and *Aranda*, this testimony describes LACFD's findings and conclusions about historical facts, without imposing or describing any

form of remedial action. The testimony describes "what happened and whether the officers' actions were consistent with [LACFD] policy, without meting out discipline or changing [LACFD] policy." *Aguilar*, 853 F. App'x at 95.

Defendants argue that Chief McCloud's testimony is inadmissible because his testimony describes factual findings that are also recounted in LACFD's Notice of Intent to Discharge Jordan. Defendants do not cite a single case in which a court excluded testimony about an internal investigation under Rule 407 because those findings were incorporated into a disciplinary notice. This is because Rule 407 does not exclude a party's investigatory findings merely because the party relied upon them in taking a remedial action. It excludes only the remedial action itself. *See Aguilar*, 853 F. App'x at 95 (explaining that "[i]f the LAPD findings had prompted disciplinary action, policy changes, or the like, then evidence of those subsequent remedial actions would have been inadmissible to prove culpable conduct" but the findings would be admissible); *see also Prentiss & Carlisle Co. v. Koehring-Waterous Div. of Timberjack, Inc.*, 972 F.2d 6, 10 (1st Cir. 1992). ("The fact that the analysis may often result in remedial measures being taken (as occurred here) does not mean that evidence of the analysis may not be admitted."); *J.M. v. City of Milwaukee*, 249 F. Supp. 3d 920, 932 (E.D. Wis. 2017) ("The remedial act—firing [the police officer]—is not inextricably intertwined with the investigation leading to that act, namely the determination in the Discharge Proceedings that his search was unreasonable."). The mere fact that LACD incorporated its factual findings about Jordan's past conduct into a letter of discipline does not render those findings inadmissible at trial. *See Hansen*, 2016 WL 7479349, at *4 (holding that findings of internal accident investigation were not subsequent remedial measures even though they resulted in remedial actions, including the termination of an employee).

Nothing in the Court's ruling on Plaintiffs' Motion in Limine No. 5 suggests otherwise. In denying Plaintiffs' motion to admit Jordan's Notice of Discharge into evidence, the Court reasoned that the Notice itself "[was] disciplinary and part of the

disciplinary proceeding." (Lavoie Decl. Ex. A [August 5, 2022 Hearing Tr.] at 86:1-2.) The document's function—as stated on the face of the document itself—was to advise Jordan of LACFD's intent to discharge him from LACFD's service. (*Id*. at 86:23-24 ("[T]he whole reason for drafting the letters was to impose discipline.").) The Court found that redacting the portions of the Notice that referred to this disciplinary function was infeasible because "[e]ven with the proposed redactions, it's clear to the Court and it will be clear to the jury that these letters -- that these are letters of discipline." (*Id*. at 87:1-3.)

Here, by contrast, the testimony from McCloud that is quoted in these slides does not say anything about remedial actions taken by LACFD. McCloud does not state in these slides that LACFD decided to discipline Jordan for his conduct. He does not say anything about the nature or extent of the discipline imposed. The testimony merely states LACFD's conclusions about the past actions of one of its employees, which is admissible evidence not subject to Rule 407.

For these reasons, Plaintiffs should be permitted to use Slides 4-6 in their opening statement.

## II. DEFENDANTS' OPENING STATEMENT

### A. Defendants' Slide 5

Plaintiffs' Objection:

Defendants' Slide 5 is misleading and misrepresents Mr. Chester's deposition testimony. In this slide, Defendants use ellipses to eliminate key qualifying language from their deposition questions to Mr. Chester. When placed side-by-side, the misleading nature of Defendants' edits is clear (bold underlining signifies material omitted through Defendants' use of ellipses):

| **Defendants' Slide 5** | **Chester Depo. Tr. 14:5-21** |
|---|---|
| Q: …[D]o you know of any public dissemination – newspaper, television, Internet – of photos taken by personnel | Q: **Okay. I'll ask you about the bar. I'm well aware of the bar and I'm well aware of the banquet.** |

| | |
|---|---|
| at the L.A. County Sheriff's Department? Yes or no.<br><br>**A:** No.<br><br>**Q:** And I want to ask you the same question with respect to the L.A. County Fire Department….[D]o you know of any public dissemination, television, newspapers, Internet – any public dissemination of photos taken of the crash site by the…L.A. County Fire Department?<br><br>**A:** To date, no. | **Putting aside the bar and the banquet**, do you know of any public dissemination – newspaper, television, Internet – of photos taken by personnel at the L.A. County Sheriff's Department? Yes or no.<br><br>**A:** No.<br><br>**Q:** And I want to ask you the same question with respect to the L.A. County Fire Department.<br><br>**Putting aside the banquet, putting aside the bar, which we are all well aware of**, do you know of any public dissemination, television, newspapers, Internet – any public dissemination of photos taken of the crash site by the L.A. County Sher- -- LA County Fire Department?<br><br>**A:** To date, no. |

As the unedited testimony shows, Mr. Chester was testifying that he is unaware of public dissemination of graphic crash site photos *other than the dissemination at the bar and the banquet*—not that he is totally unaware of any public dissemination. Omitting the first portion of the question changes the meaning of both the question and Mr. Chester's response. Defendants should not be permitted to use Slide 5 without quoting the entire question.

Defendants' Response:

During his deposition, Mr. Chester unequivocally testified that he had no knowledge of any public dissemination via "*television, newspapers, Internet*" of photos taken by LASD and LACFD personnel.  That is the testimony that is excerpted in Defendants' Slide 5.

      Plaintiffs' counsel contends that Slide 5 is misleading because it leaves out a portion of the question that says "[p]utting aside the bar and the banquet." This qualifying language refers to the incidents involving Deputy Cruz at the bar in Norwalk and Captain Imbrenda at the Golden Mike Awards. There is no serious dispute about that.

      Nor can there be any serious dispute that these two incidents did *not* involve public dissemination of photos via *television, newspaper, and the internet*. That is what the deposition questions were asking about, and that is what Mr. Chester responded to. Therefore, removing this portion of the question from Slide 5 is not misleading at all. Mr. Chester's answer would not have changed whether or not the qualifying language was in the questions.

      **B.**    **Defendants' Slide 15**

<u>Plaintiffs' Objection:</u>

      Defendants' Slide 15 contains an embedded excerpt from Exhibit 677, which Plaintiffs have objected to on grounds of late disclosure. (*See* Dkt. 304; Dkt. 376.) Plaintiffs object to the inclusion of that excerpt in Defendants' opening for the same reasons that the document should not be introduced in evidence at trial. Defendants should not be permitted to show the jury in opening a document that is inadmissible at trial.

      Exhibit 677 is one of seven policy and training documents[2] that Defendants failed to disclose in their Rule 26 disclosures, never produced during discovery, and never discussed in Defendants' interrogatory response regarding relevant policies and trainings. Instead, Exhibit 677 was produced for the first time on June 9, 2022—seven months after the discovery cutoff. As a result, Plaintiffs were deprived of an opportunity to examine Defendants' witness about this document in deposition, including Defendants' 30(b)(6) witness devoted to policies and training (who is on

---

[2] Exhibits 676, 681, 682, 683, 686, and 687.

Defendants' witness list to testify about this topic at trial). (*See* Dkt. 371 at 38 (identifying Captain Mark Flores as witness who will testify for defense about policies and training at trial).) If this policy and training document were so central to Defendants' case that it merits displaying to the jury in opening, there is obviously no excuse for failing to produce it during a full year of discovery. Defendants should not be allowed to tout a policy or training document to show the absence of deliberate indifference and force Plaintiffs to examine Defendants' witnesses completely cold on that document, without the benefit of a prior deposition. Nor should they be able to use that late-produced document in their opening statement.

Federal Rule of Civil Procedure 37(c)(1) provides that when a party "fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). This exclusion sanction is "self-executing" and "automatic" unless the party seeking to avoid exclusion demonstrates that the failure was substantially justified or harmless. *See Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011). Defendants cannot demonstrate that their failure to timely produce Exhibit 677 was substantially justified or harmless.

***First***, Defendants' failure to timely produce Exhibit 677 was not substantially justified. Defendants' Rule 26 disclosures did not reference Exhibit 677, either specifically or by category. Rather, Defendants listed only the following five specific categories of documents: (1) the Internal Affairs Bureau Investigative report; (2) citizens' complaint(s) regarding potential sharing of accident site photographs; (3) transcripts of interviews in connection with Internal Affairs Bureau Investigation; (4) accident site photographs; and (5) autopsy reports and photographs.

Moreover, Plaintiff propounded numerous discovery requests regarding Defendants' policies and training, including requests for all documents relating to

(1) any training of Sheriff's Department or Fire Department personnel regarding treatment or handling of human remains, including the taking or sharing of photos of human remains; and (2) any federal constitutional right of individuals to control the death images and/or physical remains of deceased family members. Plaintiff also served an interrogatory requiring Defendants to "identify and describe all training that Sheriff's Department personnel were required to receive between May 29, 2012 and January 26, 2020 relating to the taking or sharing of photos of human remains."

Despite Defendants' Rule 26 disclosure obligations and Plaintiff's discovery requests, Defendants never produced Exhibit 677 before adding it (and the other policy and training documents) to the exhibit list on June 9, 2022—more than six months after the discovery cutoff. It is no answer that the late-produced documents have been publicly available. This argument has rightly been rejected by several courts. In *Deutsche Bank Nat'l Tr. Co. v. Seven Hills Master Cmty. Ass'n*, 2016 WL 1639885, at *2 (D. Nev. Apr. 25, 2016), the court explained: "[Defendant's] argument that these documents were publicly available is misguided, as the public availability of the documents did not place Plaintiff on notice that [Defendant] would seek to use them in the instant case. . . . The documents' public availability is inapposite." Similarly, in *Low v. Trump Univ.*, LLC, 2016 WL 6732110, at *8 (S.D. Cal. Nov. 15, 2016), the court held: "Although a number of these [untimely disclosed] exhibits were identified as publicly available by Defendants, the fact that exhibits were publicly available does not justify Defendants' untimely disclosure." It is not Plaintiffs' burden to scour the Internet for information that Defendants might conceivably use in litigation. Instead, by rule, the burden is on Defendants to affirmatively identify documents that are responsive to discovery requests and/or that they intend to use at trial. Defendants failed to carry that burden here.

***Second***, Defendants cannot show harmlessness. Defendants' training and policies are central to this case. That is precisely why Plaintiff sought documents and information related to them in her requests for production and interrogatories.

JOINT STATEMENT RE: OPENING STATEMENTS

1  Defendants' untimely disclosure and production has plainly harmed Plaintiff. As
2  just one example, Plaintiff took 30(b)(6) depositions of the Sheriff's and Fire
3  Departments about their policies and trainings but was unable to inquire about these
4  documents because they were not produced or disclosed. Courts have previously
5  found harm under this exact scenario. *See Van Daele Dev. Corp. v. Steadfast Ins.*
6  *Co.*, 2014 WL 12564277, at *4 (C.D. Cal. Oct. 9, 2014) (finding that late disclosure
7  was not harmless where disclosure was made after close of discovery and therefore
8  party could not question rule 30(b)(6) witness about document).

   Additionally, many of the late-produced training and policy documents are undated, and it is unclear when the policies and trainings were instituted and whether they were used with (or taught to) any of the deputies or firefighters involved in this case. Indeed, Exhibit 677 is dated October 28, 2021—well after the events that give rise to this lawsuit. Given that discovery has closed, Plaintiffs have no tools to obtain answers to these questions. Presumably, Defendants intend their witnesses to tout Exhibit 677 and the other newly-produced policies and training materials at trial in defense of Plaintiffs' *Monell* claims. If they are not excluded, Plaintiffs would be forced to cross-examine these witnesses completely blind, having never had the opportunity to depose them regarding the materials.

   In sum, Defendants lack any substantial justification for failing to timely disclose Exhibit 677 to Plaintiffs, and their untimeliness is prejudicial to Plaintiffs' case. Exhibit 677 should not come into evidence and should not be displayed to jurors during Defendants' opening statement.

Defendants' Response:

   Slide 15 contains an excerpt from the LACFD's Code of Ethics. Plaintiffs object to this slide on the ground that Defendants did not produce the Code of Ethics during discovery. Plaintiffs' objection is meritless.

   *First*, Plaintiffs should not be permitted to argue that the County lacks adequate training and policies by preventing jurors from seeing the trainings and

policies that are directly related to their claims.

*Second*, did produce the pertinent parts of the Code of Ethics. The Code of Ethics were quoted in relevant part in the disciplinary letters that were produced to Plaintiffs during discovery. Plaintiffs deposed LACFD personnel, including Chief McCloud, Captain Imbrenda and Captain Jordan, extensively about these disciplinary letters. Plaintiffs thus had plenty of notice about the existence of the Code of Ethics. They will not be prejudiced by the admission of the Code of Ethics as a trial exhibit and the use of it in Defendants' opening statement.

*Third*, Plaintiffs spend a significant time arguing about other training and policy documents that were not purportedly produced on time. These documents are not at issue in Defendants' opening slides and have been fully briefed by the parties in their Joint Statement regarding Objections to Exhibits. (*See* Dkt. 327 at 65-74.) In sum, all of these other documents were publicly available or have already been disclosed to Plaintiff. Documents are only subject to the duty to disclose under Rule 26(a)(1)(A)(ii) and the duty to produce under Rule 34(a)(1) if they are in the producing party's "possession, custody, or control." Fed. R. Civ. P. 26(a)(1)(A)(ii); 34(a)(1). "[A] party is not in 'control' of records that the requesting party has equal ability to obtain from public sources." *Diaz v. Cnty. of Ventura*, 512 F. Supp. 3d 1030, 1035 (C.D. Cal. 2021) (alteration in original) (quoting Rutter Group Prac. Guide, Fed. Civ. Pro. Before Trial, Ch. 11(IV)-C).

Any failure to disclose public records is harmless and thus not subject to exclusion. Fed. R. Civ. P. 37(c)(1); *see Cmtys. Actively Living Indep. & Free v. City of Los Angeles*, 2011 WL 4595993 (C.D. Cal. Feb. 10, 2011) ("The Court finds that the City's failure to disclose the Federal Emergency Management Agency ("FEMA") Comprehensive Preparedness Guide 101 is harmless because it is a publicly available planning document."); *Diaz*, 512 F. Supp. 3d at 1035 (failure to disclose harmless "because the videos are publicly available").

| | | |
|---|---|---|
| 1 | DATED: August 9, 2022 | WILSON SONSINI GOODRICH & ROSATI |
| 2 | | |
| 3 | | |
| 4 | | By: _____/s/ Luis Li_____ |
| 5 | | LUIS LI |
| 6 | | Attorneys for Plaintiff |
| 7 | | VANESSA BRYANT |
| 8 | DATED: August 9, 2022 | JEROME M. JACKSON LAW OFFICES |

By: _____/s/ Jerome M. Jackson_____
JEROME M. JACKSON

JEROME M. JACKSON
jmjlaw@aol.com
JEROME M. JACKSON LAW OFFICES
880 Apollo Street, Suite 238
El Segundo, California 90245
Telephone: (310) 726-4199
Facsimile: (310) 414-0486

Attorneys for Plaintiff
CHRISTOPHER L. CHESTER

| | | |
|---|---|---|
| DATED: August 9, 2022 | | OFFICE OF COUNTY COUNSEL |

By:   /s/ Jonathan C. McCaverty
         JONATHAN C. McCAVERTY

Attorneys for Defendant Los Angeles County Sheriff's Department

DATED: August 9, 2022        MILLER BARONDESS, LLP

By:   /s/ Jason H. Tokoro
         JASON H. TOKORO

Attorneys for Defendants County of Los Angeles, Los Angeles County Fire Department, Joey Cruz, Rafael Mejia, Michael Russell, Raul Versales, Arlin Kahan and Tony Imbrenda

**FILER ATTESTATION**

I, Luis Li, attest under Local Rule 5-4.3.4(a)(2)(i) that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized this filing.

Dated:  August 9, 2022                              */s/ Luis Li*
                                                                         Luis Li