LUIS LI (State Bar No. 156081)
Luis.Li@wsgr.com
ERIC P. TUTTLE (State Bar No. 248440)
Eric.Tuttle@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
633 West Fifth Street, Suite 1550
Los Angeles, California 90071
Telephone:  (323) 210-2900
Facsimile:   (866) 974-7329

CRAIG JENNINGS LAVOIE (State Bar No. 293079)
Craig.Lavoie@mto.com
JENNIFER L. BRYANT (State Bar No. 293371)
Jennifer.Bryant@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:  (213) 683-9100
Facsimile:   (213) 687-3702

Attorneys for Plaintiff Vanessa Bryant

[*Additional counsel continued on next page*]

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| VANESSA BRYANT,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF LOS ANGELES, et al.,<br><br>Defendants.<br>_____<br><br>CHRISTOPHER L. CHESTER,<br><br>PLAINTIFF,<br><br>vs.<br><br>COUNTY OF LOS ANGELES, et al.,<br><br>Defendants. | Case No. 2:20-cv-09582-JFW-E (Consolidated with 2:20-cv-10844-JFW-E)<br><br>**JOINT STATEMENT RE COURT'S PROPOSED JURY INSTRUCTIONS AND VERDICT FORMS**<br><br>Trial Date:  August 10, 2022<br><br>The Honorable John F. Walter |

1 | [*Additional counsel, continued from previous page*]

2 | JEROME M. JACKSON (State Bar No. 64238)
jmjlaw@aol.com
3 | JEROME M. JACKSON LAW OFFICES
880 Apollo Street, Suite 238
4 | El Segundo, California 90245
Telephone: (310) 726-4199
5 | Facsimile: (310) 414-0486

6 | Attorneys for Plaintiff
CHRISTOPHER L. CHESTER
7 |

8 | LOUIS R. MILLER (State Bar No. 54141)
smiller@millerbarondess.com
9 | MIRA HASHMALL (State Bar No. 216842)
JASON H. TOKORO (State Bar No. 252345)
10 | CASEY B. SYPEK (State Bar No. 291214)

11 | MILLER BARONDESS, LLP

12 | 1999 Avenue of the Stars, Suite 1000
Los Angeles, California 90067

13 | Tel.: (310) 552-4400 | Fax: (310) 552-8400

14 |

15 | Attorneys for Defendants
COUNTY OF LOS ANGELES, LOS ANGELES COUNTY FIRE DEPARTMENT,
16 | JOEY CRUZ, RAFAEL MEJIA, MICHAEL RUSSELL, RAUL VERSALES ,
ARLIN KAHAN, and TONY IMBRENDA

17 |

18 |

19 | JONATHAN C. McCAVERTY (State Bar No. 210922)
*Principal Deputy County Counsel*
20 | jmccaverty@counsel.lacounty.gov
OFFICE OF THE COUNTY COUNSEL
21 | General Litigation Division

22 | 500 West Temple Street, Suite 468
Los Angeles, California 90012
23 | Tel.: (213) 974-1828 | Fax: (213) 626-7446

24 |

25 | Attorneys for Defendant
LOS ANGELES COUNTY SHERIFF'S DEPARTMENT

26 |

27 |

28 |

**COURT'S INSTRUCTION NO. 36: Section 1983 Claim / Failure to Establish Policy or Train**

**(Model 9.8)**

**A.     Plaintiffs' Proposed Revisions to Court's Instruction**

None. Plaintiffs accept the Court's Instruction No. 36 as drafted. As referenced below, however, Plaintiffs do not object to Defendants' proposal to explicitly cross-reference Instruction No. 38.

**B.     Defendants' Proposed Revisions to Court's Instruction**

The defendants in this case are the County of Los Angeles, the Los Angeles County Sheriff's Department, and the Los Angeles County Fire Department.

The plaintiffs each allege that the defendants violated § 1983 by having policies that failed to prevent violations of law by their employees and by failing to train their employees.

In order to prevail on his or her § 1983 claim against a defendant based on a policy that fails to prevent violations of law by its employees or a failure to train its employees, each plaintiff must prove each of the following elements by a preponderance of the evidence:

1. The acts of one or more employees of the defendant deprived the plaintiff of his or her particular rights under the United States Constitution as explained in ~~later instructions~~ Instruction No. 38;

2. That employee or those employees of the defendant acted under color of state law;

3. The policies or training of the defendant were not adequate to prevent violations of law by its employees or to train its employees to handle the usual and recurring situations with which they must deal;

4. The defendant was deliberately indifferent to: (a) the substantial risk that its policies were inadequate to prevent violations of law by its

-1-

employees; or (b) the known or obvious consequence of its failure to train its employees adequately; and

5. The failure of the defendant to have policies adequate to prevent violations of law by its employees or to provide adequate training caused the deprivation of the plaintiff's rights by the employee or employees of the defendant; that is, the defendant's failure to have policies adequate to prevent violations of law by its employees or train its employees played a substantial part in bringing about or actually causing the injury or damage to the plaintiff.

A person acts "under color of state law" when the person acts or purports to act in the performance of official duties under any state, county, or municipal law, ordinance or regulation.

The parties have stipulated that Joey Cruz, Rafael Mejia, Michael Russell, Raul Versales, Doug Johnson, Ruby Cable, Ben Sanchez, Travis Kelly, Stephanie Shrout, Scott Miller, and Chris Jauregui were employees of the Los Angeles County Sheriff's Department and of the County of Los Angeles. The parties have stipulated that Brian Jordan, Tony Imbrenda, and Arlin Kahan were employees of the Los Angeles County Fire Department and of the County of Los Angeles.

A policy is a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question. A policy of inaction or omission may be based on a failure to implement procedural safeguards to prevent constitutional violations, a failure to adopt a needed policy, a failure to enforce a policy, or a failure to train. To establish that there is a policy based on a failure to preserve constitutional rights, a plaintiff must show, in addition to a constitutional violation, that this policy amounts to deliberate indifference to the plaintiff's constitutional rights, and that the policy caused the violation, in the sense that the municipality could have prevented the violation with an appropriate policy.

"Deliberate indifference" is the conscious choice to disregard the consequences of one's acts or omissions. A plaintiff may prove deliberate indifference in this case by showing that the facts available to a defendant put the defendant on actual or constructive notice that its failure to adopt, enforce, or implement adequate policies or failure to train adequately was substantially certain to result in the violation of the constitutional rights of persons such as the plaintiff due to its employees' conduct. A defendant is on actual or constructive notice of a fact if the defendant knew or reasonably should have known that fact.

If you find that a plaintiff has proved each of these elements against a defendant, and if you find that the plaintiff has proved all the elements he or she is required to prove under Instruction [No. 38], your verdict should be for that plaintiff against that defendant. If, on the other hand, you find that a plaintiff has failed to prove any one or more of these elements as to a defendant, your verdict should be for that defendant against that plaintiff.

### C.    Plaintiffs' Legal Position

Plaintiffs object to Defendants' inclusion of the phrase "have policies adequate to" in two locations in paragraph 5 of the Court's proposed instruction. The Court's instruction is consistent with the Ninth Circuit Model Jury Instruction on this *Monell* theory, and Defendants provide no persuasive reason to depart from the model here. During the parties' meet-and-confer, Defendants defended their addition by noting that this *Monell* claim turns on the adequacy of Defendants' policies and training. But that is true of every *Monell* claim based on this theory of liability and does not provide a basis to ignore the Ninth Circuit model.

Plaintiffs do not object to Defendants' proposal to explicitly cross-reference Instruction No. 38.

## C.   Defendants' Legal Position

Defendants propose two changes to the Court's Instruction No. 36 regarding Plaintiffs' *Monell* claim based on an alleged failure to establish an adequate policy or train.

***First***, for the jury's ease of reference, Defendants propose cross-referencing the specific instruction on Plaintiffs' claimed constitutional right—Instruction No. 38—rather than referring to "later instructions."

***Second***, the causation element (No. 5) should require the jury to find that the "failure of the defendant to have policies adequate to prevent violations of law" was what caused the constitutional violation.  This is consistent with the language used in the remainder of the instruction—*i.e.*, "claim against a defendant *based on a policy* that fails to prevent violations of law."  (emphasis added).

Per the U.S. Supreme Court, a finding that the Defendants' failure to prevent a violation caused the violation is *not* sufficient to impose *Monell* liability.  *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989) ("In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident.").  Rather, for *Monell* liability to attach, what must cause the constitutional violation is the inadequate policy itself.  *See id.* ("Would the injury have been avoided had the employee been trained under a program that was not deficient in the identified respect?").

While this diverges slightly from the Ninth Circuit Model Jury Instruction, Defendants believe it is important to include this language given the complexities involved in deciding Plaintiffs' *Monell* claims.  The Court has recited its experience with the difficulties jurors have in deciding these kinds of claims, and the clearer the instructions can be, the better.

# COURT'S INSTRUCTION NO. 37: Section 1983 Claim / Official Policy, Practice, or Custom

**A.     Joint Proposed Revision to Court's Instruction**

Substitute "Instruction No. 38" for "later instructions."

**B.     Parties' Legal Position**

For the jury's easy of reference, the Parties propose cross-referencing the specific instruction on Plaintiffs' claimed constitutional right—Instruction No. 38—rather than referring to "later instructions."

**COURT'S INSTRUCTION NO. 38:**

**Section 1983 Claim / Violation of Particular Constitutional Rights**

**A.      Plaintiffs' Proposed Revisions to Court's Instruction**

As previously explained, in order to prevail on his or her § 1983 claim against a defendant, each plaintiff has the burden of proving that the defendant's acts or failure to act deprived the plaintiff of particular rights under the United States Constitution. Plaintiffs allege that defendants deprived them of their Fourteenth Amendment right to control the public dissemination of images of their deceased family members.

In order for a plaintiff to prove that a defendant deprived him or her of this right, the plaintiff must prove the following elements by a preponderance of the evidence (in addition to the elements set forth in ~~earlier instructions~~ Instruction Nos. 36 and 37):

1.      At least one employee of the defendant publicly disseminated one or more images of the plaintiff's deceased family member or members (with all of you agreeing as to which employee or employees publicly disseminated images of the plaintiff's deceased family members); and

2.      the public dissemination of such images shocks the conscience and offends the community's sense of fair play and decency.

For the purposes of this instruction, "public dissemination" means the ~~dissemination~~ transmission or display of one or more images of the plaintiff's deceased family member or members to one or more members of the ~~general~~ public. It is for you to decide whether a person to whom an image was transmitted or displayed was a member of the public when the transmission or display occurred.

The parties have stipulated that Joey Cruz, Rafael Mejia, Michael Russell, Raul Versales, Doug Johnson, Ruby Cable, Ben Sanchez, Travis Kelly, Stephanie Shrout, Scott Miller, and Chris Jauregui were employees of the Los Angeles County

1  Sheriff's Department and of the County of Los Angeles. The parties have stipulated

2  that Brian Jordan, Tony Imbrenda, and Arlin Kahan were employees of the Los

3  Angeles County Fire Department and of the County of Los Angeles.

4        **B.      Defendants' Proposed Revisions to Court's Instruction**

5        As previously explained, in order to prevail on his or her § 1983 claim against

6  a defendant, each plaintiff has the burden of proving that the defendant's acts or

7  failure to act deprived the plaintiff of particular rights under the United States

8  Constitution. Plaintiffs allege that defendants deprived them of their Fourteenth

9  Amendment right to control the public dissemination of images of their deceased

10 family members.

11       In order for a plaintiff to prove that a defendant deprived him or her of this

12 right, the plaintiff must prove the following elements by a preponderance of the

13 evidence (in addition to the elements set forth in ~~earlier instructions~~Instruction Nos.

14 36 and 37):

15            1.  At least one employee of the defendant publicly disseminated images

16                of the plaintiff's deceased family members (with all of you agreeing as

17                to which employee or employees publicly disseminated images of the

18                plaintiff's deceased family members); and

19            2.  the public dissemination of such images shocks the conscience and

20                offends the community's sense of fair play and decency.

21       For the purposes of this instruction, "public dissemination" means the

22 dissemination ~~or display~~ of images of the plaintiff's deceased family members to

23 members of the general public.

24       The parties have stipulated that Joey Cruz, Rafael Mejia, Michael Russell,

25 Raul Versales, Doug Johnson, Ruby Cable, Ben Sanchez, Travis Kelly, Stephanie

26 Shrout, Scott Miller, and Chris Jauregui were employees of the Los Angeles County

27 Sheriff's Department and of the County of Los Angeles. The parties have stipulated

28

1   that Brian Jordan, Tony Imbrenda, and Arlin Kahan were employees of the Los

2   Angeles County Fire Department and of the County of Los Angeles.

3     **C.**  **Plaintiffs' Legal Position**

4      Plaintiffs request certain revisions the Court's Instruction No. 38 that

5   Plaintiffs understand to be unopposed by Defendants. Specifically, Plaintiffs

6   request the addition of "*one or more*" and "family member *or members*" to the first

7   numbered paragraph and the definition of "public dissemination." These changes

8   clarify that a single photo depicting a single family member can give rise to a

9   substantive due process violation, as occurred under the facts of *Marsh v. County*

10  *of San Diego*, 680 F.3d 1148, 1115 (9th Cir. 2012). Defendants have advised

11  Plaintiffs that they have no objection to these revisions. Plaintiffs have also

12  accepted Defendants' proposal to expressly cross-reference Instructions Nos. 36

13  and 37.

14     Plaintiffs also request revisions that Defendants oppose, which Plaintiffs

15  consider necessarily to avoid potential juror confusion.[1]

16     ***First***, Plaintiffs request that the Court substitute "transmission" for

17  "dissemination" in the definition of "public dissemination." Using "dissemination"

18  in both the term being defined and its definition creates the potential for juror

19  confusion. "Transmission" sharpens the definition and gives jurors useful guidance

20  on how Plaintiffs may establish a violation of the substantive due process right

21  recognized in *Marsh v. County of San Diego*, 680 F.3d 1148 (9th Cir. 2012). The

22  use of "transmission" is consistent with *Marsh*, where the Ninth Circuit held that a

23  former prosecutor violated a family member's right to control the body and death

24

---

25  [1] Plaintiffs believe that their previously-proposed instruction more accurately

26  captures the full breadth of the right articulated in *Marsh*, and reserve that issue for

    appeal.  But Plaintiffs understand and respect the Court's interpretation of *Marsh*,

27  and offer these proposed revisions that Plaintiffs believe are consistent with the

28  Court's interpretation.

images of a deceased relative by sending an autopsy photo to two members of the media. The court found the act of sending the photo sufficient to violate the right. *Id.* at 1155. The term "transmission"—which describes act of sending or conveying—accurately describes this conduct.

**Second**, Plaintiffs request that the Court change "general public" to "public" in the definition of "public dissemination" because the adjective is either surplusage or, to the extent it alters the meaning of "public," contrary to *Marsh*. Some relevant portions of *Marsh* refer to "public" dissemination or dissemination to the "public." The phrase "general public" does not appear in any relevant passage of *Marsh*. The only place it appears is in a discussion about when a statute confers a liberty interest protected by procedural due process—an issue not raised in this trial. *See Marsh*, 680 F.3d at 1157 ("The Court in *Sandin* acknowledged that it wasn't performing the 'ordinary task of construing a statute defining rights and remedies available to the general public.'"). The *Marsh* court did not indicate any requirement that dissemination be to the "general public" as something beyond the "public" to violate substantive due process.

**Third**, Plaintiffs request a sentence at the end of the paragraph defining "public dissemination" that clarifies that it is for the jury to decide whether the recipient of the transmission or display was a member of the public at the time. Plaintiffs anticipate that Defendants will argue to the jurors that they *may not* find that certain recipients of the photos were members of the public. Defendants believe it is important that the jurors understand it is up to them to make this determination.

Turning to Defendants' proposed revisions, Plaintiffs object to Defendants' proposal to delete "or display" from the definition of "public dissemination" because the revised instruction would be contrary to *Marsh*. *Marsh* expressly uses the term "display" when discussing the right protected by the Constitution. *See, e.g.*, 680 F.3d at 1154 ("[F]amilies have a right not to be embarrassed or humiliated by

the outrageous *display or exposure to public view* of the remains of a loved one."
(emphasis added) (citation omitted)); *id.* at 1155 ("[P]ublic *display* of death images
[is] the kind of conduct that is likely to cause the family profound grief and
therefore 'shocks the conscience' and 'offend[s] the community's sense of fair play
and decency.'" (emphasis added) (citation omitted)). Defendants are wrong that
*Marsh* used "display" only in connection with publication on the internet.
Defendants quote one passage of *Marsh*, ignoring the two others quoted above in
which the term is used generally to refer generally to exposure to public view.

### D. Defendants' Legal Position

Defendants propose two changes to the Court's Instruction No. 38 regarding
Plaintiffs' constitutional right.

*First*, for the jury's ease of reference, Defendants propose cross-referencing
the specific prior instructions (Instruction Nos. 36 and 37) rather than using "earlier
instructions."

*Second*, the definition of "public dissemination" should not include "display."
In *Marsh v. County of San Diego*, the only act the Ninth Circuit held was
sufficiently shocking to constitute a due process violation was the "attempt to
publish the autopsy photograph" by actually giving the photo to a newspaper and
television station.  680 F.3d 1148, 1152, 1155 n.3 (9th Cir. 2012).  This is because,
"given the viral nature of the Internet," the victim's mother "might easily stumble
upon photographs of her dead son on news websites, blogs or social media
websites." *Id.* at 1155.  When the Ninth Circuit used the term "display" in *Marsh*, it
was in the context of the "display[]" of photos "on the Internet." *Id.* at 1155.  *Marsh*
did not contemplate the temporary "display" of County photos in this case, which
did not create any risk that Plaintiffs might "stumble upon" them.

Plaintiffs propose replacing "dissemination" with "transmission" in this
definition.  But unlike the term "dissemination," the term "transmission" never
appears in *Marsh*.  Plaintiffs contend that it is confusing to use the term

-10-

"dissemination" in the definition of "public dissemination."  Not so.  The focus of this definition is the meaning of "*public* dissemination."  Inserting "transmission" as another term in this instruction adds nothing and unnecessarily diverges from *Marsh*.

As to Plaintiffs' other proposed changes to the instruction, Defendants have no issue with Plaintiffs' proposed addition of "one or more images" or "family member or members."

But Plaintiffs' deletion of "general" from "general public" is inconsistent with *Marsh*.  The Ninth Circuit made clear that only the dissemination of photos to members of the general public may constitute a due process violation.  In *Marsh*, the prosecutor kept the autopsy photo as a "memento" from his work and used the photo as "part of his training materials for child abuse detection seminars."  *Id*. at 1157.  The Ninth Circuit held that "[o]nly" the "attempt to publish the autopsy photograph" by sending it to members of the general public—*i.e.*, "a newspaper and television station"—violated the plaintiff's due process rights.  *Id*. at 1152, 1155 & n.3.  Removing "general" from "general public" would not be appropriate under *Marsh*.

Plaintiffs also propose adding, "It is for you to decide whether a person to whom an image was transmitted or displayed was a member of the public when the transmission or display occurred."  This is argumentative and misleading.  It is *always* for the jury to decide the facts; pointing it out in a particular instance is an improper signal to the jury that a particular element is more important than others.  The parties can make arguments in closing about which elements to focus on; such signals should not be included in the instructions.

Moreover, nothing in *Marsh* suggests that the jury should perform an analysis as to whether someone was a member of the general public at the precise moment of transmission of a photo.  Plaintiffs seek to sidestep the fact that *internal* sharing is not "public dissemination" under *Marsh*.  Plaintiffs' proposed addition to this instruction suggests that the first responders in this case were constantly flickering

1   back and forth between "first responders" and "members of the public" based on

2   how and when photos were sent to them.  There is no support for this in *Marsh*.

## COURT'S INSTRUCTION NO. 58:

### Subsequent Remedial Measures

**A.     Plaintiffs' Proposed Revisions to Court's Instruction**

You have heard evidence that Defendants took disciplinary measures in response to the conduct at issue in this lawsuit that may have made an earlier injury or harm less likely to occur. You must not consider evidence of any such subsequent measure to prove that Defendants engaged in culpable conduct. In other words, you may not treat evidence of any discipline that Defendants imposed as an admission of wrongdoing by the Defendants, or infer from the fact that Defendants imposed any discipline on their employees that the employees or Defendants engaged in wrongdoing. However, you may consider such evidence for any other purpose.

You may consider evidence of Defendants' failure to adequately discipline their employees for any purpose.

**B.     Defendants' Proposed Revisions to Court's Instruction**

None.  Defendants accept the Court's Instruction No. 58 as drafted.

**C.     Plaintiffs' Legal Position**

Plaintiffs request that the Court add to its instruction a sentence stating: "You may consider evidence of Defendants' <u>failure</u> to adequately discipline their employees for any purpose." This is necessary to avoid juror confusion about the permissible uses of the failure-to-discipline evidence presented at trial. If the jury is going to be told that it cannot consider evidence about Defendants' "disciplinary measures" to "prove that Defendants engaged in culpable conduct," it is critical that the Court clarify that the jury *can* consider *failure* to discipline for exactly that purpose. Otherwise, the jury may well be confused into believing that the entire topic of discipline is off limits when deciding *Monell* liability.

This is particularly true given that Defendants apparently intend to misuse this instruction to argue that the jury should ignore all evidence related to pos-incident discipline in evaluating Plaintiffs' *Monell* claims. During the parties'

-13-

1   meet-and-confer, Defendants appeared to suggest that a failure to implement

2   disciplinary measures after the crash in this case is not admissible because the only

3   relevant disciplinary measures are those that predate the events at issue.

4   (Declaration of Trevor N. Templeton ["Templeton Decl."] ¶ 5.) Defendants appear

5   to make the same point in this brief when they argue that the jury cannot infer a

6   *Monell* violation from a post-incident failure to discipline alone.

7          To the extent Defendants mean to argue that evidence of Defendants' failure

8   to discipline adequately following the events in this case is inadmissible or

9   irrelevant, they are wrong on the law, and the Court has rejected their position. The

10  Court ruled at the July 26 conference that Plaintiffs may introduce evidence of the

11  *inadequacy* of Defendants' *post-incident* discipline to prove deliberate indifference

12  or the existence of a custom or practice. (Templeton Decl. Ex. A [July 26, 2022

13  Hearing Tr. 22:6-12] ("In addition, the Court agrees with plaintiffs that defendants'

14  post-incident failure to adequately investigate or discipline is relevant to plaintiffs'

15  unabandoned *Monell* theories of liability. Such evidence tends to demonstrate

16  either a pre-existing affirmative custom or practice or a pre-existing policy of

17  deliberate indifference in the form of a failure to train or implement policy.").)

18  Defendants' attempt to relitigate this issue, which was extensively briefed and

19  previously ruled on, is an improper attempt at reconsideration.[2]

20         Defendants' efforts to relitigate the relevance and admissibility of this

21  evidence underscores the need for clear guidance to the jury. Defendants should

22  not be permitted to sidestep the Court's prior ruling by confusing the jury into

23

24  _____

    [2] Defendants' citation to *Nadell v. Las Vegas Metro. Police Dep't*, 268 F.3d 924,

25  929 (9th Cir. 2001), is inapposite because *Nadell* involved a sufficiency-of-the-
    evidence challenge to a verdict following a jury trial. <u>*Sheehan v. City & County of*</u>

26  <u>*San Francisco*</u>, 743 F.3d 1211, 1231 (9th Cir. 2014), likewise addresses the
    sufficiency of evidence presented in opposition to summary judgment. Neither

27  decision references Rule 407 or says anything about the admissibility of evidence
    concerning a defendant's failure to adequately discipline.

28

believing that Instruction No. 58 prevents the jury from considering post-dispute failure-to-discipline evidence in evaluating Defendants' liability. Plaintiffs' proposed addition confirms that the jury may consider failure-to-discipline evidence for any purpose (which includes evaluating Defendants' culpability). This avoids jurors being confused into thinking that the issue of Defendants' discipline is entirely off limits to *Monell* liability, which would be contrary to the law and the Court's rulings.

### D.   Defendants' Legal Position

Plaintiffs' proposed addition to Instruction No. 58 is unnecessary and improper. The Court's Instruction No. 58 concerns only what inferences cannot be made from the imposition of discipline as a result of Rule 407. There is no need to instruct the jury as to what inferences may be made from the "failure" to adequately discipline. Consistent with Rule 407, the Court's instruction tells the jury not to infer liability from the fact that Defendants imposed discipline; it does not prevent Plaintiffs from making adequacy arguments based on the supposed absence of *additional* discipline they allege should have occurred. Indeed, the instruction on the *Monell* custom and practice theory (Instruction No. 37) specifically instructs the jury on this issue. This topic is already covered in that instruction and has no place in an instruction about subsequent remedial measures.

Plaintiffs' proposed addition is also an inaccurate statement of law because the jury *cannot* consider Defendants' "failure to discipline" for "any purpose." In particular, the Ninth Circuit has made clear that a jury cannot infer a *Monell* violation from the failure to discipline as to the incident at issue alone. *See Nadell v. Las Vegas Metro. Police Dep't,* 268 F.3d 924, 929 (9th Cir. 2001). In *Nadell,* the jury found that the Las Vegas Police Department had violated the plaintiff's rights by failing to discipline an officer for using excessive force on the plaintiff and by failing to investigate the incident. *Id.* at 927. The Ninth Circuit reversed the trial court's denial of a motion of judgment as a matter of law on this claim because

"[t]here was no evidence introduced at trial to establish . . . that *previous constitutional violations* had occurred for which the offending officers were not discharged or reprimanded." *Id*. at 929 (emphasis added).

Moreover, "[t]he mere failure to discipline [the officers at issue] does not amount to ratification of their allegedly unconstitutional actions." *Sheehan v. City & Cnty. of San Francisco*, 743 F.3d 1211, 1231 (9th Cir. 2014) (reversed as to a different issue, specifically, qualified immunity, in *City & Cnty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600 (2015)).  Plaintiffs' proposed addition to Instruction No. 58 does not accurately conform to this law.  The jury should not be provided a misleading suggestion on how to use evidence of a supposed "failure to discipline" in an instruction that has nothing to do with *Monell* liability.

Finally, Plaintiffs' proposed addition is prejudicial and could mislead the jury into thinking that the reason evidence of discipline as to Fire Department personnel was not presented is that none was imposed, and the jury should consider that as evidence of the Fire Department's guilt.  Of course, the Fire Department did impose discipline, but that discipline was inadmissible under Rule 407.

**COURT'S VERDICT FORM**

**A.     Plaintiffs' Proposed General Verdict Forms**

Plaintiffs agree with the Court's proposed verdict forms. But as explained below, if there is clarity on how the Court will enter judgment against the County, Question Nos. 5 and 6 can be removed.

**B.     Defendants' Proposed General Verdict Form**

Defendants' proposed general verdict form for Plaintiff Chester is below.  An identical set would be submitted for Plaintiff Bryant with only the plaintiff's name changed.

**Question No. 1**: On the claim of Plaintiff Christopher L. Chester against Defendant Los Angeles County Sheriff's Department for violation of Christopher L. Chester's constitutional right (Section 1983) based on a widespread and longstanding practice or custom of public dissemination of photos of deceased persons, we, the undersigned jurors, unanimously find in favor of (check one):

Plaintiff Christopher L. Chester:                              _____

Defendant Los Angeles County Sheriff's Department:        _____

Proceed to Question No. 2.

**Question No. 2**: On the claim of Plaintiff Christopher L. Chester against Defendant Los Angeles County Sheriff's Department for violation of Christopher L. Chester's constitutional right (Section 1983) based on a failure to have policies adequate to prevent public dissemination of photos of deceased persons by its employees or a failure to train regarding public dissemination of photos of deceased persons, we, the undersigned jurors, unanimously find in favor of (check one):

1   Plaintiff Christopher L. Chester:                          _____

2   Defendant Los Angeles County Sheriff's Department:         _____

3

4   Proceed to Question No. 3.

5

6   **Question No. 3**: On the claim of Plaintiff Christopher L. Chester against Defendant

7   Los Angeles County Fire Department for violation of Christopher L. Chester's

8   constitutional right (Section 1983) based on a widespread or longstanding practice

9   or custom of public dissemination of photos of deceased persons, we, the

10  undersigned jurors, unanimously find in favor of (check one):

11

12  Plaintiff Christopher L. Chester:                          _____

13  Defendant Los Angeles County Fire Department:              _____

14

15  Proceed to Question No. 4.

16

17  **Question No. 4**: On the claim of Plaintiff Christopher L. Chester against Defendant

18  Los Angeles County Fire Department for violation of Christopher L. Chester's

19  constitutional right (Section 1983) based on a failure to have policies adequate to

20  prevent public dissemination of photos of deceased persons by its employees or a

21  failure to train regarding public dissemination of photos of deceased persons, we,

22  the undersigned jurors, unanimously find in favor of (check one):

23

24  Plaintiff Christopher L. Chester:                          _____

25  Defendant Los Angeles County Fire Department:              _____

26

27  If you found in favor of Plaintiff Christopher Chester on any of his claims against

28  Defendant Los Angeles County Sheriff's Department or Defendant Los Angeles

County Fire Department (Questions 1 through 4), proceed to Question No. 5. Otherwise, answer no further questions and sign and date the verdict form.

**Question No. 5**:  If you found in favor of Plaintiff Christopher L. Chester on any of his claims against Defendant Los Angeles County Sheriff's Department or Defendant Los Angeles County Fire Department (Questions 1 through 4), enter the amount of damages you award Plaintiff Christopher L. Chester.

      Past physical, mental, and emotional
pain and suffering, loss of enjoyment of life,
humiliation, grief, anxiety, and emotional distress:    $_____

      Future physical, mental, and emotional
pain and suffering, loss of enjoyment of life,
humiliation, grief, anxiety, and emotional distress:    $_____

Sign and date the verdict form.

Dated:_____

Signed:_____
           Presiding Juror

### C.   Plaintiffs' Legal Position

After considering the Court's explanation of its proposal for the verdict forms, Plaintiffs agree that the jury need not be burdened with entering a verdict against the County *provided that*, if the jury returns a verdict in favor of a Plaintiff against either the LASD or LACFD, then the Court will also enter a judgment against the County in the amount of the sum of the awards against the Sheriff's Department and Fire Department. For example, if the jury returns verdicts for Plaintiff Bryant and against LASD and LACFD, and awards A dollars against LASD and B dollars against LACFD, then the Court will enter a judgment for Plaintiff and against the County in the amount of A + B dollars (in addition to separate judgments against LASD for A dollars and LACFD for B dollars). Of course, Plaintiff may recover only a total of A + B dollars from all Defendants.

If the Court agrees with this procedure, it removes the need to burden the jury with separate verdict forms directed to the County. If the Court has any concerns with this procedure, however, Plaintiffs are fine with the Court's proposed verdict forms as written.

Plaintiffs disagree with Defendants' proposed revisions to the Court's verdict forms.

*First*, Plaintiffs object to Defendants' proposal to separate Question Nos. 1, 3, and 5 (regarding each Plaintiff's claim for violation of their Constitutional rights) into separate questions—one for each of Plaintiffs' *Monell* theories. Plaintiffs agree with the Court that "the verdict form in this case . . . should be very simple." (Templeton Decl. Ex. B (Aug. 19, 2022 Trial Tr. at 2119:5-8.) Defendants' forms needlessly complicate the jury's task with no corresponding benefit. Defendants' proposal also rests on the faulty premise that Plaintiffs' *Monell* claims present separate and legally distinct causes of action. In fact, Plaintiffs assert only a single cause of action under 42 U.S.C. § 1983 for violation of their due process rights. There is no basis to split that cause of action on the

verdict forms. General verdict forms for each Plaintiff and Defendant are appropriate for the reasons set forth in Plaintiff's verdict form briefing. (*See* Dkt. 360 at 1-8.)

*Second*, Plaintiffs object to Defendants' proposal to eliminate the jury's separate award of damages against LASD and LACFD. Each of LASD, LACFD, and the County are separate named defendants on Plaintiffs' *Monell* claims. The Court's verdict forms properly recognize that the jury should separately determine both liability and damages for LASD and LACFD. As explained above, it may not be necessary to burden the jury with entering a separate verdict for the County and adding up the damages if the Court agrees that the Court will do that when entering judgment. But if the Court has any concerns about that, Defendants are fine with the verdict forms proposed by the Court.

### D.   Defendants' Legal Position

Per the Court's guidance, Defendants agree to proceed with a general verdict form.  The Court should provide Defendants' proposed general verdict form for the following reasons.

*First*, Defendants' proposed general verdict form addresses the two distinct *Monell* claims Plaintiffs are pursuing: (1) a widespread and longstanding practice or custom; and (2) failure to train.  Defendants' proposed form contains separate questions for each of Plaintiffs' two theories against each of the Sheriff's Department (Question Nos. 1 and 2) and the Fire Department (Question Nos. 3 and 4).  Plaintiffs fought hard to save their custom and practice *Monell* theory from waiver, and they succeeded at the July 26, 2022 hearing.  Accordingly, the trial has proceeded on these two separate theories.  The jury should make findings on both.

For Plaintiffs to prevail on either of their *Monell* theories, the jury must decide that theory unanimously.  If Plaintiffs' two *Monell* theories are lumped together into a single question, then the jury could find for Plaintiffs if only half of

the jurors find liability under a practice/custom theory and only half find liability under a failure-to-train theory.  This is highly problematic.

Moreover, if Plaintiffs prevail and obtain a damages award, it is critical for post-trial motions and appeal to understand the theories under which the jury found for Plaintiffs.  This is particularly important here, as the Court has acknowledged the dearth in evidence supporting a custom and practice theory: "I haven't seen any widespread or longstanding practice or custom of the defendant in violating a *Marsh* constitutional right that was developed fairly late in the game."  (Declaration of Mira Hashmall ("Hashmall Decl.") Ex. 1 [8/19 Trial Tr.] at 2105:25-2106:5.)

***Second***, Defendants' proposed general verdict form avoids the risk of duplicative damages.  As an initial matter, there is no legal distinction between the County, on the one hand, and the Sheriff's Department or Fire Department, on the other hand.  Any liability is the same.  If the jury finds that either the Sheriff's Department or the Fire Department is liable, there are no additional or separate damages that can be imposed on the County.   Defendants' proposed general verdict form therefore removes the County from the form altogether.  This streamlines the questions and avoids confusion about the distinction between the County and its departments.  If the jury finds that either the Sheriff's Department or the Fire Department is liable, or both, then the Court can enter a single judgment against the County.

Moreover, Defendants' proposed form includes only a single damages question (with subparts for past and future harm), instead of separate damages questions for each of the Fire Department and the Sheriff's Department.  If the jury finds that either the Fire Department or the Sheriff's Department (or both) violated Plaintiffs' constitutional rights under *Marsh* (i.e., if the jury finds for Plaintiffs on any of Question Nos. 1-4), then it should decide Plaintiffs' past and future damages (Question No. 5).  Requiring the jury to enter separate damages awards for each department is confusing, duplicative and prejudicial.  Plaintiffs' position is that they

have been harmed because they live in fear of photos of their loved ones surfacing on the Internet.  That fear should not be "double counted" by awarding it twice.

Nor should there be separate damages questions for each of Plaintiffs' two distinct *Monell* theories.  They are two separate paths to the same harm.  Indeed, Plaintiffs have been proposing a single damages question for their combined *Monell* theories from the outset.  (*See* Bryant Dkt. 239 & 302-1; Chester Dkt. 177 & 216.)

Plaintiffs concede that there is no separate liability for the County if the jury finds for Plaintiffs against the Sheriff's Department and/or the Fire department.  Plaintiffs also concede that the maximum amount they can recover from *all* Defendants is the total of what they may be awarded from the Fire and Sheriff's Departments.  Yet in their proposed stipulation (discussed under Jury Instruction No. 3), Plaintiffs insist on obtaining three separate judgments if they prevail.  This makes no sense.  Plaintiffs only need one judgment against the County to collect any damages award because that judgment will be the sum of any award(s) against the individual departments.

In an attempt to resolve the damages issue in both sides' verdict forms, Defendants proposed a stipulation that if the jury returns a verdict for a Plaintiff against either (or both) of the Sheriff's and Fire Department, then the Court will enter a judgment against the County for the *total* amount awarded.  This stipulation would avoid the confusion of having multiple damages questions in the verdict.  Plaintiffs rejected this proposal and provide no explanation for why they would ever be entitled to three separate judgments.  If Plaintiffs prevail on their claims, they can each only recover once.  In any event, Plaintiffs' proposal about how judgment should be entered is not a verdict form issue and is premature.

**DISPUTED INSTRUCTION NO. 3: Two or More Parties—Different Legal Rights**

A.    **Plaintiffs' Proposed Revisions to Court's Instruction**

You should decide the case as to each party separately. Unless otherwise stated, the instructions apply to all parties.

Although there are two plaintiffs in this action, it does not follow from that fact alone that if one plaintiff is entitled to recover, both are entitled to recover. Each defendant is entitled to a fair consideration as to each plaintiff, just as each plaintiff is entitled to a fair consideration of that plaintiff's claim against each defendant.

If the Los Angeles County Sheriff's Department is liable to a plaintiff, it does not follow from that fact alone that the Los Angeles County Fire Department is also liable, and vice-versa. Each of the Los Angeles County Sheriff's Department and the Los Angeles County Fire Department is entitled to a fair consideration of the evidence, and is not to be prejudiced should you find against the other.

~~The Los Angeles County Sheriff's Department and the Los Angeles Fire Department are each departments of the County of Los Angeles. If you enter a verdict in favor of a plaintiff against either the Los Angeles County Sheriff's Department, or the Los Angeles County Fire Department, or both, then you must also enter a verdict in favor of that plaintiff against the County of Los Angeles.~~

B.    **Defendants' Proposed Revisions to Court's Instruction**

Defendants agree to the removal of the final paragraph of Instruction No. 3.

C.    **Plaintiffs' Legal Position**

After considering the Court's explanation of its proposal for the verdict forms, Plaintiffs agree that the jury need not be burdened with entering a verdict against the County *provided that*, if the jury returns a verdict for a Plaintiff against the LASD or LACFD, then the Court will also enter a judgment against the County in the amount of the sum of the awards against LASD and LACFD. For example, if the jury returns verdicts for Plaintiff Bryant and against LASD and LACFD, and

awards A dollars against LASD and B dollars against LACFD, then the Court will enter a judgment for Plaintiff and against the County in the amount of A + B dollars (in addition to separate judgments against LASD for A dollars and LACFD for B dollars). Of course, in this scenario Plaintiff Bryant may recover only a total of A + B dollars from all Defendants.

If the Court agrees with this procedure, the Plaintiffs agree that the Court need not instruct the jury regarding entry of a verdict on the Plaintiffs' claims against the County, and thus propose this revised Instruction No. 3 for use at trial. If the Court has any concerns with this procedure, then Plaintiffs are fine sticking with the Court's Instruction No. 3 (which tracks Plaintiffs' proposal).

### D.   Defendants' Legal Position

Plaintiffs concede that there is no separate liability for the County if the jury finds for Plaintiffs against the Sheriff's Department and/or the Fire Department. Plaintiffs also concede that the maximum amount they can recover from all Defendants is the total of what they may be awarded from the Fire and Sheriff's Departments.  However, Plaintiffs insist on obtaining three separate judgments if they prevail.  Plaintiffs also insist that a judgment against the County must necessarily be any amount awarded against the Sheriff's Department added to any amount awarded against the Fire Department, even if those damages are entirely duplicative.  None of this makes sense.  Plaintiffs' proposal for entering judgment would be highly prejudicial and excessive.

As explained in Defendants' position regarding the verdict forms, Defendants suggest that the Court ask a single damages question if the jury finds against *either* LASD or LACFD (or both).  This avoids the risk of duplicative damages and would allow each Plaintiff to recover once for his or her harm.

1    DATED:  August 21, 2022          WILSON SONSINI GOODRICH & ROSATI
2                                     Professional Corporation

3                                     By: _____/s/ Luis Li_____
4                                            LUIS LI

5                                     Attorneys for Plaintiff Vanessa Bryant
6
7    DATED:  August 21, 2022          JEROME M. JACKSON LAW OFFICES

8
9                                     By: _____/s/ Jerome M. Jackson_____
                                            JEROME M. JACKSON
10
11                                    Attorneys for Plaintiff Christopher Chester

12   DATED:  August 21, 2022          OFFICE OF COUNTY COUNSEL
13

14                                    By: ____/s/ Jonathan C. McCaverty____
15                                          JONATHAN C. McCAVERTY

16                                    Attorneys for Defendant Los Angeles County
17                                    Sheriff's Department

18   DATED:  August 21, 2022          MILLER BARONDESS, LLP
19

20                                    By: _____/s/ Jason H. Tokoro_____
21                                          JASON H. TOKORO

22                                    Attorneys for Defendants County of Los
23                                    Angeles, Los Angeles County Fire Department,
                                      Joey Cruz, Rafael Mejia, Michael Russell, Raul
24                                    Versales, Arlin Kahan and Tony Imbrenda
25

26

27

28

# **FILER ATTESTATION**

I, Luis Li, attest under Local Rule 5-4.3.4(a)(2)(i) that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized this filing.

Dated:  August 21, 2022

                                          */s/ Luis Li*
                                          Luis Li

JOINT STATEMENT RE COURT'S PROPOSED JURY INSTRUCTIONS AND VERDICT FORMS